**UNITED STATES DISTRICT COURT**
**SOUTHERN DIASTRICT OF NEW YORK**

RICHARD ARJUN KAUL, MD;
DAVID BASCH, MD;
JANE DOE; JOHN DOE.

v.                                          CIVIL ACTION: NO.:

INTERCONTINENTAL EXCHANGE; GEICO;          COMPLAINT
TD BANK; ALLSTATE INSURANCE COMPANY;
FEDERATION STATE MEDICAL BOARDS; ARTHUR HENRERER;
CHRISTOPHER J. CHRISTIE; DANIEL STOLZ;
ATLANTIC HEALTH SYSTEM; ROBERT HEARY;
PHILIP MURPHY; GURBIR GREWAL;
RIVKIN RADLER LAW FIRM; MAX GERSENOFF;
JANE DOE; JOHN DOE.

 

2

# Parties

## Plaintiffs
1. RICHARD ARJUN KAUL, MD – 440c Somerset Drive, Pearl River, NY 10965: 862 881 9702: DRRICHARDKAUL@GMAIL.COM (**Exhibit 1**).
2. DAVID BASCH, MD – 90 S Sparta Ave, Sparta, NJ 07871: 201 396 0346: dbbortho@yahoo.com (**Exhibit 1**).

## Defendants

1. INTERCONTINENTAL EXCHANGE – 11 Wall Street, New York, NY 10005 (**Exhibit 2**).
2. GEICO INSURANCE COMPANY – 5260 Western Avenue, Chevy Chase, MD 20815 (**Exhibit 2**).
3. TD BANK -  1701 Marlton Pike East, Suite 200, Cherry Hill, NJ 08003 (**Exhibit 2**).
4. ALLSTATE INSURANCE COMPANY – Attention Thomas Wilson, 2775 Sanders Road, Northbrook, Illinois 60062 (**Exhibit 2**).
5. FEDERATION STATE MEDICAL BOARDS -  400 Fuller Wiser Rd, Suite 300, Euless, TX 76039 (**Exhibit 2**).
6. ARTHUR HENGERER – 2365 S CLINTON AVENUE, ROCHESTER, NY 14618 (**Exhibit 2**). **Complaint will be amended based on pending F.R.E. 801 based tacit admissions**.
7. CHRISTOPHER J. CHRISTIE – 2nd Floor, 36th Street Capital, Maple Avenue/Dehart Street, Morristown, NJ 07960 (**Exhibit 2**).
8. DANIEL STOLZ – 60 Christy Drive, Warren, NJ 07059-6833 (**Exhibit 2**).
9. ATLANTIC HEALTH SYSTEM – 475 South Street, Morristown, NJ 07960-6459 (**Exhibit 2**).
10. ROBERT HEARY – 1 Bay Avenue, Suite 5, Montclair, NJ 07042 (**Exhibit 2**).
11. PHILIP MURPHY – c/o NJ AG, 25 Market Street, Trenton, NJ 08611 (**Exhibit 2**).
12. GURBIR GREWAL – c/o Securities + Exchange Commission, 100 F St NE, Washington, DC 20549 (**Exhibit 2**).
13. RIVKIN RADLER LAW FIRM – 477 Madison Avenue, Suite 410, NY, NY 10022
14. MAX GERSENOFF – 477 Madison Avenue, Suite 410, NY, NY 10022

## Co-conspirators

The identities and roles in the scheme/s are stated in (**Exhibit 3**).

**The State of New Jersey**
1. Executive members
2. Legislative members
3. Judicial members – eg. Jay Howard Solomon/Stuart Rabner/Kenneth Grispin/Mark Ciarrocca/Jeffrey Beachem/Dennis Carey

**The District of New Jersey-Newark:**
1. Judicial members.

**Politicians:**
1. Jeffrey Chiesa
2. Cory Booker
3. Steven Sweeney
4. Charles E. Schumer
5. Mitch McConnell
6. Philip Murphy
7. Scott Rumana

**Lawyers:**
1. Lewis Stein
2. Kenneth Hollenbeck
3. Joseph Gorrell
4. Michael Keating
5. William Roeder
6. William Fiore
7. Joseph McCarthy
8. Eric Kanefsky
9. John Hoyt
10. Paul Fishman
11. John DiIorio
12. Joshua Raymond
13. Scott Rever
14. John Robertelli
15. Thomas Manahan
16. Doreen Hafner
17. Eric Katz
18. Gurbir Grewal
19. Robert McGuire
20. Abbot Brown

**Physicians:**
1. Steven Lomazow
2. Gregory Przybylski
3. Frank Moore
4. Peter Carmel
5. William Mitchell
6. Peter Staats
7. Marc Cohen
8. Christopher Wolfla
9. Andrew Kaufman

10. Thomas Peterson

**Hospital/Insurance/Banking Executives/Others**:
1. Richard Crist
2. Divyesh Kothari
3. James Gonzalez
4. Lindy Washburn
5. Robert Garrett
6. Brian Gragnolati
7. Bharat Masrani
8. Warren Buffet

## Preliminary Statement

1.  K11-7 is about the corruption of United States of America by global publicly traded for-profit corporations, through the ruthless exploitation of the American public, medical profession, legal profession and state/federal politicians, and through the perpetration of massive schemes of racketeering, that have caused, and continue to cause the wrongful deaths/incarceration of millions of innocent Americans.

2.  K11-7 exposes the inner machinations of these schemes and seeks to: **(i)** effectuate regulatory and political reformation; **(ii)** to cause the perpetrators of such tyranny to be monetarily penalized; **(iii)** to re-distribute their wealth amongst the victims of their tyrannical corporate greed.

# Jurisdiction + Venue

**3.**      **Jurisdiction:**

General:
28 U.S.C. § 1331 – Plaintiff's allegations arise pursuant to Section 1983 claims of violations of
Kaul's Constitutional rights and U.S.C. § 1964(a)(b)(c)(d) and 1962.
U.S.C. § 337 – Plaintiff's allegations allege violations of an Act of Congress regulating commerce
and monopolies.
28 U.S.C. § 1332(d)(2)(A) – Plaintiff is a citizen of a different state to certain Defendants and the
aggregate amount in controversy exceeds seventy-five thousand dollars ($75,000).

Personal:
The Court has personal jurisdiction over all Defendants, as each Defendant has transacted
business , maintained substantial contacts, and/or committed acts in furtherance of the illegal
scheme and conspiracy throughout the United States, including in this district. The scheme and
conspiracy have been directed at and have had the intended effect of causing injury to persons
residing in, located in, or doing business throughout the United States including this District.
This Court also has personal jurisdiction over all Defendants pursuant to Fed. R. Civ. P. 4(k)(1)(A)
because they would be subject to a court of general jurisdiction in New York.

**4.**      **Venue:**

28 U.S.C. § 1391(b)(1) – A civil action may be brought in (1) a judicial district in which any
defendant resides, if all defendants are residents of the State in which the district is located and
(2) a judicial district in which a substantial part of the events or omissions giving rise to the
claim occurred, or a substantial part of property that is the subject of the action is situated

## Evidence

5. <u>**Tacit admissions**</u>:

Defendants Christie/TD/Allstate/AHS/Heary/Geico have, pursuant to F.R.E. 801(d)(2)(b), have admitted to the RICO and Section 1983 claims (<u>**Exhibit 4**</u>).

6. <u>**Defendant Geico's "pattern" within the United States District Court**</u>:

Since 2008/2009, Defendant Geico has filed almost identical and knowingly fraudulent claims against physicians to whom it owes money, in the willful commission of mail/wire fraud/obstruction of justice. Below are just four (4) examples:

1. Geico v Kaul: 13-CV-02597 – U.S.D.C.-D.N.J. (<u>**Exhibit 11**</u>).

2. Geico v Specialty Medical Services: 14-CV-08015 – U.S.D.C.-D.N.J. (<u>**Exhibit 11**</u>).

3. Geico v Kosiborod: 16-CV-04662 – U.S.D.C.-D.N.J (<u>**Exhibit 11**</u>).

4. Geico v Basch: 19-CV-13948 – U.S.D.C.-D.N.J. (<u>**Exhibit 11**</u>).

## The Slaving-Nazi-COVID-Insurance Axis

7. In K11-2 Kaul exposed the motivation and method for the adding and abetting of the perpetration of the slaving industry and Holocaust, by the insurance industry, of which Defendants Allstate/Geico are members (**Exhibit 5**). In 2021, the insurance industry controls the pharmaceutical industry, and is the principal financial beneficiary of the billions of dollars generated from forced mass global vaccination programs, that violate fundamental human rights and the Nuremberg Code. The insurance industry holds substantial controlling shares in Pfizer (USA) and Astra Zeneca (UK) and are continuing the same **"pattern of racketeering"** that commenced in the 1600s with the Trans-Atlantic slaving trade, and which involved the commission of the RICO predicate act of murder, through the United States, a colony that the British Empire/Insurance Industry converted into a **"racketeering enterprise"** for the purpose of profit.

8. The forced/coerced mass vaccination programs/passports are the chains and whips of the COVID enslavement program, the strings of which are being pulled by the British controlled insurance industry. Dominion never ended. It simply switched hats.

9. In K11-2, the Defendants and the Court devoted inordinate page space to Kaul's exposition of the insurance industry's four hundred (400) year-long genocide, and in doing so, did betray their conviction of the absolute truth of the matter.

10. In K11-7, Kaul identifies how, in 2021, the **"pattern"**, like the COVID-19 virus, has mutated into a purported mission to save humanity, the calling card of which is a supposed **"vaccine"**. The vaccine is more than useless, as it was the cause of the viral mutation, as Kaul explained it would be (**Exhibit 6**).

## Statement of Fact

11. The relevant facts are incorporated into the legal claims.

12. However, the most salient and irrefutable facts of the Defendants' guilt are found within their ill-conceived schemes to have Kaul kidnapped and to commit securities fraud for five-plus-years. These facts, in conjunction with the perjury/obstruction of justice/mail fraud/wire fraud/kickbacks/honest services fraud/extortion/bank fraud/bankruptcy fraud/racketeering/conspiracy/public corruption/judicial corruption/false imprisonment/false arrest committed by **The Kaul Cases** Defendants from 2008/2009 to 2021, are deemed admitted pursuant to F.R.E. 801(d)(2)(b), because they have not, nor could they be, denied.

13. The facts in **The Kaul Cases** are irrefutable proof of: **(i)** Corporate corruption/tyranny; **(ii)** Political corruption/tyranny; **(iii)** Judicial corruption/tyranny; **(iv)** Medical corruption/tyranny.

10

## Legal Claims

### Violation of Sarbanes-Oxley Act
### As to Defendants Allstate/TD/Geico

14. On February 22, 2016, Kaul filed suit against the Defendants in the United States District Court for the Southern District of New York (K1). The claim for monetary damages was $28, 000 trillion + (**Exhibit 7**), a figure in excess of ten percent (10%) of the market capitalization of all three Defendants, and thus the law required the case be disclosed in SEC filings, Forms 10K/13K, and in the corporations' accounts.

15. The Defendants conspired with their lawyers and accountants to file knowingly false returns/accounts, with the recognition that this crime did constitute a violation of Sarbanes-Oxley and was represented a willful commission of securities fraud on the global equities market.

16. From 2016 to the present, the Defendants continued to fail to report their liability, a liability that continues with K11-1/K11-3/K11-7.

17. On November 22, 2018, Kaul sent letters to the top ten corporate shareholders of Defendants Allstate/TD/Geico, creating a record in which the shareholders are foreclosed from asserting plausible deniability of the Defendants crimes. A number of these entities withdrew their positions. Kaul sent a subsequent letter on August 18, 2020 (**Exhibit 8**).

18. The key provisions of the Sarbanes-Oxley Act are:
(1) **SOX Section 302: Corporate Responsibility for Financial Reports** – (a) CEO and CFO must review all financial reports; (b) Financial report does not contain any misrepresentations; (c) Information in the final report is **"fairly represented"**; (d) CEO and CFO are responsible for the internal accounting controls; (e) CEO and CFO must report any deficiencies in internal accounting controls, or any fraud involving the management of the audit committee; (f) CEO and CFO must indicate any material changes in internal accounting controls.
(2) **SOX Section 401: Disclosures in Periodic Reports** – All financial statements and their requirement to be accurate and presented in a manner that does not contain incorrect statements or admit to state material information. Such financial statements should also include all material off-balance sheet liabilities, obligations and transactions.
(3) **SOX Section 404: Management Assessment of Internal Controls** – All annual financial reports must include an Internal Control Report stating that management is responsible for an "adequate" internal control structure, and an assessment by management of the effectiveness of the control structure. Any shortcomings in these controls must also be reported. In addition, registered external auditors must attest to the accuracy of the

11

company management assertion that internal accounting controls are in place, operational and effective.

(4) **SOX Section 409: Real Time Issuer Disclosures** – Companies are required to disclose on an almost real-time basis information concerning material changes in its financial condition or operations.

(5) **SOX Section 802: Criminal Penalties for Altering Documents** – This section specifies the penalties for knowingly altering documents in an ongoing legal investigation, audit, or bankruptcy proceeding.

(6) **SOX Section 806: Protection for Employees of Publicly Traded Companies Who Provide Evidence of Fraud** – This section deals with whistleblower protection.

(7) **SOX Section 902: Attempts & Conspiracies to Commit Fraud** Offenses – It is a crime for any person to corruptly alter, destroy, mutilate, or conceal any document with the intent to impair the object's integrity or availability for use in an official proceeding.

(8) **SOX Section 906: Corporate Responsibility for Financial Reports** – Section 906 address criminal penalties for certifying a misleading or fraudulent financial report. Under SOX 906, penalties can be upwards of $5 million in fines and 20 years in prison.

19. The Defendants knowingly/willfully violated every SOX provision, to a criminal standard. The violation caused a massive and ongoing injury to Kaul's prosecutorial and due process rights, in that he was illegally deprived of incriminatory evidence regarding the securities fraud, that Kaul would have submitted as further evidence of the Defendants **"pattern of racketeering"** through the commission of the RICO predicate act of securities fraud.

20. The Defendants violation of SOX did violate Kaul's rights, and caused further injury to his economic standing, reputation and ability to become 'un-imprisoned' and regain his livelihood, for this, <u>all</u> Defendants are liable.

**RICO 1**
**Association-In-Fact Enterprise: State of New Jersey-NYSE-SEC**
**Defendant Persons: Allstate/TD/Geico/ICE/Christie**
**RICO Predicate Acts: Securities fraud/mail fraud/wire fraud/money laundering**

**Overview**:

21. In a time period commencing in approximately 2009, the Defendants did conspire to commit, and did commit a knowingly illegal "pattern of racketeering" and did convert the NYSE/SEC/State of New Jersey (executive/legislative/judicial) into an association-in-fact enterprise, through and under cover of which they perpetrated thousands of the RICO predicate acts of mail fraud/wire fraud/securities fraud/money laundering, purposed to advance their political/economic agenda. Specifically, Defendant Christie sought to raise monies for gubernatorial and presidential campaigns, while Defendants Allstate/TD/Geico/ICE sought to increase executive compensation and share price. The Defendants **"State of New-NYSE-SEC" ("SNS Scheme")** scheme involved an intersection

of the worlds of medicine/business/law/politics, and commenced in 2009, with the purpose of, amongst other things: **(i)** having Kaul's medical license revoked; **(ii)** eradicating all debt owed to Kaul by insurance carriers (approx. $45 million); **(iii)** destroying Kaul's reputation; **(iv)** eliminating any future financial liability to Kaul; **(v)** causing Kaul to enter a state of poverty/homelessness; **(vi)** attempting to cause Kaul to be jailed/deported/killed; **(vii)** intimidating other minimally invasive spine surgeons into not performing minimally invasive spine surgery, in order to divert a greater percentage of the public's insurance premiums into corporate/executive compensation.

22. The Defendants have colluded and conspired to orchestrate both their underlying **"SNS Scheme"** and the subsequent, and multiple schemes to conceal and provide cover for the **"SNS Scheme"**. The concealment has been perpetrated through massive schemes of corruption of state/federal politicians/judges, in an attempt to prevent Kaul from exposing the Defendants decades-long schemes of judicial/public corruption.

23. In 2005, Kaul invented and successfully performed the first outpatient minimally invasive spine surgery, at a NJ surgical center that had credentialed him to perform the procedure, and under the authority of his state medical license; a license issued in 1996 by the State of New Jersey for both medicine and **surgery**. The state argued in proceedings from April 2 to June 28, 2013 that Kaul was not licensed to perform surgery. In this proceeding the Defendants and the state committed massive fraud, as evidenced in '**The Solomon Critique**' (K1-D.E. 225) + '**The Solomon Critique 2**' (K1-D.E. 299-18).

24. From 2006 to approximately 2009, Kaul was subjected to rule-of reason antitrust violations by, amongst others, Defendants Heary/AHS, who wanted to eliminate the threat of Kaul's rapidly expanding minimally invasive spine surgery practice. In furtherance of this scheme, the Defendants did engage in multiple quid pro quo schemes with Defendant Christie, in which they funneled bribes into his political campaign, purposed to have him use state power to have the medical board revoke Kaul's license. Kaul's license was illegally suspended/revoked on April 2, 2012/March 24, 2014, and the Defendants then, with knowing illegality, did use the US mail/wires to transmit this fraudulent notice globally to all governmental agencies, including all state medical boards/National Practitioners Data Bank/DEA/FBI.

25. From 2012 to 2020, the Defendants/co-conspirators did conspire to commit, and did commit bankruptcy fraud and insurance fraud, by defrauding Kaul's medical malpractice carriers of millions of dollars through the submission and fraudulent judicial adjudication of false claims, as pled in K11-4.

26. Commencing in 2016, the Defendants/co-conspirators did extend their **"pattern of racketeering"** into the NYSE, through an ongoing commission of the predicate acts of securities fraud, in that they submitted false SEC filings/accounts, that defrauded, and continue to defraud the global equities market. Based on this knowingly false information, the Defendants did perpetrate millions of trades with unsuspecting

investors, concealing from them the massive risk associated with the purchase of these fraudulent equities. In conjunction with these crimes, the Defendants/co-conspirators did not disclose to the market that its profits are the product of crimes, as detailed in **The Kaul Cases**, but yet willfully and with knowledge of its illegality, did launder the proceeds of these crimes through the NYSE.

27. From 2006 to the present, the overarching theme of the Defendants/co-conspirators crimes, has been the commission of increasingly more serious crimes, in an attempt to conceal their prior crimes, malfeasance and misconduct. What commenced in 2006 with the professional jealousy of Kaul's competitors, of which Defendant Heary was a 'ring-leader', is in 2021, a multitude of felonies that include, amongst others: **(i)** bankruptcy fraud; **(ii)** securities fraud; **(iii)** mail fraud; **(iv)** wire fraud; **(v)** perjury; **(vi)** bribery; **(vii)** obstruction of justice; **(viii)** public/judicial corruption; **(ix)** civil rights violations; **(x)** evidence tampering; **(xi)** witness tampering; **(xii)** false imprisonment; **(xiii)** false prosecution: **(xiv)** insurance fraud; **(xv)** kickbacks; **(xvi)** human rights violations; **(xvii)** retaliation; **(xviii)** false seizure of property; **(xix)** honest services fraud; **(xx)** racketeering; **(xxi)** conspiracy; **(xxii)** market manipulation/money laundering.

**ICE**:

28. From 2016 to the present, Defendant ICE knew or should have known that Defendants Allstate/TD/Geico committed securities fraud, in willfully, and with knowledge of its illegality, failing to report to the market and the SEC its liability in **The Kaul Cases**.

29. Defendant ICE was motivated to willful ignorance and did fail to cross reference court records with the filings of Defendants Allstate/TD/Geico.

30. Defendant ICE, in recognizing that its profits were tied to those of Defendants Allstate/TD/Geico, did tacitly conspire with these Defendants to perpetrate a knowingly illegal scheme of securities fraud concealment, that artificially manipulated the market, and was purposed to prevent a decrease in its share price.

31. Defendant ICE used the US mail and wires to exchange information with Defendants Allstate/TD/Geico, in furtherance of the **"SNS Scheme"**, in recognition of the illegality of the scheme and the manipulation of the market that would be caused by such a fraud.

32. Defendant ICE did conspire with and did commit a **"pattern of racketeering"** by aiding and abetting the laundering of the criminal proceeds of Defendants Allstate/TD/Geico through the apparatus of the **"SNS Association-In-Fact Enterprise",** the principal purpose of which was to increase insurance industry executive profit and share price, at the expense, and through the exploitation of Kaul and thousands of other physicians, many of whom remain falsely imprisoned.

33. Defendant ICE, although having reported regulatory/litigation risks in its SEC filings, did willfully and knowingly fail to specifically identify the securities fraud crimes of Defendants Allstate/Geico/TD, and is thus liable for not just these crimes, but for those from which the criminal proceeds originated in administrative/state/bankruptcy/federal courts within the geographic boundaries of the State of New Jersey, in a period that commenced in at least, if not before, Defendant Christie's first term as governor.

34. Defendant ICE recognizes that because it both trades on the NYSE and engages in commerce with global exchanges, which affects the value of those exchanges, that its participation in the **"SNS Scheme"** caused it to become a conduit to these exchanges of market valuations that it knew, or ought to have known were false, and were the product of crime.

35. Defendant ICE used the US mail/wires to globally transmit knowingly fraudulent information about the market valuations of Defendants Allstate/TD/Geico, in that it omitted any specific reference within its SEC filings to the legal liability ($28,000 trillion +) to the global equities market of **The Kaul Cases**.

36. Defendant ICE, in propagating this knowingly fraudulent information to the global equities market, did recognize its role in false equity evaluations and the creation of a 'bubble market'

37. Defendant ICE's Indian headquarters is Hyderabad (Kaul's birthplace), and it is cognizant of the fact that the Indian stock market is currently reported as being in a 'bubble' by the Reserve Bank of India.

38. Defendant ICE recognizes that the false evaluations of the NYSE are responsible for the Indian 'bubble', and that the false evaluations of the NYSE are a consequence of the Defendants financial crimes.

**Christie**:

39. From 2000, the year that Defendant Christie was appointed the US Attorney for the District of New Jersey, he has abused state power and converted state/federal agencies into **"racketeering enterprises"**, through which he has conducted a **"pattern of racketeering"** purposed to further the economic/political agendas of himself and those individuals with whom he engaged in quid pro quo schemes of bribery and public corruption.

40. Commencing in or around 2008/2009, Defendant Christie entered into knowingly illegal conspiracies with Defendants Allstate/TD/Geico, in which they methodically planned schemes to eliminate Kaul, through the abuse of governmental power. The Defendants conspired with state/federal investigative/prosecutorial authorities to file criminal

indictments against Kaul. These investigations ceased when Kaul filed K1 on February 22, 2016.

41. From 2009 to 2017, he converted the executive/legislative/judicial branches of the State of New Jersey into a **"racketeering enterprise"**, that he used against Kaul, in an attempt to have him jailed/deported/seriously injured/killed, in order to eliminate: **(i)** the debt owed to him by the insurance industry; **(ii)** future liability to Kaul by the insurance industry; **(iii)** the threat that Kaul's minimally invasive spine surgery practice posed to **The Kaul Cases** physician/hospital Defendants, from whom, along with Defendants Allstate/TD/Geico, Defendant Christie had received bribes.

42. Defendant Christie believed that he would become the 2016 President of the United States, that Kaul would be eliminated, and the crimes of **The Kaul Cases** Defendants would go undetected, and that Kaul would not commence litigation in 2016.

43. However, when Kaul did commence litigation, Defendant Christie, in collusion/conspiracy with **The Kaul Cases** Defendants and certain judges within the United States District Court, did perpetrate a massive scheme of obstruction of justice, that violated Kaul's human rights, and was intended to prevent Kaul from exposing the crimes, and to obviate the obligation of Defendants Allstate/TD/Geico (Berkshire Hathaway) to report the $28,000 trillion + in their SEC filings.

44. In the perpetration of the **"SNS Scheme"**, Defendant Christie did use the US mail/wires to transmit information with **The Kaul Cases** Defendants regarding the bankruptcy and securities fraud, as it pertained detrimentally to the share price of Defendants Allstate/TD/Geico.

45. In aiding and abetting the **"SNS Scheme"**, Defendant Christie did fully recognize its illegality and the international criminal consequences of his participation in the defrauding of the global equities market.

46. Defendant Christie, nonetheless, did persist in the perpetration of the scheme out of fear that if the $28,000 trillion + liability were disclosed to the global equities market, it would cause shareholder litigation, that would expose the massive crimes committed by **The Kaul Cases** Defendants within the executive/legislative/judicial branches of the State of New Jersey, the United States District Court and the United States Bankruptcy Court (2006 to Present).

47. Defendant Christie was also motivated to aid and abet the securities/bankruptcy fraud, as he had been bribed with shares from Defendants Allstate/Geico, as part of the quid pro quo scheme in which he ordered the medical board to revoke Kaul's license.

48. Defendant Christie maintains a controlling position within the **"SNS Association-In-Fact Enterprise"** from which he continues to illegally profit, the profits of which he launders

through the enterprise his political lobbying/law business, that currently provide cover for his **"ongoing"** schemes of bribery and public corruption.

### Allstate/Geico:

49. Kaul commenced suit against Defendant Allstate on February 22, 2016 in K1, in which Kaul seeks $28,000 trillion + in monetary damages. Allstate's market capitalization was approximately $33 billion, and thus it was obligated to report the claims in its SEC filings. It did not.

50. Defendant Allstate, in recognizing the immense civil/criminal consequences of disclosure, and the damage to its reputation within the global equities market, did conspire with Defendant ICE in its withholding of this information.

51. Defendant ICE was motivated to participate in the **"NSS Scheme"** as its share price and corporate profits were linked to those of Defendant Allstate, and it recognized that exposure to the global equities market of the $28,000 trillion + liability had the potential to bankrupt Defendant Allstate.

52. Defendants ICE/Allstate did use the US mail/wires and face-to-face meetings to exchange information about the **"NSS Scheme"**. Within the corpus of communication, Defendants ICE/Allstate concluded that the risk of Kaul exposing a securities fraud violation was minimal compared to the risk of bankruptcy if **The Kaul Cases** were exposed to the global equities market.

53. Defendant Allstate, in recognizing that Defendant ICE would not report its false filings to the SEC/DOJ, did continue to fraudulently trade millions of shares from 2016 onwards, in the knowledge of its illegality, and that it would cause false market valuations, market manipulations and investors to be defrauded.

54. Defendant Allstate reaped illegal profits from the **"NSS Scheme"**, that it funneled as bribes to certain judges within the United States District Court (K11-3) and certain state/federal politicians (K11-1), in order to control the **"racketeering enterprise"** into which **The Kaul Cases** Defendants had converted certain courts (district/appellate) within the United States District Court.

55. Defendant Allstate, through a **"pattern of racketeering"**, and in conspiracy/collusion with **The Kaul Cases** Defendants, did in a period commencing in approximately 2008/2009, convert into **"racketeering enterprises"** the State of New Jersey, the United States District Court, the United States Bankruptcy Court and the New York Stock Exchange and state/federal investigative/prosecutorial authorities, all purposed to eliminate Kaul and then to provide cover for their crimes, when their Kaul elimination scheme failed (2008/9 to 2021).

17

**TD**:

56. On February 22, 2016, with the filing of K1, Kaul did expose the crimes of Defendant TD, and their role in the revocation of Kaul's license and the knowingly illegal use of state/bankruptcy courts within the geographic boundaries of the State of New Jersey to bankrupt Kaul's corporations.

57. Defendant TD commenced conspiring with Defendants Christie/Allstate/Geico in or around 2010, in a series of quid pro quo schemes, in which Defendant TD received regulatory favors from Defendant Christie in return for arbitrarily foreclosing on Kaul's personal/commercial loans.

58. Defendants Allstate/Geico had bribed Defendant Christie to eliminate Kaul, and Defendant Christie's quid pro quo with Defendant TD, was purposed to deprive Kaul of monies to litigate the licensing case against the State of New Jersey, and to bankrupt his corporations in order to facilitate the elimination of debt ($45 million) owed to Kaul by the insurance industry.

59. Defendant TD, in recognizing the immense civil/criminal liability of **The Kaul Cases**, did conspire with Defendant ICE to conceal the litigation from the global equities market, and did submit false SEC filings and accounts from 2016 to 2021, in the belief that Kaul would not expose its prior crimes, as **The Kaul Cases** Defendants had bribed certain judges within the United States District Court and the United States Bankruptcy Court.

60. From 2016 onwards Defendant TD did use the US mail/wires and engage in face-to-face meetings with Defendants ICE/Allstate/Geico/Christie, in furtherance of the **"NSS Scheme"**. At these meetings, and within these communications, the Defendants did discuss and conclude that the risk of Kaul exposing their securities fraud violation was substantially outweighed by the risk of disclosing the $28,000 trillion + liability to the global equities market.

61. In conspiring with **The Kaul Cases** Defendants, Defendant TD did recognize the illegality of their failure to disclose and did follow the advice of counsel in failing to disclose.

62. Defendant TD's counsel did conspire/collude with counsel for **The Kaul Cases** Defendants in furtherance of the **"NSS Scheme"**, for the purpose of concealing their prior crimes, which involved massive schemes of judicial/public corruption, at the center of which was Defendant Christie, his presidential ambitions and the commercial agendas of corporations/persons from whom Defendant Christie had received bribes.

63. Defendant TD, in willfully committing securities fraud and defrauding the global equities market of their right to honest services, did perpetrate such a scheme with the

premeditated purpose of violating Kaul's litigation rights, in that it stymied his 'whistleblowing' on the crimes of **The Kaul Cases** Defendants.

64. Defendants Allstate/TD/Geico did recognize that disclosure to the global equities market would cause investors to withdraw their stock position, as occurred with K11-2 Defendant Boston Partners, after Kaul informed them in November 2018 of the pending litigation in K1/K2.

65. Defendants Allstate/TD/Geico did recognize that a disclosure of the $28,000 trillion + liability would cause massive shareholder litigation and damaging publicity regarding their schemes of judicial/public corruption, and that this litigation/publicity would augment Kaul's prosecution rights.

66. Defendants TD/Allstate/Geico knowing and willful violation of the Sarbanes-Oxley Act was purposed to provide cover for their previous crimes against Kaul (bribery/mail fraud/wire fraud/judicial corruption/public corruption/civil rights violations/perjury/kickbacks/false arrest/false imprisonment/obstruction of justice/illegal seizure of assets/money laundering/bankruptcy fraud/bank fraud), and were purposed to, and did in fact, violate Kaul's prosecutorial rights.

## RICO 2
**Association-In-Fact Enterprise: United States Bankruptcy Court-NYSE-State of New Jersey**
**Defendant Persons: Allstate/TD/Geico/Stolz**
**RICO Predicate Acts: bankruptcy fraud/mail fraud/wire fraud/public corruption/bank fraud/securities fraud/money laundering**

**Overview**:

67. In a period commencing in approximately 2008/2009, Defendants Allstate/Geico/TD did commence conspiring to commit, and did commit a **"pattern of racketeering"** through the enterprise of the executive/legislative/judicial branches of the State of New Jersey and did, in 2013, extend and amplify this **"pattern of racketeering"** into the U.S.B.C., and did, in 2016, extend and amplify this **"pattern of racketeering"** into the NYSE, to form an association-in-fact enterprise, the **"State of New Jersey-United States Bankruptcy Court-New York Stock Exchange Association-In-Fact Enterprise" ("SUN-Association-In-Fact Enterprise").**

68. The Defendant Persons, that orchestrated, controlled, aided and abetted, and that did either occupy or effect controlling positions within the enterprises were Defendants Stolz/Allstate/TD/Geico.

69. The co-conspirators and specifically, K11-3 Defendant/U.S.B.J. John Sherwood, did aid and abet the Defendants perpetration of their **"SUN Scheme"** through a **"pattern of racketeering"** that involved the commission of the RICO predicate acts of mail

fraud/wire fraud/perjury/obstruction of justice/kickbacks/judicial corruption/public corruption/money laundering/bankruptcy fraud/bank fraud/securities fraud, and was committed, knowingly/willfully, and with knowledge of its illegality, through a purposeful conversion of the State of New Jersey/U.S.B.C./NYSE into **"racketeering enterprises"**, the principal purpose of which was to increase executive/corporate profit and compensation for Defendants Stolz and Christie (political campaign donations/other bribes).

70. The Defendants did use the US mail/wires and conduct face-to-face meetings in New York, for the purpose of devising, planning and executing the knowingly illegal **"SUN Scheme"**.

71. The Defendants, in the initial planning of their criminal enterprise did not anticipate that in 2016, Kaul would commence litigation, or that the damages sought would be in excess of ten percent (10%) of their market capitalization. In fact, the Defendants believed that Kaul would be deported/jailed/killed, and on May 27, 2021, the Defendants, in a state of desperation, did perpetrate a final scheme in which Kaul was illegally arrested/imprisoned, with the intention of having him permanently injured or killed in the Mercer County jail in Trenton, New Jersey. The scheme failed, and Kaul filed suit on June 15, 2021 against K11-9 Defendants Christopher J. Christie/Philip Murphy/Doreen Hafner/Gurbir Grewal/Robert McGuire.

72. Defendants Allstate/TD/Geico, in recognizing their $28,000 trillion + liability, did conspire with Defendant ICE, in the concealment of this information from the global equities market, in which Defendants Allstate/TD/Geico (Berkshire Hathaway) trade. In 2012, Defendant Allstate extended its operations into India, while simultaneously conducting, in collusion/conspiracy with American state/federal investigative/prosecutorial authorities, policies of racially targeting Indian physicians for license revocation and imprisonment.

**Defendants Allstate/Geico**:

73. In June 2013, Defendant TD, in furtherance of the Defendants **"racketeering schemes"** (2008/2008-2021) caused Kaul's corporations to file for Chapter 11 bankruptcy. On July 21, 2014 the Chapter 11 was converted to a Chapter 7, because of the illegal revocation of Kaul's license on March 24, 2014. Defendant Stolz and his now deceased law partner, Robert Wasserman, were assigned as the trustee.

74. In a period that commenced in approximately July 2014, Defendants Allstate/Geico did enter into a conspiracy with Defendant Stolz, in which Defendant Stolz agreed to accept bribes from Defendants Allstate/Geico in return for not pursuing the $45 million owed to Kaul by Defendants Allstate/Geico and others within the insurance industry, as irrefutably pled in K4.

75. Defendants Allstate/Geico did use the US mail/wires and face-to-face meetings with Defendant Stolz to exchange information regarding the perpetration of the **"SUN Scheme"**, the purpose of which was to increase share price and compensation to their executives and Defendant Stolz.

76. During these communications, Defendants Allstate/Geico and Stolz did consider the money laundering risk posed by the investment of the proceeds of their crimes into the NYSE. The Defendants calculated that the risk was minimal, as Kaul would be eliminated, and any person who had knowledge of the crime would not disclose, out of fear of retaliation of a criminal indictment from Defendant Christie.

77. Defendants Allstate/Geico/Stolz calculated that their illegal scheme would cause an elevation of share price, the false basis of which would be concealed from the global investment community.

78. Subsequent to Kaul's filing of K1, the Defendants did conspire to not report the case in their SEC filings, in order to provide cover for, amongst other things, their crime of bankruptcy/creditors fraud. However, in doing so, they commenced committing securities fraud, a crime that they have undoubtedly committed before, but in this case, a crime that commenced in 2016, and is ongoing in 2021.

79. On May 27, 2021, the Defendants attempted to have Kaul seriously injured or killed (K11-9).

**Defendant Stolz:**

80. Defendant Stolz, a lawyer, knew that in conspiring to commit and committing the RICO predicate acts of bankruptcy fraud/securities fraud/mail fraud/wire fraud, through a **"pattern of racketeering"** in which he converted the United States Bankruptcy Court into a **"racketeering enterprise"**, for a period commencing on July 21, 2014, he has incurred international criminal liability, and has defrauded the global equities market of its right to honest services.

81. Kaul has exposed the crimes of Defendant Stolz, who from 2018 conspired with corrupted judges in the District of New Jersey to prevent Kaul from prosecuting his claims against Defendant Stolz. The tactics used by Defendant Stolz included having Defendant/U/S.B.J. John Sherwood enter an order in February 2020, that sought to bar Kaul from prosecuting Defendant Stolz for his crimes. Defendant Sherwood, as plausibly and irrefutably pled in K11-3, did accept bribes from Defendants Allstate/Geico, in return for entering judgements adverse to Kaul/creditors in the bankruptcy proceedings (July 21, 2014 to July 31, 2020).

82. When Kaul commenced litigation against Defendant Stolz in 2018, Defendant Stolz and his lawyer, Scott Rever, desperate to prevent their prosecution by Kaul, did threaten to

expose the names of state/federal politicians and judges, who had either participated/facilitated his bankruptcy fraud in Kaul's case, or had received bribes from Defendants Allstate/Geico in cases involving other physicians/healthcare providers.

83. From 2016 to the present, Defendant Stolz, with knowledge of Defendants Allstate/TD/Geico's securities fraud crimes, has failed to report the crimes to regulators or the global equities market, as he recognizes that to report would expose his crime of bankruptcy fraud, and the crimes/malfeasance of all of **The Kaul Cases** Defendants, extending back to 2006.

84. Defendant Stolz has knowledge that Defendants Allstate/TD/Geico did conspire with Defendant ICE to conceal from the global equities market, their $28,000 trillion + liability, and did conspire with the SEC to have K11-9 Defendant, Gurbir Grewal, transferred on June 29, 2021 from the Office of the NJ AG to the securities fraud enforcement division, after Kaul had sued him in K11-9, and K11-2 Defendant, Boston Partners, had admitted to withdrawing its position in Allstate, after Kaul they received a letter from Kaul in November 2018.

**Defendant TD:**

85. In approximately 2010, Defendant TD commenced conspiring against Kaul with Defendants Allstate/Geico/Christie, in a scheme to eliminate Kaul through the destruction of his career/livelihood/reputation/economic standing.

86. In furtherance of this scheme, Defendant TD used the US mail/wires to transmit information regarding its devising/implementation/execution, in the knowledge that such transmission constituted the crimes of mail/wire fraud.

87. However, Defendant TD did not believe that Kaul would expose its crimes, as it received information from Defendants Christie/Allstate/Geico that Kaul would be eliminated.

88. Defendant TD entered into a series of quid pro quo schemes with Defendants Allstate/Geico/Christie, in which they conducted a **"pattern of racketeering"** through the American banking system and state/bankruptcy courts within the geographic boundaries of the State of New Jersey, through the commission of the RICO predicate acts of mail fraud/wire fraud/bankruptcy fraud/bank fraud.

89. Defendant TD, in converting into an association-in-fact **"racketeering enterprise"**, the executive/legislative/judicial branches of the State of New Jersey/United States Bankruptcy Court/NYSE, did know of the immense civil/criminal liability that such crime, if exposed, would cause to them and their shareholders.

90. In approximately late 2013/2014, Defendant TD, in collusion/conspiracy with Defendants Allstate/Geico/Christie, did file a knowingly false banking fraud claim against

Kaul, with www.checksystems.com. The purpose and effect of this fraud was to prevent Kaul's access to banking services, cause a deterioration in his credit score and prevent him from funding litigation. Defendant TD did not anticipate that Kaul would sue them in 2016, nor that he would expose their securities fraud violation (2016 to present).

91. During the bankruptcy proceedings (June 17, 2013 to July 31, 2020), Defendant TD, with knowledge of the illegality of the revocation of Kaul's license, and the **"racketeering schemes"** perpetrated by, amongst others, Defendants Allstate/Geico/Christie that caused the revocation/subsequent legal cases against Kaul, did conspire with its counsel to not report the bankruptcy fraud to authorities. The reason for not reporting was that Defendant TD did not want exposed its prior crimes and involvement in **The Kaul Cases** Defendants scheme to eliminate Kaul (livelihood/reputation/assets/freedom/human rights).

92. Defendant TD conspired with Defendants Stolz/Allstate/Geico and **The Kaul Cases** Defendant, DiIorio, to threaten Kaul that unless he signed over title to the real estate in which his surgical center was located, despite it belonging to a corporation not part of the Chapter 11 proceeding, that Kaul's ex-wife would be sued by Defendant Stolz.

93. In a period from 2016 onwards, Defendant TD conspired with its lawyers/accountants to defraud the global equities market of its right to honest services, through the submission of false SEC filings and accounting reports. Defendant TD perpetrated these crimes, in the belief, and with the intention to violate Kaul's prosecutorial rights, and in an attempt to prevent Kaul from exposing their crimes, that include those associated with the purchase of Commerce Bank in 2007, in which they bribed multiple NJ state politicians in a 'pay-to-play' scheme, in order to complete the purchase.

### RICO 3
### Association-In-Fact Enterprise: State of New Jersey-United States District Court
### Defendant Persons: Christie/AHS/Heary
### RICO Predicate Acts: mail fraud/wire fraud/bribery/obstruction of justice/public corruption/money laundering

**Overview**:

94. In a period commencing in approximately 2006, Defendants Christie/AHS/Heary commenced conspiring to commit, and did commit, a **"pattern of racketeering"** through the association-in-fact enterprise of the legislative/executive/judicial branches of the State of New Jersey and the United States District Court, the **"SU Association-In-Fact Enterprise"**, in furtherance of the **"SU Scheme"**, through the commission of the RICO predicate acts of mail fraud/wire fraud/bribery/public corruption/obstruction of justice/perjury/kickbacks/bank fraud/investor fraud. The motivation for the **"SU Scheme"** was: **(i)** to increase the Defendants economic/political power within the American legal/medical/business/political sectors of industry, at the expense of Kaul,

free standing surgical centers and non-neurosurgical minimally invasive spine surgeons; **(ii)** to use the United States District Court to provide cover for the Defendants crimes within the legislative/executive/judicial branches of the State of New Jersey.

**Christie:**

95. In 2000, when Defendant Christie was appointed the US Attorney for the District of New Jersey, he commenced abusing state prosecutorial power for advancement of his personal/political/economic agendas and used this power to threaten persons with criminal prosecution in order to coerce them into funneling money into his political campaigns and off-shore bank accounts/trusts. Defendant Christie used this money to occupy the governor's office in 2009/2013 and abused the power of the governor's office to extort further money from persons with threats of criminal prosecution, and did engage in massive schemes of bribery, in which monies were funneled into his political campaigns/off-shore bank accounts by, amongst others, Defendants AHS/Heary. The bribes from Defendants AHS/Heary were part of a series of quid pro quo schemes, purposed to have eliminated Kaul/free standing surgical centers/billing codes for outpatient spine surgery and to have introduced legislation that prevented the issuance of state licenses for physician owned surgical centers and downgraded the RVU of billing codes for spine surgery in free standing physician owned surgical centers. These illegally conducted tactics were part of an overall strategy perpetrated by for-profit healthcare corporations, such as Defendants AHS/Allstate/Geico, to illegally monopolize, through both per se/rule of reason violations, the American healthcare market. At the heart of this conspiracy lies the **"HIPIC-FC"** and related to this is the **"Hospital-Insurance-Pharmaceutical-Industry-Complex-US Government Cartel"** the **"HIPIC-USC"**. These two cartels operate to eliminate physicians through license revocation/incarceration/suicide/death, in order to increase the corporations' profits/share price, by reducing the amount of patient care provided, by reducing the number of physicians.

96. Defendant Christie, in his capacity as the US Attorney, and through his association with his brother, did come to understand the mechanics of the securities market, and was involved with securities fraud cases. ICE came into existence in 2000, the year Defendant Christie became US Attorney, and in 2021 it has a market capitalization of $68 billion.

97. Bribery: Defendant Christie's relationship with bribers, bribery and quid pro quo schemes extends back to his early political/legal career in Morris County, New Jersey. Without corruption his career would have stalled at the NJ municipal court level. In a time period from 2008 to 2016, Defendants AHS/Heary funneled bribes to Defendant Christie, using as cover, his political campaign account and law/public relation/political lobbying firms with whom Defendant Christie conducted illegal transactions, in which he used the public treasury to funnel state contracts to these firms in return for bribes. The monies (bribes) flowed from Defendants AHS/Heary to Defendant Christie, and the

public's money (kickbacks) flowed from Defendant Christie to Defendants AHS/Heary ($3.1 million state 'salary').

98. <u>Mail Fraud/Wire Fraud</u>: In a period from 2008 to 2021 Defendant Christie/counsel did, with knowledge of its illegality, use the US mail/wires to exchange information with Defendants AHS/Heary/counsel in furtherance of the **"SU Scheme"**, for the purpose of illegal market monopolization (2008-2014) and then to provide them cover in the United States District Court against Kaul's prosecution of their crimes (2016-2021).

99. <u>Obstruction of Justice</u>: In a period from 2012 to 2021, Defendant Christie did conspire to commit, and did commit an obstruction/violation of Kaul's right to justice by, through and as a consequence of his control of the executive/judicial/legislative branches of the State of New Jersey. This period of obstruction (2012-2017) resulted in some of the injuries detailed in (**Exhibit 9**). Defendant Christie conspired with Defendants Stolz/Allstate/Geico/TD to obstruct Kaul's right to justice in the United States Bankruptcy Court (2013 to 2020), and this period of obstruction resulted in injury exacerbation and further injuries detailed in (**Exhibit 9**). Defendant Christie/counsel conspired with **The Kaul Cases** Defendants/counsel (2016-2021) to obstruct/violate Kaul's prosecutorial rights in the United States District Court, in order to prevent Kaul from further exposing their crimes in the State of New Jersey and the United States Bankruptcy Court.

100.     <u>Public Corruption</u>: In a period from 2008 to 2021, Defendant Christie abused his political power and public office to engage in acts of public corruption with private actors (persons/corporations), state/federal judges, medical boards and NJ state police to: **(i)** eliminate Kaul (deportation/jail/killed); **(ii)** to order state judges/courts to obstruct Kaul's right to justice/enter multi-million dollar judgments against him; **(iii)** to obstruct Kaul's right to justice in the United States Bankruptcy Court; **(iv)** to violate Kaul's prosecutorial rights in the United States District Court; **(v)** conspire with the SEC to have K11-9 Defendant Grewal transferred to the enforcement division of the SEC on June 29, 2021, to attempt to quash a securities fraud prosecution of Defendants Allstate/TD/Geico.

**AHS**:

101.     <u>Mail/Wire Fraud</u>: In a period from approximately 2008/2009 to 2014, Defendant AHS did with knowledge of its illegality, use the US mail/wires to conspire with, amongst others, Defendant Christie, regarding the perpetration of the first half of the **"SU Scheme"**, that being the revocation of Kaul's license, the destruction of his economic standing/reputation and elimination, be it by jail/deportation/death. From 2016 to 2021, Defendant AHS/counsel did, with knowledge of its illegality, use the US mail/wires to conspire with **The Kaul Cases** Defendants/counsel, regarding the perpetration of the second half of the **"SU Scheme"**, that being the corruption of judges within the United States District Court to obstruct justice by violating Kaul's prosecutorial rights, in order

to prevent him further exposing the crimes committed in the first half of the **"SU Scheme"**, and the securities fraud violations of Defendants Allstate/TD/Geico. Defendant AHS shareholding in these corporations has increased since the filing of K1, on February 22, 2016, as is the case with many other Defendants.

102.     <u>Bribery</u>: In a period from 2008/2009, Defendant AHS did engage in a series of quid pro quo schemes with Defendant Christie, in which they converted the executive/legislative/judicial branches of the State of New Jersey into a **"racketeering enterprise"**, through which they conducted a **"pattern of racketeering"**, in which they conspired to commit, and did commit with knowing illegality, the RICO predicate acts of bribery/public corruption.

**<u>Heary</u>**:

103.     <u>Mail/Wire Fraud</u>: In a period from approximately 2008/2009 to 2014, Defendant Heary did with knowledge of its illegality, use the US mail/wires to conspire with, amongst others, Defendant Christie, regarding the perpetration of the first half of the **"SU Scheme"**, that being the revocation of Kaul's license, the destruction of his economic standing/reputation and elimination, be it by jail/deportation/death. From 2016 to 2021, Defendant AHS/counsel did, with knowledge of its illegality, use the US mail/wires to conspire with **<u>The Kaul Cases</u>** Defendants/counsel, regarding the perpetration of the second half of the **"SU Scheme"**, that being the corruption of judges within the United States District Court to obstruct justice by violating Kaul's prosecutorial rights, in order to prevent him further exposing the crimes committed in the first half of the **"SU Scheme"**, and the securities fraud violations of Defendants Allstate/TD/Geico. Defendant Heary's shareholding in these corporations has increased since the filing of K1, on February 22, 2016, as is the case with many other Defendants.

104.     <u>Bribery/Public Corruption</u>: In a period from 2008/2009, Defendant Heary did engage in a series of quid pro quo schemes with Defendant Christie, in which they converted the executive/legislative/judicial branches of the State of New Jersey into a **"racketeering enterprise"**, through which they conducted a **"pattern of racketeering"**, in which they conspired to commit, and did commit with knowing illegality, the RICO predicate acts of bribery/public corruption.

<u>**RICO 4**</u>
**<u>Association-In-Fact Enterprise: State of New Jersey-United States District Court-United States Bankruptcy Court-NYSE</u>**
**<u>Defendant Persons: Allstate/Geico/FSM &Christie</u>**
**<u>RICO Predicate Acts: mail fraud/wire fraud/bribery/obstruction of justice/public corruption/money laundering</u>**

**<u>Overview</u>**:

26

105.     In a period that commenced in approximately 2008/2009, the Defendants did conspire to commit, and did commit, with knowledge of its illegality, a **"pattern of racketeering"**, through the commission of the RICO predicate acts of mail fraud/wire fraud/bribery/obstruction of justice/public corruption, by converting the executive/legislative/judicial branches of the State of New Jersey, the United States Bankruptcy Court and the United States district Court into an association-in-fact racketeering enterprise, the **"SUUN Association-In-Fact Enterprise",** through which the Defendants perpetrated the **"SUUN Scheme"**, the purpose of which was: **(i)** to eliminate Kaul; **(ii)** have Defendant Christie become the 2016 US President; **(iii)** prevent Kaul from further exposing their crimes, and the securities fraud/bank fraud/bankruptcy fraud of Defendants Allstate/TD/Geico.

106.     Central to the perpetration of the **"SUUN Scheme"** was the **"Hospital-Insurance-Pharmaceutical-Industry-Complex"** (**"HIPIC-FC"**) (**Exhibit 10**) and their monopolization/control of all elements of American medicine by for-profit public/private corporations, whose shared economic mission is the maximization of corporate profit and share price, through the exploitation of the American public (denial of care) and medical profession (license suspension/revocation/incarceration) achieved through their corrupt control of the executive/legislative/judicial branches of state/federal government.

**Christie:**

107.     Mail/wire fraud: In a period commencing from approximately 2008/2009 to 2016 Defendant Christie did use the US mail wires in a knowing illegal manner, to exchange information with Defendants Allstate/Geico regarding the perpetration of the first half of the **"SUUN Scheme"** to revoke Kaul's license, destroy his economic standing/reputation and have him eliminated (jail/deportation/killed). From 2016 to 2021, Defendant Christie/counsel did use the US mail/wires in a knowingly illegal manner, to exchange information with Defendants Allstate/Geico/FSMB regarding the second half of the **"SUUN Scheme"** to obstruct his efforts to procure a license anywhere in the world and to violate his prosecutorial rights/obstruct justice by corrupting judges within the United States District Court, in an attempt to prevent Kaul from further exposing their crimes, and the securities fraud/bankruptcy fraud/bank fraud crimes of, amongst others, Defendant Allstate/TD/Geico/Boston Partners (K11-2)/State Street Capital (K11-2)/Stolz. Defendant Christie received substantial shares from Defendants Allstate/TD/Geico as part of the quid pro quo schemes of bribery, to eliminate Kaul.

108.     Bribery: In a period from 2008/2009 to 2016, Defendant Christie did enter into a series of quid pro quo schemes with Defendants Allstate/Geico, in which he received bribes under cover of political campaign donations and shares, and monies transferred into multiple tax free off-shore havens, including Israel, the latter having occurred with monies received from, by and through entities associated with Sheldon Adelson and his corporations. An element of these monies pertained to his trafficking of chemical weapon components to Syrian rebel forces between 2012-2013. Adelson sought to

destabilize the region, blame Assad, and thus provide pretext for further Israeli incursion into Arab territories. In a period from 2016 to 2021, Defendant Christie/counsel did corrupt judges within the United States District Court in quid pro quo schemes purposed to violate Kaul's prosecutorial rights and prevent him from exposing the crimes of **The Kaul Cases** Defendants, including their securities fraud/bankruptcy fraud/bank fraud crimes, either through direct or vicarious liability, pursuant to RICO.

109.    <u>Obstruction of justice/public corruption</u>: In a period from 2008/2009 to 2016, Defendant Christie conspired to commit, and did commit, in collusion/conspiracy with **The Kaul Cases** Defendants, and as part of the first half of the **"SUUN Scheme"**, an ongoing scheme to violate Kaul's right to justice within administrative/state/bankruptcy/federal courts within the geographic boundaries of the State of New Jersey, based on multiple quid pro quo schemes in which **The Kaul Cases** Defendants funneled bribes to Defendant Christie to have Kaul eliminated. In a period from 2016 to 2021, Defendant Christie/counsel did corrupt judges within the United States District Court to violate Kaul's prosecutorial rights in order to obstruct justice and prevent Kaul from exposing the Defendants decades-long schemes of corruption of American state/federal politicians/judges/legislators and the **"FC"**, and the ongoing securities fraud and bankruptcy fraud/bank fraud.

110.    <u>Money laundering</u>: In a period from 2008/2009 to 2017, Defendant Christie did launder the proceeds of his **"SUUN Scheme"** related criminal activity, in the same places that he laundered the proceeds of his many other criminal enterprises, those being: **(i)** his family; **(ii)** the NYSE; **(iii)** off-shore trusts/banks; **(iv)** his law/political lobbying firm; **(v)** his lawyers; **(vi)** his accountants; **(vii)** his public relation personnel (Mercury); **(viii)** investments in Defendants Allstate/TD/Geico/AHS/HUMC (K11-2); **(ix)** real estate holdings.

**Allstate/Geico:**

111.    <u>Mail fraud/wire fraud</u>: In a period from 2008/2009, Defendants Allstate/Geico did, with a knowing illegality, use the US mail/wires to exchange information with Defendant FSMB, in furtherance of both the fist half of the **"SUUN Scheme"** and in continued furtherance of the decades-long **"HIPIC-FC"** scheme (1986-Present). In these communications, Defendants Allstate/Geico conspired with Defendant FSMB to globally disseminate information regarding Kaul's elimination, in order to prevent him exposing their crimes. From 2016 to 2021, Defendants Allstate/Geico/counsel did, with a knowing illegality, use the US mail/wires to exchange information with Defendant FSMB/counsel and all **The Kaul Cases** Defendants/counsel, in furtherance of the second half of the **"SUUN Scheme"** to violate Kaul's prosecutorial rights in the United States District Court through judicial corruption; in order to prevent him exposing the Defendants prior crimes (2008/2009-2016) in the executive/legislative/judicial branches of the State of New Jersey and the United States Bankruptcy Court, in addition to attempting to conceal their securities fraud crimes in the NYSE (2016-2021).

112.    <u>Bribery</u>: Defendants Allstate/Geico have, since 1986, participated in an illegal bribery-based scheme of racketeering with Defendant FSMB, the **"HIPIC-FC"** scheme,

purposed to monopolize the entire American healthcare system, a monopolization made possible by the corruption/control of the American judiciary and body politic, and facilitated in 2010 by Citizens United. From 2008/2009 to 2016 Defendants Allstate/Geico/FSMB perpetrated a massive series of crimes against Kaul, though the conduction of a **"pattern of racketeering"** through the **"SUUN Association-In-Fact Enterprise"** and in furtherance of the first half of **"SUUN Scheme"** and the entire **"HIPIC-FC"** scheme.

113.     <u>Obstruction of justice/public corruption</u>: From 2008/2009 to 2016, Defendants Allstate/Geico did with knowing illegality, use the US mail/wires to exchange information with Defendant FSMB, regarding the **"SUUN Scheme"** to eliminate Kaul. From 2016 to 2021, Defendants Allstate/Geico/counsel did with knowing illegality use the US mail/wires to conspire to commit, and commit corruption of judges within the United States District Court, to violate Kaul's prosecutorial rights and obstruct justice, in order to prevent Kaul from further exposing the Defendants prior crimes (2008/2009-2016) in the executive/legislative/judicial branches of the State of New Jersey and the United States Bankruptcy Court, in addition to attempting to conceal their securities fraud crimes in the NYSE (2016-2021).

114.     <u>Money laundering</u>: Defendants Allstate/Geico did launder and continue to launder the proceeds of their crimes (2008/2009-2021) through the NYSE and global investment community, including the sovereign funds of many other nations, and exchanges, including the London, Shanghai and Bombay Stock Exchanges. Defendants Allstate/Geico continue to fail to disclose to international markets their ongoing commission of securities fraud (2016-Present), and the liability this continues to cause to private/sovereign funds currently invested/investing in these Defendants. Defendants Allstate/Geico have not disclosed the **$28,000 trillion +** liability in any filings, anywhere in the world, at any point in time after 2016.

**FSM B**

115.     <u>Mail fraud/wire fraud</u>: In a period from 2008/2009 to 2016, Defendant FSMB did, with knowing illegality, use the US mail/wires to exchange information with Defendants Allstate/Geico regarding the first half of the **"SUUN Scheme"** pertaining to the elimination of Kaul. From 2016 to the present, Defendant FSMB did similarly use the US mail/wires to conspire with **<u>The Kaul Cases</u>** Defendants/counsel to commit acts of corruption of judges/senators within the United States District Court/US Government, purposed to violate Kaul's prosecutorial rights and obstruct justice, in order to prevent Kaul from further exposing **<u>The Kaul Cases</u>** Defendants crimes (2008/2009 to 2016), in addition to attempting to conceal their securities fraud crimes (2016-Present). From 2014 to 2021, Defendant FSMB, in collusion/conspiracy with and through the **"FC"**, did conspire with **<u>The Kaul Cases</u>** Defendants/counsel to attempt to obstruct Kaul from procuring a medical license anywhere in the world, in order to violate his prosecutorial rights by restricting his access to capital, to prevent him from exposing the crimes (2008/2009 to 2021) of **<u>The Kaul Cases</u>** Defendants (mail fraud/wire fraud/perjury/extortion/kickbacks/obstruction of justice/public corruption/evidence

tampering/witness tampering/securities fraud/bankruptcy fraud/bank fraud/money laundering/judicial corruption/kidnapping/manslaughter/chemical weapon trafficking).

116.    <u>Bribery</u>: Since 1986, Defendant FSMB has conducted ongoing schemes of bribery with for-profit corporations (**"HIPIC-FC"**), in furtherance of their scheme to monopolize all elements of American medicine, from the business of regulation to healthcare commerce. Defendants Allstate/Geico bribed, and continue to bribe Defendant FSMB, to have Kaul eliminated from the market (2012/2014) and to attempt to prevent his re-entry, in order to deny him access to capital, to attempt to prevent Kaul from prosecuting them in the United States District Court. From 2016 to 2021, Defendant FSMB has bribed judges/senators within the United States District Court/US Government, in order to violate Kaul's prosecutorial rights and obstruct justice, in order to prevent Kaul from further exposing **The Kaul Cases** Defendants crimes (2008/2009 to 2016), in addition to attempting to conceal their securities fraud crimes (2016-Present).

117.    <u>Obstruction of justice/public corruption</u>: From 2016 to 2021, Defendant FSMB, by, through and with the **"FC"**, and in collusion/conspiracy with **The Kaul Cases** Defendants, did bribe judges/senators within the United States District Court/US Government to pervert the course of justice, and violate Kaul's prosecutorial rights, in order to prevent him from further exposing the crimes of **The Kaul Cases** Defendants.

118.    <u>Money laundering</u>: Since 1986, Defendant FSMB, has generated millions of dollars from its **"pattern of racketeering"** within American medicine, through the exploitation of the American public and medical profession. The criminal proceeds have been laundered through investments in corporations publicly traded on the NYSE, including Defendants Allstate/Geico and other health insurance companies including third-party carriers commercially allied with state/federal governments. The proceed are also laundered through law/political lobbying/public relation firms that funnel bribes to state/federal judges/executives/legislators, in exchange for judgments/legislation that further the political/economic agendas of Defendant FSMB and all corporations involved in commerce with the **"HIPIC-FC-Association-In-Fact Enterprise"**.

<u>**RICO 5**</u>
**Association-In-Fact Enterprise: State of New Jersey-United States Bankruptcy Court-United States District Court**
**Defendant Persons: Christie/Murphy/Grewal/Allstate/Geico**
**RICO Predicate Acts: kidnapping/mail fraud/wire fraud/bribery/obstruction of justice/public corruption**

<u>**Overview**</u>:

119.    In a period from February 22, 2016 to February 24, 2021, **The Kaul Cases** Defendants did conduct a **"pattern of racketeering"** within the association-in-fact enterprise of the State of New Jersey-United States Bankruptcy Court-United States District Court, and did convert it into a **"racketeering enterprise"**, through which they perpetrated the RICO predicate acts of kidnapping/mail fraud/wire

fraud/bribery/obstruction of justice/public corruption/judicial corruption, in order to prevent Kaul from further exposing their crimes prior to the crime of having Kaul kidnapped on May 27, 2021. The scheme functioned in that it caused all cases filed by Kaul, except K11-1/K11-3, to be transferred to the District of New Jersey-Newark. However, the courts in K11-1/K11-3 have refused, in collusion/conspiracy with **The Kaul Cases** Defendants to issue summonses.

**Christie**:

120.    Kidnapping: On May 27, 2021, Defendant Christie was served at his law office in Morristown, with a summons and complaint in K11-2. Shortly thereafter, Defendant Christie did, with knowing illegality, conspire with Defendants Murphy/Grewal/Allstate/Geico to have Kaul kidnapped on May 28, 2021 by nine (9) armed individuals (K11-9), who purported to be NJ state police. No warrants were produced, and Kaul was forcibly detained against his will, and rapidly removed to a local police station, where he was chained to a bench. He was then forcibly transferred to another police station and told that he was to be transferred to the Mercer County Jail in Trenton, NJ. Kaul's repeated requests for a warrant were ignored. The events surrounding the kidnapping are detailed in K11-9. This RICO predicate act was committed in order to have Kaul jailed/injured/killed in order to cause him to become unable to continue the prosecution of K11-2, to prevent him from further exposing the crimes of **The Kaul Cases** Defendants, including those of securities fraud.

121.    Mail/wire fraud: In a period from May 27, 2021 to the present, Defendant Christie, with knowing illegality did use the US mail/wires to exchange information with Defendants Murphy/Grewal/Allstate/Geico regarding the planning/execution and unexpected consequences of the 'Kaul Kidnapping Scheme. When the scheme failed, the Defendants, realizing that Kaul would file suit, did use the US mail/wires to conspire with judges/senators in the United States District Court/US Government to violate Kaul's prosecutorial rights by obstructing justice through venue transfer from the Southern District of New York to the District of New Jersey, where the case was dismissed, in an attempt to prevent Kaul from further exposing the crimes of **The Kaul Cases** Defendants (2008/2009 to 2021).

122.    Bribery: In a period from 2008/2009 to 2016, Defendant Christie did engage in multiple quid pro quo schemes of bribery with Defendants Allstate/Geico, in which he abused state power to further the economic/political agendas of, amongst others, himself and these corporate Defendants, the principal purposes of which were to have elected as the 2016 US President and to increase share value/executive compensation of Defendants Allstate/Geico, through the knowing/willful exploitation of the American public and medical profession. During his tenure as NJ Governor (2009-2017) Defendant Christie abused state power to have incarcerated many innocent physicians (principally ethnic minorities) to whom the insurance industry owed money for the provision of clinical services. These false prosecutions/convictions were perpetrated by his Attorney General, and in NJ state courts corrupted by Defendants Allstate/Geico.

123. <u>Obstruction of justice/public corruption</u>: Defendants Christie, in conspiring to have Kaul kidnapped, did attempt to violate Kaul's prosecutorial rights and obstruct justice in the United States District Court, in order to prevent Kaul from exposing the massive crimes of **The Kaul Cases** Defendants, of amongst other things, judicial/political corruption.

**Murphy**:

124. <u>Kidnapping</u>: Defendant Murphy, prior to becoming the NJ Governor was the US Ambassador to Germany, and prior to that was a partner at Goldman-Sachs, a corporation that holds shares in Allstate/Geico, the dividends from which Defendant Murphy continues to profit. Defendant Murphy, recognizing that there were no legitimate means of contesting Kaul's right to continue prosecuting **The Kaul Cases** Defendants, did conspire with Defendants Christie/Grewal/Allstate/Geico to have Kaul eliminated on May 28, 2021, be it by either severe injury and or death, in order to prevent him from further exposing the crimes of **The Kaul Cases** Defendants, including the securities fraud violations. Defendant Murphy, in perpetrating the 'Kaul Kidnapping Scheme', did recognize its illegality and violation of Kaul's basic human rights, but persisted nonetheless, because of the immense civil/criminal liability posed to **The Kaul Cases** Defendants.

125. <u>Mail/wire fraud</u>: Defendant Murphy, in conspiring to perpetrate the '<u>Kaul Kidnapping Scheme</u>' did, with knowledge of its illegality, use the US mail/wires to exchange information with Defendants Christie/Grewal/Allstate/Geico, about both the execution and the unintended consequences, including the filing/publicization of K11-9.

126. <u>Bribery</u>: Defendant Murphy continues to receive bribes from Defendants Allstate/Geico, under cover of dividends/shares from Goldman-Sachs, and has not, since becoming the NJ Governor, relinquished his or his family's holdings in the corporation, in accordance with NJ law pertaining to state official conflicts of interest.

127. <u>Obstruction of justice/public corruption</u>: Defendant Murphy, in conspiring to have Kaul kidnapped, did attempt to violate Kaul's prosecutorial rights and obstruct justice in the United States District Court, in order to prevent Kaul from exposing the massive crimes of **The Kaul Cases** Defendants, of amongst other things, judicial/political corruption. Defendant Murphy, in furtherance of this scheme to obstruct justice, did in a period from June 15, 2021, conspire with judges/senators in the United States District Court/US Government to have K11-9 transferred from the Southern District of New York to the District of New Jersey, and then dismissed.

**Grewal**:

128. <u>Kidnapping</u>: On May 27, 2021, Defendant Grewal did conspire with Defendants Murphy/Christie/Allstate/Geico to have Kaul kidnapped on May 28, 2021, with the purpose of having him incarcerated in the Mercer County jail in Trenton, over the Memorial Day Weekend, in order to haver him either seriously injured or killed. When the 'Kaul Kidnapping Scheme' commenced on May 28, 2021 at approximately 2:30 pm EST, Defendant Grewal remained in constant contact with the kidnappers, and did, at approximately 7 pm EST, learn that the scheme had publicly failed. Defendant Grewal, in

the planning and execution of the scheme, did know that its principal purpose was to have Kaul eliminated, in order to prevent him further exposing the serious and massive crimes (2008/2009-2021) of **The Kaul Cases** Defendants.

129. <u>Mail/wire fraud</u>: Defendant Grewal, in the planning, perpetration and 'damage control' phases of the 'Kaul Kidnapping Scheme' did, with a knowing illegality, use the US mail/wires to exchange information with Defendants Christie/Murphy/Allstate/Geico, and in these exchanges the Defendants revealed their opinion that the scheme would be successful, and Kaul would be mentally and or physically unable to continue his prosecution of **The Kaul Cases** Defendants. Also in these exchanges, were frantic emails that evidenced their fear of public exposure when they learned that the scheme had failed, particularly as it related to the political careers of Defendants Murphy and Grewal.

130. <u>Bribery</u>: Defendant Grewal made the decision to participate in the 'Kaul Kidnapping Scheme' believing that it would be successful. However, when it failed and Kaul sued him on June 15, 2021 (K11-9), he panicked and was transferred to the enforcement division of the SEC, in the belief that it would shield him from Kaul's prosecution. The transfer was the bribe, part of the quid pro quo with the other Defendants, in which they attempted to purchase the silence of Defendant Grewal, while placing him in a position with a perception that it would prevent exposure of the securities fraud crimes of Defendants Allstate/TD/Geico (Berkshire Hathaway).

131. <u>Obstruction of justice/public corruption</u>: Defendant Grewal was appointed the NJ AG in 2017 by Defendant Murphy. He, as with Defendant Murphy, took orders from the insurance industry, in the filing of indictments and or license revocation actions against physicians to whom the insurance industry owed monies. Many of these false cases were brought on fabricated and meaningless claims regarding the prescription of pain-relieving medications. Defendant Grewal participated with Defendants Allstate/Geico/Murphy/Christie in schemes of public corruption and abused state power to violate the Constitutional rights of these physicians, and in the process caused an obstruction of justice, all purposed to further the economic/political agendas of Defendants Christie/Murphy/Allstate/Geico, through the exploitation of the American public and medical profession. Defendant Grewal, in the commission of these RICO predicate acts, did recognize that he, a public servant, was converting the State of New Jersey into a **"racketeering enterprise"** to serve the interests of corrupt corporations/politicians/judges.

**Allstate/Geico:**

132. <u>Kidnapping</u>: From 2006 to 2016, Defendant Allstate employed a multi-pronged strategy to attempt to eliminate Kaul, that included: **(i)** denial of certification for patient clinical care; **(ii)** denial of payment after Kaul provided clinical care; **(iii)** contesting Kaul at every fee arbitration; **(iv)** disseminate falsehoods to lawyers/doctors/surgical centers/hospitals to attempt to destroy Kaul's reputation, and make it impossible for him to work; **(v)** file fraudulent lawsuits against Kaul in corrupted NJ state/federal courts when Kaul wins the arbitration hearings; **(vi)** order the state medical board to revoke Kaul's license; **(vii)** have the state AG and US Attorney/FBI initiate far-reaching

investigations purposed to alienate Kaul, have him incarcerated and seize his assets and those of his family**; (viii)** have him indicted on false tax charges; **(ix)** conspire with his ex-wife to have him jailed on unpaid child support charges; **(x)** prevent him access to banking services**; (xi)** bribing judges/senators in federal court/government to obstruct/dismiss all cases filed by Kaul; **(xii)** scheming to have Kaul **KIDNAPPED**/ deported/jailed/seriously injured/killed.

133.      Mail/wire fraud: Defendants Allstate/Geico, in the planning/execution/'damage control' phases of the 'Kaul Kidnapping Scheme', did, with knowledge of its illegality, use the US mail/wires to exchange information with Defendants Murphy/Christie/Grewal

134.      Bribery: In conspiring to commit the RICO predicate act of kidnapping, Defendants Allstate/Geico did funnel bribes to Defendants Christie/Murphy/Grewal, as part of a quid pro quo scheme, in which Defendants Christie/Murphy/Grewal sold, without the public's permission, state power to Defendants Allstate/Geico, in furtherance of their efforts to eliminate Kaul, and prevent him from further exposing their crimes.

135.      Obstruction of justice/public corruption: In having Kaul kidnapped, **The Kaul Cases** Defendants did attempt to violate his prosecutorial rights in the United States District Court, in the belief that he would either be unwilling or unable to continue the prosecution of his claims, and did in the process, attempt to cause a knowingly illegal obstruction of justice within the United States District Court. Defendants Allstate/Geico, in coopting a state police agency into the commission of the crimes of kidnapping/mail fraud/wire fraud to obstruct justice in the United States District Court, did simultaneously: **(i)** convert the State of New Jersey into a **"racketeering enterprise"** through which the Defendants, being aided/abetted by the state police, did conduct a **"pattern of racketeering"** through the commission of RICO predicate acts; **(ii)** convert the United States District Court into a **"racketeering enterprise"** through which the State of New Jersey, being aided and abetted by the Defendants/NJ state police, did conduct a **"pattern of racketeering"** through the commission of the RICO predicate acts of obstruction of justice/kidnapping/mail fraud/wire fraud/bribery, all purposed to eliminate Kaul and prevent him from further exposing their corporate decimating crimes.

### **Violation of Civil Rights**
### **Symbiosis of State/Private Actors**

136.      **Applicable state function tests**:

1. The Symbiotic Test
2. The Joint Participation Doctrine
3. The State Command and Encouragement Test
4. The Pervasive Entwinement Test
5. The Public Function Test

137.    **Facts of test confirmation:**

The above pled facts regarding: **(i)** the exchange between private and state actors, of monies and information pertaining to **"patterns of racketeering"** conducted through the executive/legislative/judicial branches of the State of New Jersey, the United States District Court and the United States Bankruptcy Court; **(ii)** the purchasing by private actors of state functions through schemes of judicial/political bribery; **(iii)** the funding by the State of New Jersey of legal defenses of private actors in **The Kaul Cases,** do confirm the intertwinement, for the purposes of section 1983 claims, of the state actor status of the private actors/defendants, and that the crimes committed against Kaul by the private actors/defendants, are the crimes of the State.

**Section 1983 claim**
**Violation of 1st/2nd/4th/5TH/6th/8TH/14TH Amendments**

138.    The Law:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

**139.    The Facts:**

In a period from 2008/2009 to the present, the Defendants, as state-actors did abuse state/federal power to knowingly/willfully violate and deprive Kaul of his constitutional rights pursuant to the 1st/2nd/4th/5th/6th/8th/14th amendments, and that these violations did illegally deprive Kaul of: **(i)** his property; **(ii)** his right to due process; **(iii)** his right to freedom of speech; **(iv)** his right to an impartial tribunal; **(v)** his prosecutorial rights; **(vi)** his right to equal protection; **(vii)** his liberty and a decade of his life. These injuries were perpetrated by private/state/federal actors, and through the State of New Jersey, the United States Bankruptcy Court, the United States District Court and the NYSE. The commercial nexus between Defendants Allstate/TD/Geico and Defendant ICE, and the complicity of Defendant ICE in the securities fraud violations of Defendants Allstate/TD/Geico,
does confer state-actor liability on Defendant ICE with regards to the violations of Kaul's constitutional rights.

**The Kaul Cases** Defendants were, and are motivated to commit, and continue to commit these violations of Kaul's human rights, in order to prevent Kaul from exposing their crimes, including those of defrauding the global equities market.

Kaul's injuries (**Exhibit 9**).

**UN Human Rights Violation**
**The United Nations Universal Declaration of Human Rights**

140.        **The Kaul Cases** Defendants have knowingly/willfully abused the power of the American State to violate Kaul's human rights as enshrined in the Universal Declaration of Human Rights (**Exhibit 2**).

**BASCH CLAIM**
**RICO**
**Association-In-Fact Enterprise: State of New Jersey-Rivkin Radler-United States District Court**
**("SRU Association-In-Fact Enterprise"/"SRU Scheme")**
**Defendant Persons: Geico/Rivkin Radler/Gersenoff**
**RICO Predicate Acts: mail fraud/wire fraud/bribery/public corruption**

**Overview**:

141.    In a period that commenced in or about 2008/2009, Defendants Geico/Rivkin Radler/Gersenoff did conspire to conduct, and did with a knowing illegality, conduct a **"pattern of racketeering"** through the **"SRU Association-In-Fact Enterprise"**, through the commission of the RICO predicate acts of mail fraud/wire fraud/bribery/public corruption, in the perpetration of the **"SRU Scheme"** under cover of the State of New Jersey and the United States District Court. The scheme is purposed to exploit the medical expertise of Plaintiff Basch and defraud him of his property, by illegally using the power of the United States District Court, in order to increase corporate/executive compensation and share price

142.    The **"SRU Scheme"** is purposed to increase Defendant Geico's executive compensation/share price, and Defendant Rivkin Radler/Gersenoff's 'legal fees', at the expense, and through the grave exploitation of the American public and medical profession. The Defendants have been aided and abetted in their scheme by corrupted judges within the United States District Court for the District of New Jersey/corrupted politicians within both the state/federal governments/corrupted media outlets, the role of the latter entity being to digitally disseminate slanderous/libelous information about the person/s against whom they file suit.

143.    Defendant Geico has perpetrated, and continues to perpetrate this scheme, at the heart of which lies the same **"pattern"** of fraud, and it is this: There exists within New Jersey a no-fault arbitration system that adjudicates claims filed by physicians and other health related professionals, against auto-insurance carriers for compensation regarding care life-saving care delivered to their clients, who have sustained injuries in car accidents. If a physician prevails in these arbitrations, members of this sector of the insurance industry then file knowingly fraudulent lawsuits in state/federal court within the geographic boundaries of the State of New Jersey, seeking to re-litigate their losses in state sanctioned arbitration forums, to whose jurisdiction they submitted.

144.    In the arbitration proceedings the Defendants scheme to intentionally omit the arguments they subsequently submit in state/federal courts, as they recognize that the physician has no legal costs in the arbitration (paid by losing insurance carrier), but that state/federal courts actions will require the physician to retain a lawyer at his own enormous cost. Within the subsequent state/federal court actions, the Defendants

conspire to file, and do file knowingly false, **evidentially un-supported** RICO claims, in which they seek not only monetary amounts far in excess of what they paid the physician, but injunctions to stop the physician ever treating any of their injured clients. This is their **"open-ended pattern of racketeering"**, one in which they have converted the United States District Court into a massive **"racketeering enterprise"** not dissimilar to the one they have created within American state/federal governments, and the NYSE/SEC.

145.    As a consequence of the Defendants **"racketeering"**, Plaintiff Basch has sustained, and continues to sustain substantial and irreparable injury to his reputation and finances and has no other recourse than to bring suit in this Court. The Defendants have corrupted the judges/court within the District of New Jersey (K11-1/K11-3), and thus Plaintiff Basch, in exercising his Constitutional right to due process/impartial tribunal is afforded the right to vindicate his rights in any court within the United States District Court, other than the District of New Jersey.

**Geico**:

146.    Mail Fraud/Wire Fraud: In a period from 2008/2009 to 2021, Defendant Geico did, with a knowing illegality, and in collusion/conspiracy with judges in the District of New Jersey/Defendant Rivkin Radler/Gersenoff use the US mail/wires in furtherance of the **"SRU Scheme"** and through a **"pattern of racketeering"** whose continuity is **"open-ended"** and has knowingly and respectively converted the United States District Court and it's judges into a **"racketeering enterprise"** and aiders/abettors of the Defendants decade-plus-long crime. Defendant Geico launders the process of its criminal enterprise through the NYSE and members of the S/P 500, a fact they conceal from the global equities market.

147.    Bribery/Public Corruption: In a period from 2008.2009 to 2021, Defendant Geico, in collusion and conspiracy with Defendants Rivkin Radler/Gersenoff, did use the US mail and wires to conspire to commit, and did commit the RICO predicate acts of bribery/public corruption, in funneling bribes to judges within the District of New Jersey in a series of quid pro quo schemes, in which corrupted judges did enter order/judgements adverse to Plaintiff Basch and other physicians, while entering orders/judgments advantageous to Defendant Geico. In the commission of these crimes, Defendants Geico/Rivkin/Radler did know the illegality of their misconduct and did know the severe civil/criminal penalties associated with such felonious conduct. The Defendants corruption of the United States District Court has violated and continues to violate the Constitutional right of Plaintiff Basch to due process/impartial tribunal/equal protection, when life/liberty/property are at stake, as they are here. Defendant Geico has also violated the right of Plaintiff Basch to independent counsel, in that the Defendants continue to conspire to coerce his counsel into having Plaintiff Basch concede to the Defendants fraudulent claims.

**Rivkin Radler**:

148.    <u>Mail Fraud/Wire Fraud</u>: In a period from 2008/2009 to 2021, the law firm of Rivkin Radler has conducted and continues to conduct massive schemes of mail and wire fraud, in which, on a weekly basis, it uses, with a knowing illegality, the US mail/wires to exchange fraudulent information with members of the NJ state/federal judiciary and governments, in furtherance of its multiple **"ongoing"** illegal schemes, that do provide the basis for this complaint. Defendant Rivkin Radler is a central cog in the Defendants **"pattern of racketeering"** conducted in **"enterprises"** and association-in-fact enterprises over a decades-plus-long period in which it has used the cover of its law firm/attorney-client privilege to perpetrate a massive criminal enterprise, in collusion/conspiracy with the State of New Jersey and the United States District Court. Defendant Rivkin Radler has used and continues to use this criminal enterprise to inflict intentional harm on the economic standing and reputation of Plaintiff Basch, harm for which he now seeks recompense.

149.    <u>Bribery/Public Corruption</u>: Defendant Rivkin Radler has within the last two (2) decades, if not longer, perpetrated massive schemes of judicial/public corruption, in which it has both acted as a conduit of bribes from corporations to state/federal politicians/judges, monies that it has disguised as 'legal fees' and 'political campaign donations', **and** a progenitor of bribes/favors to corrupted judges, to whose family members it provides 'no show' jobs. It has conducted these illegal schemes with impunity, as it knows its corporate masters control the investigative/prosecutorial arms of state/federal government. Defendant Rivkin Radlker has employed and continues to employ this scheme against Plaintiff Basch, to violate his Constitutional right to due process/impartial tribunal/equal protection, in its pursuit of profit through the exploitation of the medical expertise and economic welfare of Plaintiff Basch. Defendant Rivkin Radler has conducted these illegal schemes of bribery/public corruption with knowledge of their illegality.

**Gersenoff**:

150.    <u>Mail Fraud/Wire Fraud</u>: Defendant Gersenoff, in a period from 2008/2009 to 2021, has used, with a knowing illegality, the US mail/wires to exchange information with **<u>The Kaul Cases</u>** Defendants and Defendants Rivkin Radler, regarding the planning and execution of the multiple **"racketeering schemes"**, including the **"SRU Scheme"**, in which Defendant Gersenoff acknowledged that Defendant Geico's strategy was to file knowingly false RICO claims against physicians to whom Defendant Geico owed monies and against whom Defendant Geico had lost in state sanctioned arbitration hearings. Defendant Gersenoff acknowledged that these filings did constitute the crimes of mail/wire fraud but stated that because Defendant Geico had corrupted the judges/prosecutors/politicians in the District of New Jersey, their crimes would remain un-investigated and un-prosecuted, and that all lawyers in the District of New Jersey had either been corrupted or were too fearful to file racketeering claims against Defendant Geico. Defendant Gersenoff admitted during one phone call, that Defendant Geico controlled the entire judicial/prosecutorial apparatus within the District of New Jersey. Defendant Gersenoff's 'Fraud on the Court' scheme has caused and continues to cause

injury and violation to the Constitutional rights/economic standing/reputation of Plaintiff Basch, for which he now seeks recompense in this Court.

151.    <u>Bribery</u>: Defendant Gersenoff has, within the last two (2) decades, conducted a **"pattern of racketeering"** with knowing illegality, through the enterprise of the law firm of Defendant Rivkin Radler, by aiding and abetting, and using the attorney-client privilege as cover for the crime of trafficking bribes from Defendant Geico to state/federal politicians/judges, in furtherance of massive quid pro quo schemes, that have exploited, and continue to exploit the American public and medical profession in pursuit of corporate/shareholder profit. For these ongoing/willful injuries, Plaintiff Basch seeks recompense.

# Relief

152.      Please see (**Exhibit 7**).

# Certification

We, the Plaintiffs, do certify that the above statements are true and accurate to the best of our knowledge, and that if it is proved that we knowingly and willfully misrepresented the facts, then we will be subject to punishment.

_____
RICHARD ARJUN KAUL, MD

_____
DAVID BASCH, MD

DATED: AUGUST 17, 2021