www.drrichardkaul.com

February 11, 2022

RECEIVED
SDNY PRO SE OFFICE
2022 FEB 11 PM 1:46

Honorable J. Paul Oetken
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re: Kaul/Basch v ICE et al
    21-CV-06992
    K11-7
    Interview of Defendant Christie's political colleague, Anthony Cappello

Dear Judge Oetken,

We write this letter to respectfully request that in your adjudication of the Defendants' motions, you consider the facts within the enclosed 'Statement'; facts that came into our possession for the first time on February 7, 2022, and that we submit are relevant to claim proof and defense dis-proof.

On February 4, 2022, I conducted a witnessed interview of a Mr. Anthony Cappello, an active member of the New Jersey Republican Party, a close friend of Defendant Christie and the brother of now deceased witness, Kathleen Calabrese, whose September 21, 2017 affidavit is in evidence (K11-7: D.E. 5 Page 64 of 131): **"I explained the situation to my brother, who subsequently spoke with an acquaintance of his, who had knowledge about the circumstances surrounding the suspension. This individual talked with my brother on the condition of anonymity, due to his concerns about possible retaliation from the Christie administration"**. Mr. Cappello is the brother referenced in the affidavit.

Mr. Cappello, a decades-long New Jersey political insider, was presented with various pieces of evidence, and with his intimate knowledge of Defendant Christie, did unequivocally state that

1

the case was **"totally believable"**. His statement undermines the Defendants mischaracterizations of the case as **"vexatious … frivolous … meritless … abusive … harassing"**, and we respectfully request this document's contents be incorporated into your consideration of Defendants' motions.

Plaintiff Basch did not attend the interview, but shortly after it concluded, I communicated to him its factual substance.

We thank you for your attention to this matter.

_____
RICHARD ARJUN KAUL, MD

_____
DAVID BASCH, MD

2

## Statement

1.      In 2003, Kathleen Calabrese ("**Kathleen**") was referred to me by Richard Boiardo, an orthopedic surgeon, who also happened to be the grandchild of Ruggerio Boiardo, aka Richie "**the Boot**" Boiardo, who was an Italian-American mobster in the Genovese crime family.

2.      I first met Boiardo in 2002, when we worked together at Columbus Hospital in Newark, New Jersey.

3.      In one of our early conversations, he told me that his father, also a member of the Genovese clan, had advised him to pursue medicine instead of a life in the mafia, but that in his opinion, the mafia tactics in medicine far surpassed anything he had witnessed in the Italian mafia.

4.      From 2003 to 2012 I provided care to Kathleen.

5.      In April 2012, with the highly publicized suspension of my license, Kathleen told me that she would ask her brother, who was a member of the New Jersey Republican Party, to inquire as to facts and circumstances surrounding the suspension.

6.      In approximately June 2012, Kathleen verbally informed me that her brother had spoken to a person in the New Jersey state government, who had direct knowledge of the facts and circumstances, but spoke on the condition of anonymity out of fear of retaliation from Defendant Christie, the then state governor.

7.      This person stated: **"I think it is terrible what they are doing to Dr. Kaul"**

8.      From 2012 to 2017, my requests to Kathleen for this person's identity were unsuccessful, as were my requests for her brother's contact information. She remained fearful of the consequences to her life, but did upon my continued plea provide an affidavit in September 2017, factually establishing certain content of her brother's communications with the then anonymous state government person.

3

9. In 2017, Kathleen relocated to Florida with her husband, and the last time we spoke was late 2017, in which I once again asked for her brother's contact information and the state government person's identity. She remained fearful and did not provide the information.

10. Kathleen and I became connected on Facebook in approximately 2015.

11. On January 21 2022, her passing was announced on Facebook, and within the post was a comment from her brother, Tony Cappello (**"Cappello"**), who is the manager at Katz's Marina in Lake Hopatcong, New Jersey.

12. On February 4, 2022, myself and Doreen Bettens, an acquaintance of Kathleen, drove to Katz's Marina to provide our condolences and talk with Cappello, but he did not appear to be in the marina office.

13. I left a voicemail, with my name, number, and relation to Kathleen, and approximately two (2) hours later, I received a call from Cappello, during which I expressed my condolences, and during which he indicated having seen our car arrive at his office. I informed Cappello that we would return on February 5, 2022, as there was a matter I wanted to discuss with him face to face.

14. At approximately 2 pm EST on February 5, 2022, myself, and Doreen Bettens, arrived at Katz's Marina.

15. We entered the office, and introduced ourselves to Mr. Cappello, who was sitting behind a desk.

16. Mr. Cappello appeared to be between 55 to 60 years old, has a shaved head, is 5'8" and approximately 200 lbs.

17. We sat down and a conversation commenced between me and Mr. Cappello, which lasted approximately twenty (20) minutes, and during which the following exchanges occurred:

4

a. I first handed Cappello a copy of the affidavit of his recently deceased sister and asked him to review the statement, which he did.

b. Cappello stated that he remembered me because in 2003 I had given my jet ski to a young man named Eric, who had worked for him at Katz's Marina, after Kathleen had informed me of Eric's dream to own one.

c. Cappello, in stating that my gift changed Eric's life, appeared to be very familiar with his sister's personal and professional interactions with me, but kept nervously repeating that he had no recollection of Kathleen's affidavit.

d. I then presented Cappello with copies of the affidavits of John Zerbini and Kenneth Sabo, which he proceeded to closely read.

e. While reading Zerbini's affidavit, Cappello immediately recognized Defendant Kaufman's name, became flushed in the face, and repeated his name aloud, stating **"its Kaufman"**, without asking any questions about Kaufman or denying knowledge of Kaufman's involvement in the conspiracy.

f. Without any further prompting, Cappello then stated that he and Defendant Christie had been friends for many years, through the state and national branches of the Republican Party, but that they had recently 'fallen out'.

g. I asked Cappello the reason for the rift with Defendant Christie, but he provided no factual explanation, and instead asked me why I would be pursuing a politician whose career was over, and who, according to Cappello, did order the so called **"Bridgegate"** scandal.

h. I told Cappello that the Defendants quid pro quo scheme involved them bribing Defendant Christie to have my license revoked.

i. Cappello responded by stating that the scheme perpetrated against me by the Defendants was **"totally believable"**. He stated he was no longer active in New Jersey politics because it is **"so corrupt"**, but that he is involved nationally with the Republican Party.

j. Cappello then stated that he remained in regular contact with Anthony Bucco, a Republican New Jersey state senator who is based in Morris County, New Jersey.

k. I asked Cappello if he would be willing to testify under oath as to the statements he had just made.

5

l.  Cappello responded by stating his concern that his testimony might undermine the contents of Kathleen's affidavit, as he could had no clear recollection of the affidavit.

m.  Cappello is not a lawyer, but between becoming aware of my visit and the actual visit, there did pass more than twenty-four (24) hours, during which it appeared from his evasiveness that he had spoken with Defendant Christie.

n.  I asked Cappello if his brother would have any information, but he stated that his brother lives in Florida and they had not spoken in seventeen (17) years. However, a photo on Facebook shows them together with Kathleen in 2020.

o.  I concluded our conversation by asking Cappello to not only **"revisit your memory bank"** but to make further inquiries within the New Jersey Republican Party, to which he repeated that the only person with whom remains in contact is state senator, Anthony Bucco, and that he has no contact with any other persons.

p.  Doreen Bettens sat to my right and witnessed the entire exchange.

We certify that the above statements are true and accurate to the best of our knowledge, and that if it is proved we knowingly and willfully misrepresented the facts, then we will be subject to punishment.

Dated: February 11, 2022

_____
RICHARD ARJUN KAUL, MD

_____
DAVID BASCH, MD

cc: All Counsel via email
    All parties with a legal or other interest