**www.drrichardkaul.com**

**JUNE 5, 2025**

CLERK OF THE COURT
UNITED STATES DISTRICT COURT
500 PEARL STREET, NY, NY 10007

RE: KAUL v ICE: 21-CV-06992
   K11-7
   SUBMISSIONS IN SUPPORT OF PROOF OF ILLEGALITY OF K11-23 DEFENDANT OETKEN'S
   PURPORTED JUNE 17, 2025 'CONTEMPT' HEARING

Dear Clerk of the Court,

Please find submitted the below identified documents with notations as to those that were received in the court and remain unpublished from the K11-7 docket. The purposeful diversion of these filings did stem from an instruction/order from K11-23 Defendant Oetken, but an instruction/order, the enactment of which has caused non-judicial personnel within the S.D.N.Y. to become liable within the **'Revocation-Cover-Up-Conspiracy'** perpetrated by **The Kaul Cases** Defendants in a period from 2005-2025. Please be advised as to the legal consequences and liability of knowingly diverting properly filed documents from the docket.

Please also be noticed that K11-23 Defendant Oetken, upon coming to know of service of Plaintiff Kaul's petition to the Supreme Court of the United States, did improperly and illegally conspire with persons involved in that filing to ensure a clerical excuse would be found to return the petition. The petition arrived in the Supreme Court on May 28, 2025 and a copy was filed in the S.D.N.Y. on June 2, 2025, but it was not till June 11, 2025 that Plaintiff Kaul was informed of the purported clerical error, the purpose being to improperly/illegally render it moot consequent to the conspiratorially abbreviated time period between June 11th and 17th. The one-day difference (June 2 filing in the court and its June 3, 2025 publishing to the docket) are substantially less than the time taken for other documents, that were either published five (5) days after filing in the court or in some cases not published at all and illegally diverted from the docket.

These violations, in conjunction with the admitted facts of every offense/violation/crime do further render illegal the proposed June 17, 2025 purported 'contempt' hearing.

**JANUARY 9, 2025: K11-7** – LETTER FROM PLAINTIFF KAUL TO U.S. ATTORNEY PAMELA BONDI.

1

**JANUARY 13, 2025: K11-23** – ADMISSIONS OF FACT OF K11-23 DEFENDANT NYS ATTORNEY GRIEVANCE COMMITTEE.

**MARCH 22, 2025: K11-26** – FIRST FOURTEEN (14) PAGES OF COMPLAINT IN KAUL v SCHUMER/OETKEN.

**MAY 10, 2025: K11-7 + K11-23** – LETTER FROM PLAINTIFF KAUL TO COUNSEL FOR K11-23 DEFENDANT OETKEN.

**MAY 14, 2025: K11-7 + K11-23** – LETTER FROM PLAINTIFF KAUL TO CHAIRMAN ON CODE OF JUDICIAL CONDUCT.

**MAY 14, 2025: K11-7 + K11-23** – LETTER FROM PLAINTIFF KAUL TO U.S. ASSISTANT ATTORNEY GENERAL HARMEET DHILLON.

**MAY 14, 2025: K11-7 + K11-23** – LETTER FROM PLAINTIFF KAUL TO CHIEF JUDGE LAURA SWAIN.

**MAY 14, 2025: K11-7 + K11-23** – LETTER FROM PLAINTIFF KAUL TO AG PAMELA BONDI.

**MAY 15, 2025: K11-7 + K11-23** – LETTER TO SENATORS JOSH HAWLEY AND JOHN CORNYN.

**MAY 15, 2025: K11-7 + K11-23** – LETTER TO FBI DIRECTOR PATEL.

**MAY 15, 2025: K11-7 + K11-23** – LETTER TO JORGE DIPICO AT THE NYS ATTORNEY GRIEVANCE COMMITTEE.

**MAY 15, 2025: K11-7 + K11-23** – LETTER FROM PLAINTIFF KAUL TO JOHN KELLER, ACTING DIRECTOR OF THE PUBLIC INTEGRITY DIVISION.

**MAY 15, 2025: K11-7 + K11-23** – LETTER FROM PLAINTIFF KAUL TO DIRECTOR SOZIO OF THE S.D.N.Y. U.S.M.S.

**MAY 15, 2025: K11-7 + K11-23** – LETTER FROM PLAINTIFF KAUL TO NATIONAL DIRECTOR SERRALTA OF THE U.S.M.S.

**JUNE 4, 2025: K11-7 + K11-23** – LETTER FROM PLAINTIFF KAUL TO DIRECTOR SOZIO OF THE U.S.M.S.

**JUNE 5, 2025: K11-7** – ARTICLES OF JUDICIAL CODE OF CONDUCT AND JUDICIAL OBLIGATION TO REPORT CRIMES OF ANOTHER FEDERAL JUDGE – **FILED IN COURT BUT NOT PUBLISHED TO THE DOCKET.**

**JUNE 5, 2025: K11-7** – LETTER FROM PLAINTIFF KAUL TO CHIEF JUDGE DEBRA ANN LIVINGSTON - **FILED IN COURT BUT NOT PUBLISHED TO THE DOCKET.**

**JUNE 6, 2025: K11-7** – MOTION FOR DISQUALIFICATION OF K11-23 DEFENDANT JAMES PAUL OETKEN - **FILED IN COURT BUT NOT PUBLISHED TO THE DOCKET.**

**JUNE 9, 2025: K11-7** – SUBMISSIONS AS TO K11-23 DEENDANT OETKEN'S STATE OF CONFLICTEDNESS AND ILLEGALITY/'FRAUD ON THE COURT' OF HIS PROPOSED JUNE 17, 2025 PURPORTED 'CONTEMPT' HEARING.

**JUNE 9, 2025: K11-7** – MOTION FOR K11-23 DEFENDANT OETKEN TO SHOW CAUSE - **FILED IN COURT BUT NOT PUBLISHED TO THE DOCKET.**

**JUNE 11, 2025: K11-7** – MOTION TO ADJOURN THE PROPOSED JUNE 17, 2025 PURPORTED 'CONTEMPT' HEARING IN KAUL v ICE: 21-CV-06992 (K11-7).

K11-23 Defendant Oetken's diversion from the docket of the above identified documents and his failure to address and or refute/contest the facts within the show cause and disqualification motions have caused pursuant to the doctrine of tacit admissions, a further admittance of the facts that render him conflicted, substantiate his willful violation of Plaintiff Kaul's human/civil/constitutional rights and subject him and his co-conspirators to further suit pursuant to the Ku Klux Klan Act of 1871 (referred today as a section 1983 claim) and RICO. K11-23 Defendant Oetken, being a white man from the Klan's heartland of Kentucky, was raised in this culture and Plaintiff Kaul being an Indian has direct experience of such discrimination, that has been and is more than evident in K11-23 Defendant Oetken's blatant discrimination and violation of his human/civil/constitutional rights in K11-7 (August 19, 2021 to the present). The Ku Klux Klan Act of 1871 was enacted for many reasons, one being that many judges were active 'card-carrying' Klansmen. K11-23 Defendant Oetken/K11-27 Defendants impermissible K11-7 collateral attack on Plaintiff Kaul does further evidence their guilt and of their desperation to have Plaintiff Kaul eliminated (jail/death). K11-7 was officially closed in late 2022 and never re-opened and there exists nothing in common, statutory or constitutional law that permits a closed case to be employed in a collateral attack scheme on other legitimately admitted cases within the jurisdiction of other independent district courts.

K11-23 Defendant had the right to enter an injunction in his court, but did not have the right to injunct every other district court or indeed Plaintiff Kaul from having cases based on ongoing/"new" injuries to Plaintiff Kaul's life/liberty/property/reputation litigated in other district courts. The law - Continuing Violations Doctrine/Bodner v. Banque Paribas 114 F.Supp.2d 117 (2000)/Lawlor v. National Screen Service Corp. I 349 U.S. 322 (1955) - permits and substantiates the unconditional filing of new cases for ongoing/"new" injuries and does not prohibit their filing even if there exists a purported nationwide 'injunction'. K11-23 Defendant Oetken has failed to address how his proposed June 17, 2025 'contempt' hearing is lawful in light of the controlling SCOTUS authorities, his ongoing K11-23 related state of conflicted-ness, and his admissions of fact of amongst other things, having abused the power of the federal bench to perpetrate bribery related quid pro quo schemes with the K11-7/K11-27 Defendants.

K11-23 Defendant Oetken's proposed June 17, 2025 purported 'contempt' hearing is nothing but an illegal attempt to use the power of the federal bench to attempt to prevent Plaintiff Kaul from further exposing the offenses/violations/crimes committed against Plaintiff Kaul's life/liberty/property/reputation (2005-2025), a modern-day Klan-esque lynching. These individuals have neither the courage nor character to face, like men, the K11-23 and K11-27 charges. These are the same persons who spent many years boasting in the media about the offenses/violations/crimes they so wantonly committed against Plaintiff Kaul because of his professional success and his invention and performance in February 2005 of the first outpatient percutaneous spinal fusion. A procedure that revolutionized the field of spine surgery and converted the previously risk-laden open-back surgery into a procedure with increased good to very good outcomes and a very low complication rate. A procedure that helped humanity:

https://www.youtube.com/watch?v=guwx5kuBiEg&t=3s

But yet in 2025, these same persons, who once stood on the 'top stands' flooding the media with stories of Plaintiff Kaul's alleged malfeasance, but now, like the cowards they are, shirk and shift in the cowardly shadows, not uttering a word in the media that they once clung to like a baby to its mother. This story and that of the cowardice of **The Kaul Cases** Defendants, including K11-23 Defendant Oetken is in the process of being written. A man is always better advised to not start a fight unless he has the durability/tenacity/strength to withstand and face the reactionary forces. **The Kaul Cases** Defendants, a collection of 'wannabe' gangsters, are anything but, for a real gangster stands his ground with the dignity of facing and not scuttling away from a person he so stupidly and unnecessarily made his life-long opponent.

Please ensure all of the submitted documents are published to the K11-7 docket in the same speedy manner as was the June 2, 2025 filed and June 3, 2025 filing of Plaintiff Kaul's petition for a writ of prohibition to the Supreme Court of the United States.

Thank you for your assistance in this matter.

Yours sincerely

_R Kc)._

RICHARD ARJUN KAUL, MD

**www.drrichardkaul.com**

**JANUARY 9, 2025**

PAM BIONDI
BALLARD
601 THIRTEENTH STREET NW
SUITE #250S
WASHINGTON, DC 20005

**RE: JAMES PAUL OETKEN**

Dear Ms. Biondi,

I write this letter in anticipation of your appointment as the Attorney General of the United States, as I believe it would be a matter of immense interest to President Trump and the American public.

The issue involves a profoundly corrupt district judge, James Paul Oetken, whose 2011 appointment to the federal bench of the S.D.N.Y. was submitted by Senator Charles Schumer. Defendant Oetken is currently being sued in a case pending in the U.S.D.C. for the Southern District of Mississippi, where he is charged with and has admitted to, amongst other things, the crimes of bribery, public corruption, wire fraud. Attached to this letter is a copy of his Admissions of Fact. This document speak for itself and does substantiate he be criminally investigated, because the charges currently levied against him do simply reflect a decade-plus-long **"pattern of racketeering"** in which he has converted his court into a **"racketeering enterprise"**. I have no doubt that an investigation will uncover facts pertaining to political and economic favors that he has, through the knowingly illegal use of his bench, caused to inure to the benefit of his Democratic 'masters' and the disadvantage of their political opponents.

If ever there a judge who needs to be replaced, it is Defendant Oetken, who had he been asked to join the New York conspiracy against President Trump would have had no hesitation.

Regardless, Defendant Oetken has violated and continues to violate criminal law in taking bribes, and there exists sufficient evidence to have him removed, his position replaced and have him charged accordingly.

Yours sincerely



**www.drrichardkaul.com**

**JANUARY 9, 2025**

PAM BIONDI
BALLARD
601 THIRTEENTH STREET NW
SUITE #250S
WASHINGTON, DC 20005

**RE: JAMES PAUL OETKEN**

Dear Ms. Biondi,

I write this letter in anticipation of your appointment as the Attorney General of the United States, as I believe it would be a matter of immense interest to President Trump and the American public.

The issue involves a profoundly corrupt district judge, James Paul Oetken, whose 2011 appointment to the federal bench of the S.D.N.Y. was submitted by Senator Charles Schumer. Defendant Oetken is currently being sued in a case pending in the U.S.D.C. for the Southern District of Mississippi, where he is charged with and has admitted to, amongst other things, the crimes of bribery, public corruption, wire fraud. Attached to this letter is a copy of his Admissions of Fact. This document speak for itself and does substantiate he be criminally investigated, because the charges currently levied against him do simply reflect a decade-plus-long **"pattern of racketeering"** in which he has converted his court into a **"racketeering enterprise"**. I have no doubt that an investigation will uncover facts pertaining to political and economic favors that he has, through the knowingly illegal use of his bench, caused to inure to the benefit of his Democratic 'masters' and the disadvantage of their political opponents.

If ever there a judge who needs to be replaced, it is Defendant Oetken, who had he been asked to join the New York conspiracy against President Trump would have had no hesitation.

Regardless, Defendant Oetken has violated and continues to violate criminal law in taking bribes, and there exists sufficient evidence to have him removed, his position replaced and have him charged accordingly.

Yours sincerely

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

**JAN 14 2025**

ARTHUR JOHNSTON
BY_____ DEPUTY

RICHARD ARJUN KAUL, MD;
JANE DOE; JOHN DOE.

Plaintiff

CIVIL ACTION  NO.: 24-CV-00621-CWR-LGI

v.

JAMES PAUL OETKEN
(PERSONAL AND OFFICIAL CAPACITY)
MISSISSIPI MEDICAL BOARD;
NEW YORK STATE ATTORNEY GRIEVANCE
COMMITTEE; JANE DOE; JOHN DOE.

Defendants.

---

## ADMISSIONS OF MATERIAL AND UNDISPUTED FACT NOT RELATED TO THE ISSUE PENDING THE COURT'S RULING ON THE MOTION AND PURSUANT TO RULE 8(b)(6) AS TO DEFENDANT NEW YORK ATTORNEY GRIEVANCE COMMITTEE

Respectfully Submitted

RICHARD ARJUN KAUL, MD

JANUARY 13, 2025

1

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

> SOUTHERN DISTRICT OF MISSISSIPPI
> **FILED**
> **JAN 1 4 2025**
> ARTHUR JOHNSTON
> BY_____ DEPUTY

RICHARD ARJUN KAUL, MD;
JANE DOE; JOHN DOE.

Plaintiff

CIVIL ACTION  NO.: 24-CV-00621-CWR-LGI

v.

JAMES PAUL OETKEN
(PERSONAL AND OFFICIAL CAPACITY)
MISSISSIPI MEDICAL BOARD;
NEW YORK STATE ATTORNEY GRIEVANCE
COMMITTEE; JANE DOE; JOHN DOE.

Defendants.

---

## ADMISSIONS OF MATERIAL AND UNDISPUTED FACT NOT RELATED TO THE ISSUE PENDING THE COURT'S RULING ON THE MOTION AND PURSUANT TO RULE 8(b)(6) AS TO DEFENDANT NEW YORK ATTORNEY GRIEVANCE COMMITTEE

Respectfully Submitted

RICHARD ARJUN KAUL, MD

JANUARY 13, 2025

1

**1.** I admit that on or about January 6, 2025 I came into possession of the 'ADMISSIONS OF MATERIAL AND UNDISPUTED FACT NOT [SIC] RELATED TO THE ISSUE PENSDING THE COURT'S RULING ON THE MOTION AND PURSUANT TO RULE 8(b)(6) AS TO DEFENDANT JAMES PAUL OETKEN'

**2.** I admit that I read the entire document.

**3.** I admit that my counsel explained to me the meaning of each of the admissions of my co-Defendant Oetken.

**4.** I admit that my counsel explained to me the legal consequences to me of the admissions of my co-Defendant Oetken.

**5.** I admit that I understood the legal consequences to me of the admissions of my co-Defendant Oetken.

**6.** I admit that my counsel explained to me the doctrine of vicarious liability of RICO.

**7.** I admit that I understood the doctrine of vicarious liability of RICO did and does confer on me the liability of every and all offense/violation/crime/injury committed by Defendant Oetken against Plaintiff Kaul.

**8.** I admit that in having my counsel explain to me the doctrine of vicarious liability pursuant to RICO, he did explain to me that Defendant Oetken was, pursuant to this doctrine, as liable for every and all offenses/violation/crime/injury committed against Plaintiff Kaul by **The Kaul Cases** Defendants.

**9.** I admit I know who are **The Kaul Cases** Defendants.

**10.** I admit that in understanding the liability of Defendant Oetken for every and all offenses/violation/crime/injury committed against Plaintiff Kaul by **The Kaul Cases** Defendants in the period from 2005 to 2025, I did become liable for every and all of these offenses/violations/crimes/injuries the moment I entered into conspiracy with Defendant Oetken.

**11.** I admit I know that the conspiracy is the 'Revocation-Cover-Up Conspiracy' which commenced in 2005 with the invention by Plaintiff Kaul of the percutaneous spinal fusion procedure.

**12.** I admit I know this procedure revolutionized the multi-billion-dollar field of spine surgery.

**13.** I admit I know **The Kaul Cases** Defendants conspired to have Plaintiff Kaul's New Jersey medical license illegaly revoked in 2014.

**14.** I admit I am in possession of copies of K11-7 and K11-20 and am familiar with the circumstances and facts of <u>The Kaul Cases</u>.

**15.** I admit that my counsel explained to me that pursuant to the vicarious liability doctrine of RICO, I did incur the liability for every and all offense/violation/crime/injury committed against Plaintiff Kaul by <u>The Kaul Cases</u> Defendants (2005-2025) the moment I entered the "<u>Revocation-Cover-Up Conspiracy</u>" because of Defendant Oetken.

**16.** I admit I know that pursuant to RICO's doctrine of vicarious liability I am as guilty of the offenses/violations/crimes/injuries levied against <u>The Kaul Cases</u> Defendants, as if I directly committed them myself.

**17.** I admit I know some of these crimes include kidnapping/false indictment/false arrest/false imprisonment/attempted killing/bribery/perjury/obstruction of justice/wire fraud/evidential falsification/witness tampering/public corruption.

**18.** I admit I know that that pursuant to RICO's doctrine of vicarious liability I am as guilty of every admission of violation/offense/crime admitted to by Defendant Oetken in his January 6, 2025 "<u>ADMISSIONS OF MATERIAL AND UNDISPUTED FACT NOT [SIC] RELATED TO THE ISSUE PENSDING THE COURT'S RULING ON THE MOTION AND PURSUANT TO RULE 8(b)(6) AS TO DEFENDANT JAMES PAUL OETKEN</u>"

**19.** I admit that on December 16, 2024 I submitted a '**DEFENDANT THE ATTORNEY GRIEVANCE COMMITTEE OF THE FIRST JUDICIAL DEPARTMENT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND SUBJECT-MATTER JURISDICTION**'

**20.** I admit that the principal defenses submitted within this document pertained to Eleventh Amendment immunity and lack of jurisdiction.

**21.** I admit that within the submission I did not deny any of the allegations and or facts set forth on Plaintiff Kaul's October 9, 2024 Complaint.

**22.** I admit I know that the plain text of Rule 8(b)(6) obligates me to admit or deny the allegations and or facts.

**23.** I admit I know that the plain text of Rule 8(b)(6) deems a non-denial of the allegations and or facts as an admission of the allegations and or facts.

**24.** I admit I failed to deny any of the allegations/facts set forth in the October 9, 2024 Complaint.

**25.** I admit I know that in failing to deny any of the allegations/facts I did admit to all the allegations/facts set forth in the October 9, 2024 Complaint.

4

**26.** I admit I know that the submission of the procedural defenses of jurisdiction and immunity did not and do not absolve me of my Rule 8(b)(6) obligation to deny the allegations/facts.

**27.** I admit that my counsel explained to me my obligations pursuant to Rule 8(b)(6).

**28.** I admit I know that nowhere in the Federal Rules of Civil Procedure is a litigant permitted to not comply with Rule 8(b)(6) under any circumstances.

**29.** I admit I know the legislative purpose of Rule 8 was consistent with and in furtherance of Rule 1, which requires there be a **"just, speedy and inexpensive determination of every action and proceeding."**

**30.** I admit that the plain construction of Rule 8(b)(6) and its foundational purpose for every subsequent rule, equates the denial or admitting of allegations/facts with a **"just, speedy and inexpensive determination of every action and proceeding."**

**31.** I admit that my failure to deny the allegations/facts, did, other than causing their admission, constitute a violation of not just Rule 1, but Rule 8.

**32.** I admit that being an individual highly educated and qualified in the subject of law, I have knowledge and understanding of the historical progression from the pleading standard set forth in <u>Conley v Gibson</u> (1957) to that set forth in <u>Twombly</u> (2008) and <u>Iqbal</u> (2009).

**33.** I admit I know that Rule 8 was enacted on September 16, 1938.

**34.** I admit that the Federal Rules of Civil Procedure were adopted in 1937.

**35.** I admit I know that the Federal Rules of Civil Procedure predated <u>Conley/Twombly/Iqbal</u>.

**36.** I admit that I am in possession of a copy of the text and ADVISORY NOTES pertaining to Rule 8.

**37.** I admit that as an individual highly educated and qualified in the subject of law, and in conjunction with my counsel, I have read the entire copy.

**38.** I admit I understand the contents of the entire copy.

**39.** I admit that I understand a substantial part of the Federal Rules of Civil Procedure are based on the English common law principles of plain and common justice.

**40.** I admit I know that within the body of English jurisprudence of the 18th century there did occur a shift from overly technical pleading to one involving plainly worded allegations and a simple denial or admittance.

5

**41.** I admit I know that as an individual highly educated and qualified in the subject of law, the failure within English jurisprudence and courts to deny an allegation was deemed to be a tacit admission of the charge.

**42.** I admit I know that as an individual highly educated and qualified in the subject of law, there exists a common misunderstanding that an adoption of the silence of the 5th Amendment in civil proceedings is not interpreted in the same tacit admission manner as the failure to deny an allegation/fact in English jurisprudence.

**43.** I admit that Rule 8(b)(6) did codify that within civil proceedings silence or failure to deny allegations/facts did and does constitute an admission.

**44.** I admit that nowhere in the 'ADVISORY NOTES' of Rule 8 is one relieved of one's obligation to deny the allegations/facts if one submits procedural related defenses, such as jurisdiction/immunity.

**45.** I admit that nowhere in the 'ADVISORY NOTES' of Rule 8 is one relieved of one's obligation to deny the allegations/facts based on the 2008/2009 pleading related holdings in <u>Twombly/Iqbal</u>.

**46.** I admit that nowhere in the 'ADVISORY NOTES' of Rule 8 is one relieved of one's obligation to deny the allegations/facts based on the pleading related holdings of any pleading sufficiency case within the entire corpus of American jurisprudence.

**47.** I admit that since the 2008/2009 Twombly/Iqbal holdings, unscrupulous lawyers and over-worked judges have variously abused and misinterpreted the uncontested pleading principles set forth and established in Rule 8(b)(6) since 1938.

**48.** I admit I know that Plaintiff Kaul, whose only motivation is justice, did recognize the manner in which the Rule 8(b)(6) principles were being violated and or ignored in **The Kaul Cases**.

**49.** I admit I know that many of the counsel for **The Kaul Cases** Defendants did themselves not know of the correct interplay between Rule 8(b)(6) and Rule 12 4(a)(4).

**50.** I admit that the plain language of Rule 12(a)(4) does not absolve a defendant of his obligations under Rule 8(b)(6).

**51.** I admit there exists nothing in the 'ADVISORY NOTES' or legislative record of Rule 12(a)(4) that absolves a defendant of his obligations under Rule 8(b)(6).

**52.** I admit that my submission of procedural defenses does not absolve me of my Rule 8(b)(6) obligation to deny or admit the allegations/facts set forth in the Complaint.

**53.** I admit that I know the Rule 8(b)(6) obligation is consistent with and in furtherance of a "**just, speedy and inexpensive**" determination of the claims set forth in the K11-23 Complaint.

**54.** I admit I know that had the K1 Defendants simply denied or admitted the allegations/facts set forth in the February 22, 2016 K1 Complaint, the issues that now, in 2025, continue to exist could and would very likely have been resolved by 2018.

**55.** I admit I know that the reason for the almost nine (9) years-worth of non-denial of the allegations/facts of **The Kaul Cases** by **The Kaul Cases** Defendants was ad is because they are guilty of the levied charges.

**56.** I admit I know that in the period between February 22, 2016 and the present, The Kaul cases Defendants have perpetrated massive schemes of political-judicial corruption purposed to attempt to 'cover-up' their previous crimes.

**57.** I admit that on December 30, 2024 Plaintiff Kaul submitted a '**REPLY DEFENDANT NEW YORK ATTORNEY GRIEVANCE COMMITTEE**' in opposition to my December 16, 2024 '**DEFENDANT THE ATTORNEY GRIEVANCE COMMITTEE OF THE FIRST JUDICIAL DEPARTMENT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND SUBJECT-MATTER JURISDICTION**'.

**58.** I admit I read and understood Plaintiff Kaul's '**REPLY DEFENDANT NEW YORK ATTORNEY GRIEVANCE COMMITTEE**'.

**59.** I admit that the thrust of Plaintiff Kaul's submission is two-fold and pertained/pertains to the fact that I am vicariously liable pursuant to RICO for every and all offense/violation/crime/injury committed against Plaintiff Kaul by **The Kaul Cases** Defendants and that my failure to deny the allegations/facts set forth in the K11-23 Complaint do render me guilty of the levied charges.

**60.** I admit that my admitted guilt of the charges levied in K11-23 do nullify my procedural jurisdictional and immunity defenses.

**61.** I admit that in my December 16, 2024 '**DEFENDANT THE ATTORNEY GRIEVANCE COMMITTEE OF THE FIRST JUDICIAL DEPARTMENT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND SUBJECT-MATTER JURISDICTION**' I did fail to contest/rebut/refute/address the RICO claims.

**62.** I admit I know that the reason I failed to contest/rebut/refute/address the RICO claims is because they are predicated on the crimes of bribery/wire fraud/obstruction of justice/public corruption, crimes not protected by Eleventh Amendment immunity.

**63.** I admit I know the reason I failed to contest/rebut/refute/address the RICO claims is because I became subject to the claims consequent to joining 'The Revocation-Cover-Up Conspiracy'

**64.** I admit that in Plaintiff Kaul's December 30, 2024 'REPLY DEFENDANT NEW YORK ATTORNEY GRIEVANCE COMMITTEE' he established 'minimal contacts' between myself and the equivalent agency in Mississippi.

**65.** I admit that on January 6, 2025, I filed 'DEFENDANT THE ATTORNEY GRIEVANCE COMMITTEE OF THE FIRST JUDICIAL DEPARTMENT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND SUBJECT-MATTER JURISDICTION' in reply to Plaintiff Kaul's December 30, 2024 "REPLY DEFENDANT NEW YORK ATTORNEY GRIEVANCE COMMITTEE'.

**66.** I admit that in the January 6, 2025 'DEFENDANT THE ATTORNEY GRIEVANCE COMMITTEE OF THE FIRST JUDICIAL DEPARTMENT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND SUBJECT-MATTER JURISDICTION' I failed to address/contest/rebut/refute and or deny the facts set forth in Plaintiff Kaul's 'REPLY DEFENDANT NEW YORK ATTORNEY GRIEVANCE COMMITTEE' (D.E. 22 – PAGE 9 TO 10 OF 11), in which Plaintiff Kaul has in an uncontested manner established personal and subject matter jurisdiction pursuant to the 'Revocation-Cover-Up Conspiracy' caused "new racketeering injuries" in Mississippi due to the 2014 NJ related revocation denials of Plaintiff Kaul's 2020/2024 applications for Mississippi licensure AND consequent to the unrefuted/admitted fact of 'minimal contacts' in which Defendant NYAGC conducts the business of lawyer regulation/disciplining with its Mississippi equivalent (D.E., 22 Page 10 of 11).

**67.** I admit that in the January 6, 2025 'DEFENDANT THE ATTORNEY GRIEVANCE COMMITTEE OF THE FIRST JUDICIAL DEPARTMENT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND SUBJECT-MATTER JURISDICTION' I failed to address/contest/rebut/refute and or deny the facts set forth in Plaintiff Kaul's December 30, 2024 'REPLY DEFENDANT NEW YORK ATTORNEY GRIEVANCE COMMITTEE' (D.E. 22 – PAGE 2/3/4/9 OF 11), in which Plaintiff Kaul has in an uncontested manner established Defendant NYAGC's lack of any immunity against the K11-23 claims.

**68.** I admit that in the January 6, 2025 'DEFENDANT THE ATTORNEY GRIEVANCE COMMITTEE OF THE FIRST JUDICIAL DEPARTMENT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND SUBJECT-MATTER JURISDICTION' I do knowingly and falsely claim that Plaintiff Kaul provides no explanation as to why Defendant NYAGC is deprived of any form of immunity: "Kaul makes a passing reference to a narrow exception to Eleventh Amendment immunity created by Ex parte Young. He does not say why he thinks it applies and it does not."

**69.** I admit that this is a knowingly false characterization of the reasons given by Plaintiff Kaul as to why Defendant NYAGC is deprived of any form of immunity.

**70.** I admit I know that Plaintiff Kaul's reference to <u>Ex parte Young</u> pertains only to the latter part of the preceding sentence: *"... and violations of human/civil/constitutional rights, provisions and principles."* and not to any other part of the '**ELEVENTH AMENDMENT IMMUNITY**' section of Page 4 of 11 (D.E. 22), for if it did, it would have been cited at the commencement with words to the effect of *"pursuant to"* and it was not.

**71.** I admit I know that the Eleventh Amendment depriving reasons provided by Plaintiff Kaul pertained to the commission of criminal acts contained within 'The Revocation-Cover-Up Conspiracy' to which Defendant Oetken did admit to on January 6, 2025 (D.E. 24).

**72.** I admit I know that pursuant to RICO's doctrine of vicarious liability and as pled by Plaintiff Kaul (*"the crime of one becomes the crime of all"*), the liability of the commission of criminal acts contained within 'The Revocation-Cover-Up Conspiracy' did inure to me as if I directly committed the crimes and violations of human/civil/constitutional rights.

**73.** I admit I know that it was/is my effective commission of the crimes and rights violations perpetrated through the 'Revocation-Cover-Up Conspiracy' by **The Kaul Cases** Defendants (2005-2025), in conjunction with the principles of <u>Ex parte Young</u> that deprives me of any form of immunity including that of the Eleventh Amendment.

**74.** I admit I know that the crimes of my 'Revocation-Cover-Up Conspiracy' – <u>Ex parte Young</u> related deprivation of Eleventh Amendment immunity do subjugate me to the jurisdiction of the U.S.D.C. for the Southern District of Mississippi.

**75.** I admit that in my January 6, 2025 '**DEFENDANT THE ATTORNEY GRIEVANCE COMMITTEE OF THE FIRST JUDICIAL DEPARTMENT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND SUBJECT-MATTER JURISDICTION**' at Page 6 of 13, and in my '**RICO claims are subject to Eleventh Amendment immunity because RICO contains no relevant abrogation**' argument, that I do misrepresent the facts asserted by Plaintiff Kaul that the commission of crime is not immunized by the Eleventh Amendment.

**76.** I admit I know that a plain read of Plaintiff Kaul's 'REPLY DEFENDANT NEW YORK ATTORNEY GRIEVANCE COMMITTEE' at (D.E. 22 Page 4 of 11) section 'ELEVENTH AMENDMENT IMMUNITY' identifies the commission of the state crimes of *"kidnapping/false indictment/false arrest/false imprisonment/attempted killing/bribery/kickbacks/evidential tampering/bankruptcy fraud/securities fraud/obstruction of justice/public corruption/wire fraud/conspiracy/violations of human-civil-constitutional rights"* without reference to a *"racketeering pattern"* and or RICO, and does therefore render irrelevant my defense that RICO contains no abrogation of the Eleventh Amendment.

**77.** I admit I know, however, that the lack of a statement of abrogation within RICO of Eleventh Amendment immunity was not statutorily required nor indeed relevant as there exists no provision within criminal law or the legislative record of RICO that warrants the commission of crime or rights violations be protected by the Eleventh Amendment.

**78.** I admit I know that there does not exist within the legislative or case record of any criminal statute that state actors/agencies are protected by the Eleventh Amendment from either civil or criminal prosecution for the commission of state crimes.

**79.** I admit I know that the Eleventh Amendment provides no protection to the vicariously incurred violation of Plaintiff Kaul's human/civil/constitutional rights by Defendant NYAGC.

**80.** I admit that neither I nor Defendant Oetken even attempted to raise an Eleventh Amendment defense to the violations of Plaintiff Kaul's human/civil/constitutional rights.

**81.** I admit the reason that neither I nor Defendant Oetken raised an Eleventh Amendment defense is that we know the law not only prohibits such a defense to violations of human/civil/constitutional rights by state actors/agencies, but does pursuant to Section 1983 provide a statutory mechanism for relief as to such violations/injuries.

**82.** I admit I know that in K11-18, Defendant Oetken filed no motion to dismiss the case.

**83.** I admit I know that the admitted facts/allegations of K11-18 constitute the admitted facts/allegations of K11-23.

**84.** I admit I know that Defendant Oetken's failure to file a motion did deprive him of any right pursuant to Rule 12(a)(4) to delay his denying or admitting of the facts/allegations of K11-18.

**85.** I admit I know that Defendant Oetken's non-denial of the facts/allegations of K11-18 did cause the admittance of these facts/allegations for all purposes, including K11-23.

**86.** I admit that subsequent to the Court's initial evaluation of all circumstances/facts/conditions of K11-23 after its filing on October 2, 2024, it did determine the case had merit and did therefore issue on November 4, 2024 a 'RULE 16(a) INITIAL ORDER' (D.E. 7).

**87.** I admit that the entry of such an order as to the merit of a case is a directive for the commencement of discovery into the factual underpinning of the case and its circumstances.

**88.** I admit that the statement in my January 6, 2025 'DEFENDANT THE ATTORNEY GRIEVANCE COMMITTEE OF THE FIRST JUDICIAL DEPARTMENT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND SUBJECT-MATTER JURISDICTION':

**"The very purpose of a motion to dismiss is to get rid of a case without delving into the claims or the facts supposedly supporting them."** (D.E. 25 Page 7 of 13)

is contradicted by the Court's November 4, 2024 order to indeed commence a **"delving"** into the facts constituting/surrounding the case.

**89.** I admit the Court has jurisdiction and the case has merit.

**90.** I admit that my refusal to conduct a Rule 26(f) conference with Plaintiff Kaul as ordered on November 4, 2024 did/does constitute a Rule 37 violation.

**91.** I admit that the Court's examination of the circumstances/facts/conditions of K11-23 from its filing on October 9, 2024 to the issuance of the 'RULE 16(a) INITIAL ORDER' ON November 4, 2024 did find the Court had jurisdiction and the claims had merit.

**92.** I admit that my motions to dismiss based on jurisdiction are frivolous.

**93.** I admit that pursuant to Defendant Oetken's Rule 8(b)(6) admissions of the facts/allegations in K11-18 for all purposes including proof of K11-23, and in conjunction with RICO's doctrine of vicarious liability, I am as guilty of the offenses/violations/crimes committed against, and violations of Plaintiff Kaul's human/civil/constitutional rights as perpetrated through the '**Revocation-Cover-Up Conspiracy**' as if I directly committed/perpetuated the acts against Plaintiff Kaul.

**94.** I admit I know that had Defendant NYAGC commenced an investigation into Defendant Oetken, the subpoena power of the investigation would have exposed the offenses/violations/crimes (2005-2024) of **The Kaul Cases** Defendants.

**95.** I admit I know that my investigative powers are unlimited and had I not entered into the '**Revocation-Cover-Up Conspiracy**' and instead conducted an impartial investigation independent of political and corporate influence, the truth of **The Kaul Cases**, or at least the commencement of the process would have been exposed.

**96.** I admit I know that I chose to enter the '**Revocation-Cover-Up Conspiracy**' instead of conducting a thorough and impartial investigation because I derived economic/professional/political benefit from not exposing the crimes of a district judge who appeared to have 'friends' in powerful places.

**97.** I admit that in the knowing and purposeful dereliction my duty to investigate claims of bribery and public corruption against Defendant Oetken, I did aid and abet the long-standing "**pattern of racketeering**" perpetrated by **The Kaul Cases** Defendants acting through/within the '**Revocation-Cover-Up Conspiracy**'.

**98.** I admit I know I had a legal obligation to report the crimes of **The Kaul Cases** Defendants to investigative/prosecutorial authorities.

**99.** I admit I know my violation of that legal obligation has caused me to incur all the liability of **The Kaul Cases** Defendants (2005-2025) of which Defendant Oetken and now I are co-defendants.

**100.** I admit I know that my analysis of Plaintiff Kaul's citation to <u>Ex parte Young</u> is false in that I assert, with knowing fraudulence, that Plaintiff Kaul has cited it for propositions for which he has not, as evidenced by the plain text of the December 30, 2024 'REPLY DEFENDANT NEW YORK ATTORNEY GRIEVANCE COMMITTEE' (D.E. 22 Page 4 of 11).

**101.** I admit I know that Plaintiff Kaul's reference to <u>Ex parte Young</u> pertains only to the latter part of the preceding sentence: "... **and violations of human/civil/constitutional rights, provisions and principles.**" and not to any other part of the **'ELEVENTH AMENDMENT IMMUNITY'** section of Page 4 of 11 (D.E. 22), for if it did, it would have been cited at the commencement with words to the effect of **"pursuant to"** and it was not ( see para. 70)

**102.** I admit that my conflation of excerpted sections from the October 2, 2024 Complaint and Plaintiff Kaul's December 30, 2024 'REPLY DEFENDANT NEW YORK ATTORNEY GRIEVANCE COMMITTEE':

**"As to his legal argument, Opp. at \*8-9, Kaul seems to say that the Grievance Committee committed unspecified "willful and knowing [violations] of [his] human/civil/constitutional right sic] and knowing violation[s] of Constitutional law and federal statutes ...," that thereby deprive it of its Eleventh Amendment "protections," id., under Ex parte Young, 209 U.S. 123 (1908), and its progeny. Opp. at \*4."** (D.E. 25 Page 7-8 of 13)

is a purposeful misrepresentation of the actual proposition for which Ex parte Young is cited, which is that stated in paras. 70/101, and pertains to violations of the principles underpinning human/civil/constitutional rights, without any specific reference to the K11-23 facts/parties.

**103.** I admit that the knowingly fraudulent conflation was/is purposed to attempt to show that Defendants cannot be held liable pursuant to Ex parte Young for not only Eleventh Amendment violations, but any violations of the law and Plaintiff Kaul's human./civil/constitutional rights.

**104.** I admit that if one were to extrapolate the logic of my argument, it would immunize all state actors/agencies from being prosecuted for the commission of all crimes, including murder, where the defense would be that to convict a state actor murderer would have a 'chilling effect' on state actors willingness to perform their state duties.

**105.** I admit that being an individual highly educated and qualified in the subject of law, I know that this scenario of state sanctioned murder and wrongful incarceration exists within certain police forces and prosecutorial agencies.

**106.** I admit that being an individual highly educated and qualified in the subject of law, I know that the doctrines of qualified/sovereign/absolute immunity have been substantial contributors to a system in which the commission of lawlessness by those in possession of state power is not only permitted but goes <u>**uninvestigated**</u> and unpunished.

**107.** I admit that my non-investigation of Defendant Oetken's thirteen (13) year-plus worth of crimes on the federal bench does constitute an example of such a willful failure to investigate the commission of lawlessness by a person in possession of immense state power.

**108.** I admit that if I were to investigate Defendant Oetken's entire case record (2011-2025), I would find criminal cases of knowingly wrongful incarceration/wrongful dismissal and civil cases of knowingly wrongful evictions/asset seizures/dismissals/judgments.

**109.** I admit that although state bars have no right or jurisdiction to restrict the activity of a federal judge, they do have the power and indeed duty to sanction currently licensed lawyers, who may happen to be federal judges, for violations of any legal code of conduct, civil law and or criminal law.

**110.** I admit I knew/know that the commission of bribery is a violation of criminal law.

**111.** I admit I knew/know that Defendant Oetken's September 14/October 6, 2022 failure to deny the charges of bribery did constitute an admission.

**112.** I admit I knew I had an obligation to report Defendant Oetken's crimes to the Judicial Disciplinary Council, in conjunction with my obligation to have him investigated in his status as a lawyer licensed in the State of New York.

**113.** I admit that there exists no file on record of ever having conducted any investigation into Plaintiff Kaul's complaint against Defendant Oetken.

**114.** I admit that in attempting to misrepresent Plaintiff Kaul's request to investigate Defendant Oetken's perpetration of bribery while on the federal bench as a request to order Defendant Oetken to reverse his September 12, 2022 'order-injunction', I do knowingly misrepresent the facts.

**115.** I admit I know that Plaintiff Kaul's November 30, 2022 complaint (**Exhibit 1**) makes no reference to, nor requests that any action be taken in regard to Defendants Oetken's September 12, 2022 'order-injunction'.

**116.** I admit that Plaintiff Kaul's November 30, 2022 complaint simply requests an investigation be conducted as to Defendant Oetken's long-history of abusing the power of the federal bench to perpetrate criminal conspiracies, principally in collusion/conspiracy with extremely wealthy individuals and Fortune 500 corporations.

**117.** I admit that the thrust of the Complaint pertains to the commission and vicariously incurred liability of the admitted crimes of, amongst other things, bribery/judicial corruption/public corruption/perjury/evidential falsification/witness tampering/obstruction of justice/kickbacks/wire fraud/mail fraud/false indictments/false arrests/false imprisonment/kidnapping/attempted drugging-killing.

**118.** I admit I know the Eleventh Amendment provides state actors no protection against being prosecuted for the commission of criminal offenses.

**119.** I admit that a principal tactic of my defense submissions has been the construction of 'straw man' arguments and the knowing misrepresentation of facts/arguments and the citing of cases, the inappositeness of which is evidenced in the immense factual disparity between their civil violation factual foundations and the criminal violations that underpin K11-23.

**120.** I admit that this Court has the authority to find that Defendant NYSAGC, did in collusion/conspiracy with Defendant Oetken, commit the within offenses/violations/crimes/injuries.

**121.** I admit that I would be obligated to report such a finding to the New York State Supreme Court's Appellate Division.

**122.** I admit I know that the judges on the New York State Supreme Court's Appellate Division would take remedial action against me and all my co-members and order an investigation be conducted as to Defendant Oetken's crimes as a lawyer who happens to be a federal judge who has used the power of the federal bench to commit self-enriching crime for over a decade.

**123.** I admit I know my argument as to this Court's lack of authority to order Defendant Oetken be investigated is flawed, as the factual underpinning of K11-23 pertains to violations of federal law/constitutional rights, the remedial power of which resides with the United States District Court.

**124.** I admit that if I violate an order from the United States District Court it will be a knowing/willful act of contempt.

**125.** I admit that being an individual highly educated and qualified in the subject of law, I know the consequences of an order of contempt.

**126.** I admit that an order of contempt would cause me to comply with the Court's order to have investigated Defendant Oetken's decade-plus-long use of the power of the federal bench to cause the procurement of immense financial self-enrichment at the callous expense and through the exploitation/grave detriment of unwitting litigants, who either simply did not have enough money to outbid their opponents, or did not know the rules of Defendant Oetken's 'game'.

**127.** I admit I know of the prevalence in the North-Eastern states of the United States of massive schemes of corruption of the political and judicial bodies by the insurance industry.

**128.** I admit I know that Wall Street is less than two (2) miles from the S.D.N.Y.

**129.** I admit I know that there do occur many private face-to-face meetings between politicians, judges and insurance/banking executives in and around the Wall Street-S.D.N.Y area.

**130.** I admit I know from my extensive connections in the legal and political spheres that many corrupt deals and quid pro quo schemes are agreed upon in these meetings, in which insurance/banking executives agree to funnel bribes through their corporations to judges and the politicians who appointed them, to ensure legal cases and legislation are corrupted to favor their economic/political interests.

**131.** I admit I know that Senator Charles Schumer's political career was principally funded by the insurance industry.

**132.** I admit that Senator Schumer persuaded Senator Frank Lautenberg (NJ) to support the 2012 appointment of his bother-in-law, Kevin McNulty to the federal bench in the District of New Jersey.

**133.** I admit I know that when Plaintiff Kaul filed K1 on February 22, 2016, a case in which insurance companies Allstate/Geico and TD Bank were Defendants, the case was steered towards Senator Schumer's brother-in-law.

**134.** I admit I know that Senator Schumer's brother-in-law became disqualified on May 22, 20129 when Plaintiff Kaul moved  for his disqualification based on his having received bribes from amongst others, the insurance-banking Defendants in K1.

**135.** I admit I know that Senator Schumer's brother-in-law suddenly and without stated cause vacated his seat on the federal bench after his disqualification, and without disclosing his financial holdings.

**136.** I admit I know that Senator Schumer was involved in the 2011 appointing to the federal bench of Defendant Oetken.

**137.** I admit that I know that when Plaintiff Kaul filed K11-7 on August 19, 2021, a case in which insurance companies Allstate/Geico and TD Bank and Intercontinental Exchange were Defendants, the case was steered towards Senator Schumer's appointed judge, Defendant Oetken.

**138.** I admit I know that Senator Schumer demanded more bribes from the insurance companies Allstate/Geico and TD Bank and Intercontinental Exchange for both himself and Defendant Oetken, in return for ordering Defendant Oetken, whom he controlled/controls, dismiss K11-7 and enter a knowingly illegal 'injunction.

**139.** I admit I know that in 2019 Plaintiff Kaul sued Defendant Schumer (K3) on charges of, amongst other things bribery related racketeering.

Case 3:24-cv-00621-CWR-LGI Document 27 Filed 01/14/25 Page 16 of 21

140. I admit I am in possession of a copy of the K3 Complaint.

141. I admit I have read and understand the K3 Complaint.

142. I admit I know that all of the facts and allegations in K3 are true.

141. I admit I know that Defendant Schumer did not deny any of the facts/allegations in K3.

142. I admit that Defendant Schumer moved to have the case stayed.

143. I admit the case was stayed.

144. I admit I know it has been frequent tactic of **The Kaul Cases** Defendants to bribe judges into staying cases in order to avoid discovery and or having to answer the charges.

145. I admit I know through my extensive connections within the legal/political spheres that the purpose for the entry of stays is that the defendants are guilty of the charged offenses of amongst things, bribery and quid pro quo schemes.

146. I admit I know that in the almost nine (9) years in which Plaintiff Kaul has been attempting to prosecute **The Kaul Cases**, not one defendant has ever denied any of the thousands of facts/allegations.

147. I admit I know that in the almost nine (9) years in which Plaintiff Kaul has been attempting to prosecute **The Kaul Cases**, not one defendant has ever complied with any of the discovery orders.

148. I admit I know that in the almost nine (9) years in which Plaintiff Kaul has been attempting to prosecute **The Kaul Cases**, not one defendant has presented himself for deposition by Plaintiff Kaul.

149. I admit I know as an 'insider' that the reason for **The Kaul Cases** Defendants evasion and obstruction of justice pertains to the fact that they are guilty of all the charges/facts levied in **The Kaul Cases**.

150. I admit that I have read and understand the Complaints in **The Kaul Cases**.

151. I admit I know as an 'insider' that all of the charges/facts levied in **The Kaul Cases** are true.

152. I admit I know the reason for **The Kaul Cases** Defendants almost nine (9) year evasion of answering and or denying the charges/facts of **The Kaul Cases** is because they are guilty of the within charged crimes.

**153.** I admit I know the reason for **The Kaul Cases** Defendants almost nine (9) year evasion of answering and or denying the charges/facts of **The Kaul Cases** is because many of them have perpetrated quid pro quo schemes with the insurance industry.

**154.** I admit I know the reason for **The Kaul Cases** Defendants almost nine (9) year evasion of answering and or denying the charges/facts of **The Kaul Cases** is because many of them have had their lives and economic/professional/personal welfare threatened by the insurance industry if they disclose the truth to Plaintiff Kaul.

**155.** I admit I know the reason for **The Kaul Cases** Defendants almost nine (9) year evasion of answering and or denying the charges/facts of **The Kaul Cases** is because many of them have continued to receive bribes from the insurance industry to maintain their silence.

**156.** I admit I know the reason for **The Kaul Cases** Defendants almost nine (9) year evasion of answering and or denying the charges/facts of **The Kaul Cases** is because many of them have been subjected to mafia-like threats from agents/persons working for the insurance industry.

**157.** I admit I know the insurance industry commenced with Lloyd's of London in England in the 1600s on the back of the trans-Atlantic slaving industry.

**158.** I admit I know the insurance industry played a critical role in the Jewish Holocaust, in that it, subsequent to negotiations with the Nazis and certain wealthy Jewish businessmen, did insure the hardware of the extermination camps, but refused to insure the Jews that were worked to death in the Nazi weapon manufacturing factories.

**159.** I admit the insurance industry has a demonic history and remains a demonic force in 2025.

**160.** I admit Defendant Oetken and I do the legal bidding of the insurance industry, in the facilitation of bribery related legal judgments and non-investigations of corrupt lawyers-cum-judges.

**161.** I admit that I have extensive 'minimal contacts' with the State of Mississippi.

**162.** I admit that the 'minimal contacts' are a consequence of my interactions and communications with the equivalent agency in the State of Mississippi.

**163.** I admit that Plaintiff Kaul's pleading of this 'minimal contact' satisfies the requisite pleading standard.

**164.** I admit that the 'minimal contacts' are a consequence of my interactions and communications with the Federal Judges Association, an entity comprised of lawyers that conducts the nationwide business affairs of its members, including in Mississippi, and an entity with which I interact and communicate as to its lawyer-judge members who are licensed in Mississippi and New York, but who become subject to disciplinary actions in New York.

**165.** I admit that Plaintiff Kaul's pleading of this 'minimal contact' satisfies the requisite pleading standard.

**166.** I admit that in my January 6, 2025 'DEFENDANT THE ATTORNEY GRIEVANCE COMMITTEE OF THE FIRST JUDICIAL DEPARTMENT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND SUBJECT-MATTER JURISDICTION' (D.E. 25 Page 9 of 13), I did misrepresent facts pled by Plaintiff Kaul in his December 30, 2024 'REPLY DEFENDANT NEW YORK ATTORNEY GRIEVANCE COMMITTEE' (D.E. 22 Page 9 of 11) that do substantiate my 'minimal contacts' with the State of Mississippi.

**167.** I admit that I willfully misrepresented these facts in the belief that Plaintiff Kaul would have no legal instrument with which to expose my misrepresentation, as procedure would not permit him to file a sur-reply, and my misrepresentations would go uncontested.

**168.** I admit in misrepresenting the facts I did not consider Plaintiff Kaul would utilize an instrument of discovery to prove the willful falsity of my submission as to his pleading of 'minimal contacts'.

**169.** I admit that I was forced to engage in submitting a knowingly fraudulent document because I know I have no legitimate defenses to the K11-23 claims.

**170.** I admit that one of my misrepresentations pertains to my claim that Plaintiff Kaul's minimal contacts pleading fails to state the subject matter substantiating the 'minimal contacts', when in fact a plain read of the relevant section on (D.E. 22 Page 9 of 13) identifies it as being: " ... Defendant NYAGC conducts acts with its equivalent agency in Mississippi as to the exchange of information pertaining to disciplinary actions against lawyers."

**171.** I admit that there exists no federal pleading standard or related case in which a plaintiff is required to specifically plead that there exists a connection between the jurisdiction related section of the Complaint, the jurisdiction related section of a reply brief and the overall case.

**172.** I admit I know that if facts of jurisdiction are pled in the Complaint of a specific case, and facts are then pled in a reply brief of the same case, then there exists no need nor is any stipulated by statute or case law that the pleader must expressly state that the jurisdictional facts relate to the same case.

**173.** I admit that the frivolousness of my argument in (D.E. 25 Page 9 of 13) is a direct reflection of my defenselessness and strategy of 'muddying the waters' to impede Plaintiff Kaul's transparent dismantling of my fraudulent submissions.

**174.** I admit that my guilt of the levied charges does compel me to attempt to obfuscate the truth of the matter with falsehoods, omissions, semi-truths and a dearth of simple logic.

**175.** I admit I know that federal pleading standards require the provision of notice in a complaint as to the "**what ... where ... when ... how ... why ... who**" so that litigants be sufficiently informed in order to be afforded a fair opportunity to respond.

**176.** I admit that the October 9, 2024 K11-23 Complaint does, in its 'JURISDICTION + VENUE' section (D.E. 1 Page 5 of 54) establish the basis for jurisdiction in the District of Southern Mississippi.

**177.** I admit that nowhere in my replies have I claimed that I do not know that Plaintiff Kaul has claimed that jurisdiction rests in the Southern District of Mississippi.

**178.** I admit that in fact I do know that Plaintiff Kaul has claimed that jurisdiction rests in the Southern District of Mississippi.

**179.** I admit that my replies contesting Plaintiff Kaul's claims that jurisdiction rests in the Southern District of Mississippi do evidence my knowledge of Plaintiff Kaul's jurisdictional claims as set forth in his Complaint.

**180.** I admit the frivolousness of my argument as to the impermissibility of the raising of facts not referenced in a Complaint but submitted in response to motions to dismiss.

**181.** I admit that <u>Roebuck v. Dothain Sec., Inc., 515 F.App'x 275, 280 (5th Cir. 2013)</u>, as cited in my January 6, 2025 'DEFENDANT THE ATTORNEY GRIEVANCE COMMITTEE OF THE FIRST JUDICIAL DEPARTMENTS REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND SUBJECT-MATTER JURISDICTION' does not stand for the proposition that facts not present in the Complaint are precluded from being raised in reply briefs.

**182.** I admit that <u>Roebuck v. Dothain Sec., Inc., 515 F.App'x 275, 280 (5th Cir. 2013)</u> stands for the proposition that new theories of the case, not stated in the Complaint, can be stated in reply briefs.

**183.** I admit that the theory of K11-23 as pled in the Complaint is consistent with that pled in the December 30, 2024 'REPLY DEFENDANT NEW YORK ATTORNEY GRIEVANCE COIMMITTEE' (D.E. 22 Page 2 of 11).

**184.** I admit that the theory of K11-23 as pled in the Complaint pertains in part to the fact that if Defendant NYSAGC had conducted a transparent investigation of Defendant Oetken's crimes, K11-7 would have been legitimately tried, the truth of the illegal 2014 NJ revocation would have emerged, the NJ state medical board would have been ordered to reinstate Plaintiff Kaul's license and Defendant MMB would have had no basis on which to deny Plaintiff Kaul's May 2024 application.

**185.** I admit that Plaintiff Kaul has sufficiently pled the jurisdictional related nexus between myself and my equivalent in Mississippi in his December 30, 2024 'REPLY DEFENDANT NEW YORK ATTORNEY GRIEVANCE COMMITTEE' at (D.E. 22 page 9 of 11), as being based on **"the exchange of information pertaining to disciplinary actions against lawyers."**

**186.** I admit that the purpose of the statutory construction of the broad jurisdictional reach of RICO originated from the recognition that **"racketeering"** crimes and their consequent ongoing and **"new"** injuries are respectively committed and caused in a multi-jurisdictional manner.

**187.** I admit that my citation to Aych v. Univ. of Ariz., No. 2:23-cv-07282-ODW (MARx), 2024 U.S. Dist. LEXIS 118455, at *16 (C.D. Cal. July 5, 2024) fails to support my proposition that pursuant to RICO I am not subject to the jurisdiction of the Southern District of Mississippi.

**188.** I admit that in fact Aych v. Univ. of Ariz., No. 2:23-cv-07282-ODW (MARx), 2024 U.S. Dist. LEXIS 118455, at *16 (C.D. Cal. July 5, 2024) validates Plaintiff Kaul's assertion that I am, pursuant to RICO and in the context of the nationwide injuries to his life/liberty/property, subject not just to the jurisdiction of Mississippi but consequent to my entry into the 'Revocation-Cover-Up Conspiracy', subject to the jurisdiction of every state.

**189.** I admit that an application of the Aych factors to the jurisdiction related pled facts of K11-23 does satisfy its two (2) conditions as to personal jurisdiction pursuant to RICO.

**190.** I admit I know that those two (2) conditions pertain to the fact that the district court in which the case is filed must have personal jurisdiction over at least one litigant and there must be no other district court which would have personal jurisdiction of all litigants.

**191.** I admit I know that the Southern District of Mississippi has personal jurisdiction of Defendant Mississippi Medical Board and there exists no other district court which would have personal jurisdiction over all litigants.

**192.** I admit I know that these two (2) conditions exist because I have read the 'PARTIES' section of the Complaint and one (1) litigant resides in Mississippi, while three (3) reside in New York.

**193.** I admit that Plaintiff Kaul has demonstrated a basis to substantiate jurisdiction in the Southern District of Mississippi.

**194.** I admit that in my January 6, 2025 **'DEFENDANT THE ATTORNEY GRIEVANCE COMMITTEE OF THE FIRST JUDICIAL DEPARTMENTS REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND SUBJECT-MATTER JURISDICTION'** (D.E. 25) I make an assertion that there exists a purported contradiction between two (2) jurisdiction related arguments submitted in Plaintiff Kaul's argument and reply brief.

**195.** I admit that the purported contradiction exists between his argument that consequent to the nationwide racketeering/rights injuries and violations caused and continuing to be caused

to his life/liberty/property/reputation and human/civil/constitutional rights, he continues to retain standing to bring suit in any/all districts in the United States **AND** his argument that pursuant to RICO and its doctrine of *"new racketeering injuries"* as defined in <u>Sedima, S.P.R.L. v. Imrex Co., Inc. 473 U.S. 479 (1985)</u> he retains standing and jurisdiction in the Southern District of Mississippi, consequent to the 2020/2024 licensure denials in Mississippi based on the illegal 2014 NJ license revocation.

**196.** I admit that there exists no contradiction between these two (2) arguments, as the premises, reasoning and conclusions are identical.

**197.** I admit I know that the premise is the 2014 illegal NJ revocation, the reasoning pertains to the state medical board system of reciprocity that is current controlled by **The Kaul Cases** Defendant Federation State Medical Boards and the conclusion is that his 2020/2024 Mississippi license applications were denied because of the illegal 2014 NJ license revocation.

**198.** I admit that my assertion as to internal argument contradictions was purposed to attempt to mischaracterize Plaintiff Kaul and his arguments as illogical and fallacious and to mischaracterize him as not credible.

**199.** I admit that my attempt failed.

**200.** I admit that the failure of my attempt to undermine Plaintiff Kaul's credibility does constitute further evidence of my guilt, for if I were innocent of the levied charges/facts, which I am not, there would exist no reason to misrepresent facts/law and submit technically incompetent argument; the incompetence of which does nothing but cause a further, and somewhat embarrassing indictment of me, a lawyer.

**201.** I admit that in my January 6, 2025 'DEFENDANT THE ATTORNEY GRIEVANCE COMMITTEE OF THE FIRST JUDICIAL DEPARTMENTS REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND SUBJECT-MATTER JURISDICTION' I claim that Plaintiff Kaul did not plead any facts as to a conspiracy between myself and Defendant Oetken.

**202.** I admit I know that this claim is false.

**203.** I admit that as I did with other false claims in my final submission, assume that no legal instruments would be available to Plaintiff Kaul to expose the falsity of my claims.

**204.** I admit that Plaintiff Kaul's assumed inability to expose my falsehoods would also go undetected by the district court, which I believed would adopt the falsities submitted in my January 6, 2025 'DEFENDANT THE ATTORNEY GRIEVANCE COMMITTEE OF THE FIRST JUDICIAL DEPARTMENTS REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND SUBJECT-MATTER JURISDICTION' and dismiss K11-23.

**205.** I admit I know that Plaintiff Kaul did plead facts of conspiracy.

**206.** I admit that the facts of conspiracy are pled at paras. 22/23/25.

**207.** I admit that acts of commission and omission can and do separately and or jointly substantiate a conspiracy.

**208.** I admit that a quid pro quo scheme can and does constitute an element of a conspiracy, but an absence of its pleading does not under any federal statute or case constitute an absence of conspiracy pleading.

**209.** I admit the knowing falsity and frivolousness of my 'lack of conspiracy' argument is a direct reflection of my guilt of the levied charges/facts, for if I were innocent, which I am not, there would be no need to misrepresent facts/law and submit technically incompetent and readily dismantled arguments.

**210.** I admit that my January 6, 2025 '**DEFENDANT THE ATTORNEY GRIEVANCE COMMITTEE OF THE FIRST JUDICIAL DEPARTMENTS REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND SUBJECT-MATTER JURISDICTION**' was/is, to use a colloquialism, a 'Hail Mary' at the conclusion of the first lackluster quarter.

**211.** I admit that despite the corralling of immense legal resources, 'brainpower' and exclusive private school educations, team Defendant NYAGC were not able to advance over the halfway line.

**212.** I admit that Defendants NYAGC/Oetken/MMB are guilty of the levied charges/facts and that judgment be entered to the favor of Plaintiff Kaul.

DATED: JANUARY 13, 2025

RICHARD ARJUN KAUL, MD

# CERTIFICATE OF SERVICE

I certify under penalty of perjury that a copy of these papers were emailed to counsel for all Defendants on January 13, 2025.

DATED: JANUARY 13, 2025

RICHARD ARJUN KAUL, MD

# RELEVANT REFERENCES TO THE KAUL CASES

**K1 –** <u>KAUL v CHRISTIE: 16-CV-02364</u> (FEBRUARY 22, 2016, TO NOVEMBER 16, 2021-U.S.D.C.-D.N.J.)

**K11-7 -** <u>KAUL/BASCH v ICE: 21-CV-06992</u> (AUGUST 19, 2021, TO SEPTEMBER 12, 2022-SOUTHERN DISTRICT OF NEW YORK)

**K11-18 –** <u>KAUL v OETKEN: 24-CV-00185</u> (MARCH 25, 2024, TO APRIL 8, 2024-EASTERN DISTRICT OF NORTH CAROLINA)

**K11-20 –** <u>KAUL v FEDERATION STATE MEDICAL BOARDS: 24-CV-03180</u> (AUGUST 26, 2024, TO JANUARY 7, 2025-SOUTHERN DISTRICT OF TEXAS)

**K11-23 –** <u>KAUL v OETKEN: 24-CV-00621</u> (OCTOBER 9, 2024 TO PRESENT-SOUTHERN DISTRICT OF MISSISSIPPI)

# Exhibit 1

(Rev. 7.30.2020)

## ATTORNEY GRIEVANCE COMMITTEE
### Supreme Court, Appellate Division
### First Judicial Department
### 180 Maiden Lane, 17th Floor
### New York, New York 10038
### (212) 401-0800

**JORGE DOPICO**
**Chief Attorney**

Email Complaint and Attachments to: AD1-AGC-newcomplaints@nycourts.gov. In addition, please send **one copy** of your complaint and attachments **by regular mail** to the above address. (If you do not have a personal email account, please send two (2) complete sets of your complaint and all attachments. There may be a delay in processing your matter if it is not emailed. Please **do not** include any original documents because we are unable to return them.)

### Background Information

Today's Date: 11/30/2022

Your Full Name: (Mr. Ms. Mrs.) RICHARD ARJUN KAUL, MD/DAVID BASCH MD

Address: 440c SOMERSET DRIVE

City: PEARL RIVER     State: NY     Zip Code: 10965

Cell Phone: 973 876 2877     Business/Home Phone: _____

Email Address: drrichardkaul@gmail.com

Are you represented by a lawyer regarding this complaint? Yes ✔ No ☐ If Yes:

Lawyer's Name: N/A

Address: _____

City: _____ State: _____ Zip Code: _____

Business Phone: _____ Cell Phone: _____


### Attorney Information

Full Name of Attorney Complained of: (Mr. Ms. Mrs.) JAMES PAUL OETKEN

Address: Room 706, 40 Foley Square

City: New York     State: NY     Zip Code: 10007

Business Phone: 212 805 0266     Cell Phone: _____

Email Address: _____

Date(s) of Representation/Incident: __11/30/2022__

Have you filed a civil or criminal complaint against this attorney? Yes [ ] No [✓] If Yes:

If yes, name of case (if applicable): _____

Name of Court: _____

Index Number of Case (if known): _____

Have you filed a complaint concerning this matter with another Grievance Committee, Bar Association, District Attorney's Office, or any other agency? Yes [✓] No [ ]

If yes, name of agency: __JUDICIAL DISCIP. COUNCIL/SENATE JUDICIAL COM.__

Action taken by agency, if any: __PENDING_____

## Details of Complaint

Please describe the alleged misconduct in as much detail as possible including what happened, where and when, the names of any witnesses, what was said, and in what tone of voice, etc. Use additional sheets if necessary.

The Respondent, a lawyer, who in his capacity as a judge, has admitted to having engaged in a series of quid pro quo schemes/exparte communications, in which he received bribes for illegally dismissing a case (attached sheets).The Respondent, in his capacity as a lawyer, did represent corporations for many years, and did, when he became a judge, fail to recuse himself when these same corporations brought cases before him. In these matters, the Respondent, as the record shows, did almost always rule in favor of these corporations. This " pattern" has been in existence since at least 2017.

Complainant's Signature (Required): __RICHARD ARJUN KAUL, MD/DAVID BASCH, MD__

Judicial Council of the <u>SECOND</u> Circuit

## COMPLAINT OF JUDICIAL MISCONDUCT OR DISABILITY

To begin the complaint process, complete this form and prepare the brief statement of facts described in item 4 (below). The Rules for Judicial-Conduct and Judicial-Disability Proceedings, adopted by the Judicial Conference of the United States, contain information on what to include in a complaint (Rule 6), where to file a complaint (Rule 7), and other important matters. The Rules are available in federal court clerks' offices, on individual federal courts' websites, and on www.uscourts.gov.

Your complaint (this form and the statement of facts) should be typewritten and must be legible. For the number of copies to file, consult the local rules or clerk's office of the court in which your complaint is required to be filed. Enclose each copy of the complaint in an envelope marked "COMPLAINT OF MISCONDUCT" or "COMPLAINT OF DISABILITY" and submit it to the appropriate clerk of court. **Do not put the name of any judge on the envelope.**

1.  Name of Complainant: **RICHARD ARJUN KAUL/DAVID BASCH**

    Contact Address: **440c SOMERSET DRIVE, PEARL RIVER**

    **NY, 10965**

    Daytime telephone: **(973) 876 2877**

2.  Name(s) of Judge(s): **JAMES PAUL OETKEN**

    Court: **SDNY**

3.  Does this complaint concern the behavior of the judge(s) in a particular lawsuit or lawsuits?

    [✔] Yes      [ ] No

    If "yes," give the following information about each lawsuit:

    Court: **SDNY**

    Case Number: **21-CV-06992**

    Docket number of any appeal to the **N/A** Circuit: **N/A**

    Are (were) you a party or lawyer in the lawsuit?

    [✔] Party      [ ] Lawyer      [ ] Neither

Page 1 of 2

If you are (were) a party and have (had) a lawyer, give the lawyer's name, address, and telephone number:

N/A

4. **Brief Statement of Facts.** Attach a brief statement of the specific facts on which the claim of judicial misconduct or disability is based. Include what happened, when and where it happened, and any information that would help an investigator check the facts. If the complaint alleges judicial disability, also include any additional facts that form the basis of that allegation.

5. **Declaration and signature:**

I declare under penalty of perjury that the statements made in this complaint are true and correct to the best of my knowledge.

(Signature) _____ — RICHARD ARSON KAN_ (Date) NOVEMBER 16, 2022 _____

— DAVID BASCH

Page 2 of 2

# STATEMENT OF FACTS

This complaint is filed under the Judicial Conduct and Disability Act of 1980, 28 U.S.C. §§ 351-364 and the Rules for Judicial-Conduct and Judicial-Disability Proceedings, 249 F.R.D. 662 (U.S. Jud. Conf. 2008), and asserts that pursuant to the standard set forth in 28 U.S.C. § 352(b)(1)(A)(iii); Rule 11(c)(1)(D) the within evidence proves and or at least raises an inference that U.S.D.J. James Paul Oetken did commit judicial misconduct, at a point in time between August 19, 2021, and September 12, 2022, in the matter of Kaul/Basch v ICE et al (21-CV-06992).

The evidence includes the tacit admissions by U.S.D.J. Oetken of bribery, conspiracy and exparte communications, who despite recognizing his legal obligations to disclose his financial holdings and exparte communications, has failed to submit this information, a fact that satisfies the 28 U.S.C. § 352(b)(1)(A)(iii); Rule 11(c)(1)(D) inference standard of judicial misconduct. This council has the jurisdiction and authority to order the disclosure of this information, and have definitively addressed the issue of misconduct. However, the Plaintiffs respectfully assert that if this council elects not to compel disclosure, the law will interpret non-election as a finding of misconduct.

The misconduct (bribery/conspiracy/exparte communications) was perpetrated within the State of New York, but this is not the first case in which U.S.D.J. Oetken has engaged in such acts. There exists a **"pattern"** within his case history of always ruling in favor of corporations, and in those cases in which all the litigants were corporations, he always ruled in favor of the largest corporation. An investigation could commence with a closer examination of this **"pattern"**, and a comparison with the financial holdings (stocks/bonds/shares) of U.S.D.J. Oetken in relation to the corporations in whose favor he ruled. This was one of the methods used by journalists at the Wall Street Journal, in researching their September 2021 stories on corruption in the federal judiciary.

This complaint is based not on the merits of U.S.D.J.'s opinion, but on an admitted fraud committed against the apparatus of justice, and does therefore not lie pursuant to 28 U.S.C. § 352(b)(1)(A)(ii); Rule 3(h)(3)(A). The Plaintiffs' decision not to appeal the order, pertains to the tardiness of the procedure inherent in attempting to raise on appeal the issue of 'Fraud on the Court', and is without effect as to the Plaintiffs' position that U.S.D.J.'s opinion is factually/legally erroneous. Similarly, to have appealed the order, as suggested by U.S.D.J. Oetken, would have constituted an admission of the legitimacy of the order and would have foreclosed this council from investigating this complaint, a fact known by U.S.D.J. Oetken. This tactic evidences U.S.D.J.'s wrongful state-of-mind, in that had he known he had not committed misconduct, he would not have attempted to coerce the filing of an appeal. It was the intention of U.S.D.J. Oetken to attempt to permanently foreclose the Plaintiffs from seeking recompense in the United States District Court, by directing the case into the appellate court, knowing that this process would be lengthy and likely would conceal his misconduct.

We declare under penalty of perjury that the statements made in this complaint are true and correct to the best of our knowledge.


RICHARD ARJUN KAUL, MD                                    DAVID B. BASCH, MD


Date: November 18, 2022

2

Case 1:21-cv-06992-JPO   Document 196   Filed 06/12/25   Page 38 of 244
Case 3:24-cv-00021-CWR-LGI   Document 27-2   Filed 01/14/25   Page 8 of 13
Case 1:21-cv-06992-JPO   Document 170   Filed 09/14/22   Page 1 of 17

**www.drrichardkaul.com**

**September 13, 2022**

Honorable J. Paul Oetken
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re: Kaul/Basch v ICE et al
    21-CV-06992
    K11-7
    Financial disclosures/conflicts of interest/ex parte communications

Dear Judge Oetken,

We write this letter with the utmost respect for you and the federal judiciary, and in recognition of the immense pressures that the above case must have brought to bear on your judgment. However, it is our position, one that is authorized by law and by our rights, that the opinion and order entered on September 12, 2022, will remain invalid until the following information has been disclosed to the record:

1. Forms AO 10 since 2020.

2. Information required pursuant to the Courthouse and Transparency Act.

3. A list of all ex parte communications between yourself and any agents acting on your behalf, and the Defendants or any agents acting on their behalf, that pertains/relates/refers/references or are in any way associated with the aspect of any of K11-7 or any of **The Kaul Cases**, including but not limited to: (I) the delivery and or receipt of any favor/gift/benefit/advantage/interest to you and or any member of your family to the third-degree, by the Defendants and or their agents in return for granting their motions; (ii) the promise of any future delivery and or receipt of any favor/gift/benefit/advantage/interest to you and or any member of your family to the third-degree, by the Defendants and or their agents in return for granting their motions. The pertinent time period is August 19, 2021, to the present.

As you are aware, the issue of judicial corruption has unfortunately appeared prominently within **The Kaul Cases**, and was featured in a series of Wall Street Journal articles in September

1

Case 1:21-cv-06992-JPO   Document 196   Filed 06/13/25   Page 39 of 244
Case 3:24-cv-00621-GWR-LGL   Document 27-2   Filed 04/14/25   Page 9 of 13
Case 1:21-cv-06992-JPO   Document 170   Filed 09/14/22   Page 2 of 17

2021 (K11-7: D.E. 25 Page 1 – 46 of 50). Consequent to this publicity, and in or around May 2022, the Courthouse Ethics and Transparency Act was passed in response to public pressure against judicial corruption (**Exhibit 1**). Senator Ted Cruz was one of the co-sponsors, a person to whose attention, in January 2021, I brought the issue of judicial corruption (**Exhibit 2**). The ~~misconduct of Senator Charles Schumer regarding his "Political interference in judicial~~ process" is highlighted in the letter to Senator Cruz. I understand your appointment to the bench was sponsored by Senator Schumer.

Our request for the public disclosure of the above financial information relates to the fact that your opinion/order are so thoroughly divorced from the evidence/facts/arguments/law of this case, that one cannot but conclude that you, like U.S.D.J. Kevin McNulty (U.S.D.C.-DNJ), Senator Schumer's brother-in-law, have been corrupted. U.S.D.J. McNulty engaged in the same opinion falsifying activity in K1 (D.E. 313-1), as now appears in K11-7 (D.E. 168).

Our request for the public disclosure of all ex parte communications pertains, in part, to the dissemination of notices of preservation to various ex-members of the political/legal/judicial establishment, including Jose Linares, the ex-Chief Judge of the District of New Jersey, who, in mid-late May 2019, suddenly retired from the bench, and took partner status at the law firm of English & McCarter in Newark, New Jersey, after having received a letter from me, requesting his financial disclosure/conflicts of interest (**Exhibit 3**). On May 5, 2022, Mr. Linares was served with a NOTICE OF PRESERVATION in K11-7 (**Exhibit 4**).

We respectfully assert that the principles underpinning Rules 144/455, and those of the due process clauses of the Constitution, are authoritative in this matter, and do render your opinion/order void until your impartiality/lack of bias has been evidentially established.

We thank you for your attention to this matter.

Yours sincerely

RICHARD ARJUN KAUL, MD                    DAVID BASCH, MD

cc: All Counsel of Record
    All parties with a legal or other interest

2

# Exhibit 1

*(/)*

## Cornyn, Coons Bill to Apply STOCK Act Requirements to Federal Judges Signed Into Law

In: All News (/newsroom)  Posted 05/13/2022

Share:  **f** (https://www.facebook.com/sharer/sharer.php?
u=https://www.cornyn.senate.gov/content/news/cornyn-coons-bill-apply-stock-act-
requirements-federal-judges-signed-law)   🐦 (https://twitter.com/intent/tweet?
text=Cornyn%2C+Coons+Bill+to+Apply+STOCK+Act+Requirements+to+Federal+Judges+Sign
ed+Into+Law&url=https://www.cornyn.senate.gov/content/news/cornyn-coons-bill-apply-stock-
act-requirements-federal-judges-signed-law)   ✉(mailto:?subject=Cornyn, Coons Bill to Apply
STOCK Act Requirements to Federal Judges Signed Into
Law&body=https://www.cornyn.senate.gov/content/news/cornyn-coons-bill-apply-stock-act-
requirements-federal-judges-signed-law)

> "Bill Followed Wall Street Journal Report on Judges Neglecting Financial Disclosure
> Requirements, Avoiding Potential Conflicts of Interest"

**WASHINGTON** – U.S. Senators John Cornyn (R-TX) and Chris Coons (D-DE) released the following
statements after their *Courthouse Ethics and Transparency Act*, which would require online publication
of financial disclosure reports for federal judges and mandate they submit periodic transaction
reports for certain securities transactions, was signed into law:

*"Excluding federal judges from the same disclosure requirements as other federal officials under the STOCK
Act was a mistake, and I'm glad we could right this wrong,"* said Sen. Cornyn. *"Thank you to my colleagues in
Congress and the Biden Administration for acting quickly to make this the law of the land so we can prevent
conflicts of interest and reassure litigants that they will receive a fair trial."*

*"Every American who has their day in court deserves to know they'll be treated fairly by their judge, and now
that the Courthouse Ethics and Transparency Act is law, they can be more confident than ever that they're
getting equal and unbiased treatment. By signing this bipartisan measure into law, President Biden has
brought badly needed transparency to federal judges' finances by signing this bipartisan measure into law,"*
said Sen. Coons.

The legislation is cosponsored by Senate Judiciary Committee Chairman Dick Durbin (D-IL) and
Ranking Member Chuck Grassley (R-IA) and Senators John Kennedy (R-LA), Sheldon Whitehouse (D-
RI), Ted Cruz (R-TX), and Jon Ossoff (D-GA).

**Background:**

The *Courthouse Ethics and Transparency Act* will require that federal judges' financial disclosure reports be made publicly available online and require federal judges to submit periodic transaction reports of securities transactions in line with other federal officials under the *STOCK Act*. The bill will amend the *Ethics in Government Act of 1978* to:

- Require the Administrative Office of the U.S. Courts to create a searchable online database of judicial financial disclosure forms and post those forms within 90 days of being filed, and
- Subject federal judges to the *STOCK Act*'s requirement of filing periodic transaction reports within 45 days of securities transactions over $1,000.

Importantly, the bill also preserves the existing ability of judges to request redactions of personal information on financial disclosure reports due to a security concern.

Under ethics guidelines and federal law prior to the *Courthouse Ethics and Transparency Act*, federal judges were prohibited from hearing cases that involve a party in which they, their spouse, or their minor children have a financial interest. Federal judges were instead supposed to disqualify themselves in any proceeding in which their impartiality may be questioned. Despite this, a recent report from the Wall Street Journal found that between 2010 and 2018, more than 130 federal judges failed to recuse themselves in nearly 700 cases in which they or an immediate family member held stock in a company involved in the case.

While federal judges were required to submit financial disclosure reports, the law did not provide sufficient transparency or certainty for litigants to discern if the judge has a conflict of interest. The process for obtaining judicial financial disclosure forms was often cumbersome and took months or even years. By contrast, financial disclosure reports for the President, Members of Congress, and Presidential-appointed and Senate-confirmed officials are readily available online.

Litigants need real-time access to judges' financial disclosures and securities transactions in order to preserve the integrity of the proceedings and ensure a recusal when there's a potential conflict of interest in their case. The *Courthouse Ethics and Transparency Act* will enact necessary updates to disclosure rules and provide litigants and the public with greater confidence in the judicial system.

Contact Senator Cornyn ➔ (/contact)

Keep Informed

First Name

Last Name

E-mail

Sign Up

Washington, DC

Central Texas

**www.drrichardkaul.com**

**November 18, 2022**

Senator Edward Cruz
300 E 8th, Suite 961
Austin, TX 78701

**Re: Courthouse Ethics and Transparency Act/Financial Disclosures U.S.D.J. James Paul Oetken**

Dear Senator Cruz,

We write this letter to you in your capacity as a member of the Senate Judiciary Committee and a cosponsor of Courthouse Ethics and Transparency Act, and seek your assistance in resolving a matter in which a federal judge has refused to disclose his financial holdings and exparte communications, effectively admitting to having engaged in bribery and corruption of the federal bench. The jurist in question is U.S.D.J. James Paul Oetken of the Southern District of New York.

On September 13, 2022, in the matter of Kaul/Basch v ICE et al: 21-CV-06992, and as per the enclosed letter, we requested from U.S.D.J. Oetken his Forms AO 10 since 2020 and a list of all exparte communications with the Defendants and or their agents. This request was submitted pursuant to the Courthouse Ethics and Transparency Act. In this letter we referenced the articles published in September 2021 by the Wall Street Journal, regrading corruption within the federal judiciary.

We believe this case presents the first test of the Act, and we hope that this test proves the Act has weight.

We thank you for your attention to this matter.

Yours sincerely

RICHARD ARJUN KAUL, MD                    DAVID BASCH, MD



# KAUL v. SCHUMER/OETKEN
# K11-26

# KAUL v. SCHUMER/OETKEN
# K11-26

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

RICHARD ARJUN KAUL, MD;
JANE DOE; JOHN DOE.

Plaintiff                                          CIVIL ACTION.:

                                                   COMPLAINT
v.

CHARLES E. SCHUMER;
JAMES PAUL OETKEN;
JANE DOE; JOHN DOE

Defendant

---

# **CONTENTS**

**THE KAUL CASES – PAGE 4**

**PRELIMINARY STATEMENT – PAGE 5**

**JURISDICTION AND VENUE – PAGE 7**

**PARTIES – PARTIES 8**

**STATEMENT OF FACT – PAGE 9**

**LEGAL CLAIMS – PAGE 12**

**RELIEF – PAGE 27**

# THE WITHIN REFERENCED KAUL CASES

**K1:** KAUL v CHRISTIE: 16-CV-02364-CLOSESD – PRE SCOTUS JARKESY

**K5:** KAUL v FEDERATION ET AL: 19-CV-3050-CLOSED – PRE SCOTUS JARKESY

**K11-2:** KAUL v BOSTON PARTNERS ET AL: 21-CV-10326-CLOSED – PRE SCOTUS JARKESY

**K11-7:** KAUL v ICE ET AL: 21-CV-6992-CLOSED – PRE SCOTUS JARKESY

**K11-19:** KAUL v TEXAS MEDICAL BOARD ET AL: 24-CV-00163-CLOSED – PRE SCOTUS JARKESY

**K11-20:** KAUL v FEDERATION: 24-CV-03180-CLOSED – POST SCOTUS JARKESY

**K11-23:** KAUL v OETKEN ET AL: 24-CV-00621-OPEN – POST SCOTUS JARKESY

**K11-24:** KAUL v FEDERATION: 25-CV-25 –CLOSED- POST SCOTUS JARKESY

# PRELIMINARY STATEMENT

**1.** A lot of once-purposefully hidden facts and truth of high crime can, with a resolute doggedness, a steely and immutable conviction of the truth and divine intervention, cause a holding to criminal account of the perpetrators of those crimes. Crimes, many of which, were and are crimes against humanity and crimes committed with a malicious knowingness, an utter disregard for the lives of millions of Americans and crimes engineered in the cold heartless administrative bureaucracy of state/federal agencies purposed to help humanity.

**2.** Crimes, the conspiracy and perpetration of which were engineered with a 'killing machine' like efficiency, the sole purpose of which was the furtherance of massive schemes of knowingly illegal profiteering by certain unprecedentedly corrupted state/federal politicians and ruthless publicly traded for profit corporations.

**3.** Corporations with whose executives/shareholders these criminally corrupted politicians perpetrated for over two (2) decades, **"patterns of racketeering"** by/through/within the executive/legislative/judicial branches of the United States of America (state/federal) and the governments of those foreign countries whose leaders were bribed and who participated in global kickback schemes, that involved the theft of billions of dollars from the American treasury.

**4.** The billions in kickbacks were funneled through off-shore financial vehicles and 'shell 'corporations into the possession of these corrupted politicians/judges/legislators, in both state and federal government.

**5.** In the period from 2005 to 2025, Plaintiff Kaul has, through **The Kaul Cases** (2016-2025), been submitting/advancing the evidence/facts/arguments, the corroboration of which is now occurring with the emergence of evidence from the highly probative DOGE investigations. At the core of these never-before conducted investigations is the search for the reason/s

underpinning the immense disparity between the tens/hundreds of millions of dollars in net worth of these corrupt politico-public servants (politicians/judges/legislators) and their government salaries of no greater than two hundred and fifty thousand dollars ($250,000), and quite often substantially less.

**6.** The confluence in 2025 of the factual foundation of **The Kaul Cases** and the DOGE investigations is not unlike the merging of the two channels of the Niagara River just above the Niagara Falls. The weight of the evidence and facts cannot be denied, is irrefutable and there exists nothing that can halt its inexorable proof of the criminal guilt of **The Kaul Cases** Defendants, of whom Defendant Schumer was and is one of the perpetrators-in-chief. His guilt is established.

**7.** In the period from 2016 to 2025, **The Kaul Cases** Defendants knew of their guilt of the offenses/violations/crimes they caused and continue to cause to Plaintiff Kaul's life/liberty/property/reputation and his human/civil/constitutional rights, all within and in furtherance of the **'Revocation-Cover-Up Conspiracy'** (2005-2025).

**8.** Defendant Schumer and his co-conspirators have, since 2016, evaded justice through the perpetration of massive schemes of corruption of the political/judicial bodies of state and federal governments, an evasion achieved through quid pro quo schemes that obstructed Plaintiff Kaul's ability to prosecute any of **The Kaul Cases,** the non-prosecution and illegal dismissals of which were then, with a knowing illegality, propagated into the fabric of American jurisprudence and cited to by **The Kaul Cases** Defendants in support of the motions/defenses for dismissal of cases subsequently filed by Plaintiff Kaul.

**9.** The remediation of such an expansive scheme will inevitably and under the doctrine of 'Fraud on the Court' require that every opinion/order entered by every judge involved in the **'Revocation-Cover-Up Conspiracy'** be rendered null and void for all purposes, including that of

any further citation, unless that citation is cited for the proposition of establishing a 'Fraud on the Court'.

10. Throughout **The Kaul Cases**, the mischaracterization by **The Kaul Cases** Defendants of the within claims as being those of a **"nutcase"** and being claims that were, amongst other things **"meritless ... frivolous ... harassing ... fantastical ... vast implausible conspiracy ... unsubstantiated ... rantings of a disgruntled doctor ... repetitive ... long saga ... scandalous ... defamatory ... outrageous ... impertinent ... etc. ... etc."** were and are mischaracterizations that were sworn under penalty of perjury onto the federal docket with a knowing fraudulence.

11. **The Kaul Case**s Defendants, did, consequent to their commission of increasingly serious crime, entrap themselves in an ever expanding and inescapable scheme of criminal conduct, perpetrated by/through/within the **'Revocation-Cover-Up Conspiracy'** and its associated and massive global **"patterns of racketeering"**.

12. It would be fair to state that when, in 2005, Plaintiff Kaul invented and successfully performed the first outpatient minimally invasive lumbar spinal fusion, he had no idea that as he fluoroscopically inserting the final cannulated pedicle screw into the patient's left L4 pedicle, while focusing on the live radio-imaging screen to ensure proper screw placement, that in 2025, as a consequence of that screw-based operation, he would in 2025 be at the conclusion of the legal equivalent of a similar screw-type operation. An operation in which he is 'un-screwing' the 'screwing' exacted upon the American public by, of all people, its public servants.

# JURISDICTION AND VENUE

**13. General:**

28 U.S.C. § 1331 – Plaintiff's allegations arise pursuant to U.S.C. § 1964(a)(b)(c)(d) and 1962.
U.S.C. § 1337 – Plaintiff's allegations allege violations of an Act of Congress regulating commerce and monopolies.
28 U.S.C. § 1332(d)(2)(A) – Plaintiff is a citizen of a different state to Defendant Schumer and the aggregate amount in controversy exceeds seventy-five thousand dollars ($75,000).

**14. Personal:**

The Court has personal jurisdiction over Defendant Schumer, as he has transacted/transacts business, maintained/maintains substantial contacts, and/or has committed acts in furtherance of the illegal scheme and conspiracy throughout the United States, including the District of Columbia.

The scheme and conspiracy have been directed at and have had the intended effect of causing injury to Plaintiff Kaul's ability to practice medicine in the District of Columbia and nationwide, and to causing four thousand seven hundred and nine (4,709) days-worth of ongoing/"new" injuries to Plaintiff Kaul's life/liberty/property/reputation.

The scheme and conspiracy have also been directed at obstructing Plaintiff Kaul's prosecution of **The Kaul Cases** within the United States District Court, including the District of Columbia (K5) through schemes of political/judicial corruption.

This Court also has personal jurisdiction over Defendant Schumer pursuant to Fed. R. Civ. P. 4(k)(1)(A) because he would be subject to a court of general jurisdiction in the District of Columbia.

## 15. Venue:

28 U.S.C. § 1391(b)(1) – A civil action may be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located – Defendant Schumer resides in the District of Columbia.

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred (denial of application for medical license in 2020/2024) or a substantial part of property that is the subject of the action is situated - Plaintiff Kaul's denial in 2020/2024 of his applications for licensure in the District of Columbia were based on the illegal 2012/2014 suspension/revocation of his New Jersey license, and constitute ongoing and **"new racketeering injuries"** within the jurisdiction of the District of Columbia, that confers on Plaintiff Kaul the right to sue in the United States District Court for the District of Columbia.

# **PARTIES**

**16. PLAINTIFF**

RICHARD ARJUN KAUL, MD – 440c SOMERSET DRIVE, PEARL RIVER, NY 10965 – 914 250 8413 DRRICHARDKAUL@GMAIL.COM **("KAUL")**

**17. DEFENDANTS**

CHARLES E. SCHUMER, ESQ – HART SENATE OFFICE BUILDING, 322, WASHINGTON, DC 20510 – 202 224 6542

**18.** JAMES PAUL OETKEN, ESQ – ROOM 706, 40 FOLEY SQUARE, NY, NY 10007 (**"DEFENDANT OETKEN"**)

# STATEMENT OF FACT

**19.** The massiveness of the '**Revocation-Cover-Up Conspiracy**' (2005-2025) in its perpetration through **The Kaul Cases** (2016-2025) has involved a substantial body of evidence/fact/law/argument and Defendants/Co-Conspirators who have perpetrated **"patterns of racketeering"** through, amongst other things, the executive/judicial/legislative branches of state and federal government, publicly traded corporations, the New York Stock Exchange and the media, through the commission of amongst other things, the RICO predicate acts of bribery/quid pro quo schemes/perjury/obstruction of justice/evidential tampering/witness tampering/wire fraud/insider trading/securities fraud/money laundering/public corruption/judicial corruption/kidnapping/false indictments/false arrests/false imprisonments/attempted murder.

**20.** Committed in conjunction with these crimes are violations of human/civil/constitutional rights and crimes against humanity, the most recent one being the forced mass inoculations of a lethal toxic mRNA molecular construct that the public were knowingly deceived into believing was a legitimate 'vaccine' against COVID.

**21.** It was not, and its sole purpose was to generate immense profits for the pharmaceutical industry, which it did in collusion and conspiracy with corrupt politicians and state/federal agencies.

## FACTS AS TO CRIMES COMMITTED BY DEFENDANT SCHUMER

**22.** It was Plaintiff Kaul's prosecution of **The Kaul Cases** that caused Defendant Schumer to commit the crimes of amongst other things, bribery/quid pro quo schemes/obstruction of justice/wire fraud/conspiracy/public corruption against Plaintiff Kaul, the purpose of which was to prevent Plaintiff Kaul from exposing the crimes of **The Kaul Cases** Defendants, with the

initiating crime being the 2014 illegal jury-less article III judge-free NJ revocation, a crime at the center of the '**Revocation-Cover-Up Conspiracy'** (2005-2025).

23. However, in the years that preceded and followed the  2014 illegal revocation, further ever more serious felonies were committed within and perpetrated through the '**Revocation-Cover-Up Conspiracy'** and these include mail fraud/perjury/extortion/kickbacks/evidence tampering/witness tampering/securities fraud/bankruptcy fraud/bank fraud/money laundering/judicial corruption/kidnapping/manslaughter/chemical weapon trafficking/COVID vaccine related crimes against humanity.

24. Defendant Schumer is, pursuant to RICO's doctrine of vicarious liability, and having perpetrated RICO predicate acts and **"patterns of racketeering"** the admittance of which was caused by his Rule 8(b)(6) non-denial in K3, as liable for the ongoing/"**new"** crimes/violations/injuries committed against Plaintiff Kaul (2005-2025) as if he directly committed them himself. See Salinas v US (96-738) 89 F.3d 1185 and  US v Coonan, 664 F. Supp. 861 (S.D.N.Y. 1987).

25. Similarly, within **The Kaul Cases** and as now factually substantiated by admissions of fact from approximately fourteen (14) Defendants (Andrew Kaufman/Steven Lomazow/New Jersey Board of Medical Examiners/Texas Medical Board/Christopher J. Christie/James Howard Solomon/Daniel Stolz/Robert Francis Heary/CPEP/Federation State Medical Boards/Allstate Insurance Company/Horizon Blue Cross Blue Shield/Robert Marino/James Paul Oetken), the admission of fact which are submitted within K11-19/K11-20/K11-23/K11-24.

26. In the period from the February 22, 2016 commencement of **The Kaul Cases** (K1), not one Defendant has denied any of the allegations/facts, the non-denial of which did, pursuant to Rule 8(b)(6) cause their admission for all purposes, and the liability of which does pursuant to RICO inure to Defendant Schumer.

27. The **"crime of one becomes the crime of all"** as does the insider trading and embezzlement from the US Treasury of the public's money by Defendant Schumer, become the liability of **The Kaul Cases** Defendants. Defendant Schumer's net worth of eighty-one million dollars ($81,000,000) was procured through these grand schemes of public corruption and money laundering, as was that of many of **The Kaul Cases** Defendants.

28. Enclosed within (**Exhibit 1**) are the fourteen (14) admissions of fact, fact to which Defendant Schumer has, pursuant to RICO, admitted. There exists no civil nor criminal defense to the within charged allegations and facts.

## DEFENDANT SCHUMER'S ONGOING LIBALITY AND THE ONGOING TOLLING OF THE RICO STATUTE

29. The ongoing '**Revocation-Cover-Up Conspiracy'** and Defendant Schumer's participation/facilitation/aiding and abetting of it, do constitute and substantiate his ongoing vicarious liability pursuant to RICO (See Salinas/Coonan) and the Continuing Violations Doctrine (See Bodner v. Banque Paribas 114 F.Supp.2d 117 (2000).

30. Defendant Schumer has continued to abuse his political power in the perpetration of schemes of judicial/state medical board corruption, in which he has  directly and or indirectly bribed/threatened/intimidated district court judges and state medical boards into respectively dismissing **The Kaul Cases** and or denying Plaintiff Kaul's 2020/2024 license applications to all state medical boards.

31. Defendant Schumer has perpetrated and continues to perpetrate these district judge/state medical board schemes of obstruction in collusion/conspiracy with **The Kaul Cases** Defendants.

**32.** The ongoing-ness of the **'Revocation-Cover-Up Conspiracy'**, the non-remediation of the injuries to Plaintiff Kaul's life/liberty/property/reputation and the ongoing violations of RICO do continue to cause a tolling of the statute of limitations.

## FACTS AS TO CRIMES COMMITTED BY DEFENDANT OETKEN AND CAUSE FOR HIS IMPEACHMENT

**33.** The central issue in this case pertains to the blatant disrespect of a democratically appointed district judge in the S.D.N.Y. for the SCOTUS principles and holdings of the seminal case of <u>SEC v Jarkesy: 22-859</u> (June 27, 2024) and his willful failure to recognize that the application of this law to a case he had adjudicated on September 12, 2022, did render his opinion/order null and void, an opinion/order that he admitted were the product of a quid pro quo scheme of bribery with the defendants in that case.

**34.** Defendant James Paul Oetken, did, in period commencing in or round August 2021 enter in to a racketeering conspiracy with the K11-7 Defendants, in which he participated in the conversion of his bench/court into a **"racketeering enterprise"** through which he and his defendant co-conspirators perpetrated a **"pattern of racketeering"** through his court of amongst other things, the commission of the RICO predicate acts of bribery/public corruption/wire fraud/obstruction of justice.

**35.** The purpose of these RICO violations were to injunct Plaintiff Kaul from seeking justice/truth within the United States District Court as to all the facts preceding, surrounding and underpinning the illegal 2012-214 suspension/revocation of his NJ license, a revocation that has since 2012 deprived Plaintiff Kaul of his life/liberty/property/reputation and caused ongoing/"**new**" violations of his human/civil/constitutional rights.

**36.** Defendant Oetken, in conjunction with Defendant AGC and his co-conspirators in the New York region has acted with a sense of impunity in the belief that his criminal conduct on the bench and its conversion into a **"racketeering enterprise"** would go un-exposed and un-punished.



<u>www.drrichardkaul..com</u>

**MAY 10, 2025**

<u>ATTENTION:</u>

ANDREW R. NORWOOD
drew.norwood@usdoj.gov
JESSICA WILLIAMS
Jessica.Williams3@usdoj.gov
501 EAST COURT STREET
SUITE 4.430
JACKSON, MS 39201

**RE: KAUL v OETKEN ET AL**
**24-CV-000621-CWR-LGI**
**K11-23**
**NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025**
**ENTRY ONTO THE K11-7 DOCKET**

**K11-7**: KAUL v ICE: 21-CV-06992 (S.D.N.Y.)
**K11-23**: KAUL v OETKEN ET AL: 24-CV-00621 (S.D.M.)

Dear Counsel,

Please be noticed that on May 8, 2025, your client, K11-23 Defendant James Paul Oetken did with a willful illegality commit another offense/violation/crime against myself by publishing to the K11-7 docket a knowingly fraudulent legal instrument and text (<u>**Exhibit 1**</u>). This act and its probative effect as to K11-23 Defendant Oetken's guilty state-of-mind, will with his admissions of fact (<u>**Exhibit 2**</u>) be submitted to persons/agencies/authorities involved in the disciplinary/impeachment/indictment process as to district court judges.

K11-23 Defendant Oetken is conflicted, a fact when he knew when he published the fraudulent legal instrument to the K11-7 docket, but despite knowing his state-of-conflicted-ness he did nonetheless commit a further offense/violation/crime (2005-2025) against my

**www.drrichardkaul..com**

**MAY 10, 2025**

**ATTENTION:**

ANDREW R. NORWOOD ,
drew.norwood@usdoj.gov
JESSICA WILLIAMS
Jessica.Williams3@usdoj.gov
501 EAST COURT STREET
SUITE 4.430
JACKSON, MS 39201

**RE: KAUL v OETKEN ET AL**
    **24-CV-000621-CWR-LGI**
    **K11-23**
    **NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025**
    **ENTRY ONTO THE K11-7 DOCKET**

**K11-7:** KAUL v ICE: 21-CV-06992 (S.D.N.Y.)
**K11-23:** KAUL v OETKEN ET AL: 24-CV-00621 (S.D.M.)

Dear Counsel,

Please be noticed that on May 8, 2025, your client, K11-23 Defendant James Paul Oetken did with a willful illegality commit another offense/violation/crime against myself by publishing to the K11-7 docket a knowingly fraudulent legal instrument and text (**Exhibit 1**). This act and its probative effect as to K11-23 Defendant Oetken's guilty state-of-mind, will with his admissions of fact (**Exhibit 2**) be submitted to persons/agencies/authorities involved in the disciplinary/impeachment/indictment process as to district court judges.

K11-23 Defendant Oetken is conflicted, a fact when he knew when he published the fraudulent legal instrument to the K11-7 docket, but despite knowing his state-of-conflicted-ness he did nonetheless commit a further offense/violation/crime (2005-2025) against my

1

<u>www.drrichardkaul..com</u>

MAY 10, 2025

<u>ATTENTION:</u>

ANDREW R. NORWOOD
drew.norwood@usdoj.gov
JESSICA WILLIAMS
Jessica.Williams3@usdoj.gov
501 EAST COURT STREET
SUITE 4.430
JACKSON, MS 39201

RE: KAUL v OETKEN ET AL
    24-CV-000621-CWR-LGI
    K11-23
    NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025
    ENTRY ONTO THE K11-7 DOCKET

**K11-7**: KAUL v ICE: 21-CV-06992 (S.D.N.Y.)
**K11-23**: KAUL v OETKEN ET AL: 24-CV-00621 (S.D.M.)

Dear Counsel,

Please be noticed that on May 8, 2025, your client, K11-23 Defendant James Paul Oetken did with a willful illegality commit another offense/violation/crime against myself by publishing to the K11-7 docket a knowingly fraudulent legal instrument and text (<u>**Exhibit 1**</u>). This act and its probative effect as to K11-23 Defendant Oetken's guilty state-of-mind, will with his admissions of fact (<u>**Exhibit 2**</u>) be submitted to persons/agencies/authorities involved in the disciplinary/impeachment/indictment process as to district court judges.

K11-23 Defendant Oetken is conflicted, a fact when he knew when he published the fraudulent legal instrument to the K11-7 docket, but despite knowing his state-of-conflicted-ness he did nonetheless commit a further offense/violation/crime (2005-2025) against my

human/civil/constitutional rights to, amongst other things, due process and an impartiality of tribunal. And the reason/s as to why K11-23 Defendant Oetken would, with such blatancy, illegally pervert the power/authority of the United States District Court to attempt to serve his own personal interests pertains to his admitted guilt of the K11-23 charges, the consequences of his guilt and a profoundly misguided further guilt affirming 'cover-up' act of seeking to have me eliminated.

Central to K11-23 Defendant Oetken's highly motivated offense/violation/crime against the legal apparatus of the United States, a treasonous act, is K11-27 and the Rules 26/16 orders as entered on April 11 and scheduled for July 9, 2025 by the U.S.D.C. for the Southern District of Texas. K11-23 Defendant Oetken, in collusion/conspiracy with the K11-27 Defendants and K11-26 Defendant Schumer did continue in K11-7 to perpetrate an ongoing **"pattern of racketeering"** by/through/within the legal apparatus of the United States.

Thus, 'The Fraud on the Court' committed by these treasonous acts does ab initio render invalid/illegal K11-23 Defendant Oetken's May 8, 2025 entry onto the K11-7 docket and all of its within contents. However, what further illustrates the egregiousness and proves the criminality of such an act is the fact that K11-23 Defendant Oetken did not even attempt to articulate how a co-existence of his K11-23 Defendant status and his K11-7 May 8, 2025 docket entry do not violate either his own professional/ethical rules and or my human/civil/constitutional rights. The extremis of his offenses/violations/crimes are consistent with and highly probative of his admitted guilt in K11-23.

K11-23 Defendant Oetken and his long-standing commission of crime by/through/within multiple extra-jurisdictional districts of the U.S.D.C. has caused him to become professionally isolated, the immediate proof of which resides within the fact that no other district judge in K11-7 was willing to adjudicate/attach their name to a proceeding that all of them know was/is illegal. K11-23 Defendant Oetken knew/knows that because he is an admittedly guilty Defendant in K11-23, the law/rules of professional conduct/human-civil-constitutional rights

expressly prohibit him from having any role in a contempt proceeding other than that of a witness subject to examination under oath. But because no other district judge entered the 'Revocation-Cover-Up-Conspiracy' or was even willing to consider an entrance, K11-23 Defendant Oetken was 'cornered' into an increasingly shrinking 'corner' of committing yet a further offense/violation/crime against my life/liberty/property/reputation and human./civil/constitutional rights.

The manufacturing of this impossible situation was/is 'rooted' in K11-23 Defendant Oetken's long-standing **"pattern of racketeering"** and a well-known reputation within legal and 'white-collar' litigation communities for an un-inhibited 'price is right' quid pro quo bribery related perpetration of such schemes, **ALL** of which account for the exposition of his guilt in K11-23 by myself, a lay and non-lawyer person. Sadly, but predictably, no oath-swearing lawyer has had the courage or sense of righteousness to expose K11-23 Defendant Oetken's bribery/fraud/conflicted/impartial tribunal **"pattern of racketeering"**, knowing that such an exposition would rectify the immense life-destroying effects his offenses/violations/crimes have had on non-corporate litigants involved in disputes with corporations.

Similarly, no other district judge in the S.D.N.Y., knowing of K11-23 Defendant Oetken's **"pattern of racketeering"** did, as his/her obligatory code of conduct mandate, report K11-23 Defendant Oetken to the relevant administrative/civil/criminal authorities. These jurist witnesses remained silent, but would be obligated under force of subpoena to be called as witnesses in any proceeding involving K11-23 Defendant Oetken in any district court, be it the S.D.N.Y., the Southern District of Mississippi or the Southern District of Texas, **AS WOULD** any of the K11-27 Defendants.

Penultimately, and for all the above stated reasons, K11-23 Defendant Oetken's May 8, 2025 publishing to the K11-7 docket of a knowingly fraudulent instrument renders the instrument null and void and thus deprives it of any legal effect, except that of further confirming/corroborating his admitted guilt of the bribery/fraud/impartial tribunal related

consequences established in K11-23. And of causing the emergence of further/new evidence substantiating the facts underpinning his admissions of guilt.  K11-23 Defendant Oetken had/has no right nor authority to use the power of the federal bench in any ministerial/adjudicative manner involving myself and or any matter pertaining/relating to my life/liberty/property/reputation and or human/civil/constitutional rights. Thus, the nullity of the May 8, 2025 illegal instrument does not only invalidate all of its within contents but also any of the fraudulent consequences that might emanate from these invalidated contents.

And finally, as counsel for K11-23 Defendant Oetken as to the same subject matter of K11-23 and K11-7, that being principally the issue of judicial corruption, it is your professional responsibility to advise K11-23 Defendant Oetken that he, a person represented by counsel, must not directly/indirectly communicate with me except through counsel. Failure to advise him of these facts will constitute a violation of your ethical/legal rules of conduct. Please also be advised that this letter will be submitted in support of my motion in K11-23 to life the stay and permit further discovery on K11-23 Defendant Oetken's offenses/violations/crime and their relation to his criminal conduct related deprivation of any form of immunity.

Please also be advised of the United States Government's proposed bills/legislation to combat the exact type of judicial corruption of which K11-23 Defendant Oetken has admitted to perpetrating since just after his 2011 appointment to the federal bench (**Exhibit 3**).

Yours sincerely

RICHARD ARJUN KAUL, MD

cc: All counsel of record in K11-7 and K11-23

# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICHARD ARJUN KAUL, *et al.*,

Plaintiffs,

-v-

INTERCONTINENTAL EXCHANGE, *et al.*,

Defendants.

21-CV-6992 (JPO)

ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Richard Arjun Kaul shall show cause as to why he should not be held in contempt, pursuant to the motions at ECF Nos. 179, 180, 182, and 188 for violation of the Court's September 22, 2022 and subsequent orders, at a hearing on **June 17, 2025 at 2:30 p.m.** The hearing will take place in Courtroom 706, Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York. Plaintiff Richard Arjun Kaul shall file any written response to the motions for contempt on or before May 30, 2025, and such response shall not exceed 30 double-spaced pages.

SO ORDERED.

Dated: May 8, 2025
New York, New York

J. PAUL OETKEN
United States District Judge

The Clerk of Court is directed to mail a copy of this order to:

Richard Arjun Kaul
24 Washington Valley Road
Morristown, NJ 07960

ORDER: Plaintiff Richard Arjun Kaul shall show cause as to why he should not be held in contempt, pursuant to the motions at ECF Nos. 179, 180, 182, and 188 for violation of the Court's September 22, 2022 and subsequent orders, at a hearing on June 17, 2025 at 2:30 p.m. The hearing will take place in Courtroom 706, Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York. Plaintiff Richard Arjun Kaul shall file any written response to the motions for contempt on or before May 30, 2025, and such response shall not exceed 30 double-spaced pages. ( Responses due by 5/30/2025) Show Cause Hearing set for 6/17/2025 at 02:30 PM in Courtroom 706, 40 Centre Street, New York, NY 10007 before Judge J. Paul Oetken. (Signed by Judge J. Paul Oetken on 5/8/2025) (rro) (Entered: 05/08/2025)

# Exhibit 2

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI



SOUTHERN DISTRICT OF MISSISSIPPI
FILED
JAN -6 2025
ARTHUR JOHNSTON
BY_____ DEPUTY

---

RICHARD ARJUN KAUL, MD;
JANE DOE; JOHN DOE.

Plaintiff

v.

JAMES PAUL OETKEN
(PERSONAL AND OFFICIAL CAPACITY)
MISSISSIPI MEDICAL BOARD;
NEW YORK STATE ATTORNEY GRIEVANCE
COMMITTEE; JANE DOE; JOHN DOE.

Defendants.

3:24-ev-00621-CWR-LG-I

CIVIL ACTION NO.: 24-CV-00621-CWR-LGI

---

## ADMISSIONS OF MATERIAL AND UNDISPUTED FACT NOT RELATED TO THE ISSUE PENDING THE COURT'S RULING ON THE MOTION AND PURSUANT TO RULE 8(b)(6) AS TO DEFENDANT JAMES PAUL OETKEN

Respectfully Submitted

RICHARD ARJUN KAUL, MD

JANUARY 5, 2025

1

# RELEVANT REFERENCES TO THE KAUL CASES

**K1 –** KAUL v CHRISTIE: 16-CV-02364 (FEBRUARY 22, 2016, TO NOVEMBER 16, 2021-U.S.D.C.-D.N.J.)

**K11-7 -** KAUL/BASCH v ICE: 21-CV-06992 (AUGUST 19, 2021, TO SEPTEMBER 12, 2022-SOUTHERN DISTRICT OF NEW YORK)

**K11-10 -** KAUL/BASCH v ICE: 23-CV-2016 (MARCH 9, 2023, TO MAY 16, 2023-SOUTHERN DISTRICT OF NEW YORK)

**K11-14 -** KAUL v GEICO: 23-CV-22325 (JUNE 22, 2023, TO AUGUST 23, 2023-SOUTHERN DISTRICT OF FLORIDA)

**K11-17 -** KAUL v CPEP: 23-CV-00672 (NOVEMBER 20, 2023, TO JUNE 14, 2024 - EASTERN DISTRICT OF NORTH CAROLINA)

**K11-18 –** KAUL v OETKEN: 24-CV-00185 (MARCH 25, 2024, TO APRIL 8, 2024-EASTERN DISTRICT OF NORTH CAROLINA)

**K11-20 –** KAUL v FEDERATION STATE MEDICAL BOARDS: 24-CV-03180 (AUGUST 26, 2024, TO PRESENT-SOUTHERN DISTRICT OF TEXAS)

**K11-22 –** KAUL v BCBSA: 23-CV-01688 (DECEMBER 12, 2023, TO PRESENT-NORTHERN DISTRICT OF ALABAMA)

**K11-23 –** KAUL v OETKEN: 24-CV-00621 (OCTOBER 9, 2024 TO PRESENT-SOUTHERN DISTRICT OF MISSISSIPPI)

For ease of reference Defendant JAMES PAUL OETKEN will be referred to as "I"

## K11-23 + Failure To Deny Bribes

**1.** I admit that when I entered the knowingly illegal injunction on September 12, 2022, I instructed the Clerk of the Court to ensure Plaintiff Kaul was provided instructions on how to appeal in conjunction with an application to proceed in forma pauperis (D.E. 169-1).

**2.** I admit that the purpose of encouraging Plaintiff Kaul to file an appeal to the U.S.C.A. for the Second Circuit was that I did intermittently sit on the appellate bench and was informed it likely I be elevated to the appellate court if Plaintiff Kaul 'took the appellate bait'.

**3.** I admit I know that if Plaintiff Kaul did file an appeal, no other district court would admit any of his filings, and his claims would be restricted to the U.S.C.A. for the Second Circuit.

**4.** I admit I knew that the Second Circuit would ultimately deny Plaintiff Kaul's appeal and validate my knowingly illegal injunction.

**5.** I admit I knew that the validation of my injunction by the U.S.C.A. for the Second Circuit would forever preclude Plaintiff Kaul from filing any lawsuits in the United States District Court that had any connection, however remote, to any aspect of his professional licensing history.

**6.** I admit I knew that if I succeeded in eliminating Plaintiff Kaul in this bureaucratic manner, I would have been permanently elevated to the U.S.C.A. for the Second Circuit.

**7.** I admit that an elevation to the U.S.C.A. for the Second Circuit would have had the effect of permanently 'burying' all the bribery related quid pro quo crimes I had committed since being appointed to the federal bench in 2011 by a politician notorious even by political standards for egregious acts of political corruption.

**8.** I admit that had I been elevated to the U.S.C.A. for the Second Circuit, this politician would have secured even greater protection for his corrupt and criminal perversion of the power of government.

**9.** I admit, however, that because of Plaintiff Kaul, none of these hypotheticals occurred and my career was negatively impacted.

**10.** I admit the negative impact on my career in conjunction with preventing Plaintiff Kaul from exposing my crimes did cause me to threaten him with contempt and incarceration.

**11.** I admit I know of **The Kaul Cases** attempt on June 14/15, 2023 to have Plaintiff Kaul, while illegally incarcerated at the medium-maximum security Mercer County Prison in Trenton, NJ,

poisoned with the anti-psychotic medication, Librium, in order to have him deemed mentally unstable and committed indefinitely to a psychiatric institution.

**12.** I admit that on October 9, 2024, Plaintiff Kaul filed K11-23, in which I am accused of, amongst other things, bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption.

**13.** I admit that I was served with a copy of K11-23 on October 16, 2024 at approximately 9:30 am EST in my courtroom at the S.D.N.Y. by a security officer employed by the United States District Court.

**14.** I admit that on November 15, 2024, the Court ordered I answer the Complaint by December 16, 2024.

**15.** I admit that on December 16, 2024 I filed documents entitled 'MOTION TO DISMISS' (D.E. 12) and 'MEMORANDUM IN SUPPORT MOTION TO DISMISS' (D.E. 13).

**16.** I admit that in neither of these documents did I deny the allegations/facts of bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption. asserted in the Complaint in K11-23.

**17.** I admit I knew/know that in failing to deny the allegations/facts I did violate the Court's November 15, 2024 order.

**18.** I admit I knew/know that in failing to deny the allegations/facts I did cause them to become admitted for all purposes pursuant to Rule 8(b)(6).

**19.** I admit I knew/know that the allegations/facts constitute the commission of violations of criminal law.

**20.** I admit I knew/know that the immunity defense I raised in my impermissibly filed 'MOTION TO DISMISS' (D.E. 12) and 'MEMORANDUM IN SUPPORT MOTION TO DISMISS' (D.E. 13) were/are invalid because my Rule 8(b)(6) admissions of my commission of bribery related crime are not protected by any immunity defense.

**21.** I admit I am guilty of the charges levied in K11-23.

**22.** I admit that if I were innocent of the charges levied in K11-20 I would simply have denied them, but I did not because I am guilty of the charges.

**23.** I admit I know that on December 20, 2024, Plaintiff Kaul filed a 'NOTICE OF DEFENDANT OETKEN'S ADMISSION OF FACT PURSUANT TO HIS RULE 8(b)(6) FAILURE TO DENY THE

ALLEGATIONS AND FACTS ASSERTED WITHIN THE COMPLAINT, AND PURSUANT TO HIS VIOLATION OF THE COURT'S DECEMBER 16, 2024 ORDER TO ANSWER THE COMPAINT'.

**24.** I admit I know that a <u>responsive pleading</u> was ordered by the Court on November 15, 2024.

**25.** I admit I know that pursuant to Rule 8(b)(6) the **"Effect of Failing to Deny An Allegation-other than one relating to damages-is admitted if a responsive pleading is required and the allegation is not denied."**

**26.** I admit I know that on December 27, 2024, Plaintiff Kaul filed a 'REPLY DEFENDANT OETKEN MEMORANDUM OF MOTION TO DISMISS'.

**27.** I admit I read Plaintiff Kaul's 'REPLY DEFENDANT OETKEN MEMORANDUM OF MOTION TO DISMISS' through the perspective of a lawyer and judge.

**28.** I admit that through the perspective of a lawyer and judge I agree with every argument submitted in Plaintiff Kaul's 'REPLY DEFENDANT OETKEN MEMORANDUM OF MOTION TO DISMISS'.

**29.** I admit that of the thousands of opinions I have issued in my judicial career in cases involving charges of bribery against public servants, many of them contain arguments either identical or consistent with those submitted by Plaintiff Kaul.

**30.** I admit that in these cases I have ruled in favor of government prosecutors who have submitted such arguments against criminal defendants charged with bribery and public corruption.

**31.** I admit that in these cases in which guilty verdicts have been rendered, I did sentence the defendants to terms of imprisonment and substantial fines.

**32.** I admit that through the perspective of a defendant, who is also a lawyer and judge, I should be held at least to the standard of the common man committing common crime if not higher.

**33.** I admit that my Rule 8(b)(6) related admittance of the facts of bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption asserted in the Complaint in ¶11-23, did deprive me of any immunity.

**34.** I admit that in the Complaint (D.E. 1 Page 14 of 54), Plaintiff Kaul identified the facts that caused me to be deprived of '... ANY/ALL IMMUNITIES'.

**35.** I admit that in my December 16, 2024 'MOTION TO DISMISS' (D.E. 12) and 'MEMORANDUM IN SUPPORT MOTION TO DISMISS' (D.E. 13) I did not deny any of the facts asserted in paras. 39 to 45 or indeed any of the facts within the entire Complaint.

**36.** I admit that on January 3, 2025 IN K11-23 I submitted my 'REPLY IN SUPPORT OF MOTION TO DISMISS'.

**37.** I admit that in my 'REPLY IN SUPPORT OF MOTION TO DISMISS' I submitted an answer to the bribery charge levied in the K11-23 Complaint.

**38.** I admit, however, that the answer was intended to purposefully mislead the Court into believing Defendant Oetken was innocent of the levied charges of bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption.

**39.** I admit that one of the answers in furtherance of this deception is: **"However, Judge Oetken has committed no crimes and Kaul's blanket statement is insufficient to support a finding of criminal activity."** (D.E. 23 Page 2 of 5).

**40.** I admit that I and my lawyers conspired to manufacture a, and to use my own word, **"blanket"** statement in which I did not specifically deny having committed the crimes of bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption.

**41.** I admit that I and my lawyers believed that if we used the word **"crimes"** in a general sense it would deceive the Court into believing I had not committed bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption.

**42.** I admit that the deceptive state-of-mind of myself and my lawyers is evidenced in our use of the term **"blanket"** to describe, albeit a false description, of Plaintiff Kaul's claims, when in fact it represents, both in textual and meaning proximity, my use of the general term **"crimes"** to appear to but not actually deny my commission of bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption.

**43.** I admit that I and my lawyers, knowing I had committed crime, could not simply deny the allegations/facts, and so filed a motion to dismiss, while planning to use my final reply to deceive the Court into believing I committed no crime, knowing that Plaintiff Kaul could not respond to my final **"crimes"** based reply.

**44.** I admit that I did commit crimes, which explains the extent to which I have proceeded since 2023 in attempting to prevent other district courts and judges from hearing any of **The Kaul Cases**.

**45.** I admit that my nationwide injunction against a single litigant is a gross deviation from the true purpose of such restrictions, and in conjunction with threats of contempt does constitute an unprecedented violation of the human/civil/constitutional rights of person whose life/liberty/property/reputation rights have been illegally deprived for almost thirteen (13) years and who has not once been provided an opportunity to litigate his claims through discovery to trial.

Case 1:21-cv-06892-JPO   Document 196   Filed 06/12/25   Page 77 of 428

**46.** I admit that my conduct and that of **The Kaul Cases** Defendants is, other than being illegal, does evidence our guilt of the levied charges to a criminal standard.

## Defendant Oetken Career Milestones And Transition From Lawful To Unlawful Conduct

**47.** I admit I graduated from high school in or around 1984.

**48.** I admit I attended college from 1984 to 1988 and did graduate.

**49.** I admit I attended law school from 1988 to 1992 and did graduate.

**50.** I admit I did take and pass the NYS Bar Exam after I graduated law school.

**51.** I admit I did swear an oath upon admission to the NYS Bar.

**52.** I admit the oath involved a promise to uphold the law, faithfully support the Constitution and conduct my practice of law in an ethical manner.

**53.** I admit that after graduating law school and in the period from 1992 to approximately 2002 I provided legal counsel to politicians.

**54.** I admit that in the period from 2002 to 2011 I worked in the private sector and provided legal counsel to publicly traded corporations.

**55.** I admit that as a consequence of working in the milieu of the political and corporate worlds, I came to witness and know their corrupt intersection.

**56.** I admit that as a consequence of being immersed in this corrupt politico-corporate milieu, I began to view profit-purposed manipulations of law and ethics as a 'normal' way of conducting public service and business.

**57.** I admit that being immersed in these manipulations caused a perversion of my moral and ethical framework.

**58.** I admit that being immersed in these manipulations caused me to become highly experienced in knowingly dishonest perversions of the law to suit political and business agendas.

**59.** I admit that in 2010 I was sponsored by the US Senator for New York to the federal bench.

**60.** I admit that in 2011 I was assigned to the federal bench in the Southern District of New York.

**61.** I admit that upon assignment to the federal bench I did, with my hand on the Bible, swear an oath to the Constitution and a promise to faithfully uphold the law.

62. I admit that in the period from 2011 to 2025, I adjudicated approximately four thousand five hundred (4,500) cases.

63. I admit that the majority of the cases involved commercial, business and financial disputes involving mostly high net worth individuals and financial sector corporations.

64. I admit that I also presided over criminal cases in which defendants were convicted by juries of bribery and public corruption.

65. I admit that I sentenced to jail persons convicted of bribery and public corruption.

66. I admit that in my sentencing remarks in these bribery and public corruption cases, I described the perniciousness of the offenses in that when public servants violate the public trust, there can be nothing more corrosive to the well-being of society and its democratic institutions.

67. I admit that in many of the public corruption cases filed before me and within the S.D.N.Y., the press conference given by the U.S. Attorney would invariably involve how such conduct would not be tolerated in the S.D.N.Y and how the perpetrators would be tenaciously pursued and prosecuted.

68. I admit that by the time I was appointed to the federal bench I was well-versed in the manufacturing of schemes by lawyers in which the law is perverted, violated and ignored to provide justification and cover for the furtherance of knowingly illegal agendas of politicians and corporations.

69. I admit that I know the principal reason I was nominated by the US Senator for NY was my lengthy pre-judicial experience in the corrupt manufacturing of politico-corporate malfeasance supporting legal opinion.

70. I admit that I know my appointment had nothing to do with an aspect of my personal life, an aspect that was however conveniently and publicly exploited by the politicians.

71. I admit that over the almost fourteen (14) years I have sat on the federal bench, there has been an escalation in the brazenness and seriousness of the crimes, violations and other wrongdoing I have committed against the law, the public and the United States.

72. I admit that I know one of the reasons for this unchecked escalation has been the fact that no lawyer or judge has accused me of engaging in corrupt activities.

73. I admit I know that within the court, the non-lawyer and non-judicial staff that work in my courtroom do know of my corrupt activities.

**74.** I admit I know that one of the reasons no lawyer of judge has reported me is because they believe their 'whistleblowing' will cause the politician who sponsored me to retaliate and attempt to silence them.

**75.** I admit that the politician's retaliation and 'whistleblower' silencing would stem from his fear that the 'whistleblower' exposing of my corrupt use of the federal bench to further his schemes of political corruption with Wall Street based insurance, hospital, pharmaceutical and banking corporations, would end his political career.

**76.** I admit I know that in 2019, Plaintiff Kaul sued this politician in the S.D.N.Y. on charges of racketeering, bribery, quid pro quo schemes and public corruption.

**77.** I admit I knew this fact when Plaintiff Kaul filed K11-7 on August 19, 2021, and despite knowing I was conflicted, I did nonetheless adjudicate the case.

## **Common Knowledge Of The Truth Of The Crimes Of The Kaul Cases Defendants**

**78.** I admit that as a district judge in a highly staffed district court with unrestricted access to evidence/facts and persons possessing this corpus of evidence/fact **AND** having been involved as a Judge, Co-conspirator and Defendant in **The Kaul Cases** since 2021 I have come to know the truth of the crimes of **The Kaul Cases** Defendants.

**79.** I admit I know that having been involved as a Judge, Co-conspirator and Defendant in **The Kaul Cases** since 2021 **The Kaul Cases** Defendants have come to know the truth of each other's crimes, including mine.

**80.** I admit I know that each Defendant played a particular role in the 'Kaul Elimination Conspiracy'.

**81.** I admit I know that the two fundamental elements of the scheme pertained to those who purchased state power and those who sold and exercised it.

**82.** I admit I know that Defendants Allstate/Heary purchased state power from Defendant Christie through bribery.

**83.** I admit I know Defendant Christie abused his power to cause the illegal revocation of Plaintiff Kaul's license and an ongoing deprivation of his life/liberty/property/reputation and violation of his human/civil/constitutional rights.

**84.** I admit I know that Defendants Allstate/Heary purchased state power from Defendant Solomon through bribery.

**85.** I admit I know Defendant Solomon abused his power to cause the illegal revocation of Plaintiff Kaul's license and an ongoing deprivation of his life/liberty/property/reputation and violation of his human/civil/constitutional rights.

**86.** I admit I know that Defendant Allstate purchased regulatory power from Defendant FSMB through bribery.

**87.** I admit I know Defendant FSMB abused its power to cause an illegal obstruction of Plaintiff Kaul's efforts to have his illegal revoked NJ license reinstated and or obtain a license in another state.

**88.** I admit I know Defendant FSMB abused its power to cause an ongoing deprivation of Plaintiff Kaul's life/liberty/property/reputation and violation of his human/civil/constitutional rights.

**89.** I admit I know that Defendant Allstate purchased bankruptcy trustee power from Defendant Stolz through bribery.

**90.** I admit I know that Defendant Stolz abused his power in failing to file claims and or collect the over $52 million dollars owed to Plaintiff Kaul's estate/eighty-three creditors of this estate by Defendant Allstate and other insurance companies.

**91.** I admit I know the truth of the factual foundation of all **The Kaul Cases**, including K11-7 and K11-20.

## The Crime Of The September 12, 2022 'Injunction' in K11-7 – August 19, 2021 To September 12, 2022

**92.** I admit that on August 19, 2021, K11-7 was filed in the United States District Court for the Southern District of New York.

**93.** I admit that the case was not placed into the court's random judicial assignment system.

**94.** I admit that the case was improperly assigned to me because I had informed the Clerk's office to inform me of any cases that involved publicly traded corporations.

**95.** I admit that upon being informed of the case filing, and reviewing the complaint, I did come to know that in K1 Plaintiff Kaul had caused the May 22, 2019 disqualification of the district judge in the District of New Jersey for having received bribes.

**96.** I admit that I knew/know that the district judge in K1 is the brother-in-law of the politician who sponsored me to the federal bench.

**97.** I admit that I knew these facts presented a conflict of interest, but did nonetheless have the case assigned to me.

**98.** I admit that I instructed the court not to assign a magistrate judge to the case.

**99.** I admit that my instruction to not have an independent magistrate judge assigned pertained to my intent to corruptly adjudicate the case.

**100.** I admit that upon adopting judicial control of the case, I recognized that Plaintiff Kaul was cognizant and highly attuned to the defendants schemes of judicial corruption.

**101.** I admit that recognizing Plaintiff Kaul's acute awareness of this issue, it was imperative for me to administer the case in a manner that attempted to deceive Plaintiff Kaul into believing I was impartially administering the case.

**102.** I admit that a principal purpose of deceiving Plaintiff Kaul into believing I was impartially administering the case and that it would proceed into discovery, pertained to the belief of the defendants and myself that if Plaintiff Kaul thought K11-7 would move into discovery, then he would stop filing cases in other districts and would dismiss any pending cases.

**103.** I admit that I and the defendants schemed that once Plaintiff Kaul, believing that K11-17 would advance into discovery, had dismissed any pending cases and not filed any new cases, I would dismiss K11-7 with prejudice and enter a nationwide 'injunction'.

13

104. I admit that my receipt of the bribes from the K11-7 defendants was transferred in partial payments from the commencement of the scheme to the point at which Plaintiff Kaul's right to appeal had expired.

105. I admit that to attempt to conceal the bribes, they were transferred through off-shore institutions and through other schemes involving the dispensation of shares in publicly traded corporations.

106. I admit that in the perpetration of the bribery related quid pro quo scheme, I utilized my prior experience as counsel to corrupt politicians and corporations to implement schemes to attempt to conceal the bribes.

107. I admit that both I and the defendants were convinced that my deceitful administration and adjudication of K11-7 would cause an effective elimination of Plaintiff Kaul by forever precluding his ability/rights to secure justice for the crimes committed against his life/liberty/property/reputation.

108. I admit that I and the defendants did believe that such an effective elimination would cause Plaintiff Kaul to leave the United States and or commit suicide.

109. I admit that I and the defendants, despite knowing that Plaintiff Kaul had two (2) young children, did not care that our actions could cause his death.

110. I admit that the only concern I and the defendants possessed was that of continuing to profit from our crimes.

111. I admit that the scheme was of a 'bait and switch' nature.

112. I admit that in the perpetration of the scheme I used the docket of the United States District Court to publish knowingly fraudulent orders purposed to deceive Plaintiff Kaul into believing I would advance the case into discovery.

113. I admit that from the commencement and throughout the perpetration of the scheme there were extensive and detailed communications between myself and agents acting on my behalf and the defendants and agents acting on their behalf.

114. I admit that these communications involved the 'who/what/where/when/how/why' specifications of the quid pro quo scheme in which in return for the bribes I would dismiss K11-7 with prejudice and enter a nationwide 'injunction'.

115. I admit I knew these communications were illegal and in furtherance of a knowingly illegal scheme.

**116.** I admit that these communications were conducted in a knowingly illegal manner across the US wires.

**117.** I admit that I and the defendants knew/know that the use of the US wires constitutes the felony of wire fraud.

**118.** I admit I know that these communications were also conducted in face-to-face meetings in my chambers in the S.D.N.Y.

**119.** I admit I knew/know that the use of my chambers to further a knowingly illegal scheme through face-to-face meetings was/is illegal.

**120.** I admit that these 'secret' meetings in my chambers were conducted after my court staff had departed the building.

**121.** I admit that some of the communications occurred between myself and agents acting on my behalf and the defendants and agents acting on their behalf in places outside of the court building.

**122.** I admit that in these non-court meetings the arrival and departure at the meeting location of the persons involved was staggered, in order to avoid any person observing the gathering of high-profile lawyers and an equally high-profile federal judge.

**123.** I admit that despite knowing of the illegality of the communications, of their conduction within my chambers within the S.D.N.Y. and of their furtherance of knowingly illegal bribery related scheme, I did nonetheless commit these crimes in a knowingly illegal manner.

**124.** I admit that my willful and knowing perpetration of these crimes while in possession of the power of a federal judge does constitute a high crime against not just Plaintiff Kaul and the United States but against the Constitution of the United States.

**125.** I admit that during the digital and face-to-face communications, the timing of my orders of dismissal with prejudice and injunction was discussed.

**126.** I admit that I and the defendants agreed that the orders would be entered once Plaintiff Kaul had dismissed all pending cases and there were no remaining cases within the United States District Court through which he could prosecute **The Kaul Cases** Defendants.

**127.** I admit that during the communications I and the defendants agreed that the September 12, 2022 opinion/order/injunction would be co-drafted.

**128.** I admit that during the communications I and the defendants agreed that the September 12, 2022 opinion/order/injunction would contain no analysis of any of Plaintiff Kaul's

arguments and or refutation and distinguishment of the arguments/cases cited by the K11-7 Defendants.

**129.** I admit that during the communications I and the defendants agreed that the September 12, 2022 opinion/order/injunction would encourage Plaintiff Kaul to appeal the opinion/order/injunction in order to attempt to further preclude him from filing cases in other districts.

**130.** I admit that during the communications I and the defendants agreed that we knew any appeal would be denied, because certain judges on the appeal court had been sponsored by the same politician who had sponsored me.

**131.** I admit that during the communications I and the defendants agreed that the appeal would be denied because certain judges on the appeal court continued to participate in quid pro quo schemes with the insurance and banking defendants in K11-7.

**132.** I admit that during the communications I and the defendants agreed that if the opinion/order/injunction were drafted in as defamatory a manner as possible, it would demoralize Plaintiff Kaul to the point where he would discontinue his efforts to hold **The Kaul Cases** Defendants liable for their crimes/violations/injuries.

**133.** I admit that I and the defendants agreed that if the opinion/order/injunction were drafted in as defamatory a manner as possible, it would, if Plaintiff Kaul did not appeal and filed new cases, cause other judges to dismiss these cases.

**134.** I admit that despite knowing the truth of the factual foundation of K11-7, I did dismiss the case with prejudice and enter a nationwide injunction on September 12, 2022

**135.** I admit I know that the dismissal and nationwide injunction were the product of an illegal bribery related quid pro quo scheme.

**136.** I admit that on September 14, 2022, Plaintiff Kaul submitted a notice to the S.D.N.Y. that was addressed to me and in which he requested a list of my financial holdings, my Forms AO10 and the substance of all ex parte communications with the K11-7 Defendants.

**137.** I admit that since September 14, 2022 I have failed to disclose to the court, to the docket or to Plaintiff Kaul any of my financial holdings, ex parte communications and or any form of bribe, be it tangible/intangible, that was received through any means by me, or any party related to me in the third-degree.

**138.** I admit that my issuance on September 12, 2022 of a knowingly fraudulent document, that of the injunction, did become illegally incorporated into the fabric of American jurisprudence and the court records of the United States District Court.

**139.** I admit that the incorporation of a knowingly fraudulent document issued by a judicial officer, into the court records of the United States District Court constitutes a <u>treasonous</u> crime against the United States.

## The Motion For Disqualification + K11-14 – October 6, 2022 To August 23, 2023

**140.** I admit that on October 6, 2022, Plaintiff Kaul filed a motion for my disqualification.

**141.** I admit that the motion was based partly on my commission of the crimes of bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption.

**142.** I admit that the motion was based partly on my collusion and conspiracy in corruptly using the authority of the United States District Court to attempt to conceal **The Kaul Cases** Defendants crimes of mail fraud/wire fraud/bribery/obstruction of justice/kickbacks/perjury/evidential falsification/witness tampering/kidnapping/false indictment/false arrest/false imprisonment/attempted killing.

**143.** I admit that my failure to timely address Plaintiff Kaul's October 6, 2022 motion for disqualification and deny the within facts did cause the admission of those facts.

**144.** I admit that the motion was based in part on my failure to analyze/refute/contest any of Plaintiff Kaul's one hundred and seventy-three (173) arguments/sub-arguments submitted in K11-7.

**145.** I admit that the motion was based in part on my knowingly fraudulent reliance on law, the invalidity of which was shown by Plaintiff Kaul to definitively not support the entry of an injunction.

**146.** I admit that the motion was based on my bribery related derogation of the relevant law and my threat to hold Plaintiff Kaul in contempt if he violated my knowingly illegal order/injunction.

**147.** I admit I knew/know that the order/injunction had no basis in fact or law, but was simply the product of judicial corruption, for which I threatened to hold Plaintiff Kaul in contempt if he violated.

**148.** I admit that my use of the US wires to enter this knowingly fraudulent order/injunction onto the federal docket constitutes the offense of wire fraud.

**149.** I admit that within the motion for disqualification and at D.E. 171 Page 12 of 39, Plaintiff Kaul did state: "Democracy and the peaceful order of society cease to exist when the judiciary is morally bent, perverted from fact and willfully blind to the law. When partiality, personal bias and conflicts of interest pollute the administration of justice, the public loses confidence in the system of justice, and lawlessness displaces lawfulness."

**150.** I admit I know of the December 4, 2024 killing of the CEO of the healthcare insurance company, United Health Care by Luigi Mangeone.

**151.** I admit that it was an unlawful act, but one born out of the lethal lawlessness of the corporate health insurance industry and the failure of the government to hold it accountable.

**152.** I admit that the killing sparked a nationwide public outrage and calls to hold the insurance industry legally accountable.

**153.** I admit that I know the reason for the killing of the CEO pertained to his directives to his corporation to deny life-saving care to premium paying patients.

**154.** I admit that I was a corporate lawyer, and worked for corporations with investments in highly profitable healthcare insurance corporations.

**155.** I admit that I know K11-7 Defendants Allstate Insurance Company and Geico profit from the sale of auto accident-related healthcare insurance policies.

**156.** I admit I know that these policies are purposed to pay for the provision of care to patients injured in car accidents.

**157.** I admit I know that in K11-7 and throughout **The Kaul Cases** Plaintiff Kaul has claimed that Defendants Allstate/Geico/Blue Cross Blue Shield (K11-22) conduct the same care denying **"pattern of racketeering"** as does United Healthcare.

**158.** I admit that the claims regarding denial of care are located at - D.E. 14 Para. 106 Page 27 of 432 – D.E. 14 Para. 132 Page 34 of 432.

**159.** I admit I know that in the K11-7 Complaint (D.E. 14 Para. 106 Page 27 of 432) Plaintiff Kaul states with regards to Defendants Allstate/Geico: " ... **whose shared economic mission is the maximization of corporate profit and share price, through the exploitation of the American public (denial of care) and medical profession (license suspension/revocation/incarceration) ...**"

**160.** I admit that despite knowing these facts of patient care denial, I dismissed Plaintiff Kaul's claims Defendants Allstate Insurance Company and Geico because I had willingly and knowingly accepted bribes.

**161.** I admit that my bribe related dismissal of K11-7 did aid and abet the perpetuation of the insurance industry's 'deny ... delay ... defend' scheme of the denial of life-saving care to the American public.

**162.** I admit that as a lawyer and federal judge I understand RICO's vicarious liability doctrine, wherein the liability of the crimes/offenses/violations/injuries caused by any of the conspiracy's perpetrators and or co-conspirators becomes the liability of all perpetrators/co-conspirators.

**163.** I admit that I am as responsible as Defendants Allstate/Geico for the immense harm caused to those members of the American public whose life-saving and life-altering care was denied by these for-profit corporations.

**164.** I admit that I eventually adjudicated the motion for disqualification on August 14, 2023.

**165.** I admit that I denied the motion for disqualification in an unsubstantiated order that failed to address/contest/refute/analyze the cited and controlling law.

**166.** I admit that I denied the motion for disqualification in an unsubstantiated order in which I failed to deny any of the facts of amongst other things, bribery/public corruption/wire fraud/conspiracy.

**167.** I admit that I denied the motion for disqualification in an unsubstantiated order, in which I failed to deny the fact that I engaged in a bribery related quid pro quo scheme with the K11-7 Defendants, in which in return for the bribes I dismissed K11-7 with prejudice and entered a nationwide injunction against Plaintiff Kaul.

**168.** I admit that the reason for the delay in denying the disqualification motion pertained to the fact that the district judge in K11-14 believed my nationwide injunction was indeed the product of bribery, because I had failed to deny the facts asserted in Plaintiff Kaul's September 14, 2022 notice (D.E. 170) and the October 6, 2022 motion for disqualification (D.E. 171).

**169.** I admit that the district judge in K11-14 indicated that if I did not deny the motion for disqualification, she would not dismiss K11-14 based on my September 12, 2022 purported injunction.

**170.** I admit that the district judge in K11-14 indicated that if she dismissed K11-14 on an injunction that was the product of crime, she would become liable for the crime.

**171.** I admit that the district judge in K11-14 indicated that the motion for disqualification had to be denied before she would issue her denial of K11-14 based on the K11-7 September 12, 2022 purported injunction.

**172.** I admit that the K11-7 Defendants who were now the K11-14 Defendants employed threats and persuasion to have me deny the motion for disqualification, in order that the district judge in K11-14 would dismiss the case.

**173.** I admit that I recognized that if I did not comply with the demands of the K11-14 district judge and the K11-7/K11-14 Defendants, my criminal acts of, amongst other things,

bribery/public corruption and wire fraud would be exposed and subject me to impeachment and criminal prosecution.

**174.** I admit that as a consequence of these demands and threats, I did, on August 14, 2023 deny the motion for disqualification without denying any of the within facts of, amongst other things, bribery/public corruption/wire fraud.

**175.** I admit I knew my actions did constitute the commission of crime, in that I aided and abetted the Defendants conversion of the S.D.N.Y. into a **"racketeering enterprise"** through which they and I perpetrated a knowingly illegal **"pattern of racketeering"** a purpose of which was to attempt to prevent the exposure of my crimes in other district courts over which I had no control.

**176.** I admit I know that after having agreed to the demands and threats of the K11-7/K11-14 Defendants and the K11-14 district judge, K11-14 was dismissed with prejudice on August 23, 2023 based on the K11-7 September 12, 2022 injunction.

**177.** I admit that I experienced a sense of relief at having had another district court appear to legitimize my September 12, 2022 injunction.

**178.** I admit that even though I experienced a sense of relief at a public display of such apparent legitimization, I knew the district judge in K11-14 recognized the injunction was a product of a quid pro quo scheme of bribery.

**179.** I admit I believed that the dismissal of K11-14 would convince Plaintiff Kaul to cease his campaign of litigation.

**180.** I admit the incorrectness of my belief is a direct reflection of Plaintiff Kaul's recognition of the seriousness of my crimes.

**181.** I admit I know that Plaintiff Kaul's recognition of the seriousness of my crimes is based on his knowledge of my recognition of the seriousness of my crimes.

# K11-10 And The Knowingly Illegal Issuance Of Threats To Hold Plaintiff Kaul In Contempt If He Failed To Dismiss K11-17 And K11-20 – March 9, 2023 To October 2, 2024

**182.** I admit I know that Plaintiff Kaul did not appeal the September 12, 2022 order/injunction.

**183.** I admit I know that on September 14, 2022, at D.E. 170, Plaintiff Kaul filed a notice with the Clerk of the Court for the S.D.N.Y. that requested I produce and publish to the court docket my financial holdings and the contents of all ex parte communications with the K11-17 Defendants.

**184.** I admit that since September 14, 2022 I have failed to disclose to the court, to the docket or to Plaintiff Kaul any of my financial holdings, ex parte communications and or any form of bribe, be it tangible/intangible, that was received through any means by me, or any party related to me in the third-degree.

**185.** I admit that I have failed and continue to fail to disclose the requested information because I am guilty of having participated in a bribery related quid pro quo scheme with the K11-7 Defendants.

**186.** I admit I know that on March 9, 2023, Plaintiff Kaul filed K11-10 in the S.D.N.Y.

**187.** I admit I came to know the case had been randomly assigned to another district judge, who had been recently appointed to the federal bench.

**188.** I admit I know that the staff in the court's filing office came to know in or around late September-October 2022 of the bribery related quid pro quo scheme in which I had engaged.

**189.** I admit I know that as a consequence of the staff coming to know of the scheme, they did not inform me of the filing of K11-10.

**190.** I admit that sometime after the filing of K11-10 the K11-10 Defendants engaged in ex parte communications with me during which they informed me that Plaintiff Kaul had filed K11-10.

**191.** I admit that upon becoming aware of K11-10, I ensured the district judge became aware of the order/injunction I had entered in K11-7 on September 12, 2022.

**192.** I admit I know that as a consequence of my knowingly illegal September 12, 2022 order/injunction, the district judge in K11-10 did on May 10, 2023 dismiss K11-10 with prejudice.

193. I admit I know that on November 20, 2023, Plaintiff Kaul filed K11-17 in the U.S.D.C. for the E.D.N.C.

194. I admit that in late November 2023 the K11-17 Defendants engaged in ex parte communications with me during which they informed me that Plaintiff Kaul had filed K11-17.

195. I admit that in becoming aware of K11-17, I came to know that Plaintiff Kaul had informed the district judge of the injunction by submitting a copy within Exhibit 14 and referencing the injunction within the Complaint.

196. I admit that in coming to know that the district judge had admitted the case with full knowledge of the injunction, I decided to take no action.

197. I admit that an element of me deciding to take no action pertained to the fact that no discovery order had been entered.

198. I admit that the lack of a discovery order would prevent Plaintiff Kaul from serving discovery upon me and exposing my corrupt actions surrounding the issuance of the September 12, 2022 injunction.

199. I admit that in a period from November 20, 2023, the K11-17 Defendants sent me an ex parte letter requesting I issue an order compelling Plaintiff Kaul to dismiss K11-17.

200. I admit this letter was not published to the docket of the S.D.N.Y.

201. I admit no other judge nor court employee in the S.D.N.Y. was made aware of this letter.

202. I admit the reason this letter was kept concealed from other judges and staff was to prevent any investigation into the corrupt circumstances surrounding my bribery related issuance of the injunction.

203. I admit I took no action on the letter as no discovery order had been entered in K11-17.

204. I admit I know that on March 13, 2023, a discovery order was entered in K11-17.

205. I admit that on March 13, 2023 the K11-17 Defendants informed me of the issuance of the discovery order in K11-17.

206. I admit that the issuance of the discovery order in K11-17 convinced me that Plaintiff Kaul would use the tools of discovery to expose the facts of my bribery related quid pro quo scheme with the K11-7 Defendants.

**207.** I admit that the issuance of the discovery order in K11-17 convinced me that Plaintiff Kaul would use the tools of discovery to expose the identities of all persons involved in the bribery related quid pro quo scheme with the K11-7 Defendants.

**208.** I admit that both I and the K11-17 Defendants in recognizing the risk of such exposure, did agree that I should issue an order to Plaintiff Kaul threatening to hold him in contempt if he did not dismiss K11-17.

**209.** I admit that on March 15, 2024 I issued an order to Plaintiff Kaul threatening to hold him in contempt if he did not dismiss K11-17, and had this order published to the docket of the S.D.N.Y.

**210.** I admit I know that the issuance of this order was illegal and was the product of the crime of the bribery related quid pro quo scheme that caused the September 12, 2022 issuance of the injunction.

**211.** I admit that despite knowing the issuance of the March 15, 2024 was illegal, I did nonetheless issue the order in the belief that it would prevent Plaintiff Kaul from using discovery to expose the facts of my crimes and of those associated with the commission of the crimes.

**212.** I admit I know that having had the knowingly illegal order published to the S.D.N.Y. docket, it was downloaded by the K11-27 Defendants.

**213.** I admit I know that having downloaded the March 15, 2024 order threatening Plaintiff Kaul with contempt if he did not dismiss K11-17, the K11-17 Defendants did on March 18, 2024 publish the order to the docket of the E.D.N.C. (D.E. 72).

**214.** I admit that the order required Plaintiff Kaul to dismiss K11-17 by March 29, 2024 or be held in contempt.

**215.** I admit I know the March 18, 2024 filing of the order on the docket of the E.D.N.C. was immediately brought to the attention of the district judge.

**216.** I admit I believed that Plaintiff Kaul would dismiss K11-17, having experienced the dismissal of K11-14 based on the K11-7 injunction.

**217.** I admit I was wrong.

**218.** I admit that on March 25, 2024, Plaintiff Kaul filed suit (K11-18) against me in the E.D.N.C.

**219.** I admit I know the case was ultimately assigned to the Chief Judge who was already adjudicating K11-17.

**220.** I admit I did not deny any of the allegations/facts in K11-18.

**221.** I admit I know that my non-denial of the facts did, pursuant to Rule 8(b)(6) cause them to become admitted for all purposes.

**222.** I admit I know that K11-18 was dismissed with prejudice on April 8, 2024.

**223.** I admit I know that Plaintiff Kaul filed a NOTICE OF APPEAL on May 9, 2024 in the U.S.C.A. for the Fourth Circuit.

**224.** I admit I know the U.S.C.A., for the Fourth Circuit issued an 'INFOERMAL BRIEFING ORDER' on May 9, 2024.

**225.** I admit I know that on May 15, 2024, Plaintiff Kaul filed a 'PETITIONER REQUEST PURSUANT TO FEDERAL RULE OF EVIDENCE 201, FOR THE COURT TO TAKE JUDICIAL NOTICE OF FACTS ADMITTED IN PROCEEDINGS WITH A DIRECT CONNECTION TO THE ISSUES ON APPEAL'.

**226.** I admit I know that the basis for the admitted facts pertained to, amongst other things Rule **"8(b)(6) of the F.R.C.P."** (U.S.C.A.4 Appeal: 24-1417 Doc:4-1)

**227.** I admit I know that the facts deemed to be admitted by the U.S.C.A. for the Fourth Circuit were all the facts from all of **The Kaul Cases** in which none of the Defendants had denied any of the facts.

**228.** I admit I know that the facts deemed to be admitted by the U.S.C.A. for the Fourth Circuit were all the facts from all of **The Kaul Cases** in which the non-denial of all of the facts did, pursuant to Rule 8(b)(6) cause the facts to become admitted for all purposes.

**229.** I admit I know that Plaintiff Kaul's May 15, 2024 submission included a copy of every Complaint from all of **The Kaul Cases**, and that the submission was three hundred and three (303) pages.

**230.** I admit I did not file any objection to Plaintiff Kaul's May 15, 2024 submission as to admitted facts pursuant to Rule 8(b)(6).

**231.** I admit the law deems my non-objection as an admission of the procedural/substantive substance of the May 15, 2024 submission.

**232.** I admit I know that on May 29, 2024, Plaintiff Kaul filed his 'INFORMAL OPENING BRIEF' (U.S.C.A.4 Appeal: 24-1417 Doc:9-1).

**233.** I admit I know that within the 'INFORMAL OPENING BRIEF' Plaintiff Kaul raised facts related to my perpetration of a bribery related quid pro quo scheme in K11-7.

234. I admit I have read the 'INFORMAL OPENING BRIEF'

235. I admit that one of the statements, of which my non-denial did cause admittance, is: "Respondent [Defendant Oetken] continued to fail to provide any evidence/fact that he had not participated in a quid pro quo bribery scheme with Defendants, and in fact did not even submit or have submitted a statement/affidavit that he had not used his bench in the S.D.N.Y. to perpetrate a bribery based "pattern of racketeering" in K11-7 or any other cases in which he had been involved."

236. I admit the truth of this statement.

237. I admit I filed no response to Plaintiff Kaul's 'INFORMAL OPENING BRIEF' because the truth of the facts within K11-18 had been proven and admitted consequent to my non-denial of the facts, the non-denial of which did, pursuant to Rule 8(b)(6) cause them to become admitted for all purposes.

238. I admit I did not deny the facts in K11-18, as I have not denied them in K11-23 because I am guilty of the charges levied in both cases.

239. I admit I had every opportunity to deny the facts in K11-18, but did not.

240. I admit I knew/know that in willfully failing to deny the facts in K11-18, I did admit the facts for all purposes.

241. I admit I know that in K11-17 on June 14, 2024, the district judge who dismissed K11-18 did, after having entered an order of discovery on March 13, 2024 in full knowledge of my September 12, 2022 injunction in K11-7, did dismiss K11-17 based on the injunction.

242. I admit that the district judge in K11-17 was harassed and intimidated into dismissing a case in which he, in his independent judicial authority/judgment had admitted on November 20, 2023 and entered an order of discovery on March 13, 2024 in full knowledge of the injunction.

243. I admit that when the K11-17 Defendants informed me of the March 13, 2024 discovery order in K11-17, I recognized the immense risk of Plaintiff Kaul exposing my crimes not just in K11-7, but those I have committed since my appointment to the federal bench in 2011.

244. I admit that if discovery proceeded in K11-17, Plaintiff Kaul would expose my long-standing bribery related criminal activities.

245. I admit I know that such an exposure would cause my removal from the federal bench and subject me to criminal proceedings.

**246.** I admit I know that in having K11-14 and K11-17 dismissed I did continue to perpetuate an almost twenty (20) year-long conspiracy against Plaintiff Kaul and a twelve (12) year-long injury to his life/liberty/property/reputation and violation of his human/civil/constitutional rights.

**247.** I admit I knew/know that my perpetuation of this conspiracy and rights violations were purposed to cause the elimination of Plaintiff Kaul.

**248.** I admit that my intention in seeking to cause the elimination of Plaintiff Kaul pertained to my fear that his continued prosecution of **The Kaul Cases** would expose my crimes and those of **The Kaul Cases** Defendants.

**249.** I admit that as Plaintiff Kaul proceeded to file K11-14 and K11-17, **The Kaul Cases** Defendants became increasingly agitated and aggressive in their threats to expose me if I did not follow their orders and have Plaintiff Kaul held in contempt and jailed.

**250.** I admit that with these threats I became fearful for my career and life.

**251.** I admit that on or about August 26, 2024 I became aware that Plaintiff Kaul had filed K11-20 in the United States District Court for the Southern District of Texas.

**252.** I admit I know that on August 30, 2024, the Court entered an 'ORDER FOR CONFERENCE AND DISCLOSURE OF INTERESTED PARTIES' (D.E. 4).

**253.** I admit that on September 16, 2024 the K11-20 Defendant Federation State Medical Boards sent me a letter requesting I order Plaintiff Kaul to dismiss K11-20 under threat of contempt of court (K11-7: D.E. 174).

**254.** I admit that in K11-7 on September 13, 2022 the Clerk of the Court closed the case.

**255.** I admit that no order was ever issued by the Clerk of the Court that re-opened the case.

**256.** I admit that in the absence of any order from the Clerk of the Court re-opening the case, the case has remained closed since September 13, 2022.

**257.** I admit that the continued closure of the case since September 13, 2022 does render all filings in the closed case null and void for all intents and purposes.

**258.** I admit that in recognizing the fact that the case was closed and in not wanting to again expose myself to a lawsuit as Plaintiff Kaul had filed on March 25, 2024 in K11-17 and which was now before the U.S.C.A. for the Fourth Circuit, I hesitated in a manner I had not in K11-17 in deciding to threaten Plaintiff Kaul with contempt if he did not dismiss K11-20.

**259.** I admit that my degree of hesitation and fear had become compounded by the risk of having my crimes exposed by the co-conspirator K11-7/K11-20 Defendants and or the U.S.C.A. for the Fourth Circuit.

**260.** I admit I found myself 'backed into a corner' in which I had no option but to obey the order of the K11-20 Defendants to issue an order threatening Plaintiff Kaul with contempt if he did not dismiss K11-20.

**261.** I admit that if Plaintiff Kaul pursued discovery in K11-20, he would fully expose my crimes and those of persons who aided and abetted the crimes.

**262.** I admit that on October 2, 2024 under immense duress I issued an order that threatened Plaintiff Kaul with contempt if he did not dismiss K11-20 by October 16, 2024.

**263.** I admit I was convinced Plaintiff Kaul would dismiss K11-20, and that my crimes and those of my co-conspirators would be concealed.

**264.** I admit that on October 9, 2024, Plaintiff Kaul filed K11-23, in which I was and am charged of, amongst other things, the crimes of bribery/public corruption and the conversion of my court at the S.D.N.Y. into a **"racketeering enterprise"**.

**265.** I admit I know that on October 9, 2024, in K11-20, the Court issued a 'SCHEDULING ORDER'

**266.** I admit that I was served with a copy of K11-23 on October 16, 2024 at approximately 9:30 am EST in my courtroom at the S.D.N.Y. by a security officer employed by the United States District Court.

DATED: JANUARY 6, 2025

_____
RICHARD ARJUN KAUL, MD

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that a copy of the **FIRST SUBMISSION OF ADMISSIONS OF MATERIAL AND UNDISPUTED FACT PURSUANT TO RULE 8(b)(6) AS TO DEFENDANT JAMES PAUL OETKEN** was emailed to Defendants' counsel on January 6, 2025.

DATED: JANUARY 6, 2025

_____
RICHARD ARJUN KAUL, MD

# Exhibit 3

*The* WHITE HOUSE

FACT SHEETS

Fact Sheet: President Donald J. Trump Ensures the Enforcement of Federal Rule of Civil Procedure 65(c)

The White House

March 6, 2025

**ENSURING ACCOUNTABILITY IN FEDERAL COURTS:** Today, President Donald J. Trump signed a memorandum directing federal agencies to enforce a rule mandating financial guarantees from parties requesting injunctions. This ensures coverage of potential costs or losses if the court later deems an injunction wrongly issued.

- The memorandum instructs agency heads, in consultation with the Attorney General, to request under Federal Rule of Civil Procedure 65(c) that federal courts require plaintiffs post security equal to the federal government's potential costs and damages from a wrongly issued preliminary injunction or temporary restraining order.
  - Security refers to a financial guarantee compensating the government for losses if an injunction is later found unjustified.

- This applies to all lawsuits seeking preliminary injunctions or temporary restraining orders where the government can demonstrate monetary harm from the requested relief.

- Agencies must justify security amounts based on reasoned assessments of harm, ensuring courts deny or dissolve injunctions if plaintiffs fail to pay up, absent good cause.

**STOPPING JUDICIAL OVERREACH AND FRIVOLOUS LAWSUITS:** By issuing this memorandum, President Trump is ensuring the democratic process remains intact by

Case 1:21-cv-06992-JPO    Document 196    Filed 06/12/25    Page 101 of 244

Fact Sheet: President Donald J. Trump Ensures the Enforcement of Federal Rule of Civil Procedure 65(c) – ]    5/10/25, 2:40 PM

curbing activist judges and holding litigants accountable.

- Unelected district judges have issued sweeping injunctions beyond their authority, inserting themselves into executive policymaking and stalling policies voters supported.

- Activist groups file meritless suits for fundraising and political gain, facing no consequences when they lose, while taxpayers bear the costs and delays.

- The Justice Department is forced to divert resources from public safety to fight these frivolous cases, weakening effective governance.

- Enforcing Rule 65(c) deters such litigation by holding plaintiffs accountable for costs and damages if their injunctions are baseless, protecting taxpayer funds and judicial integrity.

**STRENGTHENING AMERICA'S JUDICIAL SYSTEM:** President Trump is committed to protecting our democracy, challenging judicial overreach, and ensuring the rule of law is upheld.

- Injunctions can cost taxpayers millions or even billions of dollars, especially when they mandate continued funding.

- President Trump appointed high-performing "superstar" judges according to a respected study.  Trump's judges occupied 9 of the top 11 spots for productivity, and 9 of the top 10 spots for influence.

- President Trump's judges are also rated the least partisan.

- Multiple Supreme Court justices have recently warned that "single district-court judges" acting outside their judicial power are "abusing" the power entrusted to them.

NEWS



**www.drrichardkaul.com**

**MAY 14, 2025**

Chair, Committee on Codes of Conduct
c/o General Counsel
Administrative Office of the United States Courts
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E.
Washington, D.C. 20544
202-502-1100

**RE: KAUL v ICE**
　　**21-CV-06992-JPO**
　　**K11-7**
　　**+**
　　**KAUL v OETKEN ET AL**
　　**24-CV-000621-CWR-LGI**
　　**K11-23**
　　**NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025**
　　**ENTRY ONTO THE K11-7 DOCKET**

　　**RELEVANT REFERENCES OF THE KAUL CASES**
　　**K11-7: KAUL v ICE: 21-CV-06992 (S.D.N.Y.)**
　　**K11-23: KAUL v OETKEN ET AL: 24-CV-00621 (S.D.M.)**

Dear Sir/Madam,

I write this letter to bring your attention to the enclosed document entitled '**NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025 ENTRY ONTO THE K11-7 DOCKET' (Exhibit 1)** the facts of which speak for themselves and facts that substantiate K11-23 Defendant Oetken's **"ongoing pattern of racketeering"** within the S.D.N.Y. and violation of my human/civil/constitutional rights.

I also write this letter to request that there be conducted an investigation by the Committee on Codes of Conduct into the admitted offenses/violations/crimes committed by K11-23 Defendant Oetken, through his abuse of the power of the federal bench for personal gain, and his knowing/willful violation of my fundamental human/civil/constitutional right to amongst other things, due process and an impartial tribunal.

1

**www.drrichardkaul.com**

**MAY 14, 2025**

Chair, Committee on Codes of Conduct
c/o General Counsel
Administrative Office of the United States Courts
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E.
Washington, D.C. 20544
202-502-1100

**RE: KAUL v ICE**
    **21-CV-06992-JPO**
    **K11-7**
    **+**
    **KAUL v OETKEN ET AL**
    **24-CV-000621-CWR-LGI**
    **K11-23**
    **NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025**
    **ENTRY ONTO THE K11-7 DOCKET**

    **RELEVANT REFERENCES OF THE KAUL CASES**
    **K11-7: KAUL v ICE: 21-CV-06992 (S.D.N.Y.)**
    **K11-23: KAUL v OETKEN ET AL: 24-CV-00621 (S.D.M.)**

Dear Sir/Madam,

I write this letter to bring your attention to the enclosed document entitled '**NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025 ENTRY ONTO THE K11-7 DOCKET**' (**Exhibit 1**) the facts of which speak for themselves and facts that substantiate K11-23 Defendant Oetken's **"ongoing pattern of racketeering"** within the S.D.N.Y. and violation of my human/civil/constitutional rights.

I also write this letter to request that there be conducted an investigation by the Committee on Codes of Conduct into the admitted offenses/violations/crimes committed by K11-23 Defendant Oetken, through his abuse of the power of the federal bench for personal gain, and his knowing/willful violation of my fundamental human/civil/constitutional right to amongst other things, due process and an impartial tribunal.

1

I respectfully assert that K11-23 Defendant Oetken should be removed from the bench, the vacant seat filed by the current administration, and he be subject to civil/criminal investigations.

Please be advised that this matter has also been referred to the Public Integrity and Civil Rights Sections of the Department of Justice, the New York State Bar and the United States Marshals Service in both the Districts of Columbia and the Southern District of New York, the US Attorney and the Chief Judge of the S.D.N.Y.

I thank you for your attention to this very serious matter.

Yours sincerely

RICHARD ARJUN KAUL, MD

Please respond to: drrichardkaul@gmail.com



**www.drrichardkaul.com**

**MAY 14, 2025**

HARMEET DHILLON
ASSISTANT ATTORNEY GENERAL
ROBERT F. KENNEDY DEPARTMENT OF JUSTICE
BUILDING 950 PENNSYLVANIA AVENUE NW
WASHINGTON, D.C. 20530-0001

**RE: KAUL v ICE**
      **21-CV-06992-JPO**
      **K11-7**
      **+**
      **KAUL v OETKEN ET AL**
      **24-CV-000621-CWR-LGI**
      **K11-23**
      **NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025**
      **ENTRY ONTO THE K11-7 DOCKET**

      **RELEVANT REFERENCES OF THE KAUL CASES**
      **K11-7: KAUL v ICE: 21-CV-06992 (S.D.N.Y.)**
      **K11-23: KAUL v OETKEN ET AL: 24-CV-00621 (S.D.M.)**

Dear Mr. Dhillon,

I write this letter to bring your attention to the enclosed document entitled '**NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025 ENTRY ONTO THE K11-7 DOCKET' (Exhibit 1)** the facts of which speak for themselves and facts that substantiate K11-23 Defendant Oetken's **"ongoing pattern of racketeering"** within the S.D.N.Y. and violation of my human/civil/constitutional rights.

I also write this letter to request that there be conducted an investigation by the Civil Rights Division into the admitted offenses/violations/crimes committed by K11-23 Defendant Oetken, through his abuse of the power of the federal bench for personal gain, and his knowing/willful violation of my fundamental human/civil/constitutional right to amongst other things, due process and an impartial tribunal.

1

**www.drrichardkaul.com**

**MAY 14, 2025**

HARMEET DHILLON
ASSISTANT ATTORNEY GENERAL
ROBERT F. KENNEDY DEPARTMENT OF JUSTICE
BUILDING 950 PENNSYLVANIA AVENUE NW
WASHINGTON, D.C. 20530-0001

**RE: KAUL v ICE**
**21-CV-06992-JPO**
**K11-7**
**+**
**KAUL v OETKEN ET AL**
**24-CV-000621-CWR-LGI**
**K11-23**
**NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025**
**ENTRY ONTO THE K11-7 DOCKET**

**<u>RELEVANT REFERENCES OF THE KAUL CASES</u>**
**K11-7: KAUL v ICE: 21-CV-06992 (S.D.N.Y.)**
**K11-23: KAUL v OETKEN ET AL: 24-CV-00621 (S.D.M.)**

Dear Mr. Dhillon,

I write this letter to bring your attention to the enclosed document entitled '**NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025 ENTRY ONTO THE K11-7 DOCKET**' (**Exhibit 1**) the facts of which speak for themselves and facts that substantiate K11-23 Defendant Oetken's **"ongoing pattern of racketeering"** within the S.D.N.Y. and violation of my human/civil/constitutional rights.

I also write this letter to request that there be conducted an investigation by the Civil Rights Division into the admitted offenses/violations/crimes committed by K11-23 Defendant Oetken, through his abuse of the power of the federal bench for personal gain, and his knowing/willful violation of my fundamental human/civil/constitutional right to amongst other things, due process and an impartial tribunal.

I respectfully assert that K11-23 Defendant Oetken should be removed from the bench, the vacant seat filed by the current administration, and he be subject to civil/criminal investigations.

Please be advised that this matter has also been referred to the Public Integrity Sections of the Department of Justice, the Judicial Conduct & Disability Committee, the New York State Bar and the United States Marshals Service in both the Districts of Columbia and the Southern District of New York and the US Attorney and the Chief Judge of the S.D.N.Y.

I thank you for your attention to this very serious matter.


Yours sincerely



RICHARD ARJUN KAUL, MD

Please respond to: drrichardkaul@gmail.com



**www.drrichardkaul.com**

**MAY 14, 2025**

THE HONORABLE LAURA TAYLOR SWAIN
CHIEF JUDGE
SOUTHERN DISTRICT OF NEW YORK
DANIEL PATRICK MOYNIHAN
UNITED STATES COURTHOUSE
500 PEARL STREET
NEW YORK, NY 10007-1312

RE: KAUL v ICE
    21-CV-06992-JPO
    K11-7
    +
    KAUL v OETKEN ET AL
    24-CV-000621-CWR-LGI
    K11-23
    NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025
    ENTRY ONTO THE K11-7 DOCKET

    <u>RELEVANT REFERENCES OF THE KAUL CASES</u>
    **K11-7: KAUL v ICE: 21-CV-06992 (S.D.N.Y.)**
    **K11-23: KAUL v OETKEN ET AL: 24-CV-00621 (S.D.M.)**

Dear Chief Judge Swain,

I write this letter to bring your attention to the enclosed document entitled '**NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025 ENTRY ONTO THE K11-7 DOCKET'** (**Exhibit 1**) the facts of which speak for themselves and facts that substantiate K11-23 Defendant Oetken's **"ongoing pattern of racketeering"** within the S.D.N.Y. and violation of my human/civil/constitutional rights.

I also write this letter to request that pursuant to your obligations under Canon 1 of the Code of Conduct for United States Judges '<u>A Judge Should Uphold the Integrity and Independence of the Judiciary</u>' you are obligated to report K11-23 Defendant Oetken to the Judicial Conduct & Disability Committee of the Judicial Conference of the United States, and specifically to:

1

**www.drrichardkaul.com**

**MAY 14, 2025**

THE HONORABLE LAURA TAYLOR SWAIN
CHIEF JUDGE
SOUTHERN DISTRICT OF NEW YORK
DANIEL PATRICK MOYNIHAN
UNITED STATES COURTHOUSE
500 PEARL STREET
NEW YORK, NY 10007-1312

RE: KAUL v ICE
  21-CV-06992-JPO
  K11-7
  +
  KAUL v OETKEN ET AL
  24-CV-000621-CWR-LGI
  K11-23
  NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025
  ENTRY ONTO THE K11-7 DOCKET

  <u>RELEVANT REFERENCES OF THE KAUL CASES</u>
  K11-7: KAUL v ICE: 21-CV-06992 (S.D.N.Y.)
  K11-23: KAUL v OETKEN ET AL: 24-CV-00621 (S.D.M.)

Dear Chief Judge Swain,

I write this letter to bring your attention to the enclosed document entitled '**NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025 ENTRY ONTO THE K11-7 DOCKET**' (**Exhibit 1**) the facts of which speak for themselves and facts that substantiate K11-23 Defendant Oetken's "**ongoing pattern of racketeering**" within the S.D.N.Y. and violation of my human/civil/constitutional rights.

I also write this letter to request that pursuant to your obligations under Canon 1 of the Code of Conduct for United States Judges '<u>A Judge Should Uphold the Integrity and Independence of the Judiciary</u>' you are obligated to report K11-23 Defendant Oetken to the Judicial Conduct & Disability Committee of the Judicial Conference of the United States, and specifically to:

Chair, Committee on Codes of Conduct
c/o General Counsel
Administrative Office of the United States Courts
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E.
Washington, D.C. 20544
202-502-1100

Failure to report knowledge of such admitted crimes causes an incurrence of witness liability and or complicity.

Please be advised that this matter has also been referred to the Civil Rights/Public Integrity Sections of the Department of Justice, the Judicial Conduct & Disability Committee, the New York State Bar and the United States Marshals Service in both the Districts of Columbia and the Southern District of New York and the US Attorney.

I thank you for your attention to this very serious matter.


Yours sincerely



RICHARD ARJUN KAUL, MD


Please respond to: drrichardkaul@gmail.com

2



**www.drrichardkaul.com**

**MAY 14, 2025**

PAMELA BONDI
ATTORNEY GENERAL
U.S. DEPARTMENT OF JUSTICE
950 PENNSYLVANIA AVENUE, NW
WASHINGTON, DC 20530-0001

**RE: KAUL v ICE**
   **21-CV-06992-JPO**
   **K11-7**
   **+**
   **KAUL v OETKEN ET AL**
   **24-CV-000621-CWR-LGI**
   **K11-23**
   **NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025**
   **ENTRY ONTO THE K11-7 DOCKET**

   **RELEVANT REFERENCES OF THE KAUL CASES**
   **K11-7: KAUL v ICE: 21-CV-06992 (S.D.N.Y.)**
   **K11-23: KAUL v OETKEN ET AL: 24-CV-00621 (S.D.M.)**

Dear Attorney General Bondi,

I write this letter to bring your attention to the enclosed document entitled '**NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025 ENTRY ONTO THE K11-7 DOCKET'** (**Exhibit 1**) the facts of which speak for themselves and facts that substantiate K11-23 Defendant Oetken's **"ongoing pattern of racketeering"** within the S.D.N.Y. and violation of my human/civil/constitutional rights.

I also write this letter to request that there be conducted an investigation by the Department of Justice into the admitted offenses/violations/crimes committed by K11-23 Defendant Oetken, through his abuse of the power of the federal bench for personal gain, and his knowing/willful violation of my fundamental human/civil/constitutional right to amongst other things, due process and an impartial tribunal.

<u>**www.drrichardkaul.com**</u>

**MAY 14, 2025**

PAMELA BONDI
ATTORNEY GENERAL
U.S. DEPARTMENT OF JUSTICE
950 PENNSYLVANIA AVENUE, NW
WASHINGTON, DC 20530-0001

**RE: KAUL v ICE**
**21-CV-06992-JPO**
**K11-7**
**+**
**KAUL v OETKEN ET AL**
**24-CV-000621-CWR-LGI**
**K11-23**
**NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025**
**ENTRY ONTO THE K11-7 DOCKET**

<u>**RELEVANT REFERENCES OF THE KAUL CASES**</u>
**K11-7: KAUL v ICE: 21-CV-06992 (S.D.N.Y.)**
**K11-23: KAUL v OETKEN ET AL: 24-CV-00621 (S.D.M.)**

Dear Attorney General Bondi,

I write this letter to bring your attention to the enclosed document entitled '**NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025 ENTRY ONTO THE K11-7 DOCKET'** (<u>**Exhibit 1**</u>) the facts of which speak for themselves and facts that substantiate K11-23 Defendant Oetken's **"ongoing pattern of racketeering"** within the S.D.N.Y. and violation of my human/civil/constitutional rights.

I also write this letter to request that there be conducted an investigation by the Department of Justice into the admitted offenses/violations/crimes committed by K11-23 Defendant Oetken, through his abuse of the power of the federal bench for personal gain, and his knowing/willful violation of my fundamental human/civil/constitutional right to amongst other things, due process and an impartial tribunal.

1

I respectfully assert that K11-23 Defendant Oetken should be removed from the bench, the vacant seat filed by the current administration, and he be subject to civil/criminal investigations.

Please find enclosed within (**Exhibit 2**) a copy of the letter I sent you on January 9, 2025 and the first fourteen (14) pages of a Complaint I submitted to the U.S.D.C for the D.C on or about March 22, 2025. The Complaint was never published to the court docket, despite me leaving multiple unanswered voice messages as to the reason for the non-publication.

Please be advised that this matter has also been referred to the Public Integrity and Civil Rights Sections of the Department of Justice, the Judicial Conduct & Disability Committee, the New York State Bar and the United States Marshals Service in both the Districts of Columbia and the Southern District of New York and the Chief Judge of the S.D.N.Y.

I thank you for your attention to this very serious matter.


Yours sincerely



RICHARD ARJUN KAUL, MD

Please respond to drrichardkaul@gmail.com



**www.drrichardkaul.com**

**MAY 15, 2025**

JORGE DOPICO
CHIEF ATTORNEY
ATTORNEY GRIEVANCE COMMITTEE
STATE OF NEW YORK
SUPREME COURT APPELLATE DIVISION
180 MAIDEN LANE – 17TH FLOOR
NEW YORK, NEW YORK 10038

**RE: KAUL v ICE**
   **21-CV-06992-JPO**
   **K11-7**
   **+**
   **KAUL v OETKEN ET AL**
   **24-CV-000621-CWR-LGI**
   **K11-23**
   **NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025**
   **ENTRY ONTO THE K11-7 DOCKET**

   **RELEVANT REFERENCES OF THE KAUL CASES**
   **K11-7: KAUL v ICE: 21-CV-06992 (S.D.N.Y.)**
   **K11-23: KAUL v OETKEN ET AL: 24-CV-00621 (S.D.M.)**

Dear Mr. Dopico,

I write this letter to bring your attention to the enclosed document entitled '**NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025 ENTRY ONTO THE K11-7 DOCKET**' (**Exhibit 1**) the facts of which speak for themselves and facts that substantiate K11-23 Defendant Oetken's **"ongoing pattern of racketeering"** within the S.D.N.Y. and violation of my human/civil/constitutional rights.

I also write this letter to request that there be conducted an investigation by the NYS Attorney Grievance Committee into the admitted offenses/violations/crimes committed by K11-23 Defendant Oetken, through his abuse of the power of the federal bench for personal gain, and his knowing/willful violation of my fundamental human/civil/constitutional right to amongst other things, due process and an impartial tribunal.

1

**www.drrichardkaul.com**

**MAY 15, 2025**

JORGE DOPICO
CHIEF ATTORNEY
ATTORNEY GRIEVANCE COMMITTEE
STATE OF NEW YORK
SUPREME COURT APPELLATE DIVISION
180 MAIDEN LANE – 17TH FLOOR
NEW YORK, NEW YORK 10038

RE: **KAUL v ICE**
    **21-CV-06992-JPO**
    **K11-7**
    **+**
    **KAUL v OETKEN ET AL**
    **24-CV-000621-CWR-LGI**
    **K11-23**
    **NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025 ENTRY ONTO THE K11-7 DOCKET**

    **RELEVANT REFERENCES OF THE KAUL CASES**
    **K11-7: KAUL v ICE: 21-CV-06992 (S.D.N.Y.)**
    **K11-23: KAUL v OETKEN ET AL: 24-CV-00621 (S.D.M.)**

Dear Mr. Dopico,

I write this letter to bring your attention to the enclosed document entitled '**NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025 ENTRY ONTO THE K11-7 DOCKET**' (**Exhibit 1**) the facts of which speak for themselves and facts that substantiate K11-23 Defendant Oetken's **"ongoing pattern of racketeering"** within the S.D.N.Y. and violation of my human/civil/constitutional rights.

I also write this letter to request that there be conducted an investigation by the NYS Attorney Grievance Committee into the admitted offenses/violations/crimes committed by K11-23 Defendant Oetken, through his abuse of the power of the federal bench for personal gain, and his knowing/willful violation of my fundamental human/civil/constitutional right to amongst other things, due process and an impartial tribunal.

1

Please find enclosed in (**Exhibit 2**) documents pertaining to the November 30, 2022 AGC Complaint and documents from another person whose submissions raised the same disbarment-disqualification-impeachment-prosecution issues as those raised in the prior (November 30, 2022) and current (May 15, 2025) Complaints. This alone constitutes **a "pattern of racketeering"**, that caused the prior litigant, a single mother with three children to be forcibly and illegally evicted from her apartment in Manhattan in which she had lived for thirty (30) years. At the moment of this orally announced order by K11-23 Defendant Oetken, the litigant, emotionally and physically distraught, fled the courtroom in tears and entered the bathroom, whereupon within less than five (5) minutes three female non-lawyer staff followed her. These individuals, who having witnessed K11-23 Defendant make knowingly fraudulent rulings on countless occasions against pro se litigants involved in disputes with corporations, did tell this person that he [K11-23 Defendant Oetken] **"had to be stopped"** and that she had to fight his illegal entry. This person, almost destitute and with no knowledge of the law was able to do nothing about K11-23 Defendant Oetken's long-standing criminal conduct.

But I respectfully assert that K11-23 Defendant Oetken should be removed from the bench, the vacant seat filed by the current administration, and he be subject to civil/criminal investigations.

Please be advised that this matter has also been referred to the Public Integrity and Civil Rights Sections of the Department of Justice, the Committee on Codes of Conduct, Chair, Committee on Codes of Conduct-Administrative Office of the United States Courts-Thurgood Marshall Federal Judiciary Building, the United States Marshals Service in both the Districts of Columbia and the Southern District of New York, the US Attorney and the Chief Judge of the S.D.N.Y.

I thank you for your attention to this very serious matter.


Yours sincerely



RICHARD ARJUN KAUL, MD

Please respond to: drrichardkaul@gmail.com

# Exhibit 1

**www.drrichardkaul..com**

**MAY 10, 2025**

**ATTENTION:**

ANDREW R. NORWOOD
drew.norwood@usdoj.gov
JESSICA WILLIAMS
Jessica.Williams3@usdoj.gov
501 EAST COURT STREET
SUITE 4.430
JACKSON, MS 39201

**RE: KAUL v OETKEN ET AL**
     **24-CV-000621-CWR-LGI**
     **K11-23**
     **NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025**
     **ENTRY ONTO THE K11-7 DOCKET**

**K11-7**: KAUL v ICE: 21-CV-06992 (S.D.N.Y.)
**K11-23**: KAUL v OETKEN ET AL: 24-CV-00621 (S.D.M.)

Dear Counsel,

Please be noticed that on May 8, 2025, your client, K11-23 Defendant James Paul Oetken did

with a willful illegality commit another offense/violation/crime against myself by publishing to

the K11-7 docket a knowingly fraudulent legal instrument and text (**Exhibit 1**). This act and its

probative effect as to K11-23 Defendant Oetken's guilty state-of-mind, will with his admissions

of fact (**Exhibit 2**) be submitted to persons/agencies/authorities involved in the

disciplinary/impeachment/indictment process as to district court judges.

K11-23 Defendant Oetken is conflicted, a fact when he knew when he published the fraudulent

legal instrument to the K11-7 docket, but despite knowing his state-of-conflicted-ness he did

nonetheless commit a further offense/violation/crime (2005-2025) against my

1

human/civil/constitutional rights to, amongst other things, due process and an impartiality of tribunal. And the reason/s as to why K11-23 Defendant Oetken would, with such blatancy, illegally pervert the power/authority of the United States District Court to attempt to serve his own personal interests pertains to his admitted guilt of the K11-23 charges, the consequences of his guilt and a profoundly misguided further guilt affirming 'cover-up' act of seeking to have me eliminated.

Central to K11-23 Defendant Oetken's highly motivated offense/violation/crime against the legal apparatus of the United States, a treasonous act, is K11-27 and the Rules 26/16 orders as entered on April 11 and scheduled for July 9, 2025 by the U.S.D.C. for the Southern District of Texas. K11-23 Defendant Oetken, in collusion/conspiracy with the K11-27 Defendants and K11-26 Defendant Schumer did continue in K11-7 to perpetrate an ongoing **"pattern of racketeering"** by/through/within the legal apparatus of the United States.

Thus, 'The Fraud on the Court' committed by these treasonous acts does ab initio render invalid/illegal K11-23 Defendant Oetken's May 8, 2025 entry onto the K11-7 docket and all of its within contents. However, what further illustrates the egregiousness and proves the criminality of such an act is the fact that K11-23 Defendant Oetken did not even attempt to articulate how a co-existence of his K11-23 Defendant status and his K11-7 May 8, 2025 docket entry do not violate either his own professional/ethical rules and or my human/civil/constitutional rights. The extremis of his offenses/violations/crimes are consistent with and highly probative of his admitted guilt in K11-23.

K11-23 Defendant Oetken and his long-standing commission of crime by/through/within multiple extra-jurisdictional districts of the U.S.D.C. has caused him to become professionally isolated, the immediate proof of which resides within the fact that no other district judge in K11-7 was willing to adjudicate/attach their name to a proceeding that all of them know was/is illegal. K11-23 Defendant Oetken knew/knows that because he is an admittedly guilty Defendant in K11-23, the law/rules of professional conduct/human-civil-constitutional rights

2

expressly prohibit him from having any role in a contempt proceeding other than that of a witness subject to examination under oath. But because no other district judge entered the **'Revocation-Cover-Up-Conspiracy'** or was even willing to consider an entrance, K11-23 Defendant Oetken was 'cornered' into an increasingly shrinking 'corner' of committing yet a further offense/violation/crime against my life/liberty/property/reputation and human./civil/constitutional rights.

The manufacturing of this impossible situation was/is 'rooted' in K11-23 Defendant Oetken's long-standing **"pattern of racketeering"** and a well-known reputation within legal and 'white-collar' litigation communities for an un-inhibited 'price is right' quid pro quo bribery related perpetration of such schemes, **ALL** of which account for the exposition of his guilt in K11-23 by myself, a lay and non-lawyer person. Sadly, but predictably, no oath-swearing lawyer has had the courage or sense of righteousness to expose K11-23 Defendant Oetken's bribery/fraud/conflicted/impartial tribunal **"pattern of racketeering"**, knowing that such an exposition would rectify the immense life-destroying effects his offenses/violations/crimes have had on non-corporate litigants involved in disputes with corporations.

Similarly, no other district judge in the S.D.N.Y., knowing of K11-23 Defendant Oetken's **"pattern of racketeering"** did, as his/her obligatory code of conduct mandate, report K11-23 Defendant Oetken to the relevant administrative/civil/criminal authorities. These jurist witnesses remained silent, but would be obligated under force of subpoena to be called as witnesses in any proceeding involving K11-23 Defendant Oetken in any district court, be it the S.D.N.Y., the Southern District of Mississippi or the Southern District of Texas, **AS WOULD** any of the K11-27 Defendants.

Penultimately, and for all the above stated reasons, K11-23 Defendant Oetken's May 8, 2025 publishing to the K11-7 docket of a knowingly fraudulent instrument renders the instrument null and void and thus deprives it of any legal effect, except that of further confirming/corroborating his admitted guilt of the bribery/fraud/impartial tribunal related

3

consequences established in K11-23. And of causing the emergence of further/new evidence substantiating the facts underpinning his admissions of guilt. K11-23 Defendant Oetken had/has no right nor authority to use the power of the federal bench in any ministerial/adjudicative manner involving myself and or any matter pertaining/relating to my life/liberty/property/reputation and or human/civil/constitutional rights. Thus, the nullity of the May 8, 2025 illegal instrument does not only invalidate all of its within contents but also any of the fraudulent consequences that might emanate from these invalidated contents.

And finally, as counsel for K11-23 Defendant Oetken as to the same subject matter of K11-23 and K11-7, that being principally the issue of judicial corruption, it is your professional responsibility to advise K11-23 Defendant Oetken that he, a person represented by counsel, must not directly/indirectly communicate with me except through counsel. Failure to advise him of these facts will constitute a violation of your ethical/legal rules of conduct. Please also be advised that this letter will be submitted in support of my motion in K11-23 to life the stay and permit further discovery on K11-23 Defendant Oetken's offenses/violations/crime and their relation to his criminal conduct related deprivation of any form of immunity.

Please also be advised of the United States Government's proposed bills/legislation to combat the exact type of judicial corruption of which K11-23 Defendant Oetken has admitted to perpetrating since just after his 2011 appointment to the federal bench (**Exhibit 3**).

Yours sincerely

RICHARD ARJUN KAUL, MD

cc: All counsel of record in K11-7 and K11-23

# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICHARD ARJUN KAUL, *et al.*,

Plaintiffs,

-v-

INTERCONTINENTAL EXCHANGE, *et al.*,

Defendants.

21-CV-6992 (JPO)

ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Richard Arjun Kaul shall show cause as to why he should not be held in

contempt, pursuant to the motions at ECF Nos. 179, 180, 182, and 188 for violation of the

Court's September 22, 2022 and subsequent orders, at a hearing on **June 17, 2025 at 2:30 p.m.**

The hearing will take place in Courtroom 706, Thurgood Marshall United States Courthouse, 40

Foley Square, New York, New York.  Plaintiff Richard Arjun Kaul shall file any written

response to the motions for contempt on or before May 30, 2025, and such response shall not

exceed 30 double-spaced pages.

SO ORDERED.

Dated: May 8, 2025
New York, New York

J. PAUL OETKEN
United States District Judge

The Clerk of Court is directed to mail a copy of this order to:

Richard Arjun Kaul
24 Washington Valley Road
Morristown, NJ 07960

ORDER: Plaintiff Richard Arjun Kaul shall show cause as to why he should not be held in contempt, pursuant to the motions at ECF Nos. 179, 180, 182, and 188 for violation of the Court's September 22, 2022 and subsequent orders, at a hearing on June 17, 2025 at 2:30 p.m. The hearing will take place in Courtroom 706, Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York. Plaintiff Richard Arjun Kaul shall file any written response to the motions for contempt on or before May 30, 2025, and such response shall not exceed 30 double-spaced pages. ( Responses due by 5/30/2025) Show Cause Hearing set for 6/17/2025 at 02:30 PM in Courtroom 706, 40 Centre Street, New York, NY 10007 before Judge J. Paul Oetken. (Signed by Judge J. Paul Oetken on 5/8/2025) (rro) (Entered: 05/08/2025)

# Exhibit 2

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI



RICHARD ARJUN KAUL, MD;
JANE DOE; JOHN DOE.

Plaintiff

v.

CIVIL ACTION  NO.: 24-CV-00621-CWR-LGI

*3:24-CV-00621-CWR-LG-I*

JAMES PAUL OETKEN
(PERSONAL AND OFFICIAL CAPACITY)
MISSISSIPI MEDICAL BOARD;
NEW YORK STATE ATTORNEY GRIEVANCE
COMMITTEE; JANE DOE; JOHN DOE.

Defendants.

## ADMISSIONS OF MATERIAL AND UNDISPUTED FACT NOT RELATED TO THE ISSUE PENDING THE COURT'S RULING ON THE MOTION AND PURSUANT TO RULE 8(b)(6) AS TO DEFENDANT JAMES PAUL OETKEN

Respectfully Submitted

RICHARD ARJUN KAUL, MD

JANUARY 5, 2025

1

# RELEVANT REFERENCES TO THE KAUL CASES

**K1 –** KAUL v CHRISTIE: 16-CV-02364 (FEBRUARY 22, 2016, TO NOVEMBER 16, 2021-U.S.D.C.-D.N.J.)

**K11-7 -** KAUL/BASCH v ICE: 21-CV-06992 (AUGUST 19, 2021, TO SEPTEMBER 12, 2022-SOUTHERN DISTRICT OF NEW YORK)

**K11-10 -** KAUL/BASCH v ICE: 23-CV-2016 (MARCH 9, 2023, TO MAY 16, 2023-SOUTHERN DISTRICT OF NEW YORK)

**K11-14 -** KAUL v GEICO: 23-CV-22325 (JUNE 22, 2023, TO AUGUST 23, 2023-SOUTHERN DISTRICT OF FLORIDA)

**K11-17 -** KAUL v CPEP: 23-CV-00672 (NOVEMBER 20, 2023, TO JUNE 14, 2024 - EASTERN DISTRICT OF NORTH CAROLINA)

**K11-18 –** KAUL v OETKEN: 24-CV-00185 (MARCH 25, 2024, TO APRIL 8, 2024-EASTERN DISTRICT OF NORTH CAROLINA)

**K11-20 –** KAUL v FEDERATION STATE MEDICAL BOARDS: 24-CV-03180 (AUGUST 26, 2024, TO PRESENT-SOUTHERN DISTRICT OF TEXAS)

**K11-22 –** KAUL v BCBSA: 23-CV-01688 (DECEMBER 12, 2023, TO PRESENT-NORTHERN DISTRICT OF ALABAMA)

**K11-23 –** KAUL v OETKEN: 24-CV-00621 (OCTOBER 9, 2024 TO PRESENT-SOUTHERN DISTRICT OF MISSISSIPPI)

For ease of reference Defendant JAMES PAUL OETKEN will be referred to as "I"

## K11-23 + Failure To Deny Bribes

**1.** I admit that when I entered the knowingly illegal injunction on September 12, 2022, I instructed the Clerk of the Court to ensure Plaintiff Kaul was provided instructions on how to appeal in conjunction with an application to proceed in forma pauperis (D.E. 169-1).

**2.** I admit that the purpose of encouraging Plaintiff Kaul to file an appeal to the U.S.C.A. for the Second Circuit was that I did intermittently sit on the appellate bench and was informed it likely I be elevated to the appellate court if Plaintiff Kaul 'took the appellate bait'.

**3.** I admit I know that if Plaintiff Kaul did file an appeal, no other district court would admit any of his filings, and his claims would be restricted to the U.S.C.A. for the Second Circuit.

**4.** I admit I knew that the Second Circuit would ultimately deny Plaintiff Kaul's appeal and validate my knowingly illegal injunction.

**5.** I admit I knew that the validation of my injunction by the U.S.C.A. for the Second Circuit would forever preclude Plaintiff Kaul from filing any lawsuits in the United States District Court that had any connection, however remote, to any aspect of his professional licensing history.

**6.** I admit I knew that if I succeeded in eliminating Plaintiff Kaul in this bureaucratic manner, I would have been permanently elevated to the U.S.C.A. for the Second Circuit.

**7.** I admit that an elevation to the U.S.C.A. for the Second Circuit would have had the effect of permanently 'burying' all the bribery related quid pro quo crimes I had committed since being appointed to the federal bench in 2011 by a politician notorious even by political standards for egregious acts of political corruption.

**8.** I admit that had I been elevated to the U.S.C.A. for the Second Circuit, this politician would have secured even greater protection for his corrupt and criminal perversion of the power of government.

**9.** I admit, however, that because of Plaintiff Kaul, none of these hypotheticals occurred and my career was negatively impacted.

**10.** I admit the negative impact on my career in conjunction with preventing Plaintiff Kaul from exposing my crimes did cause me to threaten him with contempt and incarceration.

**11.** I admit I know of **The Kaul Cases** attempt on June 14/15, 2023 to have Plaintiff Kaul, while illegally incarcerated at the medium-maximum security Mercer County Prison in Trenton, NJ,

poisoned with the anti-psychotic medication, Librium, in order to have him deemed mentally unstable and committed indefinitely to a psychiatric institution.

**12.** I admit that on October 9, 2024, Plaintiff Kaul filed K11-23, in which I am accused of, amongst other things, bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption.

**13.** I admit that I was served with a copy of K11-23 on October 16, 2024 at approximately 9:30 am EST in my courtroom at the S.D.N.Y. by a security officer employed by the United States District Court.

**14.** I admit that on November 15, 2024, the Court ordered I answer the Complaint by December 16, 2024.

**15.** I admit that on December 16, 2024 I filed documents entitled 'MOTION TO DISMISS' (D.E. 12) and 'MEMORANDUM IN SUPPORT MOTION TO DISMISS' (D.E. 13).

**16.** I admit that in neither of these documents did I deny the allegations/facts of bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption. asserted in the Complaint in K11-23.

**17.** I admit I knew/know that in failing to deny the allegations/facts I did violate the Court's November 15, 2024 order.

**18.** I admit I knew/know that in failing to deny the allegations/facts I did cause them to become admitted for all purposes pursuant to Rule 8(b)(6).

**19.** I admit I knew/know that the allegations/facts constitute the commission of violations of criminal law.

**20.** I admit I knew/know that the immunity defense I raised in my impermissibly filed 'MOTION TO DISMISS' (D.E. 12) and 'MEMORANDUM IN SUPPORT MOTION TO DISMISS' (D.E. 13) were/are invalid because my Rule 8(b)(6) admissions of my commission of bribery related crime are not protected by any immunity defense.

**21.** I admit I am guilty of the charges levied in K11-23.

**22.** I admit that if I were innocent of the charges levied in K11-20 I would simply have denied them, but I did not because I am guilty of the charges.

**23.** I admit I know that on December 20, 2024, Plaintiff Kaul filed a 'NOTICE OF DEFENDANT OETKEN'S ADMISSION OF FACT PURSUANT TO HIS RULE 8(b)(6) FAILURE TO DENY THE

ALLEGATIONS AND FACTS ASSERTED WITHIN THE COMPLAINT, AND PURSUANT TO HIS VIOLATION OF THE COURT'S DECEMBER 16, 2024 ORDER TO ANSWER THE COMPAINT'.

**24.** I admit I know that a <u>responsive pleading</u> was ordered by the Court on November 15, 2024.

**25.** I admit I know that pursuant to Rule 8(b)(6) the **"Effect of Failing to Deny An Allegation-other than one relating to damages-is admitted if a responsive pleading is required and the allegation is not denied."**

**26.** I admit I know that on December 27, 2024, Plaintiff Kaul filed a 'REPLY DEFENDANT OETKEN MEMORANDUM OF MOTION TO DISMISS'.

**27.** I admit I read Plaintiff Kaul's 'REPLY DEFENDANT OETKEN MEMORANDUM OF MOTION TO DISMISS' through the perspective of a lawyer and judge.

**28.** I admit that through the perspective of a lawyer and judge I agree with every argument submitted in Plaintiff Kaul's 'REPLY DEFENDANT OETKEN MEMORANDUM OF MOTION TO DISMISS'.

**29.** I admit that of the thousands of opinions I have issued in my judicial career in cases involving charges of bribery against public servants, many of them contain arguments either identical or consistent with those submitted by Plaintiff Kaul.

**30.** I admit that in these cases I have ruled in favor of government prosecutors who have submitted such arguments against criminal defendants charged with bribery and public corruption.

**31.** I admit that in these cases in which guilty verdicts have been rendered, I did sentence the defendants to terms of imprisonment and substantial fines.

**32.** I admit that through the perspective of a defendant, who is also a lawyer and judge, I should be held at least to the standard of the common man committing common crime if not higher.

**33.** I admit that my Rule 8(b)(6) related admittance of the facts of bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption asserted in the Complaint in ¶11-23, did deprive me of any immunity.

**34.** I admit that in the Complaint (D.E. 1 Page 14 of 54), Plaintiff Kaul identified the facts that caused me to be deprived of '... ANY/ALL IMMUNITIES'.

**35.** I admit that in my December 16, 2024 'MOTION TO DISMISS' (D.E. 12) and 'MEMORANDUM IN SUPPORT MOTION TO DISMISS' (D.E. 13) I did not deny any of the facts asserted in paras. 39 to 45 or indeed any of the facts within the entire Complaint.

**36.** I admit that on January 3, 2025 IN K11-23 I submitted my 'REPLY IN SUPPORT OF MOTION TO DISMISS'.

**37.** I admit that in my 'REPLY IN SUPPORT OF MOTION TO DISMISS' I submitted an answer to the bribery charge levied in the K11-23 Complaint.

**38.** I admit, however, that the answer was intended to purposefully mislead the Court into believing Defendant Oetken was innocent of the levied charges of bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption.

**39.** I admit that one of the answers in furtherance of this deception is: "**However, Judge Oetken has committed no crimes and Kaul's blanket statement is insufficient to support a finding of criminal activity.**" (D.E. 23 Page 2 of 5).

**40.** I admit that I and my lawyers conspired to manufacture a, and to use my own word, **"blanket"** statement in which I did not specifically deny having committed the crimes of bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption.

**41.** I admit that I and my lawyers believed that if we used the word **"crimes"** in a general sense it would deceive the Court into believing I had not committed bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption.

**42.** I admit that the deceptive state-of-mind of myself and my lawyers is evidenced in our use of the term **"blanket"** to describe, albeit a false description, of Plaintiff Kaul's claims, when in fact it represents, both in textual and meaning proximity, my use of the general term **"crimes"** to appear to but not actually deny my commission of bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption.

**43.** I admit that I and my lawyers, knowing I had committed crime, could not simply deny the allegations/facts, and so filed a motion to dismiss, while planning to use my final reply to deceive the Court into believing I committed no crime, knowing that Plaintiff Kaul could not respond to my final **"crimes"** based reply.

**44.** I admit that I did commit crimes, which explains the extent to which I have proceeded since 2023 in attempting to prevent other district courts and judges from hearing any of **The Kaul Cases**.

**45.** I admit that my nationwide injunction against a single litigant is a gross deviation from the true purpose of such restrictions, and in conjunction with threats of contempt does constitute an unprecedented violation of the human/civil/constitutional rights of person whose life/liberty/property/reputation rights have been illegally deprived for almost thirteen (13) years and who has not once been provided an opportunity to litigate his claims through discovery to trial.

6

**46.** I admit that my conduct and that of **The Kaul Cases** Defendants is, other than being illegal, does evidence our guilt of the levied charges to a criminal standard.

## Defendant Oetken Career Milestones And Transition From Lawful To Unlawful Conduct

**47.** I admit I graduated from high school in or around 1984.

**48.** I admit I attended college from 1984 to 1988 and did graduate.

**49.** I admit I attended law school from 1988 to 1992 and did graduate.

**50.** I admit I did take and pass the NYS Bar Exam after I graduated law school.

**51.** I admit I did swear an oath upon admission to the NYS Bar.

**52.** I admit the oath involved a promise to uphold the law, faithfully support the Constitution and conduct my practice of law in an ethical manner.

**53.** I admit that after graduating law school and in the period from 1992 to approximately 2002 I provided legal counsel to politicians.

**54.** I admit that in the period from 2002 to 2011 I worked in the private sector and provided legal counsel to publicly traded corporations.

**55.** I admit that as a consequence of working in the milieu of the political and corporate worlds, I came to witness and know their corrupt intersection.

**56.** I admit that as a consequence of being immersed in this corrupt politico-corporate milieu, I began to view profit-purposed manipulations of law and ethics as a 'normal' way of conducting public service and business.

**57.** I admit that being immersed in these manipulations caused a perversion of my moral and ethical framework.

**58.** I admit that being immersed in these manipulations caused me to become highly experienced in knowingly dishonest perversions of the law to suit political and business agendas.

**59.** I admit that in 2010 I was sponsored by the US Senator for New York to the federal bench.

**60.** I admit that in 2011 I was assigned to the federal bench in the Southern District of New York.

**61.** I admit that upon assignment to the federal bench I did, with my hand on the Bible, swear an oath to the Constitution and a promise to faithfully uphold the law.

**62.** I admit that in the period from 2011 to 2025, I adjudicated approximately four thousand five hundred (4,500) cases.

**63.** I admit that the majority of the cases involved commercial, business and financial disputes involving mostly high net worth individuals and financial sector corporations.

**64.** I admit that I also presided over criminal cases in which defendants were convicted by juries of bribery and public corruption.

**65.** I admit that I sentenced to jail persons convicted of bribery and public corruption.

**66.** I admit that in my sentencing remarks in these bribery and public corruption cases, I described the perniciousness of the offenses in that when public servants violate the public trust, there can be nothing more corrosive to the well-being of society and its democratic institutions.

**67.** I admit that in many of the public corruption cases filed before me and within the S.D.N.Y., the press conference given by the U.S. Attorney would invariably involve how such conduct would not be tolerated in the S.D.N.Y and how the perpetrators would be tenaciously pursued and prosecuted.

**68.** I admit that by the time I was appointed to the federal bench I was well-versed in the manufacturing of schemes by lawyers in which the law is perverted, violated and ignored to provide justification and cover for the furtherance of knowingly illegal agendas of politicians and corporations.

**69.** I admit that I know the principal reason I was nominated by the US Senator for NY was my lengthy pre-judicial experience in the corrupt manufacturing of politico-corporate malfeasance supporting legal opinion.

**70.** I admit that I know my appointment had nothing to do with an aspect of my personal life, an aspect that was however conveniently and publicly exploited by the politicians.

**71.** I admit that over the almost fourteen (14) years I have sat on the federal bench, there has been an escalation in the brazenness and seriousness of the crimes, violations and other wrongdoing I have committed against the law, the public and the United States.

**72.** I admit that I know one of the reasons for this unchecked escalation has been the fact that no lawyer or judge has accused me of engaging in corrupt activities.

**73.** I admit I know that within the court, the non-lawyer and non-judicial staff that work in my courtroom do know of my corrupt activities.

**74.** I admit I know that one of the reasons no lawyer of judge has reported me is because they believe their 'whistleblowing' will cause the politician who sponsored me to retaliate and attempt to silence them.

**75.** I admit that the politician's retaliation and 'whistleblower' silencing would stem from his fear that the 'whistleblower' exposing of my corrupt use of the federal bench to further his schemes of political corruption with Wall Street based insurance, hospital, pharmaceutical and banking corporations, would end his political career.

**76.** I admit I know that in 2019, Plaintiff Kaul sued this politician in the S.D.N.Y. on charges of racketeering, bribery, quid pro quo schemes and public corruption.

**77.** I admit I knew this fact when Plaintiff Kaul filed K11-7 on August 19, 2021, and despite knowing I was conflicted, I did nonetheless adjudicate the case.

## Common Knowledge Of The Truth Of The Crimes Of The Kaul Cases Defendants

**78.** I admit that as a district judge in a highly staffed district court with unrestricted access to evidence/facts and persons possessing this corpus of evidence/fact AND having been involved as a Judge, Co-conspirator and Defendant in **The Kaul Cases** since 2021 I have come to know the truth of the crimes of **The Kaul Cases** Defendants.

**79.** I admit I know that having been involved as a Judge, Co-conspirator and Defendant in **The Kaul Cases** since 2021 **The Kaul Cases** Defendants have come to know the truth of each other's crimes, including mine.

**80.** I admit I know that each Defendant played a particular role in the 'Kaul Elimination Conspiracy'.

**81.** I admit I know that the two fundamental elements of the scheme pertained to those who purchased state power and those who sold and exercised it.

**82.** I admit I know that Defendants Allstate/Heary purchased state power from Defendant Christie through bribery.

**83.** I admit I know Defendant Christie abused his power to cause the illegal revocation of Plaintiff Kaul's license and an ongoing deprivation of his life/liberty/property/reputation and violation of his human/civil/constitutional rights.

**84.** I admit I know that Defendants Allstate/Heary purchased state power from Defendant Solomon through bribery.

**85.** I admit I know Defendant Solomon abused his power to cause the illegal revocation of Plaintiff Kaul's license and an ongoing deprivation of his life/liberty/property/reputation and violation of his human/civil/constitutional rights.

**86.** I admit I know that Defendant Allstate purchased regulatory power from Defendant FSMB through bribery.

**87.** I admit I know Defendant FSMB abused its power to cause an illegal obstruction of Plaintiff Kaul's efforts to have his illegal revoked NJ license reinstated and or obtain a license in another state.

**88.** I admit I know Defendant FSMB abused its power to cause an ongoing deprivation of Plaintiff Kaul's life/liberty/property/reputation and violation of his human/civil/constitutional rights.

**89.** I admit I know that Defendant Allstate purchased bankruptcy trustee power from Defendant Stolz through bribery.

**90.** I admit I know that Defendant Stolz abused his power in failing to file claims and or collect the over $52 million dollars owed to Plaintiff Kaul's estate/eighty-three creditors of this estate by Defendant Allstate and other insurance companies.

**91.** I admit I know the truth of the factual foundation of all **The Kaul Cases**, including K11-7 and K11-20.

## The Crime Of The September 12, 2022 'Injunction' in K11-7 — August 19, 2021 To September 12, 2022

**92.** I admit that on August 19, 2021, K11-7 was filed in the United States District Court for the Southern District of New York.

**93.** I admit that the case was not placed into the court's random judicial assignment system.

**94.** I admit that the case was improperly assigned to me because I had informed the Clerk's office to inform me of any cases that involved publicly traded corporations.

**95.** I admit that upon being informed of the case filing, and reviewing the complaint, I did come to know that in K1 Plaintiff Kaul had caused the May 22, 2019 disqualification of the district judge in the District of New Jersey for having received bribes.

**96.** I admit that I knew/know that the district judge in K1 is the brother-in-law of the politician who sponsored me to the federal bench.

**97.** I admit that I knew these facts presented a conflict of interest, but did nonetheless have the case assigned to me.

**98.** I admit that I instructed the court not to assign a magistrate judge to the case.

**99.** I admit that my instruction to not have an independent magistrate judge assigned pertained to my intent to corruptly adjudicate the case.

**100.** I admit that upon adopting judicial control of the case, I recognized that Plaintiff Kaul was cognizant and highly attuned to the defendants schemes of judicial corruption.

**101.** I admit that recognizing Plaintiff Kaul's acute awareness of this issue, it was imperative for me to administer the case in a manner that attempted to deceive Plaintiff Kaul into believing I was impartially administering the case.

**102.** I admit that a principal purpose of deceiving Plaintiff Kaul into believing I was impartially administering the case and that it would proceed into discovery, pertained to the belief of the defendants and myself that if Plaintiff Kaul thought K11-7 would move into discovery, then he would stop filing cases in other districts and would dismiss any pending cases.

**103.** I admit that I and the defendants schemed that once Plaintiff Kaul, believing that K11-17 would advance into discovery, had dismissed any pending cases and not filed any new cases, I would dismiss K11-7 with prejudice and enter a nationwide 'injunction'.

**104.** I admit that my receipt of the bribes from the K11-7 defendants was transferred in partial payments from the commencement of the scheme to the point at which Plaintiff Kaul's right to appeal had expired.

**105.** I admit that to attempt to conceal the bribes, they were transferred through off-shore institutions and through other schemes involving the dispensation of shares in publicly traded corporations.

**106.** I admit that in the perpetration of the bribery related quid pro quo scheme, I utilized my prior experience as counsel to corrupt politicians and corporations to implement schemes to attempt to conceal the bribes.

**107.** I admit that both I and the defendants were convinced that my deceitful administration and adjudication of K11-7 would cause an effective elimination of Plaintiff Kaul by forever precluding his ability/rights to secure justice for the crimes committed against his life/liberty/property/reputation.

**108.** I admit that I and the defendants did believe that such an effective elimination would cause Plaintiff Kaul to leave the United States and or commit suicide.

**109.** I admit that I and the defendants, despite knowing that Plaintiff Kaul had two (2) young children, did not care that our actions could cause his death.

**110.** I admit that the only concern I and the defendants possessed was that of continuing to profit from our crimes.

**111.** I admit that the scheme was of a 'bait and switch' nature.

**112.** I admit that in the perpetration of the scheme I used the docket of the United States District Court to publish knowingly fraudulent orders purposed to deceive Plaintiff Kaul into believing I would advance the case into discovery.

**113.** I admit that from the commencement and throughout the perpetration of the scheme there were extensive and detailed communications between myself and agents acting on my behalf and the defendants and agents acting on their behalf.

**114.** I admit that these communications involved the 'who/what/where/when/how/why' specifications of the quid pro quo scheme in which in return for the bribes I would dismiss K11-7 with prejudice and enter a nationwide 'injunction'.

**115.** I admit I knew these communications were illegal and in furtherance of a knowingly illegal scheme.

116. I admit that these communications were conducted in a knowingly illegal manner across the US wires.

117. I admit that I and the defendants knew/know that the use of the US wires constitutes the felony of wire fraud.

118. I admit I know that these communications were also conducted in face-to-face meetings in my chambers in the S.D.N.Y.

119. I admit I knew/know that the use of my chambers to further a knowingly illegal scheme through face-to-face meetings was/is illegal.

120. I admit that these 'secret' meetings in my chambers were conducted after my court staff had departed the building.

121. I admit that some of the communications occurred between myself and agents acting on my behalf and the defendants and agents acting on their behalf in places outside of the court building.

122. I admit that in these non-court meetings the arrival and departure at the meeting location of the persons involved was staggered, in order to avoid any person observing the gathering of high-profile lawyers and an equally high-profile federal judge.

123. I admit that despite knowing of the illegality of the communications, of their conduction within my chambers within the S.D.N.Y. and of their furtherance of knowingly illegal bribery related scheme, I did nonetheless commit these crimes in a knowingly illegal manner.

124. I admit that my willful and knowing perpetration of these crimes while in possession of the power of a federal judge does constitute a high crime against not just Plaintiff Kaul and the United States but against the Constitution of the United States.

125. I admit that during the digital and face-to-face communications, the timing of my orders of dismissal with prejudice and injunction was discussed.

126. I admit that I and the defendants agreed that the orders would be entered once Plaintiff Kaul had dismissed all pending cases and there were no remaining cases within the United States District Court through which he could prosecute **The Kaul Cases** Defendants.

127. I admit that during the communications I and the defendants agreed that the September 12, 2022 opinion/order/injunction would be co-drafted.

128. I admit that during the communications I and the defendants agreed that the September 12, 2022 opinion/order/injunction would contain no analysis of any of Plaintiff Kaul's

arguments and or refutation and distinguishment of the arguments/cases cited by the K11-7 Defendants.

**129.** I admit that during the communications I and the defendants agreed that the September 12, 2022 opinion/order/injunction would encourage Plaintiff Kaul to appeal the opinion/order/injunction in order to attempt to further preclude him from filing cases in other districts.

**130.** I admit that during the communications I and the defendants agreed that we knew any appeal would be denied, because certain judges on the appeal court had been sponsored by the same politician who had sponsored me.

**131.** I admit that during the communications I and the defendants agreed that the appeal would be denied because certain judges on the appeal court continued to participate in quid pro quo schemes with the insurance and banking defendants in K11-7.

**132.** I admit that during the communications I and the defendants agreed that if the opinion/order/injunction were drafted in as defamatory a manner as possible, it would demoralize Plaintiff Kaul to the point where he would discontinue his efforts to hold **The Kaul Cases** Defendants liable for their crimes/violations/injuries.

**133.** I admit that I and the defendants agreed that if the opinion/order/injunction were drafted in as defamatory a manner as possible, it would, if Plaintiff Kaul did not appeal and filed new cases, cause other judges to dismiss these cases.

**134.** I admit that despite knowing the truth of the factual foundation of K11-7, I did dismiss the case with prejudice and enter a nationwide injunction on September 12, 2022

**135.** I admit I know that the dismissal and nationwide injunction were the product of an illegal bribery related quid pro quo scheme.

**136.** I admit that on September 14, 2022, Plaintiff Kaul submitted a notice to the S.D.N.Y. that was addressed to me and in which he requested a list of my financial holdings, my Forms AO10 and the substance of all ex parte communications with the K11-7 Defendants.

**137.** I admit that since September 14, 2022 I have failed to disclose to the court, to the docket or to Plaintiff Kaul any of my financial holdings, ex parte communications and or any form of bribe, be it tangible/intangible, that was received through any means by me, or any party related to me in the third-degree.

**138.** I admit that my issuance on September 12, 2022 of a knowingly fraudulent document, that of the injunction, did become illegally incorporated into the fabric of American jurisprudence and the court records of the United States District Court.

Case 1:21-cv-06992-JRO Document 196 24 Filed 06/12/25 Page 147 of 28

**139.** I admit that the incorporation of a knowingly fraudulent document issued by a judicial officer, into the court records of the United States District Court constitutes a <u>treasonous</u> crime against the United States.

## The Motion For Disqualification + K11-14 – October 6, 2022 To August 23, 2023

**140.** I admit that on October 6, 2022, Plaintiff Kaul filed a motion for my disqualification.

**141.** I admit that the motion was based partly on my commission of the crimes of bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption.

**142.** I admit that the motion was based partly on my collusion and conspiracy in corruptly using the authority of the United States District Court to attempt to conceal **The Kaul Cases** Defendants crimes of mail fraud/wire fraud/bribery/obstruction of justice/kickbacks/perjury/evidential falsification/witness tampering/kidnapping/false indictment/false arrest/false imprisonment/attempted killing.

**143.** I admit that my failure to timely address Plaintiff Kaul's October 6, 2022 motion for disqualification and deny the within facts did cause the admission of those facts.

**144.** I admit that the motion was based in part on my failure to analyze/refute/contest any of Plaintiff Kaul's one hundred and seventy-three (173) arguments/sub-arguments submitted in K11-7.

**145.** I admit that the motion was based in part on my knowingly fraudulent reliance on law, the invalidity of which was shown by Plaintiff Kaul to definitively not support the entry of an injunction.

**146.** I admit that the motion was based on my bribery related derogation of the relevant law and my threat to hold Plaintiff Kaul in contempt if he violated my knowingly illegal order/injunction.

**147.** I admit I knew/know that the order/injunction had no basis in fact or law, but was simply the product of judicial corruption, for which I threatened to hold Plaintiff Kaul in contempt if he violated.

**148.** I admit that my use of the US wires to enter this knowingly fraudulent order/injunction onto the federal docket constitutes the offense of wire fraud.

**149.** I admit that within the motion for disqualification and at D.E. 171 Page 12 of 39, Plaintiff Kaul did state: **"Democracy and the peaceful order of society cease to exist when the judiciary is morally bent, perverted from fact and willfully blind to the law. When partiality, personal bias and conflicts of interest pollute the administration of justice, the public loses confidence in the system of justice, and lawlessness displaces lawfulness."**

**150.** I admit I know of the December 4, 2024 killing of the CEO of the healthcare insurance company, United Health Care by Luigi Mangeone.

**151.** I admit that it was an unlawful act, but one born out of the lethal lawlessness of the corporate health insurance industry and the failure of the government to hold it accountable.

**152.** I admit that the killing sparked a nationwide public outrage and calls to hold the insurance industry legally accountable.

**153.** I admit that I know the reason for the killing of the CEO pertained to his directives to his corporation to deny life-saving care to premium paying patients.

**154.** I admit that I was a corporate lawyer, and worked for corporations with investments in highly profitable healthcare insurance corporations.

**155.** I admit that I know K11-7 Defendants Allstate Insurance Company and Geico profit from the sale of auto accident-related healthcare insurance policies.

**156.** I admit I know that these policies are purposed to pay for the provision of care to patients injured in car accidents.

**157.** I admit I know that in K11-7 and throughout **The Kaul Cases** Plaintiff Kaul has claimed that Defendants Allstate/Geico/Blue Cross Blue Shield (K11-22) conduct the same care denying **"pattern of racketeering"** as does United Healthcare.

**158.** I admit that the claims regarding denial of care are located at - D.E. 14 Para. 106 Page 27 of 432 – D.E. 14 Para. 132 Page 34 of 432.

**159.** I admit I know that in the K11-7 Complaint (D.E. 14 Para. 106 Page 27 of 432) Plaintiff Kaul states with regards to Defendants Allstate/Geico: " ... whose shared economic mission is the **maximization of corporate profit and share price, through the exploitation of the American public (denial of care) and medical profession (license suspension/revocation/incarceration) ..."**

**160.** I admit that despite knowing these facts of patient care denial, I dismissed Plaintiff Kaul's claims Defendants Allstate Insurance Company and Geico because I had willingly and knowingly accepted bribes.

**161.** I admit that my bribe related dismissal of K11-7 did aid and abet the perpetuation of the insurance industry's 'deny ... delay ... defend' scheme of the denial of life-saving care to the American public.

162. I admit that as a lawyer and federal judge I understand RICO's vicarious liability doctrine, wherein the liability of the crimes/offenses/violations/injuries caused by any of the conspiracy's perpetrators and or co-conspirators becomes the liability of all perpetrators/co-conspirators.

163. I admit that I am as responsible as Defendants Allstate/Geico for the immense harm caused to those members of the American public whose life-saving and life-altering care was denied by these for-profit corporations.

164. I admit that I eventually adjudicated the motion for disqualification on August 14, 2023.

165. I admit that I denied the motion for disqualification in an unsubstantiated order that failed to address/contest/refute/analyze the cited and controlling law.

166. I admit that I denied the motion for disqualification in an unsubstantiated order in which I failed to deny any of the facts of amongst other things, bribery/public corruption/wire fraud/conspiracy.

167. I admit that I denied the motion for disqualification in an unsubstantiated order, in which I failed to deny the fact that I engaged in a bribery related quid pro quo scheme with the K11-7 Defendants, in which in return for the bribes I dismissed K11-7 with prejudice and entered a nationwide injunction against Plaintiff Kaul.

168. I admit that the reason for the delay in denying the disqualification motion pertained to the fact that the district judge in K11-14 believed my nationwide injunction was indeed the product of bribery, because I had failed to deny the facts asserted in Plaintiff Kaul's September 14, 2022 notice (D.E. 170) and the October 6, 2022 motion for disqualification (D.E. 171).

169. I admit that the district judge in K11-14 indicated that if I did not deny the motion for disqualification, she would not dismiss K11-14 based on my September 12, 2022 purported injunction.

170. I admit that the district judge in K11-14 indicated that if she dismissed K11-14 on an injunction that was the product of crime, she would become liable for the crime.

171. I admit that the district judge in K11-14 indicated that the motion for disqualification had to be denied before she would issue her denial of K11-14 based on the K11-7 September 12, 2022 purported injunction.

172. I admit that the K11-7 Defendants who were now the K11-14 Defendants employed threats and persuasion to have me deny the motion for disqualification, in order that the district judge in K11-14 would dismiss the case.

173. I admit that I recognized that if I did not comply with the demands of the K11-14 district judge and the K11-7/K11-14 Defendants, my criminal acts of, amongst other things,

bribery/public corruption and wire fraud would be exposed and subject me to impeachment and criminal prosecution.

**174.** I admit that as a consequence of these demands and threats, I did, on August 14, 2023 deny the motion for disqualification without denying any of the within facts of, amongst other things, bribery/public corruption/wire fraud.

**175.** I admit I knew my actions did constitute the commission of crime, in that I aided and abetted the Defendants conversion of the S.D.N.Y. into a **"racketeering enterprise"** through which they and I perpetrated a knowingly illegal **"pattern of racketeering"** a purpose of which was to attempt to prevent the exposure of my crimes in other district courts over which I had no control.

**176.** I admit I know that after having agreed to the demands and threats of the K11-7/K11-14 Defendants and the K11-14 district judge, K11-14 was dismissed with prejudice on August 23, 2023 based on the K11-7 September 12, 2022 injunction.

**177.** I admit that I experienced a sense of relief at having had another district court appear to legitimize my September 12, 2022 injunction.

**178.** I admit that even though I experienced a sense of relief at a public display of such apparent legitimization, I knew the district judge in K11-14 recognized the injunction was a product of a quid pro quo scheme of bribery.

**179.** I admit I believed that the dismissal of K11-14 would convince Plaintiff Kaul to cease his campaign of litigation.

**180.** I admit the incorrectness of my belief is a direct reflection of Plaintiff Kaul's recognition of the seriousness of my crimes.

**181.** I admit I know that Plaintiff Kaul's recognition of the seriousness of my crimes is based on his knowledge of my recognition of the seriousness of my crimes.

## K11-10 And The Knowingly Illegal Issuance Of Threats To Hold Plaintiff Kaul In Contempt If He Failed To Dismiss K11-17 And K11-20 – March 9, 2023 To October 2, 2024

**182.** I admit I know that Plaintiff Kaul did not appeal the September 12, 2022 order/injunction.

**183.** I admit I know that on September 14, 2022, at D.E. 170, Plaintiff Kaul filed a notice with the Clerk of the Court for the S.D.N.Y. that requested I produce and publish to the court docket my financial holdings and the contents of all ex parte communications with the K11-17 Defendants.

**184.** I admit that since September 14, 2022 I have failed to disclose to the court, to the docket or to Plaintiff Kaul any of my financial holdings, ex parte communications and or any form of bribe, be it tangible/intangible, that was received through any means by me, or any party related to me in the third-degree.

**185.** I admit that I have failed and continue to fail to disclose the requested information because I am guilty of having participated in a bribery related quid pro quo scheme with the K11-7 Defendants.

**186.** I admit I know that on March 9, 2023, Plaintiff Kaul filed K11-10 in the S.D.N.Y.

**187.** I admit I came to know the case had been randomly assigned to another district judge, who had been recently appointed to the federal bench.

**188.** I admit I know that the staff in the court's filing office came to know in or around late September-October 2022 of the bribery related quid pro quo scheme in which I had engaged.

**189.** I admit I know that as a consequence of the staff coming to know of the scheme, they did not inform me of the filing of K11-10.

**190.** I admit that sometime after the filing of K11-10 the K11-10 Defendants engaged in ex parte communications with me during which they informed me that Plaintiff Kaul had filed K11-10.

**191.** I admit that upon becoming aware of K11-10, I ensured the district judge became aware of the order/injunction I had entered in K11-7 on September 12, 2022.

**192.** I admit I know that as a consequence of my knowingly illegal September 12, 2022 order/injunction, the district judge in K11-10 did on May 10, 2023 dismiss K11-10 with prejudice.

193. I admit I know that on November 20, 2023, Plaintiff Kaul filed K11-17 in the U.S.D.C. for the E.D.N.C.

194. I admit that in late November 2023 the K11-17 Defendants engaged in ex parte communications with me during which they informed me that Plaintiff Kaul had filed K11-17.

195. I admit that in becoming aware of K11-17, I came to know that Plaintiff Kaul had informed the district judge of the injunction by submitting a copy within Exhibit 14 and referencing the injunction within the Complaint.

196. I admit that in coming to know that the district judge had admitted the case with full knowledge of the injunction, I decided to take no action.

197. I admit that an element of me deciding to take no action pertained to the fact that no discovery order had been entered.

198. I admit that the lack of a discovery order would prevent Plaintiff Kaul from serving discovery upon me and exposing my corrupt actions surrounding the issuance of the September 12, 2022 injunction.

199. I admit that in a period from November 20, 2023, the K11-17 Defendants sent me an ex parte letter requesting I issue an order compelling Plaintiff Kaul to dismiss K11-17.

200. I admit this letter was not published to the docket of the S.D.N.Y.

201. I admit no other judge nor court employee in the S.D.N.Y. was made aware of this letter.

202. I admit the reason this letter was kept concealed from other judges and staff was to prevent any investigation into the corrupt circumstances surrounding my bribery related issuance of the injunction.

203. I admit I took no action on the letter as no discovery order had been entered in K11-17.

204. I admit I know that on March 13, 2023, a discovery order was entered in K11-17.

205. I admit that on March 13, 2023 the K11-17 Defendants informed me of the issuance of the discovery order in K11-17.

206. I admit that the issuance of the discovery order in K11-17 convinced me that Plaintiff Kaul would use the tools of discovery to expose the facts of my bribery related quid pro quo scheme with the K11-7 Defendants.

23

**207.** I admit that the issuance of the discovery order in K11-17 convinced me that Plaintiff Kaul would use the tools of discovery to expose the identities of all persons involved in the bribery related quid pro quo scheme with the K11-7 Defendants.

**208.** I admit that both I and the K11-17 Defendants in recognizing the risk of such exposure, did agree that I should issue an order to Plaintiff Kaul threatening to hold him in contempt if he did not dismiss K11-17.

**209.** I admit that on March 15, 2024 I issued an order to Plaintiff Kaul threatening to hold him in contempt if he did not dismiss K11-17, and had this order published to the docket of the S.D.N.Y.

**210.** I admit I know that the issuance of this order was illegal and was the product of the crime of the bribery related quid pro quo scheme that caused the September 12, 2022 issuance of the injunction.

**211.** I admit that despite knowing the issuance of the March 15, 2024 was illegal, I did nonetheless issue the order in the belief that it would prevent Plaintiff Kaul from using discovery to expose the facts of my crimes and of those associated with the commission of the crimes.

**212.** I admit I know that having had the knowingly illegal order published to the S.D.N.Y. docket, it was downloaded by the K11-27 Defendants.

**213.** I admit I know that having downloaded the March 15, 2024 order threatening Plaintiff Kaul with contempt if he did not dismiss K11-17, the K11-17 Defendants did on March 18, 2024 publish the order to the docket of the E.D.N.C. (D.E. 72).

**214.** I admit that the order required Plaintiff Kaul to dismiss K11-17 by March 29, 2024 or be held in contempt.

**215.** I admit I know the March 18, 2024 filing of the order on the docket of the E.D.N.C. was immediately brought to the attention of the district judge.

**216.** I admit I believed that Plaintiff Kaul would dismiss K11-17, having experienced the dismissal of K11-14 based on the K11-7 injunction.

**217.** I admit I was wrong.

**218.** I admit that on March 25, 2024, Plaintiff Kaul filed suit (K11-18) against me in the E.D.N.C.

**219.** I admit I know the case was ultimately assigned to the Chief Judge who was already adjudicating K11-17.

**220.** I admit I did not deny any of the allegations/facts in K11-18.

**221.** I admit I know that my non-denial of the facts did, pursuant to Rule 8(b)(6) cause them to become admitted for all purposes.

**222.** I admit I know that K11-18 was dismissed with prejudice on April 8, 2024.

**223.** I admit I know that Plaintiff Kaul filed a NOTICE OF APPEAL on May 9, 2024 in the U.S.C.A. for the Fourth Circuit.

**224.** I admit I know the U.S.C.A., for the Fourth Circuit issued an 'INFOERMAL BRIEFING ORDER' on May 9, 2024.

**225.** I admit I know that on May 15, 2024, Plaintiff Kaul filed a 'PETITIONER REQUEST PURSUANT TO FEDERAL RULE OF EVIDENCE 201, FOR THE COURT TO TAKE JUDICIAL NOTICE OF FACTS ADMITTED IN PROCEEDINGS WITH A DIRECT CONNECTION TO THE ISSUES ON APPEAL'.

**226.** I admit I know that the basis for the admitted facts pertained to, amongst other things Rule "8(b)(6) of the F.R.C.P." (U.S.C.A.4 Appeal: 24-1417 Doc:4-1)

**227.** I admit I know that the facts deemed to be admitted by the U.S.C.A. for the Fourth Circuit were all the facts from all of **The Kaul Cases** in which none of the Defendants had denied any of the facts.

**228.** I admit I know that the facts deemed to be admitted by the U.S.C.A. for the Fourth Circuit were all the facts from all of **The Kaul Cases** in which the non-denial of all of the facts did, pursuant to Rule 8(b)(6) cause the facts to become admitted for all purposes.

**229.** I admit I know that Plaintiff Kaul's May 15, 2024 submission included a copy of every Complaint from all of **The Kaul Cases**, and that the submission was three hundred and three (303) pages.

**230.** I admit I did not file any objection to Plaintiff Kaul's May 15, 2024 submission as to admitted facts pursuant to Rule 8(b)(6).

**231.** I admit the law deems my non-objection as an admission of the procedural/substantive substance of the May 15, 2024 submission.

**232.** I admit I know that on May 29, 2024, Plaintiff Kaul filed his 'INFORMAL OPENING BRIEF' (U.S.C.A.4 Appeal: 24-1417 Doc:9-1).

**233.** I admit I know that within the 'INFORMAL OPENING BRIEF' Plaintiff Kaul raised facts related to my perpetration of a bribery related quid pro quo scheme in K11-7.

**234.** I admit I have read the 'INFORMAL OPENING BRIEF'

**235.** I admit that one of the statements, of which my non-denial did cause admittance, is: "Respondent [Defendant Oetken] continued to fail to provide any evidence/fact that he had not participated in a quid pro quo bribery scheme with Defendants, and in fact did not even submit or have submitted a statement/affidavit that he had not used his bench in the S.D.N.Y. to perpetrate a bribery based "pattern of racketeering" in K11-7 or any other cases in which he had been involved."

**236.** I admit the truth of this statement.

**237.** I admit I filed no response to Plaintiff Kaul's 'INFORMAL OPENING BRIEF' because the truth of the facts within K11-18 had been proven and admitted consequent to my non-denial of the facts, the non-denial of which did, pursuant to Rule 8(b)(6) cause them to become admitted for all purposes.

**238.** I admit I did not deny the facts in K11-18, as I have not denied them in K11-23 because I am guilty of the charges levied in both cases.

**239.** I admit I had every opportunity to deny the facts in K11-18, but did not.

**240.** I admit I knew/know that in willfully failing to deny the facts in K11-18, I did admit the facts for all purposes.

**241.** I admit I know that in K11-17 on June 14, 2024, the district judge who dismissed K11-18 did, after having entered an order of discovery on March 13, 2024 in full knowledge of my September 12, 2022 injunction in K11-7, did dismiss K11-17 based on the injunction.

**242.** I admit that the district judge in K11-17 was harassed and intimidated into dismissing a case in which he, in his independent judicial authority/judgment had admitted on November 20, 2023 and entered an order of discovery on March 13, 2024 in full knowledge of the injunction.

**243.** I admit that when the K11-17 Defendants informed me of the March 13, 2024 discovery order in K11-17, I recognized the immense risk of Plaintiff Kaul exposing my crimes not just in K11-7, but those I have committed since my appointment to the federal bench in 2011.

**244.** I admit that if discovery proceeded in K11-17, Plaintiff Kaul would expose my long-standing bribery related criminal activities.

**245.** I admit I know that such an exposure would cause my removal from the federal bench and subject me to criminal proceedings.

**246.** I admit I know that in having K11-14 and K11-17 dismissed I did continue to perpetuate an almost twenty (20) year-long conspiracy against Plaintiff Kaul and a twelve (12) year-long injury to his life/liberty/property/reputation and violation of his human/civil/constitutional rights.

**247.** I admit I knew/know that my perpetuation of this conspiracy and rights violations were purposed to cause the elimination of Plaintiff Kaul.

**248.** I admit that my intention in seeking to cause the elimination of Plaintiff Kaul pertained to my fear that his continued prosecution of **The Kaul Cases** would expose my crimes and those of **The Kaul Cases** Defendants.

**249.** I admit that as Plaintiff Kaul proceeded to file K11-14 and K11-17, **The Kaul Cases** Defendants became increasingly agitated and aggressive in their threats to expose me if I did not follow their orders and have Plaintiff Kaul held in contempt and jailed.

**250.** I admit that with these threats I became fearful for my career and life.

**251.** I admit that on or about August 26, 2024 I became aware that Plaintiff Kaul had filed K11-20 in the United States District Court for the Southern District of Texas.

**252.** I admit I know that on August 30, 2024, the Court entered an 'ORDER FOR CONFERENCE AND DISCLOSURE OF INTERESTED PARTIES' (D.E. 4).

**253.** I admit that on September 16, 2024 the K11-20 Defendant Federation State Medical Boards sent me a letter requesting I order Plaintiff Kaul to dismiss K11-20 under threat of contempt of court (K11-7: D.E. 174).

**254.** I admit that in K11-7 on September 13, 2022 the Clerk of the Court closed the case.

**255.** I admit that no order was ever issued by the Clerk of the Court that re-opened the case.

**256.** I admit that in the absence of any order from the Clerk of the Court re-opening the case, the case has remained closed since September 13, 2022.

**257.** I admit that the continued closure of the case since September 13, 2022 does render all filings in the closed case null and void for all intents and purposes.

**258.** I admit that in recognizing the fact that the case was closed and in not wanting to again expose myself to a lawsuit as Plaintiff Kaul had filed on March 25, 2024 in K11-17 and which was now before the U.S.C.A. for the Fourth Circuit, I hesitated in a manner I had not in K11-17 in deciding to threaten Plaintiff Kaul with contempt if he did not dismiss K11-20.

**259.** I admit that my degree of hesitation and fear had become compounded by the risk of having my crimes exposed by the co-conspirator K11-7/K11-20 Defendants and or the U.S.C.A. for the Fourth Circuit.

**260.** I admit I found myself 'backed into a corner' in which I had no option but to obey the order of the K11-20 Defendants to issue an order threatening Plaintiff Kaul with contempt if he did not dismiss K11-20.

**261.** I admit that if Plaintiff Kaul pursued discovery in K11-20, he would fully expose my crimes and those of persons who aided and abetted the crimes.

**262.** I admit that on October 2, 2024 under immense duress I issued an order that threatened Plaintiff Kaul with contempt if he did not dismiss K11-20 by October 16, 2024.

**263.** I admit I was convinced Plaintiff Kaul would dismiss K11-20, and that my crimes and those of my co-conspirators would be concealed.

**264.** I admit that on October 9, 2024, Plaintiff Kaul filed K11-23, in which I was and am charged of, amongst other things, the crimes of bribery/public corruption and the conversion of my court at the S.D.N.Y. into a **"racketeering enterprise"**.

**265.** I admit I know that on October 9, 2024, in K11-20, the Court issued a 'SCHEDULING ORDER'

**266.** I admit that I was served with a copy of K11-23 on October 16, 2024 at approximately 9:30 am EST in my courtroom at the S.D.N.Y. by a security officer employed by the United States District Court.

DATED: JANUARY 6, 2025

_____
RICHARD ARJUN KAUL, MD

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that a copy of the **FIRST SUBMISSION OF ADMISSIONS OF MATERIAL AND UNDISPUTED FACT PURSUANT TO RULE 8(b)(6) AS TO DEFENDANT JAMES PAUL OETKEN** was emailed to Defendants' counsel on January 6, 2025.

DATED: JANUARY 6, 2025

_____
RICHARD ARJUN KAUL, MD

# Exhibit 3

Case 1:21-cv-06992-JPO    Document 196    Filed 06/12/25    Page 160 of 244
Fact Sheet: President Donald J. Trump Ensures the Enforcement of Federal Rule of Civil Procedure 65(c) – ]

5/10/25, 2:40 PM

*The* WHITE HOUSE

**FACT SHEETS**

Fact Sheet: President Donald J. Trump Ensures the Enforcement of Federal Rule of Civil Procedure 65(c)

The White House

March 6, 2025

**ENSURING ACCOUNTABILITY IN FEDERAL COURTS:** Today, President Donald J. Trump signed a memorandum directing federal agencies to enforce a rule mandating financial guarantees from parties requesting injunctions. This ensures coverage of potential costs or losses if the court later deems an injunction wrongly issued.

- The memorandum instructs agency heads, in consultation with the Attorney General, to request under Federal Rule of Civil Procedure 65(c) that federal courts require plaintiffs post security equal to the federal government's potential costs and damages from a wrongly issued preliminary injunction or temporary restraining order.
  - Security refers to a financial guarantee compensating the government for losses if an injunction is later found unjustified.

- This applies to all lawsuits seeking preliminary injunctions or temporary restraining orders where the government can demonstrate monetary harm from the requested relief.

- Agencies must justify security amounts based on reasoned assessments of harm, ensuring courts deny or dissolve injunctions if plaintiffs fail to pay up, absent good cause.

**STOPPING JUDICIAL OVERREACH AND FRIVOLOUS LAWSUITS:** By issuing this memorandum, President Trump is ensuring the democratic process remains intact by

Case 1:21-cv-06992-JPO    Document 196    Filed 06/12/25    Page 161 of 244

Fact Sheet: President Donald J. Trump Ensures the Enforcement of Federal Rule of Civil Procedure 65(c) – ]    5/10/25, 2:40 PM

curbing activist judges and holding litigants accountable.

- Unelected district judges have issued sweeping injunctions beyond their authority, inserting themselves into executive policymaking and stalling policies voters supported.

- Activist groups file meritless suits for fundraising and political gain, facing no consequences when they lose, while taxpayers bear the costs and delays.

- The Justice Department is forced to divert resources from public safety to fight these frivolous cases, weakening effective governance.

- Enforcing Rule 65(c) deters such litigation by holding plaintiffs accountable for costs and damages if their injunctions are baseless, protecting taxpayer funds and judicial integrity.

**STRENGTHENING AMERICA'S JUDICIAL SYSTEM:** President Trump is committed to protecting our democracy, challenging judicial overreach, and ensuring the rule of law is upheld.

- Injunctions can cost taxpayers millions or even billions of dollars, especially when they mandate continued funding.

- President Trump appointed high-performing "superstar" judges according to a respected study.  Trump's judges occupied 9 of the top 11 spots for productivity, and 9 of the top 10 spots for influence.

- President Trump's judges are also rated the least partisan.

- Multiple Supreme Court justices have recently warned that "single district-court judges" acting outside their judicial power are "abusing" the power entrusted to them.

NEWS

# Exhibit 2

**SOPHIE CAHEN**
**Re: Index 1:18-cv-07515-jpo**

**Hon J. Paul Oetken**
United States Courthouse
#706
40 Foley Square
New York, NY 10007



April 25, 2020

Re:    **Extension Request To File Amended Complaint**

Your Honor,

On March 5, 2020, I requested that the Court grant me additional time through April 26, 2020 (see attached). I am attaching the letter I wrote to you which contains new information that I previously did not have as well as new findings.

As you know the coronavirus situation has caused courts and business closings, and I have not being able to get the documents I needed to put together my amended complaint.

Therefore, I am hereby requesting additional time to complete my amended Complaint through June 28, 2020 to be able to complete it.

I will reiterate once again that their motion to dismiss was based on lies perpetrated by jpmc, not only at the filing onset of their motion to dismiss but also thereafter in their pleadings, and have deliberately lied to this Court including at the hearing before Your Honor in September 2018.

I am therefore asking you to reconsider and for the case not to be dismissed, and to be granted additional time to amend the Complaint till June 28, 2020

Thank you.

Respectfully,

Sophie Cahen
Pro-Se

## SOPHIE CAHEN
### Re: Index 1:18-cv-07515-jpo

**Hon J. Paul Oetken**
United States Courthouse
#706
40 Foley Square
New York, NY 10007

RECEIVED
SDNY PRO SE OFFICE
2020 MAR 10  PM 12: 30

March 05, 2020

**Re:     Extension Request To File Amended Complaint**

Your Honor,

I am hereby requesting additional time to complete my amended Complaint as it requires many exhibits to be attached to it. I am still waiting to receive additional documents which are essential to my amended complaint. Therefore, I request an extension through April 26, 2020 to be able to complete it.

It is also my understanding that the Judge has to give as much leeway as possible to a pro se defendant. When a party appear pro se before the court, the court may grant the pro se litigant leeway on procedural matters, including pleading requirements.". The Supreme Court has recognized this less demanding standard because "an unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims.". Pro se pleadings are to be considered without regard to technicality; pro se litigants' pleadings are not to be held to the same high standards of perfection as lawyers.". In addition, Pro se pleadings are to be liberally construed. See Martin v. Overton, 391 F.3d 710, 712 (6th Cir. 2004), citing Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); Herron v. Harrison, 203 F.3d 410, 414 (6th Cir. 2000) (pro se pleadings are held to "an especially liberal standard"); Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice").

Again, I am not a lawyer, I have limited knowledge of the Court, and I had almost no time to put the papers together the first time around, mostly because of my health and the gathering of the documents I needed. I am respectfully requesting that you consider my Amended Affirmation to oppose the discontinuance of this case. I am still expecting some documents and the situation with the coronavirus has caused delays in their obtention.

So on March 4th , 2020,  you again denied my request for more time, and you dismissed the case based on my failure to oppose the dismissal motion from the Defendant. As I have said they lied to you since the onset and my claims are in no way time barred nor barred by the Rooker Feldman doctrine which also do not applies as Defendant have violated such. How would you know they are "time barred" or "barred by the Rooker Feldman" doctrine when you have solely relied on the lies and deceit and false allegations from the Defendant and not heard my arguments? I might be pro-se but I know for a fact you have been deceived by the defendants. One of them deliberately lied to your face, and have continued to do so. I have evidence but I need the time to be extended till April 26, 2020 to do so. To refuse to grant me more time is judicial misconduct which violates my rights and access to justice as a pro-se litigant.

*Page 1 of 8*

The fundamental tenet that the rules of procedure should work to do substantial justice, . . . commands that judges painstakingly strive to ensure that no person's cause or defense is defeated solely by reason of their unfamiliarity with procedural or evidentiary rules. . . . . . and to that end, justice is served by reasonably accommodating all parties, whether represented by counsel or not. This "reasonable accommodation" is purposed upon protecting the meaningful exercise of a **litigant's constitutional right** of access to the courts. *Blair v. Maynard, 324 S.E.2d 391 (West Virginia 1984).*

Similarly, a justice of the Arizona Supreme Court argued, albeit in dissent: The courts do not treat a litigant fairly when they insist that the litigant — unaided and unable to obtain the services of a lawyer — negotiate a thicket of legal formalities at peril of losing his or her right to be heard. Such a practice manifestly excludes access to justice. * * * Meaningful access requires some tolerance by courts toward litigants unrepresented by counsel. This may require some degree of extra care and effort on the part of trial judges who already labor long and hard at a mushrooming caseload. But the alternative slams the courthouse door in the face of those who may be in greatest need of judicial relief, all for the sake of ease of administration.

**If a judge continues to commit a legal error after the mistake has been drawn to the judge's attention, the judge commits judicial misconduct as well as legal error.**

You know how shady is JPMC, because you have presided over JPMC cases, when sued by the DOJ:

- " (In 2014)...*To resolve the United States' claims, **JPMORGAN CHASE has agreed to pay $614 million to the United States under the False Claims Act.** In addition, JPMORGAN CHASE has agreed to implement an enhanced quality control program to address the **misconduct** concerning the integrity of loan data submitted to HUD-FHA. The settlement was approved by United States District Judge J. Paul Oetken. Manhattan U.S. Attorney Preet Bharara stated: "For years, JPMorgan Chase has enjoyed the privilege of participating in federally-subsidized programs aimed at helping millions of Americans realize the dream of homeownership. Yet, for more than a decade, it abused that privilege. **JPMorgan Chase put profits ahead of responsibility by recklessly churning out thousands of defective mortgage loans**, failing to inform the Government of known problems with those loans, and leaving the Government to cover the losses when the loans defaulted. With today's settlement, however, JPMorgan Chase has accepted responsibility for its misconduct and has committed to reform its business practices. This settlement adds to the list of successful **mortgage fraud cases** this Office has pursued."*

- *On December 4, 2015, the Honorable J. Paul Oetken granted final approval of a **$388 million** settlement on behalf of J.P. Morgan residential mortgage-backed securities ("RMBS") investors. The settlement represents, on a percentage basis, the largest recovery ever achieved in a class action brought on behalf of purchasers of RMBS. It stands as a significant recovery for investors who lost money as a result of investments in RMBS, and was achieved by lead plaintiffs and class representatives Laborers Pension Trust Fund for Northern California and Construction Laborers Pension Trust for Southern California. "We're pleased with the record-setting recovery for our participants and the class," said Ed Smith, Fund Manager for Northern California Laborers. "Our lawyers at Robbins Geller were tireless in their efforts, and the result is a significant victory for the class. The case dates back to 2009, when a class action complaint was filed against J.P. Morgan affiliates for packaging faulty residential mortgage loans and selling the RMBS to unsuspecting investors. The complaint alleged that offering documents relating to RMBS issued by J.P. Morgan misrepresented and omitted critical information about the true credit quality of the underlying loan collateral. Specifically, plaintiffs alleged that the offering documents contained misrepresentations and omitted material facts concerning (i) adherence to underwriting standards governing the loans supporting the RMBS; (ii) the process used to value the properties that secured the loans supporting the RMBS; and (iii) the true loan-to-value and debt-to-income ratios of the loans securing the RMBS. The falsity of defendants' statements was not revealed until the underlying mortgage assets defaulted at an unprecedented rate and investors suffered massive losses as a result."*

- JPMorgan helped rescue the beleaguered Bear Stearns during the financial crisis after the Federal Reserve consented to take charge of a $30 billion portfolio that contained mortgage-linked Bear Stearns assets. In 2012, NY Attorney General Eric Schneiderman filed a securities lawsuit against JPMorgan accusing Bear Stearns businesses of fooling investors about the faulty loans backing securities, resulting in significant losses. *Last year, JPMorgan settled the case for $13 billion,* which resolved claims on a federal and state level. $713 million went to New York. In September 2015, in another class action securities case, a federal judge said that JPMorgan would have to face the complaint by investors accusing the bank of misleading them about the safety of $10 billion of mortgage-backed securities that it sold prior to the economic crisis. U.S. District Judge Paul **Oetken** in Manhattan certified a class action regarding the firm's liability but not regarding damages"

- How America's Biggest Bank Paid Its Fine for the 2008 Mortgage Crisis—With Phony Mortgages! Alleged fraud put JPMorgan Chase hundreds of millions of dollars ahead, but ordinary homeowners, not so much... After JPMorgan's deceitful activities in the housing market helped trigger the 2008 financial crash that cost millions of Americans their jobs, homes, and life savings, punishment was in order. **Among a vast array of misconduct, JPMorgan engaged in the routine use of "robo-signing," which allowed bank employees to automatically sign hundreds, even thousands, of foreclosure documents per day without verifying their contents.** But in the United States, white-collar criminals rarely go to prison; instead, they negotiate settlements. Thus, on February 9, 2012, US Attorney General Eric Holder announced the National Mortgage Settlement, which fined JPMorgan Chase and four other mega-banks a total of $25 billion. JPMorgan's share of the settlement was $5.3 billion, but only $1.1 billion had to be paid in cash; the other $4.2 billion was to come in the form of financial relief for homeowners in danger of losing their homes to foreclosure. The settlement called for JPMorgan to reduce the amounts owed, modify the loan terms, and take other steps to help distressed Americans keep their homes. A separate 2013 settlement against the bank for deceiving mortgage investors included another $4 billion in consumer relief. An investigation now reveal how JPMorgan met part of its $8.2 billion settlement burden: by using other people's money. **Here's how the alleged scam worked. JPMorgan moved to forgive the mortgages of tens of thousands of homeowners; the feds, in turn, credited these canceled loans against the penalties due under the 2012 and 2013 settlements. But here's the rub: In many instances, JPMorgan was forgiving loans it no longer owned.** The alleged fraud is described in internal JPMorgan documents, public records, testimony from homeowners and investors burned in the scam, and other evidence presented in a blockbuster lawsuit against JPMorgan, being heard in US District Court in New York City. JPMorgan no longer owned the loans because it had sold the mortgages years earlier to 21 third-party investors, including three companies owned by Larry Schneider. Those companies are the plaintiffs in the lawsuit; Schneider is also aiding the federal government in a related case against the bank. In a bizarre twist, a company associated with the Church of Scientology facilitated the apparent scheme. Nationwide Title Clearing, a document-processing company with close ties to the church, produced and filed the documents that JPMorgan needed to claim ownership and cancel the loans. **JPMorgan, it appears, was running an elaborate shell game. In the depths of the financial collapse, the bank had unloaded tens of thousands of toxic loans when they were worth next to nothing. Then, when it needed to provide customer relief under the settlements, the bank had paperwork created asserting that it still owned the loans. In the process, homeowners were exploited, investors were defrauded, and communities were left to battle the blight caused by abandoned properties. JPMorgan, however, came out hundreds of millions of dollars ahead, thanks to using other people's money.** In an unusual departure from most allegations of financial bad behavior, there is strong evidence that Jamie Dimon, JPMorgan's CEO and chairman, knew about and helped to implement the mass loan-forgiveness project. In two separate meetings in 2013 and 2014, JPMorgan employees working on the project were specifically instructed not to release mortgages in Detroit under orders from Dimon himself, according to internal bank communications. In an apparent public-relations ploy, JPMorgan was about to invest $100

million in Detroit's revival. Dimon's order to delay forgiving the mortgages in Detroit appears to have been motivated by a fear of reputational risk. An internal JPMorgan report warned that hard-hit cities might take issue with bulk loan forgiveness, which would deprive municipal governments of property taxes on abandoned properties while further destabilizing the housing market. Did Dimon also know that JPMorgan, as part of its mass loan-forgiveness project, was forgiving loans it no longer owned? No internal bank documents confirming that knowledge have yet surfaced, but Dimon routinely takes legal responsibility for knowing about his bank's actions. Like every financial CEO in the country, Dimon is obligated by law to sign a document every year attesting to his knowledge of and responsibility for his bank's operations. The law establishes punishments of $1 million in fines and imprisonment of up to 10 years for knowingly making false certifications. Dimon signed the required document for each of the years that the mass loan-forgiveness project was in operation, from 2012 through 2016. Whether or not he knew that his employees were forgiving loans the bank no longer owned, his signatures on those documents make him potentially legally responsible. Federal appointees have been complicit in this as well. E-mails show that the Office of Mortgage Settlement Oversight, charged by the government with ensuring the banks' compliance with the two federal settlements, gave JPMorgan the green light to mass-forgive its loans. This served two purposes for the bank: It could take settlement credit for forgiving the loans, and it could also hide these loans—which JPMorgan had allegedly been handling improperly—from the settlements' testing regimes. Lauren and Robert Warwick were two of the shell game's many victims. The Warwicks live in Odenton, Maryland, a bedroom community halfway between Baltimore and Washington, DC, and had taken out a second mortgage on their home with JPMorgan's Chase Home Finance division. In 2008, after the housing bubble burst and the Great Recession started, 3.6 million Americans lost their jobs; Lauren Warwick was one of them. Before long, the Warwicks had virtually no income. While Lauren looked for work, Robert was in the early stages of starting a landscaping business. But the going was slow, and the Warwicks fell behind on their mortgage payments. They tried to set up a modified payment plan, to no avail: Chase demanded payment in full and warned that foreclosure loomed. "They were horrible," Lauren Warwick told The Nation. "I had one [Chase representative] say, 'Sell the damn house—that's all you can do.'" Then, one day, the hounding stopped. In October 2009, the Warwicks received a letter from 1st Fidelity Loan Services, welcoming them as new customers. The letter explained that 1st Fidelity had purchased the Warwicks' mortgage from Chase, and that they should henceforth be making an adjusted mortgage payment to this new owner. Lauren Warwick had never heard of 1st Fidelity, but the letter made her more relieved than suspicious. "I'm thinking, 'They're not taking my house, and they're not hounding me,'" she said. Larry Schneider, 49, is the founder and president of 1st Fidelity and two other mortgage companies. He has worked in Florida's real-estate business for 25 years, getting his start in Miami. In 2003, Schneider hit upon a business model: If he bought distressed mortgages at a significant discount, he could afford to offer the borrowers reduced mortgage payments. It was a win-win-win: Borrowers remained in their homes, communities were stabilized, and Schneider still made money. "I was in a position where I could do what banks didn't want to," Schneider says. In fact, his business model resembled what President Franklin Roosevelt did in the 1930s with the Home Owners' Loan Corporation, which prevented nearly 1 million foreclosures while turning a small profit. More to the point, Schneider's model exemplified how the administrations of George W. Bush and Barack Obama could have handled the foreclosure crisis if they'd been more committed to helping Main Street rather than Wall Street. The Warwicks' loan was one of more than 1,000 that Schneider purchased without incident from JPMorgan's Chase Home Finance division starting in 2003. In 2009, the bank offered Schneider a package deal: 3,529 primary mortgages (known as "first liens") on which payments had been delinquent for over 180 days. Most of the properties were located in areas where the crisis hit hardest, such as Baltimore. Selling distressed properties to companies like Schneider's was part of JPMorgan's strategy for limiting its losses after the housing bubble collapsed. **The bank owned hundreds of thousands of mortgages that had little likelihood of being repaid. These mortgages likely carried ongoing costs: paying property taxes, addressing municipal-code violations, even mowing the lawn. Many also had legal defects and improper terms; if federal regulators ever scrutinized these loans, the bank would be in jeopardy. In short, the troubled**

mortgages were the financial equivalent of toxic waste. To deal with them, Chase Home Finance created a financial toxic-waste dump. The mortgages were listed in an internal database called RCV1, where RCV stood for "Recovery." Unbeknownst to Schneider, the package deal that Chase offered him came entirely from this toxic-waste dump. Because he'd had a good relationship with Chase up to that point, Schneider took the deal. On February 25, 2009, he signed an agreement to buy the loans, valued at $156 million, for only $200,000—slightly more than one-tenth of a penny on the dollar. But the agreement turned sour fast, Schneider says. Among a range of irregularities, perhaps the most egregious was that Chase never provided him with all the documentation proving ownership of the loans in question. The data that Schneider did receive lacked critical information, such as borrower names, addresses of the properties, even the payment histories or amounts due. This made it impossible for him to work with the borrowers to modify their terms and help them stay in their homes. Every time Schneider asked Chase about the full documentation, he was told it was coming. It never arrived. Here's the kicker: JPMorgan was still collecting payments on some of these loans and even admitted this fact to Schneider. In December 2009, a Chase Home Finance employee named Launi Solomon sent Schneider a list of at least $47,695.53 in payments on his loans that the borrowers had paid to Chase. But 10 days later, Solomon wrote that these payments would not be transferred to Schneider because of an internal accounting practice that was "not reversible." On another loan sold to Schneider, Chase had taken out insurance against default; when the homeowner did in fact default, Chase pocketed the $250,000 payout rather than forward it to Schneider, according to internal documents. Chase even had a third-party debt collector named Real Time Resolutions solicit Schneider's homeowners, seeking payments on behalf of Chase. In one such letter from 2013, Real Time informed homeowner Maureen Preis, of Newtown Square, Pennsylvania, that "our records indicate Chase continues to hold a lien on the above referenced property," even though Chase explicitly confirmed to Schneider that it had sold him the loan in 2010. JPMorgan jumped in and out of claiming mortgage ownership, Schneider asserts, based on whatever was best for the bank. "If a payment comes in, it's theirs," he says; "if there's a code-enforcement issue, it's mine." The shell game entered a new, more far-reaching phase after JPMorgan agreed to its federal settlements. Now the bank was obligated to provide consumer relief worth $8.2 billion—serious money even for JPMorgan. The solution? Return to the toxic-waste dump. Because JPMorgan had stalled Schneider on turning over the complete paperwork proving ownership, it took the chance that it could still claim credit for forgiving the loans that he now owned. **Plus the settlements required JPMorgan to show the government that it was complying with all federal regulations for mortgages. The RCV1 loans didn't seem to meet those standards, but forgiving them would enable the bank to hide this fact.** The Office of Mortgage Settlement Oversight gave Chase Home Finance explicit permission to implement this strategy. "Your business people can be relieved from pushing forward" on presenting RCV1 loans for review, lawyer Martha Svoboda wrote in an e-mail to Chase, as long as the loans were canceled. Chase dubbed this the "pre DOJ Lien Release Project." (To release a lien means to forgive the loan and relinquish any ownership right to the property in question.) The title page of an internal report on the project lists Lisa Shepherd, vice president of property preservation, and Steve Hemperly, head of mortgage originations, as the executives in charge. The bank hired Nationwide Title Clearing, the company associated with the Church of Scientology, to file the lien releases with county offices. Erika Lance, an employee of Nationwide, is listed as the preparer on 25 of these lien releases seen by The Nation. Ironically, Schneider alleges, the releases were in effect "robo-signed," since the employees failed to verify that JPMorgan Chase owned the loans. **If Schneider is right, it means that JPMorgan relied on the same fraudulent "robo-signing" process that had previously gotten the bank fined by the government to help it evade that penalty. On September 13, 2012, Chase Home Finance mailed 33,456 forgiveness letters informing borrowers of the debt cancellation.** Schneider immediately started hearing from people who said that they wouldn't be making further payments to him because Chase had forgiven the loan. Some even sued Schneider for illegally charging them for mortgages that he (supposedly) didn't own. When Lauren and Robert Warwick got their forgiveness letter from Chase, Lauren almost passed out. "You will owe nothing more on the loan and your debt with be cancelled," the letter stated, calling this

"a result of a recent mortgage servicing settlement reached with the states and federal government." But for the past three years, the Warwicks had been paying 1st Fidelity Loan Servicing—not Chase. Lauren said she called 1st Fidelity, only to be told: "Sorry, no, I don't care what they said to you—you owe us the money." JPMorgan's shell game unraveled because Lauren Warwick's neighbor worked for Michael Busch, the speaker of the Maryland House of Delegates. After reviewing the Warwicks' documents, Kristin Jones, Busch's chief of staff, outlined her suspicions to the Maryland Department of Labor, Licensing and Regulation. "I'm afraid based on the notification of loan transfer that Chase sold [the Warwicks'] loan some years ago," Jones wrote. "I question whether Chase is somehow getting credit for a write-off they never actually have to honor." After Schneider and various borrowers demanded answers, Chase checked a sample of over 500 forgiveness letters. It found that 108 of the 500 loans—more than one out of five—no longer belonged to the bank. Chase told the Warwicks that their forgiveness letter had been sent in error. Eventually, Chase bought back the Warwicks' loan from Schneider, along with 12 others, and honored the promised loan forgiveness. Not everyone was as lucky as the Warwicks. **In letters signed by vice president Patrick Boyle, JPMorgan Chase forgave at least 49,355 mortgages in three separate increments. The bank also forgave additional mortgages, but the exact number is unknown because the bank stopped sending homeowners notification letters. Nor is it known how many of these forgiven mortgages didn't actually belong to JPMorgan;** the bank refused The Nation's request for clarification. Through title searches and the discovery process, Schneider ascertained that the bank forgave 607 loans that belonged to one of his three companies. The lien-release project overall allowed JPMorgan to take hundreds of millions of dollars in settlement credit. Most of the loans that JPMorgan released—and received settlement credit for—were all but worthless. Homeowners had abandoned the homes years earlier, expecting JPMorgan to foreclose, only to have the bank forgive the loan after the fact. That forgiveness transferred responsibility for paying back taxes and making repairs back to the homeowner. It was like a recurring horror story in which "zombie foreclosures" were resurrected from the dead to wreak havoc on people's financial lives. Federal officials knew about the problems and did nothing. In July 2014, the City of Milwaukee wrote to Joseph Smith, the federal oversight monitor, alerting him that "thousands of homeowners" were engulfed in legal nightmares because of the confusion that banks had sown about who really owned their mortgages. In a deposition for the lawsuit against JPMorgan Chase, Smith admitted that he did not recall responding to the City of Milwaukee's letter. If you pay taxes in a municipality where JPMorgan spun its trickery, you helped pick up the tab. The bank's shell game prevented municipalities from knowing who actually owned distressed properties and could be held legally liable for maintaining them and paying property taxes. As a result, abandoned properties deteriorated further, spreading urban blight and impeding economic recovery. "Who's going to pay for the demolition [of abandoned buildings] or [the necessary extra] police presence?" asks Brent Tantillo, Schneider's lawyer. "As a taxpayer, it's you." Such economic fallout may help explain why Jamie Dimon directed that JPMorgan's mass forgiveness of loans exempt Detroit, a city where JPMorgan has a long history. The bank's predecessor, the National Bank of Detroit, has been a fixture in the city for over 80 years; its relationships with General Motors and Ford go back to the 1930s. And JPMorgan employees knew perfectly well that mass loan forgiveness might create difficulties. The 2012 internal report warned that cities might react negatively to the sheer number of forgiven loans, which would lower tax revenues while adding costs. Noting that some of the cities in question were clients of JPMorgan Chase, the report warned that the project posed a risk to the bank's reputation. Reputational risk was the exact opposite of what JPMorgan hoped to achieve in Detroit. So the bank decided to delay the mass forgiveness of loans in Detroit and surrounding Wayne County until after the $100 million investment was announced. Dimon himself ordered the delay, according to the minutes of JPMorgan Chase meetings that cite the bank's chairman and CEO by name. Dimon then went to Detroit to announce the investment on May 21, 2014, reaping positive coverage from The New York Times, USA Today, and other local and national news outlets. Since June 1, 2014, JPMorgan has released 10,229 liens in Wayne County, according to public records; the bank declined to state how many of these were part of the lien-release project. Both of Larry Schneider's lawsuits alleging fraud on JPMorgan Chase's part remain active in federal courts. The Justice

*Department could also still file charges against JPMorgan, Jamie Dimon, or both, because Schneider's case was excluded from the federal settlement agreements. This sorry episode most highlights is the pathetic disciplining of Wall Street during the Obama administration.* ***JPMorgan's litany of acknowledged criminal abuses over the past decade reads*** *like a rap sheet,* ***extending well beyond mortgage fraud to encompass practically every part of the bank's business.*** *But instead of holding JPMorgan's executives responsible for what looks like a criminal racket, Obama's Justice Department negotiated weak settlement after weak settlement. Adding insult to injury, JPMorgan then wriggled out of paying its full penalties by using other people's money. Negotiating weak settlements that don't force mega-banks to even pay their fines, much less put executives in prison, turns the concept of accountability into a mirthless farce. Telegraphing to executives that they will emerge unscathed after committing crimes, only invites further crimes...*

On January 26, 2011, President Barack **Obama** nominated **you** to serve on the United States District Court for the Southern District of New York. You have had a front row seat to JPMC's fraudulent actions and cover up. You very well know that JPMC has done fraud in their underwriting of loans, foreclosed when they didn't have the right to do so, fabricated and falsified documents, robo-signed foreclosure documents, and so on and so forth...

**I am screaming at the top of my lungs that JPMC has lied to you several time since the onset of this case. Yet you have continued to ignore my requests for more time, saying in essence "when you feel better health wise, you can proceed". That is simply outrageous and a travesty of justice**

JPMC does not care because they do something really bad, get caught eventually and pay the fine. But in the meantime, JPMC has made billions... so sure they lose a few millions when they have to pay fines., but they continue their scheming because the consequences don't hurt them enough.

**This is my home of 35 years stolen by JPMC. I have said again and again that JPMC's lawyers have brazenly lied to you, including Auerbach who deceived you. He is no longer with JPMC after I exposed him for misconduct and him saying to me "it is personal" (a barely veiled threat) , but has been made partner in the law firm representing the Coop (since Jan 2019). It is a conflict of interest. This personal vendetta from Auerbach must stop and is reprehensible. I have filed a complaint with the NYC Bar against him (and other JPMC lawyers) for not only that, but other acts of misconduct.**

**To not extend the time for me to answer is violating my rights, and judicial misconduct.**

I have been very sick with supported documents showing such, including a stay in the ICU and this case should not be dismissed because of my ongoing health issues! I am pro-se in this matter and therefore should be given the utmost consideration. A Judge must certainly ensure that Pro-se litigants are fairly heard, and more on an equal footing (having access to databases which is sometime a daunting task for pro-se litigants), and it is the Judge's responsibility to promote access to justice, and not show any indifference to my medical needs or the fact that I am pro-se. It takes extra effort and focus for me to put this document together. My address is 329 west 108th st and not the po box and I have filed several complaints with the OIG.

To say that the Defendant might "suffer a prejudice" by you extending my time to answer is an insult to injury, and discrimination towards a pro-se litigant. The defendant has stolen my home of 35 years. The fraud is ongoing. The issues are not time barred nor barred by the Rooker Feldman as you failed to hear my arguments but even more so because you relied solely on the lies of the defendant, who by the way represents the "bank" and I would like to know the name of the responsible parties at the bank who foreclosed on my house and their role and connection to jlv.

My ex-husband Jean Louis Vorburger "jlv" owes me millions including from a personal injury case for assaulting me on several occasions, and trying to kill me years ago. I was the victim of domestic violence.

I was able to get my NYC apartment at 108th street and my PA house and land. Over the past few years as both my NYC and PA house and adjacent land were in foreclosure, it was done at exactly the same time and on specific dates. It clearly was "orchestrated". I recently learned that my 12 acres of land adjacent to my PA house was "sold" last month to people who are puppets for jlv, and his name even appears as "developer" (See attached). Not only has he not paid me the millions he owes me, but he circled back to take my PA house, Land and NYC apartment.

When you said that the Defendant would suffer prejudice if you gave me more time is outrageous. I met a few years ago with one of jlv's former partner who was running one of the companies acquired by his firm and dealt with back office IT for various banks as well as bank auditing and moving trading floors. I told him that I thought jlv had access to that. jlv certainly did when he illegally got my bank records and caused me to not be able to refinance many years ago. jlv is now circling back and that is in itself abusive and criminal. He wants to develop my house and land in PA and also my NYC apartment for "unrealized gains" when he owes me over $15 millions, unpaid to now. His former partner who successfully sued jlv under "Kevin P. Johnson Vs Constantin Associates & al. / Index# C-124-99 before Judge Margulies in NJ District Court" and won a substantial money judgement against the firm and jlv personally, ultimately was paid. When I told him that jlv had illegal access to banks though his IT, he paused and shockingly said that it was likely and that would be a crime. Jlv has been incarcerated many times in NY and PA for assault, fraud and filing false documents. His lawyer who also owes me millions was incarcerated as well and was disbarred.

I have recently tracked decades long history of wrongdoing and fraud involving real estate, real estate developments, loans, mortgages, and more. Jlv who owes me millions is now with his cronies trying to get back my pa house and land as well as my NYC apartment.

So when you said that the "defendant" would suffer injury if you extended the time for me to answer is wrong, uninformed and prejudicial to me. That is not justice and as a Judge you must afford pro-se litigants more time and consideration. It is discriminatory towards me as a pro-se litigant.

In addition, you should know that I have had threats and have filed a complaint.

Regarding your Order dated November 6, 2019, I still disagree with the dismissal of the other elements of my complaint. Being Pro-se and in addition being hospitalized, I should have been able to oppose their motion to dismiss for which they have lied to the Court on many occasions. I had been quite sick with several hospitalizations including being in the Intensive Care Unit. This life-threatening illness requires several months of convalescence afterwards or which I provided you with a letter from Dr. Garshick and other doctors. I will reiterate once again that jpmc's motion to dismiss was based on intentional lies perpetrated by them not only at the filing onset of their motion to dismiss but also thereafter in their pleadings, and they have deliberately lied to this Court including at the hearing before Your Honor in September 2018.

I am therefore asking you to reconsider and for the case not to be dismissed and to be granted additional time to amend the Complaint till April 26, 2020,

Thank you.

Respectfully,

Sophie Cahen
Pro-Se

# EXH.1

# Parcel

Control No. (106667)  Tax Map No. (19-0-0294-0034.0007)

**Owner**

**SCHULTZ SCOTT M & ELIZABETH C**
1235 LINDEN AVE
YARDLEY, PA 19067

**Acreage:**
12.1500

**Land Assessment:**
$41,500

**Improvement Assessment:**
$0

**Total Assessment:**
$41,500

**Township:**
PAUPACK

**Neighborhood:**
PAUPACK

**Land Use:**
RESIDENTIAL ACREAGE TEN ACRES OR MORE (149A)

**Map Book/Page:**
M-0094/0084

**Lot Number:**
3AA

**Section:**

**Block:**

**Developer:**
VORBURGER JEAN-LOUIS

**Homestead Status:**
Not Enrolled

**Farmstead Status:**
Not Enrolled

**Clean And Green Status:**
Not Enrolled

## Ownership Records

| # | Owner Name | Additional Owners | Deed Date | Record Book Page | Sale Price |
|---|---|---|---|---|---|
| 1 | SCHULTZ SCOTT M & ELIZABETH C | | 1/17/2020 | R-5589/0001 | $107,000 |
| 2 | KEMMANN RICHARD | | 9/14/2011 | R-4288/0162 | $2,499 |
| 3 | CAHEN-VORBURGER SOPHIE | | 12/8/2004 | R-2691/0230 | $1 |
| 4 | CAHEN-VORBURGER SOPHIE | | 12/3/2004 | R-2691/0224 | $1 |
| 5 | PEREYRON MARIE-CHRISTINE | | 8/10/1999 | R-1544/0327 | $35,000 |
| 6 | VORBURGER JEAN-LOUIS | | 7/16/1999 | R-1544/0322 | $1 |
| 7 | VORBURGER JEAN-LOUIS | | 1/26/1998 | R-1325/0167 | $280,000 |
| 8 | FATTORUSSO VICTOR & FRANCINE | | 6/8/1994 | R-0955/0250 | $0 |

- No Dwellings

## Auxiliaries

None

© 2018-2019 - Grandjean & Braverman, Inc.
ver.19.11.29.1444

1/2

# Parcel

Control No. (103657)    Tax Map No. (19-0-0294-0034.0005)

**Owner**

**LAKE REGION DEVELOPMENT II LLC**
115 WOODCREST DR
BLOOMING GROVE, PA 18428

Acreage:
25.5070

Land Assessment:
$75,400

Improvement Assessment:
$194,300

Total Assessment:
$269,700

Township :
PAUPACK

Neighborhood:
PAUPACK

Land Use:
ONE FAMILY DWELLING (110)

Map Book/Page:
M-0065/0101

Lot Number:
3B

Section:

Block:

Developer:

Homestead Status:
Not Enrolled

Farmstead Status:
Not Enrolled

Clean And Green Status:
Not Enrolled

## Ownership Records

| # | Owner Name | Additional Owners | Deed Date | Record Book Page | Sale Price |
|---|---|---|---|---|---|
| 1 | LAKE REGION DEVELOPMENT II LLC | | 10/2/2019 | R-5546/0296 | $189,737 |
| 2 | DEUTSCHE BANK NATIONAL TRUST COMPANY | | 1/9/2019 | R-5447/0035 | $13,580 |
| 3 | LAKE REGION DEVELOPMENT III LLC | | 9/8/2014 | R-4794/0088 | $21,826 |
| 4 | LAKE REGION DEVELOPMENT LLC | | 9/8/2014 | R-4790/0093 | $21,826 |
| 5 | CAHEN-VORBURGER SOPHIE | | 12/8/2004 | R-2691/0230 | $1 |
| 6 | CAHEN-VORBURGER SOPHIE | | 12/3/2004 | R-2691/0224 | $1 |
| 7 | PEREYRON MARIE-CHRISTINE | | 5/18/1998 | R-1364/0202 | $0 |
| 8 | VORBURGER JEAN-LOUIS | | 9/27/1990 | D-0528/0114 | $275,000 |

## Dwelling 1

1/2

| Built | Class | Quality | Style | |
|---|---|---|---|---|
| 1989 | B-5 | | Ranch | |

**Occupancy Description**
Single Fam

Page #: 1

| Heat System | Central+AC | Chimneys | 1 |
|---|---|---|---|
| Heat Type | Heat Pump | Openings | 1 |
| Fireplace | Masonry | | |

## Construction

| Roof | Comp Shingle | Foundation | Bsmt |
|---|---|---|---|
| Interior Walls | Dry Wall/Plaster & Dry Wall/Plaster | Exterior Walls | Wood Siding |
| Floor Covering | Softwood & Lin/Vinyl | Story Height | 1 Story |

## Living Area

| Bedrooms | 3 | Living Area | 1,840 ft² |
|---|---|---|---|
| Full Baths | 2 | Finished Basement | 0 ft² |
| Half Baths | 0 | Unfinished Basement | 1,768 ft² |

### Additions to dwelling 1

| 1 | Wood Deck | 66 ft² |
|---|---|---|
| 2 | Open Frame Porch | 162 ft² |
| 3 | Wood Deck | 306 ft² |
| 4 | Wood Deck | 608 ft² |
| 5 | Frame Att Gar | 522 ft² |

## Auxiliaries

| # | Description | Condition | Construction | Size | Quality |
|---|---|---|---|---|---|
| 1 | Det. Gar, 2 story | OK Shape | Frame | 2,500 ft² | C+10 |

© 2018-2019 - Grandjean & Braverman, Inc.

ver. 19.11.29.1444

2/2



## SOPHIE CAHEN
### Re: Index 1:18-cv-07515-jpo



**Hon J. Paul Oetken**
United States Courthouse
#706
40 Foley Square
New York, NY 10007

August 7, 2020

**Re:      Extension Request To File Amended Complaint**

Your Honor,

On March 5, 2020, April 25, 2020, and May 6 2020, I requested that the Court grant me additional time through August 8, 2020. The letters I wrote to you before contained new information that I previously did not have as well as new findings.

You had again denied my request, hence utterly violating my rights as a pro-se litigant. Your decision to deny me more time, and the reasons you set forth are nothing short of a travesty of Justice.  The lawyers for chase bank have deliberately lied to you since the onset of this case (people present in the courtroom that day in September, remember and even commented back to me how unfair you had been with me and that they could clearly see that chase bank lawyers were lying to you, and that you should have granted me a stay).

You deliberately allowed them to do that and upon doing some research on you,  it appears that before you became a Judge appointed by Obama, you were a lawyer at a large firm, at which time you represented chase bank when the DOJ prosecuted them for various crimes.

You then became a Judge essentially handling mostly claims related to Chase Bank and allowing favorable decisions for Chase Bank time and time again. Certainly, at times you made Chase Bank pay fines or make a deal to avoid further prosecutions, but it was merely a slap on the wrist with no consequences as this allowed Chase Bank to continue their lies and deceits. Many have been hurt by chase bank's behavior in the past. You know firsthand how shady and corrupt they are, yet you continue to enable them, just as you have in my case by repeatedly denying me fair access to Justice! You have done misconduct in this case against me.

I am very openly a Republican, and I feel discriminated against as such by your decisions as a democrat judge. In addition, I also feel that this is nothing more than a travesty of Justice, and my rights as a pro-se litigant have been violated.

The irony is that you boast yourself of being the first "openly gay Judge" on the bench (NY Times - July 2011). *The Oetken-Pratayot nuptials, held at the super-hip Jane Hotel, combined downtown cool (Makky's fashion-world friends) with law-nerd royalty (Judge Oetken's friends). The legal and judicial celebrities in attendance included the officiant, Judge Alison Nathan (S.D.N.Y.), and her wife, Professor Meg Satterthwaite of NYU Law; Freedom To Marry founder Evan Wolfson, a major leader in the marriage equality movement; Jenner & Block's appellate and Supreme Court practice leader, Paul Smith (who famously argued Lawrence v. Texas); and*

*Professor Sarah Cleveland of Columbia Law, a leading international-law scholar (and owner of a pretty sweet Lawyerly Lair).*

As such you should know that discrimination is wrong. Yet the very thing you abhor, you are now complacent of doing. You have violated my rights not only as a pro-se litigant, and also because I am a Republican, and a woman. The discrimination against conservatives is also felt in other areas and it is appalling (see The Hill - Nov 2019).

According to many lawyers, you have little to no knowledge nor respect for the law, and you routinely write judicial opinions and decisions that blatantly go against higher courts even when you know that you will be over-ruled or as some say *"recorded in history as a Central Bank enforcer, rather than as an American honest judge"*. You do not have any respect for the U.S. Constitution, but only for your democrat cronies, and an unending contempt and disdain for the Law.

Your democrat cronies have brought NYC to the threshold of utter devastation, with rampant crime, homelessness, riots, shootings, stabbings, assaults, briberies, drugs, and filth. Just last week, your cronies even hijacked the NYS Assembly in Albany to amend the State Constitution to *"essentially favor democrats and tie the Republican hands"*, so that *"democrats would be free to draw lines to their advantage"*... and *"that the will of the people and public interest are far less important to NY democrats than their own self-preservation. They are obsessed with extending their misguided, one party rule, that drives up taxes, drives up crimes, and drives new Yorkers away"*. (NY Post – August 2020)

As you know I have been very sick in the past with a life threatening illness, and then the coronavirus situation has caused courts and business closings, and I also still have not being able to get all the documents I needed to put together my amended complaint. Therefore, I am hereby requesting additional time to complete my amended Complaint through January 31, to be able to complete it.

I will reiterate once again that their motion to dismiss was based on lies perpetrated by jpmc, not only at the filing onset of their motion to dismiss but also thereafter in their pleadings, and have deliberately lied to this Court including at the hearing before Your Honor in September 2018.

In addition, as I explained to you previously, my ex-husband Jean Louis Vorburger "jlv" owes me millions and has been incarcerated many times. In early May, there were incidents that can only be attributed to jlv and it is a crime. He has assaulted me (and others) in the past, done perjury, filed false affidavits, lied to his probation officer, was incarcerated many times in NY and PA, etc.. In the past, there have been threats as I have uncovered more illegal dealings that he has done in the past. Although I am not elaborating further on this at the moment, I will say that some things took place in the past, that clearly indicate that he had something to do with my NYC apartment at west 108th st, and my PA house/land. His past conduct as well as the coop for my nyc apartment at west 108th st, and that of chase bank were fraudulent. That is reprehensible.

I am therefore asking you to reconsider and for the case not to be dismissed, and to be granted additional time to amend the Complaint till January 31, 2022

Thank you.

Respectfully,

**Sophie Cahen**
Pro-Se

# NEW YORK TIMES ARTICLE
# JULY 2011

Case 1:21-cv-06992-JPO   Document 196   Filed 06/43/25   Page 180 of 244
Case 1:18-cv-07515   Document 68   Filed 00/00/20   Page 45 of 1244

# The New York Times

# *Openly Gay Man Is First Confirmed as U.S. Judge*

July 18, 2011

J. Paul Oetken, a former Clinton administration lawyer, on Monday became the first openly gay man to be confirmed as a federal judge.

Mr. Oetken won Senate confirmation by a vote of 80 to 13. He will take his seat as a federal judge in Manhattan after President Obama signs his commission, which may be as soon as this week, according to the office of Senator Charles E. Schumer, Democrat of New York.

"When there are so many qualified gay and lesbian people and none of them get on the bench, you scratch your head and wonder why," said Mr. Schumer, who recommended the appointment last year to Mr. Obama. "But the old barriers that existed in society are crumbling. That's what this will say."

Mr. Oetken, 45, a graduate of Yale Law School, was a law clerk to Justice Harry A. Blackmun of the Supreme Court before working for the Justice Department and then as associate counsel to President Bill Clinton.

He is now a senior vice president and associate general counsel at Cablevision.

Deborah A. Batts, a lesbian, has been a federal judge in Manhattan since 1994.

A version of this article appears in print on July 19, 2011, Section A, Page 21 of the New York edition with the headline: Openly Gay Man Is First Confirmed as U.S. Judge

# THE HILL ARTICLE

# NOVEMBER 2011



# The appalling discrimination a
# America's young conservative

BY DOUGLAS MACKINNON, OPINION CONTRIBUTOR — 11/09/19 12:00 PM EST
THE VIEWS EXPRESSED BY CONTRIBUTORS ARE THEIR OWN AND NOT THE VIEW OF THE HILL

**327** SHARES                                                     SHARE       TW

## Just In...

**Trump's mispronunciation of Yosemite brings $30K in sales to Jewish museum with 'Yo Semite' shirt**
BLOG BRIEFING ROOM — 17M AGO

**Hillary Clinton roasts NYT's Maureen Dowd over column**
MEDIA — 18M 58S AGO

**The economy is not Trump's strong suit**
OPINION — 41M 44S AGO

**Biden edges closer to VP pick: Here's who's up and who's down**
CAMPAIGN — 49M 19S AGO

**Huawei to stop making chipsets amid US pressure**
TECHNOLOGY — 1H 1M AGO

**Matt Lieberman faces calls to drop out of Georgia Senate race over 'racist and discriminatory' tropes in 2018 book**
CAMPAIGN — 1H 17M AGO

**Mid-American Conference cancels fall season due to COVID-19: reports**
NEWS — 1H 24M AGO

**Lebanese police fire tear gas at protesters in**



© iStock

Longstanding and ongoing <u>discrimination</u> against conservative, Republican and Christian thought has been debated in so many ways that it has morphed into "white noise" that many people basically ignore. We forget there are human faces, and potentially punitive and lasting consequences, attached to such discrimination.

These consequences can affect even the lives of young Americans.

I attended a recent Republican event headlined by a congressman. After his remarks, he welcomed questions from the audience. At the back of the room, among the 50-, 60- and 70-year-old attendees, was a table of high school students.

One student spoke passionately into the microphone about the discrimination that she and her fellow conservative schoolmates encounter, sometimes on a daily basis, from teachers at their public school.

It is discrimination, she said, "which seeks to silence us, to punish us, which deliberately lowers our GPA, which adversely affects the chances of us getting into college and, therefore, a better job and a better life."

"No one seems to care," she added — a literal plea for help. This young woman explained that if she dares question the liberal groupthink of her

wake of explosion
INTERNATIONAL—1H 37M AGO

VIEW ALL

**View Latest Opinions >>**

Related News   by   i



25 Countries That Dislike Americans
Sponsored | Bon Voyaged



The other reason Democrats want Biden



Don't let Trump distract us from the real threat of



Is antifa the greatest movement against free

high school teachers, whether in a written essay or a classroom discussion, she is penalized academically in some way.

The desperation in her voice was palpable as she outlined this growing injustice that, sadly, many school districts are able to hide from public view.

Unfortunately, the congressman offered up a generic answer before moving on with other generic answers to heartfelt questions from his constituents. Afterward, I approached him and one of his aides — but I, too, was dismissed.

Leaving aside the damaging disinterest of entrenched establishment politicians, a high school student's plea for help from the "adults in the room" should serve as a major warning flag for all who believe that no student should be discriminated against — ever.

That includes young people who happen to be conservative or Republican.

The next day, remembering that anguished student's voice, I reached out to several friends to arrange a conversation with a few high school and middle school students.

One of these students, who proudly proclaimed to be liberal and part of the "resistance" against President Trump, shockingly acknowledged to me, "Oh yeah. If any of my conservative friends speak out to defend Trump or a conservative viewpoint or especially question global warming, they are screwed over by the teachers."

As we have been reminded over the years in the media, academia and entertainment industry, no one "hates discrimination" more than Democrats and liberals — unless, evidently, they are the ones wielding it for their own advancement or dominance.

It is often pointed out that, over the past few decades, thanks in part to discrimination, the left largely has gained control over the three biggest megaphones of our nation: the media, academia and the entertainment industry. Not by coincidence, these are the same institutions that condemn discrimination selectively.

It also has been noted that bias against Republican and conservative thought has filtered into social media platforms such as Facebook, Twitter and YouTube and the search engines powering them.

It's one thing to know that reality, and even to accept it, as a part of the everyday life of a Republican or conservative American. It's quite another when you hear a child — whose academic "sin" is being conservative — ask for help to thwart discrimination that could threaten her opportunities for a better education and more secure future.

**Most VA workers find racism 'moderate to serious problem' at...**

**Overnight Defense: Most VA workers find racism 'moderate to serious...**

The system clearly has failed these children, who are simply choosing to think for themselves about issues and draw their own conclusions. Why are liberal teachers, administrators, unions and politicians so afraid of young people thinking for themselves?

It's time for parents — and all adults — to stand as one to stop the pervasive, partisan discrimination targeting young people. Potentially, this could happen to your children.

*Douglas MacKinnon, a political and communications consultant, was a writer in the White House for Presidents Ronald Reagan and George H.W. Bush, and former special assistant for policy and communications at the Pentagon during the last three years of the Bush administration.*

TAGS  DONALD TRUMP   DISCRIMINATION   CONSERVATISM IN THE UNITED STATES   REPUBLICANS

SHARE              TWEET



THE HILL 1625 K STREET, NW SUITE 900 WASHINGTON DC 20006 | 202-628-8500 TEL | 202-628-8503 FAX
THE CONTENTS OF THIS SITE ARE ©2020 CAPITOL HILL PUBLISHING CORP., A SUBSIDIARY OF NEWS COMMUNICATIONS, INC.

Case 1:18-cv-07515-JPO   Document 69   Filed 09/08/20   Page 9 of 11

# NEW YORK POST ARTICLE

# AUGUST 2020

8/8/2020
Case 1:21-cv-06992-JPO   Document 196   Filed 06/13/25   Page 186 of 244
Case 1:18-cv-07515-JPO   Document 106-8 Filed 09/08/20   Page 10 of 11

OPINION   EDITORIAL

# NY Democrats are moving to lock in one-party rule — maybe forever

By Post Editorial Board

August 7, 2020 | 8:47pm



The New York state Assembly chamber in Albany.
AP

Democratic lawmakers in Albany are never satisfied: Their party already has a firm lock on the key levers of power, yet last week they moved to solidify that power even more — via an amendment to the state Constitution.

And because they control both houses of the Legislature, the measure sailed through easily, with barely any public input.

The amendment deals with the redistricting process — how new maps, based on the Census, must be drawn and approved. And the changes essentially favor Dems and tie Republican hands, so Democrats will be free to draw lines to their advantage.

Under the plan, minority parties would lose their ability to block partisan district lines. The number of Senate districts would be locked at 63 (the current number) to preserve the Dems' edge and head off any new GOP-leaning districts. It also requires that residents, regardless of immigration status, be counted — a clear bid to create yet more Dem-leaning districts.

8/8/2020

Case 1:21-cv-06992-JPO   Document 106   Filed 06/08/25   Page 187 of 244
Case 1:18-cv-07318-JPO   Document 93   Filed 06/08/20   Page 118 of 12

"The will of the people and public interest are far less important to New York Democrats than their own self-preservation," howls Assemblyman Will Barclay. They're "obsessed with extending their misguided, one-party rule that drives up taxes, drives up crime and drives New Yorkers away."

The amendment needs to be passed again next year when a "new" Legislature meets, before going to voters in November 2021.

If it's OK'd, Republicans could be out of power for a long time after the next redistricting. And bet on Dems to keep using their power to preserve it even more.

— ADVERTISEMENT —



The likely bottom line: Say good-bye to democracy and hello to dysfunctional one-party rule in New York. Perhaps for good.

FILED UNDER   **ALBANY**, **CENSUS**, **DEMOCRATS**, **EDITORIAL**, **LEGISLATURE**, **8/7/20**



**www.drrichardkaul.com**

**MAY 15, 2025**

KASH PATEL
DIRECTOR OF THE FBI
FBI HEADQUARTERS
935 PENNSYLVANIA AVENUE, NW
WASHINGTON, D.C. 20535-0001

RE: KAUL v ICE
  21-CV-06992-JPO
  K11-7
  +
  KAUL v OETKEN ET AL
  24-CV-000621-CWR-LGI
  K11-23
  NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025
  ENTRY ONTO THE K11-7 DOCKET

  <u>RELEVANT REFERENCES OF THE KAUL CASES</u>
  K11-7: KAUL v ICE: 21-CV-06992 (S.D.N.Y.)
  K11-23: KAUL v OETKEN ET AL: 24-CV-00621 (S.D.M.)

Dear Director Patel,

I write this letter to bring your attention to the enclosed document entitled '**NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025 ENTRY ONTO THE K11-7 DOCKET**' (**Exhibit 1**) the facts of which speak for themselves and facts that substantiate K11-23 Defendant Oetken's **"ongoing pattern of racketeering"** within the S.D.N.Y. and violation of my human/civil/constitutional rights.

I also write this letter to request that there be conducted an investigation by the Civil Rights Division into the admitted offenses/violations/crimes committed by K11-23 Defendant Oetken, through his abuse of the power of the federal bench for personal gain, and his knowing/willful violation of my fundamental human/civil/constitutional right to amongst other things, due process and an impartial tribunal.

1

**www.drrichardkaul.com**

**MAY 15, 2025**

KASH PATEL
DIRECTOR OF THE FBI
FBI HEADQUARTERS
935 PENNSYLVANIA AVENUE, NW
WASHINGTON, D.C. 20535-0001

RE: **KAUL v ICE**
    **21-CV-06992-JPO**
    **K11-7**
    **+**
    **KAUL v OETKEN ET AL**
    **24-CV-000621-CWR-LGI**
    **K11-23**
    **NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025 ENTRY ONTO THE K11-7 DOCKET**

    <u>**RELEVANT REFERENCES OF THE KAUL CASES**</u>
    **K11-7: KAUL v ICE: 21-CV-06992 (S.D.N.Y.)**
    **K11-23: KAUL v OETKEN ET AL: 24-CV-00621 (S.D.M.)**

Dear Director Patel,

I write this letter to bring your attention to the enclosed document entitled '**NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025 ENTRY ONTO THE K11-7 DOCKET' (Exhibit 1)** the facts of which speak for themselves and facts that substantiate K11-23 Defendant Oetken's **"ongoing pattern of racketeering"** within the S.D.N.Y. and violation of my human/civil/constitutional rights.

I also write this letter to request that there be conducted an investigation by the Civil Rights Division into the admitted offenses/violations/crimes committed by K11-23 Defendant Oetken, through his abuse of the power of the federal bench for personal gain, and his knowing/willful violation of my fundamental human/civil/constitutional right to amongst other things, due process and an impartial tribunal.

1

I respectfully assert that K11-23 Defendant Oetken should be removed from the bench, the vacant seat filed by the current administration, and he be subject to civil/criminal investigations.

Please be advised that this matter has also been referred to the Public Integrity Sections of the Department of Justice, the Judicial Conduct & Disability Committee, the New York State Bar and the United States Marshals Service in both the Districts of Columbia and the Southern District of New York and the US Attorney and the Chief Judge of the S.D.N.Y.

I thank you for your attention to this very serious matter.


Yours sincerely



RICHARD ARJUN KAUL, MD

Please respond to: drrichardkaul@gmail.com



**www.drrichardkaul.com**

**MAY 15, 2025**


JOHN D, KELLER
ACTING DIRECTOR
PUBLIC INTEGRITY DIVISION
U.S. DEPARTMENT OF JUSTICE
950 PENNSYLVANIA AVENUE, NW
WASHINGTON, DC 20530-0001

RE: **KAUL v ICE**
    **21-CV-06992-JPO**
    **K11-7**
    **+**
    **KAUL v OETKEN ET AL**
    **24-CV-000621-CWR-LGI**
    **K11-23**
    **NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025**
    **ENTRY ONTO THE K11-7 DOCKET**

    **RELEVANT REFERENCES OF THE KAUL CASES**
    **K11-7: KAUL v ICE: 21-CV-06992 (S.D.N.Y.)**
    **K11-23: KAUL v OETKEN ET AL: 24-CV-00621 (S.D.M.)**

Dear Mr. Keller,

I write this letter to bring your attention to the enclosed document entitled '**NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025 ENTRY ONTO THE K11-7 DOCKET' (Exhibit 1)** the facts of which speak for themselves and facts that substantiate K11-23 Defendant Oetken's **"ongoing pattern of racketeering"** within the S.D.N.Y. and violation of my human/civil/constitutional rights.

I also write this letter to request that there be conducted an investigation by the Civil Rights Division into the admitted offenses/violations/crimes committed by K11-23 Defendant Oetken, through his abuse of the power of the federal bench for personal gain, and his knowing/willful violation of my fundamental human/civil/constitutional right to amongst other things, due process and an impartial tribunal.

1

**www.drrichardkaul.com**

**MAY 15, 2025**

JOHN D, KELLER
ACTING DIRECTOR
PUBLIC INTEGRITY DIVISION
U.S. DEPARTMENT OF JUSTICE
950 PENNSYLVANIA AVENUE, NW
WASHINGTON, DC 20530-0001

RE: KAUL v ICE
      21-CV-06992-JPO
      K11-7
      +
      KAUL v OETKEN ET AL
      24-CV-000621-CWR-LGI
      K11-23
      NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025
      ENTRY ONTO THE K11-7 DOCKET

      <u>RELEVANT REFERENCES OF THE KAUL CASES</u>
      K11-7: KAUL v ICE: 21-CV-06992 (S.D.N.Y.)
      K11-23: KAUL v OETKEN ET AL: 24-CV-00621 (S.D.M.)

Dear Mr. Keller,

I write this letter to bring your attention to the enclosed document entitled '**NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025 ENTRY ONTO THE K11-7 DOCKET' (Exhibit 1)** the facts of which speak for themselves and facts that substantiate K11-23 Defendant Oetken's **"ongoing pattern of racketeering"** within the S.D.N.Y. and violation of my human/civil/constitutional rights.

I also write this letter to request that there be conducted an investigation by the Civil Rights Division into the admitted offenses/violations/crimes committed by K11-23 Defendant Oetken, through his abuse of the power of the federal bench for personal gain, and his knowing/willful violation of my fundamental human/civil/constitutional right to amongst other things, due process and an impartial tribunal.

1

I respectfully assert that K11-23 Defendant Oetken should be removed from the bench, the vacant seat filed by the current administration, and he be subject to civil/criminal investigations.

Please be advised that this matter has also been referred to the Public Integrity Sections of the Department of Justice, the Judicial Conduct & Disability Committee, the New York State Bar and the United States Marshals Service in both the Districts of Columbia and the Southern District of New York and the US Attorney and the Chief Judge of the S.D.N.Y.

I thank you for your attention to this very serious matter.


Yours sincerely



RICHARD ARJUN KAUL, MD

Please respond to: drrichardkaul@gmail.com



**www.drrichardkaul.com**

**MAY 15, 2025**

GADAYCES SERRALTA
DIRECTOR
U.S. MARSHALS SERVICE
1215 S. CLARK STREET
ARKINGTON, VA 22202

**RE: KAUL v ICE**
     **21-CV-06992-JPO**
     **K11-7**
     **+**
     **KAUL v OETKEN ET AL**
     **24-CV-000621-CWR-LGI**
     **K11-23**
     **NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025 ENTRY ONTO THE K11-7 DOCKET**

     <u>**RELEVANT REFERENCES OF THE KAUL CASES**</u>
     **K11-7: KAUL v ICE: 21-CV-06992 (S.D.N.Y.)**
     **K11-23: KAUL v OETKEN ET AL: 24-CV-00621 (S.D.M.)**

Dear Mr. Serralta,

I write this letter to bring your attention to the enclosed document entitled '**NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025 ENTRY ONTO THE K11-7 DOCKET**' (**<u>Exhibit 1</u>**) the facts of which speak for themselves and facts that substantiate K11-23 Defendant Oetken's **"ongoing pattern of racketeering"** within the S.D.N.Y. and violation of my human/civil/constitutional rights.

I also write this letter to respectfully request that if K11-23 Defendant Oetken decides, despite a knowing conversion of the SDNY federal bench into a **"racketeering enterprise"** and of being noticed of this and other criminal issues within the (**<u>Exhibit 1</u>**) contained documents, does enter any document/order on or after June 17, 2025, that you refer the matter to the Department of Justice – Civil Rights Division + Public Integrity Section – and the Office of the US Attorney, both of which have been provided copies of the documents contained in (**<u>Exhibit 1</u>**) and (**<u>Exhibit 2</u>**). In the same vein of not perpetuating K11-23 Defendant Oetken's illegal 'Fraud on the Court', I

1

**www.drrichardkaul.com**

**MAY 15, 2025**

GADAYCES SERRALTA
DIRECTOR
U.S. MARSHALS SERVICE
1215 S. CLARK STREET
ARKINGTON, VA 22202

**RE: KAUL v ICE**
    **21-CV-06992-JPO**
    **K11-7**
    **+**
    **KAUL v OETKEN ET AL**
    **24-CV-000621-CWR-LGI**
    **K11-23**
    **NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025**
    **ENTRY ONTO THE K11-7 DOCKET**

    <u>**RELEVANT REFERENCES OF THE KAUL CASES**</u>
    **K11-7: KAUL v ICE: 21-CV-06992 (S.D.N.Y.)**
    **K11-23: KAUL v OETKEN ET AL: 24-CV-00621 (S.D.M.)**

Dear Mr. Serralta,

I write this letter to bring your attention to the enclosed document entitled '**NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025 ENTRY ONTO THE K11-7 DOCKET**' (<u>**Exhibit 1**</u>) the facts of which speak for themselves and facts that substantiate K11-23 Defendant Oetken's **"ongoing pattern of racketeering"** within the S.D.N.Y. and violation of my human/civil/constitutional rights.

I also write this letter to respectfully request that if K11-23 Defendant Oetken decides, despite a knowing conversion of the SDNY federal bench into a **"racketeering enterprise"** and of being noticed of this and other criminal issues within the (<u>**Exhibit 1**</u>) contained documents, does enter any document/order on or after June 17, 2025, that you refer the matter to the Department of Justice – Civil Rights Division + Public Integrity Section –  and the Office of the US Attorney, both of which have been provided copies of the documents contained in (<u>**Exhibit 1**</u>) and (<u>**Exhibit 2**</u>). In the same vein of not perpetuating K11-23 Defendant Oetken's illegal 'Fraud on the Court', I

would request that at your earliest convenience you communicate these facts to the regional director at the S.D.N.Y for the U.S.M.S.

In further support of this notice, please find enclosed in (**Exhibit 2**) documents pertaining to my November 30, 2022 AGC Complaint and documents from another person whose submissions raised the same disbarment-disqualification-impeachment-prosecution issues as those raised in the prior (November 30, 2022) and current (May 15, 2025) Complaints. This alone constitutes a **"pattern of racketeering"**, that caused the prior litigant, a single mother with three children to be forcibly and illegally evicted from her apartment in Manhattan in which she had lived for thirty (30) years. At the moment of this orally announced order by K11-23 Defendant Oetken, the litigant, emotionally and physically distraught, fled the courtroom in tears and entered the bathroom, whereupon within less than five (5) minutes three female non-lawyer staff followed her. These individuals, who having witnessed K11-23 Defendant make knowingly fraudulent rulings on countless occasions against pro se litigants involved in disputes with corporations, did tell this person that he [K11-23 Defendant Oetken] **"had to be stopped"** and that she had to fight his illegal entry. This person, almost destitute and with no knowledge of the law was able to do nothing about K11-23 Defendant Oetken's long-standing criminal conduct.

I have requested from the NYS Bar, the Judicial Disciplinary Committee and the Senate Judiciary Committee that K11-23 Defendant Oetken should be removed from the bench, the vacant seat filed by the current administration, and he be subject to civil/criminal investigations.

Please be advised that this matter has also been referred to the Public Integrity and Civil Rights Sections of the Department of Justice, the Committee on Codes of Conduct, the NYS Bar, the US Attorney, the Chief Judge of the S.D.N.Y. and the regional director of the USMS at the SDNY.

I thank you for your attention to this very serious matter.


Yours sincerely



RICHARD ARJUN KAUL, MD

Please respond to: drrichardkaul@gmail.com



**www.drrichardkaul.com**

**MAY 15, 2025**

JOSH HAWLEY
JOHN CORNYN
U.S. COMMITTEE ON THE JUDICIARY
224 DIRKSEN SENATE OFFICE BUILDING
WASHINGTON, DC 20510

**RE: KAUL v ICE**
  **21-CV-06992-JPO**
  **K11-7**
  **+**
  **KAUL v OETKEN ET AL**
  **24-CV-000621-CWR-LGI**
  **K11-23**
  **NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025
  ENTRY ONTO THE K11-7 DOCKET**

  **RELEVANT REFERENCES OF THE KAUL CASES**
  **K11-7: KAUL v ICE: 21-CV-06992 (S.D.N.Y.)**
  **K11-23: KAUL v OETKEN ET AL: 24-CV-00621 (S.D.M.)**

Dear Senators Cornyn and Hawley,

I write this letter to bring your attention to the enclosed document entitled '**NOTICE TO
DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025 ENTRY ONTO THE
K11-7 DOCKET' (Exhibit 1)** the facts of which speak for themselves and facts that substantiate
K11-23 Defendant Oetken's **"ongoing pattern of racketeering"** within the S.D.N.Y. and violation
of my human/civil/constitutional rights.

I also write this letter to request that there be conducted an investigation by the Committee
into the admitted offenses/violations/crimes committed by K11-23 Defendant Oetken,
perpetrated through his abuse of the power of the federal bench for personal gain, and his
knowing/willful violation of my fundamental human/civil/constitutional right to amongst other
things, due process and an impartial tribunal.

**www.drrichardkaul.com**

**MAY 15, 2025**

JOSH HAWLEY
JOHN CORNYN
U.S. COMMITTEE ON THE JUDICIARY
224 DIRKSEN SENATE OFFICE BUILDING
WASHINGTON, DC 20510

**RE: KAUL v ICE**
    **21-CV-06992-JPO**
    **K11-7**
    **+**
    **KAUL v OETKEN ET AL**
    **24-CV-000621-CWR-LGI**
    **K11-23**
    **NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025
    ENTRY ONTO THE K11-7 DOCKET**

    <u>**RELEVANT REFERENCES OF THE KAUL CASES**</u>
    **K11-7: KAUL v ICE: 21-CV-06992 (S.D.N.Y.)**
    **K11-23: KAUL v OETKEN ET AL: 24-CV-00621 (S.D.M.)**

Dear Senators Cornyn and Hawley,

I write this letter to bring your attention to the enclosed document entitled '**NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025 ENTRY ONTO THE K11-7 DOCKET'** (<u>**Exhibit 1**</u>) the facts of which speak for themselves and facts that substantiate K11-23 Defendant Oetken's **"ongoing pattern of racketeering"** within the S.D.N.Y. and violation of my human/civil/constitutional rights.

I also write this letter to request that there be conducted an investigation by the Committee into the admitted offenses/violations/crimes committed by K11-23 Defendant Oetken, perpetrated through his abuse of the power of the federal bench for personal gain, and his knowing/willful violation of my fundamental human/civil/constitutional right to amongst other things, due process and an impartial tribunal.

In further support of this notice, please find enclosed in (**Exhibit 2**) documents pertaining to my November 30, 2022 AGC Complaint and documents from another person whose submissions raised the same disbarment-disqualification-impeachment-prosecution issues as those raised in the prior (November 30, 2022) and current (May 15, 2025) Complaints. This alone constitutes **a "pattern of racketeering"**, that caused the prior litigant, a single mother with three children to be forcibly and illegally evicted from her apartment in Manhattan in which she had lived for thirty (30) years. At the moment of this orally announced order by K11-23 Defendant Oetken, the litigant, emotionally and physically distraught, fled the courtroom in tears and entered the bathroom, whereupon within less than five (5) minutes three female non-lawyer staff followed her. These individuals, who having witnessed K11-23 Defendant make knowingly fraudulent rulings on countless occasions against pro se litigants involved in disputes with corporations, did tell this person that he [K11-23 Defendant Oetken] **"had to be stopped"** and that she had to fight his illegal entry. This person, almost destitute and with no knowledge of the law was able to do nothing about K11-23 Defendant Oetken's long-standing criminal conduct.

I respectfully assert that K11-23 Defendant Oetken should be removed from the bench, the vacant seat filed by the current administration, and he be subject to civil/criminal investigations.

Please be advised that this matter has also been referred to the Public Integrity and Civil Rights Sections of the Department of Justice, the New York State Bar, the United States Marshals Service in both the Districts of Columbia and the Southern District of New York, the US Attorney and the Chief Judge of the S.D.N.Y.

I thank you for your attention to this very serious matter.


Yours sincerely



RICHARD ARJUN KAUL, MD

Please respond to: drrichardkaul@gmail.com



**www.drrichardkaul.com**

**MAY 15, 2025**

RALPH SOZIO
DIRECTOR OF THE U.S.M.S.
SOUTHERN DISTRICT OF NEW YORK
500 PEARL STREET
NEW YORK, NY 10007-1316

**RE: KAUL v ICE**
    **21-CV-06992-JPO**
    **K11-7**
    **+**
    **KAUL v OETKEN ET AL**
    **24-CV-000621-CWR-LGI**
    **K11-23**
    **NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025**
    **ENTRY ONTO THE K11-7 DOCKET**

    <u>**RELEVANT REFERENCES OF THE KAUL CASES**</u>
    **K11-7: KAUL v ICE: 21-CV-06992 (S.D.N.Y.)**
    **K11-23: KAUL v OETKEN ET AL: 24-CV-00621 (S.D.M.)**

Dear Mr. Sozio,

I write this letter to bring your attention to the enclosed document entitled '**NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025 ENTRY ONTO THE K11-7 DOCKET' (<u>Exhibit 1</u>)** the facts of which speak for themselves and facts that substantiate K11-23 Defendant Oetken's **"ongoing pattern of racketeering"** within the S.D.N.Y. and violation of my human/civil/constitutional rights.

I also write this letter to respectfully request that **IF** K11-23 Defendant Oetken decides, despite a knowing conversion of the SDNY federal bench into a **"racketeering enterprise"** and of being noticed of this and other criminal issues within the (<u>Exhibit 1</u>) contained documents, does enter any document/order on or after June 17, 2025, that you refer the matter to the Department of Justice – Civil Rights Division + Public Integrity Section – and the Office of the US Attorney, both of which have been provided copies of the documents contained in (<u>Exhibit 1</u>) and (<u>Exhibit 2</u>). In the same vein of not perpetuating K11-23 Defendant Oetken's illegal 'Fraud on the Court', I

1

**www.drrichardkaul.com**

**MAY 15, 2025**

RALPH SOZIO
DIRECTOR OF THE U.S.M.S.
SOUTHERN DISTRICT OF NEW YORK
500 PEARL STREET
NEW YORK, NY 10007-1316

**RE: KAUL v ICE**
   **21-CV-06992-JPO**
   **K11-7**
   **+**
   **KAUL v OETKEN ET AL**
   **24-CV-000621-CWR-LGI**
   **K11-23**
   **NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025**
   **ENTRY ONTO THE K11-7 DOCKET**

   **RELEVANT REFERENCES OF THE KAUL CASES**
   **K11-7: KAUL v ICE: 21-CV-06992 (S.D.N.Y.)**
   **K11-23: KAUL v OETKEN ET AL: 24-CV-00621 (S.D.M.)**

Dear Mr. Sozio,

I write this letter to bring your attention to the enclosed document entitled '**NOTICE TO DEFENDANT OETKEN OF NULLITY AND CONFLICTED-NESS OF MAY 8, 2025 ENTRY ONTO THE K11-7 DOCKET'** (**Exhibit 1**) the facts of which speak for themselves and facts that substantiate K11-23 Defendant Oetken's **"ongoing pattern of racketeering"** within the S.D.N.Y. and violation of my human/civil/constitutional rights.

I also write this letter to respectfully request that IF K11-23 Defendant Oetken decides, despite a knowing conversion of the SDNY federal bench into a **"racketeering enterprise"** and of being noticed of this and other criminal issues within the (**Exhibit 1**) contained documents, does enter any document/order on or after June 17, 2025, that you refer the matter to the Department of Justice – Civil Rights Division + Public Integrity Section – and the Office of the US Attorney, both of which have been provided copies of the documents contained in (**Exhibit 1**) and (**Exhibit 2**). In the same vein of not perpetuating K11-23 Defendant Oetken's illegal 'Fraud on the Court', I

1

would request that at your earliest convenience you communicate your receipt of this notice to the national director for the U.S.M.S., that being Gadayces Serralta, to whom a copy of the documents contained within (**Exhibit 1**) and (**Exhibit 2**) have been sent. The purpose of this communication pertains to ensuring the regional office in the SDNY does not permit itself to become rendered an instrument of liability in the perpetuation of K11-23 Defendant Oetken's crimes and 'Fraud on the Court'.

K11-23 Defendant, as evident from the within admitted facts, does know of his guilt of the charges levied against him in K11-23, but is in a desperate position, judicially isolated in the SDNY and facing the possibility of impeachment and criminal charges. These facts account to some extent for his unhinged proposal to conduct a hearing on June 17, 2025. Please do not permit your office to be a part of K11-23 Defendant Oetken's desperately insane scheme.

In further support of this notice, please find enclosed in (**Exhibit 2**) documents pertaining to my November 30, 2022 AGC Complaint and documents from another person whose submissions raised the same disbarment-disqualification-impeachment-prosecution issues as those raised in the prior (November 30, 2022) and current (May 15, 2025) Complaints. This alone constitutes a **"pattern of racketeering"**, that caused the prior litigant, a single mother with three children to be forcibly and illegally evicted from her apartment in Manhattan in which she had lived for thirty (30) years. At the moment of this orally announced order by K11-23 Defendant Oetken, the litigant, emotionally and physically distraught, fled the courtroom in tears and entered the bathroom, whereupon within less than five (5) minutes three female non-lawyer staff followed her. These individuals, who having witnessed K11-23 Defendant make knowingly fraudulent rulings on countless occasions against pro se litigants involved in disputes with corporations, did tell this person that he [K11-23 Defendant Oetken] **"had to be stopped"** and that she had to fight his illegal entry. This person, almost destitute and with no knowledge of the law was able to do nothing about K11-23 Defendant Oetken's long-standing criminal conduct.

I have requested from the NYS Bar, the Judicial Disciplinary Committee and the Senate Judiciary Committee that K11-23 Defendant Oetken should be removed from the bench, the vacant seat filed by the current administration, and he be subject to civil/criminal investigations.

Please be advised that this matter has also been referred to the Public Integrity and Civil Rights Sections of the Department of Justice, the Committee on Codes of Conduct, the NYS Bar, the US Attorney, the Chief Judge of the S.D.N.Y. and the national director of the U.S.M.S.

I thank you for your attention to this very serious matter.


Yours sincerely



RICHARD ARJUN KAUL, MD

Please respond to: drrichardkaul@gmail.com



**www.drrichardkaul.com**

**JUNE 4, 2025**

RALPH SOZIO
DIRECTOR OF THE U.S.M.S.
SOUTHERN DISTRICT OF NEW YORK
500 PEARL STREET
NEW YORK, NY 10007-1316

**RE: KAUL v ICE: 21-CV-06992-JPO (K11-7)**
        **+**
**KAUL v OETKEN ET AL 24-CV-000621-CWR-LGI (K11-23)**

**NOTICE OF 'FRAUD ON THE COURT' TO THE U.S.M.S.**

**RELEVANT REFERENCES OF THE KAUL CASES**
**K11-7: KAUL v ICE: 21-CV-06992 (SOUTHERN DISTRICT OF NEW YORK)**
**K11-23: KAUL v OETKEN ET AL: 24-CV-00621 (SOUTHERN DISTRICT OF MISSISSIPPI)**
**K11-27: KAUL v FEDERATION ET AL: 25-CV-01676 (SOUTHERN DISTRICT OF TEXAS)**

Dear Mr. Sozio,

In furtherance of my May 15, 2025 letter (please click on the link):

https://www.drrichardkaul.com/_files/ugd/7d05d1_7d668486901f4c9282e6fc0d1de9ef6f.pdf

as to the illegality of K11-23 Defendant Oetken's May 8, 2025 purported order and proposed June 17, 2025 'contempt' hearing, please find submitted below links to documents that substantiate a criminal **"pattern of racketeering"**, the crimes of which he has admitted to committing while sitting on the bench in the S.D.N.Y (please click on the link):

https://d5a171ff-b03e-4655-9fb9-
90e92a568439.filesusr.com/ugd/7d05d1_233641893c9449b6bae5a2fffdc655f9.pdf

1

<u>www.drrichardkaul.com</u>

**JUNE 4, 2025**

RALPH SOZIO
DIRECTOR OF THE U.S.M.S.
SOUTHERN DISTRICT OF NEW YORK
500 PEARL STREET
NEW YORK, NY 10007-1316

**RE: KAUL v ICE: 21-CV-06992-JPO (K11-7)**
       **+**
**KAUL v OETKEN ET AL 24-CV-000621-CWR-LGI (K11-23)**

**NOTICE OF 'FRAUD ON THE COURT' TO THE U.S.M.S.**

<u>**RELEVANT REFERENCES OF THE KAUL CASES**</u>
**K11-7: KAUL v ICE: 21-CV-06992 (SOUTHERN DISTRICT OF NEW YORK)**
**K11-23: KAUL v OETKEN ET AL: 24-CV-00621 (SOUTHERN DISTRICT OF MISSISSIPPI)**
**K11-27: KAUL v FEDERATION ET AL: 25-CV-01676 (SOUTHERN DISTRICT OF TEXAS)**

Dear Mr. Sozio,

In furtherance of my May 15, 2025 letter (please click on the link):

https://www.drrichardkaul.com/_files/ugd/7d05d1_7d668486901f4c9282e6fc0d1de9ef6f.pdf

as to the illegality of K11-23 Defendant Oetken's May 8, 2025 purported order and proposed June 17, 2025 'contempt' hearing, please find submitted below links to documents that substantiate a criminal **"pattern of racketeering"**, the crimes of which he has admitted to committing while sitting on the bench in the S.D.N.Y (please click on the link):

https://d5a171ff-b03e-4655-9fb9-
90e92a568439.filesusr.com/ugd/7d05d1_233641893c9449b6bae5a2fffdc655f9.pdf

K11-23 Defendant Oetken is currently a Defendant in <u>KAUL v OETKEN ET AL: 24-CV-00621-CWR-LGI</u> (K11-23) (please click on the link)

https://d5a171ff-b03e-4655-9fb9-
90e92a568439.filesusr.com/ugd/7d05d1_5ec5fa272ba849e2a9e626e38b0a70aa.pdf

and is, as demonstrated in the petition for a writ of prohibition to the Supreme Court of the United States is conflicted and thus prohibited by law from having any ministerial/adjudicative involvement in any matter involving myself (please click on link):

https://d5a171ff-b03e-4655-9fb9-
90e92a568439.filesusr.com/ugd/7d05d1_a555362454644fddaaedcd74b3bb5ee9.pdf

The principal purpose of K11-23 Defendants illegally proposed June 17, 2025 'contempt' hearing is to attempt to cause my unlawful elimination, in order to prevent me from prosecuting him in K11-23 and his co-conspirators in K11-27. My prosecution of K11-27 would more fully expose the bribery related quid pro quo scheme he perpetrated with the K11-7 Defendants in a period from August 19, 2021 to September 2022 in the S.D.N.Y., in which in return for the knowingly illegal receipt of bribes, he abused the authority of the S.D.N.Y to enter a knowingly illegal nationwide injunction on September 12, 2022.

In recognizing K11-23 Defendant Oetken's bribery related crimes, I filed cases in other district courts, including the Southern District of Texas (K11-27), where on July 9, 2025 the judge will conduct a Rule 16 hearing. The Southern District of Texas and the judge are fully informed of the May 8 to the June 17, 2025 proposed crimes being committed by K11-23 Defendant Oetken in the S.D.N.Y. and are proceeding with my prosecution of the case (K11-27). And it is this exact sequence of prosecutorial events that K11-23 Defendant Oetken is seeking to illegally obstruct in order to prevent me from exacting discovery demands on K11-23 Defendant Oetken, demands/discovery that will irrefutably prove a long history of perpetrating **"patterns of racketeering"** on the federal bench. K11-23 Defendant Oetken is literally 'fighting for his life', for he knows that the inevitable emergence of proof of his crimes will have serious consequences.

In essence, and to put it quite bluntly, K11-23 Defendant Oetken views my elimination as would a mafia boss view the assassination of the only witness to a series of murders. If the witness is murdered, the boss lives to commit further murderous crime, while if the witness lives, he gets to tell the story and the boss is sealed away from the public. That is the 'nub' of this part of a long and sordid tale of malfeasance by corrupt politicians/judges/public servants/doctors and insurance companies as described in **The Kaul Cases**. A copy of K11-27 can be viewed at (please click on link):

https://d5a171ff-b03e-4655-9fb9-
90e92a568439.filesusr.com/ugd/7d05d1_d97b5112a2b2440882d164ce1937cd57.pdf

K11-23 Defendant Oetken's admitted offenses/violations/crimes do constitute, amongst other things, a 'Fraud on the Court' and pursuant to this doctrine and that of RICO's doctrine of vicarious liability (U.S. v Coonan, 1298 (826 F.2d 1180 (1987) + Salinas v U.S. 522 U.S. 52 (1997) any products of this fraud adopted by any person, either with or without knowledge of the fraud, do cause that person to incur the same liability as the original and principal perpetrator of the fraud, which in this case is K11-23 Defendant Oetken. Thus, in becoming informed of K11-23 Defendant Oetken's admitted offenses/violations/crimes and fraud, the law obligates you to not adopt, incur and or further any aspect/element/product/'order' of the fraud. Violators of the law will be caused to incur the same civil/criminal liability as that which now binds/burdens/constricts K11-23 Defendant Oetken, and which will entrap them the illegal 'Revocation-Cover-Up-Conspiracy' as is detailed in K11-27.

I believe there now exists sufficient notice/information within this letter and the linked documents that you have been properly noticed as to the vicarious criminal liability of within matter, to your legal obligation to not further this criminal conspiracy, that of the 'Revocation-Cover-Up-Conspiracy' and of the deleterious consequences in aiding/abetting it.

However, I do respectfully suggest you seek guidance from counsel independent of the S.D.N.Y. in order to protect your professional/personal interests and rights, and please be advised this matter has been brought to the attention of all judges in the S.D.N.Y., the Chief Judge of the Second Circuit and the D.C. Chief of the U.S.M.S.

It was not so long ago that a federal judge in the Southern District of New York, Martin Thomas Manton, was jailed for committing a fraction of the crimes committed by K11-23 Defendant Oetken.

https://en.wikipedia.org/wiki/Martin_Thomas_Manton

Finally, there are three (3) consolidated cases involving President Trump currently before the Supreme Court of the United States, in which the illegality of district court judges issuing nationwide injunctions is the principal subject matter. This issue lies at the heart of K11-23 Defendant Oetken's offenses/violations/crimes committed in K11-7 within the S.D.N.Y., and a decision by SCOTUS is expected before the end of June, 2025, which is anticipated to rule as to their illegality. K11-23 Defendant knows this, which is why he is hurriedly attempting to conduct a preemptive purported 'contempt' hearing on June 17, 2025, a week or two before the SCOTUS rulings, knowing that the SCOTUS ruling will definitively render illegal/null and void his September 12, 2022 purported and bribery procured nationwide 'injunction', a rendering that will invalidate every product/'order' of the illegal September 12, 2022 purported 'injunction' and the proposed June 17, 2025 'contempt' hearing.

I respectfully assert that the within detailed facts do evidence the conduct of a guilty person desperately attempting to abuse official power for personal gain, that gain being to eliminate me, the Plaintiff, from exposing how the expected SCOTUS judgment will deem illegal his September 12, 2022 purported nationwide 'injunction' and every

aspect/element/product/'order' of that illegality. And it is misconduct into which no legally well advised/informed person would knowingly permit themselves to become complicit.

And finally on a historic note, the '**I was only taking orders**' defense at the Nazi Nuremberg trials (1945-1947) did not circumvent the subordinate Nazi officers ignominious ending on the gallows.


Yours sincerely

RICHARD ARJUN KAUL, MD

cc: GADAYCES SERRALTA – NATIONAL DIRECTOR U.S.M.S.



www.drrichardkaul.com

**JUNE 5, 2025**

CLERK OF THE COURT
UNITED STATES DISTRICT COURT
500 PEARL STREET, NY, NY 10007

**RE: KAUL v ICE: 21-CV-06992**
**K11-7**
**LETTER FROM PLAINTIFF KAUL TO CHIEF JUDGE DEBRA ANN LIVINGSTON**

Dear Clerk of the Court,

Please find submitted the following documents the above referenced document.

Please ensure this document is published to the docket, regardless of what instructions you may have received from K11-23 Defendant Oetken to withhold critical filings.

Yours sincerely

_____

RICHARD ARJUN KAUL, MD

cc: Clerk of the Court for the 2nd Circuit Court of Appeals

**www.drrichardkaul.com**

**JUNE 5, 2025**

CLERK OF THE COURT
UNITED STATES DISTRICT COURT
500 PEARL STREET, NY, NY 10007

**RE: KAUL v ICE: 21-CV-06992**
      **K11-7**
      **LETTER FROM PLAINTIFF KAUL TO CHIEF JUDGE DEBRA ANN LIVINGSTON**

Dear Clerk of the Court,

Please find submitted the following documents the above referenced document.

Please ensure this document is published to the docket, regardless of what instructions you may have received from K11-23 Defendant Oetken to withhold critical filings.

Yours sincerely

_____

RICHARD ARJUN KAUL, MD

cc: Clerk of the Court for the 2nd Circuit Court of Appeals

<u>www.drrichardkaul.com</u>

**JUNE 5, 2025**

THE HONORABLE DEBRA ANN LIVINGSTON
CHIEF JUDGE
UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
40 FOLEY SQUARE
NEW YORK, NY 10007

**RE: KAUL v ICE: 21-CV-06992-JPO (K11-7)**
         **+**
       **KAUL v OETKEN ET AL 24-CV-000621-CWR-LGI (K11-23)**

   **NOTICE OF 'FRAUD ON THE COURT' AND REQUEST TO REPORT**

**<u>RELEVANT REFERENCES OF THE KAUL CASES</u>**
**K11-7: KAUL v ICE: 21-CV-06992 (SOUTHERN DISTRICT OF NEW YORK)**
**K11-23: KAUL v OETKEN ET AL: 24-CV-00621 (SOUTHERN DISTRICT OF MISSISSIPPI)**
**K11-27: KAUL v FEDERATION ET AL: 25-CV-01676 (SOUTHERN DISTRICT OF TEXAS)**

Dear Chief Judge Livingston,

I write this letter pursuant to your judicial misconduct reporting obligations under the Code of Conduct for United States Judges and specifically your obligation to report to disciplinary/prosecutorial authorities the commission of crime by another federal judge, that judge being K11-23 Defendant James Paul Oetken, the 'K11-23' prefix derived from the fact that he is a defendant in <u>KAUL v OETKEN: 24-CV-00621-CWR-LGI</u>, a case pending in the U.S.D.C. for the Southern District of Mississippi. This case is one of **<u>The Kaul Cases</u>**.

**<u>CONTEXT AND PERTINENT FACTS</u>**

I am a physician (please click on below link for CV):

<u>https://www.drrichardkaul.com/_files/ugd/7d05d1_801dd47fddd44398bc56b1eb9f1cc2f2.pdf</u>

a fact relevant to the twenty (20) years-worth of offenses/violations/crimes committed against my life/liberty/property/reputation and human/civil/constitutional rights by persons referred

1

to as **The Kaul Cases** Defendants in a series of cases, **The Kaul Cases**, filed in the United States District Court in a period from 2016-2025. The very first case (K1) was filed on February 22, 2016 in the Southern District of New York, and there is now respectively pending in the U.S.D.C. for the Southern Districts of Texas and Mississippi, K11-27 and K11-23. In K11-27, a case filed on April 9, 2025, there is scheduled a Rule 16 conference on July 9, 2025, a hearing the K11-27 Defendants are in conspiracy/collusion with K11-23 Defendant abusing the authority/jurisdiction of the S.D.N.Y. to cause my elimination (jail/death) in order to nullify the July 9, 2025 hearing and have K11-27 dismissed. The purpose of this seemingly convoluted, yet criminal scheme, is to attempt to prevent me from further exposing their admitted crimes of amongst other things, false indictment/false arrest/false imprisonment/attempted killing/bribery/perjury/obstruction of justice/evidential tampering/witness tampering/securities fraud/bankruptcy fraud/public corruption/judicial corruption.

In essence, K11-23 Defendant Oetken, who is conflicted consequent to his Defendant status in K11-23, did on May 8, 2025 in a knowingly illegal manner submit to his docket in K11-7, a proposed 'order' to conduct a purported 'contempt' hearing against me, his prosecutor in K11-23, in order to attempt to cause my elimination. An elimination that would eradicate the consequences of his and the K11-27 Defendants' crimes, the facts of which he and the K11-27/K11-23 Defendants have admitted, and the consequences of which they are acutely aware.

Basically, and somewhat bluntly, kill me and they live, whereas if my K11-27 prosecution is successful, their existence is caused to become both metaphorically and literally concluded. There exists little in-between.


## SUBSTANTIATING SUBMISSIONS

The below links are connected to documents that substantiate the incriminating facts and the legal mandate to report these facts upon being noticed of such:

1. JUDICIAL CODE OF CONDUCT AND REPORTING OBLIGATIONS:

https://www.drrichardkaul.com/_files/ugd/7d05d1_4a796a394de140a3845843b833f1bc94.pdf

2. COMPLAINT IN KAUL v OETKEN ET AL: 24-CV-00621 (K11-23):

https://www.drrichardkaul.com/_files/ugd/7d05d1_5ec5fa272ba849e2a9e626e38b0a70aa.pdf

3. ADMISSIONS OF FACT OF K11-23 DEFENDANT OETKEN:

https://www.drrichardkaul.com/_files/ugd/7d05d1_233641893c9449b6bae5a2fffdc655f9.pdf

4. PETITION TO THE SUPREME COURT OF THE UNITED STATES FOR A WRIT OF PROHIBITION:

https://www.drrichardkaul.com/_files/ugd/7d05d1_a555362454644fddaaedcd74b3bb5ee9.pdf

5. COMPLAINT IN KAUL v FEDERATION: 25-CV-01676 (SOUTHERN DISTRICT OF TEXAS):

https://www.drrichardkaul.com/_files/ugd/7d05d1_d97b5112a2b2440882d164ce1937cd57.pdf

6. LETTER TO RALPH SOZIO – SDNY DIRECTOR U.S.M.S.:

https://d5a171ff-b03e-4655-9fb9-90e92a568439.filesusr.com/ugd/7d05d1_a812db50c997422ba97ecd87c3dbd349.pdf

The circumstances and facts preceding, surrounding and constituting the subject matter of **The Kaul Cases** and not just this letter, but the necessity of sending such a letter regarding the criminal conduct of a supposed guardian of the law, is to be quite frank, quite shocking. The plague of public corruption has insinuated its sordid tentacles into the supposed bastions of justice in a not dissimilar manner to the mode in which metastatic lung cancer cells incapacitate normal brain/intestinal/liver function. This cancer, as with that of public corruption, causes a death of the human body, as does public corruption assassinate the organs of democracy; and if there is any chance of survival it requires surgical excision of the primary/secondaries, as does the removal from the bench of K11-23 Defendant Oetken, lest his malignant conduct and that of others cause a death of democracy.

I do respectfully request this Court use its inherent power to do justice and not only report K11-23 Defendant Oetken's ongoing **"pattern of racketeering"** within the Second Circuit Court of Appeals, but order him to immediately cease and desist his efforts to conduct a purported 'contempt' hearing on June 17, 2025.


Yours sincerely

RICHARD ARJUN KAUL, MD


cc: Clerk of the Court for the S.D.N.Y.
     Counsel for K11-23 Defendant Oetken





AI Mode     All     News     Images     Short videos     More ⌄     ⚙

# is a federal judge obligated to report the crimes of another federal judge



**3 sites**                                                    ⋮

A federal judge has a responsibility to take appropriate action upon receiving reliable information indicating the likelihood that another judge has committed misconduct. This is outlined in the Code of Conduct for United States Judges and the Rules for Judicial-Conduct and Judicial-Disability Proceedings. 🔗

The Code of Conduct for United States Judges and the Rules for Judicial-Conduct and Judicial-Disability Proceedings outline a federal judge's responsibility regarding the misconduct of another judge. 🔗

- Judges must take "appropriate action" upon receiving reliable information that another judge has likely committed misconduct. This action can include direct communication or reporting to relevant authorities like the chief district judge or chief circuit judge.
- Reporting is mandatory in certain circumstances, particularly when the misconduct is serious and threatens the integrity of the judiciary or poses a threat to the safety of any person.
- Confidentiality should be maintained unless the misconduct is serious enough to threaten the safety or integrity of the judiciary. 🔗

The necessity of reporting depends on the circumstances and the seriousness of the misconduct and its potential impact on the administration of justice and public confidence. Federal judges are obligated to report serious violations that compromise the judiciary's integrity or threaten safety. 🔗

AI responses may include mistakes. For legal advice, consult a professional. <u>Learn more</u>

⚗   👍   👎

**Code of Conduct for United States Judges**
Code of Conduct for United States Judges. The Code of Conduct for United States Judges include...

United States Courts (.gov)                                   ⋮

**Judicial Conduct & Disability - United States Courts**
The Rules for Judicial-Conduct and Judicial-Disability Proceedings (PDF), as amended on Marc...

United States Courts (.gov)                                   ⋮

**Ch. 3: Rules for Judicial-Conduct and Judicial-Disability Proceedings**
Mar 12, 2019 — A judge's assurance of confidentiality must yield when there is reliable...

United States Courts (.gov)                                   ⋮

Ask anything



AI Mode  All  News  Images  Short videos  More ▾  ⚙

# is a federal judge obligated to report the crimes of another federal judge

A federal judge has a responsibility to take appropriate action upon receiving reliable information indicating the likelihood that another judge has committed misconduct. This is outlined in the Code of Conduct for United States Judges and the Rules for Judicial-Conduct and Judicial-Disability Proceedings. 🔗

The Code of Conduct for United States Judges and the Rules for Judicial-Conduct and Judicial-Disability Proceedings outline a federal judge's responsibility regarding the misconduct of another judge. 🔗

- Judges must take "appropriate action" upon receiving reliable information that another judge has likely committed misconduct. This action can include direct communication or reporting to relevant authorities like the chief district judge or chief circuit judge.
- Reporting is mandatory in certain circumstances, particularly when the misconduct is serious and threatens the integrity of the judiciary or poses a threat to the safety of any person.
- Confidentiality should be maintained unless the misconduct is serious enough to threaten the safety or integrity of the judiciary. 🔗

The necessity of reporting depends on the circumstances and the seriousness of the misconduct and its potential impact on the administration of justice and public confidence. Federal judges are obligated to report serious violations that compromise the judiciary's integrity or threaten safety. 🔗

AI responses may include mistakes. For legal advice, consult a professional. <u>Learn more</u>

⚠  👍  👎



**3 sites**                                          ⋮

**Code of Conduct for United States Judges**
Code of Conduct for United States Judges. The Code of Conduct for United States Judges include...

🏛 United States Courts (.gov)                      ⋮

**Judicial Conduct & Disability - United States Courts**
The Rules for Judicial-Conduct and Judicial-Disability Proceedings (PDF), as amended on Marc...

🏛 United States Courts (.gov)                      ⋮

**Ch. 3: Rules for Judicial-Conduct and Judicial-Disability Proceedings**
Mar 12, 2019 — A judge's assurance of confidentiality must yield when there is reliable...

🏛 United States Courts (.gov)                      ⋮

# Code of Conduct for United States Judges

---

The Code of Conduct for United States Judges includes the ethical canons that apply to federal judges and provides guidance on their performance of official duties and engagement in a variety of outside activities.

---

- Code of Conduct for U.S. Judges (PDF) (*Guide to Judiciary Policy*, Vol. 2A, Ch. 2) *(effective March 12, 2019)*

# 2019 Changes

- Proposed changes to the Code of Conduct for U.S. Judges *(September 2018)*, including public comments and witness statements.
- Code of Conduct for U.S. Judges (PDF) *(effective before March 12, 2019)*

---

Introduction
Canon 1: A Judge Should Uphold the Integrity and Independence of the Judiciary
Canon 2: A Judge Should Avoid Impropriety and the Appearance of Impropriety in All Activities
Canon 3: A Judge Should Perform the Duties of the Office Fairly, Impartially and Diligently
Canon 4: A Judge May Engage in Extrajudicial Activities That are Consistent With the Obligations of Judicial Office
Canon 5: A Judge Should Refrain From Political Activity
Compliance with the Code of Conduct
Applicable Date of Compliance

## Introduction

The Code of Conduct for United States Judges was initially adopted by the Judicial Conference

on April 5, 1973, and was known as the "Code of Judicial Conduct for United States Judges."
**See:** JCUS-APR 73, pp. 9-11 (PDF). Since then, the Judicial Conference has made the following
changes to the Code:

- March 1987: deleted the word "Judicial" from the name of the Code;
- September 1992: adopted substantial revisions to the Code;
- March 1996: revised part C of the Compliance section, immediately following
  the Code;
- September 1996: revised Canons 3C(3)(a) and 5C(4);
- September 1999: revised Canon 3C(1)(c);
- September 2000: clarified the Compliance section;
- March 2009: adopted substantial revisions to the Code;
- March 2014: revised part C of the Compliance section, which appears below,
  immediately following the Code;
- March 2019: adopted revisions to Canon 2A Commentary, Canon 3, Canon
  3A(3), Canon 3B(4), Canon 3B(4) Commentary, Canon 3B(6), and Canon 3B(6)
  Commentary.

This Code applies to United States circuit judges, district judges, Court of International Trade
judges, Court of Federal Claims judges, bankruptcy judges, and magistrate judges. Certain
provisions of this Code apply to special masters and commissioners as indicated in the
"Compliance" section. The Tax Court, Court of Appeals for Veterans Claims, and Court of
Appeals for the Armed Forces have adopted this Code.

The Judicial Conference has authorized its Committee on Codes of Conduct to render advisory
opinions about this Code only when requested by a judge to whom this Code applies. Requests
for opinions and other questions concerning this Code and its applicability should be
addressed to the Chair of the Committee on Codes of Conduct by email or as follows:

Chair, Committee on Codes of Conduct
c/o General Counsel
Administrative Office of the United States Courts
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E.
Washington, D.C. 20544
202-502-1100

Procedural questions may be addressed to:

Office of the General Counsel
Administrative Office of the United States Courts
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E.
Washington, D.C. 20544
202-502-1100

## Canon 1: A Judge Should Uphold the Integrity and Independence of the Judiciary

An independent and honorable judiciary is indispensable to justice in our society. A judge should maintain and enforce high standards of conduct and should personally observe those standards, so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.

COMMENTARY

Deference to the judgments and rulings of courts depends on public confidence in the integrity and independence of judges. The integrity and independence of judges depend in turn on their acting without fear or favor. Although judges should be independent, they must comply with the law and should comply with this Code. Adherence to this responsibility helps to maintain public confidence in the impartiality of the judiciary. Conversely, violation of this Code diminishes public confidence in the judiciary and injures our system of government under law.

The Canons are rules of reason. They should be applied consistently with constitutional requirements, statutes, other court rules and decisional law, and in the context of all relevant circumstances. The Code is to be construed so it does not impinge on the essential independence of judges in making judicial decisions.

The Code is designed to provide guidance to judges and nominees for judicial office. It may also provide standards of conduct for application in proceedings under the Judicial Councils Reform and Judicial Conduct and Disability Act of 1980 (28 U.S.C. §§ 332(d)(1), 351-364). Not every violation of the Code should lead to disciplinary action. Whether disciplinary action is appropriate, and the degree of discipline, should be determined through a reasonable application of the text and should depend on such factors as the seriousness of the improper activity, the intent of the judge, whether there is a pattern of improper activity, and the effect of the improper activity on others or on the judicial system. Many of the restrictions in the Code are necessarily cast in general terms, and judges may reasonably differ in their interpretation. Furthermore, the Code is not designed or intended as a basis for civil liability or criminal prosecution. Finally, the Code is not intended to be used for tactical advantage.

## Canon 2: A Judge Should Avoid Impropriety and the Appearance of Impropriety in all Activities

(A) *Respect for Law*. A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

(B) *Outside Influence*. A judge should not allow family, social, political, financial, or other relationships to influence judicial conduct or judgment. A judge should neither lend the prestige of the judicial office to advance the private interests of the judge or others nor convey or permit others to convey the impression that they are in a special position to influence the judge. A judge should not testify voluntarily as a character witness.

(C) *Nondiscriminatory Membership*. A judge should not hold membership in any organization that practices invidious discrimination on the basis of race, sex, religion, or national origin.

COMMENTARY

**Canon 2A.** An appearance of impropriety occurs when reasonable minds, with knowledge of all the relevant circumstances disclosed by a reasonable inquiry, would conclude that the judge's honesty, integrity, impartiality, temperament, or fitness to serve as a judge is impaired. Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges, including harassment and other inappropriate workplace behavior. A judge must avoid all impropriety and appearance of impropriety. This prohibition applies to both professional and personal conduct. A judge must expect to be the subject of constant public scrutiny and accept freely and willingly restrictions that might be viewed as burdensome by the ordinary citizen. Because it is not practicable to list all prohibited acts, the prohibition is necessarily cast in general terms that extend to conduct by judges that is harmful although not specifically mentioned in the Code. Actual improprieties under this standard include violations of law, court rules, or other specific provisions of this Code.

**Canon 2B.** Testimony as a character witness injects the prestige of the judicial office into the proceeding in which the judge testifies and may be perceived as an official testimonial. A judge should discourage a party from requiring the judge to testify as a character witness except in unusual circumstances when the demands of justice require. This Canon does not create a privilege against testifying in response to an official summons.

A judge should avoid lending the prestige of judicial office to advance the private interests of the judge or others. For example, a judge should not use the judge's judicial position or title to gain advantage in litigation involving a friend or a member of the judge's family. In contracts for publication of a judge's writings, a judge should retain control over the advertising to avoid

exploitation of the judge's office.

A judge should be sensitive to possible abuse of the prestige of office. A judge should not initiate communications to a sentencing judge or a probation or corrections officer but may provide information to such persons in response to a formal request. Judges may participate in the process of judicial selection by cooperating with appointing authorities and screening committees seeking names for consideration and by responding to official inquiries concerning a person being considered for a judgeship.

**Canon 2C**. Membership of a judge in an organization that practices invidious discrimination gives rise to perceptions that the judge's impartiality is impaired. Canon 2C refers to the current practices of the organization. Whether an organization practices invidious discrimination is often a complex question to which judges should be sensitive. The answer cannot be determined from a mere examination of an organization's current membership rolls but rather depends on how the organization selects members and other relevant factors, such as that the organization is dedicated to the preservation of religious, ethnic or cultural values of legitimate common interest to its members, or that it is in fact and effect an intimate, purely private organization whose membership limitations could not be constitutionally prohibited. See New York State Club Ass'n. Inc. v. City of New York, 487 U.S. 1, 108 S. Ct. 2225, 101 L. Ed. 2d 1 (1988); Board of Directors of Rotary International v. Rotary Club of Duarte, 481 U.S. 537, 107 S. Ct. 1940, 95 L. Ed. 2d 474 (1987); Roberts v. United States Jaycees, 468 U.S. 609, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984). Other relevant factors include the size and nature of the organization and the diversity of persons in the locale who might reasonably be considered potential members. Thus the mere absence of diverse membership does not by itself demonstrate a violation unless reasonable persons with knowledge of all the relevant circumstances would expect that the membership would be diverse in the absence of invidious discrimination. Absent such factors, an organization is generally said to discriminate invidiously if it arbitrarily excludes from membership on the basis of race, religion, sex, or national origin persons who would otherwise be admitted to membership.

Although Canon 2C relates only to membership in organizations that invidiously discriminate on the basis of race, sex, religion or national origin, a judge's membership in an organization that engages in any invidiously discriminatory membership practices prohibited by applicable law violates Canons 2 and 2A and gives the appearance of impropriety. In addition, it would be a violation of Canons 2 and 2A for a judge to arrange a meeting at a club that the judge knows practices invidious discrimination on the basis of race, sex, religion, or national origin in its membership or other policies, or for the judge to use such a club regularly. Moreover, public manifestation by a judge of the judge's knowing approval of invidious discrimination on any

basis gives the appearance of impropriety under Canon 2 and diminishes public confidence in the integrity and impartiality of the judiciary, in violation of Canon 2A.

When a judge determines that an organization to which the judge belongs engages in invidious discrimination that would preclude membership under Canon 2C or under Canons 2 and 2A, the judge is permitted, in lieu of resigning, to make immediate and continuous efforts to have the organization discontinue its invidiously discriminatory practices. If the organization fails to discontinue its invidiously discriminatory practices as promptly as possible (and in all events within two years of the judge's first learning of the practices), the judge should resign immediately from the organization.

## Canon 3: A Judge Should Perform the Duties of the Office Fairly, Impartially and Diligently

The duties of judicial office take precedence over all other activities. The judge should perform those duties with respect for others, and should not engage in behavior that is harassing, abusive, prejudiced, or biased. The judge should adhere to the following standards:

(A) *Adjudicative Responsibilities.*

(1) A judge should be faithful to, and maintain professional competence in, the law and should not be swayed by partisan interests, public clamor, or fear of criticism.

(2) A judge should hear and decide matters assigned, unless disqualified, and should maintain order and decorum in all judicial proceedings.

(3) A judge should be patient, dignified, respectful, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity. A judge should require similar conduct by those subject to the judge's control, including lawyers to the extent consistent with their role in the adversary process.

(4) A judge should accord to every person who has a legal interest in a proceeding, and that person's lawyer, the full right to be heard according to law. Except as set out below, a judge should not initiate, permit, or consider ex parte communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers. If a judge receives an unauthorized ex parte communication bearing on the substance of a matter, the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested. A judge may:

(a) initiate, permit, or consider ex parte communications as authorized by law;

(b) when circumstances require it, permit ex parte communication for scheduling, administrative, or emergency purposes, but only if the ex parte communication does not address substantive matters and the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication;

(c) obtain the written advice of a disinterested expert on the law, but only after giving advance notice to the parties of the person to be consulted and the subject matter of the advice and affording the parties reasonable opportunity to object and respond to the notice and to the advice received; or

(d) with the consent of the parties, confer separately with the parties and their counsel in an effort to mediate or settle pending matters.

(5) A judge should dispose promptly of the business of the court.

(6) A judge should not make public comment on the merits of a matter pending or impending in any court. A judge should require similar restraint by court personnel subject to the judge's direction and control. The prohibition on public comment on the merits does not extend to public statements made in the course of the judge's official duties, to explanations of court procedures, or to scholarly presentations made for purposes of legal education.

(B) *Administrative Responsibilities*.

(1) A judge should diligently discharge administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court personnel.

(2) A judge should not direct court personnel to engage in conduct on the judge's behalf or as the judge's representative when that conduct would contravene the Code if undertaken by the judge.

(3) A judge should exercise the power of appointment fairly and only on the basis of merit, avoiding unnecessary appointments, nepotism, and favoritism. A judge should not approve compensation of appointees beyond the fair value of services rendered.

(4) A judge should practice civility, by being patient, dignified, respectful, and courteous, in dealings with court personnel, including chambers staff. A judge should not engage in any form of harassment of court personnel. A judge should not retaliate against those who report misconduct. A judge should hold court personnel under the judge's direction to similar standards.

(5) A judge with supervisory authority over other judges should take reasonable measures to ensure that they perform their duties timely and effectively.

(6) A judge should take appropriate action upon receipt of reliable information indicating the likelihood that a judge's conduct contravened this Code, that a judicial employee's conduct contravened the Code of Conduct for Judicial Employees, or that a lawyer violated applicable rules of professional conduct.

(C) *Disqualification.*

(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances in which:

(a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b) the judge served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge or lawyer has been a material witness;

(c) the judge knows that the judge, individually or as a fiduciary, or the judge's spouse or minor child residing in the judge's household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be affected substantially by the outcome of the proceeding;

(d) the judge or the judge's spouse, or a person related to either within the third degree of relationship, or the spouse of such a person is:

(i) a party to the proceeding, or an officer, director, or trustee of a party;

(ii) acting as a lawyer in the proceeding;

(iii) known by the judge to have an interest that could be substantially affected by the outcome of the proceeding; or

(iv) to the judge's knowledge likely to be a material witness in the proceeding;

(e) the judge has served in governmental employment and in that capacity participated as a judge (in a previous judicial position), counsel, advisor, or material witness concerning the proceeding or has expressed an opinion concerning the merits of the particular case in controversy.

(2) A judge should keep informed about the judge's personal and fiduciary financial interests and make a reasonable effort to keep informed about the personal financial interests of the judge's spouse and minor children residing in the judge's household.

(3) For the purposes of this section:

(a) the degree of relationship is calculated according to the civil law system; the following relatives are within the third degree of relationship: parent, child, grandparent, grandchild, great grandparent, great grandchild, sister, brother, aunt, uncle, niece, and nephew; the listed relatives include whole and half blood relatives and most step relatives;

(b) "fiduciary" includes such relationships as executor, administrator, trustee, and guardian;

(c) "financial interest" means ownership of a legal or equitable interest, however small, or a relationship as director, advisor, or other active participant in the affairs of a party, except that:

(i) ownership in a mutual or common investment fund that holds securities is not a "financial interest" in such securities unless the judge participates in the management of the fund;

(ii) an office in an educational, religious, charitable, fraternal, or civic organization is not a "financial interest" in securities held by the organization;

(iii) the proprietary interest of a policyholder in a mutual insurance company, or a depositor in a mutual savings association, or a similar proprietary interest, is a "financial interest" in the organization only if the outcome of the proceeding could substantially affect the value of the interest;

(iv) ownership of government securities is a "financial interest" in the issuer only if the outcome of the proceeding could substantially affect the value of the securities;

(d) "proceeding" includes pretrial, trial, appellate review, or other stages of litigation.

(4) Notwithstanding the preceding provisions of this Canon, if a judge would be disqualified because of a financial interest in a party (other than an interest that could be substantially affected by the outcome), disqualification is not required if the judge (or the judge's spouse or minor child) divests the interest that provides the grounds for disqualification.

(D) *Remittal of Disqualification.* Instead of withdrawing from the proceeding, a judge disqualified by Canon 3C(1) may, except in the circumstances specifically set out in subsections (a) through (e), disclose on the record the basis of disqualification. The judge may participate in the proceeding if, after that disclosure, the parties and their lawyers have an

opportunity to confer outside the presence of the judge, all agree in writing or on the record that the judge should not be disqualified, and the judge is then willing to participate. The agreement should be incorporated in the record of the proceeding.

COMMENTARY

**Canon 3A(3).** The duty to hear all proceedings fairly and with patience is not inconsistent with the duty to dispose promptly of the business of the court. Courts can be efficient and businesslike while being patient and deliberate.

The duty under Canon 2 to act in a manner that promotes public confidence in the integrity and impartiality of the judiciary applies to all the judge's activities, including the discharge of the judge's adjudicative and administrative responsibilities. The duty to be respectful includes the responsibility to avoid comment or behavior that could reasonably be interpreted as harassment, prejudice or bias.

**Canon 3A(4).** The restriction on ex parte communications concerning a proceeding includes communications from lawyers, law teachers, and others who are not participants in the proceeding. A judge may consult with other judges or with court personnel whose function is to aid the judge in carrying out adjudicative responsibilities. A judge should make reasonable efforts to ensure that law clerks and other court personnel comply with this provision.

A judge may encourage and seek to facilitate settlement but should not act in a manner that coerces any party into surrendering the right to have the controversy resolved by the courts.

**Canon 3A(5).** In disposing of matters promptly, efficiently, and fairly, a judge must demonstrate due regard for the rights of the parties to be heard and to have issues resolved without unnecessary cost or delay. A judge should monitor and supervise cases to reduce or eliminate dilatory practices, avoidable delays, and unnecessary costs.

Prompt disposition of the court's business requires a judge to devote adequate time to judicial duties, to be punctual in attending court and expeditious in determining matters under submission, and to take reasonable measures to ensure that court personnel, litigants, and their lawyers cooperate with the judge to that end.

**Canon 3A(6).** The admonition against public comment about the merits of a pending or impending matter continues until the appellate process is complete. If the public comment involves a case from the judge's own court, the judge should take particular care so that the comment does not denigrate public confidence in the judiciary's integrity and impartiality, which would violate Canon 2A. A judge may comment publicly on proceedings in which the

judge is a litigant in a personal capacity, but not on mandamus proceedings when the judge is a litigant in an official capacity (but the judge may respond in accordance with Fed. R. App. P. 21(b)).

**Canon 3B(3)**. A judge's appointees include assigned counsel, officials such as referees, commissioners, special masters, receivers, guardians, and personnel such as law clerks, secretaries, and judicial assistants. Consent by the parties to an appointment or an award of compensation does not relieve the judge of the obligation prescribed by this subsection.

**Canon 3B(4)**. A judge should neither engage in, nor tolerate, workplace conduct that is reasonably interpreted as harassment, abusive behavior, or retaliation for reporting such conduct. The duty to refrain from retaliation includes retaliation against former as well as current judiciary personnel.

Under this Canon, harassment encompasses a range of conduct having no legitimate role in the workplace, including harassment that constitutes discrimination on impermissible grounds and other abusive, oppressive, or inappropriate conduct directed at judicial employees or others. See Rules for Judicial-Conduct and Judicial-Disability Proceedings, Rule 4(a)(2) (providing that "cognizable misconduct includes: (A) engaging in unwanted, offensive, or abusive sexual conduct, including sexual harassment or assault; (B) treating litigants, attorneys, judicial employees, or others in a demonstrably egregious and hostile manner; or (C) creating a hostile work environment for judicial employees") and Rule 4(a)(3) (providing that "cognizable misconduct includes intentional discrimination on the basis of race, color, sex, gender, gender identity, pregnancy, sexual orientation, religion, national origin, age, or disability").

**Canon 3B(6)**. Public confidence in the integrity and impartiality of the judiciary is promoted when judges take appropriate action based on reliable information of likely misconduct. Appropriate action depends on the circumstances, but the overarching goal of such action should be to prevent harm to those affected by the misconduct and to prevent recurrence. A judge, in deciding what action is appropriate, may take into account any request for confidentiality made by a person complaining of or reporting misconduct. See Rules for Judicial-Conduct and Judicial-Disability Proceedings, Rule 4(a)(6) (providing that "cognizable misconduct includes failing to call to the attention of the relevant chief district judge or chief circuit judge any reliable information reasonably likely to constitute judicial misconduct or disability. A judge who receives such reliable information shall respect a request for confidentiality but shall nonetheless disclose the information to the chief district judge or chief circuit judge, who shall also treat the information as confidential. Certain reliable information may be protected from disclosure by statute or rule. A judge's assurance of confidentiality must

yield when there is reliable information of misconduct or disability that threatens the safety or security of any person or that is serious or egregious such that it threatens the integrity and proper functioning of the judiciary. A person reporting information of misconduct or disability must be informed at the outset of a judge's responsibility to disclose such information to the relevant chief district judge or chief circuit judge. Reliable information reasonably likely to constitute judicial misconduct or disability related to a chief circuit judge should be called to the attention of the next most-senior active circuit judge. Such information related to a chief district judge should be called to the attention of the chief circuit judge.").

Appropriate action may include direct communication with the judge or lawyer, other direct action if available, reporting the conduct to the appropriate authorities, or, when the judge believes that a judge's or lawyer's conduct is caused by drugs, alcohol, or a medical condition, making a confidential referral to an assistance program. Appropriate action may also include responding to a subpoena to testify or otherwise cooperating with or participating in judicial or lawyer disciplinary proceedings; a judge should be candid and honest with disciplinary authorities.

**Canon 3C**. Recusal considerations applicable to a judge's spouse should also be considered with respect to a person other than a spouse with whom the judge maintains both a household and an intimate relationship.

**Canon 3C(1)(c)**. In a criminal proceeding, a victim entitled to restitution is not, within the meaning of this Canon, a party to the proceeding or the subject matter in controversy. A judge who has a financial interest in the victim of a crime is not required by Canon 3C(1)(c) to disqualify from the criminal proceeding, but the judge must do so if the judge's impartiality might reasonably be questioned under Canon 3C(1) or if the judge has an interest that could be substantially affected by the outcome of the proceeding under Canon 3C(1)(d)(iii).

**Canon 3C(1)(d)(ii)**. The fact that a lawyer in a proceeding is affiliated with a law firm with which a relative of the judge is affiliated does not of itself disqualify the judge. However, if "the judge's impartiality might reasonably be questioned" under Canon 3C(1), or the relative is known by the judge to have an interest in the law firm that could be "substantially affected by the outcome of the proceeding" under Canon 3C(1)(d)(iii), the judge's disqualification is required.

## Canon 4: A Judge May Engage in Extrajudicial Activities that are Consistent with the Obligations of Judicial Office

A judge may engage in extrajudicial activities, including law-related pursuits and civic,

charitable, educational, religious, social, financial, fiduciary, and governmental activities, and may speak, write, lecture, and teach on both law-related and nonlegal subjects. However, a judge should not participate in extrajudicial activities that detract from the dignity of the judge's office, interfere with the performance of the judge's official duties, reflect adversely on the judge's impartiality, lead to frequent disqualification, or violate the limitations set forth below.

(A) *Law-related Activities.*

(1) *Speaking, Writing, and Teaching.* A judge may speak, write, lecture, teach, and participate in other activities concerning the law, the legal system, and the administration of justice

(2) *Consultation.* A judge may consult with or appear at a public hearing before an executive or legislative body or official:

(a) on matters concerning the law, the legal system, or the administration of justice;

(b) to the extent that it would generally be perceived that a judge's judicial experience provides special expertise in the area; or

(c) when the judge is acting pro se in a matter involving the judge or the judge's interest.

(3) *Organizations.* A judge may participate in and serve as a member, officer, director, trustee, or nonlegal advisor of a nonprofit organization devoted to the law, the legal system, or the administration of justice and may assist such an organization in the management and investment of funds. A judge may make recommendations to public and private fund-granting agencies about projects and programs concerning the law, the legal system, and the administration of justice.

(4) *Arbitration and Mediation.* A judge should not act as an arbitrator or mediator or otherwise perform judicial functions apart from the judge's official duties unless expressly authorized by law.

(5) *Practice of Law.* A judge should not practice law and should not serve as a family member's lawyer in any forum. A judge may, however, act pro se and may, without compensation, give legal advice to and draft or review documents for a member of the judge's family.

(B) *Civic and Charitable Activities.* A judge may participate in and serve as an officer, director, trustee, or nonlegal advisor of a nonprofit civic, charitable, educational, religious, or social organization, subject to the following limitations:

(1) A judge should not serve if it is likely that the organization will either be engaged in proceedings that would ordinarily come before the judge or be regularly engaged in adversary proceedings in any court.

(2) A judge should not give investment advice to such an organization but may serve on its board of directors or trustees even though it has the responsibility for approving investment decisions.

(C) *Fund Raising*. A judge may assist nonprofit law-related, civic, charitable, educational, religious, or social organizations in planning fund-raising activities and may be listed as an officer, director, or trustee. A judge may solicit funds for such an organization from judges over whom the judge does not exercise supervisory or appellate authority and from members of the judge's family. Otherwise, a judge should not personally participate in fund-raising activities, solicit funds for any organization, or use or permit the use of the prestige of judicial office for that purpose. A judge should not personally participate in membership solicitation if the solicitation might reasonably be perceived as coercive or is essentially a fund-raising mechanism.

(D) *Financial Activities*.

(1) A judge may hold and manage investments, including real estate, and engage in other remunerative activity, but should refrain from financial and business dealings that exploit the judicial position or involve the judge in frequent transactions or continuing business relationships with lawyers or other persons likely to come before the court on which the judge serves.

(2) A judge may serve as an officer, director, active partner, manager, advisor, or employee of a business only if the business is closely held and controlled by members of the judge's family. For this purpose, "members of the judge's family" means persons related to the judge or the judge's spouse within the third degree of relationship as defined in Canon 3C(3)(a), any other relative with whom the judge or the judge's spouse maintains a close familial relationship, and the spouse of any of the foregoing.

(3) As soon as the judge can do so without serious financial detriment, the judge should divest investments and other financial interests that might require frequent disqualification.

(4) A judge should comply with the restrictions on acceptance of gifts and the prohibition on solicitation of gifts set forth in the Judicial Conference Gift Regulations. A judge should endeavor to prevent any member of the judge's family residing in the household from soliciting or accepting a gift except to the extent that a judge would be permitted to do so by

the Judicial Conference Gift Regulations. A "member of the judge's family" means any relative of a judge by blood, adoption, or marriage, or any person treated by a judge as a member of the judge's family.

(5) A judge should not disclose or use nonpublic information acquired in a judicial capacity for any purpose unrelated to the judge's official duties.

(E) *Fiduciary Activities*. A judge may serve as the executor, administrator, trustee, guardian, or other fiduciary only for the estate, trust, or person of a member of the judge's family as defined in Canon 4D(4). As a family fiduciary a judge is subject to the following restrictions:

(1) The judge should not serve if it is likely that as a fiduciary the judge would be engaged in proceedings that would ordinarily come before the judge or if the estate, trust, or ward becomes involved in adversary proceedings in the court on which the judge serves or one under its appellate jurisdiction.

(2) While acting as a fiduciary, a judge is subject to the same restrictions on financial activities that apply to the judge in a personal capacity.

(F) *Governmental Appointments*. A judge may accept appointment to a governmental committee, commission, or other position only if it is one that concerns the law, the legal system, or the administration of justice, or if appointment of a judge is required by federal statute. A judge should not, in any event, accept such an appointment if the judge's governmental duties would tend to undermine the public confidence in the integrity, impartiality, or independence of the judiciary. A judge may represent the judge's country, state, or locality on ceremonial occasions or in connection with historical, educational, and cultural activities.

(G) *Chambers, Resources, and Staff*. A judge should not to any substantial degree use judicial chambers, resources, or staff to engage in extrajudicial activities permitted by this Canon.

(H) *Compensation, Reimbursement, and Financial Reporting*. A judge may accept compensation and reimbursement of expenses for the law-related and extrajudicial activities permitted by this Code if the source of the payments does not give the appearance of influencing the judge in the judge's judicial duties or otherwise give the appearance of impropriety, subject to the following restrictions:

(1) Compensation should not exceed a reasonable amount nor should it exceed what a person who is not a judge would receive for the same activity.

(2) Expense reimbursement should be limited to the actual costs of travel, food, and lodging

reasonably incurred by the judge and, where appropriate to the occasion, by the judge's spouse or relative. Any additional payment is compensation.

(3) A judge should make required financial disclosures, including disclosures of gifts and other things of value, in compliance with applicable statutes and Judicial Conference regulations and directives.

COMMENTARY

**Canon 4**. Complete separation of a judge from extrajudicial activities is neither possible nor wise; a judge should not become isolated from the society in which the judge lives. As a judicial officer and a person specially learned in the law, a judge is in a unique position to contribute to the law, the legal system, and the administration of justice, including revising substantive and procedural law and improving criminal and juvenile justice. To the extent that the judge's time permits and impartiality is not compromised, the judge is encouraged to do so, either independently or through a bar association, judicial conference, or other organization dedicated to the law. Subject to the same limitations, judges may also engage in a wide range of non-law-related activities.

Within the boundaries of applicable law (see, e.g., 18 U.S.C. § 953) a judge may express opposition to the persecution of lawyers and judges anywhere in the world if the judge has ascertained, after reasonable inquiry, that the persecution is occasioned by conflict between the professional responsibilities of the persecuted judge or lawyer and the policies or practices of the relevant government.

A person other than a spouse with whom the judge maintains both a household and an intimate relationship should be considered a member of the judge's family for purposes of legal assistance under Canon 4A(5), fund raising under Canon 4C, and family business activities under Canon 4D(2).

**Canon 4A**. Teaching and serving on the board of a law school are permissible, but in the case of a for-profit law school, board service is limited to a nongoverning advisory board.

Consistent with this Canon, a judge may encourage lawyers to provide pro bono legal services.

**Canon 4A(4)**. This Canon generally prohibits a judge from mediating a state court matter, except in unusual circumstances (e.g., when a judge is mediating a federal matter that cannot be resolved effectively without addressing the related state court matter).

**Canon 4A(5)**. A judge may act pro se in all legal matters, including matters involving litigation

and matters involving appearances before or other dealings with governmental bodies. In so doing, a judge must not abuse the prestige of office to advance the interests of the judge or the judge's family.

**Canon 4B.** The changing nature of some organizations and their exposure to litigation make it necessary for a judge regularly to reexamine the activities of each organization with which the judge is affiliated to determine if the judge's continued association is appropriate. For example, in many jurisdictions, charitable hospitals are in court more often now than in the past.

**Canon 4C.** A judge may attend fund-raising events of law-related and other organizations although the judge may not be a speaker, a guest of honor, or featured on the program of such an event. Use of a judge's name, position in the organization, and judicial designation on an organization's letterhead, including when used for fund raising or soliciting members, does not violate Canon 4C if comparable information and designations are listed for others.

**Canon 4D(1), (2), and (3).** Canon 3 requires disqualification of a judge in any proceeding in which the judge has a financial interest, however small. Canon 4D requires a judge to refrain from engaging in business and from financial activities that might interfere with the impartial performance of the judge's judicial duties. Canon 4H requires a judge to report compensation received for activities outside the judicial office. A judge has the rights of an ordinary citizen with respect to financial affairs, except for limitations required to safeguard the proper performance of the judge's duties. A judge's participation in a closely held family business, while generally permissible, may be prohibited if it takes too much time or involves misuse of judicial prestige or if the business is likely to come before the court on which the judge serves. Owning and receiving income from investments do not as such affect the performance of a judge's duties.

**Canon 4D(5).** The restriction on using nonpublic information is not intended to affect a judge's ability to act on information as necessary to protect the health or safety of the judge or a member of a judge's family, court personnel, or other judicial officers if consistent with other provisions of this Code.

**Canon 4E.** Mere residence in the judge's household does not by itself make a person a member of the judge's family for purposes of this Canon. The person must be treated by the judge as a member of the judge's family.

The Applicable Date of Compliance provision of this Code addresses continued service as a fiduciary.

A judge's obligation under this Code and the judge's obligation as a fiduciary may come into conflict. For example, a judge should resign as a trustee if it would result in detriment to the trust to divest holdings whose retention would require frequent disqualification of the judge in violation of Canon 4D(3).

**Canon 4F.** The appropriateness of accepting extrajudicial assignments must be assessed in light of the demands on judicial resources and the need to protect the courts from involvement in matters that may prove to be controversial. Judges should not accept governmental appointments that could interfere with the effectiveness and independence of the judiciary, interfere with the performance of the judge's judicial responsibilities, or tend to undermine public confidence in the judiciary.

**Canon 4H.** A judge is not required by this Code to disclose income, debts, or investments, except as provided in this Canon. The Ethics Reform Act of 1989 and implementing regulations promulgated by the Judicial Conference impose additional restrictions on judges' receipt of compensation. That Act and those regulations should be consulted before a judge enters into any arrangement involving the receipt of compensation. The restrictions so imposed include but are not limited to: (1) a prohibition against receiving "honoraria" (defined as anything of value received for a speech, appearance, or article), (2) a prohibition against receiving compensation for service as a director, trustee, or officer of a profit or nonprofit organization, (3) a requirement that compensated teaching activities receive prior approval, and (4) a limitation on the receipt of "outside earned income."

## Canon 5: A Judge Should Refrain from Political Activity

(A) *General Prohibitions*. A judge should not:

(1) act as a leader or hold any office in a political organization;

(2) make speeches for a political organization or candidate, or publicly endorse or oppose a candidate for public office; or

(3) solicit funds for, pay an assessment to, or make a contribution to a political organization or candidate, or attend or purchase a ticket for a dinner or other event sponsored by a political organization or candidate.

(B) *Resignation upon Candidacy*. A judge should resign the judicial office if the judge becomes a candidate in a primary or general election for any office.

(C) *Other Political Activity*. A judge should not engage in any other political activity. This

provision does not prevent a judge from engaging in activities described in Canon 4.

COMMENTARY

The term "political organization" refers to a political party, a group affiliated with a political party or candidate for public office, or an entity whose principal purpose is to advocate for or against political candidates or parties in connection with elections for public office.

## Compliance with the Code of Conduct

Anyone who is an officer of the federal judicial system authorized to perform judicial functions is a judge for the purpose of this Code. All judges should comply with this Code except as provided below.

(A) Part-time Judge

A part-time judge is a judge who serves part-time, whether continuously or periodically, but is permitted by law to devote time to some other profession or occupation and whose compensation for that reason is less than that of a full-time judge. A part-time judge:

(1) is not required to comply with Canons 4A(4), 4A(5), 4D(2), 4E, 4F, or 4H(3);
(2) except as provided in the Conflict-of-Interest Rules for Part-time Magistrate Judges, should not practice law in the court on which the judge serves or in any court subject to that court's appellate jurisdiction, or act as a lawyer in a proceeding in which the judge has served as a judge or in any related proceeding.

(B) Judge Pro Tempore

A judge pro tempore is a person who is appointed to act temporarily as a judge or as a special master.

(1) While acting in this capacity, a judge pro tempore is not required to comply with Canons 4A(4), 4A(5), 4D(2), 4D(3), 4E, 4F, or 4H(3); further, one who acts solely as a special master is not required to comply with Canons 4A(3), 4B, 4C, 4D(4), or 5.
(2) A person who has been a judge pro tempore should not act as a lawyer in a proceeding in which the judge has served as a judge or in any related proceeding.

(C) Retired Judge

A judge who is retired under 28 U.S.C. § 371(b) or § 372(a) (applicable to Article III judges), or who is subject to recall under § 178(d) (applicable to judges on the Court of Federal Claims), or