UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

M.D. RICHARD ARJUN KAUL, *et al.*,
　　　　　　　　　Plaintiffs,

-v-

INTERCONTINENTAL EXCHANGE, *et al.*,
　　　　　　　　　Defendants.

21-CV-6992 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

　　*Pro se* Plaintiff Richard Arjun Kaul has filed nearly two dozen repetitive lawsuits in various courts relating to the revocation of his license to practice medicine in New Jersey. These lawsuits are meritless and appear to have been filed for the purpose of harassing and imposing costs on the Defendants. On September 12, 2022, this Court issued a filing injunction against Kaul, prohibiting him from filing or pursuing cases arising from the same facts in any federal district court without first obtaining permission from this Court. Despite that injunction, Kaul has continued to file numerous new cases in federal district courts around the country asserting the same meritless claims in direct violation of this Court's order. Defendants have moved for contempt sanctions. This Court held a contempt hearing on June 17, 2025, at which Kaul did not appear. For the reasons that follow, Defendants' motions are granted and Kaul is held in contempt.

**I.　Background**

　　**A.　Filing History Before the 2022 Injunction Order**

　　The background of this case and of Kaul's other lawsuits is described in this Court's September 12, 2022 opinion and order. *Kaul v. Intercontinental Exchange*, No. 21-CV-6992, 2022 WL 4133427 (S.D.N.Y. Sept. 12, 2022).

1

"In March 2014, the New Jersey State Board of Medical Examiners . . . revoked [Plaintiff Richard Arjun Kaul's] medical license." *Kaul v. Christie*, 372 F. Supp. 3d 206, 215 (D.N.J. 2019). It found that "his performance of spine surgeries on 11 patients without proper training and experience constituted gross and repeated malpractice, negligence, and incompetence." *Id.* Kaul did not appeal the Board's decision to the New Jersey Superior Court as permitted by state law. *Id.* at 225. Kaul then began filing a series of lawsuits around the country. These lawsuits generally alleged that "a network of politically connected neurosurgeons wanted to make an example of him," and so "with the assistance of a cabal of lawyers, hospitals, insurance companies, and media figures, they importuned public officials to banish him from the practice of medicine in New Jersey." *Id.* at 215.

Kaul filed five substantially similar cases in the Southern District of New York. The first four were transferred to the District of New Jersey. *See Kaul v. Christie*, No. 16-CV-1346 (S.D.N.Y. Apr. 19, 2016) (Sullivan, J.) (transferring action to D.N.J.); *Kaul v. Christie*, No. 18-CV-3131, 2018 WL 10038784 (S.D.N.Y. Apr. 11, 2018) (McMahon, J.) (transferring action to D.N.J.); *Kaul v. Schumer*, No. 19-CV-3046 (S.D.N.Y. May 29, 2019) (Stanton, J.) (transferring action to D.N.J.); *Kaul v. Murphy*, 21-CV-5293 (S.D.N.Y. June 21, 2021) (Briccetti, J.) (transferring action to D.N.J.). The fifth case filed in the S.D.N.Y. was this case, filed in 2021 and discussed below.

Kaul filed a case in the Northern District of Georgia alleging that New Jersey officials targeted him. That case too was transferred to the District of New Jersey. *See Patel v. Crist*, No. 19-CV-739, 2019 WL 11583344, at *1 (N.D. Ga. Apr. 2, 2019) (Brown, J.). Kaul filed two cases in the District of Columbia. One was dismissed in part and otherwise transferred to the District of New Jersey. *See Kaul v. Fed'n of State Med. Bds.*, No. 19-CV-3050, 2020 WL

7042821, at *1 (D.D.C. Dec. 1, 2020) (Chutkan, J.); *Kaul v. Fed'n of State Med. Bds.*, No. 19-CV-3050, 2021 WL 1209211, at *1 (D.D.C. Mar. 31, 2021) (Chutkan, J.). The other was dismissed *sua sponte*. *See Kaul v. Fed'n of State Med. Bds.*, No. 20-CV-1612, 2021 WL 6549978, at *1 (D.D.C. Nov. 23, 2021) (Chutkan, J.) Kaul filed a case in the District of Connecticut, which was also transferred to the District of New Jersey. *See Kaul v. Murphy*, No. 21-CV-439, 2021 WL 1601149, at *2 (D. Conn. Apr. 23, 2021) (Bryant, J.). Kaul filed a case in the District of Massachusetts. It was dismissed for lack of venue and transfer was refused. *See Kaul v. Bos. Partners, Inc.*, No. 21-CV-10326, 2021 WL 3272216, at *1 (D. Mass. July 30, 2021) (Burroughs, J.). Kaul filed a case in the Northern District of Texas. It was dismissed with prejudice. *See Kaul v. Fed'n of State Med. Bds.*, No. 21-CV-57, 2021 WL 6550884, at *1 (N.D. Tex. Sept. 17, 2021) (Ray, Jr., Mag. J.), *report and recommendation adopted*, No. 21-CV-57, 2022 WL 171294 (N.D. Tex. Jan. 19, 2022) (O'Connor, J.). Kaul filed a case in the Northern District of Illinois, which was dismissed *sua sponte* as frivolous. *See Kaul v. Allstate Ins. Co.*, No. 21-CV-736 (N.D. Ill. Apr. 13, 2022) (Ellis, J.).

Multiples judges in the District of New Jersey have dismissed Kaul's cases that were filed in or transferred to that court. *See, e.g.*, *Kaul v. Christie*, No. 16-CV-2364, 2019 WL 920815 (D.N.J. Feb. 22, 2019) (McNulty, J.) (granting motion to dismiss); *Kaul v. Christie*, 372 F. Supp. 3d 206 (D.N.J. Feb. 25, 2019) (McNulty, J.) (granting motion to dismiss); *Kaul v. Christie*, No. 16-CV-2364, 2019 WL 13176430, at *4 (D.N.J. July 29, 2019) (Martinotti, J.) (denying motion for reconsideration); *Patel v. Crist*, No. 19-CV-9232, 2020 WL 64618, at *1 (D.N.J. Jan. 7, 2020) (Vazquez, J.) (granting motion to dismiss); *Patel v. Crist*, No. 19-CV-8946, 2020 WL 64571, at *1 (D.N.J. Jan. 7, 2020) (Vazquez, J.) (granting motion to dismiss); *Patel v. Crist*, No. 19-CV-9232, 2020 WL 6156772, at *1 (D.N.J. Oct. 20, 2020) (Vazquez, J.) (granting

motion to dismiss); *Patel v. Crist*, No. 19-CV-8946, 2020 WL 6156751, at *1 (D.N.J. Oct. 20, 2020) (Vazquez, J.) (granting motion to dismiss); *Kaul v. Murphy*, No. 21-CV-13063, 2021 WL 3663873, at *1 (D.N.J. July 9, 2021) (Wolfson, J.) (dismissing complaint *sua sponte*; noting that Kaul "has been a frequent, vexatious litigant before this Court"). Kaul has filed additional lawsuits and then voluntarily dismissed them after defendants appeared through counsel and filed motions and other submissions. *See, e.g., Kaul v. Federation of State Med. Bds.*, No. 20-CV-18853 (D.N.J.); *Kaul v. Murphy*, 21-CV-9788 (D.N.J.). Kaul initially filed appeals of certain of the dismissals of his cases, but then voluntarily dismissed his appeals. *See, e.g.*, *Kaul v. Christie*, No. 19-1651, 2019 WL 4733531, at *1 (3d Cir. June 20, 2019) (dismissing appeal pursuant to Fed. R. App. P. 42(b)); *Kaul v. Stein*, No. 20-3522, 2021 WL 6197149, at *1 (3d Cir. Nov. 12, 2021) (dismissing appeal pursuant to Fed. R. App. P. 42(b)); (ECF No. 101 at 3-4).

Plaintiff Kaul has never received relief in any of these cases.

### B.    The 2022 Filing Injunction

Kaul filed this action on August 19, 2021. On September 12, 2022, this Court granted Defendants' motions to dismiss the amended complaint and dismissed the complaint with prejudice, concluding that it failed to meet the requirements of Rule 8 of the Federal Rules of Civil Procedure, failed to establish venue in the Southern District of New York, and failed to state a claim on which relief could be granted. In addition, after reviewing Kaul's filing history described above, the Court enjoined Kaul from filing additional lawsuits against any of the Defendants based on the same facts without leave of this Court. *See Kaul v. Intercontinental Exchange*, No. 21-CV-6992, 2022 WL 4133427, at *4-9 (S.D.N.Y. Sept. 12, 2022) ("Injunction Order").

In considering whether to impose a filing injunction, the Court first considered each of the factors set forth in *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 714 (2d Cir. 2019). The Court found as follows:

> First, Plaintiff Kaul has an extensive history of duplicative lawsuits. Over the past decade, Plaintiff Kaul has filed at least twelve lawsuits outside the District of New Jersey. . . . Those lawsuits all concern the denial of his medical license in New Jersey as well as subsequent related proceedings. Courts have dismissed claims on preclusion grounds. . . . In those cases, Plaintiff Kaul has a history of being a vexatious and harassing litigant. Plaintiff Kaul harasses officials to manufacture litigation. . . . Plaintiff Kaul harasses opposing parties during litigation. . . . These facts weigh heavily in favor of an injunction.
>
> Second, Plaintiff Kaul has no objective expectation of prevailing. He has not prevailed in any of the twelve duplicative cases he has filed with the district courts around the United States. As explained above, and as other courts have found, the filings in these cases are "bizarre, far-fetched, and reliant on flawed premises."
>
> Third, although Plaintiff Kaul proceeds *pro se*, he is a sophisticated litigant. . . . Regardless, given the other factors, an injunction is appropriate for Plaintiff Kaul even though he proceeds *pro se*.
>
> Fourth, Plaintiff Kaul has caused needless expense to other parties and needlessly burdened court personnel. For example, he regularly files documents that must be stricken. . . .
>
> Fifth, lesser sanctions would not be adequate. For years, Plaintiff Kaul has filed cases in improper venues and then voluntarily dismissed them once they reach the District of New Jersey. . . . There is no reason to think that practice will abate. Further, Plaintiff has already ignored an anti-filing injunction that covers a defendant in this case. . . . Absent an injunction, it is likely that Kaul would continue here.

Injunction Order at *7-8 (case and record citations omitted). Acknowledging that a filing injunction must be "appropriately narrow," *Bd. of Managers of 2900 Ocean Ave. Condo. v. Bronkovic*, 83 F.3d 44, 45 (2d Cir. 1996), the Court concluded that, in light of Kaul's history and litigation practices, an injunction against his filing of any lawsuit arising from the same allegations in any federal district court, without leave of this Court, was necessary to address his vexatious and abusive litigation conduct. Injunction Order at *8.

Accordingly, this Court issued the following injunction:

> From the date of this Opinion and Order, Plaintiff Kaul is barred from filing in any United States district court any action, motion, petition, complaint, or request for relief against any of the Defendants named in this litigation that relates to or arises from (i) the denial of his medical license; (ii) subsequent litigation proceedings initiated by the Defendants here before the date of this Order; (iii) subsequent litigation proceedings initiated by Plaintiff Kaul before the date of this Order; without first obtaining leave from this Court. Any motion for leave must include the caption "Request for Permission to File under Filing Injunction" and must be submitted to the Pro Se Intake Unit of this Court along with Plaintiff Kaul's proposed filings.
>
> If Plaintiff Kaul violates this Opinion and Order and files any materials without first obtaining leave to file, any request will be denied for failure to comply with this Opinion and Order, and Plaintiff Kaul may be subject to sanctions, including monetary penalties or contempt. . . . The Court clarifies that this filing injunction does not prevent Kaul from filing an appeal from this Opinion and Order.

Injunction Order at *9.

Kaul did not file an appeal from the Injunction Order, despite the Court's explicit notice that the order permitted an appeal.

### C. Filing History After the 2022 Injunction Order

Following this Court's issuance of the Injunction Order on September 12, 2022, Kaul proceeded to file at least nine lawsuits in federal district courts arising from the same allegations against some or all of the same Defendants without seeking leave of this Court. These actions include the following:

- *Kaul v. Center for Personalized Ed. For Physicians*, No. 23-CV-672 (E.D.N.C.)
- *Kaul v. Intercontinental Exchange*, No. 23-CV-2016 (S.D.N.Y.)
- *Kaul v. Christie*, No. 23-CV-3473 (D.N.J.)
- *Kaul v. Federation State Medical Bds.*, No. 23-CV-22325 (S.D. Fla.)
- *Kaul v. Christie*, No. 23-CV-22582 (S.D. Fla.)
- *Kaul v. Federation State Medical Bds.*, No. 24-CV-3180 (S.D. Tex.)

- *Kaul v. Federation State Medical Bds.*, No. 25-CV-25 (S.D. Miss.)

- *Kaul v. Federation State Medical Bds.*, No. 25-CV-641 (D.D.C.)

- *Kaul v. Federation State Medical Bds.*, No. 25-CV-1676 (S.D. Tex.)

The first eight of these cases were dismissed on various grounds, including on the basis of the Injunction Order, and some were voluntarily dismissed by Kaul after the defendants filed motions to dismiss. The last case—No. 25-CV-1676 (S.D. Tex.)—remains pending, with the defendants having filed multiple briefs and Kaul having filed an interlocutory appeal to the Fifth Circuit apparently challenging the district court's stay of discovery.

On March 15, 2024, this Court, after learning of Kaul's filing of E.D.N.Y. Case No. 23-CV-672, ordered Kaul to withdraw the action within 14 days based on the Injunction Order, warning that he "may be subject to monetary sanctions and contempt" if he failed to do so. (ECF No. 173.)

Again on October 2, 2024, this Court ordered Kaul to withdraw S.D. Tex. Case No. 24-CV-3180 within 14 days or face "monetary sanctions and contempt." (ECF No. 177.)

Kaul not only refused to comply with this Court's 2024 orders by withdrawing the actions, but continued to litigate the cases, including by filing discovery demands, motions for summary judgment, motions for default judgment, and appeals.

Kaul did file a brief response to the October 2, 2024 order dated the following day. (ECF No. 178.) In his response, Kaul stated that "you do not have the authority to enter any orders as to my prosecution of" these cases, and that the Injunction Order was "invalidated" by the Supreme Court's decision in *SEC v. Jarkesy*.

Kaul has referenced the Injunction Order in various filings in these cases and has made clear that he has no intention of complying with it. For example, in a filing with the Southern

7

District of Florida dated August 20, 2023, Kaul stated: "[W]e do inform Defendants that should [the S.D. Fla.] case be dismissed, . . . these conditions will be immaterial to the filing of a case in another district court, for the simple fact that the [Injunction Order], under the law, remains an admitted 'Fraud on the Court.'"  (ECF No. 180-15 at 3.)

### D. Motions for Contempt

In February, March, and April of 2025, Defendants filed and briefed motions to hold Kaul in contempt for his violation of the Injunction Order as well as the March 15, 2024 and October 2, 2024 orders.  (*See* ECF Nos. 179, 180, 182, 188.)  Kaul filed various submissions purporting to respond to Defendants' motions.  (See ECF Nos. 181, 185, 186, 187, 191, 192, 193, 194, 196.)

On May 8, 2025, this Court ordered Kaul to appear for a hearing on June 17, 2025 to show cause as to why he should not be held in contempt for violation of the Injunction Order and subsequent orders.  (ECF No. 190.)

On June 17, 2025, the Court held an in-person hearing as scheduled.  Kaul did not appear.

## II. Discussion

"A contempt order is warranted only where the moving party establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995).  Because contempt is a "potent weapon," the Second Circuit has cautioned that "courts should not resort [to a contempt order] 'where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct.'" *Id.* (first quoting *Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967); then quoting *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885)).  Specifically, to demonstrate contempt, "a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is

8

clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Id.* Further, "a civil contempt sanction must only be compensatory or coercive, and may not be punitive." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 144 (2d Cir. 2014).

### A.   Civil Contempt

Applying the Second Circuit's analysis, the Court finds that Kaul is in contempt and that civil contempt sanctions are warranted.

First, the Injunction Order is "clear and unambiguous." That order explicitly stated that "Kaul is barred from filing in any United States district court any action, motion, petition, complaint, or request for relief against any of the Defendants named in this litigation that relates to or arises from (i) the denial of his medical license . . . without first obtaining leave from this Court." Kaul does not raise any dispute or suggest any ambiguity as to the meaning or scope of the Injunction Order. Moreover, the March 15, 2024 order and the October 2, 2024 order clearly and unambiguously ordered Kaul to withdraw two specific actions "within 14 days" or face "monetary sanctions and contempt," but he refused to do so.

Second, the evidence of Kaul's noncompliance is clear and convincing—and undisputed. Following the Injunction Order, Kaul proceeded to file at least nine new lawsuits relating to the denial of his medical license without ever seeking leave of the Court, in direct violation of the order. In addition, as set forth above, he refused to comply with two orders to withdraw specific lawsuits within 14 days, but continued litigating those cases. There is no dispute that Kaul was aware of all of these orders and willfully refused to comply with them, as evidenced by his multiple references to the orders in his voluminous filings and his assertions that this Court "do[es] not have the authority" to issue them. (ECF No. 178.)

9

Third, Kaul "has not diligently attempted to comply in a reasonable manner." To the contrary, Kaul has knowingly and willfully defied the Injunction Order and the subsequent orders by continuing to file and litigate cases in direct violation of the orders. Further, he has made clear that he will continue to do so. (*See, e.g.,* ECF No. 180-15 at 3.)

Kaul does not deny that these criteria are satisfied. Instead, in response to Defendants' motions for contempt, he has filed hundreds of pages of documents asserting that the Defendants, various public officials, and now the courts, are part of a wide-ranging conspiracy to exclude Kaul from the practice of spinal surgery through corruption and bribery. Most of these assertions are similar to those he has been making in his various lawsuits. To the extent the Court can discern arguments that are potentially relevant to the present motions, none of those arguments has merit.

First, Kaul asserts that the Injunction Order is invalid because when the order was issued I had "entered into an admitted bribery related quid pro quo scheme" with Defendants and colluded with them to unlawfully preclude redress for the denial of Kaul's medical license. (ECF No. 192 at 4.) There is no basis for that assertion, and Kaul provides no facts or evidence supporting it. The Injunction Order was based entirely on the applicable law, as set forth in the order. I neither had nor have any personal or financial interest in the case or the parties.[1] Kaul

---

[1] In one of his filings in response to the motions for contempt, Kaul asserts that I am "interminably conflicted" due to my allegedly corrupt conduct. (ECF No. 192 at 5.) Kaul has made the same allegations in several lawsuits in which he has named me as a defendant based on my issuance of the Injunction Order in this case, all of which have been dismissed. *See Kaul v. Oetken*, No. 24-CV-185 (E.D.N.C.); *Kaul v. Oetken*, No. 24-CV-621 (S.D. Miss.); *Kaul v. Oetken*, No. 25-CV-147 (D.N.D.); *Kaul v. Oetken*, No. 25-CV-6495 (S.D.N.Y.). Although Kaul has not moved for my recusal, I have considered whether recusal is warranted based on his assertion of a "conflict." A judge is required to recuse himself from "any proceeding in which his impartiality might reasonable be questioned." 28 U.S.C. § 455(a). However, a showing of personal bias that would warrant recusal must ordinarily be based on "extrajudicial conduct" and "not conduct which arises in a judicial context." *Lewis v. Tuscan Dairy Farms, Inc.*, 25 F.3d

appears to argue that I "admitted" to being part of a bribery scheme by failing to respond to certain requests for admission in the Southern District of Mississippi action. He is wrong. All discovery was stayed in that case, and therefore no requests for admission were properly served or required a response. *See Kaul v. Oetken*, No. 24-CV-621 (S.D. Miss.), ECF Nos. 21, 37. Judge Reeves dismissed the claims based on judicial immunity and held that Kaul's allegation of a "quid pro quo bribery scheme" was a "legal conclusion for which [Kaul] has not provided any underlying facts." *Id.*, ECF No. 49 at 3 n.3.

Second, Kaul suggests in some of his filings that the Injunction Order is invalid under the Supreme Court's decision in *Securities & Exchange Comm'n v. Jarkesy*, 603 U.S. 109 (2024). (*See, e.g.,* ECF No. 186 at 7.) In that case, the Court held that a defendant has a right to a jury trial under the Seventh Amendment to the Constitution when the SEC seeks civil penalties for securities fraud. Nothing in the Court's decision alters the legal justification for the Injunction Order or the lack of merit in Kaul's repetitive lawsuits relating to his medical license.

Finally, Kaul appears to suggest in certain filings that the Injunction Order is invalid because it is a "nationwide injunction." The Supreme Court recently addressed "universal

---

1138, 1141 (2d Cir. 1994) (internal quotation marks omitted). That is because judges are absolutely immune from suits for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). And because recusal "necessarily results in a waste of the judicial resources which have already been invested in the proceeding," *In re Int'l Business Machines Corp.*, 618 F.2d 923, 933 (2d Cir. 1980), a judge is "as much obliged not to recuse himself when it is not called for as he is obligated to when it is." *In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988). "[I]t is improper for a lawyer or litigant . . . to *create* the ground on which he seeks recusal of the judge assigned to the case. That is arrant judge-shopping." *Sullivan v. Conway*, 157 F.3d 1092, 1096 (7th Cir. 1998). Moreover, "it is clear that a judge is not disqualified . . . merely because a litigant sues or threatens to sue him," and recusal is not required where there is "no legitimate basis for suing the judge." *Almonte v. Law Enforcement Agency*, No. 21-CV-6062, 2021 WL 4554629, at *2 (S.D.N.Y. Oct. 1, 2021) (internal quotation marks and citations omitted). Because there is no legitimate basis for Kaul's lawsuits naming me as a defendant, recusal is unwarranted.

injunctions" in *Trump v. CASA, Inc.*, 145 S. Ct. 2540 (2025). In doing so, the Court made clear that "[e]ven a traditional, parties-only injunction can apply beyond the jurisdiction of the issuing court." *Id.* at 2548 n.1. The Injunction Order is binding on a *party* to this case (Kaul), and it protects *parties* to this case (Defendants). It is therefore not implicated by the *CASA* Court's restriction of "universal injunctions." Nor is this Court aware of any other governing authority that would prohibit the injunction at issue here based on its scope. Moreover, Kaul had the opportunity to appeal the Injunction Order to the United States Court of Appeals for the Second Circuit, but he did not do so.

>   **B.** **Sanctions**

Having found civil contempt, the Court next considers the issue of sanctions. A court enjoys broad discretion in determining the appropriate sanction for civil contempt. "Civil sanctions have two purposes: to coerce compliance with a court order and to compensate" a party harmed by the non-compliance. *CBS Broad., Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 101 (2d Cir. 2016); *see also Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 657 (2d Cir. 2004); *EEOC v. Local 28 of Sheet Metal Workers Int'l Ass'n*, 247 F.3d 333, 336 (2d Cir. 2001); *New York State Nat'l Org. for Women v. Terry*, 159 F.3d 86, 93 (2d Cir. 1998). "Such sanctions may not be imposed as a purely punitive measure." *Paramedics*, 369 F.3d at 657.

There are both compensatory and coercive grounds for sanctions here.

>   **1.** **Compensatory Sanctions**

When a contempt sanction is compensatory in purpose, "the sanction should correspond at least to some degree with the amount of damages." *Id.* (quoting *King*, 65 F.3d at 1062). One permissible sanction is an assessment of attorney's fees and costs incurred by the other side as a result of a party's bad faith conduct. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 107,

107-08 (2017). In some cases—including where "a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior"—a sanction of the entirety of a party's fees and costs may be warranted. *Id*. at 110.

That is the case here. Kaul filed multiple repetitive lawsuits against Defendants around the country in knowing violation of the Injunction Order. These filings were abusive, harassing, and vexatious. Kaul litigated in a manner that was designed to maximize the degree of harassment: knowingly filing lawsuits in improper venues; serving oppressive discovery demands even though discovery was stayed; filing premature motions for default judgment; and sometimes voluntarily dismissing a case after Defendants went to the trouble of filing a lengthy motion to dismiss. Kaul's conduct in violation of the Injunction Order required Defendants to incur substantial costs by paying outside counsel to appear and respond, whack-a-mole-style, to Kaul's filings in courts around the country. None of the fees and costs expended by Defendants as a result of Kaul's filings in his lawsuits filed after, and within the scope of, the Injunction Order would have been incurred absent his willful violation of the Injunction Order. A compensatory sanction in the amount of those fees and costs is therefore warranted.

    **2.**    **Coercive Sanctions**

Where the purpose of a civil sanction is to make a party comply with an order, the court must exercise its discretion in determining the proper sanction, considering the "character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947). In this regard, the court may resort to incarceration as a coercive sanction for civil contempt, such that "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act." *Int'l Union Mine Worker of Am. v. Bagwell*, 512 U.S. 821, 828-29 (1994); *see also Close-Up Int'l, Inc. v. Berov*, 474 F. App'x 790,

13

795 (2d Cir. 2012) (summary order) ("It is a widely[]held and long standing principle that detention as a means of coercing compliance with the court's order was an option well within the district court's inherent authority.").

     First, the harm of Kaul's continued contumacy is substantial. As discussed above, Kaul has filed at least nine cases in federal district courts in violation of the Injunction Order. Defendants have been directly harmed by having to pay substantial amounts in attorney's fees and costs, as well as by the distraction of having to deal with these repetitive filings in multiple courts. The courts have also been harmed, having spent countless hours in judicial and staff time responding to Kaul's repetitive filings. Kaul also routinely files onto the federal courts' electronic-filing system repetitive scanned documents of 200 to 400 pages, burdening that system.

     Second, the probable effectiveness of any remedy short of incarceration is doubtful. The Court has twice ordered Kaul to withdraw lawsuits or face "monetary sanctions and contempt," but he has refused to comply. He has indicated that he has no intention of complying with the Injunction Order, which he has termed a "Fraud on the Court." (ECF No. 180-15 at 3.) And Kaul has refused to withdraw the one action that remains pending—*Kaul v. Federation State Medical Bds.*, No. 25-CV-1676 (S.D. Tex.)—despite the Defendants' demands, their motion for contempt, and this Court's order to show cause.

     Although it is a drastic remedy, incarceration appears to be the only remedy that is likely to be effective in coercing compliance with this Court's orders. Before ordering Kaul's arrest by the United States Marshals, however, the Court will give him a final opportunity to cure the contempt by withdrawing the action that remains pending in the Southern District of Texas, as well as any other pending actions or appeals covered by the Injunction Order, within 14 days. If

he fails to do so, he will be subject to arrest and incarceration until he complies with the Court's orders by withdrawing any such actions or appeals. The Court will also appoint counsel for Kaul from the Federal Defenders of New York in the event that his arrest and incarceration become necessary.

### III. Conclusion

For the foregoing reasons, Defendants' motions for contempt are granted. Plaintiff Richard Arjun Kaul is hereby held in civil contempt of this Court's September 12, 2022 order (the Injunction Order) as well as this Court's March 15, 2024 and October 2, 2024 orders.

As a compensatory sanction, Kaul is ordered to pay the reasonable attorney's fees and costs incurred by Defendants as a result of Kaul's violation of those orders—i.e., attorney's fees and costs incurred in defending against all of Kaul's lawsuits filed after the date of the Injunction Order that name any of Defendants and relate to or arise from the denial of Kaul's medical license. Defendants shall file certifications detailing such fees and costs within 60 days after the date of this opinion and order.

With respect to a coercive sanction, the Court gives Kaul one final opportunity to dismiss any still-pending action or appeal that is within the scope of the Injunction Order within 14 days. If he fails to do so, he will be subject to arrest by the United States Marshals and detention until he complies with the Court's orders by withdrawing any such actions or appeals.

The Clerk of Court is directed to close the motions at ECF Nos. 179, 180, 182, and 188.

SO ORDERED.

Dated: September 12, 2025
       New York, New York

_____
J. PAUL OETKEN
United States District Judge