**www.drrichardkaul.com**

**SEPTEMBER 24, 2025**

**ATTENTION**:

JAMES PAUL OETKEN
40 FOLEY SQUARE
NEW YORK, NY 10007

**RE: KAUL v ICE ET AL**
    **21-CV-06992**
    **K11-7**
    **RE: NOTICE DISMISSAL**

As per the Court's September 12, 2025 entry at D.E. 202, please find submitted the following documents:

1. NOTICE OF DISMISSAL FOR RELEVANT DEFENDANTS IN K11-27 (KAUL v FSMB: 25-CV-01676)

2. NOTICE OF DISMISSAL FOR RELEVANT DEFENDANTS IN K11-31 (KAUL v FMB: 25-CV-23757)

Yours sincerely

_____
RICHARD ARJUN KAUL, MD

# Exhibit 1

**www.drrichardkaul.com**

**SEPTEMBER 22, 2025**

CLERK OF THE COURT
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
515 RUSK AVENUE
HOUSTON, TX 77002

**RE: KAUL v FEDERATION ET AL**
     **25-CV-01676**
     **K11-27**
     **NOTICE OF DISMISSAL**

Dear Judge Hanen,

Please accept this letter as notification of the dismissal of the following Defendants:

1. FEDERATION OF STATE MEDICAL BOARDS.
2. ALLSTATE INSURANCE COMPANY.
3. CHRISTOPHER J. CHRISTIE.
4. ROBERT FRANCIS HEARY.
5. DANIEL STOLZ.

This dismissal is made under duress and coercion consequent to the illegal threat of arrest and incarceration rendered by James Paul Oetken on September 12, 2025 (**EXHIBIT 1**).Please also find attached a copy of my response to this order (**EXHIBIT 2**).

Yours sincerely

_____
RICHARD ARJUN KAUL, MD

# **Exhibit 1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

M.D. RICHARD ARJUN KAUL, *et al.*,
                          Plaintiffs,

                -v-

INTERCONTINENTAL EXCHANGE, *et al.*,
                          Defendants.

21-CV-6992 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

*Pro se* Plaintiff Richard Arjun Kaul has filed nearly two dozen repetitive lawsuits in various courts relating to the revocation of his license to practice medicine in New Jersey. These lawsuits are meritless and appear to have been filed for the purpose of harassing and imposing costs on the Defendants. On September 12, 2022, this Court issued a filing injunction against Kaul, prohibiting him from filing or pursuing cases arising from the same facts in any federal district court without first obtaining permission from this Court. Despite that injunction, Kaul has continued to file numerous new cases in federal district courts around the country asserting the same meritless claims in direct violation of this Court's order. Defendants have moved for contempt sanctions. This Court held a contempt hearing on June 17, 2025, at which Kaul did not appear. For the reasons that follow, Defendants' motions are granted and Kaul is held in contempt.

I.      **Background**

        A.      **Filing History Before the 2022 Injunction Order**

        The background of this case and of Kaul's other lawsuits is described in this Court's September 12, 2022 opinion and order. *Kaul v. Intercontinental Exchange*, No. 21-CV-6992, 2022 WL 4133427 (S.D.N.Y. Sept. 12, 2022).

"In March 2014, the New Jersey State Board of Medical Examiners . . . revoked [Plaintiff Richard Arjun Kaul's] medical license." *Kaul v. Christie*, 372 F. Supp. 3d 206, 215 (D.N.J. 2019).  It found that "his performance of spine surgeries on 11 patients without proper training and experience constituted gross and repeated malpractice, negligence, and incompetence." *Id.* Kaul did not appeal the Board's decision to the New Jersey Superior Court as permitted by state law. *Id.* at 225.  Kaul then began filing a series of lawsuits around the country.  These lawsuits generally alleged that "a network of politically connected neurosurgeons wanted to make an example of him," and so "with the assistance of a cabal of lawyers, hospitals, insurance companies, and media figures, they importuned public officials to banish him from the practice of medicine in New Jersey." *Id.* at 215.

Kaul filed five substantially similar cases in the Southern District of New York.  The first four were transferred to the District of New Jersey. *See Kaul v. Christie*, No. 16-CV-1346 (S.D.N.Y. Apr. 19, 2016) (Sullivan, J.) (transferring action to D.N.J.); *Kaul v. Christie*, No. 18-CV-3131, 2018 WL 10038784 (S.D.N.Y. Apr. 11, 2018) (McMahon, J.) (transferring action to D.N.J.); *Kaul v. Schumer*, No. 19-CV-3046 (S.D.N.Y. May 29, 2019) (Stanton, J.) (transferring action to D.N.J.);  *Kaul v. Murphy*, 21-CV-5293 (S.D.N.Y. June 21, 2021) (Briccetti, J.) (transferring action to D.N.J.).  The fifth case filed in the S.D.N.Y. was this case, filed in 2021 and discussed below.

Kaul filed a case in the Northern District of Georgia alleging that New Jersey officials targeted him.  That case too was transferred to the District of New Jersey. *See Patel v. Crist*, No. 19-CV-739, 2019 WL 11583344, at *1 (N.D. Ga. Apr. 2, 2019) (Brown, J.).  Kaul filed two cases in the District of Columbia.  One was dismissed in part and otherwise transferred to the District of New Jersey. *See Kaul v. Fed'n of State Med. Bds.*, No. 19-CV-3050, 2020 WL

2

7042821, at *1 (D.D.C. Dec. 1, 2020) (Chutkan, J.); *Kaul v. Fed'n of State Med. Bds.*, No. 19-CV-3050, 2021 WL 1209211, at *1 (D.D.C. Mar. 31, 2021) (Chutkan, J.). The other was dismissed *sua sponte*. *See Kaul v. Fed'n of State Med. Bds.*, No. 20-CV-1612, 2021 WL 6549978, at *1 (D.D.C. Nov. 23, 2021) (Chutkan, J.) Kaul filed a case in the District of Connecticut, which was also transferred to the District of New Jersey. *See Kaul v. Murphy*, No. 21-CV-439, 2021 WL 1601149, at *2 (D. Conn. Apr. 23, 2021) (Bryant, J.). Kaul filed a case in the District of Massachusetts. It was dismissed for lack of venue and transfer was refused. *See Kaul v. Bos. Partners, Inc.*, No. 21-CV-10326, 2021 WL 3272216, at *1 (D. Mass. July 30, 2021) (Burroughs, J.). Kaul filed a case in the Northern District of Texas. It was dismissed with prejudice. *See Kaul v. Fed'n of State Med. Bds.*, No. 21-CV-57, 2021 WL 6550884, at *1 (N.D. Tex. Sept. 17, 2021) (Ray, Jr., Mag. J.), *report and recommendation adopted*, No. 21-CV-57, 2022 WL 171294 (N.D. Tex. Jan. 19, 2022) (O'Connor, J.). Kaul filed a case in the Northern District of Illinois, which was dismissed *sua sponte* as frivolous. *See Kaul v. Allstate Ins. Co.*, No. 21-CV-736 (N.D. Ill. Apr. 13, 2022) (Ellis, J.).

Multiples judges in the District of New Jersey have dismissed Kaul's cases that were filed in or transferred to that court. *See, e.g.*, *Kaul v. Christie*, No. 16-CV-2364, 2019 WL 920815 (D.N.J. Feb. 22, 2019) (McNulty, J.) (granting motion to dismiss); *Kaul v. Christie*, 372 F. Supp. 3d 206 (D.N.J. Feb. 25, 2019) (McNulty, J.) (granting motion to dismiss); *Kaul v. Christie*, No. 16-CV-2364, 2019 WL 13176430, at *4 (D.N.J. July 29, 2019) (Martinotti, J.) (denying motion for reconsideration); *Patel v. Crist*, No. 19-CV-9232, 2020 WL 64618, at *1 (D.N.J. Jan. 7, 2020) (Vazquez, J.) (granting motion to dismiss); *Patel v. Crist*, No. 19-CV-8946, 2020 WL 64571, at *1 (D.N.J. Jan. 7, 2020) (Vazquez, J.) (granting motion to dismiss); *Patel v. Crist*, No. 19-CV-9232, 2020 WL 6156772, at *1 (D.N.J. Oct. 20, 2020) (Vazquez, J.) (granting

motion to dismiss); *Patel v. Crist*, No. 19-CV-8946, 2020 WL 6156751, at *1 (D.N.J. Oct. 20,

2020) (Vazquez, J.) (granting motion to dismiss); *Kaul v. Murphy*, No. 21-CV-13063, 2021 WL

3663873, at *1 (D.N.J. July 9, 2021) (Wolfson, J.) (dismissing complaint *sua sponte*; noting that

Kaul "has been a frequent, vexatious litigant before this Court").  Kaul has filed additional

lawsuits and then voluntarily dismissed them after defendants appeared through counsel and filed

motions and other submissions.  *See, e.g., Kaul v. Federation of State Med. Bds.*, No. 20-CV-

18853 (D.N.J.); *Kaul v. Murphy*, 21-CV-9788 (D.N.J.).  Kaul initially filed appeals of certain of

the dismissals of his cases, but then voluntarily dismissed his appeals.  *See, e.g.*, *Kaul v. Christie*,

No. 19-1651, 2019 WL 4733531, at *1 (3d Cir. June 20, 2019) (dismissing appeal pursuant to

Fed. R. App. P. 42(b)); *Kaul v. Stein*, No. 20-3522, 2021 WL 6197149, at *1 (3d Cir. Nov. 12,

2021) (dismissing appeal pursuant to Fed. R. App. P. 42(b)); (ECF No. 101 at 3-4).

Plaintiff Kaul has never received relief in any of these cases.

### B.      The 2022 Filing Injunction

Kaul filed this action on August 19, 2021.  On September 12, 2022, this Court granted

Defendants' motions to dismiss the amended complaint and dismissed the complaint with

prejudice, concluding that it failed to meet the requirements of Rule 8 of the Federal Rules of

Civil Procedure, failed to establish venue in the Southern District of New York, and failed to

state a claim on which relief could be granted.  In addition, after reviewing Kaul's filing history

described above, the Court enjoined Kaul from filing additional lawsuits against any of the

Defendants based on the same facts without leave of this Court.  *See Kaul v. Intercontinental

Exchange*, No. 21-CV-6992, 2022 WL 4133427, at *4-9 (S.D.N.Y. Sept. 12, 2022) ("Injunction

Order").

In considering whether to impose a filing injunction, the Court first considered each of

the factors set forth in *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 714 (2d Cir. 2019).  The

Court found as follows:

> First, Plaintiff Kaul has an extensive history of duplicative lawsuits.  Over the past
> decade, Plaintiff Kaul has filed at least twelve lawsuits outside the District of New
> Jersey. . . .  Those lawsuits all concern the denial of his medical license in New
> Jersey as well as subsequent related proceedings.  Courts have dismissed claims on
> preclusion grounds. . . .  In those cases, Plaintiff Kaul has a history of being a
> vexatious and harassing litigant.  Plaintiff Kaul harasses officials to manufacture
> litigation. . . .  Plaintiff Kaul harasses opposing parties during litigation. . . .  These
> facts weigh heavily in favor of an injunction.
>
> Second, Plaintiff Kaul has no objective expectation of prevailing.  He has not
> prevailed in any of the twelve duplicative cases he has filed with the district courts
> around the United States.  As explained above, and as other courts have found, the
> filings in these cases are "bizarre, far-fetched, and reliant on flawed premises."
>
> Third, although Plaintiff Kaul proceeds *pro se*, he is a sophisticated litigant. . . .
> Regardless, given the other factors, an injunction is appropriate for Plaintiff Kaul
> even though he proceeds *pro se*.
>
> Fourth, Plaintiff Kaul has caused needless expense to other parties and needlessly
> burdened court personnel.  For example, he regularly files documents that must be
> stricken. . . .
>
> Fifth, lesser sanctions would not be adequate.  For years, Plaintiff Kaul has filed
> cases in improper venues and then voluntarily dismissed them once they reach the
> District of New Jersey. . . .  There is no reason to think that practice will abate.
> Further, Plaintiff has already ignored an anti-filing injunction that covers a
> defendant in this case. . . .  Absent an injunction, it is likely that Kaul would
> continue here.

Injunction Order at *7-8 (case and record citations omitted).  Acknowledging that a filing

injunction must be "appropriately narrow," *Bd. of Managers of 2900 Ocean Ave. Condo. v.

Bronkovic*, 83 F.3d 44, 45 (2d Cir. 1996), the Court concluded that, in light of Kaul's history and

litigation practices, an injunction against his filing of any lawsuit arising from the same

allegations in any federal district court, without leave of this Court, was necessary to address his

vexatious and abusive litigation conduct.  Injunction Order at *8.

Accordingly, this Court issued the following injunction:

> From the date of this Opinion and Order, Plaintiff Kaul is barred from filing in any United States district court any action, motion, petition, complaint, or request for relief against any of the Defendants named in this litigation that relates to or arises from (i) the denial of his medical license; (ii) subsequent litigation proceedings initiated by the Defendants here before the date of this Order; (iii) subsequent litigation proceedings initiated by Plaintiff Kaul before the date of this Order; without first obtaining leave from this Court.  Any motion for leave must include the caption "Request for Permission to File under Filing Injunction" and must be submitted to the Pro Se Intake Unit of this Court along with Plaintiff Kaul's proposed filings.
>
> If Plaintiff Kaul violates this Opinion and Order and files any materials without first obtaining leave to file, any request will be denied for failure to comply with this Opinion and Order, and Plaintiff Kaul may be subject to sanctions, including monetary penalties or contempt. . . . The Court clarifies that this filing injunction does not prevent Kaul from filing an appeal from this Opinion and Order.

Injunction Order at *9.

Kaul did not file an appeal from the Injunction Order, despite the Court's explicit notice that the order permitted an appeal.

### C.    Filing History After the 2022 Injunction Order

Following this Court's issuance of the Injunction Order on September 12, 2022, Kaul proceeded to file at least nine lawsuits in federal district courts arising from the same allegations against some or all of the same Defendants without seeking leave of this Court.  These actions include the following:

- *Kaul v. Center for Personalized Ed. For Physicians*, No. 23-CV-672 (E.D.N.C.)

- *Kaul v. Intercontinental Exchange*, No. 23-CV-2016 (S.D.N.Y.)

- *Kaul v. Christie*, No. 23-CV-3473 (D.N.J.)

- *Kaul v. Federation State Medical Bds.*, No. 23-CV-22325 (S.D. Fla.)

- *Kaul v. Christie*, No. 23-CV-22582 (S.D. Fla.)

- *Kaul v. Federation State Medical Bds.*, No. 24-CV-3180 (S.D. Tex.)

6

- *Kaul v. Federation State Medical Bds.*, No. 25-CV-25 (S.D. Miss.)

- *Kaul v. Federation State Medical Bds.*, No. 25-CV-641 (D.D.C.)

- *Kaul v. Federation State Medical Bds.*, No. 25-CV-1676 (S.D. Tex.)

The first eight of these cases were dismissed on various grounds, including on the basis of the

Injunction Order, and some were voluntarily dismissed by Kaul after the defendants filed

motions to dismiss.  The last case—No. 25-CV-1676 (S.D. Tex.)—remains pending, with the

defendants having filed multiple briefs and Kaul having filed an interlocutory appeal to the Fifth

Circuit apparently challenging the district court's stay of discovery.

On March 15, 2024, this Court, after learning of Kaul's filing of E.D.N.Y. Case No. 23-

CV-672, ordered Kaul to withdraw the action within 14 days based on the Injunction Order,

warning that he "may be subject to monetary sanctions and contempt" if he failed to do so.  (ECF

No. 173.)

Again on October 2, 2024, this Court ordered Kaul to withdraw S.D. Tex. Case No. 24-

CV-3180 within 14 days or face "monetary sanctions and contempt."  (ECF No. 177.)

Kaul not only refused to comply with this Court's 2024 orders by withdrawing the

actions, but continued to litigate the cases, including by filing discovery demands, motions for

summary judgment, motions for default judgment, and appeals.

Kaul did file a brief response to the October 2, 2024 order dated the following day.  (ECF

No. 178.)  In his response, Kaul stated that "you do not have the authority to enter any orders as

to my prosecution of" these cases, and that the Injunction Order was "invalidated" by the

Supreme Court's decision in *SEC v. Jarkesy*.

Kaul has referenced the Injunction Order in various filings in these cases and has made

clear that he has no intention of complying with it.  For example, in a filing with the Southern

District of Florida dated August 20, 2023, Kaul stated:  "[W]e do inform Defendants that should [the S.D. Fla.] case be dismissed, . . . these conditions will be immaterial to the filing of a case in another district court, for the simple fact that the [Injunction Order], under the law, remains an admitted 'Fraud on the Court.'"  (ECF No. 180-15 at 3.)

### D.    Motions for Contempt

In February, March, and April of 2025, Defendants filed and briefed motions to hold Kaul in contempt for his violation of the Injunction Order as well as the March 15, 2024 and October 2, 2024 orders.  (*See* ECF Nos. 179, 180, 182, 188.)  Kaul filed various submissions purporting to respond to Defendants' motions.  (See ECF Nos. 181, 185, 186, 187, 191, 192, 193, 194, 196.)

On May 8, 2025, this Court ordered Kaul to appear for a hearing on June 17, 2025 to show cause as to why he should not be held in contempt for violation of the Injunction Order and subsequent orders.  (ECF No. 190.)

On June 17, 2025, the Court held an in-person hearing as scheduled.  Kaul did not appear.

## II.    Discussion

"A contempt order is warranted only where the moving party establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict."  *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995).  Because contempt is a "potent weapon," the Second Circuit has cautioned that "courts should not resort [to a contempt order] 'where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct.'"  *Id.* (first quoting *Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967); then quoting *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885)).  Specifically, to demonstrate contempt, "a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is

8

clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner."  *Id.*  Further, "a civil contempt sanction must only be compensatory or coercive, and may not be punitive."  *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 144 (2d Cir. 2014).

### A.    Civil Contempt

Applying the Second Circuit's analysis, the Court finds that Kaul is in contempt and that civil contempt sanctions are warranted.

First, the Injunction Order is "clear and unambiguous."  That order explicitly stated that "Kaul is barred from filing in any United States district court any action, motion, petition, complaint, or request for relief against any of the Defendants named in this litigation that relates to or arises from (i) the denial of his medical license . . . without first obtaining leave from this Court."  Kaul does not raise any dispute or suggest any ambiguity as to the meaning or scope of the Injunction Order.  Moreover, the March 15, 2024 order and the October 2, 2024 order clearly and unambiguously ordered Kaul to withdraw two specific actions "within 14 days" or face "monetary sanctions and contempt," but he refused to do so.

Second, the evidence of Kaul's noncompliance is clear and convincing—and undisputed. Following the Injunction Order, Kaul proceeded to file at least nine new lawsuits relating to the denial of his medical license without ever seeking leave of the Court, in direct violation of the order.  In addition, as set forth above, he refused to comply with two orders to withdraw specific lawsuits within 14 days, but continued litigating those cases.  There is no dispute that Kaul was aware of all of these orders and willfully refused to comply with them, as evidenced by his multiple references to the orders in his voluminous filings and his assertions that this Court "do[es] not have the authority" to issue them.  (ECF No. 178.)

Third, Kaul "has not diligently attempted to comply in a reasonable manner." To the contrary, Kaul has knowingly and willfully defied the Injunction Order and the subsequent orders by continuing to file and litigate cases in direct violation of the orders. Further, he has made clear that he will continue to do so. (*See, e.g.,* ECF No. 180-15 at 3.)

Kaul does not deny that these criteria are satisfied. Instead, in response to Defendants' motions for contempt, he has filed hundreds of pages of documents asserting that the Defendants, various public officials, and now the courts, are part of a wide-ranging conspiracy to exclude Kaul from the practice of spinal surgery through corruption and bribery. Most of these assertions are similar to those he has been making in his various lawsuits. To the extent the Court can discern arguments that are potentially relevant to the present motions, none of those arguments has merit.

First, Kaul asserts that the Injunction Order is invalid because when the order was issued I had "entered into an admitted bribery related quid pro quo scheme" with Defendants and colluded with them to unlawfully preclude redress for the denial of Kaul's medical license. (ECF No. 192 at 4.) There is no basis for that assertion, and Kaul provides no facts or evidence supporting it. The Injunction Order was based entirely on the applicable law, as set forth in the order. I neither had nor have any personal or financial interest in the case or the parties.[1] Kaul

---

[1] In one of his filings in response to the motions for contempt, Kaul asserts that I am "interminably conflicted" due to my allegedly corrupt conduct. (ECF No. 192 at 5.) Kaul has made the same allegations in several lawsuits in which he has named me as a defendant based on my issuance of the Injunction Order in this case, all of which have been dismissed. *See Kaul v. Oetken*, No. 24-CV-185 (E.D.N.C.); *Kaul v. Oetken*, No. 24-CV-621 (S.D. Miss.); *Kaul v. Oetken*, No. 25-CV-147 (D.N.D.); *Kaul v. Oetken*, No. 25-CV-6495 (S.D.N.Y.). Although Kaul has not moved for my recusal, I have considered whether recusal is warranted based on his assertion of a "conflict." A judge is required to recuse himself from "any proceeding in which his impartiality might reasonable be questioned." 28 U.S.C. § 455(a). However, a showing of personal bias that would warrant recusal must ordinarily be based on "extrajudicial conduct" and "not conduct which arises in a judicial context." *Lewis v. Tuscan Dairy Farms, Inc.*, 25 F.3d

appears to argue that I "admitted" to being part of a bribery scheme by failing to respond to certain requests for admission in the Southern District of Mississippi action. He is wrong. All discovery was stayed in that case, and therefore no requests for admission were properly served or required a response. *See Kaul v. Oetken*, No. 24-CV-621 (S.D. Miss.), ECF Nos. 21, 37. Judge Reeves dismissed the claims based on judicial immunity and held that Kaul's allegation of a "quid pro quo bribery scheme" was a "legal conclusion for which [Kaul] has not provided any underlying facts." *Id.*, ECF No. 49 at 3 n.3.

Second, Kaul suggests in some of his filings that the Injunction Order is invalid under the Supreme Court's decision in *Securities & Exchange Comm'n v. Jarkesy*, 603 U.S. 109 (2024). (*See, e.g.,* ECF No. 186 at 7.) In that case, the Court held that a defendant has a right to a jury trial under the Seventh Amendment to the Constitution when the SEC seeks civil penalties for securities fraud. Nothing in the Court's decision alters the legal justification for the Injunction Order or the lack of merit in Kaul's repetitive lawsuits relating to his medical license.

Finally, Kaul appears to suggest in certain filings that the Injunction Order is invalid because it is a "nationwide injunction." The Supreme Court recently addressed "universal

---

1138, 1141 (2d Cir. 1994) (internal quotation marks omitted). That is because judges are absolutely immune from suits for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). And because recusal "necessarily results in a waste of the judicial resources which have already been invested in the proceeding," *In re Int'l Business Machines Corp.*, 618 F.2d 923, 933 (2d Cir. 1980), a judge is "as much obliged not to recuse himself when it is not called for as he is obligated to when it is." *In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988). "[I]t is improper for a lawyer or litigant . . . to *create* the ground on which he seeks recusal of the judge assigned to the case. That is arrant judge-shopping." *Sullivan v. Conway*, 157 F.3d 1092, 1096 (7th Cir. 1998). Moreover, "it is clear that a judge is not disqualified . . . merely because a litigant sues or threatens to sue him," and recusal is not required where there is "no legitimate basis for suing the judge." *Almonte v. Law Enforcement Agency*, No. 21-CV-6062, 2021 WL 4554629, at *2 (S.D.N.Y. Oct. 1, 2021) (internal quotation marks and citations omitted). Because there is no legitimate basis for Kaul's lawsuits naming me as a defendant, recusal is unwarranted.

injunctions" in *Trump v. CASA, Inc.*, 145 S. Ct. 2540 (2025). In doing so, the Court made clear that "[e]ven a traditional, parties-only injunction can apply beyond the jurisdiction of the issuing court." *Id.* at 2548 n.1. The Injunction Order is binding on a *party* to this case (Kaul), and it protects *parties* to this case (Defendants). It is therefore not implicated by the *CASA* Court's restriction of "universal injunctions." Nor is this Court aware of any other governing authority that would prohibit the injunction at issue here based on its scope. Moreover, Kaul had the opportunity to appeal the Injunction Order to the United States Court of Appeals for the Second Circuit, but he did not do so.

### B.   Sanctions

Having found civil contempt, the Court next considers the issue of sanctions. A court enjoys broad discretion in determining the appropriate sanction for civil contempt. "Civil sanctions have two purposes: to coerce compliance with a court order and to compensate" a party harmed by the non-compliance. *CBS Broad., Inc. v. FilmOn.com, Inc*., 814 F.3d 91, 101 (2d Cir. 2016); *see also Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc*., 369 F.3d 645, 657 (2d Cir. 2004); *EEOC v. Local 28 of Sheet Metal Workers Int'l Ass'n*, 247 F.3d 333, 336 (2d Cir. 2001); *New York State Nat'l Org. for Women v. Terry*, 159 F.3d 86, 93 (2d Cir. 1998). "Such sanctions may not be imposed as a purely punitive measure." *Paramedics*, 369 F.3d at 657.

There are both compensatory and coercive grounds for sanctions here.

### 1.   Compensatory Sanctions

When a contempt sanction is compensatory in purpose, "the sanction should correspond at least to some degree with the amount of damages." *Id.* (quoting *King*, 65 F.3d at 1062). One permissible sanction is an assessment of attorney's fees and costs incurred by the other side as a result of a party's bad faith conduct. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 107,

107-08 (2017).  In some cases—including where "a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior"—a sanction of the entirety of a party's fees and costs may be warranted.  *Id*. at 110.

That is the case here.  Kaul filed multiple repetitive lawsuits against Defendants around the country in knowing violation of the Injunction Order.  These filings were abusive, harassing, and vexatious.  Kaul litigated in a manner that was designed to maximize the degree of harassment: knowingly filing lawsuits in improper venues; serving oppressive discovery demands even though discovery was stayed; filing premature motions for default judgment; and sometimes voluntarily dismissing a case after Defendants went to the trouble of filing a lengthy motion to dismiss.  Kaul's conduct in violation of the Injunction Order required Defendants to incur substantial costs by paying outside counsel to appear and respond, whack-a-mole-style, to Kaul's filings in courts around the country.  None of the fees and costs expended by Defendants as a result of Kaul's filings in his lawsuits filed after, and within the scope of, the Injunction Order would have been incurred absent his willful violation of the Injunction Order.  A compensatory sanction in the amount of those fees and costs is therefore warranted.

### 2.    Coercive Sanctions

Where the purpose of a civil sanction is to make a party comply with an order, the court must exercise its discretion in determining the proper sanction, considering the "character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired."  *United States v. United Mine Workers of Am*., 330 U.S. 258, 304 (1947).  In this regard, the court may resort to incarceration as a coercive sanction for civil contempt, such that "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act."  *Int'l Union Mine Worker of Am. v. Bagwell*, 512 U.S. 821, 828-29 (1994); *see also Close-Up Int'l, Inc. v. Berov*, 474 F. App'x 790,

795 (2d Cir. 2012) (summary order) ("It is a widely[]held and long standing principle that detention as a means of coercing compliance with the court's order was an option well within the district court's inherent authority.").

First, the harm of Kaul's continued contumacy is substantial. As discussed above, Kaul has filed at least nine cases in federal district courts in violation of the Injunction Order. Defendants have been directly harmed by having to pay substantial amounts in attorney's fees and costs, as well as by the distraction of having to deal with these repetitive filings in multiple courts. The courts have also been harmed, having spent countless hours in judicial and staff time responding to Kaul's repetitive filings. Kaul also routinely files onto the federal courts' electronic-filing system repetitive scanned documents of 200 to 400 pages, burdening that system.

Second, the probable effectiveness of any remedy short of incarceration is doubtful. The Court has twice ordered Kaul to withdraw lawsuits or face "monetary sanctions and contempt," but he has refused to comply. He has indicated that he has no intention of complying with the Injunction Order, which he has termed a "Fraud on the Court." (ECF No. 180-15 at 3.) And Kaul has refused to withdraw the one action that remains pending—*Kaul v. Federation State Medical Bds.*, No. 25-CV-1676 (S.D. Tex.)—despite the Defendants' demands, their motion for contempt, and this Court's order to show cause.

Although it is a drastic remedy, incarceration appears to be the only remedy that is likely to be effective in coercing compliance with this Court's orders. Before ordering Kaul's arrest by the United States Marshals, however, the Court will give him a final opportunity to cure the contempt by withdrawing the action that remains pending in the Southern District of Texas, as well as any other pending actions or appeals covered by the Injunction Order, within 14 days. If

he fails to do so, he will be subject to arrest and incarceration until he complies with the Court's orders by withdrawing any such actions or appeals. The Court will also appoint counsel for Kaul from the Federal Defenders of New York in the event that his arrest and incarceration become necessary.

## III.    Conclusion

For the foregoing reasons, Defendants' motions for contempt are granted. Plaintiff Richard Arjun Kaul is hereby held in civil contempt of this Court's September 12, 2022 order (the Injunction Order) as well as this Court's March 15, 2024 and October 2, 2024 orders.

As a compensatory sanction, Kaul is ordered to pay the reasonable attorney's fees and costs incurred by Defendants as a result of Kaul's violation of those orders—i.e., attorney's fees and costs incurred in defending against all of Kaul's lawsuits filed after the date of the Injunction Order that name any of Defendants and relate to or arise from the denial of Kaul's medical license. Defendants shall file certifications detailing such fees and costs within 60 days after the date of this opinion and order.

With respect to a coercive sanction, the Court gives Kaul one final opportunity to dismiss any still-pending action or appeal that is within the scope of the Injunction Order within 14 days. If he fails to do so, he will be subject to arrest by the United States Marshals and detention until he complies with the Court's orders by withdrawing any such actions or appeals.

The Clerk of Court is directed to close the motions at ECF Nos. 179, 180, 182, and 188.

SO ORDERED.

Dated: September 12, 2025
     New York, New York

                                   J. PAUL OETKEN
                                United States District Judge

# Exhibit 2

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

RICHARD ARJUN KAUL, MD ET AL.

Plaintiffs

v.                                          CIVIL ACTION.: 21-CV-06992-JPO

INTERCONTINENTAL EXCHANGE ET AL.

Defendants

_____


## PLAINTIFF KAUL NOTICE RE RESPONDENT-DEFENDANT OETKEN'S LACK OF JURISDICTION/AUTHORITY AS TO ALL MATTERS PERTAINING TO PETITIONER-PLAINTIFF KAUL


DATED: SEPTEMBER 18, 2025                    _____

                                            RICHARD ARJUN KAUL, MD

# WITHIN REFERENCED CASES OF 'THE KAUL CASES'

**K5:** KAUL v FEDERATION ET AL: 19-CV-3050-CLOSED – PRE JARKESY

**K11-7**: KAUL v ICE ET AL: 21-CV-6992-CLOSED ON SEPTEMBER 12, 2022 - POST 5TH CIRCUIT JARKESY (MAY 18, 2022)

**K11-14**: KAUL v FEDERATION ET AL: 23-CV-22325-CLOSED – POST 5TH CIRCUIT  JARKESY (MAY 18, 2022)

**K11-15**: KAUL v CHRISTIE/MURPHY: 23-CV-22582-CLOSED – POST 5TH CIRCUIT  JARKESY (MAY 18, 2022)

**K11-17**: KAUL v CPEP: 23-CV-00672-CLOSED  – POST 5TH CIRCUIT  JARKESY (MAY 18, 2022)

**K11-20**: KAUL v FEDERATION: 24-CV-03180-CLOSED – POST SCOTUS JARKESY (JUNE 27, 2024)

**K11-23**: KAUL v OETKEN ET AL: 24-CV-00621-OPEN – POST SCOTUS JARKESY (JUNE 27, 2024)

**K11-27:** KAUL v FEDERATION ET AL: 25-CV-01676 – OPEN - POST SCOTUS JARKESY (JUNE 27, 2024)

**K11-30:** KAUL v OETKEN ET AL: 25-CV-06495 – OPEN - POST SCOTUS JARKESY (JUNE 27, 2024)

## RESPONDENT-DEFENDANT OETKEN'S LACK OF JURISDICTION AMD AUTHORITY OVER ALL MATTERS PERTAINING TO PETITIONER-PLAINTIFF KAUL

For the below stated reasons and the simple fact that Respondent-Defendant Oetken and Petitioner-Plaintiff Kaul are current adversaries in K11-30, Respondent-Defendant Oetken is conflicted and without jurisdiction and or authority in all matters pertaining to Petitioner-Plaintiff Kaul. Thus, his September 12, 2025 submission is illegal and null and void.

## A FUNDAMENTAL FLAW OF THE SEPTEMBER 12, 2022 INJUNCTION

It has taken Petitioner Kaul some time to recognize that not only does the illegality of the September 12, 2022 injunction reside in the fact that it was admittedly procured through bribery, that <u>SCOTUS v Trump v CASA:24A884</u> ) June 27, 2025) found the issuance of nationwide injunctions by federal courts was never permitted within the 1781 Judiciary Act, but that injunctions are directed towards persons and entities that are causing harm, and the only person in **The Kaul Cases** that has submitted any evidence of harm is Petitioner Kaul, who has been subjected for a period of seven thousand five hundred and twelve (7,512) days-worth of offenses/violations/crimes/injuries to his life/liberty/property and human/civil/constitutional rights, and if any injunctions were to be issued they would be against **The Kaul Cases** Defendants to prohibit their continued offenses/violations/crimes.

Not one of **The Kaul Cases** Defendants has submitted any evidence of any harm, but moreover it is they who committed the offenses/violations/crimes against Petitioner Kaul in the **'Revocation-Cover-Up-Conspiracy'** (2005-2025), and it is they who have admitted to the offenses/violations/crimes and the law demands that they be held civilly and criminally accountable.

It was necessary to state these facts in order to properly re-frame Respondent Oetken's perverted legal scenario in which Petitioner Kaul is the persecutor/villain and he and **The Kaul Cases** Defendants are the victims/persecuted. Petitioner Kaul has existed in poverty/homelessness for over ten (10) years), has claimed and been granted IFP status multiple times and has had thirteen (13) years old the most productive years of his immensely successful professional career stolen from him by **The Kaul Cases** Defendants, has been falsely jailed/kidnapped, but yet **The Kaul Cases** Defendants with their careers/cars/houses/wealth/lawyers seek to have Petitioner Kaul jailed because he is using the courts to regain the losses and hold accountable those that committed the offenses/violations/crimes/injuries against him for twenty (20) years. The irony in all of this is that of **The Kaul Cases** Defendants were innocent, which they are not, they would simply have

taken the case to court in 2016 and proved their innocence, but they did not because they are guilty, a fact that have all admitted.

# THE OFFENSES/VIOLATIONS/CRIMES UNDERMINE THE BASIS FOR THE DISCUSSION OF THE CONTEMPT ORDER.

**OVERVIEW:**

Respondent Oetken's tactic is to within the first part of his argument attempt to frame his admitted offenses/violations/crimes as the legitimate activity of a federal judge and to then use the superficially sanitized crime omitted product of those offenses/violations/crimes as the second part of his argument and the basis for his conclusion of contempt.

**CRITIQUE – PART ONE**

Throughout **The Kaul Cases** some of the tactics used by The Kaul Cases Defendants and certain judges corrupted by **The Kaul Cases** Defendants including Respondent Oetken has been to simply ignore the controlling authorities as to the filing of new claims based on new injuries - Continuing Violations Doctrine/Bodner v. Banque Paribas 114 F.Supp.2d 117 (2000)/Lawlor v. National Screen Service Corp. I 349 U.S. 322 (1955) – which substantiate the filing of new claims with the incurrence of ongoing/**"new"** injuries.

Respondent Oetken, as with **The Kaul Cases** Defendants, attempts to justify his illegal September 12, 2022 purported nationwide injunction by falsely claiming that all of **The Kaul Cases** are identical and that the filing of these cases is simply for the purpose of harassing **The Kaul Cases** Defendants:

Firstly, the purpose of the cases is to cause a remediation/rectification/compensation/cessation for/of the ongoing/**"new"** seven thousand five hundred and twelve (7,512) days-worth of offenses/violations/crimes/injuries caused and maliciously continuing to be caused to the life/liberty/property/reputation and human/civil/constitutional rights of Petitioner Kaul. Or put otherwise if **The Kaul Cases** Defendants had accepted the multiple offers from Petitioner Kaul to commence settlement discussions (2016-2025) or complied with and not violated the multiple discovery orders issued by district courts (2019-2025), there would have been no need for Petitioner Kaul to continue to seek justice. But if one were to apply a retroactive process to

the events, if **The Kaul Cases** Defendants had simply not interfered and destroyed Petitioner Kaul's life/liberty/property/reputation and career and not sought to commence an entirely needless and illegal conspiracy against him, then none of **The Kaul Cases** that commenced on February 22, 2016 would have come to pass.

Respondent-Defendant Oetken in collusion/conspiracy with **The Kaul Cases** Defendants and their political co-conspirators are directly responsible for the predicament in which they now find themselves, a predicament Respondent-Defendant Oetken disingenuously attempts to 'frame' as one being due to Petitioner-Plaintiff Kaul's use of the legal system to harass them with **"frivolous … meritless …harassing …. etc"** claims. This particular 'let's switch the blame' scheme has been an almost constant defense/complaint of **The Kaul Cases** Defendants throughout the **'Revocation-Cover-Up-Conspiracy'** (2005-2025). If Petitioner-Plaintiff Kaul were to receive monetary compensation/reinstatement of NJ medical license/public apology tomorrow, the litigation against the K11-27 Defendants would cease. And so, the persecutorial harassing is that of the K11-27 Defendants and the victimization is that being perpetrated in Petitioner-Plaintiff Kaul (2005-2025).

And so having corrected Respondent-Defendant Oetken's false narrative, one that he used to issue the illegal K11-7 September 12, 2022 purported injunction and one that he uses again in the K11-7 September 12, 2025 opinion-order, Petitioner-Plaintiff Kaul addresses the second error.

Secondly, each and every case filed within **The Kaul Cases** is factually distinct to the prior one in that the days-worth of offenses/violations/crimes/injuries to Petitioner-Plaintiff Kaul's life/liberty/property/reputation has increased. For example, in K11-7, the number was six thousand four hundred and eleven (6,411-February 22, 2005 – September 12, 2022), while as of September 17, 2025 it is seven thousand five hundred and seven (7,507), a difference of one thousand and ninety-six (1,096) days of **"new"** injuries. These differences in factual foundation do pursuant to Continuing Violations Doctrine/Bodner v. Banque Paribas 114 F.Supp.2d 117 (2000)/Lawlor v. National Screen Service Corp. I 349 U.S. 322 (1955) substantiate the filing of

new claims. Neither **The Kaul Cases** Defendants nor any of the district court judges, including Respondent Oetken have at any point in **The Kaul Cases** differentiated/distinguished these controlling authorities.

**The Kaul Cases** except he omits those cases in which discovery/trial orders were entered and violated by **The Kaul Cases** Defendants (K5/K11-14/K11-15/K11-17/K11-20). In citing to K1, Respondent Oetken, who was sponsored to the federal bench by **The Kaul Cases** Defendant Charles E. Schumer fails to identify the fact that U.S.D.J. McNulty, the brother-in-law of **The Kaul Cases** Defendant Schumer, was disqualified on May 22, 2019 in K1 after Petitioner-Plaintiff Kaul exposed the fact that while he was a lawyer he had represented Defendant Heary in a 2002 medical malpractice case (Joseph Howard v UMDNJ/Heary-New Jersey Superior Court), in which Defendant Heary lied to a patient about his qualifications to perform a certain cervical spine surgery and performed an operation in which an otherwise healthy thirty-five (35) year was rendered quadriplegic by Respondent Heary. The jury delivered a verdict of $5.2 million and found Defendant Heary to have lied to the patient. The New Jersey Supreme Court upheld the verdict and rejected McNulty's arguments. Defendant Heary was a defendant in K1. On these grounds alone (Schumer-McNulty-Oetken) Respondent-Defendant Oetken is conflicted and should be disqualified from K11-7. K11-7 was closed by the court of the clerk on September 22, 2022, and never officially re-opened, but yet Respondent Oetken and **The Kaul Cases** Defendants continues to file documents in order to illegally use the docket as a defense against claims in other courts and a tool to violate the human/civil/constitutional rights of Petitioner Kaul.

Respondent-Defendant Oetken's reliance on **The Kaul Cases** that are pre-Jarkesy and Pre-Trump v CASA is futile as Jarkesy renders illegal the 2014 NJ jury-less article III judge-free $475,000 'fine' imposing license revocation as does Trump v CASA render illegal Respondent's September 12, 2022 nationwide injunction in K11-7. The illegal rendering of the 2014 NJ revocation does pursuant to the doctrine of 'Fraud on the Court', the 'Continuing Violations

Doctrine' and all due process clauses of the United States Constitution, render illegal every legal consequence of the illegal 2014 revocation.

Respondent-Defendant Oetken recites the K11-7 events while omitting the fact that his September 12, 2022 opinion-injunction failed to address/refute/contest/rebut Petitioner Kaul's distinguishing/differentiation arguments of every fact and case cited by the Defendants, thus causing an admission of Petitioner-Plaintiff Kaul's factual/legal arguments and a rejection of the K11-7 Defendants factual/legal arguments. In addition, the fact/law cited to by Respondent-Defendant Oetken in his September 12, 2022 opinion-injunction was shown to be false by Petitioner-Plaintiff Kaul in his October 6, 20222 submissions (**APPENDIX B**), none of which were contested/rebutted/addressed by Respondent-Defendant Oetken, thus causing them to become admitted, the admittance of which undermines Respondent-Defendant Oetken's September 12, 2025 submission in K11-7 thus rendering it null and void and absent legal effect. For the September 12, 2025 submission is based on the admittedly fraudulent and factually/legally erroneous September 12, 2022 submission (K11-7:D.E. 168). A lie built upon a lie and because the foundation of the September 12, 2025 submission is admittedly fraudulent, so too is the September 12, 2025 submission (K11-7:D.E. 202).

However, Respondent Oetken in seeking , amongst other things, to prevent Petitioner-Plaintiff Kaul from placing the Jarkesy question before SCOTUS and in causing a further exposition of his crimes and those of **The Kaul Cases** Defendants has no option but to perpetuate the criminal 'Fraud on the Court' that commenced in or around late 2021, shortly after the August 19, 2021 filing of K11-7, and that includes seeking to attempt to have Petitioner-Plaintiff Kaul jailed and forever barred from procuring justice and exposing his crimes. Respondent Oetken as with **The Kaul Cases** Defendants are 'fighting for their lives' and there is nothing they will not do to attempt to have Petitioner-Plaintiff Kaul eliminated. It is probative to Respondent-Defendant Oetken's guilt of the charges levied in K11-23 and K11-30 that despite Petitioner-Plaintiff Kaul requesting on September 14, 2022 Respondent-Defendant Oetken produce his financial

holdings and exparte communications, he has continued (2022-2025) to fail to produce that information despite repeated requests and a formal notice of production in K11-23.

Eliahu v. Jewish Agency for Israel, 919 F.3d 709, 714 (2d Cir. 2019) – Petitioner Kaul's differentiation of this case was admitted consequent to the K11-7 Respondent-Defendant Oetken's non-contestation of Petitioner-Plaintiff Kaul's differentiation in their reply and opinion. Thus, this case fails to support Respondent-Defendant Oetken's September 12, 2025 submission.

Bd. of Managers of 2900 Ocean Ave. Condo. v. Bronkovic, 83 F.3d 44, 45 (2d Cir. 1996) – Petitioner-Plaintiff Kaul's differentiation of this case was admitted consequent to the K11-7 Respondent-Defendant Oetken's non-contestation of Petitioner-Plaintiff Kaul's differentiation in their reply and opinion. Thus, this case fails to support Respondent Oetken's September 12, 2025 submission.

Petitioner Kaul's appeal of the September 12, 2022 submission (D.E. 168) would have precluded his subsequent filings that were admitted by independent district judges (K11-14/K11-15/K11-17/K11-20) whom Petitioner Kaul had informed of the September 12-14, 2022 events surrounding Respondent Oetken. And moreover, the fact that Respondent Oetken had intermittently sat on the appellate bench and was corruptly promised an elevation to the appellate bench if his injunction scheme against Petitioner-Plaintiff Kaul succeeded, meant that Petitioner-Plaintiff Kaul would have, at least at that time, been submitting his appeal to a court conflicted by Respondent-Defendant Oetken, thus rendering any appeal a futile endeavor that Respondent-Defendant Oetken and the K11-7 Defendants would have ensured was a process that lasted for many statute limitation expiring years. Since the 2005 commencement of the '**Revocation-Cover-Up-Conspiracy'** the 'playing field' has never been equally levelled but always tilted against Petitioner Kaul, into and including, at least pre-Jarkesy (June 27, 2024)/pre-Trump v CASA (June 27, 2025) the federal appellate courts, except momentarily the

U.S.C.A. for the Fifth Circuit (K11-19/K11-27). One man against the world and it still has to cheat.

Respondent Oetken references an October 3, 2024 letter he received from Petitioner Kaul (D.E. 178), without noting that he failed to address/refute/contest the claims set forth in the letter, thus further causing their admission. Those being his Rule 8(b)(6) admissions of fact in K11-23 (**APPENDIX A**) and the invalidation of the 2014 illegal NJ revocation by the SCOTUS Seventh Amendment related ruling in <u>SEC v Jarkesy: 22-859</u> (June 27, 2024).

Respondent Oetken's statement: **"Kaul has referenced the Injunction Order … remains an admitted 'Fraud on the Court'"** (Page 7-8 of 15), while being purposed to support his September 12, 2025 order does the exact opposite, in that when the statement was issued on August 20, 2023 in K11-14 Respondent Oetken submitted no document to his K11-7 docket the contents of which contested/rebutted/addressed the statement. Similarly, neither did the district judge in K11-14 submit any statement to contradict the truth of Petitioner Kaul's statement. Thus, and yet again, Respondent Oetken bases his September 12, 2025 order on admitted facts that actually undermine his order, for having once again admitted to the illegality of the September 12, 2022 injunction, it does render illegal his September 12, 2025 order. Respondent Oetken's fundamental hurdle is that the premise of his argument, that being the September 12, 2022 injunction, has been repeatedly admitted by him to be illegal (K11-7/K11-14/K11-17/K11-23), an illegality further substantiated by the SCOTUS holdings in <u>SEC v Jarkesy</u> and <u>Trump v CASA</u>. The legal reasoning as to the applicability of <u>Jarkesy</u> is that the 2014 NJ jury-less article III judge-free $475,000 'fine' imposing revocation was/is illegal, and thus every product consequent to that revocation was/is illegal, including the September 12, 2022 (K1-7: D.E. 168) injunction and now the September 12, 2025 order (K11-7: D.E. 202).

Respondent Oetken's recitation of a knowingly fraudulent procedure that stemmed from the illegal September 12, 2022 submission: **"In February , March … On May 8, 2025 … Kaul did not appear"** (Page 8 of 15) is purposed to convey legitimacy upon the proceeding, but it does fail for the simple fact that in K11-18/K11-23/K11-30 Respondent Oetken admitted to the

violations/crimes surrounding/underpinning/constituting these crimes, as evidenced in his Admissions of Fact, all of which stemmed from his Rule 8(b)(6) admissions in K11-18/K11-23/K11-30. Respondent Oetken remarks that Petitioner "**Kaul did not appear",** a fact of which Respondent Oetken was previously informed due to the fact that he was conflicted on June 17, 2025 because, amongst other things, he was being actively sued by Petitioner Kaul in K11-28, and thus being conflicted he was without jurisdiction/authority and thus Petitioner Kaul's right to due process and an impartial tribunal prohibited Respondent Oetken from conducting the proceeding,  a proceeding that was null and void ab initio.

## CRITIQUE- PART 2

## DISCUSSION TO CONCLUSION

This section of the submission is the progeny of the product of the crime of the September 12, 2022 submission (D.E. 168), a fact Petitioner-Plaintiff Kaul has been claiming since its issuance, a fact that has been admitted multiple times by Respondent-Defendant Oetken and a fact that has been conclusively proven by the June 27, 2025 SCOTUS holdings in Trump v CASA. And thus, this section, based as it is on the prior section is also the product of crime. Thus, the conclusion is invalid, is the product of crime, is without legal effect and Respondent-Defendant Oetken's conflicted September 12, 2025 submission constitutes a further violation of Petitioner-Plaintiff Kaul's human/civil/constitutional rights that pursuant to Section 1983 are amenable to suit in the United States District Court.

Trump v CASA: 24A884 – Respondent Oetken's interpretation of the case fails to support his submission. SCOUTUS held: **"Under the Court's well-established precedent, see Grupo Mexicano, 527 U. S., at 319, because universal injunctions lack a founding-era forebear, federal courts lack authority to issue them. Pp.19–21."**

Respondent Oetken, decontextualizes and misrepresents a footnote quote from the opinion. The contextualized section is:

**"The injunctions before us today reflect a more recent development: district courts asserting the power to <u>PROHIBIT ENFORCEMENT OF A LAW OR POLICY AGAINST ANYONE</u>."**

These injunctions—known as **"universal injunctions"—likely <u>exceed</u> the equitable authority that Congress has granted to federal courts."** <u>whereby footnote 1 states</u>: **"Such injunctions are sometimes called "<u>nationwide injunctions,</u>" reflecting their use by a single district court to <u>bar the enforcement of a law</u> anywhere in the Nation. But the term "universal" better captures how these injunctions work. Even a traditional, parties-only injunction can apply beyond the jurisdiction of the issuing court. <u>Steele v. Bulova Watch Co., 344 U. S. 280, 289 (1952)</u> (When "exercising its equity powers," a district court "may command persons properly before it to cease or perform acts outside its territorial jurisdiction"). The difference between a traditional injunction and a universal injunction is not so much where it applies, but whom it protects: A universal injunction prohibits the Government from enforcing the law against anyone, anywhere. H. Wasserman, "<u>Nationwide</u>" Injunctions Are Really "Universal" Injunctions and <u>They Are Never Appropriate</u>, 22 Lewis & Clark L. Rev. 335, 338 (2018)."**

The injunction entered by Respondent-Defendant Oetken on September 12, 2022 was a **"nationwide injunction"** and was referred to as such by Respondent-Defendants Oetken and **The Kaul Cases** Defendant throughout **The Kaul Cases,** as the record proves and it was never referred to as a **"traditional injunction"** because it did not and does not fit the definition of a **"traditional injunction",** which is defined by Cornel Law School Legal Information Institute as:

**"A permanent injunction is granted as part of a <u>final judgment</u>. To obtain an injunction, plaintiffs must show that they have suffered irreparable harm, that legal <u>remedies</u> such as monetary damages are inadequate, that the balance of hardships favors them, and that the injunction would not disserve the public interest. These principles were reaffirmed by the Supreme Court in eBay Inc. v. MercExchange. Courts also consider equitable factors such as**

13

the parties' good faith or prior conduct when fashioning the remedy. In Boomer v. Atlantic Cement Co., for example, the Court declined to issue a permanent injunction due to the defendant's significant investment and the lack of practical alternatives, even though a nuisance was proven. Similarly, in Penland v. Redwood Sanitary Sewer Serv. Dist., the Court adjusted its order based on the defendant's efforts to abate the harm.

In Trump v. CASA (2025), the United States Supreme Court limited the scope of equitable relief in federal courts. The Court held that nationwide or universal injunctions, which block enforcement of a law or executive action against nonparties, are likely not authorized under the Judiciary Act of 1789. As a result, federal courts may only issue injunctions that apply to the parties actually before them, unless Congress explicitly authorizes broader relief. Although the case did not decide the merits of the underlying policy, it marked a clear shift away from the practice of issuing injunctions with universal effect. This decision reinforces the principle that equitable relief must be narrowly tailored to the specific legal injury at issue."

The parties in every case of **The Kaul Cases** other than K11-7 were not before Respondent-Defendant Oetken and thus he had no authority/jurisdiction to interfere in those cases and now in conjunction with his state of conflicted-ness has absolutely no authority/jurisdiction to enter any orders as to any matters that involve/relate/associate with Petitioner-Plaintiff Kaul.

## RESPONDENT -DEFENDANT OETKEN'S ADMISSIONS OF FACT

Respondent-Oetken states: **"Kaul appears to argue that I "admitted" to being part of a bribery scheme by failing to respond to certain requests for admission in the Southern District of Mississippi action. He is wrong. All discovery was stayed in that case, and therefore no requests for admission were properly served or required a response. See Kaul v. Oetken, No. 24-CV-621 (S.D. Miss.), ECF Nos. 21, 37. Judge Reeves dismissed the claims based on judicial immunity and held that Kaul's allegation of a "quid pro quo bribery scheme" was a "legal conclusion for which [Kaul] has not provided any underlying facts." Id., ECF No. 49 at 3 n.3."**

14

Rule 8(b)(6) contains no provision as to the commencement or not of discovery and or whether a case is dismissed or proceeds in its determination that if allegations/facts are not denied within the first twenty-one (21) days of service, the allegations/facts are admitted for all purposes. And Respondent-Defendant has submitted no authority to show or prove otherwise, and in fact Judge Reeves has set K11-23 for trial with a scheduled September 26, 2025 date for complaint amendment. Respondent-Defendant Oetken's criminal conduct since his June 12, 2025 release from K11-23 find no refuge under any form of immunity and even of it did he remains a witness to the crimes set forth and admitted to in K11-23.

# **CONCLUSION**

From August 19, 2021 to September 12, 2025 every order entered by Respondent-Oetken has been illegal as either it was the product of:

**(i)** the illegal 2014 NJ juryless article III judge free $475,000 'fine' imposing license revocation (SEC v Jarkesy: 22-859) and;

**(ii)** the product of the illegal 2014 NJ juryless article III judge free $475,000 'fine' imposing license revocation **and** the bribery related quid pro quo scheme unlawful nationwide injunction (Trump v CASA:24A884).

And should Respondent-Defendant Oetken enter any further orders or arrest warrants, they too will be illegal and will constitute a further violation of Petitioner-Plaintiff Kaul's rights and will substantiate a basis for further suit against Respondent-Defendant Oetken and pursuant to Section 1986 of the 1871 Civil Rights Act:

**"Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued."**

and that includes all persons copied on September 18, 2025 via email on this communication.

Respondent-Defendant Oetken's knowing continuation of his long-standing perpetuation of crime using the apparatus of the United States District Court warrants his impeachment and conviction.

I certify under penalty of perjury that the above statements are true and accurate to the best of my knowledge.

DATED: SEPTEMBER 18, 2025

_____
RICHARD ARJUN KAUL, MD

cc: All Counsel of record in K11-7K11-23//K11-27
    Judicial members of the S.D.N.Y.
    United States Department of Justice
    United States Marshal Service

17

# APPENDIX A

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI



RICHARD ARJUN KAUL, MD;
JANE DOE; JOHN DOE.

Plaintiff

3:24-CV-00621-CWR-LGI

CIVIL ACTION NO.: 24-CV-00621-CWR-LGI

v.

JAMES PAUL OETKEN
(PERSONAL AND OFFICIAL CAPACITY)
MISSISSIPI MEDICAL BOARD;
NEW YORK STATE ATTORNEY GRIEVANCE
COMMITTEE; JANE DOE; JOHN DOE.

Defendants.

---

# ADMISSIONS OF MATERIAL AND UNDISPUTED FACT NOT RELATED TO THE ISSUE PENDING THE COURT'S RULING ON THE MOTION AND PURSUANT TO RULE 8(b)(6) AS TO DEFENDANT JAMES PAUL OETKEN

Respectfully Submitted

RICHARD ARJUN KAUL, MD

JANUARY 5, 2025

1

# RELEVANT REFERENCES TO THE KAUL CASES

**K1 –** <u>KAUL v CHRISTIE: 16-CV-02364</u> (FEBRUARY 22, 2016, TO NOVEMBER 16, 2021-U.S.D.C.-D.N.J.)

**K11-7 -** <u>KAUL/BASCH v ICE: 21-CV-06992</u> (AUGUST 19, 2021, TO SEPTEMBER 12, 2022-SOUTHERN DISTRICT OF NEW YORK)

**K11-10 -** <u>KAUL/BASCH v ICE: 23-CV-2016</u> (MARCH 9, 2023, TO MAY 16, 2023-SOUTHERN DISTRICT OF NEW YORK)

**K11-14 -** <u>KAUL v GEICO: 23-CV-22325</u> (JUNE 22, 2023, TO AUGUST 23, 2023-SOUTHERN DISTRICT OF FLORIDA)

**K11-17 -** <u>KAUL v CPEP: 23-CV-00672</u> (NOVEMBER 20, 2023, TO JUNE 14, 2024 - EASTERN DISTRICT OF NORTH CAROLINA)

**K11-18 –** <u>KAUL v OETKEN: 24-CV-00185</u> (MARCH 25, 2024, TO APRIL 8, 2024-EASTERN DISTRICT OF NORTH CAROLINA)

**K11-20 –** <u>KAUL v FEDERATION STATE MEDICAL BOARDS: 24-CV-03180</u> (AUGUST 26, 2024, TO PRESENT-SOUTHERN DISTRICT OF TEXAS)

**K11-22 –** <u>KAUL v BCBSA: 23-CV-01688</u> (DECEMBER 12, 2023, TO PRESENT-NORTHERN DISTRICT OF ALABAMA)

**K11-23 –** <u>KAUL v OETKEN: 24-CV-00621</u> (OCTOBER 9, 2024 TO PRESENT-SOUTHERN DISTRICT OF MISSISSIPPI)

For ease of reference Defendant JAMES PAUL OETKEN will be referred to as "I"

## K11-23 + Failure To Deny Bribes

**1.** I admit that when I entered the knowingly illegal injunction on September 12, 2022, I instructed the Clerk of the Court to ensure Plaintiff Kaul was provided instructions on how to appeal in conjunction with an application to proceed in forma pauperis (D.E. 169-1).

**2.** I admit that the purpose of encouraging Plaintiff Kaul to file an appeal to the U.S.C.A. for the Second Circuit was that I did intermittently sit on the appellate bench and was informed it likely I be elevated to the appellate court if Plaintiff Kaul 'took the appellate bait'.

**3.** I admit I know that if Plaintiff Kaul did file an appeal, no other district court would admit any of his filings, and his claims would be restricted to the U.S.C.A. for the Second Circuit.

**4.** I admit I knew that the Second Circuit would ultimately deny Plaintiff Kaul's appeal and validate my knowingly illegal injunction.

**5.** I admit I knew that the validation of my injunction by the U.S.C.A. for the Second Circuit would forever preclude Plaintiff Kaul from filing any lawsuits in the United States District Court that had any connection, however remote, to any aspect of his professional licensing history.

**6.** I admit I knew that if I succeeded in eliminating Plaintiff Kaul in this bureaucratic manner, I would have been permanently elevated to the U.S.C.A. for the Second Circuit.

**7.** I admit that an elevation to the U.S.C.A. for the Second Circuit would have had the effect of permanently 'burying' all the bribery related quid pro quo crimes I had committed since being appointed to the federal bench in 2011 by a politician notorious even by political standards for egregious acts of political corruption.

**8.** I admit that had I been elevated to the U.S.C.A. for the Second Circuit, this politician would have secured even greater protection for his corrupt and criminal perversion of the power of government.

**9.** I admit, however, that because of Plaintiff Kaul, none of these hypotheticals occurred and my career was negatively impacted.

**10.** I admit the negative impact on my career in conjunction with preventing Plaintiff Kaul from exposing my crimes did cause me to threaten him with contempt and incarceration.

**11.** I admit I know of **The Kaul Cases** attempt on June 14/15, 2023 to have Plaintiff Kaul, while illegally incarcerated at the medium-maximum security Mercer County Prison in Trenton, NJ,

poisoned with the anti-psychotic medication, Librium, in order to have him deemed mentally unstable and committed indefinitely to a psychiatric institution.

**12.** I admit that on October 9, 2024, Plaintiff Kaul filed K11-23, in which I am accused of, amongst other things, bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption.

**13.** I admit that I was served with a copy of K11-23 on October 16, 2024 at approximately 9:30 am EST in my courtroom at the S.D.N.Y. by a security officer employed by the United States District Court.

**14.** I admit that on November 15, 2024, the Court ordered I answer the Complaint by December 16, 2024.

**15.** I admit that on December 16, 2024 I filed documents entitled 'MOTION TO DISMISS' (D.E. 12) and 'MEMORANDUM IN SUPPORT MOTION TO DISMISS' (D.E. 13).

**16.** I admit that in neither of these documents did I deny the allegations/facts of bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption.
asserted in the Complaint in K11-23.

**17.** I admit I knew/know that in failing to deny the allegations/facts I did violate the Court's November 15, 2024 order.

**18.** I admit I knew/know that in failing to deny the allegations/facts I did cause them to become admitted for all purposes pursuant to Rule 8(b)(6).

**19.** I admit I knew/know that the allegations/facts constitute the commission of violations of criminal law.

**20.** I admit I knew/know that the immunity defense I raised in my impermissibly filed 'MOTION TO DISMISS' (D.E. 12) and 'MEMORANDUM IN SUPPORT MOTION TO DISMISS' (D.E. 13) were/are invalid because my Rule 8(b)(6) admissions of my commission of bribery related crime are not protected by any immunity defense.

**21.** I admit I am guilty of the charges levied in K11-23.

**22.** I admit that if I were innocent of the charges levied in K11-20 I would simply have denied them, but I did not because I am guilty of the charges.

**23.** I admit I know that on December 20, 2024, Plaintiff Kaul filed a 'NOTICE OF DEFENDANT OETKEN'S ADMISSION OF FACT PURSUANT TO HIS RULE 8(b)(6) FAILURE TO DENY THE

ALLEGATIONS AND FACTS ASSERTED WITHIN THE COMPLAINT, AND PURSUANT TO HIS VIOLATION OF THE COURT'S DECEMBER 16, 2024 ORDER TO ANSWER THE COMPAINT'.

**24.** I admit I know that a <u>responsive pleading</u> was ordered by the Court on November 15, 2024.

**25.** I admit I know that pursuant to Rule 8(b)(6) the **"Effect of Failing to Deny An Allegation-other than one relating to damages-is admitted if a responsive pleading is required and the allegation is not denied."**

**26.** I admit I know that on December 27, 2024, Plaintiff Kaul filed a 'REPLY DEFENDANT OETKEN MEMORANDUM OF MOTION TO DISMISS'.

**27.** I admit I read Plaintiff Kaul's 'REPLY DEFENDANT OETKEN MEMORANDUM OF MOTION TO DISMISS' through the perspective of a lawyer and judge.

**28.** I admit that through the perspective of a lawyer and judge I agree with every argument submitted in Plaintiff Kaul's 'REPLY DEFENDANT OETKEN MEMORANDUM OF MOTION TO DISMISS'.

**29.** I admit that of the thousands of opinions I have issued in my judicial career in cases involving charges of bribery against public servants, many of them contain arguments either identical or consistent with those submitted by Plaintiff Kaul.

**30.** I admit that in these cases I have ruled in favor of government prosecutors who have submitted such arguments against criminal defendants charged with bribery and public corruption.

**31.** I admit that in these cases in which guilty verdicts have been rendered, I did sentence the defendants to terms of imprisonment and substantial fines.

**32.** I admit that through the perspective of a defendant, who is also a lawyer and judge, I should be held at least to the standard of the common man committing common crime if not higher.

**33.** I admit that my Rule 8(b)(6) related admittance of the facts of bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption asserted in the Complaint in K11-23, did deprive me of any immunity.

**34.** I admit that in the Complaint (D.E. 1 Page 14 of 54), Plaintiff Kaul identified the facts that caused me to be deprived of '… ANY/ALL IMMUNITIES'.

**35.** I admit that in my December 16, 2024 'MOTION TO DISMISS' (D.E. 12) and 'MEMORANDUM IN SUPPORT MOTION TO DISMISS' (D.E. 13) I did not deny any of the facts asserted in paras. 39 to 45 or indeed any of the facts within the entire Complaint.

**36.** I admit that on January 3, 2025 IN K11-23 I submitted my 'REPLY IN SUPPORT OF MOTION TO DISMISS'.

**37.** I admit that in my 'REPLY IN SUPPORT OF MOTION TO DISMISS' I submitted an answer to the bribery charge levied in the K11-23 Complaint.

**38.** I admit, however, that the answer was intended to purposefully mislead the Court into believing Defendant Oetken was innocent of the levied charges of bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption.

**39.** I admit that one of the answers in furtherance of this deception is: **"However, Judge Oetken has committed no crimes and Kaul's blanket statement is insufficient to support a finding of criminal activity."** (D.E. 23 Page 2 of 5).

**40.** I admit that I and my lawyers conspired to manufacture a, and to use my own word, **"blanket"** statement in which I did not specifically deny having committed the crimes of bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption.

**41.** I admit that I and my lawyers believed that if we used the word **"crimes"** in a general sense it would deceive the Court into believing I had not committed bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption.

**42.** I admit that the deceptive state-of-mind of myself and my lawyers is evidenced in our use of the term **"blanket"** to describe, albeit a false description, of Plaintiff Kaul's claims, when in fact it represents, both in textual and meaning proximity, my use of the general term **"crimes"** to appear to but not actually deny my commission of bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption.

**43.** I admit that I and my lawyers, knowing I had committed crime, could not simply deny the allegations/facts, and so filed a motion to dismiss, while planning to use my final reply to deceive the Court into believing I committed no crime, knowing that Plaintiff Kaul could not respond to my final **"crimes"** based reply.

**44.** I admit that I did commit crimes, which explains the extent to which I have proceeded since 2023 in attempting to prevent other district courts and judges from hearing any of **The Kaul Cases**.

**45.** I admit that my nationwide injunction against a single litigant is a gross deviation from the true purpose of such restrictions, and in conjunction with threats of contempt does constitute an unprecedented violation of the human/civil/constitutional rights of person whose life/liberty/property/reputation rights have been illegally deprived for almost thirteen (13) years and who has not once been provided an opportunity to litigate his claims through discovery to trial.

**46.** I admit that my conduct and that of **The Kaul Cases** Defendants is, other than being illegal, does evidence our guilt of the levied charges to a criminal standard.

## Defendant Oetken Career Milestones And Transition From Lawful To Unlawful Conduct

**47.** I admit I graduated from high school in or around 1984.

**48.** I admit I attended college from 1984 to 1988 and did graduate.

**49.** I admit I attended law school from 1988 to 1992 and did graduate.

**50.** I admit I did take and pass the NYS Bar Exam after I graduated law school.

**51.** I admit I did swear an oath upon admission to the NYS Bar.

**52.** I admit the oath involved a promise to uphold the law, faithfully support the Constitution and conduct my practice of law in an ethical manner.

**53.** I admit that after graduating law school and in the period from 1992 to approximately 2002 I provided legal counsel to politicians.

**54.** I admit that in the period from 2002 to 2011 I worked in the private sector and provided legal counsel to publicly traded corporations.

**55.** I admit that as a consequence of working in the milieu of the political and corporate worlds, I came to witness and know their corrupt intersection.

**56.** I admit that as a consequence of being immersed in this corrupt politico-corporate milieu, I began to view profit-purposed manipulations of law and ethics as a 'normal' way of conducting public service and business.

**57.** I admit that being immersed in these manipulations caused a perversion of my moral and ethical framework.

**58.** I admit that being immersed in these manipulations caused me to become highly experienced in knowingly dishonest perversions of the law to suit political and business agendas.

**59.** I admit that in 2010 I was sponsored by the US Senator for New York to the federal bench.

**60.** I admit that in 2011 I was assigned to the federal bench in the Southern District of New York.

**61.** I admit that upon assignment to the federal bench I did, with my hand on the Bible, swear an oath to the Constitution and a promise to faithfully uphold the law.

**62.** I admit that in the period from 2011 to 2025, I adjudicated approximately four thousand five hundred (4,500) cases.

**63.** I admit that the majority of the cases involved commercial, business and financial disputes involving mostly high net worth individuals and financial sector corporations.

**64.** I admit that I also presided over criminal cases in which defendants were convicted by juries of bribery and public corruption.

**65.** I admit that I sentenced to jail persons convicted of bribery and public corruption.

**66.** I admit that in my sentencing remarks in these bribery and public corruption cases, I described the perniciousness of the offenses in that when public servants violate the public trust, there can be nothing more corrosive to the well-being of society and its democratic institutions.

**67.** I admit that in many of the public corruption cases filed before me and within the S.D.N.Y., the press conference given by the U.S. Attorney would invariably involve how such conduct would not be tolerated in the S.D.N.Y and how the perpetrators would be tenaciously pursued and prosecuted.

**68.** I admit that by the time I was appointed to the federal bench I was well-versed in the manufacturing of schemes by lawyers in which the law is perverted, violated and ignored to provide justification and cover for the furtherance of knowingly illegal agendas of politicians and corporations.

**69.** I admit that I know the principal reason I was nominated by the US Senator for NY was my lengthy pre-judicial experience in the corrupt manufacturing of politico-corporate malfeasance supporting legal opinion.

**70.** I admit that I know my appointment had nothing to do with an aspect of my personal life, an aspect that was however conveniently and publicly exploited by the politicians.

**71.** I admit that over the almost fourteen (14) years I have sat on the federal bench, there has been an escalation in the brazenness and seriousness of the crimes, violations and other wrongdoing I have committed against the law, the public and the United States.

**72.** I admit that I know one of the reasons for this unchecked escalation has been the fact that no lawyer or judge has accused me of engaging in corrupt activities.

**73.** I admit I know that within the court, the non-lawyer and non-judicial staff that work in my courtroom do know of my corrupt activities.

**74.** I admit I know that one of the reasons no lawyer of judge has reported me is because they believe their 'whistleblowing' will cause the politician who sponsored me to retaliate and attempt to silence them.

**75.** I admit that the politician's retaliation and 'whistleblower' silencing would stem from his fear that the 'whistleblower' exposing of my corrupt use of the federal bench to further his schemes of political corruption with Wall Street based insurance, hospital, pharmaceutical and banking corporations, would end his political career.

**76.** I admit I know that in 2019, Plaintiff Kaul sued this politician in the S.D.N.Y. on charges of racketeering, bribery, quid pro quo schemes and public corruption.

**77.** I admit I knew this fact when Plaintiff Kaul filed K11-7 on August 19, 2021, and despite knowing I was conflicted, I did nonetheless adjudicate the case.

## Common Knowledge Of The Truth Of The Crimes Of The Kaul Cases Defendants

**78.** I admit that as a district judge in a highly staffed district court with unrestricted access to evidence/facts and persons possessing this corpus of evidence/fact AND having been involved as a Judge, Co-conspirator and Defendant in **The Kaul Cases** since 2021 I have come to know the truth of the crimes of **The Kaul Cases** Defendants.

**79.** I admit I know that having been involved as a Judge, Co-conspirator and Defendant in **The Kaul Cases** since 2021 **The Kaul Cases** Defendants have come to know the truth of each other's crimes, including mine.

**80.** I admit I know that each Defendant played a particular role in the 'Kaul Elimination Conspiracy'.

**81.** I admit I know that the two fundamental elements of the scheme pertained to those who purchased state power and those who sold and exercised it.

**82.** I admit I know that Defendants Allstate/Heary purchased state power from Defendant Christie through bribery.

**83.** I admit I know Defendant Christie abused his power to cause the illegal revocation of Plaintiff Kaul's license and an ongoing deprivation of his life/liberty/property/reputation and violation of his human/civil/constitutional rights.

**84.** I admit I know that Defendants Allstate/Heary purchased state power from Defendant Solomon through bribery.

**85.** I admit I know Defendant Solomon abused his power to cause the illegal revocation of Plaintiff Kaul's license and an ongoing deprivation of his life/liberty/property/reputation and violation of his human/civil/constitutional rights.

**86.** I admit I know that Defendant Allstate purchased regulatory power from Defendant FSMB through bribery.

**87.** I admit I know Defendant FSMB abused its power to cause an illegal obstruction of Plaintiff Kaul's efforts to have his illegal revoked NJ license reinstated and or obtain a license in another state.

**88.** I admit I know Defendant FSMB abused its power to cause an ongoing deprivation of Plaintiff Kaul's life/liberty/property/reputation and violation of his human/civil/constitutional rights.

**89.** I admit I know that Defendant Allstate purchased bankruptcy trustee power from Defendant Stolz through bribery.

**90.** I admit I know that Defendant Stolz abused his power in failing to file claims and or collect the over $52 million dollars owed to Plaintiff Kaul's estate/eighty-three creditors of this estate by Defendant Allstate and other insurance companies.

**91.** I admit I know the truth of the factual foundation of all **The Kaul Cases**, including K11-7 and K11-20.

## The Crime Of The September 12, 2022 'Injunction' in K11-7 — August 19, 2021 To September 12, 2022

**92.** I admit that on August 19, 2021, K11-7 was filed in the United States District Court for the Southern District of New York.

**93.** I admit that the case was not placed into the court's random judicial assignment system.

**94.** I admit that the case was improperly assigned to me because I had informed the Clerk's office to inform me of any cases that involved publicly traded corporations.

**95.** I admit that upon being informed of the case filing, and reviewing the complaint, I did come to know that in K1 Plaintiff Kaul had caused the May 22, 2019 disqualification of the district judge in the District of New Jersey for having received bribes.

**96.** I admit that I knew/know that the district judge in K1 is the brother-in-law of the politician who sponsored me to the federal bench.

**97.** I admit that I knew these facts presented a conflict of interest, but did nonetheless have the case assigned to me.

**98.** I admit that I instructed the court not to assign a magistrate judge to the case.

**99.** I admit that my instruction to not have an independent magistrate judge assigned pertained to my intent to corruptly adjudicate the case.

**100.** I admit that upon adopting judicial control of the case, I recognized that Plaintiff Kaul was cognizant and highly attuned to the defendants schemes of judicial corruption.

**101.** I admit that recognizing Plaintiff Kaul's acute awareness of this issue, it was imperative for me to administer the case in a manner that attempted to deceive Plaintiff Kaul into believing I was impartially administering the case.

**102.** I admit that a principal purpose of deceiving Plaintiff Kaul into believing I was impartially administering the case and that it would proceed into discovery, pertained to the belief of the defendants and myself that if Plaintiff Kaul thought K11-7 would move into discovery, then he would stop filing cases in other districts and would dismiss any pending cases.

**103.** I admit that I and the defendants schemed that once Plaintiff Kaul, believing that K11-17 would advance into discovery, had dismissed any pending cases and not filed any new cases, I would dismiss K11-7 with prejudice and enter a nationwide 'injunction'.

13

**104.** I admit that my receipt of the bribes from the K11-7 defendants was transferred in partial payments from the commencement of the scheme to the point at which Plaintiff Kaul's right to appeal had expired.

**105.** I admit that to attempt to conceal the bribes, they were transferred through off-shore institutions and through other schemes involving the dispensation of shares in publicly traded corporations.

**106.** I admit that in the perpetration of the bribery related quid pro quo scheme, I utilized my prior experience as counsel to corrupt politicians and corporations to implement schemes to attempt to conceal the bribes.

**107.** I admit that both I and the defendants were convinced that my deceitful administration and adjudication of K11-7 would cause an effective elimination of Plaintiff Kaul by forever precluding his ability/rights to secure justice for the crimes committed against his life/liberty/property/reputation.

**108.** I admit that I and the defendants did believe that such an effective elimination would cause Plaintiff Kaul to leave the United States and or commit suicide.

**109.** I admit that I and the defendants, despite knowing that Plaintiff Kaul had two (2) young children, did not care that our actions could cause his death.

**110.** I admit that the only concern I and the defendants possessed was that of continuing to profit from our crimes.

**111.** I admit that the scheme was of a 'bait and switch' nature.

**112.** I admit that in the perpetration of the scheme I used the docket of the United States District Court to publish knowingly fraudulent orders purposed to deceive Plaintiff Kaul into believing I would advance the case into discovery.

**113.** I admit that from the commencement and throughout the perpetration of the scheme there were extensive and detailed communications between myself and agents acting on my behalf and the defendants and agents acting on their behalf.

**114.** I admit that these communications involved the 'who/what/where/when/how/why' specifications of the quid pro quo scheme in which in return for the bribes I would dismiss K11-7 with prejudice and enter a nationwide 'injunction'.

**115.** I admit I knew these communications were illegal and in furtherance of a knowingly illegal scheme.

**116.** I admit that these communications were conducted in a knowingly illegal manner across the US wires.

**117.** I admit that I and the defendants knew/know that the use of the US wires constitutes the felony of wire fraud.

**118.** I admit I know that these communications were also conducted in face-to-face meetings in my chambers in the S.D.N.Y.

**119.** I admit I knew/know that the use of my chambers to further a knowingly illegal scheme through face-to-face meetings was/is illegal.

**120.** I admit that these 'secret' meetings in my chambers were conducted after my court staff had departed the building.

**121.** I admit that some of the communications occurred between myself and agents acting on my behalf and the defendants and agents acting on their behalf in places outside of the court building.

**122.** I admit that in these non-court meetings the arrival and departure at the meeting location of the persons involved was staggered, in order to avoid any person observing the gathering of high-profile lawyers and an equally high-profile federal judge.

**123.** I admit that despite knowing of the illegality of the communications, of their conduction within my chambers within the S.D.N.Y. and of their furtherance of knowingly illegal bribery related scheme, I did nonetheless commit these crimes in a knowingly illegal manner.

**124.** I admit that my willful and knowing perpetration of these crimes while in possession of the power of a federal judge does constitute a high crime against not just Plaintiff Kaul and the United States but against the Constitution of the United States.

**125.** I admit that during the digital and face-to-face communications, the timing of my orders of dismissal with prejudice and injunction was discussed.

**126.** I admit that I and the defendants agreed that the orders would be entered once Plaintiff Kaul had dismissed all pending cases and there were no remaining cases within the United States District Court through which he could prosecute **The Kaul Cases** Defendants.

**127.** I admit that during the communications I and the defendants agreed that the September 12, 2022 opinion/order/injunction would be co-drafted.

**128.** I admit that during the communications I and the defendants agreed that the September 12, 2022 opinion/order/injunction would contain no analysis of any of Plaintiff Kaul's

arguments and or refutation and distinguishment of the arguments/cases cited by the K11-7 Defendants.

**129.** I admit that during the communications I and the defendants agreed that the September 12, 2022 opinion/order/injunction would encourage Plaintiff Kaul to appeal the opinion/order/injunction in order to attempt to further preclude him from filing cases in other districts.

**130.** I admit that during the communications I and the defendants agreed that we knew any appeal would be denied, because certain judges on the appeal court had been sponsored by the same politician who had sponsored me.

**131.** I admit that during the communications I and the defendants agreed that the appeal would be denied because certain judges on the appeal court continued to participate in quid pro quo schemes with the insurance and banking defendants in K11-7.

**132.** I admit that during the communications I and the defendants agreed that if the opinion/order/injunction were drafted in as defamatory a manner as possible, it would demoralize Plaintiff Kaul to the point where he would discontinue his efforts to hold **The Kaul Cases** Defendants liable for their crimes/violations/injuries.

**133.** I admit that I and the defendants agreed that if the opinion/order/injunction were drafted in as defamatory a manner as possible, it would, if Plaintiff Kaul did not appeal and filed new cases, cause other judges to dismiss these cases.

**134.** I admit that despite knowing the truth of the factual foundation of K11-7, I did dismiss the case with prejudice and enter a nationwide injunction on September 12, 2022

**135.** I admit I know that the dismissal and nationwide injunction were the product of an illegal bribery related quid pro quo scheme.

**136**. I admit that on September 14, 2022, Plaintiff Kaul submitted a notice to the S.D.N.Y. that was addressed to me and in which he requested a list of my financial holdings, my Forms AO10 and the substance of all ex parte communications with the K11-7 Defendants.

**137.** I admit that since September 14, 2022 I have failed to disclose to the court, to the docket or to Plaintiff Kaul any of my financial holdings, ex parte communications and or any form of bribe, be it tangible/intangible, that was received through any means by me, or any party related to me in the third-degree.

**138.** I admit that my issuance on September 12, 2022 of a knowingly fraudulent document, that of the injunction, did become illegally incorporated into the fabric of American jurisprudence and the court records of the United States District Court.

**139.** I admit that the incorporation of a knowingly fraudulent document issued by a judicial officer, into the court records of the United States District Court constitutes a <u>treasonous</u> crime against the United States.

## The Motion For Disqualification + K11-14 – October 6, 2022 To August 23, 2023

**140**. I admit that on October 6, 2022, Plaintiff Kaul filed a motion for my disqualification.

**141.** I admit that the motion was based partly on my commission of the crimes of bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption.

**142.** I admit that the motion was based partly on my collusion and conspiracy in corruptly using the authority of the United States District Court to attempt to conceal **The Kaul Cases** Defendants crimes of mail fraud/wire fraud/bribery/obstruction of justice/kickbacks/perjury/evidential falsification/witness tampering/kidnapping/false indictment/false arrest/false imprisonment/attempted killing.

**143.** I admit that my failure to timely address Plaintiff Kaul's October 6, 2022 motion for disqualification and deny the within facts did cause the admission of those facts.

**144.** I admit that the motion was based in part on my failure to analyze/refute/contest any of Plaintiff Kaul's one hundred and seventy-three (173) arguments/sub-arguments submitted in K11-7.

**145.** I admit that the motion was based in part on my knowingly fraudulent reliance on law, the invalidity of which was shown by Plaintiff Kaul to definitively not support the entry of an injunction.

**146.** I admit that the motion was based on my bribery related derogation of the relevant law and my threat to hold Plaintiff Kaul in contempt if he violated my knowingly illegal order/injunction.

**147**. I admit I knew/know that the order/injunction had no basis in fact or law, but was simply the product of judicial corruption, for which I threatened to hold Plaintiff Kaul in contempt if he violated.

**148.** I admit that my use of the US wires to enter this knowingly fraudulent order/injunction onto the federal docket constitutes the offense of wire fraud.

**149.** I admit that within the motion for disqualification and at D.E. 171 Page 12 of 39, Plaintiff Kaul did state: **"Democracy and the peaceful order of society cease to exist when the judiciary is morally bent, perverted from fact and willfully blind to the law. When partiality, personal bias and conflicts of interest pollute the administration of justice, the public loses confidence in the system of justice, and lawlessness displaces lawfulness."**

18

**150.** I admit I know of the December 4, 2024 killing of the CEO of the healthcare insurance company, United Health Care by Luigi Mangeone.

**151.** I admit that it was an unlawful act, but one born out of the lethal lawlessness of the corporate health insurance industry and the failure of the government to hold it accountable.

**152.** I admit that the killing sparked a nationwide public outrage and calls to hold the insurance industry legally accountable.

**153.** I admit that I know the reason for the killing of the CEO pertained to his directives to his corporation to deny life-saving care to premium paying patients.

**154.** I admit that I was a corporate lawyer, and worked for corporations with investments in highly profitable healthcare insurance corporations.

**155.** I admit that I know K11-7 Defendants Allstate Insurance Company and Geico profit from the sale of auto accident-related healthcare insurance policies.

**156.** I admit I know that these policies are purposed to pay for the provision of care to patients injured in car accidents.

**157.** I admit I know that in K11-7 and throughout **The Kaul Cases** Plaintiff Kaul has claimed that Defendants Allstate/Geico/Blue Cross Blue Shield (K11-22) conduct the same care denying **"pattern of racketeering"** as does United Healthcare.

**158.** I admit that the claims regarding denial of care are located at - D.E. 14 Para. 106 Page 27 of 432 – D.E. 14 Para. 132 Page 34 of 432.

**159.** I admit I know that in the K11-7 Complaint (D.E. 14 Para. 106 Page 27 of 432) Plaintiff Kaul states with regards to Defendants Allstate/Geico: **" … whose shared economic mission is the maximization of corporate profit and share price, through the exploitation of the American public (denial of care) and medical profession (license suspension/revocation/incarceration) …"**

**160.** I admit that despite knowing these facts of patient care denial, I dismissed Plaintiff Kaul's claims Defendants Allstate Insurance Company and Geico because I had willingly and knowingly accepted bribes.

**161.** I admit that my bribe related dismissal of K11-7 did aid and abet the perpetuation of the insurance industry's 'deny … delay … defend' scheme of the denial of life-saving care to the American public.

19

**162.** I admit that as a lawyer and federal judge I understand RICO's vicarious liability doctrine, wherein the liability of the crimes/offenses/violations/injuries caused by any of the conspiracy's perpetrators and or co-conspirators becomes the liability of all perpetrators/co-conspirators.

**163.** I admit that I am as responsible as Defendants Allstate/Geico for the immense harm caused to those members of the American public whose life-saving and life-altering care was denied by these for-profit corporations.

**164.** I admit that I eventually adjudicated the motion for disqualification on August 14, 2023.

**165.** I admit that I denied the motion for disqualification in an unsubstantiated order that failed to address/contest/refute/analyze the cited and controlling law.

**166.** I admit that I denied the motion for disqualification in an unsubstantiated order in which I failed to deny any of the facts of amongst other things, bribery/public corruption/wire fraud/conspiracy.

**167.** I admit that I denied the motion for disqualification in an unsubstantiated order, in which I failed to deny the fact that I engaged in a bribery related quid pro quo scheme with the K11-7 Defendants, in which in return for the bribes I dismissed K11-7 with prejudice and entered a nationwide injunction against Plaintiff Kaul.

**168.** I admit that the reason for the delay in denying the disqualification motion pertained to the fact that the district judge in K11-14 believed my nationwide injunction was indeed the product of bribery, because I had failed to deny the facts asserted in Plaintiff Kaul's September 14, 2022 notice (D.E. 170) and the October 6, 2022 motion for disqualification (D.E. 171).

**169.** I admit that the district judge in K11-14 indicated that if I did not deny the motion for disqualification, she would not dismiss K11-14 based on my September 12, 2022 purported injunction.

**170.** I admit that the district judge in K11-14 indicated that if she dismissed K11-14 on an injunction that was the product of crime, she would become liable for the crime.

**171.** I admit that the district judge in K11-14 indicated that the motion for disqualification had to be denied before she would issue her denial of K11-14 based on the K11-7 September 12, 2022 purported injunction.

**172.** I admit that the K11-7 Defendants who were now the K11-14 Defendants employed threats and persuasion to have me deny the motion for disqualification, in order that the district judge in K11-14 would dismiss the case.

**173.** I admit that I recognized that if I did not comply with the demands of the K11-14 district judge and the K11-7/K11-14 Defendants, my criminal acts of, amongst other things,

bribery/public corruption and wire fraud would be exposed and subject me to impeachment and criminal prosecution.

**174.** I admit that as a consequence of these demands and threats, I did, on August 14, 2023 deny the motion for disqualification without denying any of the within facts of, amongst other things, bribery/public corruption/wire fraud.

**175.** I admit I knew my actions did constitute the commission of crime, in that I aided and abetted the Defendants conversion of the S.D.N.Y. into a **"racketeering enterprise"** through which they and I perpetrated a knowingly illegal **"pattern of racketeering"** a purpose of which was to attempt to prevent the exposure of my crimes in other district courts over which I had no control.

**176.** I admit I know that after having agreed to the demands and threats of the K11-7/K11-14 Defendants and the K11-14 district judge, K11-14 was dismissed with prejudice on August 23, 2023 based on the K11-7 September 12, 2022 injunction.

**177.** I admit that I experienced a sense of relief at having had another district court appear to legitimize my September 12, 2022 injunction.

**178.** I admit that even though I experienced a sense of relief at a public display of such apparent legitimization, I knew the district judge in K11-14 recognized the injunction was a product of a quid pro quo scheme of bribery.

**179.** I admit I believed that the dismissal of K11-14 would convince Plaintiff Kaul to cease his campaign of litigation.

**180.** I admit the incorrectness of my belief is a direct reflection of Plaintiff Kaul's recognition of the seriousness of my crimes.

**181.** I admit I know that Plaintiff Kaul's recognition of the seriousness of my crimes is based on his knowledge of my recognition of the seriousness of my crimes.

## K11-10 And The Knowingly Illegal Issuance Of Threats To Hold Plaintiff Kaul In Contempt If He Failed To Dismiss K11-17 And K11-20 – March 9, 2023 To October 2, 2024

**182.** I admit I know that Plaintiff Kaul did not appeal the September 12, 2022 order/injunction.

**183.** I admit I know that on September 14, 2022, at D.E. 170, Plaintiff Kaul filed a notice with the Clerk of the Court for the S.D.N.Y. that requested I produce and publish to the court docket my financial holdings and the contents of all ex parte communications with the K11-17 Defendants.

**184.** I admit that since September 14, 2022 I have failed to disclose to the court, to the docket or to Plaintiff Kaul any of my financial holdings, ex parte communications and or any form of bribe, be it tangible/intangible, that was received through any means by me, or any party related to me in the third-degree.

**185.** I admit that I have failed and continue to fail to disclose the requested information because I am guilty of having participated in a bribery related quid pro quo scheme with the K11-7 Defendants.

**186.** I admit I know that on March 9, 2023, Plaintiff Kaul filed K11-10 in the S.D.N.Y.

**187.** I admit I came to know the case had been randomly assigned to another district judge, who had been recently appointed to the federal bench.

**188.** I admit I know that the staff in the court's filing office came to know in or around late September-October 2022 of the bribery related quid pro quo scheme in which I had engaged.

**189.** I admit I know that as a consequence of the staff coming to know of the scheme, they did not inform me of the filing of K11-10.

**190.** I admit that sometime after the filing of K11-10 the K11-10 Defendants engaged in ex parte communications with me during which they informed me that Plaintiff Kaul had filed K11-10.

**191.** I admit that upon becoming aware of K11-10, I ensured the district judge became aware of the order/injunction I had entered in K11-7 on September 12, 2022.

**192.** I admit I know that as a consequence of my knowingly illegal September 12, 2022 order/injunction, the district judge in K11-10 did on May 10, 2023 dismiss K11-10 with prejudice.

**193.** I admit I know that on November 20, 2023, Plaintiff Kaul filed K11-17 in the U.S.D.C. for the E.D.N.C.

**194.** I admit that in late November 2023 the K11-17 Defendants engaged in ex parte communications with me during which they informed me that Plaintiff Kaul had filed K11-17.

**195.** I admit that in becoming aware of K11-17, I came to know that Plaintiff Kaul had informed the district judge of the injunction by submitting a copy within Exhibit 14 and referencing the injunction within the Complaint.

**196.** I admit that in coming to know that the district judge had admitted the case with full knowledge of the injunction, I decided to take no action.

**197.** I admit that an element of me deciding to take no action pertained to the fact that no discovery order had been entered.

**198.** I admit that the lack of a discovery order would prevent Plaintiff Kaul from serving discovery upon me and exposing my corrupt actions surrounding the issuance of the September 12, 2022 injunction.

**199.** I admit that in a period from November 20, 2023, the K11-17 Defendants sent me an ex parte letter requesting I issue an order compelling Plaintiff Kaul to dismiss K11-17.

**200.** I admit this letter was not published to the docket of the S.D.N.Y.

**201.** I admit no other judge nor court employee in the S.D.N.Y. was made aware of this letter.

**202.** I admit the reason this letter was kept concealed from other judges and staff was to prevent any investigation into the corrupt circumstances surrounding my bribery related issuance of the injunction.

**203.** I admit I took no action on the letter as no discovery order had been entered in K11-17.

**204.** I admit I know that on March 13, 2023, a discovery order was entered in K11-17.

**205.** I admit that on March 13, 2023 the K11-17 Defendants informed me of the issuance of the discovery order in K11-17.

**206.** I admit that the issuance of the discovery order in K11-17 convinced me that Plaintiff Kaul would use the tools of discovery to expose the facts of my bribery related quid pro quo scheme with the K11-7 Defendants.

**207.** I admit that the issuance of the discovery order in K11-17 convinced me that Plaintiff Kaul would use the tools of discovery to expose the identities of all persons involved in the bribery related quid pro quo scheme with the K11-7 Defendants.

**208.** I admit that both I and the K11-17 Defendants in recognizing the risk of such exposure, did agree that I should issue an order to Plaintiff Kaul threatening to hold him in contempt if he did not dismiss K11-17.

**209.** I admit that on March 15, 2024 I issued an order to Plaintiff Kaul threatening to hold him in contempt if he did not dismiss K11-17, and had this order published to the docket of the S.D.N.Y.

**210.** I admit I know that the issuance of this order was illegal and was the product of the crime of the bribery related quid pro quo scheme that caused the September 12, 2022 issuance of the injunction.

**211.** I admit that despite knowing the issuance of the March 15, 2024 was illegal, I did nonetheless issue the order in the belief that it would prevent Plaintiff Kaul from using discovery to expose the facts of my crimes and of those associated with the commission of the crimes.

**212.** I admit I know that having had the knowingly illegal order published to the S.D.N.Y. docket, it was downloaded by the K11-27 Defendants.

**213.** I admit I know that having downloaded the March 15, 2024 order threatening Plaintiff Kaul with contempt if he did not dismiss K11-17, the K11-17 Defendants did on March 18, 2024 publish the order to the docket of the E.D.N.C. (D.E. 72).

**214**. I admit that the order required Plaintiff Kaul to dismiss K11-17 by March 29, 2024 or be held in contempt.

**215.** I admit I know the March 18, 2024 filing of the order on the docket of the E.D.N.C. was immediately brought to the attention of the district judge.

**216.** I admit I believed that Plaintiff Kaul would dismiss K11-17, having experienced the dismissal of K11-14 based on the K11-7 injunction.

**217.** I admit I was wrong.

**218.** I admit that on March 25, 2024, Plaintiff Kaul filed suit (K11-18) against me in the E.D.N.C.

**219.** I admit I know the case was ultimately assigned to the Chief Judge who was already adjudicating K11-17.

**220.** I admit I did not deny any of the allegations/facts in K11-18.

**221.** I admit I know that my non-denial of the facts did, pursuant to Rule 8(b)(6) cause them to become admitted for all purposes.

**222.** I admit I know that K11-18 was dismissed with prejudice on April 8, 2024.

**223.** I admit I know that Plaintiff Kaul filed a NOTICE OF APPEAL on May 9, 2024 in the U.S.C.A. for the Fourth Circuit.

**224.** I admit I know the U.S.C.A., for the Fourth Circuit issued an 'INFOERMAL BRIEFING ORDER' on May 9, 2024.

**225.** I admit I know that on May 15, 2024, Plaintiff Kaul filed a 'PETITIONER REQUEST PURSUANT TO FEDERAL RULE OF EVIDENCE 201, FOR THE COURT TO TAKE JUDICIAL NOTICE OF FACTS ADMITTED IN PROCEEDINGS WITH A DIRECT CONNECTION TO THE ISSUES ON APPEAL'.

**226.** I admit I know that the basis for the admitted facts pertained to, amongst other things Rule **"8(b)(6) of the F.R.C.P."** (U.S.C.A.4 Appeal: 24-1417 Doc:4-1)

**227.** I admit I know that the facts deemed to be admitted by the U.S.C.A. for the Fourth Circuit were all the facts from all of **The Kaul Cases** in which none of the Defendants had denied any of the facts.

**228.** I admit I know that the facts deemed to be admitted by the U.S.C.A. for the Fourth Circuit were all the facts from all of **The Kaul Cases** in which the non-denial of all of the facts did, pursuant to Rule 8(b)(6) cause the facts to become admitted for all purposes.

**229.** I admit I know that Plaintiff Kaul's May 15, 2024 submission included a copy of every Complaint from all of **The Kaul Cases**, and that the submission was three hundred and three (303) pages.

**230.** I admit I did not file any objection to Plaintiff Kaul's May 15, 2024 submission as to admitted facts pursuant to Rule 8(b)(6).

**231.** I admit the law deems my non-objection as an admission of the procedural/substantive substance of the May 15, 2024 submission.

**232.** I admit I know that on May 29, 2024, Plaintiff Kaul filed his 'INFORMAL OPENING BRIEF' (U.S.C.A.4 Appeal: 24-1417 Doc:9-1).

**233.** I admit I know that within the 'INFORMAL OPENING BRIEF' Plaintiff Kaul raised facts related to my perpetration of a bribery related quid pro quo scheme in K11-7.

**234.** I admit I have read the 'INFORMAL OPENING BRIEF'

**235**. I admit that one of the statements, of which my non-denial did cause admittance, is: **"Respondent [Defendant Oetken] continued to fail to provide any evidence/fact that he had not participated in a quid pro quo bribery scheme with Defendants, and in fact did not even submit or have submitted a statement/affidavit that he had not used his bench in the S.D.N.Y. to perpetrate a bribery based "pattern of racketeering" in K11-7 or any other cases in which he had been involved."**

**236.** I admit the truth of this statement.

**237.** I admit I filed no response to Plaintiff Kaul's 'INFORMAL OPENING BRIEF' because the truth of the facts within K11-18 had been proven and admitted consequent to my non-denial of the facts, the non-denial of which did, pursuant to Rule 8(b)(6) cause them to become admitted for all purposes.

**238.** I admit I did not deny the facts in K11-18, as I have not denied them in K11-23 because I am guilty of the charges levied in both cases.

**239.** I admit I had every opportunity to deny the facts in K11-18, but did not.

**240.** I admit I knew/know that in willfully failing to deny the facts in K11-18, I did admit the facts for all purposes.

**241.** I admit I know that in K11-17 on June 14, 2024, the district judge who dismissed K11-18 did, after having entered an order of discovery on March 13, 2024 in full knowledge of my September 12, 2022 injunction in K11-7, did dismiss K11-17 based on the injunction.

**242.** I admit that the district judge in K11-17 was harassed and intimidated into dismissing a case in which he, in his independent judicial authority/judgment had admitted on November 20, 2023 and entered an order of discovery on March 13, 2024 in full knowledge of the injunction.

**243.** I admit that when the K11-17 Defendants informed me of the March 13, 2024 discovery order in K11-17, I recognized the immense risk of Plaintiff Kaul exposing my crimes not just in K11-7, but those I have committed since my appointment to the federal bench in 2011.

**244.** I admit that if discovery proceeded in K11-17, Plaintiff Kaul would expose my long-standing bribery related criminal activities.

**245.** I admit I know that such an exposure would cause my removal from the federal bench and subject me to criminal proceedings.

**246.** I admit I know that in having K11-14 and K11-17 dismissed I did continue to perpetuate an almost twenty (20) year-long conspiracy against Plaintiff Kaul and a twelve (12) year-long injury to his life/liberty/property/reputation and violation of his human/civil/constitutional rights.

**247.** I admit I knew/know that my perpetuation of this conspiracy and rights violations were purposed to cause the elimination of Plaintiff Kaul.

**248.** I admit that my intention in seeking to cause the elimination of Plaintiff Kaul pertained to my fear that his continued prosecution of **The Kaul Cases** would expose my crimes and those of **The Kaul Cases** Defendants.

**249.** I admit that as Plaintiff Kaul proceeded to file K11-14 and K11-17, **The Kaul Cases** Defendants became increasingly agitated and aggressive in their threats to expose me if I did not follow their orders and have Plaintiff Kaul held in contempt and jailed.

**250.** I admit that with these threats I became fearful for my career and life.

**251.** I admit that on or about August 26, 2024 I became aware that Plaintiff Kaul had filed K11-20 in the United States District Court for the Southern District of Texas.

**252.** I admit I know that on August 30, 2024, the Court entered an 'ORDER FOR CONFERENCE AND DISCLOSURE OF INTERESTED PARTIES' (D.E. 4).

**253.** I admit that on September 16, 2024 the K11-20 Defendant Federation State Medical Boards sent me a letter requesting I order Plaintiff Kaul to dismiss K11-20 under threat of contempt of court (K11-7: D.E. 174).

**254.** I admit that in K11-7 on September 13, 2022 the Clerk of the Court closed the case.

**255.** I admit that no order was ever issued by the Clerk of the Court that re-opened the case.

**256.** I admit that in the absence of any order from the Clerk of the Court re-opening the case, the case has remained closed since September 13, 2022.

**257.** I admit that the continued closure of the case since September 13, 2022 does render all filings in the closed case null and void for all intents and purposes.

**258.** I admit that in recognizing the fact that the case was closed and in not wanting to again expose myself to a lawsuit as Plaintiff Kaul had filed on March 25, 2024 in K11-17 and which was now before the U.S.C.A. for the Fourth Circuit, I hesitated in a manner I had not in K11-17 in deciding to threaten Plaintiff Kaul with contempt if he did not dismiss K11-20.

**259.** I admit that my degree of hesitation and fear had become compounded by the risk of having my crimes exposed by the co-conspirator K11-7/K11-20 Defendants and or the U.S.C.A. for the Fourth Circuit.

**260.** I admit I found myself 'backed into a corner' in which I had no option but to obey the order of the K11-20 Defendants to issue an order threatening Plaintiff Kaul with contempt if he did not dismiss K11-20.

**261.** I admit that if Plaintiff Kaul pursued discovery in K11-20, he would fully expose my crimes and those of persons who aided and abetted the crimes.

**262.** I admit that on October 2, 2024 under immense duress I issued an order that threatened Plaintiff Kaul with contempt if he did not dismiss K11-20 by October 16, 2024.

**263.** I admit I was convinced Plaintiff Kaul would dismiss K11-20, and that my crimes and those of my co-conspirators would be concealed.

**264.** I admit that on October 9, 2024, Plaintiff Kaul filed K11-23, in which I was and am charged of, amongst other things, the crimes of bribery/public corruption and the conversion of my court at the S.D.N.Y. into a **"racketeering enterprise".**

**265.** I admit I know that on October 9, 2024, in K11-20, the Court issued a 'SCHEDULING ORDER'

**266.** I admit that I was served with a copy of K11-23 on October 16, 2024 at approximately 9:30 am EST in my courtroom at the S.D.N.Y. by a security officer employed by the United States District Court.

DATED: JANUARY 6, 2025

_____
RICHARD ARJUN KAUL, MD

# CERTIFICATE OF SERVICE

I certify under penalty of perjury that a copy of the **FIRST SUBMISSION OF ADMISSIONS OF**

**MATERIAL AND UNDISPUTED FACT PURSUANT TO RULE 8(b)(6) AS TO DEFENDANT JAMES**

**PAUL OETKEN** was emailed to Defendants' counsel on January 6, 2025.

DATED: JANUARY 6, 2025

_____
RICHARD ARJUN KAUL, MD

# APPENDIX B

Kaul/Basch v ICE

~~21-CV-06992~~

K11-7

## The Oetken Disqualification

By: Richard Arjun Kaul, MD
David B. Basch, MD

October 6, 2022



**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

SONY PRO SE OFFICE
2022 OCT -6 PM 1:02

RICHARD ARJUN KAUL, MD

Plaintiff

v.

INTERCONTINENTAL EXCHANGE, ET AL

Defendants

Case No. 21-CV-06992

**AFFIDAVIT AND MOTION IN SUPPORT OF APPLICATION FOR JUDICIAL DISQUALIFICATION OF UNITED STATES DISTRICT COURT JUDGE J. PAUL OETKEN PURSUANT TO 28 U.S.C. § 144 AND 28 U.S.C. § 455**

We, the Propria Persona Plaintiffs, Richard Arjun Kaul, MD, and David B. Basch, MD, do hereby swear under oath and penalty of perjury that the facts, reasons, and statements submitted in support of this application are true and accurate to the best of my knowledge.

Dated: October 6, 2022

RICHARD ARJUN KAUL, MD

DAVID B. BASCH, MD

2

# Contents

Authorities – Page 4

Relevant Facts – Page 5

Legal Argument – Page 12

Preface – Page 12

28 U.S.C. § 455 states: - Page 12

   A. 455(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned – Page 14
   B. 455(b)(1) He shall also disqualify himself in the following circumstances: Where he has personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding – Page 18
   C. 28 U.S.C. § 455 (b)(4) He knows that he, individually or as a fiduciary, or his spouse has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding – Page 20
   D. 28 U.S.C. § 455 (e) Waiver of Disqualification – Page 21

28 U.S.C. § 144 states: – Page 23

   E. 28 U.S.C. § 144 Whenever a party to a proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding. The affidavit shall state the facts and the reasons for the belief that bias, or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith. – Page 22

   F. Kaul's application for disqualification is timely – Page 23

Conclusion + Relief Sought – Page 25

Order – Page 26

# Authorities

## Cases:

Apple v. Jewish Hosp. & Med. Ctr., 829 F.2d 326, 333 (2d Cir. 1987)
Berger v. United States, 255 U.S. 22 (1921):
Diamondstone v. Macaluso, 148 F.3d 113, 121 (2d Cir. 1998):
Impeachment of G. Thomas Porteus, Jr., Judge of the United States District Court for the
Eastern District of Louisiana, and H.Res. 1031, 111th Cong. 2d Sess (Mar. 11, 2010
Edgar v. K.L., 93 F.3d 256 (7th Cir. 1996):
Hook v McDade, 89 F.3d 350, 355 (7th Cir. 1996):
In re Allied-Signal Inc., 891 F.2d 967, 970 (1st Cir. 1989):
In Cheney v. United States District Court for the District of Columbia, 541 U.S. 913 (2004):
In re Drexel Burnham Lambert Inc., 861 F.2d 1307, 1313 (2d Cir. 1988):
In re Faulkner, 856 F.2d 716, 721 (5th Cir. 1988):
In re Kensington Int'l Ltd., 368 F.3d 289 (3d Cir. 2004)
In re Mason, 916 F.2d 384, 386 (7th Cir. 1990):
In re New Mexico Natural Gas Antitrust Litig., 620 F.2d 794, 796 (10th Cir. 1980):
In re Rodgers, 537 F.2d 1196 (4th Cir. 1976):
In re Sch. Asbestos Litig., 977 F.2d 764, 782 (3d Cir. 1992):
Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 860 n.8 (1988):
Liteky v. United States, 510 U.S. 540, 553 (1994):
Patterson v. Mobile Oil Corp., 335 F.3d 476 (5th Cir. 2003):
Preston v. United States, 923 F.2d 731, 734-35 (9th Cir. 1991):
Republic of Pan. V. Am. Tobacco Co., 217 F.3d 343, 347 (5th Cir. 2000):
Travelers Ins. Co. v. Liljeberg Enters., Inc., 38 F.3d 1404, 1410 (5th Cir. 1994)
United States v Alabama, 828 F.2d 1532 (11th Cir. 1987):
United States v Arena, 180 F.3d 380 (2d Cir. 1999):
United States v. Balistrieri, 779 F.2d 1191, 1202 (7th Cir. 1985):
United States v Bayless, 201 F.3d 116, 126 (2d Cir. 2000):
United States v. Bobo, 323 F. Supp. 2d 1238 (N.D. Ala. 2004):
United States v DeTemple, 162 F.3d 279, 286 (4th Cir. 1998)
United States v Microsoft, 56 F.3d 1448 (D.C. Cir. 1995):
United States v Murphy, 768 F.2d 1518 (7th Cir. 1985):
United States v. Toohey, 448 F.3d 542 (2d Cir. 2006):

## Statutes:

28 U.S.C. § 455
28 U.S.C § 144

# Relevant Facts

**1.** In September 2021, Kaul had several conversations with one of the nation's largest litigation funders, a corporation based in San Francisco, after K11-7 had been identified as a **"strong and winnable case"** by their algorithm, a piece of software that searches legal databases/court dockets across the country. This highly critical and discerning tool, in conducting an independent and purely objective assessment, did arrive at the aforementioned conclusion. The algorithm's conclusion is at complete odds with the purported opinion of Judge Oetken.

**2.** In 2011 Judge Oetken was appointed to the federal bench upon the recommendation US Senator Charles Schumer (D-NY), a person sued by Kaul on April 4, 2019 (Kaul v Schumer: 19-CV-13477) (K3), for having engaged in quid pro quo schemes with K1/K2 Defendants, in which he conspired with his brother-in-law, U.S.D.J. Kevin McNulty (DNJ) to unlawfully obstruct Kaul's prosecution of K1/K2, by entering knowingly fraudulent opinions and orders. Kaul nullified U.S.D.J. McNulty's February 22, 2019, order/opinion with the submission of 'The McNulty Analysis' on March 2019 (K1: D.E. 313-1), and on May 8, 2019, Kaul moved to disqualify USDJ McNulty (K1: 334) and on May 22, 2019, USDJ became disqualified (K1: D.E. 340).

**3.** Judge Oetken was assigned to K11-7 on August 19, 2021.

**4.** Upon assignment, Judge Oetken became aware that while a corporate lawyer, he had represented numerous members of the banking and insurance industry, many of whom, hold stock in Defendants ICE/Allstate/Geico/TD, and many in whom Judge Oetken currently holds stock, directly or indirectly.

**5.** However, Judge Oetken failed to either recuse himself or bring this matter to the attention of Kaul or the Court. One of the motives for his failure of disclosure/recusal, was to retain his power to dismiss the case, an act he calculated would increase the value of his investment portfolio.

**6.** On September 12, 2022, Judge Oetken entered an opinion/order that he knew did not truthfully reflect the law, the facts or evidence of the case, an opinion/order that he knew was false (D.E. 168). The knowing falsity of Judge Oetken's opinion/order evidence his biased/prejudicial state-of-mind against Kaul.

**7.** Judge Oetken conspired with agents of Senator Charles E. Schumer, to pervert the course of justice and prevent Kaul from presenting evidence to the public of crimes committed by **The Kaul Cases** Defendants, one of whom was Senator Schumer. These acts evidence Judge

Oetken's biased/prejudiced state-of-mind, and the exercise of this state-of-mind in order to pervert the course of justice.

**8.** Judge Oetken's participation in the scheme with Senator Schumer to pervert/obstruct the course of justice, was an act consistent with his bias/prejudicial state-of-mind and appearance of partiality against Kaul.

**9.** Judge Oetken's participation in the scheme, involved him in the commission of following acts, all of which evidence his bias/prejudicial state-of-mind: **(i)** obstruct Kaul's prosecution of the case; **(ii)** deny all of Kaul's motions; **(v)** dismiss with prejudice all of Kaul's claims; **(vi)** threaten to hold Kaul in contempt for asserting his right to due process. A "**reasonable man**" looking at such malfeasance/misconduct might say to himself, "**the judge has been corrupted**".

**10.** Judge Oetken's knowing and willful participation in the scheme to deceive Kaul by orchestrating a charade of due process, evidences his biased/prejudicial state-of-mind. It is this state-of-mind that has caused Judge Oetken to violate his legal oath to uphold the Constitution and remain loyal to the law. Judge Oetken's willful ignorance and derision (**"purported kidnapping"**) D.E. 168 Page 4 of 20) of the crime committed against Kaul, can only emanate from a heart and mind that has been thoroughly corrupted by money. Where is the principle, integrity, or honor, or is it all just about money?

**11.** Judge Oetken's biased/prejudicial state-of-mind and conduct prohibit him from any further involvement in the case, a case in which he knowingly obstructed Kaul's efforts in gathering evidence, in the knowledge that it would permit the defendants and third-party witnesses to delete /destroy/spoil evidence.

**12.** Judge Oetken's biased/prejudicial state-of -mind and conduct are evidenced in the fact that he willingly and knowingly participated in a scheme, in which there existed a corrupt intent to pervert the course of justice, and a scheme in which he did in fact pervert the course of justice, with the instrument of a federal court and its attendant authority.

**13.** Judge Oetken's biased/prejudicial state-of-mind and conduct are evidenced in the fact that he willingly and knowingly used the US wires in furtherance of a scheme that he knew was illegal. A cause + consequence of his bias/prejudice was money. The defendants in their desperation to avoid economic/reputational obliteration, calculated that the legal risk of corrupting a federal judge/US Senator, was outweighed by the risk of losing the case. Their calculation, as with every other calculation they have made, was wrong. Obstruction of justice leads to lengthier jail terms, than does perjury + evidential falsification.

**14.** Judge Oetken's biased/prejudicial state-of-mind and conduct are evidenced by the fact that he knew the purpose of the defendants' scheme was to cause him to obstruct Kaul's prosecution of K11-7, by denying his motions, denying him discovery, and dismissing with prejudice his federal-law claims. In essence, denying Kaul access to substantive justice and willfully and knowingly violating his constitutionally protected right to due process.

**15.** Judge Oetken's biased/prejudicial state-of-mind and conduct are evidenced by the fact that he/agents, in collusion and conspiracy with the Defendants/agents, converted the United States District Court for the SDNY into a racketeering enterprise, the purpose of which was to profit from the case and obstruct Kaul's prosecution of the matter. Judge Oetken and the K11-7 Defendants/agents, participated in a series of multiple quid pro quo schemes with the defendants, in which the "**quid**" were bribes paid by defendants to Judge Oetken and the "**quo**" was the perversion/obstruction of the course of justice.

**16.** Judge Oetken's biased/prejudicial state-of-mind and conduct are evidenced by the fact that he knew that by obstructing Kaul's prosecution of K11-7, he would prevent him from disclosing to the public evidence of the crimes committed by **The Kaul Cases** Defendants in administrative/state/bankruptcy/federal courts within the geographic boundaries of the State of New York, <u>and</u> crimes committed on the NYSE/SEC/global equities market <u>and</u> crimes committed within the administrative/judicial branches of the State of New York (2005/6-2022). Judge Oetken's aiding and abetting the Defendants' cover-up' of their crimes is consistent with his bias/prejudice against Kaul, which is partly a product of bribery.

**17.** Judge Oetken's biased/prejudicial state-of-mind and conduct are evidenced by his involvement in this scheme and particularly by his knowledge that one of the scheme's goals, was an attempt to deceive Kaul into thinking that justice was being served. Judge Oetken played a central role in the perpetration of this charade of due process, an abuse and knowingly false use of the authority of the United States District Court for the SDNY.

**18.** Judge Oetken's biased/prejudicial state-of-mind and conduct are evidenced by the fact that he knew the defendants had flagrantly violated Kaul's right to due process within administrative/state/bankruptcy/federal courts within the geographic boundaries of the State of New York, but yet on September 12, 2022, he dismissed K11-7 with prejudice, and threatened to hold Kaul in contempt if he exercised his right, and that of his children's right to life. Judge Oetken attempted to issue Kaul an effective death warrant, burden Kaul's children with the generational consequences of the Defendants crimes and suppress the truth, because he had received bribes. Kaul will employ the full force of domestic/international law to prevent this.

**19.** Based on a "**reasonable man's**" observations of Judge Oetken's lack of "**appearance**" of impartiality, as evidenced in his opinions/orders, Judge Oetken must be disqualified in order to maintain the public's confidence in the judiciary.

**20.** Judge Oetken's bias/prejudice/appearance of partiality against Kaul is found in his September 12, 2022, opinion/order, and other parts of the case file:

**a. Ignoring the evidence**: On September 12, 2022, Judge Oetken issued a twenty (20) page opinion (D.E. 168), in which he devoted several paragraphs to a recitation of knowingly false legal conclusions, that resulted in the issuance of an opinion on December 13, 2013, by K2 defendant and ex-administrative NJ law judge, Jay Howard Solomon, that caused the illegal revocation of Kaul's NJ license. On January 17, 2018, Kaul submitted onto the K1 docket a document entitled 'The Solomon Critique' (K1: D.E. 225). It is the product of Kaul having cross-referenced almost twenty-seven thousand (27,000) lines of legal transcript, with the one hundred and five (105) page opinion of K2 defendant Solomon. Kaul did not come into possession of the entire transcript until September 2017. 'The Solomon Critique' proves with the state's own evidence, that in a period from April 9, 2013, to December 13, 2013, K1/K2 Defendants, Gregory Przybylski, MD, + Andrew Kaufman, MD + Jay Howard Solomon, Esq, **collectively committed two hundred and seventy-eight (278) separate instances of perjury + evidential omissions + misrepresentations + gross mischaracterizations** in the administrative board proceedings that resulted in the illegal revocation of Kaul's license on March 12, 2014. Further, on February 11, 2019, as **Exhibit 18** of Kaul's K1 motion for summary judgment against Defendant Allstate New Jersey Insurance Company, Kaul submitted a document entitled 'The Solomon Critique 2' (K1: D.E. 299-18 Page ID 7201 to D.E. 299-26 Page ID 8170). This document is a focused analysis on the testimony of Defendant Przybylski, the state's 'star expert', upon whose fraudulent testimony Kaul's license was illegally revoked. This document proves that in a period from April 9, 2013, to December 13, 2013, Defendant Przybylski in conjunction with K2 defendants Hafner + Solomon **collectively committed two hundred and twenty-two (222) separate instances of perjury + evidential omissions + falsifications + misrepresentations.** (K1: D.E. 299-18 Page ID 7203). In addition to the submission of this evidence, Kaul submitted further evidence in the form of affidavits and e-mails (K1: D.E. 299 Page ID 7044 to Page ID 7065) that, as detailed in his motion for summary judgment against Defendant Allstate New Jersey Insurance Company (K1: D.E. 299 Page ID 7017 to Page ID 8170), are conclusive of his claims and disprove the defendants' defenses. Contained within this submission was an article entitled, '**How Many Die from Medical Mistakes in US Hospitals?**'. The answer is **440,000 annually.** Also contained within this submission is a document entitled 'The Przybylski Disciplinary Notice' (K1: D.E. 299-22 Page ID 7502 to Page ID 7505), which contains notice of an

official public disciplinary proceeding/finding against Defendant Przybylski by the American Association of Neurological Surgeons (AANS), on April 21, 2017, in which they concluded that Defendant Przybylski had provided knowingly false testimony in a medical malpractice case against another physician. The AANS stated: "**The Board of Directors also concluded that Dr. Przybylski violated Section A.4 by misrepresenting the standard of care when he testified that antibiotic treatment for six weeks after an esophageal tear closure, monitoring ESR and CRP and personal review of esophageal swallow studies are all required during treatment of a pharyngeal tear.**" (K1: D.E.299-22 Page ID 7505). This conclusive/admitted evidence was submitted into K11-7, but there exists no reference, let alone analysis of this evidence in Judge Oetken's opinion. Neither is there cited any factual/legal basis to substantiate these absences.

**b. Ignoring the evidence**: On September 12, 2022, in response to Kaul's dissemination of NOTICES OF PRESERVATION to multiple Third-Party Witnesses, including ex-DNJ Chief Judge, Jose Linares, Judge Oetken hurriedly and in a 'knee-jerk' manner consistent with having been given an order by the defendants, entered an opinion/order (D.E. 168), that is factually and legally flawed, and is further evidence of both his bias/prejudicial state-of-mind and his "**appearance**" of partiality against Kaul. Judge Oetken's opinion, once again, contains a multi-paragraph recitation of knowingly false legal conclusions from the December 13, 2013, one hundred and five (105) page opinion of K2 Defendant Jay Howard Solomon. However, and as irrefutable evidence of his bias/prejudice/appearance of partiality against Kaul, he completely ignores the evidence submitted by Kaul in support of his motion for summary judgment against Defendant Allstate New Jersey Insurance Company (D.E. 5). Specifically, he ignores the evidence of 'The Solomon Critique' (D.E. 5 Page 53 of 131) + 'The Solomon Critique 2' (D.E. 5 page 117 of 131 ), evidence that unequivocally, irrefutably and undeniably prove that the administrative board proceedings (April 9, 2013 to December 13, 2013) were a massive fraud perpetrated by both state and private actors, who, under direction from Defendant Christie, converted the State of New Jersey and its agencies into racketeering enterprises, through which state and private actors conducted multiple patterns of racketeering, through the commission of the predicate acts of mail fraud/wire fraud/bribery/obstruction of justice/kickbacks/perjury. The common purpose of these schemes, as understood and facilitated by the defendants was to illegally revoke Kaul's license, and eradicate the debt of certain defendants, and eliminate the threat of competition that his practice posed. Judge Oetken's complete silence on Kaul's evidence is evidence of his biased/prejudicial/appearance of partiality against Kaul, which demands that he be disqualified from the case, and his orders become subject to vacatur. However, despite this 'mountain' of evidence, Judge Oetken, consistent with his bias/prejudice/appearance or partiality, failed to analyze/reference the evidence submitted by Kaul that proved that the administrative board proceedings were a massive fraud. In fact, Judge Oetken, in attempting to manufacture a foundation for his knowingly false opinion, used the record of the United States District Court to not only ignore the evidence, but to propagate the

falsehood that the ADMISSIONS OF UNDISPUTED FACT admitted in K1 were **"fabricated"** (D.E. 5 Page 17 of 20). Judge Oetken knew and knows that the evidence proves that the K11-7 claims are valid and merit-full, and his characterization of them as **"frivolous"** evidences his bias/prejudice/appearance of partiality against Kaul and provides further evidence as to why Judge Oetken must be disqualified from the case, and his orders be nullified.

c. **The pattern of judicial misconduct + 'The McNulty Analysis':** In K1, Kaul filed a document on March 18, 2019, entitled 'The McNulty Analysis' (K1: D.E. 313 Page ID 8384 to Page ID 8448) in response to Judge McNulty's opinions/orders (D.E. 300 + 301 + 303 + 304). The document details the facts of why Judge McNulty was conflicted/biased/prejudiced against Kaul (K1: D.E. 313-1 Page ID 8386 + Page ID 8399 + Page ID 8403 + Page Id 8432 + Page ID 8436 + Page ID 8447). The evidence within this document, almost exactly reflects that admitted to by Judge Oetken, and is evidence that caused the disqualification of Judge McNulty (K1: D.E. 340) on May 22, 2019. Thus, pursuant to sections 455 /144 of the United States Code, Judge Oetken must likewise be disqualified and vacatur implemented. To permit any further involvement in this case by Judge Oetken, would constitute a grave miscarriage of justice, would be contrary to the interests of justice, would be violative of every legal oath to which Judge Oetken has sworn, and would constitute a continuance of the violation of Kaul's constitutionally protected right to due process, a violation that commenced on April 2012 with K2 defendant, NJBME, and is ongoing in September 2022.

**21.** On September 13, 2022, Judge Oetken was served, pursuant to the Courthouse Ethics and Transparency Act, with a demand for amongst other things, his financial holdings, and a list of all ex parte communications between himself/agents and the Defendants/agents regarding any aspect of K11-7 and or future promises of any tangible or non-tangible favors (**Exhibit 1**). As of October 7, 2022, Judge Oetken has failed to comply with his legally mandated judicial duties.

**22.** The non-production, and thus the consequent admittance of evidence of financial conflicts of interest and improper ex parte communications, substantiate not only a finding of bias/impartiality, but a conclusive nullity of the knowingly fraudulent opinion/order of September 12, 2022 (D.E. 168).

**23.** These facts explain with completeness and without any reasonable question, the fraudulent nature and form of the September 12, 2022, opinion/order, for Judge Oetken's opinion, while resonating with a tone of hurried desperation, is replete with errors of logic/fact/law, and fails, intentionally no doubt, to reflect the enormous body of highly incriminating evidence. Judge Oetken fails, as did the Defendants, to address/analyze/refute/contest any of Kaul's approximately one hundred and seventy-three (173) arguments/sub-arguments, the Defendants non-refutation/the Court's non-analysis of

which has caused them to become admitted. One example, of which there are hundreds, is Judge Oetken's knowingly fraudulent finding that corporate Defendant TD's admission of fact in K1 is allegedly **"fabricated"** (D.E. 168 Page 17 of 20). Judge Oetken cites to Defendant TD's equally fraudulent submission in their motion to dismiss/injunctive plea (D.E. 97 at 2-3/14) to further his fraud, while willfully ignoring argument/evidence submitted by Kaul that proves Defendant TD lied, that argument being: **"Counsel for Defendant TD was electronically served with an "ADMISSIONS BY DEFENDANT TD NA OF UNDISPUTED FACTS" on July 7, 2020, and did on July 14, 2020 admit to the facts."** (D.E. 110 Page 12 of 63), and the evidence being the email/attached admissions received by Defendant TD In K1 on July 7, 2020 (D.E. 110 Page 28-31 of 63), which states, amongst other things: **"If, by July Fourteenth Two Thousand and Twenty, you fail to contest the Unrefuted Fact, then these facts will remain admitted, and will be submitted in support of the motions for Summary Judgment."** Further evidencing the willful legal error/bias/partiality of Judge Oetken's is the <u>fact</u> that the judge in K1, the case in which the facts were admitted, did not find that the admissions were fabricated.

**24.** Further evidence of Judge Oetken's illegal participation in schemes of bribery and judicial corruption is found in a comparison of the initial segments of his opinion, with the evidence/facts/arguments within the case file (**<u>Exhibit 2</u>**). The blatant absence of analysis of any of Kaul's arguments/sub-arguments can only be explained/understood in the context of these schemes. If Judge Oetken had not been bribed, his opinion would honestly reflect the record, but it does not.

**25.** Judge Oetken's threat to hold Kaul in contempt of court if he exercises his inalienable right to due process/life/justice, by relying on law that he knows does not and never could support such a violation of human rights, constitutes further evidence of his having converted the court into a **"racketeering enterprise"**. Judge Oetken continues to knowingly violate the Courthouse Ethics and Transparency Act, a violation that places under retroactive scrutiny his entire legal/judicial practice.

# Legal Argument

### Preface

**26.** Democracy and the peaceful order of society, cease to exist when the judiciary is morally bent, perverted from fact and willfully blind to the law. When partiality, personal bias and or conflicts of interest pollute the administration of justice, the public loses confidence in the system of justice, and lawlessness displaces lawfulness. When the public lose faith in their judges, they lose faith in the law. Central to this understanding of societal order is the concept of judicial impartiality, a function of democracy in which a judge has no commercial/political/personal interest in a case, other than to ensure that justice is served with dispassion and a certain disinterestedness. The impartial disinterested judge must not only "**do justice**" but must "**appear**" to do so. The judiciary is rightly held to exacting standards, and sections 455 and 144 of the United States Code, in conjunction with the Code of Conduct for United States Judges are constructed to ensure that any deviations from these standards are rectified in favor of evidence of judicial misconduct. The law recognizes that judges, more than any other sector of society, know the rules, and know how to skirt those rules for self-serving ends, and thus the law demands that judges be their own and most vehement critics. This honest state-of-mind is reflected in the actions of a judge who stands accused of bias/partiality/appearance of partiality. This judge will, without question, step aside, for he has no special interest in the case, and will not want to compromise the public's faith in the system of justice. The dishonest or conflicted judge will fight and or obstruct any credible, evidentially supported application for disqualification, for this judge is interested in the case, is interested in its outcome, but yet knows that his continuance in the case will cause its corruption and diminish the public's faith in the integrity of the judiciary. Dishonest judges undermine the principles of democracy, and if unchecked, they will continue to use their benches and judicial power for self-serving reasons, contrary to the peaceful order of society. When a question arises about a judge's impartiality, the law, and the public demand that the judge remove himself from the proceedings, in order to protect the due process rights of litigants.

**27.** Kaul brings this application on 28 U.S.C. § 455 and 28 U.S.C. § 144, seeking to ensure his right to impartial justice.

### 28 U.S.C. § 455 states:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it.

(3) Where he has served in governmental employment and in such capacity as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy.

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

    (i)    Is a party to the proceeding, or an officer, director, or trustee of a party.

    (ii)    Is acting as a lawyer in the proceeding.

    (iii)    Is known by the judge to have an interest that could substantially affected by the outcome of the proceeding

    (iv)    Is to the judge's knowledge likely to be a material witness in the proceeding.

(c) A judge should inform himself about his personal and fiduciary financial interests, and make reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household

(d) For the purposes of this section the following words or phrases shall have the meaning indicated:

(1) "proceeding" includes pretrial, trial, appellate review, or other stages of litigation.

(2) the degree of relationship is calculated according to the civil law system.

(3) "fiduciary" includes such relationships as executor, administrator, trustee, and guardian.

(4) "Financial interest" means ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party, except that:

    (i)    Ownership in a mutual or common investment fund that holds securities is not a "financial interest" in such securities unless the judge participates in the management of the fund.

    (ii)    An office in an educational, religious, charitable, fraternal, or civic organization is not a "financial interest" in securities held by the organization.

(iii)　The proprietary interest of a policyholder in a mutual insurance company, of a depositor in a mutual savings association, or a similar proprietary interest, is a "financial interest" in the organization only if the outcome of the proceeding could substantially affect the value of the interest.

(iv)　Ownership of government securities is a "financial interest" in the issuer only if the outcome of the proceeding could substantially affect the value of the securities.

(e) No justice, judge, or magistrate judge shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.

(f) Notwithstanding the preceding provisions of this section, if any justice, judge, magistrate judge, or bankruptcy judge to whom a matter has been assigned would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to him or her, that he or she individually or as a fiduciary, or his or her spouse or minor child residing in his or her household, has a financial interest in a party (other than an interest that could be substantially affected by the outcome), disqualification is not required if the justice, judge, magistrate judge, bankruptcy judge, spouse or minor child, as the case may be, divests himself or herself of the interest that provides the grounds for the disqualification.

### A. 455(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned:

**28.** The facts, as asserted above, and as viewed from and through the perspective of a "**reasonable man**" do say, that the impartiality of Judge Oetken "**might reasonably be questioned**". The law in support of this proposition, is as follows:

**a.** Liteky v. United States, 510 U.S. 540, 553 (1994): The exacting standards to which the federal judiciary are held reflect its desire to maintain the public's confidence in its integrity and impartiality. If a judge's impartiality "**might reasonably be questioned**" then it is proper for him to be disqualified. The Liteky Court, in rejecting the petitioner's argument that sought to have the Court interpret the district judge's "**appearance**" of impartiality in the context of the "**extrajudicial source**" doctrine, established that an "**appearance**" of impartiality, without more, was a sufficient basis for disqualification: "**Partiality**" does not refer to all favoritism, but only to such as is, for **some** reason, wrongful or inappropriate. Impartiality is not gullibility. Moreover, even if the pejorative connation of "partiality" were enough to import the

"extrajudicial source" doctrine into § 455(a0, the "reasonableness" limitation (recusal is required only if the judge's impartiality "might *reasonably* be questioned") would have the same effect. To demand the sort of "child-like innocence" that elimination of the "extrajudicial source" limitation would require is not reasonable." at 552. The Liteky Court then went on to describe intra-judicial sources of evidence that prove the judge's partiality against a particular party: "**Judicial remarks … support a bias or partiality challenge … will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.**" at 555. Judge Oetken's denial of all of Kaul's motions, his slanderous opinion of dismissal and his failure to adhere to his statutory obligation to disclose his financial holdings/ex parte communications, evidence "**such a high degree favoritism or antagonism as to make fair judgment impossible.**" The Liteky standard requires disqualification.

**b.** United States v Bayless, 201 F.3d 116, 126 (2d Cir. 2000): "**We have stated the standard for recusal under § 455(a) as follows: [A] court of appeals must ask the following question: Would a reasonable person, knowing all the facts, conclude that the trial judges' impartiality could reasonably be questioned? Or phrased differently, would an objective, disinterested observer fully informed of the underlying facts, entertain significant doubt that justice would be done absent recusal.**" at 126. If the above stated facts were 'plugged' into the mind of a "**reasonable man**", then he would "**entertain significant doubt that justice would be done absent recusal.**" and thus as a truly "**disinterested**" party, the "**reasonable man**" would demand the disqualification of Judge Oetken, the vacatur of his September 12, 2022 order and would likely state words to the effect that this case is not a "close case".

**c.** United States v DeTemple, 162 F.3d 279, 286 (4th Cir. 1998): It is the combination of the mind of the "**reasonable man**" and the facts that determine a disqualification: "**… a reasonable observer is not a person unduly suspicious or concerned about a trivial risk that a judge may be biased. There is always some risk of bias; to constitute grounds for disqualification, the probability that a judge will decide a case on a basis other than the merits must be more than "trivial." In the Matter of Mason, 916 F.2d 384, 386 (7th Cir. 1990).**" at 287. Judge Oetken has proven that his adjudication of this case is not based on the merits. He, as with all of the defendants, has failed to address/rebut/refute/contest the 'mountain' of evidence that proves Kaul's claims and dismantles the defendants' defenses. This aversion/avoidance of the truth is substantial and quite sinister, is not "**trivial**", and thus Judge Oetken must be disqualified.

**d.** In re Mason, 916 F.2d 384, 386 (7th Cir. 1990): The importance of the objective standard of the mind of the "**reasonable man**" is that a judge cannot judge himself. An honest judge has no interest or motivation to sit in any case, for his sole purpose is to serve justice, and that requires no specific attachment to any case. On the contrary, a dishonest judge will use the power of his bench to serve his own economic/political/personal interests, and is more inclined, not because of concerns as to reputation, to refuse to disqualify himself. The law recognizes these factors, which is why it does not, for a finding of an "**appearance**" of partiality, require proof of "**actual**" partiality: "**Yet drawing all inferences favorable to the honesty and character of the judge whose conduct has been questioned, could collapse the appearance of impropriety standard under § 455(a) into a demand for proof of actual impropriety.**" at 386.

Kaul, however, has submitted fact in support of both the "**appearance**" and "**actual**" standards, and thus the law demands that Judge Oetken be disqualified and vacatur implemented.

**e.** In re Allied-Signal Inc., 891 F.2d 967, 970 (1ˢᵗ Cir. 1989): The "**reasonable man**" in this case, is not permitted under the law to be arbitrary, but is in fact a "**thoughtful**" and "**well-informed**" individual. See Mason 916 F.2d at 386. See also Jordan, 49 F.3d at 156; O'Regan, 246 F.3d at 988. The standard of his consideration is that: **"[W]hen considering disqualification, the district court is not to use the standard of "Cesar's wife," the standard of mere suspicion. That is because the disqualification decision must reflect not only the need to secure public confidence through proceedings that appear impartial, but also the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking."** at 970. The "**reasonable man**", in this case, will ask himself why Judge Oetken denied every motion filed by Kaul. He will ask himself why Judge Oetken did not appear once on the bench in front of Kaul. He will ask himself why Judge Oetken did not disqualify himself upon coming to know that as a lawyer he had represented banking/insurance corporations. He will ask himself why Judge Oetken denied all of Kaul's motions for summary judgment. The "**reasonable man**" would conclude that Judge Oetken is partial/biased/prejudiced against Kaul, that he must be disqualified.

**f.** Diamondstone v. Macaluso, 148 F.3d 113, 121 (2d Cir. 1998): The law requires that the facts upon which a disqualification application is submitted, are ones that a "**reasonable man**" would not consider "**trivial**": The Diamondstone Court held that "**A disinterested observer could not reasonably question Judge Murtha's impartiality based upon his alleged failure to return the plaintiff's greetings.**" at 121. There can be no question that failing to return a greeting is indeed trivial, a fact that stands in stark contrast to those asserted above, in which Judge Oetken has proved both his "**appearance**" of partiality against Kaul, and his "**actual**" bias/prejudice. The facts in Diamondstone are the 'polar opposite' of those in this case, the facts of which would cause a "**reasonable man**" to conclude that Judge Oetken must be disqualified.

**g.** In re Drexel Burnham Lambert Inc., 861 F.2d 1307, 1313 (2d Cir. 1988): The judicial disqualification process is a consequence of, and founded on, an analysis of the facts within the record: **"… whether a judge should be disqualified requires a careful examination of those relevant facts and circumstances to determine whether the charges reasonably bring into question a judge's impartiality.**" at 1309. The admitted/record facts in this case would prove in the mind of a "**reasonable man**" that Judge Oetken has both the "**appearance**" of impartiality and is "**actually**" biased/prejudiced, and thus must be disqualified.

**h.** In Cheney v. United States District Court for the District of Columbia, 541 U.S. 913 (2004): On April 4, 2019, Kaul filed suit in the United States District Court for the Southern District of New York against Senator Charles Schumer + Allstate Insurance Company + GEICO + TD Bank, NA + Gibbons, PC + Gannett Co., Inc (Kaul v Schumer: 19-CV-3046). Judge Oetken was sponsored to the bench by Senator Schumer, the conflict of interest which thus requires Judge Oetken be disqualified: **"[W[hile friendship is a ground for recusal of Justice where the personal fortune**

16

or the personal freedom of the friend is at issue, it has traditionally *not* been a ground for recusal where *official action* is at issue, no matter how important the official action was to the ambitions or the reputation of the Government officer." at 916.

   i. <u>United States v Microsoft, 56 F.3d 1448 (D.C. Cir. 1995):</u> Judge Oetken has admitted to conducting multiple ex parte communications with the defendants, which would cause the mind a of a "**reasonable man**" to conclude that Judge Oetken is partial against Kaul, otherwise why would he have conducted meetings about the case with other defendants in secrecy: "**The combined effect of the foregoing [ex parte communications] is to cause a reasonable observer to question whether Judge Sporkin "would have difficulty putting his previous views and findings aside**" at 1465. The Court assigned the case to a different judge. Judge Oetken must be disqualified, and his September 12, 2022, order vacated.

The facts, as asserted above, do leave Judge Oetken without any option but to become disqualified. This case is not a close one, and the law, in balancing a judge's "**duty to sit**" versus his or her duty to disqualify, finds that if there reasonably exists, a question of partiality, then the duty to disqualify prevails. The law in support of this proposition, is as follows:

   j. <u>Republic of Pan. V. Am. Tobacco Co., 217 F.3d 343, 347 (5th Cir. 2000):</u> The calculation of whether a "**reasonable man**", well informed of the facts and circumstances of the disqualification application, is a calculation based on as objective an analysis of the facts that one would imagine achievable by the mind of the "**reasonable man**": "**In order to determine whether a court's impartiality is reasonably in question, the objective inquiry is whether a well-informed, thoughtful and objective observer would question the court's impartiality.**" Trust Co. v. N.N.P., 104 F.3d 1478, 1491 (5th Cir. 1997) (citing United States v Jordan, 49 F.3d 152, 155-58 (5th Cir. 1995). **The review of a recusal order under § 455(a) is "extremely fact intensive and fact bound," thus close recitation of the factual basis for the appellants recusal motion is necessary**" at 346. Judge Oetken's admissions of financial conflicts of interest/ex parte communications, his blanket denials of Kaul's motions and requests for discovery, his failure to address Kaul's 'mountain' of conclusive evidence are facts, that if plugged into the mind of a "**reasonable man**" would cause that man to conclude that Judge Oetken is partial against Kaul, is conflicted and must, in the interests of justice, disqualify himself. Although the instant matter is not a close one, as was the case in the Republic Court, the Court made it a point to state that if there is any question as to impartiality, it must be decided in favor of disqualification: "**However, we have previously held that if the question of whether § 455(a) requires disqualification is a close one the balance tips in favor of recusal. In Re: Chevron, 121 F.3d 163 (5th Cir. 1997).**" at 347

Judge Oetken's asserted appearance of partiality mandates disqualification regardless of the fact that Kaul has requested a jury trial. As is evident from his pre-trial involvement, in which he has conducted a blanket policy of denying Kaul discovery, denying Kaul's motions for default judgment, denying Kaul's motion for summary judgment, and if the case were ever to be tried by Judge Oetken, either on remand, post vacatur or the trying of a new case, he would exclude witnesses, testimony and evidence that support Kaul's case. These facts demand

disqualification, regardless of whether K11-7 is tried with/without a jury. The law in support of this proposition is:

**k.** In re Sch. Asbestos Litig., 977 F.2d 764, 782 (3d Cir. 1992): "**Section 455 properly makes no distinction between jury and nonjury trials. The district judge is a jury trial must still make numerous pretrial rulings, including crucial summary judgment rulings, and will doubtless be called on to make numerous rulings on the qualification of witnesses and on evidentiary matters, not to mention post-trial motions.**" at 782. As did occur in the administrative board proceedings (April 9, 2013, to June 28, 2013: Opinion issued: December 13, 2013), and as evidenced in 'The Solomon Critique' (D.E. 5) + 'The Solomon Critique 2' (D.E. 5), so too in these proceedings would there be further acts, constituting obstruction of justice and violations of Kaul's constitutionally protected right to due process. Since April 2012, Kaul has the victim of an almost eleven (11) year campaign of fraud/perjury/obstruction of justice /bribery/kickbacks/extortion. Judge Oetken's disqualification will finally permit the truth to be publicly and properly told, absent judicial obstruction and the defendants ever more desperate defenses. Kaul assures the Defendants that their crimes will receive the same, if not more publicity, than that they so maliciously manufactured around Kaul from 2012 to 2015. The filing on February 22, 2016, of K1 silenced the defendants' 'baying'. When 'small' men come under pressure, it is remarkable how rapidly they retreat into their psychological 'holes'.

## B. 455(b)(1) He shall also disqualify himself in the following circumstances: Where he has personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding:

**29.** The facts as asserted above do prove that Judge Oetken has a "**personal bias and prejudice**" **against Kaul**" and has "**personal knowledge of disputed evidentiary facts concerning the proceeding**", and thus, in conjunction with violations of section 455 (a) and section 144, he must be disqualified. The law in support of this proposition is:

**l.** United States v. Balistrieri, 779 F.2d 1191, 1202 (7th Cir. 1985): Judge Oetken has admitted he has a commercial interest in the outcome of K11-7. K11-7 contains corporate defendants, that have corporate shareholders in which Judge Oetken holds shares. Judge Oetken has failed to file any financial disclosures or conflicts of interest in this matter. Money is funneled from these shareholders via shares to Judge Oetken. The Balistrieri Court held: "**The negative bias or prejudice from which the law of recusal protects a party must be grounded in some personal animus or malice that the judge harbors against him, of a kind that a fair-minded person could not entirely set aside when judging certain persons or causes. See United States v. Conforte, 624 F.2d 869, 881 (9th Cir.). cert. denied, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980). Satisfactory evidence of bias or prejudice must show this element of personal animus or malice. See footnote 9: "of course, if the party claims that the judge is biased because of some personal interest in the case or favoritism to other parties, then animus need not be shown.""** at 1201. The language of Judge Oetken's September 12, 2022, opinion reverberates with hostility, and certain sections contain language typically used by Defendants

Allstate/Geico, that of poorly constructed 'verbal thuggery' more frequently seen in New Jersey state court briefs. The co-drafting of Judge Oetken's opinion by lawyers for the corporate Defendants, further evidences his conflict of interest.

**m.** Hook v McDade, 89 F.3d 350, 355 (7th Cir. 1996): In answering the question of whether a judge harbors "**personal bias or prejudice**" against a particular party, the applicable standard is that of the mind of a "**reasonable man**", who in possession of all of the relevant facts and circumstances, is in the optimum position to answer the question: "**In determining whether a judge must disqualify himself under 29 U.S.C. § 455(b)(1), "the question is whether a reasonable person would be convinced the judge was biased."** Lac du Flambeau Indians v. Stop Treaty Abuse-Wis., 991 F.2d 1249, 1255 (7th Cir. 1993) (citing Taylor, 888 F.2d at 1201; Balistrieri, 779 F.2d at 1202). The above stated facts, if thoughtfully and carefully considered by a "**reasonable man**" would cause that individual to conclude that Judge Oetken has a "**personal bias or prejudice**" against Kaul.

n. In re Faulkner, 856 F.2d 716, 721 (5th Cir. 1988): Judge Oetken admitted to having engaged in extensive and improper ex parte communications with defendants' counsel. The 5th Circuit in Faulkner reminded the federal judiciary of the exacting standards to which the United States Supreme Court holds its members: "**Under the Supreme Court's compelling standard, we conclude that Judge Fish must stand down from this case, despite the total absence of any showing of actual bias. Under the facts presented, it is patent that "his partiality might reasonably be questioned" by a reasonable observer. This disqualifies him under section 455(a). Even were this not so, he has, at least through his personal conversations with Mrs. Pick, "personal knowledge of disputed evidentiary facts concerning the proceeding" sufficient to disqualify him, under section 455(b)(1), from presiding further over this case**" at 721. The Falkner standard mandates the disqualification of Judge Oetken and nullification of his September 12, 2022, order.

**o.** United States v Alabama, 828 F.2d 1532 (11th Cir. 1987): The bias created when a judge has aligned his interests with that of the state, its agencies, or actors, was the reason the 11th Circuit disqualified the district judge in United States v Alabama. Judge Oetken, as evident from the above stated facts, was and is aligned with the K11-7 corporate/state actors consequent to his prior legal representation of banking/insurance corporations. The 11th Circuit in Alabama, in arriving at its conclusion for disqualification, considered the fact that the district judge, in his capacity as a "**private lawyer**" had "**involved him in the disputed evidentiary facts of this case. Judge Clemon served as an attorney of record for individual plaintiffs in the school desegregation case ... many of the same institutions of higher learning as appear here.**" at 1545. Judge Oetken, in his private law career, represented many of the corporate shareholders of Defendants ICE/Allstate/Geico/TD, and the law required he disqualify himself at the commencement of the case. He did not, and used the case to illegally enrich himself and render a decision that he believed, albeit mistakenly, would further his career, at the expense of Kaul's life and through the exploitation/abuse of judicial authority.

**p.** Edgar v. K.L., 93 F.3d 256 (7th Cir. 1996): The question of whether off-the -record ex parte communications, constitute "**extrajudicial**" information, and thus "**personal**" knowledge was

answered by the 7th Circuit in the affirmative, and thus provided a basis for judicial disqualification. The Edgar Court reaffirmed the high standard to which the federal judiciary holds its members, by holding that even if only a possibility exists regarding a question of partiality, then the law demands that that question be explored: "**Thus all we have are possibilities. But these possibilities justify a request for emergency relief. See United States v. Balistreri, 779 F.2d 1191, 1204-05 (7th Cir. 1985); Pepsico, Inc. v. McMillen, 764 F.2d 458, 460 (7th Cir. 1985).**" at 258. Judge Oetken has admitted to ex parte communications, and has not placed on the record any official denial of such communications, despite Kaul having raised the issue in 'The McNulty Analysis' (K1: D.E. 313-1 Page ID 8397 Para. 9). These facts are anything other than "**possibilities**", and thus under the Edgar standard, disqualification is mandated.

**C. 28 U.S.C. § 455 (b)(4) He knows that he, individually or as a fiduciary, or his spouse has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.**

**30.** The facts (possession of shares in corporate Defendants corporate shareholders) as asserted above, and as viewed from and through the perspective of a "**reasonable man**" do say, that the fiduciary interests of Judge Oetken and his spouse are aligned with those of the corporate defendants and or their representatives, and thus Judge Oetken is conflicted, and that conflict of interest will substantially affect the outcome of the case. The facts as asserted above do also prove that Judge Oetken has violated section (b)(4) of U.S.C. 455, and thus, in conjunction with violations of section 455 (a) + (b)(1) + (b)(2) and section 144, he must be disqualified. The law in support of this proposition is as follows:

**31.** The corollary to § 455(b)(4) in the Code of Conduct for the United States Judges is canon 3C(1)(c).

**q.** In re New Mexico Natural Gas Antitrust Litig., 620 F.2d 794, 796 (10th Cir. 1980): The 10th Circuit considered disqualification necessary if an "**other interest that would be substantially affected by the outcome of the proceeding**" at 795. This holding was consistent with the principle of proximity elements of 'remoteness' and 'contingency', which the 10th Circuit used to reverse the judge's sua ponte disqualification, but in which it stressed the need for disqualification if an "**other interest**" were affected by the outcome of the case. And thus, in accordance with the above facts and the law, Judge Oetken must be disqualified, as the outcome of the case will affect his "**other interests**" i.e., the value of his shares, and his reputation as a corporate friendly judge. The New Mexico standard mandates disqualification.

**r.** Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 860 n.8 (1988): Section (b) of 455 pertains to the existence of an actual bias/prejudice, and this case articulates the connection between the judge's knowledge of his conflict of interest and the remedy of vacatur: "**Moreover, as the Court of Appeals correctly noted, Judge Collins' failure to disqualify himself on March 24, 1982, also constituted a violation of § 455(b)(4) … This separate violation of §**

455 further compels the conclusion that vacatur was an appropriate remedy; by his silence, Judge Collins deprived respondent of a basis for making a timely motion for a new trial and also deprived it of an issue on direct appeal." at 867. Judge Oetken's orders/judgments regarding discovery and dismissal of defendants must be vacated. Judge Oetken remained silent regarding his conflicts of interest when he arbitrarily and inexplicably denied Kaul's motion for summary judgment against defendant Allstate New Jersey Insurance Company (D.E. 5). If Judge Oetken were to object to disqualification after having witnessed/participated in a what has turned out to be an almost eleven (11)-year long scheme of obstruction of justice and criminal violations of Kaul's right to due process, it would irrefutably prove Kaul's charges that not only does Judge Oetken have the "**appearance**" of partiality, but that he is actually biased/prejudiced against Kaul, and thus must be disqualified. His failure to disqualify would prove that he is a party who is highly "**interested**" in the outcome of the case, for the reasons and facts identified above. It is of note that since the commencement of the case, Judge Oetken has not placed on the record his conflicts of interest, nor has he disclosed his Forms AO 10. The Court in furtherance of its opinion regarding the remedy of vacatur held:

"**Moreover, providing relief in such cases as this will not produce injustice in other cases; to the contrary, the Court of Appeals' willingness to enforce § 455 may prevent a substantive injustice in some future case by encouraging a judge or litigant to more carefully examine possible grounds for disqualification and to promptly disclose them when discovered. It is therefore appropriate to vacate the judgment unless it can be said that respondent did not make a timely request for relief, or that it would otherwise be unfair to deprive the prevailing party of its judgment.**" at 868.

**32.** Judge Oetken's orders of dismissal, denials of Kaul's motions and requests for discovery must all be vacated, as he knew from the beginning (August 19, 2021) that he was conflicted, that he failed to disclose these conflicts, and thus was legally prohibited from any involvement in the case. The defendants, in light of all of the facts now presented, cannot argue against the disqualification of Judge Oetken and the nullification of his orders as the only available consideration, is that justice be done: "**If we focus on fairness to the particular litigants … greater risk of unfairness in upholding the judgment in favor of Liljeberg … "The guiding consideration is that the administration of justice should reasonably appear to be disinterested as well as be so in fact." Public Utilities Comm'n of D.D. v. Pollak, 343 U.S. 451, 466-467 (1952)** at 870. There is no one to blame for this situation except Judge Oetken/the Defendants, whose kickback and bribery schemes have turned Judge Oetken's court into a **"racketeering enterprise".**

### D. 28 U.S.C. § 455 (e) Waiver of Disqualification:

**33.** Kaul has provided no waiver of disqualification, nor could he, because Judge Oetken has not entered onto the record his financial disclosure statement and his conflicts of interest, past or present.

**34.** The corollary to § 455(e) in the Code of Conduct for the United States Judges is Canon 3D.

## 28. U.S.C. § 144 states:

**E.** **28 U.S.C. § 144 Whenever a party to a proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding. The affidavit shall state the facts and the reasons for the belief that bias, or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.**

**35.** The facts of personal bias and prejudice, as asserted in the attached affidavit are specific in time/place/character, are "**substantial and formidable**" and thus mandate that Judge Oetken, "**shall proceed no further in the case**". The affidavit is timely submitted and contains certain statements that are made upon information and belief. The law in support of this section 144 application is:

**S.** Berger v. United States, 255 U.S. 22 (1921): The Court's multiple holdings as to the questions of sufficiency of affidavit and the key question of who adjudicates the application are found at:

*Id* 34 – "**Of course the reasons and facts for the belief the litigant entertains are an essential part of the affidavit and must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment … The facts and reasons it states are not frivolous or fanciful but substantial and formidable…**"
Kaul's affidavit contains fact that proves the partiality against Kaul, of Judge Oetken's biased/prejudicial state-of-mind.

*Id* 35 – "**And there is no serious detriment to the administration of justice nor inconvenience worthy of mention, for of what concern is it to a judge to preside in a particular case; of what concern to other parties to have him so preside.**"
Kaul's affidavit and the accompanying section 455 motion are based on fact that prove a partiality of Judge Oetken's mind against Kaul, a partiality that is in part a consequence of his commercial interest in the outcome of the case. Judge Oetken is not a disinterested party to the case, nor he in possession of the "**disinterestedness**", that impartiality requires. If Kaul were to win the case, Judge Oetken's economic/professional standing within the legal community would diminish, and if Kaul were to lose the case or have it dismissed, his standing would be enhanced. This is because of the "**politico-legal-economic nexus**" that connects the facts, events and parties involved in the illegal revocation of Kaul's license (April 9, 2013, to March 12, 2014) to the facts, events and parties identified **The Kaul Cases**, in which Judge Oetken's

22

sponsor and potential appellate sponsor, Senator Schumer, was a Defendant (K3). A victory for Kaul in K11-7 would unquestionably invalidate the illegal revocation and cause those state/private actors central to the scheme to become subject to criminal prosecution by federal authorities. Evidence Tampering/Obstruction of Justice are felonies, but many of the state defendants, including K2 defendants Solomon + Hafner, knew this before and while they were committing the crimes. They have no defense of ignorance.

*Id* at 36 – "… tribunals of the country shall not only be impartial in the controversies submitted to them but shall give assurance that they are impartial … from any "bias or prejudice" that might disturb the normal course of impartial judgment … To commit to the judge a decision upon the truth of the facts gives chance for the evil against which the section is directed. The remedy by appeal is inadequate. It comes after the trial and, if prejudice exists, it has worked its evil and a judgment of it in a reviewing tribunal is precarious. It goes there fortified by presumptions, and nothing can be more elusive of estimate or decision than a disposition of a mind in which there is a personal ingredient." Since at least April 2, 2012, Kaul has been the victim of a non-stop series of violations of his constitutional/human rights, that commenced with K2 defendant, NJBME, and continued through the administrative board proceedings (April 9, 2013, to December 13, 2013), the New Jersey Superior Court system, the United States Bankruptcy Court for the District of New Jersey and the United States District Court for the District of New Jersey, into the present. Massive state orchestrated crimes were committed against Kaul by members of the political/legal /medical/business communities within the geographic boundaries of New Jersey. The injustices to which Kaul has been subjected were referenced by his lawyer in the administrative board proceeding: "So now what they want you to do is they want to say, look, here you go, TZ here you go, consider this. And let him testify outside his report without a hearsay exception as a business record because, by the way, we're in the OAL office and it's very liberal and carefree. Absolutely not, Judge. It's fundamentally unfair. I already as part of my cross this doctor testified about things he didn't even opine about in his reports. So we got to cut it off somewhere. Somewhere there has to be some level of fairness." (K1: D.E. 299-22 Page 7511). A "reasonable man" looking at the facts of the almost last eleven (11) years might say to himself in regard to Defendants Allstate/Christie/State of NJ: "what you think you gain in America you will lose in India". Kaul asserts that he would have willingly trained the defendant physicians, had they simply asked. The reason they did not, was their arrogance and misguided calculation about Kaul, an individual whom the defendants assumed would "pack his bags and leave". Before you pick a fight with a man, you should know in what fights that man has been. Win or lose, conflict confers courage. Judge Oetken seeks to summarily deprive Kaul/his children of their right to life. That will not happen, as Kaul will ensure that Judge Oetken is held accountable by the law and the New York standards of professional conduct.

### F.   Kaul's application for disqualification is timely:

**36.** Kaul has submitted this application in a timely manner. On September 14, 2022, Kaul submitted a letter (D.E. 170), in which he requested Judge Oetken disclose his financial

holdings/ conflicts of interest and raised the issue of judicial corruption. This disqualification application is submitted less than four (4) weeks after this letter.

**37.** However, section 455 specifies no particular time within which the disqualification application be submitted, but the generally held opinion of the circuit courts is that it occurs "**at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification.**" See Travelers Ins. Co. v. Liljeberg Enters., Inc., 38 F.3d 1404, 1410 (5th Cir. 1994). See also Apple v. Jewish Hosp. & Med. Ctr., 829 F.2d 326, 333 (2d Cir. 1987). In determining timeliness, the 2nd Circuit has developed a four (4) part test: **(1)** whether the movant has participated in a substantial manner in trial or pretrial proceedings – the record reflects that Kaul has participated in a substantial manner: **(2)** whether granting the motion would waste judicial resources – the case did not even enter discovery, and thus relatively minimal judicial resources were expended; **(3)** whether the motion was made after judgment – Kaul filed this motion/affidavit only once as permitted by law, and only after Judge Oetken failed to disclose his financial holdings/ex parte communications; **(4)** whether the movant can show good cause for delay – There has been no delay, in that Kaul has filed this motion within four (4) weeks of coming to know about the conflicts of interest.

**38.** However, of even more import is the fact that Judge Oetken has, from the commencement of the case, known that he was conflicted, had an "**appearance**" of partiality and ought to have disqualified himself. In In re Kensington Int'l Ltd., 368 F.3d 289 (3d Cir. 2004) the Third Circuit held that where a judge knew he or she was conflicted or had an "**appearance**" of partiality, the moving party could be not held responsible for whether a motion was filed in a timely manner. Kaul is a pro se litigant, and Judge Oetken had the responsibility of declaring his conflicted position, and not waiting for Kaul to 'pull back the curtain'. Kaul's almost eleven (11) year journey through the legal swamps/dishonesty of New Jersey's medico-legal-political communities has been nothing short of "**fantastical**". It will be only when some of these Defendants land in jail, that they will recognize and truly admit their crimes. K2 defendant Hafner described Kaul as "**arrogant**" (K1: D.E. 179 Page ID 2365 + D.E. 299-22 Page ID 7516), because he refused to accept her false and illegal case against him. Defendant Hafner should look into her own wicked heart before she points her finger at anyone else.

# Conclusion + Relief Sought

Kaul respectfully asserts that based on the above facts/reasons/arguments, Judge James Paul Oetken be disqualified from K11-7, and that all orders entered onto the dockets be immediately vacated, including the September 12, 2022, order at D.E. 168.

Kaul respectfully asserts that Judge James Paul Oetken be required to disclose to the record all his financial holdings for the period from September 2017 to September 2022, in accordance with the rules and regulations of the Guide to Judiciary Policy, Volume 2D, Chapter 1 to Chapter 6, as revised on March 23, 2018, and in accordance with the terms of the September 13, 2022, demand at D.E. 170.

Kaul respectfully asserts that Judge Oetken be required to disclose to Kaul and the record the full extent and substance of any and all ex parte communications as set forth at D.E. 170. All communications must include any form of information exchange to include but not limited to: **(i)** texts; **(ii)** face to face conversations: **(iii)** e-mails; **(iv)** typed letters: **(v)** handwritten letters; **(vi)** telephone conversations conducted via cellular phone or land line.

We, the Propria Persona Plaintiffs, do hereby certify and swear under penalty of perjury that the foregoing information and facts are true and accurate to the best of our knowledge, and that if it is proved that we knowingly and willfully misrepresented the facts, then we will be subject to punishment. We also certify, pursuant to Section 144, that this application for disqualification/vacatur is submitted in good faith.

Dated: October 6, 2022

_____
RICHARD ARJUN KAUL, MD

_____
DAVID B. BASCH, MD

# Order

It is hereby ordered that on October 7, 2022, that unless Judge James Paul Oetken immediately brings himself into compliance with legal authority regarding judicial disclosures, the law will deem him to be in knowing violation, and he will be immediately disqualified from any further administrative, ministerial, legal, or other involvement in either K11-7, or in any other case that involves Plaintiff Kaul and or Basch.

It is hereby ordered that on October 7, 2022, that unless Judge James Paul Oetken immediately brings himself into compliance with legal authority regarding judicial disclosures, the law will deem him to be in knowing violation, and he will become subject, and will willingly submit to investigative/disciplinary action by state/federal regulators.

It is hereby ordered that on October 7, 2022, that unless Judge James Paul Oetken immediately brings himself into compliance with legal authority regarding judicial disclosures, the law will deem him to be in knowing violation, and it will be hereby ordered that on October 8, 2022, all orders entered by Judge James Paul Oetken are immediately nullified, including the September 12, 2022, order at D.E. 168.

It is hereby ordered that on October 7, 2022, unless the defendants, by October 21, 2022, rebut/refute/deny/contest the evidence submitted in support of Kaul's motion for summary judgment against Defendant Allstate New Jersey Insurance Company (D.E. 5), it will be deemed to have proven Kaul's case against Defendant Allstate.

Dated: October 6, 2022.                                    s/p United States District Court

# Exhibit 1

**www.drrichardkaul.com**

**September 13, 2022**

Honorable J. Paul Oetken
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re: Kaul/Basch v ICE et al
    **21-CV-06992**
    **K11-7**
    **Financial disclosures/conflicts of interest/ex parte communications**

Dear Judge Oetken,

We write this letter with the utmost respect for you and the federal judiciary, and in
recognition of the immense pressures that the above case must have brought to bear on your
judgment. However, it is our position, one that is authorized by law and by our rights, that the
opinion and order entered on September 12, 2022, will remain invalid until the following
information has been disclosed to the record:

1. Forms AO 10 since 2020.

2. Information required pursuant to the Courthouse and Transparency Act.

3. A list of all ex parte communications between yourself and any agents acting on your behalf,
and the Defendants or any agents acting on their behalf, that
pertains/relates/refers/references or are in any way associated with the aspect of any of K11-7
or any of **The Kaul Cases**, including but not limited to: **(i)** the delivery and or receipt of any
favor/gift/benefit/advantage/interest to you and or any member of your family to the third-
degree, by the Defendants and or their agents in return for granting their motions; **(ii)** the
promise of any future delivery and or receipt of any favor/gift/benefit/advantage/interest to
you and or any member of your family to the third-degree, by the Defendants and or their
agents in return for granting their motions. The pertinent time period is August 19, 2021, to the
present.

As you are aware, the issue of judicial corruption has unfortunately appeared prominently
within **The Kaul Cases**, and was featured in a series of Wall Street Journal articles in September

2021 (K11-7: D.E. 25 Page 1 – 46 of 50). Consequent to this publicity, and in or around May 2022, the Courthouse Ethics and Transparency Act was passed in response to public pressure against judicial corruption (**Exhibit 1**). Senator Ted Cruz was one of the co-sponsors, a person to whose attention, in January 2021, I brought the issue of judicial corruption (**Exhibit 2**). The misconduct of Senator Charles Schumer regarding his "**Political interference in judicial process**" is highlighted in the letter to Senator Cruz. I understand your appointment to the bench was sponsored by Senator Schumer.

Our request for the public disclosure of the above financial information relates to the fact that your opinion/order are so thoroughly divorced from the evidence/facts/arguments/law of this case, that one cannot but conclude that you, like U.S.D.J. Kevin McNulty (U.S.D.C.-DNJ), Senator Schumer's brother-in-law, have been corrupted. U.S.D.J. McNulty engaged in the same opinion falsifying activity in K1 (D.E. 313-1), as now appears in K11-7 (D.E. 168).

Our request for the public disclosure of all ex parte communications pertains, in part, to the dissemination of notices of preservation to various ex-members of the political/legal/judicial establishment, including Jose Linares, the ex-Chief Judge of the District of New Jersey, who, in mid-late May 2019, suddenly retired from the bench, and took partner status at the law firm of English & McCarter in Newark, New Jersey, after having received a letter from me, requesting his financial disclosure/conflicts of interest (**Exhibit 3**). On May 5, 2022, Mr. Linares was served with a NOTICE OF PRESERVATION in K11-7 (**Exhibit 4**).

We respectfully assert that the principles underpinning Rules 144/455, and those of the due process clauses of the Constitution, are authoritative in this matter, and do render your opinion/order void until your impartiality/lack of bias has been evidentially established.

We thank you for your attention to this matter.

Yours sincerely


_____
RICHARD ARJUN KAUL, MD

_____
DAVID BASCH, MD


cc: All Counsel of Record
    All parties with a legal or other interest

# Exhibit 2

KAUL/BASCH v ICE
21-CV-06992
K11-7
'THE OETKEN ANALYSIS'

The Court's opinion, one clumsily drafted by Defendants' lawyers, resonates with a tone of hurried desperation, and other than constituting evidence of a corrupted state-of-mind, is replete with errors of logic/fact/law and fails, intentionally no doubt, to reflect the enormous body of highly incriminating evidence. The fact that the final filing in the case was February 14, 2022, and the Court's mere twenty (20) page analysis free summary opinion, was issued on September 12, 2022, is consistent with the Defendants conversion of this court into a **"racketeering enterprise"**, purposed to continue the decade-plus-long violation of Kaul's human/constitutional right to life/liberty/justice and to attempt to provide further cover for their crimes. The length of time, the brevity of the opinion and the lack of analysis of submitted argument, suggest a conspiracy to convey a knowingly false impression regarding dismissal, in order to violate Kaul's ability to exercise his right to commence actions in other district courts; and now the judge, in knowing contravention of the law, seeks to deny Kaul his basic human right to exist, through the instrument of the United States District Court.

The falsity of the opinion is proven by Kaul's argument, which is uncontested by the Defendants and unanalyzed by the judge. The point-by-point analysis identifies which of Kaul's arguments undermines the judge's opinion:

**Introduction**
**"This case is another chapter in a long saga of repetitive frivolous lawsuits ... violations arising out of this set of facts."** (D.E. 168 Page 1 to 2 of 20)  This statement, which is inherently contradictory, undermines the entire opinion, by asserting that K11-7 is identical to all prior cases, and that because all prior cases are allegedly frivolous, that K11-7 is therefore frivolous, **but** then concludes by stating that K11-7 is based on a **"set of facts"**, a condition that equates with merit and not frivolousness. The judge, in attempting to violate Kaul's right to pursue litigation on the admitted facts, thwarted the basis of his opinion that falsely held K11-7 is frivolous, from which he falsely granted the Defendants motion for an injunction. The judge admitted that the information on which K11-7 was based, constituted **"facts"** and not unsubstantiated assertions. It is the judge's opinion that is **"frivolous"** and without merit.

**I. Background**
**A. Filing History – "In March 2014 ... But Kaul continues to file lawsuits in various jurisdictions."** (D.E. 168 Page 2 to 4 of 20)  It is evident that the thrust of the judge's fraudulent strategy is to misrepresent, mischaracterize and or omit critical components of the record of **The Kaul Cases**, with the most glaring omissions being those of K11-7, the case in question. In this section, the judge implies that because K11-7 is allegedly identical to all prior cases and because Kaul received no relief, that K11-7 is frivolous, but incredulously, Kaul continues to

pursue litigation. Kaul commenced no new litigation after the filing of K11-7 on August 19, 2021, in the hope that the judge would adhere to controlling authorities and follow the **"set of facts"**. The judge failed to analyze any of Kaul's arguments regarding the factual/legal distinction of K11-7 from all prior cases, but instead rendered an opinion that consists entirely of a selective regurgitation of elements of prior and irrelevant cases. Kaul's arguments are at:

**1.** Overview of Opposition (D.E. 77 page 6 of 57) — UNREFUTED/UNANALYZED/ADMITTED

**2.** Allstate's fraudulent case against Kaul/others (D.E. 77 Page 8 of 57) UNREFUTED/UNANALYZED/ADMITTED

**3.** The securities fraud crimes were committed in the State of New York (D.E. 77 Page 11 of 57) UNREFUTED/UNANALYZED/ADMITTED

**4.** U.S.D.J. Tanya Chutkan denied Defendant Allstate's motion to dismiss K5 (D.E. 47), while U.S.D.J. Alison Burroughs denied Defendant Allstate's motion to transfer K11-2 (D.E. 27) to the District of New Jersey (D.E. 77 Page 11 of 57) UNREFUTED/UNANALYZED/ADMITTED

**5.** The District of Massachusetts entered an order granting Kaul's IFP application and ordered the U.S.M.S. to serve the Defendants at the cost of the United States Government (D.E. 77 Page 12 of 57) UNREFUTED/UNANALYZED/ADMITTED

**6.** K11-7 is factually/legally distinct from K11-4 (D.E. 77 page 13 of 57) UNREFUTED/UNANALYZED/ADMITTED

**7.** K11-7 is factually/legally distinct from K11-9 and the warrantless arrest of Kaul on May 27, 2021, remains unlawful (D.E. 77 page 14 of 57) UNREFUTED/UNANALYZED/ADMITTED

**8.** K11-7 is legally/factually distinct from K11-2, the operative facts occurred in New York, and thus the law supports Kaul's choice of forum UNREFUTED/UNANALYZED/ADMITTED

**9.** Unsupportive judicial opinion (D.E. 89 page 8 of 87) UNREFUTED/UNANALYZED/ADMITTED

**10.** Introduction — K11-7 is factually/legally distinct from all prior cases (D.E. 89 page 10 of 87) UNREFUTED/UNANALYZED/ADMITTED.

**11.** Defendants motion for an anti-injunction suit is frivolous (D.E. 89 Page 10 of 87) - UNREFUTED/UNANALYZED/ADMITTED.

**12.** The Kaul Cases Defendants have failed in their prior injunctive and quasi-injunctive efforts (D.E. 89 Page 11 of 87) - UNREFUTED/UNANALYZED/ADMITTED

**13.** The Defendants have submitted no evidence that Kaul's claims are vexatious, frivolous and or harassing, and have effectively admitted the veracity of the plausibly pled RICO predicate acts (D.E. 89 Page 20 of 87) UNREFUTED/UNANALYZED/ADMITTED

**14.** K11-7 is legally/factually distinct to all prior cases, including K1, is based on new evidence, new injuries and is a new claim, not subject to res judicata or Rule 41 of the FRCP (D.E. 105 Page 26 of 56) UNREFUTED/UNANALYZED/ADMITTED

**15.** The Defendants "All Writs Act Injunction" argument is false and fails to satisfy the necessary legal standard (D.E. 105 Page 30 of 56) UNREFUTED/UNANALYZED/ADMITTED

**16.** Kaul's claims satisfy federal pleading standards and Defendant ICE has not proved otherwise (D.E. 106 Page 12 of 35) UNREFUTED/UNANALYZED/ADMITTED

**17.** The facts find that venue is proper in the Southern District of New York (D.E. 106 Page 22 of 35) UNREFUTED/UNANALYZED/ADMITTED

**18.** Defendant TD's Rooker-Feldman and abstention doctrine defenses have been rejected by all courts within the United States District Court (D.E. 110 Page 10 of 63) UNREFUTED/UNANALYZED/ADMITTED

**19.** K1 remained active on the district court docket, until it was dismissed pursuant to Rule 41(a)(2) on November 16, 2021 (D.E. 110 Page 16 of 63) UNREFUTED/UNANALYZED/ADMITTED

**20.** Res judicata as to K1 provides TD no defense (D.E. 110 Page 17 of 63) UNREFUTED/UNANALYZED/ADMITTED

**21.** Res judicata as to Defendant TD's suit in the Morris County Court provides Defendant TD no defense (D.E. 110 Page 18 of 63) UNREFUTED/UNANALYZED/ADMITTED

**22.** The Defendants have failed to disprove that the SDNY is the proper venue and failed to prove, or otherwise show that K11-7 should be dismissed with prejudice (D.E. 136 Page 12 of 55) UNREFUTED/UNANALYZED/ADMITTED

**23.** The Defendants have submitted no evidence/facts that disprove facts submitted by Kaul that venue is proper in the SDNY, and that K11-7 comports with the venue analysis standards identified in cases erroneously cited by Defendants in support of their argument to dismiss K11-7 with prejudice (D.E. 136 Page 14 of 55) UNREFUTED/UNANALYZED/ADMITTED

**24.** The Defendants' failure to factually satisfy the standards for vexatiousness/malice/abuse/frivolousness/harassment, as identified in the cited cases, is fatal to its frivolous injunctive plea (D.E. 136 Page 19 of 55) UNREFUTED/UNANALYZED/ADMITTED

**25.** Defendants defense fails for lack of support in fact or law (D.E. 138 Page 5 of 32) UNREFUTED/UNANALYZED/ADMITTED

**26.** The facts undermine a "second dismissal rule" defense (D.E. 138 Page 8 of 32) UNREFUTED/UNANALYZED/ADMITTED

**27.** Res judicata is inapplicable because K11-7 is based on new evidence/facts/injuries, is a new cause of action, the voluntary dismissal motion of K1 was entered by USDJ Vazquez without opposition, K5 terminated without opposition, and in prior cases, the Defendants committed a 'Fraud on the Court' (D.E. 138 Page 9 of 32) UNREFUTED/UNANALYZED/ADMITTED

**28.** Defendant AHS has failed to satisfy its burden of proof to disprove Kaul's proof that the SDNY is the proper venue, and that the DNJ is not the proper venue (D.E. 138 Page 17 of 32) UNREFUTED/UNANALYZED/ADMITTED

**29.** Defendant Heary's application of his cited legal standards to K11-7 jurisdiction/venue facts actually proves that he is both personally/generally subject to the jurisdiction of the SDNY, and that the SDNY is the proper venue (D.E. 154 Page 16 of 93) UNREFUTED/UNANALYZED/ADMITTED

3

**30.** The claims satisfy the Rule 8 standard set forth in Defendant Heary's cited cases (D.E. 154 Page 22 of 93) UNREFUTED/UNANALYZED/ADMITTED

**31.** The procedural facts of The Kaul Cases neither support any preclusion defenses nor an application of New Jersey preclusion law (D.E. 154 Page 25 of 93)

UNREFUTED/UNANALYZED/ADMITTED

**32.** Defendant Heary's plea for an anti-suit injunction is frivolous and without factual/legal foundation, as he has admitted claiming conclusive/undisputed fact in the ADMISSIONS BY DEFENDANT ROBERT HEARY OF UNDISPUTED FACTS, has failed in his previous injunctive efforts and fails to satisfy the necessary burden of proof/legal standard (D.E. 154 Page 30 of 93) UNREFUTED/UNANALYZED/ADMITTED

**33.** Defendant Heary's argument, pleading to injunct his prosecution by Kaul, is identical to the arguments of Defendants FSMB/Hengerer/ICE/TD/Geico/Stolz/Christie/Murphy/Grewal who in their motions failed to satisfy their burden of proof and who in their reply briefs failed to disprove Kaul's evidence that there exists no factual/legal basis for an injunction (D.E. 154 Page 32 of 93) UNREFUTED/UNANALYZED/ADMITTED

**34.** The claims satisfy the Rule 8 standard set forth in Defendant Heary's cited cases (D.E. 155 Page 23 of 93) UNREFUTED/UNANALYZED/ADMITTED

**35.** Defendant AHS's injunctive plea fails because it is factually unsupported and is based on law that Kaul has previously differentiated; a differentiation that Defendant AHS has failed to refute (DS.E. 158-1 Page 9 of 12) UNREFUTED/UNANALYZED/ADMITTED

**36.** Defendant Allstate's failed injunctive and quasi-injunctive pleas (D.E. 160 Page 6 of 13) UNREFUTED/UNANALYZED/ADMITTED

**37.** Defendant Allstate's fact-free injunctive application either fails to satisfy the standards set forth in its own citations or cites to irrelevant cases (D.E. 160 Page 6 of 13) UNREFUTED/UNANALYZED/ADMITTED

**38.** Defendant AHS's injunctive plea fails because it is factually unsupported and is based on law that Kaul has previously differentiated; a differentiation that Defendant AHS has failed to refute (D.E. 162 Page 9 of 11) UNREFUTED/UNANALYZED/ADMITTED

**39.** However, even if such a fraud had not been committed, the K11-1 opinion/order is irrelevant to K11-7, as the latter is factually/legally distinct from the former and is based on the facts of the "New York Scheme", the 'Kaul Kidnapping Scheme' and the securities fraud scheme ..." (D.E. 164 Page 2 of 16). UNREFUTED/UNANALYZED/ADMITTED.

The admittance of these thirty-seven (37) arguments by the Defendants and the Court, renders null/void the judge's basis for his knowingly fraudulently dismissal with prejudice and injunction, that basis being the false proposition that K11-7 was identical**/" substantially similar"** to the prior cases.

4

**B. Factual Background – "The amended complaint follows the pattern of Plaintiff Kaul's earlier filings ... order/judgments adverse to Plaintiff Basch and other physicians, while entering order/judgments advantageous to Defendant Geico."** (D.E. 168 Page 4 to 7 of 20). The Court's cursory delineation of the charges, although set under the heading of **"Factual Background",** purposefully avoids an honest recitation of the unrefuted/admitted fact that Kaul/Basch have pled for each element of each charge. The Court's failure to cite to any of the massive corpus of charge conclusive evidence within the three thousand, five hundred and thirty-three (3533) page case file, evidences his corrupted state-of-mind, and further underscores his commission of a 'Fraud on the Court'. More specifically, however, this section is a transparent attempt to frame Kaul/Basch's claims as non-compliant with federal pleading standards, as part of an effort to manufacture a claim insufficiency basis for dismissal. However, as with the knowingly false **"frivolous"** element of the Court's opinion, this too is rendered null/void by the Defendants failure to rebut, and the Court's failure to analyze/reject the pleading standard arguments asserted by Kaul/Basch. The arguments are at:

**1.** District judges within the United States District Court have rejected The Kaul Cases Defendants 12(b)(6)/Rule 8 defenses (D.E. 81 Page 7 of 17) - UNREFUTED/UNANALYZED/ADMITTED.

**2.** Kaul's plausibly pled RICO claims against Defendant Allstate satisfy federal pleading standards set forth in Rules 8/9 of the F.R.C.P. and Twombly/Iqbal and plead all requisite elements (D.E. 81 Page 11 of 87) - UNREFUTED/UNANALYZED/ADMITTED.

**3.** Defendant Allstate has no defense against Kaul's RICO claims (D.E. 81 Page 12 of 87) - UNREFUTED/UNANALYZED/ADMITTED.

**4.** The Section 1983 Claim is legally sufficient and pleads the requisite elements (D.E. 81 Page 15 of 17) - UNREFUTED/UNANALYZED/ADMITTED.

**5.** The Complaint provides Defendant Allstate fair notice of its alleged offenses and liabilities (D.E. 81 Page 16 of 17) - UNREFUTED/UNANALYZED/ADMITTED.

**6.** The claim conclusive evidence within The Kaul Cases has been neither refuted nor found to be meritless by any judge within the United States District Court (D.E. 89 Page 10 of 87) - UNREFUTED/UNANALYZED/ADMITTED.

**7.** There is no evidence within The Kaul Cases, that the claims are vexatious, harassing and or frivolous (D.E. 89 Page 12 of 87) - UNREFUTED/UNANALYZED/ADMITTED.

**8.** The Defendants arguments regarding RICO/Section 1983 claim sufficiency are false (D.E. 89 Page 15 of 87) - UNREFUTED/UNANALYZED/ADMITTED.

**9.** The claims satisfy federal pleading standards, including Rule 8 (D.E. 89 Page 16 of 87) - UNREFUTED/UNANALYZED/ADMITTED.

**10.** The legal standards set forth in the cases cited by the Defendants are either inapplicable or satisfied by the claims (D.E. 89 Page 17 of 87) - UNREFUTED/UNANALYZED/ADMITTED.

**11.** Kaul has plausibly pled the existence of an association-in-fact RICO enterprise (D.E. 89 Page 18 of 87) - UNREFUTED/UNANALYZED/ADMITTED.

**12.** The RICO predicate acts are pled to the standards required at pleading (D.E. 89 Page 19 of 87) - UNREFUTED/UNANALYZED/ADMITTED.

**13.** Kaul has provided the Defendants fair notice of their liability pursuant to the Section 1983 claim (D.E. 89 Page 20 of 87) - UNREFUTED/UNANALYZED/ADMITTED.

**14.** The Defendants have submitted no evidence that Kaul's K11-7 claims are vexatious, frivolous and or harassing, and have effectively admitted the veracity of the plausibly pled RICO predicate acts (D.E. 89 Page 20 0f 87) - UNREFUTED/UNANALYZED/ADMITTED.

**15.** The Defendants motion for a permanent injunction is made in extremely "bad faith" as they, in collusion/conspiracy with The Kaul Cases Defendants, are simultaneously employing tactics of delay/fraud to obstruct Kaul's applications for state licensure and are knowingly perpetuating an "ongoing pattern of racketeering" and violation of Kaul's constitutional/human rights (D.E. 89 Page 21 of 87) - UNREFUTED/UNANALYZED/ADMITTED.

**16.** Kaul's pleading of the RICO predicate acts of mail/wire fraud satisfies Rule 9 (b) and the standards set forth in the cited cases and does provide fair notice (D.E. 105 Page 10 of 56) - UNREFUTED/UNANALYZED/ADMITTED.

**17.** Defendant GEICO has failed to specifically identify what facts, if any, are allegedly absent from Kaul's RICO claims (D.E. 105 Page 11 of 56) - UNREFUTED/UNANALYZED/ADMITTED.

**18.** Kaul's claims satisfy the RICO predicate act pleading standard set forth in the law cited by Defendants (D.E. 105 Page 12 of 56) - UNREFUTED/UNANALYZED/ADMITTED.

**19.** SCOTUS case law regarding mail/wire fraud pleading standards equates to the statutory standards (D.E. 105 Page 13 of 56) - UNREFUTED/UNANALYZED/ADMITTED.

**20.** The specificity of the mail/wire fraud claims pled against Defendant Geico in K11-7 provide an equivalent degree of fair notice as did those in K5 (D.E. 105 Page 13 of 56) - UNREFUTED/UNANALYZED/ADMITTED.

**21.** The pleading standard of all ROCO predicate acts, other than mail/wire fraud, is that directed by Twombly/Iqbal and Rule 8 (D.E. 105 Page 14 of 56) - UNREFUTED/UNANALYZED/ADMITTED.

**22.** Kaul has plausibly pled the existence of an association-in-fact RICO enterprise (D.E. 105 Page 14 of 56) - UNREFUTED/UNANALYZED/ADMITTED.

**23.** Defendants association-in-fact pleading argument, is unsupported by all cited cases, none of which invalidate controlling Supreme Court law, legislative intent and or statute text (D.E. 105 Page 15 of 56) - UNREFUTED/UNANALYZED/ADMITTED.

**24.** Kaul's claims satisfy the pleading standard established in Turkette (1981), validated in Boyle (2009) and relief upon in Penguin (2014) (D.E. 105 Page 16 of 56) - UNREFUTED/UNANALYZED/ADMITTED.

**25.** The claims plausibly plead the "operation and management" element (D.E. 105 Page 16 of 56) - UNREFUTED/UNANALYZED/ADMITTED.

**26.** RICO does not statutorily require the pleading of a nexus between the "pattern of racketeering" and the injury, independent of that caused by the RICO predicate acts (D.E. 105 Page 17 of 56).

**27.** Kaul's claims satisfy the "by reason of" the "pattern of racketeering" standard set forth in case law, as it relates to the "pattern-injury" nexus (D.E. 105 Page 19 of 56) - UNREFUTED/UNANALYZED/ADMITTED.

**28.** Defendants **"pattern of racketeering"** is **"ongoing",** and thus the statute of limitations is constantly accruing (D.E. 105 Page 20 of 56) - UNREFUTED/UNANALYZED/ADMITTED. **"The Oetken Scheme"** an element of the **"New York Scheme"** is **"ongoing"** within the State of New York, and likely commenced in late 2021.

**29.** Kaul's pleading of the Section 1983 claim satisfies federal pleading standards and provides fair notice to Defendant (D.E. 105 Page 23 of 56) - UNREFUTED/UNANALYZED/ADMITTED.

**30.** Within K11-7, Kaul plausibly pleads and there exists evidence that Defendant ICE conspired with Defendants Christie/Allstate/TD/Geico to conceal the securities fraud crime (D.E. 106 Page 9 of 35) - UNREFUTED/UNANALYZED/ADMITTED.

**31.** Kaul's claims satisfy federal pleading standards and Defendant ICE has not proved otherwise (D.E. 106 Page 12 Of 35) - UNREFUTED/UNANALYZED/ADMITTED.

**32.** Kaul's claims satisfy the pleading standards set forth in cases cited by Defendant ICE (D.E. 106 Page 13 of 35) - UNREFUTED/UNANALYZED/ADMITTED.

**33.** Defendant ICE has submitted no proof or showing that any of the K11-76 claims do not contain a **"short and plain statement of the claim"** or are otherwise insufficient (D.E. 106 Page 17 of 35) - UNREFUTED/UNANALYZED/ADMITTED.

**34.** Kaul's pleading of the RICO predicate acts of mail/wire fraud satisfies the Rule 9 standard (D.E. 106 Page 20 of 35) - UNREFUTED/UNANALYZED/ADMITTED.

**35.** The Section 1983 claim provides fair notice to Defendant ICE of its 'state-actor' status and its violations of Kaul's constitutional rights (D.E. 106 Page 23 of 35).

**36.** The Section 1983 claim complies with the controlling legal standards of pleading (D.E. 106 page 24 of 35) - UNREFUTED/UNANALYZED/ADMITTED.

**37.** The K11-7 claims contain plausibly pled fact that satisfies the applicable legal standard regarding the non-conclusory nature of a claim (D.E. 106 Page 26 of 35).

**38.** The plausibility of Kaul's claims pertains to the uncontested fact that it received regulatory favors from Defendant Christie, in return for decimating Kaul's financial position. (D.E. 110 Page 9 of 63) - UNREFUTED/UNANALYZED/ADMITTED.

**39.** The K11-7 claims satisfy the statutory "by reason of" standard, as held in Holmes/Anza (D.E. 110 page 21 of 63) - UNREFUTED/UNANALYZED/ADMITTED.

**40.** The K11-7 claims plead plausible fact in support of the "**participation**" and "**by reason of**" elements of RICO (D.E. 110 Page 22 of 63) - UNREFUTED/UNANALYZED/ADMITTED.

**41.** Defendant TD's anti-suit injunction is without foundation, as it admitted to the undisputed fact on July 14, 2020 (D.E. 110 Page 24 of 63) - UNREFUTED/UNANALYZED/ADMITTED.

**42.** The Defendants' failure to factually satisfy the standards for vexatiousness/malice/abuse/frivolousness/harassment, as identified in the cited cases, is fatal to its frivolous injunctive plea (D.E. 136 Page 19 of 55) - UNREFUTED/UNANALYZED/ADMITTED.

**43.** Defendant AHS has submitted no proof, nor made any showing, to either disprove the K11-7 claims or show them to be implausible/conclusory and or non-compliant with all federal pleading standards (D.E. 138 Page 14 of 32) - UNREFUTED/UNANALYZED/ADMITTED.

**44.** Defendant Heary has submitted no evidence/facts/argument to prove or otherwise show that those submitted by Kaul do not satisfy federal pleading standards and actually assert a highly plausible case (D.E. 154 Page 20 of 93) - UNREFUTED/UNANALYZED/ADMITTED.

**45.** The claims satisfy the Rule 8 standard set forth in Defendant Heary's cited cases (D.E. 154 Page 22 of 93) - UNREFUTED/UNANALYZED/ADMITTED.

**46.** Defendant Heary has not proven/shown/disputed, nor could he, that the K11-7 claims in addition to the ADMISSIONS BY DEFENDANT HEARY OF UNDISPUTED FACTS provide "fair notice" of the facts/law on which the charges are brought, of the injuries caused and the relief sought and satisfy Rule 9 (D.E. 154 page 23 of 93) - UNREFUTED/UNANALYZED/ADMITTED.

**47.** Defendant Heary's plea for an anti-suit injunction is frivolous and without factual/legal foundation, as he has admitted to claiming conclusive/undisputed fact in the ADMISSIONS BY DEFENDANT ROBERT HEARY OF UNDISPUTED FACTS, has failed in his previous injunctive efforts and fails to satisfy the necessary burden of proof/legal standards (D.E. 154 Page 30 of 93) - UNREFUTED/UNANALYZED/ADMITTED.

**48.** Defendant Heary's argument, pleading to injunct his prosecution by Kaul, is identical to the arguments of Defendants FSMB/Hengerer/ICE/TD/Geico/Stolz/Christie/Murphy/Grewal who in their motion failed to satisfy their burden of proof and who in their reply briefs failed to disprove Kaul's evidence that there exists no factual/legal basis for an injunction (D.E. 154 page 32 of 93) - UNREFUTED/UNANALYZED/ADMITTED.

**49.** Defendant AHS admissions of UNDISPUTED FACT material to K11-7 claim proof, have permanently deprived it of any factual or legal basis on which to seek injunctive relief (D.E. 162 Page 8 of 11) - UNREFUTED/UNANALYZED/ADMITTED.

**50.** Defendant AHS's injunctive plea fails because it is factually unsupported and is based on law that Kaul has previously differentiated; a differentiation that Defendant AHS has failed to refute (D.E. 162 Page 9 of 11) - UNREFUTED/UNANALYZED/ADMITTED.

The admittance of these fifty (50) arguments by the Defendants and the Court, renders null/void any component of the judge's opinion that pertains/relates to claim sufficiency and or pleading standard compliance.

**II Legal Standard**

**"Federal Rule of Civil Procedure … "Nonetheless a pro se complaint must state a plausible claim for relief."** (D.E. 168 Page 8 to 9 of 20). It is obvious that the judge was either always a Defendant in disguise or became one at some point in the case, as in recognizing that plaintiff's Complaint/unrebutted arguments either satisfied every legal pleading standard submitted by the Defendants or that the Complaint/unrebutted arguments identified the correct standard, he has either inserted not previously submitted standards and or ignored their unrebutted arguments that establish the Complaint complies with all pleading standards. The citations in question and the relevant points of the record are:

**A.** F.R.C.P. 8(a)(2)/(d)(1) + Strunk v US House of Representatives, 68 F. App'x 233, 253 (2d Cir. 2003) – The relevant arguments are:
**1.** District judges within the United States District Court have rejected The Kaul Cases Defendants 12(b)(6)/Rule 8 defenses (D.E. 81 Page 7 of 17) - UNREFUTED/UNANALYZED/ADMITTED.
**2.** Kaul's plausibly pled RICO claims against Defendant Allstate satisfy the federal pleading standards set forth in Rules 8/9 of the FRCP and Twombly/Iqbal and plead all requisite elements (D.E. 81 Page 11 of 17) - UNREFUTED/UNANALYZED/ADMITTED.
**3.** The claims satisfy federal pleading standards, including Rule 8 (D.E. 89 Page 16 of 87) - UNREFUTED/UNANALYZED/ADMITTED.
4. The legal standards set forth in the cases cited by the Defendants are either inapplicable or satisfied by the claims (D.E. 89 Page 17 of 87) - UNREFUTED/UNANALYZED/ADMITTED.
5. The Defendant's amendment argument is false (D.E. 89 Page 18 of 87) - UNREFUTED/UNANALYZED/ADMITTED.
6. The RICO predicate acts are pled to the standards required at pleading (D.E. 89 Page 19 of 87) - UNREFUTED/UNANALYZED/ADMITTED.
7. The Defendants have submitted no evidence that Kaul's K11-7 claims are vexatious, frivolous and or harassing, and have effectively admitted the veracity of the plausibly pled RICO predicate acts (D.E. 89 Page 20 of 87) - UNREFUTED/UNANALYZED/ADMITTED.
8. The pleading standard of all RICO predicate acts, other than mail/wire fraud, is that directed by Twombly/Iqbal and Rule 8 (D.E. 105 page 14 of 56) - UNREFUTED/UNANALYZED/ADMITTED.

# Exhibit 2

**www.drrichardkaul.com**

**SEPTEMBER 23, 2025**

CLERK OF THE COURT
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
515 RUSK AVENUE
HOUSTON, TX 77002

**RE: KAUL v FLORIDA. MEDICAL BOARD ET AL**
    **25-CV-23757**
    **K11-31**
    **NOTICE OF DISMISSAL**

Dear Judge Lett,

Please accept this letter as notification of the dismissal of the following Defendants:

1. ATLANTIC HEALTH SYSTEM.
2. ALLSTATE INSURANCE COMPANY.
3. ROBERT FRANCIS HEARY.
4. GEICO.

This dismissal is made under duress and coercion consequent to the illegal threat of arrest and incarceration rendered by James Paul Oetken on September 12, 2025 (**EXHIBIT 1**).Please also find attached a copy of my response to this order (**EXHIBIT 2**).

Yours sincerely

_____
RICHARD ARJUN KAUL, MD

# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

M.D. RICHARD ARJUN KAUL, *et al.*,
                                    Plaintiffs,

                -v-

INTERCONTINENTAL EXCHANGE, *et al.*,
                                    Defendants.

21-CV-6992 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

 *Pro se* Plaintiff Richard Arjun Kaul has filed nearly two dozen repetitive lawsuits in various courts relating to the revocation of his license to practice medicine in New Jersey.  These lawsuits are meritless and appear to have been filed for the purpose of harassing and imposing costs on the Defendants.  On September 12, 2022, this Court issued a filing injunction against Kaul, prohibiting him from filing or pursuing cases arising from the same facts in any federal district court without first obtaining permission from this Court.  Despite that injunction, Kaul has continued to file numerous new cases in federal district courts around the country asserting the same meritless claims in direct violation of this Court's order.  Defendants have moved for contempt sanctions.  This Court held a contempt hearing on June 17, 2025, at which Kaul did not appear.  For the reasons that follow, Defendants' motions are granted and Kaul is held in contempt.

## I. Background

### A. Filing History Before the 2022 Injunction Order

 The background of this case and of Kaul's other lawsuits is described in this Court's September 12, 2022 opinion and order.  *Kaul v. Intercontinental Exchange*, No. 21-CV-6992, 2022 WL 4133427 (S.D.N.Y. Sept. 12, 2022).

"In March 2014, the New Jersey State Board of Medical Examiners . . . revoked [Plaintiff Richard Arjun Kaul's] medical license." *Kaul v. Christie*, 372 F. Supp. 3d 206, 215 (D.N.J. 2019). It found that "his performance of spine surgeries on 11 patients without proper training and experience constituted gross and repeated malpractice, negligence, and incompetence." *Id.* Kaul did not appeal the Board's decision to the New Jersey Superior Court as permitted by state law. *Id.* at 225. Kaul then began filing a series of lawsuits around the country. These lawsuits generally alleged that "a network of politically connected neurosurgeons wanted to make an example of him," and so "with the assistance of a cabal of lawyers, hospitals, insurance companies, and media figures, they importuned public officials to banish him from the practice of medicine in New Jersey." *Id.* at 215.

Kaul filed five substantially similar cases in the Southern District of New York. The first four were transferred to the District of New Jersey. *See Kaul v. Christie*, No. 16-CV-1346 (S.D.N.Y. Apr. 19, 2016) (Sullivan, J.) (transferring action to D.N.J.); *Kaul v. Christie*, No. 18-CV-3131, 2018 WL 10038784 (S.D.N.Y. Apr. 11, 2018) (McMahon, J.) (transferring action to D.N.J.); *Kaul v. Schumer*, No. 19-CV-3046 (S.D.N.Y. May 29, 2019) (Stanton, J.) (transferring action to D.N.J.); *Kaul v. Murphy*, 21-CV-5293 (S.D.N.Y. June 21, 2021) (Briccetti, J.) (transferring action to D.N.J.). The fifth case filed in the S.D.N.Y. was this case, filed in 2021 and discussed below.

Kaul filed a case in the Northern District of Georgia alleging that New Jersey officials targeted him. That case too was transferred to the District of New Jersey. *See Patel v. Crist*, No. 19-CV-739, 2019 WL 11583344, at *1 (N.D. Ga. Apr. 2, 2019) (Brown, J.). Kaul filed two cases in the District of Columbia. One was dismissed in part and otherwise transferred to the District of New Jersey. *See Kaul v. Fed'n of State Med. Bds.*, No. 19-CV-3050, 2020 WL

7042821, at *1 (D.D.C. Dec. 1, 2020) (Chutkan, J.); *Kaul v. Fed'n of State Med. Bds.*, No. 19-CV-3050, 2021 WL 1209211, at *1 (D.D.C. Mar. 31, 2021) (Chutkan, J.). The other was dismissed *sua sponte*. *See Kaul v. Fed'n of State Med. Bds.*, No. 20-CV-1612, 2021 WL 6549978, at *1 (D.D.C. Nov. 23, 2021) (Chutkan, J.) Kaul filed a case in the District of Connecticut, which was also transferred to the District of New Jersey. *See Kaul v. Murphy*, No. 21-CV-439, 2021 WL 1601149, at *2 (D. Conn. Apr. 23, 2021) (Bryant, J.). Kaul filed a case in the District of Massachusetts. It was dismissed for lack of venue and transfer was refused. *See Kaul v. Bos. Partners, Inc.*, No. 21-CV-10326, 2021 WL 3272216, at *1 (D. Mass. July 30, 2021) (Burroughs, J.). Kaul filed a case in the Northern District of Texas. It was dismissed with prejudice. *See Kaul v. Fed'n of State Med. Bds.*, No. 21-CV-57, 2021 WL 6550884, at *1 (N.D. Tex. Sept. 17, 2021) (Ray, Jr., Mag. J.), *report and recommendation adopted*, No. 21-CV-57, 2022 WL 171294 (N.D. Tex. Jan. 19, 2022) (O'Connor, J.). Kaul filed a case in the Northern District of Illinois, which was dismissed *sua sponte* as frivolous. *See Kaul v. Allstate Ins. Co.*, No. 21-CV-736 (N.D. Ill. Apr. 13, 2022) (Ellis, J.).

Multiples judges in the District of New Jersey have dismissed Kaul's cases that were filed in or transferred to that court. *See, e.g.*, *Kaul v. Christie*, No. 16-CV-2364, 2019 WL 920815 (D.N.J. Feb. 22, 2019) (McNulty, J.) (granting motion to dismiss); *Kaul v. Christie*, 372 F. Supp. 3d 206 (D.N.J. Feb. 25, 2019) (McNulty, J.) (granting motion to dismiss); *Kaul v. Christie*, No. 16-CV-2364, 2019 WL 13176430, at *4 (D.N.J. July 29, 2019) (Martinotti, J.) (denying motion for reconsideration); *Patel v. Crist*, No. 19-CV-9232, 2020 WL 64618, at *1 (D.N.J. Jan. 7, 2020) (Vazquez, J.) (granting motion to dismiss); *Patel v. Crist*, No. 19-CV-8946, 2020 WL 64571, at *1 (D.N.J. Jan. 7, 2020) (Vazquez, J.) (granting motion to dismiss); *Patel v. Crist*, No. 19-CV-9232, 2020 WL 6156772, at *1 (D.N.J. Oct. 20, 2020) (Vazquez, J.) (granting

motion to dismiss); *Patel v. Crist*, No. 19-CV-8946, 2020 WL 6156751, at *1 (D.N.J. Oct. 20,

2020) (Vazquez, J.) (granting motion to dismiss); *Kaul v. Murphy*, No. 21-CV-13063, 2021 WL

3663873, at *1 (D.N.J. July 9, 2021) (Wolfson, J.) (dismissing complaint *sua sponte*; noting that

Kaul "has been a frequent, vexatious litigant before this Court").  Kaul has filed additional

lawsuits and then voluntarily dismissed them after defendants appeared through counsel and filed

motions and other submissions.  *See, e.g., Kaul v. Federation of State Med. Bds.*, No. 20-CV-

18853 (D.N.J.); *Kaul v. Murphy*, 21-CV-9788 (D.N.J.).  Kaul initially filed appeals of certain of

the dismissals of his cases, but then voluntarily dismissed his appeals.  *See, e.g.*, *Kaul v. Christie*,

No. 19-1651, 2019 WL 4733531, at *1 (3d Cir. June 20, 2019) (dismissing appeal pursuant to

Fed. R. App. P. 42(b)); *Kaul v. Stein*, No. 20-3522, 2021 WL 6197149, at *1 (3d Cir. Nov. 12,

2021) (dismissing appeal pursuant to Fed. R. App. P. 42(b)); (ECF No. 101 at 3-4).

> Plaintiff Kaul has never received relief in any of these cases.

### B. The 2022 Filing Injunction

> Kaul filed this action on August 19, 2021.  On September 12, 2022, this Court granted

Defendants' motions to dismiss the amended complaint and dismissed the complaint with

prejudice, concluding that it failed to meet the requirements of Rule 8 of the Federal Rules of

Civil Procedure, failed to establish venue in the Southern District of New York, and failed to

state a claim on which relief could be granted.  In addition, after reviewing Kaul's filing history

described above, the Court enjoined Kaul from filing additional lawsuits against any of the

Defendants based on the same facts without leave of this Court.  *See Kaul v. Intercontinental

Exchange*, No. 21-CV-6992, 2022 WL 4133427, at *4-9 (S.D.N.Y. Sept. 12, 2022) ("Injunction

Order").

In considering whether to impose a filing injunction, the Court first considered each of

the factors set forth in *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 714 (2d Cir. 2019).  The

Court found as follows:

> First, Plaintiff Kaul has an extensive history of duplicative lawsuits.  Over the past decade, Plaintiff Kaul has filed at least twelve lawsuits outside the District of New Jersey. . . .  Those lawsuits all concern the denial of his medical license in New Jersey as well as subsequent related proceedings.  Courts have dismissed claims on preclusion grounds. . . .  In those cases, Plaintiff Kaul has a history of being a vexatious and harassing litigant.  Plaintiff Kaul harasses officials to manufacture litigation. . . .  Plaintiff Kaul harasses opposing parties during litigation. . . .  These facts weigh heavily in favor of an injunction.

> Second, Plaintiff Kaul has no objective expectation of prevailing.  He has not prevailed in any of the twelve duplicative cases he has filed with the district courts around the United States.  As explained above, and as other courts have found, the filings in these cases are "bizarre, far-fetched, and reliant on flawed premises."

> Third, although Plaintiff Kaul proceeds *pro se*, he is a sophisticated litigant. . . .  Regardless, given the other factors, an injunction is appropriate for Plaintiff Kaul even though he proceeds *pro se*.

> Fourth, Plaintiff Kaul has caused needless expense to other parties and needlessly burdened court personnel.  For example, he regularly files documents that must be stricken. . . .

> Fifth, lesser sanctions would not be adequate.  For years, Plaintiff Kaul has filed cases in improper venues and then voluntarily dismissed them once they reach the District of New Jersey. . . .  There is no reason to think that practice will abate.  Further, Plaintiff has already ignored an anti-filing injunction that covers a defendant in this case. . . .  Absent an injunction, it is likely that Kaul would continue here.

Injunction Order at *7-8 (case and record citations omitted).  Acknowledging that a filing

injunction must be "appropriately narrow," *Bd. of Managers of 2900 Ocean Ave. Condo. v.*

*Bronkovic*, 83 F.3d 44, 45 (2d Cir. 1996), the Court concluded that, in light of Kaul's history and

litigation practices, an injunction against his filing of any lawsuit arising from the same

allegations in any federal district court, without leave of this Court, was necessary to address his

vexatious and abusive litigation conduct.  Injunction Order at *8.

Accordingly, this Court issued the following injunction:

> From the date of this Opinion and Order, Plaintiff Kaul is barred from filing in any United States district court any action, motion, petition, complaint, or request for relief against any of the Defendants named in this litigation that relates to or arises from (i) the denial of his medical license; (ii) subsequent litigation proceedings initiated by the Defendants here before the date of this Order; (iii) subsequent litigation proceedings initiated by Plaintiff Kaul before the date of this Order; without first obtaining leave from this Court. Any motion for leave must include the caption "Request for Permission to File under Filing Injunction" and must be submitted to the Pro Se Intake Unit of this Court along with Plaintiff Kaul's proposed filings.
>
> If Plaintiff Kaul violates this Opinion and Order and files any materials without first obtaining leave to file, any request will be denied for failure to comply with this Opinion and Order, and Plaintiff Kaul may be subject to sanctions, including monetary penalties or contempt. . . . The Court clarifies that this filing injunction does not prevent Kaul from filing an appeal from this Opinion and Order.

Injunction Order at *9.

Kaul did not file an appeal from the Injunction Order, despite the Court's explicit notice that the order permitted an appeal.

### C.    Filing History After the 2022 Injunction Order

Following this Court's issuance of the Injunction Order on September 12, 2022, Kaul proceeded to file at least nine lawsuits in federal district courts arising from the same allegations against some or all of the same Defendants without seeking leave of this Court. These actions include the following:

- *Kaul v. Center for Personalized Ed. For Physicians*, No. 23-CV-672 (E.D.N.C.)

- *Kaul v. Intercontinental Exchange*, No. 23-CV-2016 (S.D.N.Y.)

- *Kaul v. Christie*, No. 23-CV-3473 (D.N.J.)

- *Kaul v. Federation State Medical Bds.*, No. 23-CV-22325 (S.D. Fla.)

- *Kaul v. Christie*, No. 23-CV-22582 (S.D. Fla.)

- *Kaul v. Federation State Medical Bds.*, No. 24-CV-3180 (S.D. Tex.)

6

- *Kaul v. Federation State Medical Bds.*, No. 25-CV-25 (S.D. Miss.)

- *Kaul v. Federation State Medical Bds.*, No. 25-CV-641 (D.D.C.)

- *Kaul v. Federation State Medical Bds.*, No. 25-CV-1676 (S.D. Tex.)

The first eight of these cases were dismissed on various grounds, including on the basis of the Injunction Order, and some were voluntarily dismissed by Kaul after the defendants filed motions to dismiss.  The last case—No. 25-CV-1676 (S.D. Tex.)—remains pending, with the defendants having filed multiple briefs and Kaul having filed an interlocutory appeal to the Fifth Circuit apparently challenging the district court's stay of discovery.

On March 15, 2024, this Court, after learning of Kaul's filing of E.D.N.Y. Case No. 23-CV-672, ordered Kaul to withdraw the action within 14 days based on the Injunction Order, warning that he "may be subject to monetary sanctions and contempt" if he failed to do so.  (ECF No. 173.)

Again on October 2, 2024, this Court ordered Kaul to withdraw S.D. Tex. Case No. 24-CV-3180 within 14 days or face "monetary sanctions and contempt."  (ECF No. 177.)

Kaul not only refused to comply with this Court's 2024 orders by withdrawing the actions, but continued to litigate the cases, including by filing discovery demands, motions for summary judgment, motions for default judgment, and appeals.

Kaul did file a brief response to the October 2, 2024 order dated the following day.  (ECF No. 178.)  In his response, Kaul stated that "you do not have the authority to enter any orders as to my prosecution of" these cases, and that the Injunction Order was "invalidated" by the Supreme Court's decision in *SEC v. Jarkesy*.

Kaul has referenced the Injunction Order in various filings in these cases and has made clear that he has no intention of complying with it.  For example, in a filing with the Southern

District of Florida dated August 20, 2023, Kaul stated: "[W]e do inform Defendants that should [the S.D. Fla.] case be dismissed, . . . these conditions will be immaterial to the filing of a case in another district court, for the simple fact that the [Injunction Order], under the law, remains an admitted 'Fraud on the Court.'" (ECF No. 180-15 at 3.)

### D.    Motions for Contempt

In February, March, and April of 2025, Defendants filed and briefed motions to hold Kaul in contempt for his violation of the Injunction Order as well as the March 15, 2024 and October 2, 2024 orders. (*See* ECF Nos. 179, 180, 182, 188.) Kaul filed various submissions purporting to respond to Defendants' motions. (See ECF Nos. 181, 185, 186, 187, 191, 192, 193, 194, 196.)

On May 8, 2025, this Court ordered Kaul to appear for a hearing on June 17, 2025 to show cause as to why he should not be held in contempt for violation of the Injunction Order and subsequent orders. (ECF No. 190.)

On June 17, 2025, the Court held an in-person hearing as scheduled. Kaul did not appear.

## II.    Discussion

"A contempt order is warranted only where the moving party establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995). Because contempt is a "potent weapon," the Second Circuit has cautioned that "courts should not resort [to a contempt order] 'where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct.'" *Id.* (first quoting *Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967); then quoting *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885)). Specifically, to demonstrate contempt, "a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is

8

clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Id.* Further, "a civil contempt sanction must only be compensatory or coercive, and may not be punitive." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 144 (2d Cir. 2014).

### A.      Civil Contempt

Applying the Second Circuit's analysis, the Court finds that Kaul is in contempt and that civil contempt sanctions are warranted.

First, the Injunction Order is "clear and unambiguous."  That order explicitly stated that "Kaul is barred from filing in any United States district court any action, motion, petition, complaint, or request for relief against any of the Defendants named in this litigation that relates to or arises from (i) the denial of his medical license . . . without first obtaining leave from this Court."  Kaul does not raise any dispute or suggest any ambiguity as to the meaning or scope of the Injunction Order.  Moreover, the March 15, 2024 order and the October 2, 2024 order clearly and unambiguously ordered Kaul to withdraw two specific actions "within 14 days" or face "monetary sanctions and contempt," but he refused to do so.

Second, the evidence of Kaul's noncompliance is clear and convincing—and undisputed.  Following the Injunction Order, Kaul proceeded to file at least nine new lawsuits relating to the denial of his medical license without ever seeking leave of the Court, in direct violation of the order.  In addition, as set forth above, he refused to comply with two orders to withdraw specific lawsuits within 14 days, but continued litigating those cases.  There is no dispute that Kaul was aware of all of these orders and willfully refused to comply with them, as evidenced by his multiple references to the orders in his voluminous filings and his assertions that this Court "do[es] not have the authority" to issue them.  (ECF No. 178.)

Third, Kaul "has not diligently attempted to comply in a reasonable manner." To the contrary, Kaul has knowingly and willfully defied the Injunction Order and the subsequent orders by continuing to file and litigate cases in direct violation of the orders. Further, he has made clear that he will continue to do so. (*See, e.g.,* ECF No. 180-15 at 3.)

Kaul does not deny that these criteria are satisfied. Instead, in response to Defendants' motions for contempt, he has filed hundreds of pages of documents asserting that the Defendants, various public officials, and now the courts, are part of a wide-ranging conspiracy to exclude Kaul from the practice of spinal surgery through corruption and bribery. Most of these assertions are similar to those he has been making in his various lawsuits. To the extent the Court can discern arguments that are potentially relevant to the present motions, none of those arguments has merit.

First, Kaul asserts that the Injunction Order is invalid because when the order was issued I had "entered into an admitted bribery related quid pro quo scheme" with Defendants and colluded with them to unlawfully preclude redress for the denial of Kaul's medical license. (ECF No. 192 at 4.) There is no basis for that assertion, and Kaul provides no facts or evidence supporting it. The Injunction Order was based entirely on the applicable law, as set forth in the order. I neither had nor have any personal or financial interest in the case or the parties.[1] Kaul

---

[1] In one of his filings in response to the motions for contempt, Kaul asserts that I am "interminably conflicted" due to my allegedly corrupt conduct. (ECF No. 192 at 5.) Kaul has made the same allegations in several lawsuits in which he has named me as a defendant based on my issuance of the Injunction Order in this case, all of which have been dismissed. *See Kaul v. Oetken*, No. 24-CV-185 (E.D.N.C.); *Kaul v. Oetken*, No. 24-CV-621 (S.D. Miss.); *Kaul v. Oetken*, No. 25-CV-147 (D.N.D.); *Kaul v. Oetken*, No. 25-CV-6495 (S.D.N.Y.). Although Kaul has not moved for my recusal, I have considered whether recusal is warranted based on his assertion of a "conflict." A judge is required to recuse himself from "any proceeding in which his impartiality might reasonable be questioned." 28 U.S.C. § 455(a). However, a showing of personal bias that would warrant recusal must ordinarily be based on "extrajudicial conduct" and "not conduct which arises in a judicial context." *Lewis v. Tuscan Dairy Farms, Inc.*, 25 F.3d

appears to argue that I "admitted" to being part of a bribery scheme by failing to respond to

certain requests for admission in the Southern District of Mississippi action.  He is wrong.  All

discovery was stayed in that case, and therefore no requests for admission were properly served

or required a response.  *See Kaul v. Oetken*, No. 24-CV-621 (S.D. Miss.), ECF Nos. 21, 37.

Judge Reeves dismissed the claims based on judicial immunity and held that Kaul's allegation of

a "quid pro quo bribery scheme" was a "legal conclusion for which [Kaul] has not provided any

underlying facts."  *Id.*, ECF No. 49 at 3 n.3.

Second, Kaul suggests in some of his filings that the Injunction Order is invalid under the

Supreme Court's decision in *Securities & Exchange Comm'n v. Jarkesy*, 603 U.S. 109 (2024).

(*See, e.g.,* ECF No. 186 at 7.)  In that case, the Court held that a defendant has a right to a jury

trial under the Seventh Amendment to the Constitution when the SEC seeks civil penalties for

securities fraud.  Nothing in the Court's decision alters the legal justification for the Injunction

Order or the lack of merit in Kaul's repetitive lawsuits relating to his medical license.

Finally, Kaul appears to suggest in certain filings that the Injunction Order is invalid

because it is a "nationwide injunction."  The Supreme Court recently addressed "universal

---

1138, 1141 (2d Cir. 1994) (internal quotation marks omitted).  That is because judges are
absolutely immune from suits for damages for any actions taken within the scope of their judicial
responsibilities.  *Mireles v. Waco*, 502 U.S. 9, 11 (1991).  And because recusal "necessarily
results in a waste of the judicial resources which have already been invested in the proceeding,"
*In re Int'l Business Machines Corp.*, 618 F.2d 923, 933 (2d Cir. 1980), a judge is "as much
obliged not to recuse himself when it is not called for as he is obligated to when it is."  *In re
Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988).  "[I]t is improper for a
lawyer or litigant . . . to *create* the ground on which he seeks recusal of the judge assigned to the
case.  That is arrant judge-shopping."  *Sullivan v. Conway*, 157 F.3d 1092, 1096 (7th Cir. 1998).
Moreover, "it is clear that a judge is not disqualified . . . merely because a litigant sues or
threatens to sue him," and recusal is not required where there is "no legitimate basis for suing the
judge."  *Almonte v. Law Enforcement Agency*, No. 21-CV-6062, 2021 WL 4554629, at *2
(S.D.N.Y. Oct. 1, 2021) (internal quotation marks and citations omitted).  Because there is no
legitimate basis for Kaul's lawsuits naming me as a defendant, recusal is unwarranted.

injunctions" in *Trump v. CASA, Inc.*, 145 S. Ct. 2540 (2025).  In doing so, the Court made clear

that "[e]ven a traditional, parties-only injunction can apply beyond the jurisdiction of the issuing

court."  *Id.* at 2548 n.1.  The Injunction Order is binding on a *party* to this case (Kaul), and it

protects *parties* to this case (Defendants).  It is therefore not implicated by the *CASA* Court's

restriction of "universal injunctions."  Nor is this Court aware of any other governing authority

that would prohibit the injunction at issue here based on its scope.  Moreover, Kaul had the

opportunity to appeal the Injunction Order to the United States Court of Appeals for the Second

Circuit, but he did not do so.

### B.      Sanctions

Having found civil contempt, the Court next considers the issue of sanctions.  A court

enjoys broad discretion in determining the appropriate sanction for civil contempt.  "Civil

sanctions have two purposes: to coerce compliance with a court order and to compensate" a party

harmed by the non-compliance.  *CBS Broad., Inc. v. FilmOn.com, Inc*., 814 F.3d 91, 101 (2d Cir.

2016); *see also Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc*.,

369 F.3d 645, 657 (2d Cir. 2004); *EEOC v. Local 28 of Sheet Metal Workers Int'l Ass'n*, 247

F.3d 333, 336 (2d Cir. 2001); *New York State Nat'l Org. for Women v. Terry*, 159 F.3d 86, 93

(2d Cir. 1998).  "Such sanctions may not be imposed as a purely punitive measure."

*Paramedics*, 369 F.3d at 657.

There are both compensatory and coercive grounds for sanctions here.

### 1.      Compensatory Sanctions

When a contempt sanction is compensatory in purpose, "the sanction should correspond

at least to some degree with the amount of damages."  *Id.* (quoting *King*, 65 F.3d at 1062).  One

permissible sanction is an assessment of attorney's fees and costs incurred by the other side as a

result of a party's bad faith conduct.  *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 107,

107-08 (2017).  In some cases—including where "a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior"—a sanction of the entirety of a party's fees and costs may be warranted.  *Id*. at 110.

That is the case here.  Kaul filed multiple repetitive lawsuits against Defendants around the country in knowing violation of the Injunction Order.  These filings were abusive, harassing, and vexatious.  Kaul litigated in a manner that was designed to maximize the degree of harassment: knowingly filing lawsuits in improper venues; serving oppressive discovery demands even though discovery was stayed; filing premature motions for default judgment; and sometimes voluntarily dismissing a case after Defendants went to the trouble of filing a lengthy motion to dismiss.  Kaul's conduct in violation of the Injunction Order required Defendants to incur substantial costs by paying outside counsel to appear and respond, whack-a-mole-style, to Kaul's filings in courts around the country.  None of the fees and costs expended by Defendants as a result of Kaul's filings in his lawsuits filed after, and within the scope of, the Injunction Order would have been incurred absent his willful violation of the Injunction Order.  A compensatory sanction in the amount of those fees and costs is therefore warranted.

## 2.    Coercive Sanctions

Where the purpose of a civil sanction is to make a party comply with an order, the court must exercise its discretion in determining the proper sanction, considering the "character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired."  *United States v. United Mine Workers of Am*., 330 U.S. 258, 304 (1947).  In this regard, the court may resort to incarceration as a coercive sanction for civil contempt, such that "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act."  *Int'l Union Mine Worker of Am. v. Bagwell*, 512 U.S. 821, 828-29 (1994); *see also Close-Up Int'l, Inc. v. Berov*, 474 F. App'x 790,

795 (2d Cir. 2012) (summary order) ("It is a widely[]held and long standing principle that detention as a means of coercing compliance with the court's order was an option well within the district court's inherent authority.").

First, the harm of Kaul's continued contumacy is substantial.  As discussed above, Kaul has filed at least nine cases in federal district courts in violation of the Injunction Order. Defendants have been directly harmed by having to pay substantial amounts in attorney's fees and costs, as well as by the distraction of having to deal with these repetitive filings in multiple courts.  The courts have also been harmed, having spent countless hours in judicial and staff time responding to Kaul's repetitive filings.  Kaul also routinely files onto the federal courts' electronic-filing system repetitive scanned documents of 200 to 400 pages, burdening that system.

Second, the probable effectiveness of any remedy short of incarceration is doubtful.  The Court has twice ordered Kaul to withdraw lawsuits or face "monetary sanctions and contempt," but he has refused to comply.  He has indicated that he has no intention of complying with the Injunction Order, which he has termed a "Fraud on the Court."  (ECF No. 180-15 at 3.)  And Kaul has refused to withdraw the one action that remains pending—*Kaul v. Federation State Medical Bds.*, No. 25-CV-1676 (S.D. Tex.)—despite the Defendants' demands, their motion for contempt, and this Court's order to show cause.

Although it is a drastic remedy, incarceration appears to be the only remedy that is likely to be effective in coercing compliance with this Court's orders.  Before ordering Kaul's arrest by the United States Marshals, however, the Court will give him a final opportunity to cure the contempt by withdrawing the action that remains pending in the Southern District of Texas, as well as any other pending actions or appeals covered by the Injunction Order, within 14 days.  If

he fails to do so, he will be subject to arrest and incarceration until he complies with the Court's orders by withdrawing any such actions or appeals. The Court will also appoint counsel for Kaul from the Federal Defenders of New York in the event that his arrest and incarceration become necessary.

## III.    Conclusion

For the foregoing reasons, Defendants' motions for contempt are granted. Plaintiff Richard Arjun Kaul is hereby held in civil contempt of this Court's September 12, 2022 order (the Injunction Order) as well as this Court's March 15, 2024 and October 2, 2024 orders.

As a compensatory sanction, Kaul is ordered to pay the reasonable attorney's fees and costs incurred by Defendants as a result of Kaul's violation of those orders—i.e., attorney's fees and costs incurred in defending against all of Kaul's lawsuits filed after the date of the Injunction Order that name any of Defendants and relate to or arise from the denial of Kaul's medical license. Defendants shall file certifications detailing such fees and costs within 60 days after the date of this opinion and order.

With respect to a coercive sanction, the Court gives Kaul one final opportunity to dismiss any still-pending action or appeal that is within the scope of the Injunction Order within 14 days. If he fails to do so, he will be subject to arrest by the United States Marshals and detention until he complies with the Court's orders by withdrawing any such actions or appeals.

The Clerk of Court is directed to close the motions at ECF Nos. 179, 180, 182, and 188.

SO ORDERED.

Dated:  September 12, 2025
        New York, New York

_____
J. PAUL OETKEN
United States District Judge

# Exhibit 2

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

RICHARD ARJUN KAUL, MD ET AL.

Plaintiffs

v.                                                    CIVIL ACTION.: 21-CV-06992-JPO

INTERCONTINENTAL EXCHANGE ET AL.

Defendants

_____


# PLAINTIFF KAUL NOTICE RE RESPONDENT-DEFENDANT OETKEN'S LACK OF JURISDICTION/AUTHORITY AS TO ALL MATTERS PERTAINING TO PETITIONER-PLAINTIFF KAUL


DATED: SEPTEMBER 18, 2025                    _____

                                                    RICHARD ARJUN KAUL, MD

# WITHIN REFERENCED CASES OF 'THE KAUL CASES'

**K5:** KAUL v FEDERATION ET AL: 19-CV-3050-CLOSED – PRE JARKESY

**K11-7**: KAUL v ICE ET AL: 21-CV-6992-CLOSED ON SEPTEMBER 12, 2022 - POST 5TH CIRCUIT JARKESY (MAY 18, 2022)

**K11-14**: KAUL v FEDERATION ET AL: 23-CV-22325-CLOSED – POST 5TH CIRCUIT  JARKESY (MAY 18, 2022)

**K11-15**: KAUL v CHRISTIE/MURPHY: 23-CV-22582-CLOSED – POST 5TH CIRCUIT  JARKESY (MAY 18, 2022)

**K11-17**: KAUL v CPEP: 23-CV-00672-CLOSED  – POST 5TH CIRCUIT  JARKESY (MAY 18, 2022)

**K11-20**: KAUL v FEDERATION: 24-CV-03180-CLOSED – POST SCOTUS JARKESY (JUNE 27, 2024)

**K11-23**: KAUL v OETKEN ET AL: 24-CV-00621-OPEN – POST SCOTUS JARKESY (JUNE 27, 2024)

**K11-27:** KAUL v FEDERATION ET AL: 25-CV-01676 – OPEN - POST SCOTUS JARKESY (JUNE 27, 2024)

**K11-30:** KAUL v OETKEN ET AL: 25-CV-06495 – OPEN - POST SCOTUS JARKESY (JUNE 27, 2024)

## RESPONDENT-DEFENDANT OETKEN'S LACK OF JURISDICTION AMD AUTHORITY OVER ALL MATTERS PERTAINING TO PETITIONER-PLAINTIFF KAUL

For the below stated reasons and the simple fact that Respondent-Defendant Oetken and Petitioner-Plaintiff Kaul are current adversaries in K11-30, Respondent-Defendant Oetken is conflicted and without jurisdiction and or authority in all matters pertaining to Petitioner-Plaintiff Kaul. Thus, his September 12, 2025 submission is illegal and null and void.

# A FUNDAMENTAL FLAW OF THE SEPTEMBER 12, 2022 INJUNCTION

It has taken Petitioner Kaul some time to recognize that not only does the illegality of the September 12, 2022 injunction reside in the fact that it was admittedly procured through bribery, that <u>SCOTUS v Trump v CASA:24A884</u> ) June 27, 2025) found the issuance of nationwide injunctions by federal courts was never permitted within the 1781 Judiciary Act, but that injunctions are directed towards persons and entities that are causing harm, and the only person in **The Kaul Cases** that has submitted any evidence of harm is Petitioner Kaul, who has been subjected for a period of seven thousand five hundred and twelve (7,512) days-worth of offenses/violations/crimes/injuries to his life/liberty/property and human/civil/constitutional rights, and if any injunctions were to be issued they would be against **The Kaul Cases** Defendants to prohibit their continued offenses/violations/crimes.

Not one of **The Kaul Cases** Defendants has submitted any evidence of any harm, but moreover it is they who committed the offenses/violations/crimes against Petitioner Kaul in the **'Revocation-Cover-Up-Conspiracy'** (2005-2025), and it is they who have admitted to the offenses/violations/crimes and the law demands that they be held civilly and criminally accountable.

It was necessary to state these facts in order to properly re-frame Respondent Oetken's perverted legal scenario in which Petitioner Kaul is the persecutor/villain and he and **The Kaul Cases** Defendants are the victims/persecuted. Petitioner Kaul has existed in poverty/homelessness for over ten (10) years), has claimed and been granted IFP status multiple times and has had thirteen (13) years old the most productive years of his immensely successful professional career stolen from him by **The Kaul Cases** Defendants, has been falsely jailed/kidnapped, but yet **The Kaul Cases** Defendants with their careers/cars/houses/wealth/lawyers seek to have Petitioner Kaul jailed because he is using the courts to regain the losses and hold accountable those that committed the offenses/violations/crimes/injuries against him for twenty (20) years. The irony in all of this is that of **The Kaul Cases** Defendants were innocent, which they are not, they would simply have

taken the case to court in 2016 and proved their innocence, but they did not because they are guilty, a fact that have all admitted.

# THE OFFENSES/VIOLATIONS/CRIMES UNDERMINE THE BASIS FOR THE DISCUSSION OF THE CONTEMPT ORDER.

**OVERVIEW:**

Respondent Oetken's tactic is to within the first part of his argument attempt to frame his admitted offenses/violations/crimes as the legitimate activity of a federal judge and to then use the superficially sanitized crime omitted product of those offenses/violations/crimes as the second part of his argument and the basis for his conclusion of contempt.

**CRITIQUE – PART ONE**

Throughout **The Kaul Cases** some of the tactics used by The Kaul Cases Defendants and certain judges corrupted by **The Kaul Cases** Defendants including Respondent Oetken has been to simply ignore the controlling authorities as to the filing of new claims based on new injuries - Continuing Violations Doctrine/Bodner v. Banque Paribas 114 F.Supp.2d 117 (2000)/Lawlor v. National Screen Service Corp. I 349 U.S. 322 (1955) – which substantiate the filing of new claims with the incurrence of ongoing/**"new"** injuries.

Respondent Oetken, as with **The Kaul Cases** Defendants, attempts to justify his illegal September 12, 2022 purported nationwide injunction by falsely claiming that all of **The Kaul Cases** are identical and that the filing of these cases is simply for the purpose of harassing **The Kaul Cases** Defendants:

Firstly, the purpose of the cases is to cause a remediation/rectification/compensation/cessation for/of the ongoing/**"new"** seven thousand five hundred and twelve (7,512) days-worth of offenses/violations/crimes/injuries caused and maliciously continuing to be caused to the life/liberty/property/reputation and human/civil/constitutional rights of Petitioner Kaul. Or put otherwise if **The Kaul Cases** Defendants had accepted the multiple offers from Petitioner Kaul to commence settlement discussions (2016-2025) or complied with and not violated the multiple discovery orders issued by district courts (2019-2025), there would have been no need for Petitioner Kaul to continue to seek justice. But if one were to apply a retroactive process to

the events, if **The Kaul Cases** Defendants had simply not interfered and destroyed Petitioner Kaul's life/liberty/property/reputation and career and not sought to commence an entirely needless and illegal conspiracy against him, then none of **The Kaul Cases** that commenced on February 22, 2016 would have come to pass.

Respondent-Defendant Oetken in collusion/conspiracy with **The Kaul Cases** Defendants and their political co-conspirators are directly responsible for the predicament in which they now find themselves, a predicament Respondent-Defendant Oetken disingenuously attempts to 'frame' as one being due to Petitioner-Plaintiff Kaul's use of the legal system to harass them with **"frivolous … meritless …harassing …. etc"** claims. This particular 'let's switch the blame' scheme has been an almost constant defense/complaint of **The Kaul Cases** Defendants throughout the **'Revocation-Cover-Up-Conspiracy'** (2005-2025). If Petitioner-Plaintiff Kaul were to receive monetary compensation/reinstatement of NJ medical license/public apology tomorrow, the litigation against the K11-27 Defendants would cease. And so, the persecutorial harassing is that of the K11-27 Defendants and the victimization is that being perpetrated in Petitioner-Plaintiff Kaul (2005-2025).

And so having corrected Respondent-Defendant Oetken's false narrative, one that he used to issue the illegal K11-7 September 12, 2022 purported injunction and one that he uses again in the K11-7 September 12, 2025 opinion-order, Petitioner-Plaintiff Kaul addresses the second error.

<u>Secondly</u>, each and every case filed within **The Kaul Cases** is factually distinct to the prior one in that the days-worth of offenses/violations/crimes/injuries to Petitioner-Plaintiff Kaul's life/liberty/property/reputation has increased. For example, in K11-7, the number was six thousand four hundred and eleven (6,411-February 22, 2005 – September 12, 2022), while as of September 17, 2025 it is seven thousand five hundred and seven (7,507), a difference of one thousand and ninety-six (1,096) days of **"new"** injuries. These differences in factual foundation do pursuant to <u>Continuing Violations Doctrine/Bodner v. Banque Paribas 114 F.Supp.2d 117 (2000)/Lawlor v. National Screen Service Corp. I 349 U.S. 322 (1955)</u> substantiate the filing of

new claims. Neither **The Kaul Cases** Defendants nor any of the district court judges, including Respondent Oetken have at any point in **The Kaul Cases** differentiated/distinguished these controlling authorities.

**The Kaul Cases** except he omits those cases in which discovery/trial orders were entered and violated by **The Kaul Cases** Defendants (K5/K11-14/K11-15/K11-17/K11-20). In citing to K1, Respondent Oetken, who was sponsored to the federal bench by **The Kaul Cases** Defendant Charles E. Schumer fails to identify the fact that U.S.D.J. McNulty, the brother-in-law of **The Kaul Cases** Defendant Schumer, was disqualified on May 22, 2019 in K1 after Petitioner-Plaintiff Kaul exposed the fact that while he was a lawyer he had represented Defendant Heary in a 2002 medical malpractice case (Joseph Howard v UMDNJ/Heary-New Jersey Superior Court), in which Defendant Heary lied to a patient about his qualifications to perform a certain cervical spine surgery and performed an operation in which an otherwise healthy thirty-five (35) year was rendered quadriplegic by Respondent Heary. The jury delivered a verdict of $5.2 million and found Defendant Heary to have lied to the patient. The New Jersey Supreme Court upheld the verdict and rejected McNulty's arguments. Defendant Heary was a defendant in K1. On these grounds alone (Schumer-McNulty-Oetken) Respondent-Defendant Oetken is conflicted and should be disqualified from K11-7. K11-7 was closed by the court of the clerk on September 22, 2022, and never officially re-opened, but yet Respondent Oetken and **The Kaul Cases** Defendants continues to file documents in order to illegally use the docket as a defense against claims in other courts and a tool to violate the human/civil/constitutional rights of Petitioner Kaul.

Respondent-Defendant Oetken's reliance on **The Kaul Cases** that are pre-Jarkesy and Pre-Trump v CASA is futile as Jarkesy renders illegal the 2014 NJ jury-less article III judge-free $475,000 'fine' imposing license revocation as does Trump v CASA render illegal Respondent's September 12, 2022 nationwide injunction in K11-7. The illegal rendering of the 2014 NJ revocation does pursuant to the doctrine of 'Fraud on the Court', the 'Continuing Violations

Doctrine' and all due process clauses of the United States Constitution, render illegal every legal consequence of the illegal 2014 revocation.

 Respondent-Defendant Oetken recites the K11-7 events while omitting the fact that his September 12, 2022 opinion-injunction failed to address/refute/contest/rebut Petitioner Kaul's distinguishing/differentiation arguments of every fact and case cited by the Defendants, thus causing an admission of Petitioner-Plaintiff Kaul's factual/legal arguments and a rejection of the K11-7 Defendants factual/legal arguments. In addition, the fact/law cited to by Respondent-Defendant Oetken in his September 12, 2022 opinion-injunction was shown to be false by Petitioner-Plaintiff Kaul in his October 6, 20222 submissions (**APPENDIX B**), none of which were contested/rebutted/addressed by Respondent-Defendant Oetken, thus causing them to become admitted, the admittance of which undermines Respondent-Defendant Oetken's September 12, 2025 submission in K11-7 thus rendering it null and void and absent legal effect. For the September 12, 2025 submission is based on the admittedly fraudulent and factually/legally erroneous September 12, 2022 submission (K11-7:D.E. 168). A lie built upon a lie and because the foundation of the September 12, 2025 submission is admittedly fraudulent, so too is the September 12, 2025 submission (K11-7:D.E. 202).

However, Respondent Oetken in seeking , amongst other things, to prevent Petitioner-Plaintiff Kaul from placing the Jarkesy question before SCOTUS and in causing a further exposition of his crimes and those of **The Kaul Cases** Defendants has no option but to perpetuate the criminal 'Fraud on the Court' that commenced in or around late 2021, shortly after the August 19, 2021 filing of K11-7, and that includes seeking to attempt to have Petitioner-Plaintiff Kaul jailed and forever barred from procuring justice and exposing his crimes. Respondent Oetken as with **The Kaul Cases** Defendants are 'fighting for their lives' and there is nothing they will not do to attempt to have Petitioner-Plaintiff Kaul eliminated. It is probative to Respondent-Defendant Oetken's guilt of the charges levied in K11-23 and K11-30 that despite Petitioner-Plaintiff Kaul requesting on September 14, 2022 Respondent-Defendant Oetken produce his financial

holdings and exparte communications, he has continued (2022-2025) to fail to produce that information despite repeated requests and a formal notice of production in K11-23.

 Eliahu v. Jewish Agency for Israel, 919 F.3d 709, 714 (2d Cir. 2019) – Petitioner Kaul's differentiation of this case was admitted consequent to the K11-7 Respondent-Defendant Oetken's non-contestation of Petitioner-Plaintiff Kaul's differentiation in their reply and opinion. Thus, this case fails to support Respondent-Defendant Oetken's September 12, 2025 submission.

Bd. of Managers of 2900 Ocean Ave. Condo. v. Bronkovic, 83 F.3d 44, 45 (2d Cir. 1996) – Petitioner-Plaintiff Kaul's differentiation of this case was admitted consequent to the K11-7 Respondent-Defendant Oetken's non-contestation of Petitioner-Plaintiff Kaul's differentiation in their reply and opinion. Thus, this case fails to support Respondent Oetken's September 12, 2025 submission.

Petitioner Kaul's appeal of the September 12, 2022 submission (D.E. 168) would have precluded his subsequent filings that were admitted by independent district judges (K11-14/K11-15/K11-17/K11-20) whom Petitioner Kaul had informed of the September 12-14, 2022 events surrounding Respondent Oetken. And moreover, the fact that Respondent Oetken had intermittently sat on the appellate bench and was corruptly promised an elevation to the appellate bench if his injunction scheme against Petitioner-Plaintiff Kaul succeeded, meant that Petitioner-Plaintiff Kaul would have, at least at that time, been submitting his appeal to a court conflicted by Respondent-Defendant Oetken, thus rendering any appeal a futile endeavor that Respondent-Defendant Oetken and the K11-7 Defendants would have ensured was a process that lasted for many statute limitation expiring years. Since the 2005 commencement of the '**Revocation-Cover-Up-Conspiracy'** the 'playing field' has never been equally levelled but always tilted against Petitioner Kaul, into and including, at least pre-Jarkesy (June 27, 2024)/pre-Trump v CASA (June 27, 2025) the federal appellate courts, except momentarily the

U.S.C.A. for the Fifth Circuit (K11-19/K11-27). One man against the world and it still has to cheat.

Respondent Oetken references  an October 3, 2024 letter he received from Petitioner Kaul (D.E. 178), without noting that he failed to address/refute/contest the claims set forth in the letter, thus further causing their admission. Those being his Rule 8(b)(6) admissions of fact in K11-23 (**APPENDIX A**) and the invalidation of the 2014 illegal NJ revocation by the SCOTUS Seventh Amendment related ruling in <u>SEC v Jarkesy: 22-859</u> (June 27, 2024).

Respondent Oetken's statement: **"Kaul has referenced the Injunction Order … remains an admitted 'Fraud on the Court'"** (Page 7-8 of 15), while being purposed to support his September 12, 2025 order does the exact opposite, in that when the statement was issued on August 20, 2023 in K11-14 Respondent Oetken submitted no document to his K11-7 docket the contents of which contested/rebutted/addressed the statement. Similarly, neither did the district judge in K11-14 submit any statement to contradict the truth of Petitioner Kaul's statement. Thus, and yet again, Respondent Oetken bases his September 12, 2025 order on admitted facts that actually undermine his order, for having once again admitted to the illegality of the September 12, 2022 injunction, it does render illegal his September 12, 2025 order. Respondent Oetken's fundamental hurdle is that the premise of his argument, that being the September 12, 2022 injunction, has been repeatedly admitted by him to be illegal (K11-7/K11-14/K11-17/K11-23), an illegality further substantiated by the SCOTUS holdings in <u>SEC v Jarkesy</u> and <u>Trump v CASA</u>. The legal reasoning as to the applicability of <u>Jarkesy</u> is that the 2014 NJ jury-less article III judge-free $475,000 'fine' imposing revocation was/is illegal, and thus every product consequent to that revocation was/is illegal, including the September 12, 2022 (K1-7: D.E. 168) injunction and now the September 12, 2025 order (K11-7: D.E. 202).

Respondent Oetken's recitation of a knowingly fraudulent procedure that stemmed from the illegal September 12, 2022 submission: **"In February , March … On May 8, 2025 … Kaul did not appear"** (Page 8 of 15) is purposed to convey legitimacy upon the proceeding, but it does fail for the simple fact that in K11-18/K11-23/K11-30 Respondent Oetken admitted to the

violations/crimes surrounding/underpinning/constituting these crimes, as evidenced in his Admissions of Fact, all of which stemmed from his Rule 8(b)(6) admissions in K11-18/K11-23/K11-30. Respondent Oetken remarks that Petitioner "**Kaul did not appear",** a fact of which Respondent Oetken was previously informed due to the fact that he was conflicted on June 17, 2025 because, amongst other things, he was being actively sued by Petitioner Kaul in K11-28, and thus being conflicted he was without jurisdiction/authority and thus Petitioner Kaul's right to due process and an impartial tribunal prohibited Respondent Oetken from conducting the proceeding,  a proceeding that was null and void ab initio.

**CRITIQUE- PART 2**

**DISCUSSION TO CONCLUSION**

This section of the submission is the progeny of the product of the crime of the September 12, 2022 submission (D.E. 168), a fact Petitioner-Plaintiff Kaul has been claiming since its issuance, a fact that has been admitted multiple times by Respondent-Defendant Oetken and a fact that has been conclusively proven by the June 27, 2025 SCOTUS holdings in Trump v CASA. And thus, this section, based as it is on the prior section is also the product of crime. Thus, the conclusion is invalid, is the product of crime, is without legal effect and Respondent-Defendant Oetken's conflicted September 12, 2025 submission constitutes a further violation of Petitioner-Plaintiff Kaul's human/civil/constitutional rights that pursuant to Section 1983 are amenable to suit in the United States District Court.

Trump v CASA: 24A884 – Respondent Oetken's interpretation of the case fails to support his submission. SCOUTUS held: **"Under the Court's well-established precedent, see Grupo Mexicano, 527 U. S., at 319, because universal injunctions lack a founding-era forebear, federal courts lack authority to issue them. Pp.19–21."**

Respondent Oetken, decontextualizes and misrepresents a footnote quote from the opinion. The contextualized section is:

**"The injunctions before us today reflect a more recent development: district courts asserting the power to <u>PROHIBIT ENFORCEMENT OF A LAW OR POLICY AGAINST ANYONE</u>."**

These injunctions—known as **"universal injunctions"—likely <u>exceed</u> the equitable authority that Congress has granted to federal courts."** <u>whereby footnote 1 states</u>: **"Such injunctions are sometimes called "<u>nationwide injunctions,</u>" reflecting their use by a single district court to <u>bar the enforcement of a law</u> anywhere in the Nation. But the term "universal" better captures how these injunctions work. Even a traditional, parties-only injunction can apply beyond the jurisdiction of the issuing court. <u>Steele v. Bulova Watch Co., 344 U. S. 280, 289 (1952)</u> (When "exercising its equity powers," a district court "may command persons properly before it to cease or perform acts outside its territorial jurisdiction"). The difference between a traditional injunction and a universal injunction is not so much where it applies, but whom it protects: A universal injunction prohibits the Government from enforcing the law against anyone, anywhere. H. Wasserman, "<u>Nationwide</u>" Injunctions Are Really "Universal" Injunctions and <u>They Are Never Appropriate</u>, 22 Lewis & Clark L. Rev. 335, 338 (2018)."**

The injunction entered by Respondent-Defendant Oetken on September 12, 2022 was a **"nationwide injunction"** and was referred to as such by Respondent-Defendants Oetken and **The Kaul Cases** Defendant throughout **The Kaul Cases,** as the record proves and it was never referred to as a **"traditional injunction"** because it did not and does not fit the definition of a **"traditional injunction",** which is defined by <u>Cornel Law School Legal Information Institute</u> as:

**"A permanent injunction is granted as part of a <u>final judgment</u>. To obtain an injunction, plaintiffs must show that they have suffered irreparable harm, that legal <u>remedies</u> such as monetary damages are inadequate, that the balance of hardships favors them, and that the injunction would not disserve the public interest. These principles were reaffirmed by the Supreme Court in eBay Inc. v. MercExchange. Courts also consider equitable factors such as**

the parties' good faith or prior conduct when fashioning the remedy. In Boomer v. Atlantic
Cement Co., for example, the Court declined to issue a permanent injunction due to the
defendant's significant investment and the lack of practical alternatives, even though a
nuisance was proven. Similarly, in Penland v. Redwood Sanitary Sewer Serv. Dist., the Court
adjusted its order based on the defendant's efforts to abate the harm.

In Trump v. CASA (2025), the United States Supreme Court limited the scope of equitable
relief in federal courts. The Court held that nationwide or universal injunctions, which block
enforcement of a law or executive action against nonparties, are likely not authorized under
the Judiciary Act of 1789. As a result, federal courts may only issue injunctions that apply to
the parties actually before them, unless Congress explicitly authorizes broader relief.
Although the case did not decide the merits of the underlying policy, it marked a clear shift
away from the practice of issuing injunctions with universal effect. This decision reinforces
the principle that equitable relief must be narrowly tailored to the specific legal injury at
issue."

The parties in every case of **The Kaul Cases** other than K11-7 were not before Respondent-
Defendant Oetken and thus he had no authority/jurisdiction to interfere in those cases and now
in conjunction with his state of conflicted-ness has absolutely no authority/jurisdiction to enter
any orders as to any matters that involve/relate/associate with Petitioner-Plaintiff Kaul.

## RESPONDENT -DEFENDANT OETKEN'S ADMISSIONS OF FACT

Respondent-Oetken states: **"Kaul appears to argue that I "admitted" to being part of a bribery
scheme by failing to respond to certain requests for admission in the Southern District of
Mississippi action. He is wrong. All discovery was stayed in that case, and therefore no
requests for admission were properly served or required a response. See Kaul v. Oetken, No.
24-CV-621 (S.D. Miss.), ECF Nos. 21, 37. Judge Reeves dismissed the claims based on judicial
immunity and held that Kaul's allegation of a "quid pro quo bribery scheme" was a "legal
conclusion for which [Kaul] has not provided any underlying facts." Id., ECF No. 49 at 3 n.3."**

14

Rule 8(b)(6) contains no provision as to the commencement or not of discovery and or whether a case is dismissed or proceeds in its determination that if allegations/facts are not denied within the first twenty-one (21) days of service, the allegations/facts are admitted for all purposes. And Respondent-Defendant has submitted no authority to show or prove otherwise, and in fact Judge Reeves has set K11-23 for trial with a scheduled September 26, 2025 date for complaint amendment. Respondent-Defendant Oetken's criminal conduct since his June 12, 2025 release from K11-23 find no refuge under any form of immunity and even of it did he remains a witness to the crimes set forth and admitted to in K11-23.

# **CONCLUSION**

From August 19, 2021 to September 12, 2025 every order entered by Respondent-Oetken has been illegal as either it was the product of:

**(i)** the illegal 2014 NJ juryless article III judge free $475,000 'fine' imposing license revocation (SEC v Jarkesy: 22-859) and;

**(ii)** the product of the illegal 2014 NJ juryless article III judge free $475,000 'fine' imposing license revocation **and** the bribery related quid pro quo scheme unlawful nationwide injunction (Trump v CASA:24A884).

And should Respondent-Defendant Oetken enter any further orders or arrest warrants, they too will be illegal and will constitute a further violation of Petitioner-Plaintiff Kaul's rights and will substantiate a basis for further suit against Respondent-Defendant Oetken and pursuant to Section 1986 of the 1871 Civil Rights Act:

**"Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued."**

and that includes all persons copied on September 18, 2025 via email on this communication.

Respondent-Defendant Oetken's knowing continuation of his long-standing perpetuation of crime using the apparatus of the United States District Court warrants his impeachment and conviction.

I certify under penalty of perjury that the above statements are true and accurate to the best of my knowledge.

DATED: SEPTEMBER 18, 2025

_____
RICHARD ARJUN KAUL, MD

cc: All Counsel of record in K11-7K11-23//K11-27
    Judicial members of the S.D.N.Y.
    United States Department of Justice
    United States Marshal Service

# APPENDIX A

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI



SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D

JAN – 6 2025

ARTHUR JOHNSTON
BY_____ DEPUTY

RICHARD ARJUN KAUL, MD;
JANE DOE; JOHN DOE.

Plaintiff

$3:24-cv-00621-CWR-LGI$

CIVIL ACTION NO.: 24-CV-00621-CWR-LGI

v.

JAMES PAUL OETKEN
(PERSONAL AND OFFICIAL CAPACITY)
MISSISSIPI MEDICAL BOARD;
NEW YORK STATE ATTORNEY GRIEVANCE
COMMITTEE; JANE DOE; JOHN DOE.

Defendants.

---

## ADMISSIONS OF MATERIAL AND UNDISPUTED FACT NOT RELATED TO THE ISSUE PENDING THE COURT'S RULING ON THE MOTION AND PURSUANT TO RULE 8(b)(6) AS TO DEFENDANT JAMES PAUL OETKEN

Respectfully Submitted

RICHARD ARJUN KAUL, MD

JANUARY 5, 2025

# RELEVANT REFERENCES TO THE KAUL CASES

**K1 –** KAUL v CHRISTIE: 16-CV-02364 (FEBRUARY 22, 2016, TO NOVEMBER 16, 2021-U.S.D.C.-D.N.J.)

**K11-7 -** KAUL/BASCH v ICE: 21-CV-06992 (AUGUST 19, 2021, TO SEPTEMBER 12, 2022-SOUTHERN DISTRICT OF NEW YORK)

**K11-10 -** KAUL/BASCH v ICE: 23-CV-2016 (MARCH 9, 2023, TO MAY 16, 2023-SOUTHERN DISTRICT OF NEW YORK)

**K11-14 -** KAUL v GEICO: 23-CV-22325 (JUNE 22, 2023, TO AUGUST 23, 2023-SOUTHERN DISTRICT OF FLORIDA)

**K11-17 -** KAUL v CPEP: 23-CV-00672 (NOVEMBER 20, 2023, TO JUNE 14, 2024 - EASTERN DISTRICT OF NORTH CAROLINA)

**K11-18 –** KAUL v OETKEN: 24-CV-00185 (MARCH 25, 2024, TO APRIL 8, 2024-EASTERN DISTRICT OF NORTH CAROLINA)

**K11-20 –** KAUL v FEDERATION STATE MEDICAL BOARDS: 24-CV-03180 (AUGUST 26, 2024, TO PRESENT-SOUTHERN DISTRICT OF TEXAS)

**K11-22 –** KAUL v BCBSA: 23-CV-01688 (DECEMBER 12, 2023, TO PRESENT-NORTHERN DISTRICT OF ALABAMA)

**K11-23 –** KAUL v OETKEN: 24-CV-00621 (OCTOBER 9, 2024 TO PRESENT-SOUTHERN DISTRICT OF MISSISSIPPI)

For ease of reference Defendant JAMES PAUL OETKEN will be referred to as "I"

## K11-23 + Failure To Deny Bribes

**1.** I admit that when I entered the knowingly illegal injunction on September 12, 2022, I instructed the Clerk of the Court to ensure Plaintiff Kaul was provided instructions on how to appeal in conjunction with an application to proceed in forma pauperis (D.E. 169-1).

**2.** I admit that the purpose of encouraging Plaintiff Kaul to file an appeal to the U.S.C.A. for the Second Circuit was that I did intermittently sit on the appellate bench and was informed it likely I be elevated to the appellate court if Plaintiff Kaul 'took the appellate bait'.

**3.** I admit I know that if Plaintiff Kaul did file an appeal, no other district court would admit any of his filings, and his claims would be restricted to the U.S.C.A. for the Second Circuit.

**4.** I admit I knew that the Second Circuit would ultimately deny Plaintiff Kaul's appeal and validate my knowingly illegal injunction.

**5.** I admit I knew that the validation of my injunction by the U.S.C.A. for the Second Circuit would forever preclude Plaintiff Kaul from filing any lawsuits in the United States District Court that had any connection, however remote, to any aspect of his professional licensing history.

**6.** I admit I knew that if I succeeded in eliminating Plaintiff Kaul in this bureaucratic manner, I would have been permanently elevated to the U.S.C.A. for the Second Circuit.

**7.** I admit that an elevation to the U.S.C.A. for the Second Circuit would have had the effect of permanently 'burying' all the bribery related quid pro quo crimes I had committed since being appointed to the federal bench in 2011 by a politician notorious even by political standards for egregious acts of political corruption.

**8.** I admit that had I been elevated to the U.S.C.A. for the Second Circuit, this politician would have secured even greater protection for his corrupt and criminal perversion of the power of government.

**9.** I admit, however, that because of Plaintiff Kaul, none of these hypotheticals occurred and my career was negatively impacted.

**10.** I admit the negative impact on my career in conjunction with preventing Plaintiff Kaul from exposing my crimes did cause me to threaten him with contempt and incarceration.

**11.** I admit I know of **The Kaul Cases** attempt on June 14/15, 2023 to have Plaintiff Kaul, while illegally incarcerated at the medium-maximum security Mercer County Prison in Trenton, NJ,

poisoned with the anti-psychotic medication, Librium, in order to have him deemed mentally unstable and committed indefinitely to a psychiatric institution.

**12.** I admit that on October 9, 2024, Plaintiff Kaul filed K11-23, in which I am accused of, amongst other things, bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption.

**13.** I admit that I was served with a copy of K11-23 on October 16, 2024 at approximately 9:30 am EST in my courtroom at the S.D.N.Y. by a security officer employed by the United States District Court.

**14.** I admit that on November 15, 2024, the Court ordered I answer the Complaint by December 16, 2024.

**15.** I admit that on December 16, 2024 I filed documents entitled 'MOTION TO DISMISS' (D.E. 12) and 'MEMORANDUM IN SUPPORT MOTION TO DISMISS' (D.E. 13).

**16.** I admit that in neither of these documents did I deny the allegations/facts of bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption.
asserted in the Complaint in K11-23.

**17.** I admit I knew/know that in failing to deny the allegations/facts I did violate the Court's November 15, 2024 order.

**18.** I admit I knew/know that in failing to deny the allegations/facts I did cause them to become admitted for all purposes pursuant to Rule 8(b)(6).

**19.** I admit I knew/know that the allegations/facts constitute the commission of violations of criminal law.

**20.** I admit I knew/know that the immunity defense I raised in my impermissibly filed 'MOTION TO DISMISS' (D.E. 12) and 'MEMORANDUM IN SUPPORT MOTION TO DISMISS' (D.E. 13) were/are invalid because my Rule 8(b)(6) admissions of my commission of bribery related crime are not protected by any immunity defense.

**21.** I admit I am guilty of the charges levied in K11-23.

**22.** I admit that if I were innocent of the charges levied in K11-20 I would simply have denied them, but I did not because I am guilty of the charges.

**23.** I admit I know that on December 20, 2024, Plaintiff Kaul filed a 'NOTICE OF DEFENDANT OETKEN'S ADMISSION OF FACT PURSUANT TO HIS RULE 8(b)(6) FAILURE TO DENY THE

4

ALLEGATIONS AND FACTS ASSERTED WITHIN THE COMPLAINT, AND PURSUANT TO HIS VIOLATION OF THE COURT'S DECEMBER 16, 2024 ORDER TO ANSWER THE COMPAINT'.

**24.** I admit I know that a <u>responsive pleading</u> was ordered by the Court on November 15, 2024.

**25.** I admit I know that pursuant to Rule 8(b)(6) the **"Effect of Failing to Deny An Allegation-other than one relating to damages-is admitted if a responsive pleading is required and the allegation is not denied."**

**26.** I admit I know that on December 27, 2024, Plaintiff Kaul filed a 'REPLY DEFENDANT OETKEN MEMORANDUM OF MOTION TO DISMISS'.

**27.** I admit I read Plaintiff Kaul's 'REPLY DEFENDANT OETKEN MEMORANDUM OF MOTION TO DISMISS' through the perspective of a lawyer and judge.

**28.** I admit that through the perspective of a lawyer and judge I agree with every argument submitted in Plaintiff Kaul's 'REPLY DEFENDANT OETKEN MEMORANDUM OF MOTION TO DISMISS'.

**29.** I admit that of the thousands of opinions I have issued in my judicial career in cases involving charges of bribery against public servants, many of them contain arguments either identical or consistent with those submitted by Plaintiff Kaul.

**30.** I admit that in these cases I have ruled in favor of government prosecutors who have submitted such arguments against criminal defendants charged with bribery and public corruption.

**31.** I admit that in these cases in which guilty verdicts have been rendered, I did sentence the defendants to terms of imprisonment and substantial fines.

**32.** I admit that through the perspective of a defendant, who is also a lawyer and judge, I should be held at least to the standard of the common man committing common crime if not higher.

**33.** I admit that my Rule 8(b)(6) related admittance of the facts of bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption asserted in the Complaint in K11-23, did deprive me of any immunity.

**34.** I admit that in the Complaint (D.E. 1 Page 14 of 54), Plaintiff Kaul identified the facts that caused me to be deprived of '… ANY/ALL IMMUNITIES'.

**35.** I admit that in my December 16, 2024 'MOTION TO DISMISS' (D.E. 12) and 'MEMORANDUM IN SUPPORT MOTION TO DISMISS' (D.E. 13) I did not deny any of the facts asserted in paras. 39 to 45 or indeed any of the facts within the entire Complaint.

**36.** I admit that on January 3, 2025 IN K11-23 I submitted my 'REPLY IN SUPPORT OF MOTION TO DISMISS'.

**37.** I admit that in my 'REPLY IN SUPPORT OF MOTION TO DISMISS' I submitted an answer to the bribery charge levied in the K11-23 Complaint.

**38.** I admit, however, that the answer was intended to purposefully mislead the Court into believing Defendant Oetken was innocent of the levied charges of bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption.

**39.** I admit that one of the answers in furtherance of this deception is: **"However, Judge Oetken has committed no crimes and Kaul's blanket statement is insufficient to support a finding of criminal activity."** (D.E. 23 Page 2 of 5).

**40.** I admit that I and my lawyers conspired to manufacture a, and to use my own word, **"blanket"** statement in which I did not specifically deny having committed the crimes of bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption.

**41.** I admit that I and my lawyers believed that if we used the word **"crimes"** in a general sense it would deceive the Court into believing I had not committed bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption.

**42.** I admit that the deceptive state-of-mind of myself and my lawyers is evidenced in our use of the term **"blanket"** to describe, albeit a false description, of Plaintiff Kaul's claims, when in fact it represents, both in textual and meaning proximity, my use of the general term **"crimes"** to appear to but not actually deny my commission of bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption.

**43.** I admit that I and my lawyers, knowing I had committed crime, could not simply deny the allegations/facts, and so filed a motion to dismiss, while planning to use my final reply to deceive the Court into believing I committed no crime, knowing that Plaintiff Kaul could not respond to my final **"crimes"** based reply.

**44.** I admit that I did commit crimes, which explains the extent to which I have proceeded since 2023 in attempting to prevent other district courts and judges from hearing any of **The Kaul Cases**.

**45.** I admit that my nationwide injunction against a single litigant is a gross deviation from the true purpose of such restrictions, and in conjunction with threats of contempt does constitute an unprecedented violation of the human/civil/constitutional rights of person whose life/liberty/property/reputation rights have been illegally deprived for almost thirteen (13) years and who has not once been provided an opportunity to litigate his claims through discovery to trial.

**46.** I admit that my conduct and that of **The Kaul Cases** Defendants is, other than being illegal, does evidence our guilt of the levied charges to a criminal standard.

## **Defendant Oetken Career Milestones And Transition From Lawful To Unlawful Conduct**

**47.** I admit I graduated from high school in or around 1984.

**48.** I admit I attended college from 1984 to 1988 and did graduate.

**49.** I admit I attended law school from 1988 to 1992 and did graduate.

**50.** I admit I did take and pass the NYS Bar Exam after I graduated law school.

**51.** I admit I did swear an oath upon admission to the NYS Bar.

**52.** I admit the oath involved a promise to uphold the law, faithfully support the Constitution and conduct my practice of law in an ethical manner.

**53.** I admit that after graduating law school and in the period from 1992 to approximately 2002 I provided legal counsel to politicians.

**54.** I admit that in the period from 2002 to 2011 I worked in the private sector and provided legal counsel to publicly traded corporations.

**55.** I admit that as a consequence of working in the milieu of the political and corporate worlds, I came to witness and know their corrupt intersection.

**56.** I admit that as a consequence of being immersed in this corrupt politico-corporate milieu, I began to view profit-purposed manipulations of law and ethics as a 'normal' way of conducting public service and business.

**57.** I admit that being immersed in these manipulations caused a perversion of my moral and ethical framework.

**58.** I admit that being immersed in these manipulations caused me to become highly experienced in knowingly dishonest perversions of the law to suit political and business agendas.

**59.** I admit that in 2010 I was sponsored by the US Senator for New York to the federal bench.

**60.** I admit that in 2011 I was assigned to the federal bench in the Southern District of New York.

**61.** I admit that upon assignment to the federal bench I did, with my hand on the Bible, swear an oath to the Constitution and a promise to faithfully uphold the law.

**62.** I admit that in the period from 2011 to 2025, I adjudicated approximately four thousand five hundred (4,500) cases.

**63.** I admit that the majority of the cases involved commercial, business and financial disputes involving mostly high net worth individuals and financial sector corporations.

**64.** I admit that I also presided over criminal cases in which defendants were convicted by juries of bribery and public corruption.

**65.** I admit that I sentenced to jail persons convicted of bribery and public corruption.

**66.** I admit that in my sentencing remarks in these bribery and public corruption cases, I described the perniciousness of the offenses in that when public servants violate the public trust, there can be nothing more corrosive to the well-being of society and its democratic institutions.

**67.** I admit that in many of the public corruption cases filed before me and within the S.D.N.Y., the press conference given by the U.S. Attorney would invariably involve how such conduct would not be tolerated in the S.D.N.Y and how the perpetrators would be tenaciously pursued and prosecuted.

**68.** I admit that by the time I was appointed to the federal bench I was well-versed in the manufacturing of schemes by lawyers in which the law is perverted, violated and ignored to provide justification and cover for the furtherance of knowingly illegal agendas of politicians and corporations.

**69.** I admit that I know the principal reason I was nominated by the US Senator for NY was my lengthy pre-judicial experience in the corrupt manufacturing of politico-corporate malfeasance supporting legal opinion.

**70.** I admit that I know my appointment had nothing to do with an aspect of my personal life, an aspect that was however conveniently and publicly exploited by the politicians.

**71.** I admit that over the almost fourteen (14) years I have sat on the federal bench, there has been an escalation in the brazenness and seriousness of the crimes, violations and other wrongdoing I have committed against the law, the public and the United States.

**72.** I admit that I know one of the reasons for this unchecked escalation has been the fact that no lawyer or judge has accused me of engaging in corrupt activities.

**73.** I admit I know that within the court, the non-lawyer and non-judicial staff that work in my courtroom do know of my corrupt activities.

**74.** I admit I know that one of the reasons no lawyer of judge has reported me is because they believe their 'whistleblowing' will cause the politician who sponsored me to retaliate and attempt to silence them.

**75.** I admit that the politician's retaliation and 'whistleblower' silencing would stem from his fear that the 'whistleblower' exposing of my corrupt use of the federal bench to further his schemes of political corruption with Wall Street based insurance, hospital, pharmaceutical and banking corporations, would end his political career.

**76.** I admit I know that in 2019, Plaintiff Kaul sued this politician in the S.D.N.Y. on charges of racketeering, bribery, quid pro quo schemes and public corruption.

**77.** I admit I knew this fact when Plaintiff Kaul filed K11-7 on August 19, 2021, and despite knowing I was conflicted, I did nonetheless adjudicate the case.

## Common Knowledge Of The Truth Of The Crimes Of The Kaul Cases Defendants

**78.** I admit that as a district judge in a highly staffed district court with unrestricted access to evidence/facts and persons possessing this corpus of evidence/fact AND having been involved as a Judge, Co-conspirator and Defendant in **The Kaul Cases** since 2021 I have come to know the truth of the crimes of **The Kaul Cases** Defendants.

**79.** I admit I know that having been involved as a Judge, Co-conspirator and Defendant in **The Kaul Cases** since 2021 **The Kaul Cases** Defendants have come to know the truth of each other's crimes, including mine.

**80.** I admit I know that each Defendant played a particular role in the 'Kaul Elimination Conspiracy'.

**81.** I admit I know that the two fundamental elements of the scheme pertained to those who purchased state power and those who sold and exercised it.

**82.** I admit I know that Defendants Allstate/Heary purchased state power from Defendant Christie through bribery.

**83.** I admit I know Defendant Christie abused his power to cause the illegal revocation of Plaintiff Kaul's license and an ongoing deprivation of his life/liberty/property/reputation and violation of his human/civil/constitutional rights.

**84.** I admit I know that Defendants Allstate/Heary purchased state power from Defendant Solomon through bribery.

**85.** I admit I know Defendant Solomon abused his power to cause the illegal revocation of Plaintiff Kaul's license and an ongoing deprivation of his life/liberty/property/reputation and violation of his human/civil/constitutional rights.

**86.** I admit I know that Defendant Allstate purchased regulatory power from Defendant FSMB through bribery.

**87.** I admit I know Defendant FSMB abused its power to cause an illegal obstruction of Plaintiff Kaul's efforts to have his illegal revoked NJ license reinstated and or obtain a license in another state.

**88.** I admit I know Defendant FSMB abused its power to cause an ongoing deprivation of Plaintiff Kaul's life/liberty/property/reputation and violation of his human/civil/constitutional rights.

**89.** I admit I know that Defendant Allstate purchased bankruptcy trustee power from Defendant Stolz through bribery.

**90.** I admit I know that Defendant Stolz abused his power in failing to file claims and or collect the over $52 million dollars owed to Plaintiff Kaul's estate/eighty-three creditors of this estate by Defendant Allstate and other insurance companies.

**91.** I admit I know the truth of the factual foundation of all  **The Kaul Cases**, including K11-7 and K11-20.

## The Crime Of The September 12, 2022 'Injunction' in K11-7 — August 19, 2021 To September 12, 2022

**92.** I admit that on August 19, 2021, K11-7 was filed in the United States District Court for the Southern District of New York.

**93.** I admit that the case was not placed into the court's random judicial assignment system.

**94.** I admit that the case was improperly assigned to me because I had informed the Clerk's office to inform me of any cases that involved publicly traded corporations.

**95.** I admit that upon being informed of the case filing, and reviewing the complaint, I did come to know that in K1 Plaintiff Kaul had caused the May 22, 2019 disqualification of the district judge in the District of New Jersey for having received bribes.

**96.** I admit that I knew/know that the district judge in K1 is the brother-in-law of the politician who sponsored me to the federal bench.

**97.** I admit that I knew these facts presented a conflict of interest, but did nonetheless have the case assigned to me.

**98.** I admit that I instructed the court not to assign a magistrate judge to the case.

**99.** I admit that my instruction to not have an independent magistrate judge assigned pertained to my intent to corruptly adjudicate the case.

**100.** I admit that upon adopting judicial control of the case, I recognized that Plaintiff Kaul was cognizant and highly attuned to the defendants schemes of judicial corruption.

**101.** I admit that recognizing Plaintiff Kaul's acute awareness of this issue, it was imperative for me to administer the case in a manner that attempted to deceive Plaintiff Kaul into believing I was impartially administering the case.

**102.** I admit that a principal purpose of deceiving Plaintiff Kaul into believing I was impartially administering the case and that it would proceed into discovery, pertained to the belief of the defendants and myself that if Plaintiff Kaul thought K11-7 would move into discovery, then he would stop filing cases in other districts and would dismiss any pending cases.

**103.** I admit that I and the defendants schemed that once Plaintiff Kaul, believing that K11-17 would advance into discovery, had dismissed any pending cases and not filed any new cases, I would dismiss K11-7 with prejudice and enter a nationwide 'injunction'.

**104.** I admit that my receipt of the bribes from the K11-7 defendants was transferred in partial payments from the commencement of the scheme to the point at which Plaintiff Kaul's right to appeal had expired.

**105.** I admit that to attempt to conceal the bribes, they were transferred through off-shore institutions and through other schemes involving the dispensation of shares in publicly traded corporations.

**106.** I admit that in the perpetration of the bribery related quid pro quo scheme, I utilized my prior experience as counsel to corrupt politicians and corporations to implement schemes to attempt to conceal the bribes.

**107.** I admit that both I and the defendants were convinced that my deceitful administration and adjudication of K11-7 would cause an effective elimination of Plaintiff Kaul by forever precluding his ability/rights to secure justice for the crimes committed against his life/liberty/property/reputation.

**108.** I admit that I and the defendants did believe that such an effective elimination would cause Plaintiff Kaul to leave the United States and or commit suicide.

**109.** I admit that I and the defendants, despite knowing that Plaintiff Kaul had two (2) young children, did not care that our actions could cause his death.

**110.** I admit that the only concern I and the defendants possessed was that of continuing to profit from our crimes.

**111.** I admit that the scheme was of a 'bait and switch' nature.

**112.** I admit that in the perpetration of the scheme I used the docket of the United States District Court to publish knowingly fraudulent orders purposed to deceive Plaintiff Kaul into believing I would advance the case into discovery.

**113.** I admit that from the commencement and throughout the perpetration of the scheme there were extensive and detailed communications between myself and agents acting on my behalf and the defendants and agents acting on their behalf.

**114.** I admit that these communications involved the 'who/what/where/when/how/why' specifications of the quid pro quo scheme in which in return for the bribes I would dismiss K11-7 with prejudice and enter a nationwide 'injunction'.

**115.** I admit I knew these communications were illegal and in furtherance of a knowingly illegal scheme.

**116.** I admit that these communications were conducted in a knowingly illegal manner across the US wires.

**117.** I admit that I and the defendants knew/know that the use of the US wires constitutes the felony of wire fraud.

**118.** I admit I know that these communications were also conducted in face-to-face meetings in my chambers in the S.D.N.Y.

**119.** I admit I knew/know that the use of my chambers to further a knowingly illegal scheme through face-to-face meetings was/is illegal.

**120.** I admit that these 'secret' meetings in my chambers were conducted after my court staff had departed the building.

**121.** I admit that some of the communications occurred between myself and agents acting on my behalf and the defendants and agents acting on their behalf in places outside of the court building.

**122.** I admit that in these non-court meetings the arrival and departure at the meeting location of the persons involved was staggered, in order to avoid any person observing the gathering of high-profile lawyers and an equally high-profile federal judge.

**123.** I admit that despite knowing of the illegality of the communications, of their conduction within my chambers within the S.D.N.Y. and of their furtherance of knowingly illegal bribery related scheme, I did nonetheless commit these crimes in a knowingly illegal manner.

**124.** I admit that my willful and knowing perpetration of these crimes while in possession of the power of a federal judge does constitute a high crime against not just Plaintiff Kaul and the United States but against the Constitution of the United States.

**125.** I admit that during the digital and face-to-face communications, the timing of my orders of dismissal with prejudice and injunction was discussed.

**126.** I admit that I and the defendants agreed that the orders would be entered once Plaintiff Kaul had dismissed all pending cases and there were no remaining cases within the United States District Court through which he could prosecute **The Kaul Cases** Defendants.

**127.** I admit that during the communications I and the defendants agreed that the September 12, 2022 opinion/order/injunction would be co-drafted.

**128.** I admit that during the communications I and the defendants agreed that the September 12, 2022 opinion/order/injunction would contain no analysis of any of Plaintiff Kaul's

arguments and or refutation and distinguishment of the arguments/cases cited by the K11-7 Defendants.

**129.** I admit that during the communications I and the defendants agreed that the September 12, 2022 opinion/order/injunction would encourage Plaintiff Kaul to appeal the opinion/order/injunction in order to attempt to further preclude him from filing cases in other districts.

**130.** I admit that during the communications I and the defendants agreed that we knew any appeal would be denied, because certain judges on the appeal court had been sponsored by the same politician who had sponsored me.

**131.** I admit that during the communications I and the defendants agreed that the appeal would be denied because certain judges on the appeal court continued to participate in quid pro quo schemes with the insurance and banking defendants in K11-7.

**132.** I admit that during the communications I and the defendants agreed that if the opinion/order/injunction were drafted in as defamatory a manner as possible, it would demoralize Plaintiff Kaul to the point where he would discontinue his efforts to hold **The Kaul Cases** Defendants liable for their crimes/violations/injuries.

**133.** I admit that I and the defendants agreed that if the opinion/order/injunction were drafted in as defamatory a manner as possible, it would, if Plaintiff Kaul did not appeal and filed new cases, cause other judges to dismiss these cases.

**134.** I admit that despite knowing the truth of the factual foundation of K11-7, I did dismiss the case with prejudice and enter a nationwide injunction on September 12, 2022

**135.** I admit I know that the dismissal and nationwide injunction were the product of an illegal bribery related quid pro quo scheme.

**136**. I admit that on September 14, 2022, Plaintiff Kaul submitted a notice to the S.D.N.Y. that was addressed to me and in which he requested a list of my financial holdings, my Forms AO10 and the substance of all ex parte communications with the K11-7 Defendants.

**137.** I admit that since September 14, 2022 I have failed to disclose to the court, to the docket or to Plaintiff Kaul any of my financial holdings, ex parte communications and or any form of bribe, be it tangible/intangible, that was received through any means by me, or any party related to me in the third-degree.

**138.** I admit that my issuance on September 12, 2022 of a knowingly fraudulent document, that of the injunction, did become illegally incorporated into the fabric of American jurisprudence and the court records of the United States District Court.

**139.** I admit that the incorporation of a knowingly fraudulent document issued by a judicial officer, into the court records of the United States District Court constitutes a <u>treasonous</u> crime against the United States.

## The Motion For Disqualification + K11-14 – October 6, 2022 To August 23, 2023

**140**. I admit that on October 6, 2022, Plaintiff Kaul filed a motion for my disqualification.

**141**. I admit that the motion was based partly on my commission of the crimes of bribery, conspiracy, perpetrating quid pro quo schemes, wire fraud, and public corruption.

**142.** I admit that the motion was based partly on my collusion and conspiracy in corruptly using the authority of the United States District Court to attempt to conceal **The Kaul Cases** Defendants crimes of mail fraud/wire fraud/bribery/obstruction of justice/kickbacks/perjury/evidential falsification/witness tampering/kidnapping/false indictment/false arrest/false imprisonment/attempted killing.

**143.** I admit that my failure to timely address Plaintiff Kaul's October 6, 2022 motion for disqualification and deny the within facts did cause the admission of those facts.

**144.** I admit that the motion was based in part on my failure to analyze/refute/contest any of Plaintiff Kaul's one hundred and seventy-three (173) arguments/sub-arguments submitted in K11-7.

**145.** I admit that the motion was based in part on my knowingly fraudulent reliance on law, the invalidity of which was shown by Plaintiff Kaul to definitively not support the entry of an injunction.

**146.** I admit that the motion was based on my bribery related derogation of the relevant law and my threat to hold Plaintiff Kaul in contempt if he violated my knowingly illegal order/injunction.

**147.** I admit I knew/know that the order/injunction had no basis in fact or law, but was simply the product of judicial corruption, for which I threatened to hold Plaintiff Kaul in contempt if he violated.

**148.** I admit that my use of the US wires to enter this knowingly fraudulent order/injunction onto the federal docket constitutes the offense of wire fraud.

**149.** I admit that within the motion for disqualification and at D.E. 171 Page 12 of 39, Plaintiff Kaul did state: **"Democracy and the peaceful order of society cease to exist when the judiciary is morally bent, perverted from fact and willfully blind to the law. When partiality, personal bias and conflicts of interest pollute the administration of justice, the public loses confidence in the system of justice, and lawlessness displaces lawfulness."**

18

**150.** I admit I know of the December 4, 2024 killing of the CEO of the healthcare insurance company, United Health Care by Luigi Mangeone.

**151.** I admit that it was an unlawful act, but one born out of the lethal lawlessness of the corporate health insurance industry and the failure of the government to hold it accountable.

**152.** I admit that the killing sparked a nationwide public outrage and calls to hold the insurance industry legally accountable.

**153.** I admit that I know the reason for the killing of the CEO pertained to his directives to his corporation to deny life-saving care to premium paying patients.

**154.** I admit that I was a corporate lawyer, and worked for corporations with investments in highly profitable healthcare insurance corporations.

**155.** I admit that I know K11-7 Defendants Allstate Insurance Company and Geico profit from the sale of auto accident-related healthcare insurance policies.

**156.** I admit I know that these policies are purposed to pay for the provision of care to patients injured in car accidents.

**157.** I admit I know that in K11-7 and throughout **The Kaul Cases** Plaintiff Kaul has claimed that Defendants Allstate/Geico/Blue Cross Blue Shield (K11-22) conduct the same care denying **"pattern of racketeering"** as does United Healthcare.

**158.** I admit that the claims regarding denial of care are located at - D.E. 14 Para. 106 Page 27 of 432 – D.E. 14 Para. 132 Page 34 of 432.

**159.** I admit I know that in the K11-7 Complaint (D.E. 14 Para. 106 Page 27 of 432) Plaintiff Kaul states with regards to Defendants Allstate/Geico: " ... **whose shared economic mission is the maximization of corporate profit and share price, through the exploitation of the American public (denial of care) and medical profession (license suspension/revocation/incarceration) ..."**

**160.** I admit that despite knowing these facts of patient care denial, I dismissed Plaintiff Kaul's claims Defendants Allstate Insurance Company and Geico because I had willingly and knowingly accepted bribes.

**161.** I admit that my bribe related dismissal of K11-7 did aid and abet the perpetuation of the insurance industry's 'deny ... delay ... defend' scheme of the denial of life-saving care to the American public.

**162.** I admit that as a lawyer and federal judge I understand RICO's vicarious liability doctrine, wherein the liability of the crimes/offenses/violations/injuries caused by any of the conspiracy's perpetrators and or co-conspirators becomes the liability of all perpetrators/co-conspirators.

**163.** I admit that I am as responsible as Defendants Allstate/Geico for the immense harm caused to those members of the American public whose life-saving and life-altering care was denied by these for-profit corporations.

**164.** I admit that I eventually adjudicated the motion for disqualification on August 14, 2023.

**165.** I admit that I denied the motion for disqualification in an unsubstantiated order that failed to address/contest/refute/analyze the cited and controlling law.

**166.** I admit that I denied the motion for disqualification in an unsubstantiated order in which I failed to deny any of the facts of amongst other things, bribery/public corruption/wire fraud/conspiracy.

**167.** I admit that I denied the motion for disqualification in an unsubstantiated order, in which I failed to deny the fact that I engaged in a bribery related quid pro quo scheme with the K11-7 Defendants, in which in return for the bribes I dismissed K11-7 with prejudice and entered a nationwide injunction against Plaintiff Kaul.

**168.** I admit that the reason for the delay in denying the disqualification motion pertained to the fact that the district judge in K11-14 believed my nationwide injunction was indeed the product of bribery, because I had failed to deny the facts asserted in Plaintiff Kaul's September 14, 2022 notice (D.E. 170) and the October 6, 2022 motion for disqualification (D.E. 171).

**169.** I admit that the district judge in K11-14 indicated that if I did not deny the motion for disqualification, she would not dismiss K11-14 based on my September 12, 2022 purported injunction.

**170.** I admit that the district judge in K11-14 indicated that if she dismissed K11-14 on an injunction that was the product of crime, she would become liable for the crime.

**171.** I admit that the district judge in K11-14 indicated that the motion for disqualification had to be denied before she would issue her denial of K11-14 based on the K11-7 September 12, 2022 purported injunction.

**172.** I admit that the K11-7 Defendants who were now the K11-14 Defendants employed threats and persuasion to have me deny the motion for disqualification, in order that the district judge in K11-14 would dismiss the case.

**173.** I admit that I recognized that if I did not comply with the demands of the K11-14 district judge and the K11-7/K11-14 Defendants, my criminal acts of, amongst other things,

20

bribery/public corruption and wire fraud would be exposed and subject me to impeachment and criminal prosecution.

**174.** I admit that as a consequence of these demands and threats, I did, on August 14, 2023 deny the motion for disqualification without denying any of the within facts of, amongst other things, bribery/public corruption/wire fraud.

**175.** I admit I knew my actions did constitute the commission of crime, in that I aided and abetted the Defendants conversion of the S.D.N.Y. into a **"racketeering enterprise"** through which they and I perpetrated a knowingly illegal **"pattern of racketeering"** a purpose of which was to attempt to prevent the exposure of my crimes in other district courts over which I had no control.

**176.** I admit I know that after having agreed to the demands and threats of the K11-7/K11-14 Defendants and the K11-14 district judge, K11-14 was dismissed with prejudice on August 23, 2023 based on the K11-7 September 12, 2022 injunction.

**177.** I admit that I experienced a sense of relief at having had another district court appear to legitimize my September 12, 2022 injunction.

**178.** I admit that even though I experienced a sense of relief at a public display of such apparent legitimization, I knew the district judge in K11-14 recognized the injunction was a product of a quid pro quo scheme of bribery.

**179.** I admit I believed that the dismissal of K11-14 would convince Plaintiff Kaul to cease his campaign of litigation.

**180.** I admit the incorrectness of my belief is a direct reflection of Plaintiff Kaul's recognition of the seriousness of my crimes.

**181.** I admit I know that Plaintiff Kaul's recognition of the seriousness of my crimes is based on his knowledge of my recognition of the seriousness of my crimes.

## K11-10 And The Knowingly Illegal Issuance Of Threats To Hold Plaintiff Kaul In Contempt If He Failed To Dismiss K11-17 And K11-20 – March 9, 2023 To October 2, 2024

**182.** I admit I know that Plaintiff Kaul did not appeal the September 12, 2022 order/injunction.

**183.** I admit I know that on September 14, 2022, at D.E. 170, Plaintiff Kaul filed a notice with the Clerk of the Court for the S.D.N.Y. that requested I produce and publish to the court docket my financial holdings and the contents of all ex parte communications with the K11-17 Defendants.

**184.** I admit that since September 14, 2022 I have failed to disclose to the court, to the docket or to Plaintiff Kaul any of my financial holdings, ex parte communications and or any form of bribe, be it tangible/intangible, that was received through any means by me, or any party related to me in the third-degree.

**185.** I admit that I have failed and continue to fail to disclose the requested information because I am guilty of having participated in a bribery related quid pro quo scheme with the K11-7 Defendants.

**186.** I admit I know that on March 9, 2023, Plaintiff Kaul filed K11-10 in the S.D.N.Y.

**187.** I admit I came to know the case had been randomly assigned to another district judge, who had been recently appointed to the federal bench.

**188.** I admit I know that the staff in the court's filing office came to know in or around late September-October 2022 of the bribery related quid pro quo scheme in which I had engaged.

**189.** I admit I know that as a consequence of the staff coming to know of the scheme, they did not inform me of the filing of K11-10.

**190.** I admit that sometime after the filing of K11-10 the K11-10 Defendants engaged in ex parte communications with me during which they informed me that Plaintiff Kaul had filed K11-10.

**191.** I admit that upon becoming aware of K11-10, I ensured the district judge became aware of the order/injunction I had entered in K11-7 on September 12, 2022.

**192.** I admit I know that as a consequence of my knowingly illegal September 12, 2022 order/injunction, the district judge in K11-10 did on May 10, 2023 dismiss K11-10 with prejudice.

**193.** I admit I know that on November 20, 2023, Plaintiff Kaul filed K11-17 in the U.S.D.C. for the E.D.N.C.

**194.** I admit that in late November 2023 the K11-17 Defendants engaged in ex parte communications with me during which they informed me that Plaintiff Kaul had filed K11-17.

**195.** I admit that in becoming aware of K11-17, I came to know that Plaintiff Kaul had informed the district judge of the injunction by submitting a copy within Exhibit 14 and referencing the injunction within the Complaint.

**196.** I admit that in coming to know that the district judge had admitted the case with full knowledge of the injunction, I decided to take no action.

**197.** I admit that an element of me deciding to take no action pertained to the fact that no discovery order had been entered.

**198.** I admit that the lack of a discovery order would prevent Plaintiff Kaul from serving discovery upon me and exposing my corrupt actions surrounding the issuance of the September 12, 2022 injunction.

**199.** I admit that in a period from November 20, 2023, the K11-17 Defendants sent me an ex parte letter requesting I issue an order compelling Plaintiff Kaul to dismiss K11-17.

**200.** I admit this letter was not published to the docket of the S.D.N.Y.

**201.** I admit no other judge nor court employee in the S.D.N.Y. was made aware of this letter.

**202.** I admit the reason this letter was kept concealed from other judges and staff was to prevent any investigation into the corrupt circumstances surrounding my bribery related issuance of the injunction.

**203.** I admit I took no action on the letter as no discovery order had been entered in K11-17.

**204.** I admit I know that on March 13, 2023, a discovery order was entered in K11-17.

**205.** I admit that on March 13, 2023 the K11-17 Defendants informed me of the issuance of the discovery order in K11-17.

**206**. I admit that the issuance of the discovery order in K11-17 convinced me that Plaintiff Kaul would use the tools of discovery to expose the facts of my bribery related quid pro quo scheme with the K11-7 Defendants.

**207.** I admit that the issuance of the discovery order in K11-17 convinced me that Plaintiff Kaul would use the tools of discovery to expose the identities of all persons involved in the bribery related quid pro quo scheme with the K11-7 Defendants.

**208.** I admit that both I and the K11-17 Defendants in recognizing the risk of such exposure, did agree that I should issue an order to Plaintiff Kaul threatening to hold him in contempt if he did not dismiss K11-17.

**209.** I admit that on March 15, 2024 I issued an order to Plaintiff Kaul threatening to hold him in contempt if he did not dismiss K11-17, and had this order published to the docket of the S.D.N.Y.

**210.** I admit I know that the issuance of this order was illegal and was the product of the crime of the bribery related quid pro quo scheme that caused the September 12, 2022 issuance of the injunction.

**211.** I admit that despite knowing the issuance of the March 15, 2024 was illegal, I did nonetheless issue the order in the belief that it would prevent Plaintiff Kaul from using discovery to expose the facts of my crimes and of those associated with the commission of the crimes.

**212.** I admit I know that having had the knowingly illegal order published to the S.D.N.Y. docket, it was downloaded by the K11-27 Defendants.

**213.** I admit I know that having downloaded the March 15, 2024 order threatening Plaintiff Kaul with contempt if he did not dismiss K11-17, the K11-17 Defendants did on March 18, 2024 publish the order to the docket of the E.D.N.C. (D.E. 72).

**214.** I admit that the order required Plaintiff Kaul to dismiss K11-17 by March 29, 2024 or be held in contempt.

**215.** I admit I know the March 18, 2024 filing of the order on the docket of the E.D.N.C. was immediately brought to the attention of the district judge.

**216.** I admit I believed that Plaintiff Kaul would dismiss K11-17, having experienced the dismissal of K11-14 based on the K11-7 injunction.

**217.** I admit I was wrong.

**218.** I admit that on March 25, 2024, Plaintiff Kaul filed suit (K11-18) against me in the E.D.N.C.

**219.** I admit I know the case was ultimately assigned to the Chief Judge who was already adjudicating K11-17.

24

**220.** I admit I did not deny any of the allegations/facts in K11-18.

**221.** I admit I know that my non-denial of the facts did, pursuant to Rule 8(b)(6) cause them to become admitted for all purposes.

**222.** I admit I know that K11-18 was dismissed with prejudice on April 8, 2024.

**223.** I admit I know that Plaintiff Kaul filed a NOTICE OF APPEAL on May 9, 2024 in the U.S.C.A. for the Fourth Circuit.

**224.** I admit I know the U.S.C.A., for the Fourth Circuit issued an 'INFOERMAL BRIEFING ORDER' on May 9, 2024.

**225.** I admit I know that on May 15, 2024, Plaintiff Kaul filed a 'PETITIONER REQUEST PURSUANT TO FEDERAL RULE OF EVIDENCE 201, FOR THE COURT TO TAKE JUDICIAL NOTICE OF FACTS ADMITTED IN PROCEEDINGS WITH A DIRECT CONNECTION TO THE ISSUES ON APPEAL'.

**226.** I admit I know that the basis for the admitted facts pertained to, amongst other things Rule **"8(b)(6) of the F.R.C.P."** (U.S.C.A.4 Appeal: 24-1417 Doc:4-1)

**227.** I admit I know that the facts deemed to be admitted by the U.S.C.A. for the Fourth Circuit were all the facts from all of **The Kaul Cases** in which none of the Defendants had denied any of the facts.

**228.** I admit I know that the facts deemed to be admitted by the U.S.C.A. for the Fourth Circuit were all the facts from all of **The Kaul Cases** in which the non-denial of all of the facts did, pursuant to Rule 8(b)(6) cause the facts to become admitted for all purposes.

**229.** I admit I know that Plaintiff Kaul's May 15, 2024 submission included a copy of every Complaint from all of **The Kaul Cases**, and that the submission was three hundred and three (303) pages.

**230.** I admit I did not file any objection to Plaintiff Kaul's May 15, 2024 submission as to admitted facts pursuant to Rule 8(b)(6).

**231.** I admit the law deems my non-objection as an admission of the procedural/substantive substance of the May 15, 2024 submission.

**232.** I admit I know that on May 29, 2024, Plaintiff Kaul filed his 'INFORMAL OPENING BRIEF' (U.S.C.A.4 Appeal: 24-1417 Doc:9-1).

**233.** I admit I know that within the 'INFORMAL OPENING BRIEF' Plaintiff Kaul raised facts related to my perpetration of a bribery related quid pro quo scheme in K11-7.

**234.** I admit I have read the 'INFORMAL OPENING BRIEF'

**235**. I admit that one of the statements, of which my non-denial did cause admittance, is: **"Respondent [Defendant Oetken] continued to fail to provide any evidence/fact that he had not participated in a quid pro quo bribery scheme with Defendants, and in fact did not even submit or have submitted a statement/affidavit that he had not used his bench in the S.D.N.Y. to perpetrate a bribery based "pattern of racketeering" in K11-7 or any other cases in which he had been involved."**

**236.** I admit the truth of this statement.

**237.** I admit I filed no response to Plaintiff Kaul's 'INFORMAL OPENING BRIEF' because the truth of the facts within K11-18 had been proven and admitted consequent to my non-denial of the facts, the non-denial of which did, pursuant to Rule 8(b)(6) cause them to become admitted for all purposes.

**238.** I admit I did not deny the facts in K11-18, as I have not denied them in K11-23 because I am guilty of the charges levied in both cases.

**239**. I admit I had every opportunity to deny the facts in K11-18, but did not.

**240.** I admit I knew/know that in willfully failing to deny the facts in K11-18, I did admit the facts for all purposes.

**241**. I admit I know that in K11-17 on June 14, 2024, the district judge who dismissed K11-18 did, after having entered an order of discovery on March 13, 2024 in full knowledge of my September 12, 2022 injunction in K11-7, did dismiss K11-17 based on the injunction.

**242.** I admit that the district judge in K11-17 was harassed and intimidated into dismissing a case in which he, in his independent judicial authority/judgment had admitted on November 20, 2023 and entered an order of discovery on March 13, 2024 in full knowledge of the injunction.

**243.** I admit that when the K11-17 Defendants informed me of the March 13, 2024 discovery order in K11-17, I recognized the immense risk of Plaintiff Kaul exposing my crimes not just in K11-7, but those I have committed since my appointment to the federal bench in 2011.

**244.** I admit that if discovery proceeded in K11-17, Plaintiff Kaul would expose my long-standing bribery related criminal activities.

**245.** I admit I know that such an exposure would cause my removal from the federal bench and subject me to criminal proceedings.

**246.** I admit I know that in having K11-14 and K11-17 dismissed I did continue to perpetuate an almost twenty (20) year-long conspiracy against Plaintiff Kaul and a twelve (12) year-long injury to his life/liberty/property/reputation and violation of his human/civil/constitutional rights.

**247.** I admit I knew/know that my perpetuation of this conspiracy and rights violations were purposed to cause the elimination of Plaintiff Kaul.

**248.** I admit that my intention in seeking to cause the elimination of Plaintiff Kaul pertained to my fear that his continued prosecution of **The Kaul Cases** would expose my crimes and those of **The Kaul Cases** Defendants.

**249.** I admit that as Plaintiff Kaul proceeded to file K11-14 and K11-17, **The Kaul Cases** Defendants became increasingly agitated and aggressive in their threats to expose me if I did not follow their orders and have Plaintiff Kaul held in contempt and jailed.

**250.** I admit that with these threats I became fearful for my career and life.

**251.** I admit that on or about August 26, 2024 I became aware that Plaintiff Kaul had filed K11-20 in the United States District Court for the Southern District of Texas.

**252.** I admit I know that on August 30, 2024, the Court entered an 'ORDER FOR CONFERENCE AND DISCLOSURE OF INTERESTED PARTIES' (D.E. 4).

**253.** I admit that on September 16, 2024 the K11-20 Defendant Federation State Medical Boards sent me a letter requesting I order Plaintiff Kaul to dismiss K11-20 under threat of contempt of court (K11-7: D.E. 174).

**254.** I admit that in K11-7 on September 13, 2022 the Clerk of the Court closed the case.

**255.** I admit that no order was ever issued by the Clerk of the Court that re-opened the case.

**256.** I admit that in the absence of any order from the Clerk of the Court re-opening the case, the case has remained closed since September 13, 2022.

**257.** I admit that the continued closure of the case since September 13, 2022 does render all filings in the closed case null and void for all intents and purposes.

**258.** I admit that in recognizing the fact that the case was closed and in not wanting to again expose myself to a lawsuit as Plaintiff Kaul had filed on March 25, 2024 in K11-17 and which was now before the U.S.C.A. for the Fourth Circuit, I hesitated in a manner I had not in K11-17 in deciding to threaten Plaintiff Kaul with contempt if he did not dismiss K11-20.

**259.** I admit that my degree of hesitation and fear had become compounded by the risk of having my crimes exposed by the co-conspirator K11-7/K11-20 Defendants and or the U.S.C.A. for the Fourth Circuit.

**260.** I admit I found myself 'backed into a corner' in which I had no option but to obey the order of the K11-20 Defendants to issue an order threatening Plaintiff Kaul with contempt if he did not dismiss K11-20.

**261.** I admit that if Plaintiff Kaul pursued discovery in K11-20, he would fully expose my crimes and those of persons who aided and abetted the crimes.

**262.** I admit that on October 2, 2024 under immense duress I issued an order that threatened Plaintiff Kaul with contempt if he did not dismiss K11-20 by October 16, 2024.

**263.** I admit I was convinced Plaintiff Kaul would dismiss K11-20, and that my crimes and those of my co-conspirators would be concealed.

**264.** I admit that on October 9, 2024, Plaintiff Kaul filed K11-23, in which I was and am charged of, amongst other things, the crimes of bribery/public corruption and the conversion of my court at the S.D.N.Y. into a **"racketeering enterprise".**

**265.** I admit I know that on October 9, 2024, in K11-20, the Court issued a 'SCHEDULING ORDER'

**266.** I admit that I was served with a copy of K11-23 on October 16, 2024 at approximately 9:30 am EST in my courtroom at the S.D.N.Y. by a security officer employed by the United States District Court.

DATED: JANUARY 6, 2025

_____
RICHARD ARJUN KAUL, MD

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that a copy of the **FIRST SUBMISSION OF ADMISSIONS OF**

**MATERIAL AND UNDISPUTED FACT PURSUANT TO RULE 8(b)(6) AS TO DEFENDANT JAMES**

**PAUL OETKEN** was emailed to Defendants' counsel on January 6, 2025.

DATED: JANUARY 6, 2025

_____
RICHARD ARJUN KAUL, MD

# APPENDIX B

Kaul/Basch v ICE

21-CV-06992

K11-7

**The Oetken Disqualification**

By: Richard Arjun Kaul, MD
David B. Basch, MD

October 6, 2022

RECEIVED
SDNY PRO SE OFFICE
2022 OCT -6 PM 1: 02

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

RICHARD ARJUN KAUL, MD

Plaintiff

v.

INTERCONTINENTAL EXCHANGE, ET AL

Defendants

Case No. 21-CV-06992

**AFFIDAVIT AND MOTION IN SUPPORT OF APPLICATION FOR JUDICIAL DISQUALIFICATION OF UNITED STATES DISTRICT COURT JUDGE J. PAUL OETKEN PURSUANT TO 28 U.S.C. § 144 AND 28 U.S.C. § 455**

We, the Propria Persona Plaintiffs, Richard Arjun Kaul, MD, and David B. Basch, MD, do hereby swear under oath and penalty of perjury that the facts, reasons, and statements submitted in support of this application are true and accurate to the best of my knowledge.

Dated: October 6, 2022

RICHARD ARJUN KAUL, MD

DAVID B. BASCH, MD

# Contents

Authorities – Page 4

Relevant Facts – Page 5

Legal Argument – Page 12

Preface – Page 12

28 U.S.C. § 455 states: - Page 12

    A. **455(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned** – Page 14

    B. **455(b)(1) He shall also disqualify himself in the following circumstances: Where he has personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding** – Page 18

    C. **28 U.S.C. § 455 (b)(4) He knows that he, individually or as a fiduciary, or his spouse has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding** – Page 20

    D. **28 U.S.C. § 455 (e) Waiver of Disqualification** – Page 21

28 U.S.C. § 144 states: – Page 23

    E. **28 U.S.C. § 144 Whenever a party to a proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding. The affidavit shall state the facts and the reasons for the belief that bias, or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.** – Page 22

    F. **Kaul's application for disqualification is timely** – Page 23

Conclusion + Relief Sought – Page 25

Order – Page 26

# Authorities

**Cases:**

Apple v. Jewish Hosp. & Med. Ctr., 829 F.2d 326, 333 (2d Cir. 1987)
Berger v. United States, 255 U.S. 22 (1921):
Diamondstone v. Macaluso, 148 F.3d 113, 121 (2d Cir. 1998):
Impeachment of G. Thomas Porteus, Jr., Judge of the United States District Court for the
Eastern District of Louisiana, and H.Res. 1031, 111th Cong. 2d Sess (Mar. 11, 2010
Edgar v. K.L., 93 F.3d 256 (7th Cir. 1996):
Hook v McDade, 89 F.3d 350, 355 (7th Cir. 1996):
In re Allied-Signal Inc., 891 F.2d 967, 970 (1st Cir. 1989):
In Cheney v. United States District Court for the District of Columbia, 541 U.S. 913 (2004):
In re Drexel Burnham Lambert Inc., 861 F.2d 1307, 1313 (2d Cir. 1988):
In re Faulkner, 856 F.2d 716, 721 (5th Cir. 1988):
In re Kensington Int'l Ltd., 368 F.3d 289 (3d Cir. 2004)
In re Mason, 916 F.2d 384, 386 (7th Cir. 1990):
In re New Mexico Natural Gas Antitrust Litig., 620 F.2d 794, 796 (10th Cir. 1980):
In re Rodgers, 537 F.2d 1196 (4th Cir. 1976):
In re Sch. Asbestos Litig., 977 F.2d 764, 782 (3d Cir. 1992):
Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 860 n.8 (1988):
Liteky v. United States, 510 U.S. 540, 553 (1994):
Patterson v. Mobile Oil Corp., 335 F.3d 476 (5th Cir. 2003):
Preston v. United States, 923 F.2d 731, 734-35 (9th Cir. 1991):
Republic of Pan. V. Am. Tobacco Co., 217 F.3d 343, 347 (5th Cir. 2000):
Travelers Ins. Co. v. Liljeberg Enters., Inc., 38 F.3d 1404, 1410 (5th Cir. 1994)
United States v Alabama, 828 F.2d 1532 (11th Cir. 1987):
United States v Arena, 180 F.3d 380 (2d Cir. 1999):
United States v. Balistrieri, 779 F.2d 1191, 1202 (7th Cir. 1985):
United States v. Bayless, 201 F.3d 116, 126 (2d Cir. 2000):
United States v. Bobo, 323 F. Supp. 2d 1238 (N.D. Ala. 2004):
United States v DeTemple, 162 F.3d 279, 286 (4th Cir. 1998)
United States v Microsoft, 56 F.3d 1448 (D.C. Cir. 1995):
United States v Murphy, 768 F.2d 1518 (7th Cir. 1985):
United States v. Toohey, 448 F.3d 542 (2d Cir. 2006):

**Statutes:**

28 U.S.C. § 455
28 U.S.C § 144

4

# Relevant Facts

**1.** In September 2021, Kaul had several conversations with one of the nation's largest litigation funders, a corporation based in San Francisco, after K11-7 had been identified as a **"strong and winnable case"** by their algorithm, a piece of software that searches legal databases/court dockets across the country. This highly critical and discerning tool, in conducting an independent and purely objective assessment, did arrive at the aforementioned conclusion. The algorithm's conclusion is at complete odds with the purported opinion of Judge Oetken.

**2.** In 2011 Judge Oetken was appointed to the federal bench upon the recommendation US Senator Charles Schumer (D-NY), a person sued by Kaul on April 4, 2019 (Kaul v Schumer: 19-CV-13477) (K3), for having engaged in quid pro quo schemes with K1/K2 Defendants, in which he conspired with his brother-in-law, U.S.D.J. Kevin McNulty (DNJ) to unlawfully obstruct Kaul's prosecution of K1/K2, by entering knowingly fraudulent opinions and orders. Kaul nullified U.S.D.J. McNulty's February 22, 2019, order/opinion with the submission of 'The McNulty Analysis' on March 2019 (K1: D.E. 313-1), and on May 8, 2019, Kaul moved to disqualify USDJ McNulty (K1: 334) and on May 22, 2019, USDJ became disqualified (K1: D.E. 340).

**3.** Judge Oetken was assigned to K11-7 on August 19, 2021.

**4.** Upon assignment, Judge Oetken became aware that while a corporate lawyer, he had represented numerous members of the banking and insurance industry, many of whom, hold stock in Defendants ICE/Allstate/Geico/TD, and many in whom Judge Oetken currently holds stock, directly or indirectly.

**5.** However, Judge Oetken failed to either recuse himself or bring this matter to the attention of Kaul or the Court. One of the motives for his failure of disclosure/recusal, was to retain his power to dismiss the case, an act he calculated would increase the value of his investment portfolio.

**6.** On September 12, 2022, Judge Oetken entered an opinion/order that he knew did not truthfully reflect the law, the facts or evidence of the case, an opinion/order that he knew was false (D.E. 168). The knowing falsity of Judge Oetken's opinion/order evidence his biased/prejudicial state-of-mind against Kaul.

**7.** Judge Oetken conspired with agents of Senator Charles E. Schumer, to pervert the course of justice and prevent Kaul from presenting evidence to the public of crimes committed by **The Kaul Cases** Defendants, one of whom was Senator Schumer. These acts evidence Judge

Oetken's biased/prejudiced state-of-mind, and the exercise of this state-of-mind in order to pervert the course of justice.

**8.** Judge Oetken's participation in the scheme with Senator Schumer to pervert/obstruct the course of justice, was an act consistent with his bias/prejudicial state-of-mind and appearance of partiality against Kaul.

**9.** Judge Oetken's participation in the scheme, involved him in the commission of following acts, all of which evidence his bias/prejudicial state-of-mind: **(i)** obstruct Kaul's prosecution of the case; **(ii)** deny all of Kaul's motions; **(v)** dismiss with prejudice all of Kaul's claims; **(vi)** threaten to hold Kaul in contempt for asserting his right to due process. A "**reasonable man**" looking at such malfeasance/misconduct might say to himself, "**the judge has been corrupted**".

**10.** Judge Oetken's knowing and willful participation in the scheme to deceive Kaul by orchestrating a charade of due process, evidences his biased/prejudicial state-of-mind. It is this state-of-mind that has caused Judge Oetken to violate his legal oath to uphold the Constitution and remain loyal to the law. Judge Oetken's willful ignorance and derision (**"purported kidnapping"**) D.E. 168 Page 4 of 20) of the crime committed against Kaul, can only emanate from a heart and mind that has been thoroughly corrupted by money. Where is the principle, integrity, or honor, or is it all just about money?

**11.** Judge Oetken's biased/prejudicial state-of-mind and conduct prohibit him from any further involvement in the case, a case in which he knowingly obstructed Kaul's efforts in gathering evidence, in the knowledge that it would permit the defendants and third-party witnesses to delete /destroy/spoil evidence.

**12.** Judge Oetken's biased/prejudicial state-of -mind and conduct are evidenced in the fact that he willingly and knowingly participated in a scheme, in which there existed a corrupt intent to pervert the course of justice, and a scheme in which he did in fact pervert the course of justice, with the instrument of a federal court and its attendant authority.

**13.** Judge Oetken's biased/prejudicial state-of-mind and conduct are evidenced in the fact that he willingly and knowingly used the US wires in furtherance of a scheme that he knew was illegal. A cause + consequence of his bias/prejudice was money. The defendants in their desperation to avoid economic/reputational obliteration, calculated that the legal risk of corrupting a federal judge/US Senator, was outweighed by the risk of losing the case. Their calculation, as with every other calculation they have made, was wrong. Obstruction of justice leads to lengthier jail terms, than does perjury + evidential falsification.

6

**14.** Judge Oetken's biased/prejudicial state-of-mind and conduct are evidenced by the fact that he knew the purpose of the defendants' scheme was to cause him to obstruct Kaul's prosecution of K11-7, by denying his motions, denying him discovery, and dismissing with prejudice his federal-law claims. In essence, denying Kaul access to substantive justice and willfully and knowingly violating his constitutionally protected right to due process.

**15.** Judge Oetken's biased/prejudicial state-of-mind and conduct are evidenced by the fact that he/agents, in collusion and conspiracy with the Defendants/agents, converted the United States District Court for the SDNY into a racketeering enterprise, the purpose of which was to profit from the case and obstruct Kaul's prosecution of the matter. Judge Oetken and the K11-7 Defendants/agents, participated in a series of multiple quid pro quo schemes with the defendants, in which the "**quid**" were bribes paid by defendants to Judge Oetken and the "**quo**" was the perversion/obstruction of the course of justice.

**16.** Judge Oetken's biased/prejudicial state-of-mind and conduct are evidenced by the fact that he knew that by obstructing Kaul's prosecution of K11-7, he would prevent him from disclosing to the public evidence of the crimes committed by **The Kaul Cases** Defendants in administrative/state/bankruptcy/federal courts within the geographic boundaries of the State of New York, _and_ crimes committed on the NYSE/SEC/global equities market _and_ crimes committed within the administrative/judicial branches of the State of New York (2005/6-2022). Judge Oetken's aiding and abetting the Defendants' cover-up' of their crimes is consistent with his bias/prejudice against Kaul, which is partly a product of bribery.

**17.** Judge Oetken's biased/prejudicial state-of-mind and conduct are evidenced by his involvement in this scheme and particularly by his knowledge that one of the scheme's goals, was an attempt to deceive Kaul into thinking that justice was being served. Judge Oetken played a central role in the perpetration of this charade of due process, an abuse and knowingly false use of the authority of the United States District Court for the SDNY.

**18.** Judge Oetken's biased/prejudicial state-of-mind and conduct are evidenced by the fact that he knew the defendants had flagrantly violated Kaul's right to due process within administrative/state/bankruptcy/federal courts within the geographic boundaries of the State of New York, but yet on September 12, 2022, he dismissed K11-7 with prejudice, and threatened to hold Kaul in contempt if he exercised his right, and that of his children's right to life. Judge Oetken attempted to issue Kaul an effective death warrant, burden Kaul's children with the generational consequences of the Defendants crimes and suppress the truth, because he had received bribes. Kaul will employ the full force of domestic/international law to prevent this.

**19.** Based on a "**reasonable man's**" observations of Judge Oetken's lack of "**appearance**" of impartiality, as evidenced in his opinions/orders, Judge Oetken must be disqualified in order to maintain the public's confidence in the judiciary.

**20.** Judge Oetken's bias/prejudice/appearance of partiality against Kaul is found in his September 12, 2022, opinion/order, and other parts of the case file:

**a. Ignoring the evidence**: On September 12, 2022, Judge Oetken issued a twenty (20) page opinion (D.E. 168), in which he devoted several paragraphs to a recitation of knowingly false legal conclusions, that resulted in the issuance of an opinion on December 13, 2013, by K2 defendant and ex-administrative NJ law judge, Jay Howard Solomon, that caused the illegal revocation of Kaul's NJ license. On January 17, 2018, Kaul submitted onto the K1 docket a document entitled 'The Solomon Critique' (K1: D.E. 225). It is the product of Kaul having cross-referenced almost twenty-seven thousand (27,000) lines of legal transcript, with the one hundred and five (105) page opinion of K2 defendant Solomon. Kaul did not come into possession of the entire transcript until September 2017. 'The Solomon Critique' proves with the state's own evidence, that in a period from April 9, 2013, to December 13, 2013, K1/K2 Defendants, Gregory Przybylski, MD, + Andrew Kaufman, MD + Jay Howard Solomon, Esq, **collectively committed two hundred and seventy-eight (278) separate instances of perjury + evidential omissions + misrepresentations + gross mischaracterizations** in the administrative board proceedings that resulted in the illegal revocation of Kaul's license on March 12, 2014. Further, on February 11, 2019, as **Exhibit 18** of Kaul's K1 motion for summary judgment against Defendant Allstate New Jersey Insurance Company, Kaul submitted a document entitled 'The Solomon Critique 2' (K1: D.E. 299-18 Page ID 7201 to D.E. 299-26 Page ID 8170). This document is a focused analysis on the testimony of Defendant Przybylski, the state's 'star expert', upon whose fraudulent testimony Kaul's license was illegally revoked. This document proves that in a period from April 9, 2013, to December 13, 2013, Defendant Przybylski in conjunction with K2 defendants Hafner + Solomon **collectively committed two hundred and twenty-two (222) separate instances of perjury + evidential omissions + falsifications + misrepresentations.** (K1: D.E. 299-18 Page ID 7203). In addition to the submission of this evidence, Kaul submitted further evidence in the form of affidavits and e-mails (K1: D.E. 299 Page ID 7044 to Page ID 7065) that, as detailed in his motion for summary judgment against Defendant Allstate New Jersey Insurance Company (K1: D.E. 299 Page ID 7017 to Page ID 8170), are conclusive of his claims and disprove the defendants' defenses. Contained within this submission was an article entitled, '**How Many Die from Medical Mistakes in US Hospitals?**'. The answer is **440,000 annually**. Also contained within this submission is a document entitled 'The Przybylski Disciplinary Notice' (K1: D.E. 299-22 Page ID 7502 to Page ID 7505), which contains notice of an

official public disciplinary proceeding/finding against Defendant Przybylski by the American Association of Neurological Surgeons (AANS), on April 21, 2017, in which they concluded that Defendant Przybylski had provided knowingly false testimony in a medical malpractice case against another physician. The AANS stated: "**The Board of Directors also concluded that Dr. Przybylski violated Section A.4 by misrepresenting the standard of care when he testified that antibiotic treatment for six weeks after an esophageal tear closure, monitoring ESR and CRP and personal review of esophageal swallow studies are all required during treatment of a pharyngeal tear.**" (K1: D.E.299-22 Page ID 7505). This conclusive/admitted evidence was submitted into K11-7, but there exists no reference, let alone analysis of this evidence in Judge Oetken's opinion. Neither is there cited any factual/legal basis to substantiate these absences.

**b. Ignoring the evidence**: On September 12, 2022, in response to Kaul's dissemination of NOTICES OF PRESERVATION to multiple Third-Party Witnesses, including ex-DNJ Chief Judge, Jose Linares, Judge Oetken hurriedly and in a 'knee-jerk' manner consistent with having been given an order by the defendants, entered an opinion/order (D.E. 168), that is factually and legally flawed, and is further evidence of both his bias/prejudicial state-of-mind and his "**appearance**" of partiality against Kaul. Judge Oetken's opinion, once again, contains a multi-paragraph recitation of knowingly false legal conclusions from the December 13, 2013, one hundred and five (105) page opinion of K2 Defendant Jay Howard Solomon. However, and as irrefutable evidence of his bias/prejudice/appearance of partiality against Kaul, he completely ignores the evidence submitted by Kaul in support of his motion for summary judgment against Defendant Allstate New Jersey Insurance Company (D.E. 5). Specifically, he ignores the evidence of 'The Solomon Critique' (D.E. 5 Page 53 of 131) + 'The Solomon Critique 2' (D.E. 5 page 117 of 131 ), evidence that unequivocally, irrefutably and undeniably prove that the administrative board proceedings (April 9, 2013 to December 13, 2013) were a massive fraud perpetrated by both state and private actors, who, under direction from Defendant Christie, converted the State of New Jersey and its agencies into racketeering enterprises, through which state and private actors conducted multiple patterns of racketeering, through the commission of the predicate acts of mail fraud/wire fraud/bribery/obstruction of justice/kickbacks/perjury. The common purpose of these schemes, as understood and facilitated by the defendants was to illegally revoke Kaul's license, and eradicate the debt of certain defendants, and eliminate the threat of competition that his practice posed. Judge Oetken's complete silence on Kaul's evidence is evidence of his biased/prejudicial/appearance of partiality against Kaul, which demands that he be disqualified from the case, and his orders become subject to vacatur. However, despite this 'mountain' of evidence, Judge Oetken, consistent with his bias/prejudice/appearance or partiality, failed to analyze/reference the evidence submitted by Kaul that proved that the administrative board proceedings were a massive fraud. In fact, Judge Oetken, in attempting to manufacture a foundation for his knowingly false opinion, used the record of the United States District Court to not only ignore the evidence, but to propagate the

falsehood that the ADMISSIONS OF UNDISPUTED FACT admitted in K1 were **"fabricated"** (D.E. 5 Page 17 of 20). Judge Oetken knew and knows that the evidence proves that the K11-7 claims are valid and merit-full, and his characterization of them as **"frivolous"** evidences his bias/prejudice/appearance of partiality against Kaul, and provides further evidence as to why Judge Oetken must be disqualified from the case, and his orders be nullified.

c. **The pattern of judicial misconduct + 'The McNulty Analysis'**: In K1, Kaul filed a document on March 18, 2019, entitled 'The McNulty Analysis' (K1: D.E. 313 Page ID 8384 to Page ID 8448) in response to Judge McNulty's opinions/orders (D.E. 300 + 301 + 303 + 304). The document details the facts of why Judge McNulty was conflicted/biased/prejudiced against Kaul (K1: D.E. 313-1 Page ID 8386 + Page ID 8399 + Page ID 8403 + Page Id 8432 + Page ID 8436 + Page ID 8447). The evidence within this document, almost exactly reflects that admitted to by Judge Oetken, and is evidence that caused the disqualification of Judge McNulty (K1: D.E. 340) on May 22, 2019. Thus, pursuant to sections 455 /144 of the United States Code, Judge Oetken must likewise be disqualified and vacatur implemented. To permit any further involvement in this case by Judge Oetken, would constitute a grave miscarriage of justice, would be contrary to the interests of justice, would be violative of every legal oath to which Judge Oetken has sworn, and would constitute a continuance of the violation of Kaul's constitutionally protected right to due process, a violation that commenced on April 2012 with K2 defendant, NJBME, and is ongoing in September 2022.

**21.** On September 13, 2022, Judge Oetken was served, pursuant to the Courthouse Ethics and Transparency Act, with a demand for amongst other things, his financial holdings, and a list of all ex parte communications between himself/agents and the Defendants/agents regarding any aspect of K11-7 and or future promises of any tangible or non-tangible favors (**Exhibit 1**). As of October 7, 2022, Judge Oetken has failed to comply with his legally mandated judicial duties.

**22.** The non-production, and thus the consequent admittance of evidence of financial conflicts of interest and improper ex parte communications, substantiate not only a finding of bias/impartiality, but a conclusive nullity of the knowingly fraudulent opinion/order of September 12, 2022 (D.E. 168).

**23.** These facts explain with completeness and without any reasonable question, the fraudulent nature and form of the September 12, 2022, opinion/order, for Judge Oetken's opinion, while resonating with a tone of hurried desperation, is replete with errors of logic/fact/law, and fails, intentionally no doubt, to reflect the enormous body of highly incriminating evidence. Judge Oetken fails, as did the Defendants, to address/analyze/refute/contest any of Kaul's approximately one hundred and seventy-three (173) arguments/sub-arguments, the Defendants non-refutation/the Court's non-analysis of

which has caused them to become admitted. One example, of which there are hundreds, is Judge Oetken's knowingly fraudulent finding that corporate Defendant TD's admission of fact in K1 is allegedly **"fabricated"** (D.E. 168 Page 17 of 20). Judge Oetken cites to Defendant TD's equally fraudulent submission in their motion to dismiss/injunctive plea (D.E. 97 at 2-3/14) to further his fraud, while willfully ignoring argument/evidence submitted by Kaul that proves Defendant TD lied, that argument being: **"Counsel for Defendant TD was electronically served with an "ADMISSIONS BY DEFENDANT TD NA OF UNDISPUTED FACTS" on July 7, 2020, and did on July 14, 2020 admit to the facts."** (D.E. 110 Page 12 of 63), and the evidence being the email/attached admissions received by Defendant TD In K1 on July 7, 2020 (D.E. 110 Page 28-31 of 63), which states, amongst other things: **"If, by July Fourteenth Two Thousand and Twenty, you fail to contest the Unrefuted Fact, then these facts will remain admitted, and will be submitted in support of the motions for Summary Judgment."** Further evidencing the willful legal error/bias/partiality of Judge Oetken's is the <u>fact</u> that the judge in K1, the case in which the facts were admitted, did not find that the admissions were fabricated.

**24.** Further evidence of Judge Oetken's illegal participation in schemes of bribery and judicial corruption is found in a comparison of the initial segments of his opinion, with the evidence/facts/arguments within the case file (**<u>Exhibit 2</u>**). The blatant absence of analysis of any of Kaul's arguments/sub-arguments can only be explained/understood in the context of these schemes. If Judge Oetken had not been bribed, his opinion would honestly reflect the record, but it does not.

**25.** Judge Oetken's threat to hold Kaul in contempt of court if he exercises his inalienable right to due process/life/justice, by relying on law that he knows does not and never could support such a violation of human rights, constitutes further evidence of his having converted the court into a **"racketeering enterprise"**. Judge Oetken continues to knowingly violate the Courthouse Ethics and Transparency Act, a violation that places under retroactive scrutiny his entire legal/judicial practice.

# Legal Argument

## Preface

**26.** Democracy and the peaceful order of society, cease to exist when the judiciary is morally bent, perverted from fact and willfully blind to the law. When partiality, personal bias and or conflicts of interest pollute the administration of justice, the public loses confidence in the system of justice, and lawlessness displaces lawfulness. When the public lose faith in their judges, they lose faith in the law. Central to this understanding of societal order is the concept of judicial impartiality, a function of democracy in which a judge has no commercial/political/personal interest in a case, other than to ensure that justice is served with dispassion and a certain disinterestedness. The impartial disinterested judge must not only "**do justice**" but must "**appear**" to do so. The judiciary is rightly held to exacting standards, and sections 455 and 144 of the United States Code, in conjunction with the Code of Conduct for United States Judges are constructed to ensure that any deviations from these standards are rectified in favor of evidence of judicial misconduct. The law recognizes that judges, more than any other sector of society, know the rules, and know how to skirt those rules for self-serving ends, and thus the law demands that judges be their own and most vehement critics. This honest state-of-mind is reflected in the actions of a judge who stands accused of bias/partiality/appearance of partiality. This judge will, without question, step aside, for he has no special interest in the case, and will not want to compromise the public's faith in the system of justice. The dishonest or conflicted judge will fight and or obstruct any credible, evidentially supported application for disqualification, for this judge is interested in the case, is interested in its outcome, but yet knows that his continuance in the case will cause its corruption and diminish the public's faith in the integrity of the judiciary. Dishonest judges undermine the principles of democracy, and if unchecked, they will continue to use their benches and judicial power for self-serving reasons, contrary to the peaceful order of society. When a question arises about a judge's impartiality, the law, and the public demand that the judge remove himself from the proceedings, in order to protect the due process rights of litigants.

**27.** Kaul brings this application on 28 U.S.C. § 455 and 28 U.S.C. § 144, seeking to ensure his right to impartial justice.

## 28 U.S.C. § 455 states:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

12

   (1) Where he has personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

   (2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it.

   (3) Where he has served in governmental employment and in such capacity as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy.

   (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.

   (5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

      (i)   Is a party to the proceeding, or an officer, director, or trustee of a party.

      (ii)   Is acting as a lawyer in the proceeding.

      (iii)   Is known by the judge to have an interest that could substantially affected by the outcome of the proceeding

      (iv)   Is to the judge's knowledge likely to be a material witness in the proceeding.

(c) A judge should inform himself about his personal and fiduciary financial interests, and make reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household

(d) For the purposes of this section the following words or phrases shall have the meaning indicated:

   (1) "proceeding" includes pretrial, trial, appellate review, or other stages of litigation.

   (2) the degree of relationship is calculated according to the civil law system.

   (3) "fiduciary" includes such relationships as executor, administrator, trustee, and guardian.

   (4) "Financial interest" means ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party, except that:

      (i)   Ownership in a mutual or common investment fund that holds securities is not a "financial interest" in such securities unless the judge participates in the management of the fund.

      (ii)   An office in an educational, religious, charitable, fraternal, or civic organization is not a "financial interest" in securities held by the organization.

    (iii)    The proprietary interest of a policyholder in a mutual insurance company, of a depositor in a mutual savings association, or a similar proprietary interest, is a "financial interest" in the organization only if the outcome of the proceeding could substantially affect the value of the interest.

    (iv)    Ownership of government securities is a "financial interest" in the issuer only if the outcome of the proceeding could substantially affect the value of the securities.

(e) No justice, judge, or magistrate judge shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.

(f) Notwithstanding the preceding provisions of this section, if any justice, judge, magistrate judge, or bankruptcy judge to whom a matter has been assigned would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to him or her, that he or she individually or as a fiduciary, or his or her spouse or minor child residing in his or her household, has a financial interest in a party (other than an interest that could be substantially affected by the outcome), disqualification is not required if the justice, judge, magistrate judge, bankruptcy judge, spouse or minor child, as the case may be, divests himself or herself of the interest that provides the grounds for the disqualification.

## A. 455(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned:

**28.** The facts, as asserted above, and as viewed from and through the perspective of a "**reasonable man**" do say, that the impartiality of Judge Oetken "**might reasonably be questioned**". The law in support of this proposition, is as follows:

**a.** Liteky v. United States, 510 U.S. 540, 553 (1994): The exacting standards to which the federal judiciary are held reflect its desire to maintain the public's confidence in its integrity and impartiality. If a judge's impartiality "**might reasonably be questioned**" then it is proper for him to be disqualified. The Liteky Court, in rejecting the petitioner's argument that sought to have the Court interpret the district judge's "**appearance**" of impartiality in the context of the "**extrajudicial source**" doctrine, established that an "**appearance**" of impartiality, without more, was a sufficient basis for disqualification: "**Partiality**" does not refer to all favoritism, but only to such as is, for underline some reason, wrongful or inappropriate. Impartiality is not gullibility. Moreover, even if the pejorative connation of "partiality" were enough to import the

14

"extrajudicial source" doctrine into § 455(a0, the "reasonableness" limitation (recusal is required only if the judge's impartiality "might *reasonably* be questioned") would have the same effect. To demand the sort of "child-like innocence" that elimination of the "extrajudicial source" limitation would require is not reasonable." at 552. The Liteky Court then went on to describe intra-judicial sources of evidence that prove the judge's partiality against a particular party: "**Judicial remarks ... support a bias or partiality challenge ... will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.**" at 555. Judge Oetken's denial of all of Kaul's motions, his slanderous opinion of dismissal and his failure to adhere to his statutory obligation to disclose his financial holdings/ex parte communications, evidence "**such a high degree favoritism or antagonism as to make fair judgment impossible.**" The Liteky standard requires disqualification.

**b.** United States v Bayless, 201 F.3d 116, 126 (2d Cir. 2000): "**We have stated the standard for recusal under § 455(a) as follows: [A] court of appeals must ask the following question: Would a reasonable person, knowing all the facts, conclude that the trial judges' impartiality could reasonably be questioned? Or phrased differently, would an objective, disinterested observer fully informed of the underlying facts, entertain significant doubt that justice would be done absent recusal.**" at 126. If the above stated facts were 'plugged' into the mind of a "**reasonable man**", then he would "**entertain significant doubt that justice would be done absent recusal.**" and thus as a truly "**disinterested**" party, the "**reasonable man**" would demand the disqualification of Judge Oetken, the vacatur of his September 12, 2022 order and would likely state words to the effect that this case is not a "close case".

**c.** United States v DeTemple, 162 F.3d 279, 286 (4th Cir. 1998): It is the combination of the mind of the "**reasonable man**" and the facts that determine a disqualification: "**... a reasonable observer is not a person unduly suspicious or concerned about a trivial risk that a judge may be biased. There is always some risk of bias; to constitute grounds for disqualification, the probability that a judge will decide a case on a basis other than the merits must be more than "trivial." In the Matter of Mason, 916 F.2d 384, 386 (7th Cir. 1990).**" at 287. Judge Oetken has proven that his adjudication of this case is not based on the merits. He, as with all of the defendants, has failed to address/rebut/refute/contest the 'mountain' of evidence that proves Kaul's claims and dismantles the defendants' defenses. This aversion/avoidance of the truth is substantial and quite sinister, is not "**trivial**", and thus Judge Oetken must be disqualified.

**d.** In re Mason, 916 F.2d 384, 386 (7th Cir. 1990): The importance of the objective standard of the mind of the "**reasonable man**" is that a judge cannot judge himself. An honest judge has no interest or motivation to sit in any case, for his sole purpose is to serve justice, and that requires no specific attachment to any case. On the contrary, a dishonest judge will use the power of his bench to serve his own economic/political/personal interests, and is more inclined, not because of concerns as to reputation, to refuse to disqualify himself. The law recognizes these factors, which is why it does not, for a finding of an "**appearance**" of partiality, require proof of "**actual**" partiality: "**Yet drawing all inferences favorable to the honesty and character of the judge whose conduct has been questioned, could collapse the appearance of impropriety standard under § 455(a) into a demand for proof of actual impropriety.**" at 386.

Kaul, however, has submitted fact in support of both the "**appearance**" and "**actual**" standards, and thus the law demands that Judge Oetken be disqualified and vacatur implemented.

**e.** In re Allied-Signal Inc., 891 F.2d 967, 970 (1ˢᵗ Cir. 1989): The "**reasonable man**" in this case, is not permitted under the law to be arbitrary, but is in fact a "**thoughtful**" and "**well-informed**" individual. See Mason 916 F.2d at 386. See also Jordan, 49 F.3d at 156; O'Regan, 246 F.3d at 988. The standard of his consideration is that: **"[W]hen considering disqualification, the district court is not to use the standard of "Cesar's wife," the standard of mere suspicion. That is because the disqualification decision must reflect not only the need to secure public confidence through proceedings that appear impartial, but also the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking."** at 970. The "**reasonable man**", in this case, will ask himself why Judge Oetken denied every motion filed by Kaul. He will ask himself why Judge Oetken did not appear once on the bench in front of Kaul. He will ask himself why Judge Oetken did not disqualify himself upon coming to know that as a lawyer he had represented banking/insurance corporations. He will ask himself why Judge Oetken denied all of Kaul's motions for summary judgment. The "**reasonable man**" would conclude that Judge Oetken is partial/biased/prejudiced against Kaul, that he must be disqualified.

**f.** Diamondstone v. Macaluso, 148 F.3d 113, 121 (2d Cir. 1998): The law requires that the facts upon which a disqualification application is submitted, are ones that a "**reasonable man**" would not consider "**trivial**": The Diamondstone Court held that "**A disinterested observer could not reasonably question Judge Murtha's impartiality based upon his alleged failure to return the plaintiff's greetings**." at 121. There can be no question that failing to return a greeting is indeed trivial, a fact that stands in stark contrast to those asserted above, in which Judge Oetken has proved both his "**appearance**" of partiality against Kaul, and his "**actual**" bias/prejudice. The facts in Diamondstone are the 'polar opposite' of those in this case, the facts of which would cause a "**reasonable man**" to conclude that Judge Oetken must be disqualified.

**g.** In re Drexel Burnham Lambert Inc., 861 F.2d 1307, 1313 (2d Cir. 1988): The judicial disqualification process is a consequence of, and founded on, an analysis of the facts within the record: **"... whether a judge should be disqualified requires a careful examination of those relevant facts and circumstances to determine whether the charges reasonably bring into question a judge's impartiality**." at 1309. The admitted/record facts in this case would prove in the mind of a "**reasonable man**" that Judge Oetken has both the "**appearance**" of impartiality and is "**actually**" biased/prejudiced, and thus must be disqualified.

**h.** In Cheney v. United States District Court for the District of Columbia, 541 U.S. 913 (2004): On April 4, 2019, Kaul filed suit in the United States District Court for the Southern District of New York against Senator Charles Schumer + Allstate Insurance Company + GEICO + TD Bank, NA + Gibbons, PC + Gannett Co., Inc (Kaul v Schumer: 19-CV-3046). Judge Oetken was sponsored to the bench by Senator Schumer, the conflict of interest which thus requires Judge Oetken be disqualified: "[W[hile friendship is a ground for recusal of Justice where the personal fortune

16

or the personal freedom of the friend is at issue, it has traditionally *not* been a ground for recusal where *official action* is at issue, no matter how important the official action was to the ambitions or the reputation of the Government officer." at 916.

i. United States v Microsoft, 56 F.3d 1448 (D.C. Cir. 1995): Judge Oetken has admitted to conducting multiple ex parte communications with the defendants, which would cause the mind a of a "**reasonable man**" to conclude that Judge Oetken is partial against Kaul, otherwise why would he have conducted meetings about the case with other defendants in secrecy: "**The combined effect of the foregoing [ex parte communications] is to cause a reasonable observer to question whether Judge Sporkin "would have difficulty putting his previous views and findings aside**" at 1465. The Court assigned the case to a different judge. Judge Oetken must be disqualified, and his September 12, 2022, order vacated.

The facts, as asserted above, do leave Judge Oetken without any option but to become disqualified. This case is not a close one, and the law, in balancing a judge's "**duty to sit**" versus his or her duty to disqualify, finds that if there reasonably exists, a question of partiality, then the duty to disqualify prevails. The law in support of this proposition, is as follows:

j. Republic of Pan. V. Am. Tobacco Co., 217 F.3d 343, 347 (5th Cir. 2000): The calculation of whether a "**reasonable man**", well informed of the facts and circumstances of the disqualification application, is a calculation based on as objective an analysis of the facts that one would imagine achievable by the mind of the "**reasonable man**": "**In order to determine whether a court's impartiality is reasonably in question, the objective inquiry is whether a well-informed, thoughtful and objective observer would question the court's impartiality.**" Trust Co. v. N.N.P., 104 F.3d 1478, 1491 (5th Cir. 1997) (citing United States v Jordan, 49 F.3d 152, 155-58 (5th Cir. 1995). The review of a recusal order under § 455(a) is "**extremely fact intensive and fact bound,**" thus close recitation of the factual basis for the appellants recusal motion is necessary" at 346. Judge Oetken's admissions of financial conflicts of interest/ex parte communications, his blanket denials of Kaul's motions and requests for discovery, his failure to address Kaul's 'mountain' of conclusive evidence are facts, that if plugged into the mind of a "**reasonable man**" would cause that man to conclude that Judge Oetken is partial against Kaul, is conflicted and must, in the interests of justice, disqualify himself. Although the instant matter is not a close one, as was the case in the Republic Court, the Court made it a point to state that if there is any question as to impartiality, it must be decided in favor of disqualification: "**However, we have previously held that if the question of whether § 455(a) requires disqualification is a close one the balance tips in favor of recusal. In Re: Chevron, 121 F.3d 163 (5th Cir. 1997).**" at 347

Judge Oetken's asserted appearance of partiality mandates disqualification regardless of the fact that Kaul has requested a jury trial. As is evident from his pre-trial involvement, in which he has conducted a blanket policy of denying Kaul discovery, denying Kaul's motions for default judgment, denying Kaul's motion for summary judgment, and if the case were ever to be tried by Judge Oetken, either on remand, post vacatur or the trying of a new case, he would exclude witnesses, testimony and evidence that support Kaul's case. These facts demand

disqualification, regardless of whether K11-7 is tried with/without a jury. The law in support of this proposition is:

**k.** In re Sch. Asbestos Litig., 977 F.2d 764, 782 (3d Cir. 1992): "**Section 455 properly makes no distinction between jury and nonjury trials. The district judge is a jury trial must still make numerous pretrial rulings, including crucial summary judgment rulings, and will doubtless be called on to make numerous rulings on the qualification of witnesses and on evidentiary matters, not to mention post-trial motions.**" at 782. As did occur in the administrative board proceedings (April 9, 2013, to June 28, 2013: Opinion issued: December 13, 2013), and as evidenced in 'The Solomon Critique' (D.E. 5) + 'The Solomon Critique 2' (D.E. 5), so too in these proceedings would there be further acts, constituting obstruction of justice and violations of Kaul's constitutionally protected right to due process. Since April 2012, Kaul has the victim of an almost eleven (11) year campaign of fraud/perjury/obstruction of justice /bribery/kickbacks/extortion. Judge Oetken's disqualification will finally permit the truth to be publicly and properly told, absent judicial obstruction and the defendants ever more desperate defenses. Kaul assures the Defendants that their crimes will receive the same, if not more publicity, than that they so maliciously manufactured around Kaul from 2012 to 2015. The filing on February 22, 2016, of K1 silenced the defendants' 'baying'. When 'small' men come under pressure, it is remarkable how rapidly they retreat into their psychological 'holes'.

### B. 455(b)(1) He shall also disqualify himself in the following circumstances: Where he has personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding:

**29**. The facts as asserted above do prove that Judge Oetken has a "**personal bias and prejudice**" **against Kaul**" and has "**personal knowledge of disputed evidentiary facts concerning the proceeding**", and thus, in conjunction with violations of section 455 (a) and section 144, he must be disqualified. The law in support of this proposition is:

**l.** United States v. Balistrieri, 779 F.2d 1191, 1202 (7th Cir. 1985): Judge Oetken has admitted he has a commercial interest in the outcome of K11-7. K11-7 contains corporate defendants, that have corporate shareholders in which Judge Oetken holds shares. Judge Oetken has failed to file any financial disclosures or conflicts of interest in this matter. Money is funneled from these shareholders via shares to Judge Oetken. The Balistrieri Court held: "**The negative bias or prejudice from which the law of recusal protects a party must be grounded in some personal animus or malice that the judge harbors against him, of a kind that a fair-minded person could not entirely set aside when judging certain persons or causes. See United States v. Conforte, 624 F.2d 869, 881 (9th Cir.). cert. denied, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980). Satisfactory evidence of bias or prejudice must show this element of personal animus or malice. See footnote 9: "of course, if the party claims that the judge is biased because of some personal interest in the case or favoritism to other parties, then animus need not be shown.**"" at 1201. The language of Judge Oetken's September 12, 2022, opinion reverberates with hostility, and certain sections contain language typically used by Defendants

Allstate/Geico, that of poorly constructed 'verbal thuggery' more frequently seen in New Jersey state court briefs. The co-drafting of Judge Oetken's opinion by lawyers for the corporate Defendants, further evidences his conflict of interest.

**m.** Hook v McDade, 89 F.3d 350, 355 (7th Cir. 1996): In answering the question of whether a judge harbors "**personal bias or prejudice**" against a particular party, the applicable standard is that of the mind of a "**reasonable man**", who in possession of all of the relevant facts and circumstances, is in the optimum position to answer the question: "**In determining whether a judge must disqualify himself under 29 U.S.C. § 455(b)(1), "the question is whether a reasonable person would be convinced the judge was biased.**" Lac du Flambeau Indians v. Stop Treaty Abuse-Wis., 991 F.2d 1249, 1255 (7th Cir. 1993) (citing Taylor, 888 F.2d at 1201; Balistrieri, 779 F.2d at 1202). The above stated facts, if thoughtfully and carefully considered by a "**reasonable man**" would cause that individual to conclude that Judge Oetken has a "**personal bias or prejudice**" against Kaul.

n. In re Faulkner, 856 F.2d 716, 721 (5th Cir. 1988): Judge Oetken admitted to having engaged in extensive and improper ex parte communications with defendants' counsel. The 5th Circuit in Faulkner reminded the federal judiciary of the exacting standards to which the United States Supreme Court holds its members: "**Under the Supreme Court's compelling standard, we conclude that Judge Fish must stand down from this case, despite the total absence of any showing of actual bias. Under the facts presented, it is patent that "his partiality might reasonably be questioned" by a reasonable observer. This disqualifies him under section 455(a). Even were this not so, he has, at least through his personal conversations with Mrs. Pick, "personal knowledge of disputed evidentiary facts concerning the proceeding" sufficient to disqualify him, under section 455(b)(1), from presiding further over this case**" at 721. The Falkner standard mandates the disqualification of Judge Oetken and nullification of his September 12, 2022, order.

**o.** United States v Alabama, 828 F.2d 1532 (11th Cir. 1987): The bias created when a judge has aligned his interests with that of the state, its agencies, or actors, was the reason the 11th Circuit disqualified the district judge in United States v Alabama. Judge Oetken, as evident from the above stated facts, was and is aligned with the K11-7 corporate/state actors consequent to his prior legal representation of banking/insurance corporations. The 11th Circuit in Alabama, in arriving at its conclusion for disqualification, considered the fact that the district judge, in his capacity as a "**private lawyer**" had "**involved him in the disputed evidentiary facts of this case. Judge Clemon served as an attorney of record for individual plaintiffs in the school desegregation case ... many of the same institutions of higher learning as appear here.**" at 1545. Judge Oetken, in his private law career, represented many of the corporate shareholders of Defendants ICE/Allstate/Geico/TD, and the law required he disqualify himself at the commencement of the case. He did not, and used the case to illegally enrich himself and render a decision that he believed, albeit mistakenly, would further his career, at the expense of Kaul's life and through the exploitation/abuse of judicial authority.

**p.** Edgar v. K.L., 93 F.3d 256 (7th Cir. 1996): The question of whether off-the-record ex parte communications, constitute "**extrajudicial**" information, and thus "**personal**" knowledge was

answered by the 7th Circuit in the affirmative, and thus provided a basis for judicial disqualification. The Edgar Court reaffirmed the high standard to which the federal judiciary holds its members, by holding that even if only a possibility exists regarding a question of partiality, then the law demands that that question be explored: "**Thus all we have are possibilities. But these possibilities justify a request for emergency relief. See United States v. Balistreri, 779 F.2d 1191, 1204-05 (7th Cir. 1985); Pepsico, Inc. v. McMillen, 764 F.2d 458, 460 (7th Cir. 1985).**" at 258. Judge Oetken has admitted to ex parte communications, and has not placed on the record any official denial of such communications, despite Kaul having raised the issue in 'The McNulty Analysis' (K1: D.E. 313-1 Page ID 8397 Para. 9). These facts are anything other than "**possibilities**", and thus under the Edgar standard, disqualification is mandated.

### C. 28 U.S.C. § 455 (b)(4) He knows that he, individually or as a fiduciary, or his spouse has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.

**30.** The facts (possession of shares in corporate Defendants corporate shareholders) as asserted above, and as viewed from and through the perspective of a "**reasonable man**" do say, that the fiduciary interests of Judge Oetken and his spouse are aligned with those of the corporate defendants and or their representatives, and thus Judge Oetken is conflicted, and that conflict of interest will substantially affect the outcome of the case. The facts as asserted above do also prove that Judge Oetken has violated section (b)(4) of U.S.C. 455, and thus, in conjunction with violations of section 455 (a) + (b)(1) + (b)(2) and section 144, he must be disqualified. The law in support of this proposition is as follows:

**31.** The corollary to § 455(b)(4) in the Code of Conduct for the United States Judges is canon 3C(1)(c).

**q.** In re New Mexico Natural Gas Antitrust Litig., 620 F.2d 794, 796 (10th Cir. 1980): The 10th Circuit considered disqualification necessary if an "**other interest that would be substantially affected by the outcome of the proceeding**" at 795. This holding was consistent with the principle of proximity elements of 'remoteness' and 'contingency', which the 10th Circuit used to reverse the judge's sua ponte disqualification, but in which it stressed the need for disqualification if an "**other interest**" were affected by the outcome of the case. And thus, in accordance with the above facts and the law, Judge Oetken must be disqualified, as the outcome of the case will affect his "**other interests**" i.e., the value of his shares, and his reputation as a corporate friendly judge. The New Mexico standard mandates disqualification.

**r.** Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 860 n.8 (1988): Section (b) of 455 pertains to the existence of an actual bias/prejudice, and this case articulates the connection between the judge's knowledge of his conflict of interest and the remedy of vacatur: "**Moreover, as the Court of Appeals correctly noted, Judge Collins' failure to disqualify himself on March 24, 1982, also constituted a violation of § 455(b)(4) … This separate violation of §**

**455 further compels the conclusion that vacatur was an appropriate remedy; by his silence, Judge Collins deprived respondent of a basis for making a timely motion for a new trial and also deprived it of an issue on direct appeal."** at 867. Judge Oetken's orders/judgments regarding discovery and dismissal of defendants must be vacated. Judge Oetken remained silent regarding his conflicts of interest when he arbitrarily and inexplicably denied Kaul's motion for summary judgment against defendant Allstate New Jersey Insurance Company (D.E. 5). If Judge Oetken were to object to disqualification after having witnessed/participated in a what has turned out to be an almost eleven (11)-year long scheme of obstruction of justice and criminal violations of Kaul's right to due process, it would irrefutably prove Kaul's charges that not only does Judge Oetken have the **"appearance"** of partiality, but that he is actually biased/prejudiced against Kaul, and thus must be disqualified. His failure to disqualify would prove that he is a party who is highly **"interested"** in the outcome of the case, for the reasons and facts identified above. It is of note that since the commencement of the case, Judge Oetken has not placed on the record his conflicts of interest, nor has he disclosed his Forms AO 10. The Court in furtherance of its opinion regarding the remedy of vacatur held:

"**Moreover, providing relief in such cases as this will not produce injustice in other cases; to the contrary, the Court of Appeals' willingness to enforce § 455 may prevent a substantive injustice in some future case by encouraging a judge or litigant to more carefully examine possible grounds for disqualification and to promptly disclose them when discovered. It is therefore appropriate to vacate the judgment unless it can be said that respondent did not make a timely request for relief, or that it would otherwise be unfair to deprive the prevailing party of its judgment.**" at 868.

**32.** Judge Oetken's orders of dismissal, denials of Kaul's motions and requests for discovery must all be vacated, as he knew from the beginning (August 19, 2021) that he was conflicted, that he failed to disclose these conflicts, and thus was legally prohibited from any involvement in the case. The defendants, in light of all of the facts now presented, cannot argue against the disqualification of Judge Oetken and the nullification of his orders as the only available consideration, is that justice be done: **"If we focus on fairness to the particular litigants ... greater risk of unfairness in upholding the judgment in favor of Liljeberg ... "The guiding consideration is that the administration of justice should reasonably appear to be disinterested as well as be so in fact." Public Utilities Comm'n of D.D. v. Pollak, 343 U.S. 451, 466-467 (1952)** at 870. There is no one to blame for this situation except Judge Oetken/the Defendants, whose kickback and bribery schemes have turned Judge Oetken's court into a **"racketeering enterprise".**

### D. 28 U.S.C. § 455 (e) Waiver of Disqualification:

**33.** Kaul has provided no waiver of disqualification, nor could he, because Judge Oetken has not entered onto the record his financial disclosure statement and his conflicts of interest, past or present.

21

**34.** The corollary to § 455(e) in the Code of Conduct for the United States Judges is Canon 3D.

## 28. U.S.C. § 144 states:

E. **28 U.S.C. § 144 Whenever a party to a proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding. The affidavit shall state the facts and the reasons for the belief that bias, or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.**

**35.** The facts of personal bias and prejudice, as asserted in the attached affidavit are specific in time/place/character, are "**substantial and formidable**" and thus mandate that Judge Oetken, "**shall proceed no further in the case**". The affidavit is timely submitted and contains certain statements that are made upon information and belief. The law in support of this section 144 application is:

**S.** Berger v. United States, 255 U.S. 22 (1921): The Court's multiple holdings as to the questions of sufficiency of affidavit and the key question of who adjudicates the application are found at:

*Id* 34 – "**Of course the reasons and facts for the belief the litigant entertains are an essential part of the affidavit and must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment ... The facts and reasons it states are not frivolous or fanciful but substantial and formidable...**"
Kaul's affidavit contains fact that proves the partiality against Kaul, of Judge Oetken's biased/prejudicial state-of-mind.

*Id* 35 – "**And there is no serious detriment to the administration of justice nor inconvenience worthy of mention, for of what concern is it to a judge to preside in a particular case; of what concern to other parties to have him so preside.**"
Kaul's affidavit and the accompanying section 455 motion are based on fact that prove a partiality of Judge Oetken's mind against Kaul, a partiality that is in part a consequence of his commercial interest in the outcome of the case. Judge Oetken is not a disinterested party to the case, nor he in possession of the "**disinterestedness**", that impartiality requires. If Kaul were to win the case, Judge Oetken's economic/professional standing within the legal community would diminish, and if Kaul were to lose the case or have it dismissed, his standing would be enhanced. This is because of the "**politico-legal-economic nexus**" that connects the facts, events and parties involved in the illegal revocation of Kaul's license (April 9, 2013, to March 12, 2014) to the facts, events and parties identified **The Kaul Cases**, in which Judge Oetken's

sponsor and potential appellate sponsor, Senator Schumer, was a Defendant (K3). A victory for Kaul in K11-7 would unquestionably invalidate the illegal revocation and cause those state/private actors central to the scheme to become subject to criminal prosecution by federal authorities. Evidence Tampering/Obstruction of Justice are felonies, but many of the state defendants, including K2 defendants Solomon + Hafner, knew this before and while they were committing the crimes. They have no defense of ignorance.

*Id* at 36 – "… tribunals of the country shall not only be impartial in the controversies submitted to them but shall give assurance that they are impartial … from any "bias or prejudice" that might disturb the normal course of impartial judgment … To commit to the judge a decision upon the truth of the facts gives chance for the evil against which the section is directed. The remedy by appeal is inadequate. It comes after the trial and, if prejudice exists, it has worked its evil and a judgment of it in a reviewing tribunal is precarious. It goes there fortified by presumptions, and nothing can be more elusive of estimate or decision than a disposition of a mind in which there is a personal ingredient." Since at least <u>April 2, 2012</u>, Kaul has been the victim of a non-stop series of violations of his constitutional/human rights, that commenced with K2 defendant, NJBME, and continued through the administrative board proceedings (April 9, 2013, to December 13, 2013), the New Jersey Superior Court system, the United States Bankruptcy Court for the District of New Jersey and the United States District Court for the District of New Jersey, into the present. Massive state orchestrated crimes were committed against Kaul by members of the political/legal /medical/business communities within the geographic boundaries of New Jersey. The injustices to which Kaul has been subjected were referenced by his lawyer in the administrative board proceeding: "**So now what they want you to do is they want to say, look, here you go, TZ here you go, consider this. And let him testify outside his report without a hearsay exception as a business record because, by the way, we're in the OAL office and it's very liberal and carefree. Absolutely not, Judge. It's fundamentally unfair. I already as part of my cross this doctor testified about things he didn't even opine about in his reports. So we got to cut it off somewhere. <u>Somewhere there has to be some level of fairness.</u>**" (K1: D.E. 299-22 Page 7511). A "reasonable man" looking at the facts of the almost last eleven (11) years might say to himself in regard to Defendants Allstate/Christie/State of NJ: "**what you think you gain in America you will lose in India".** Kaul asserts that he would have willingly trained the defendant physicians, had they simply asked. The reason they did not, was their arrogance and misguided calculation about Kaul, an individual whom the defendants assumed would "**pack his bags and leave**". Before you pick a fight with a man, you should know in what fights that man has been. Win or lose, conflict confers courage. Judge Oetken seeks to summarily deprive Kaul/his children of their right to life. That will not happen, as Kaul will ensure that Judge Oetken is held accountable by the law and the New York standards of professional conduct.

## F. **Kaul's application for disqualification is timely:**

**36.** Kaul has submitted this application in a timely manner. On September 14, 2022, Kaul submitted a letter (D.E. 170), in which he requested Judge Oetken disclose his financial

23

holdings/ conflicts of interest and raised the issue of judicial corruption. This disqualification application is submitted less than four (4) weeks after this letter.

**37.** However, section 455 specifies no particular time within which the disqualification application be submitted, but the generally held opinion of the circuit courts is that it occurs "**at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification.**" See Travelers Ins. Co. v. Liljeberg Enters., Inc., 38 F.3d 1404, 1410 (5th Cir. 1994). See also Apple v. Jewish Hosp. & Med. Ctr., 829 F.2d 326, 333 (2d Cir. 1987). In determining timeliness, the 2nd Circuit has developed a four (4) part test: **(1)** whether the movant has participated in a substantial manner in trial or pretrial proceedings – the record reflects that Kaul has participated in a substantial manner: **(2)** whether granting the motion would waste judicial resources – the case did not even enter discovery, and thus relatively minimal judicial resources were expended; **(3)** whether the motion was made after judgment – Kaul filed this motion/affidavit only once as permitted by law, and only after Judge Oetken failed to disclose his financial holdings/ex parte communications; **(4)** whether the movant can show good cause for delay – There has been no delay, in that Kaul has filed this motion within four (4) weeks of coming to know about the conflicts of interest.

**38.** However, of even more import is the fact that Judge Oetken has, from the commencement of the case, known that he was conflicted, had an "**appearance**" of partiality and ought to have disqualified himself. In In re Kensington Int'l Ltd., 368 F.3d 289 (3d Cir. 2004) the Third Circuit held that where a judge knew he or she was conflicted or had an "**appearance**" of partiality, the moving party could be not held responsible for whether a motion was filed in a timely manner. Kaul is a pro se litigant, and Judge Oetken had the responsibility of declaring his conflicted position, and not waiting for Kaul to 'pull back the curtain'. Kaul's almost eleven (11) year journey through the legal swamps/dishonesty of New Jersey's medico-legal-political communities has been nothing short of "**fantastical**". It will be only when some of these Defendants land in jail, that they will recognize and truly admit their crimes. K2 defendant Hafner described Kaul as "**arrogant**" (K1: D.E. 179 Page ID 2365 + D.E. 299-22 Page ID 7516), because he refused to accept her false and illegal case against him. Defendant Hafner should look into her own wicked heart before she points her finger at anyone else.

## Conclusion + Relief Sought

Kaul respectfully asserts that based on the above facts/reasons/arguments, Judge James Paul Oetken be disqualified from K11-7, and that all orders entered onto the dockets be immediately vacated, including the September 12, 2022, order at D.E. 168.

Kaul respectfully asserts that Judge James Paul Oetken be required to disclose to the record all his financial holdings for the period from September 2017 to September 2022, in accordance with the rules and regulations of the Guide to Judiciary Policy, Volume 2D, Chapter 1 to Chapter 6, as revised on March 23, 2018, and in accordance with the terms of the September 13, 2022, demand at D.E. 170.

Kaul respectfully asserts that Judge Oetken be required to disclose to Kaul and the record the full extent and substance of any and all ex parte communications as set forth at D.E. 170. All communications must include any form of information exchange to include but not limited to: **(i)** texts; **(ii)** face to face conversations: **(iii)** e-mails; **(iv)** typed letters: **(v)** handwritten letters; **(vi)** telephone conversations conducted via cellular phone or land line.

We, the Propria Persona Plaintiffs, do hereby certify and swear under penalty of perjury that the foregoing information and facts are true and accurate to the best of our knowledge, and that if it is proved that we knowingly and willfully misrepresented the facts, then we will be subject to punishment. We also certify, pursuant to Section 144, that this application for disqualification/vacatur is submitted in good faith.

Dated: October 6, 2022

RICHARD ARJUN KAUL, MD

DAVID B. BASCH, MD

# Order

It is hereby ordered that on October 7, 2022, that unless Judge James Paul Oetken immediately brings himself into compliance with legal authority regarding judicial disclosures, the law will deem him to be in knowing violation, and he will be immediately disqualified from any further administrative, ministerial, legal, or other involvement in either K11-7, or in any other case that involves Plaintiff Kaul and or Basch.

It is hereby ordered that on October 7, 2022, that unless Judge James Paul Oetken immediately brings himself into compliance with legal authority regarding judicial disclosures, the law will deem him to be in knowing violation, and he will become subject, and will willingly submit to investigative/disciplinary action by state/federal regulators.

It is hereby ordered that on October 7, 2022, that unless Judge James Paul Oetken immediately brings himself into compliance with legal authority regarding judicial disclosures, the law will deem him to be in knowing violation, and it will be hereby ordered that on October 8, 2022, all orders entered by Judge James Paul Oetken are immediately nullified, including the September 12, 2022, order at D.E. 168.

It is hereby ordered that on October 7, 2022, unless the defendants, by October 21, 2022, rebut/refute/deny/contest the evidence submitted in support of Kaul's motion for summary judgment against Defendant Allstate New Jersey Insurance Company (D.E. 5), it will be deemed to have proven Kaul's case against Defendant Allstate.

Dated: October 6, 2022.                              s/p United States District Court

# Exhibit 1

**www.drrichardkaul.com**

**September 13, 2022**

Honorable J. Paul Oetken
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re: Kaul/Basch v ICE et al
    21-CV-06992
    K11-7
    Financial disclosures/conflicts of interest/ex parte communications

Dear Judge Oetken,

We write this letter with the utmost respect for you and the federal judiciary, and in recognition of the immense pressures that the above case must have brought to bear on your judgment. However, it is our position, one that is authorized by law and by our rights, that the opinion and order entered on September 12, 2022, will remain invalid until the following information has been disclosed to the record:

1. Forms AO 10 since 2020.

2. Information required pursuant to the Courthouse and Transparency Act.

3. A list of all ex parte communications between yourself and any agents acting on your behalf, and the Defendants or any agents acting on their behalf, that pertains/relates/refers/references or are in any way associated with the aspect of any of K11-7 or any of **The Kaul Cases**, including but not limited to: **(i)** the delivery and or receipt of any favor/gift/benefit/advantage/interest to you and or any member of your family to the third-degree, by the Defendants and or their agents in return for granting their motions; **(ii)** the promise of any future delivery and or receipt of any favor/gift/benefit/advantage/interest to you and or any member of your family to the third-degree, by the Defendants and or their agents in return for granting their motions. The pertinent time period is August 19, 2021, to the present.

As you are aware, the issue of judicial corruption has unfortunately appeared prominently within **The Kaul Cases**, and was featured in a series of Wall Street Journal articles in September

1

2021 (K11-7: D.E. 25 Page 1 – 46 of 50). Consequent to this publicity, and in or around May 2022, the Courthouse Ethics and Transparency Act was passed in response to public pressure against judicial corruption (**Exhibit 1**). Senator Ted Cruz was one of the co-sponsors, a person to whose attention, in January 2021, I brought the issue of judicial corruption (**Exhibit 2**). The misconduct of Senator Charles Schumer regarding his "**Political interference in judicial process**" is highlighted in the letter to Senator Cruz. I understand your appointment to the bench was sponsored by Senator Schumer.

Our request for the public disclosure of the above financial information relates to the fact that your opinion/order are so thoroughly divorced from the evidence/facts/arguments/law of this case, that one cannot but conclude that you, like U.S.D.J. Kevin McNulty (U.S.D.C.-DNJ), Senator Schumer's brother-in-law, have been corrupted. U.S.D.J. McNulty engaged in the same opinion falsifying activity in K1 (D.E. 313-1), as now appears in K11-7 (D.E. 168).

Our request for the public disclosure of all ex parte communications pertains, in part, to the dissemination of notices of preservation to various ex-members of the political/legal/judicial establishment, including Jose Linares, the ex-Chief Judge of the District of New Jersey, who, in mid-late May 2019, suddenly retired from the bench, and took partner status at the law firm of English & McCarter in Newark, New Jersey, after having received a letter from me, requesting his financial disclosure/conflicts of interest (**Exhibit 3**). On May 5, 2022, Mr. Linares was served with a NOTICE OF PRESERVATION in K11-7 (**Exhibit 4**).

We respectfully assert that the principles underpinning Rules 144/455, and those of the due process clauses of the Constitution, are authoritative in this matter, and do render your opinion/order void until your impartiality/lack of bias has been evidentially established.

We thank you for your attention to this matter.

Yours sincerely

RICHARD ARJUN KAUL, MD

DAVID BASCH, MD

cc: All Counsel of Record
    All parties with a legal or other interest

# Exhibit 2

KAUL/BASCH v ICE
21-CV-06992
K11-7
'THE OETKEN ANALYSIS'

The Court's opinion, one clumsily drafted by Defendants' lawyers, resonates with a tone of hurried desperation, and other than constituting evidence of a corrupted state-of-mind, is replete with errors of logic/fact/law and fails, intentionally no doubt, to reflect the enormous body of highly incriminating evidence. The fact that the final filing in the case was February 14, 2022, and the Court's mere twenty (20) page analysis free summary opinion, was issued on September 12, 2022, is consistent with the Defendants conversion of this court into a **"racketeering enterprise"**, purposed to continue the decade-plus-long violation of Kaul's human/constitutional right to life/liberty/justice and to attempt to provide further cover for their crimes. The length of time, the brevity of the opinion and the lack of analysis of submitted argument, suggest a conspiracy to convey a knowingly false impression regarding dismissal, in order to violate Kaul's ability to exercise his right to commence actions in other district courts; and now the judge, in knowing contravention of the law, seeks to deny Kaul his basic human right to exist, through the instrument of the United States District Court.

The falsity of the opinion is proven by Kaul's argument, which is uncontested by the Defendants and unanalyzed by the judge. The point-by-point analysis identifies which of Kaul's arguments undermines the judge's opinion:

**Introduction**
**"This case is another chapter in a long saga of repetitive frivolous lawsuits ... violations arising out of this set of facts."** (D.E. 168 Page 1 to 2 of 20) This statement, which is inherently contradictory, undermines the entire opinion, by asserting that K11-7 is identical to all prior cases, and that because all prior cases are allegedly frivolous, that K11-7 is therefore frivolous, **but** then concludes by stating that K11-7 is based on a **"set of facts"**, a condition that equates with merit and not frivolousness. The judge, in attempting to violate Kaul's right to pursue litigation on the admitted facts, thwarted the basis of his opinion that falsely held K11-7 is frivolous, from which he falsely granted the Defendants motion for an injunction. The judge admitted that the information on which K11-7 was based, constituted **"facts"** and not unsubstantiated assertions. It is the judge's opinion that is **"frivolous"** and without merit.

**I. Background**
**A. Filing History** – "In March 2014 ... **But Kaul continues to file lawsuits in various jurisdictions.**" (D.E. 168 Page 2 to 4 of 20) It is evident that the thrust of the judge's fraudulent strategy is to misrepresent, mischaracterize and or omit critical components of the record of **The Kaul Cases**, with the most glaring omissions being those of K11-7, the case in question. In this section, the judge implies that because K11-7 is allegedly identical to all prior cases and because Kaul received no relief, that K11-7 is frivolous, but incredulously, Kaul continues to

pursue litigation. Kaul commenced no new litigation after the filing of K11-7 on August 19, 2021, in the hope that the judge would adhere to controlling authorities and follow the **"set of facts"**. The judge failed to analyze any of Kaul's arguments regarding the factual/legal distinction of K11-7 from all prior cases, but instead rendered an opinion that consists entirely of a selective regurgitation of elements of prior and irrelevant cases. Kaul's arguments are at:

**1.** Overview of Opposition (D.E. 77 page 6 of 57) — UNREFUTED/UNANALYZED/ADMITTED

**2.** Allstate's fraudulent case against Kaul/others (D.E. 77 Page 8 of 57) UNREFUTED/UNANALYZED/ADMITTED

**3.** The securities fraud crimes were committed in the State of New York (D.E. 77 Page 11 of 57) UNREFUTED/UNANALYZED/ADMITTED

**4.** U.S.D.J. Tanya Chutkan denied Defendant Allstate's motion to dismiss K5 (D.E. 47), while U.S.D.J. Alison Burroughs denied Defendant Allstate's motion to transfer K11-2 (D.E. 27) to the District of New Jersey (D.E. 77 Page 11 of 57) UNREFUTED/UNANALYZED/ADMITTED

**5.** The District of Massachusetts entered an order granting Kaul's IFP application and ordered the U.S.M.S. to serve the Defendants at the cost of the United States Government (D.E. 77 Page 12 of 57) UNREFUTED/UNANALYZED/ADMITTED

**6.** K11-7 is factually/legally distinct from K11-4 (D.E. 77 page 13 of 57) UNREFUTED/UNANALYZED/ADMITTED

**7.** K11-7 is factually/legally distinct from K11-9 and the warrantless arrest of Kaul on May 27, 2021, remains unlawful (D.E. 77 page 14 of 57) UNREFUTED/UNANALYZED/ADMITTED

**8.** K11-7 is legally/factually distinct from K11-2, the operative facts occurred in New York, and thus the law supports Kaul's choice of forum UNREFUTED/UNANALYZED/ADMITTED

**9.** Unsupportive judicial opinion (D.E. 89 page 8 of 87) UNREFUTED/UNANALYZED/ADMITTED

**10.** Introduction – K11-7 is factually/legally distinct from all prior cases (D.E. 89 page 10 of 87) UNREFUTED/UNANALYZED/ADMITTED.

**11.** Defendants motion for an anti-injunction suit is frivolous (D.E. 89 Page 10 of 87) - UNREFUTED/UNANALYZED/ADMITTED.

**12.** The Kaul Cases Defendants have failed in their prior injunctive and quasi-injunctive efforts (D.E. 89 Page 11 of 87) - UNREFUTED/UNANALYZED/ADMITTED

**13.** The Defendants have submitted no evidence that Kaul's claims are vexatious, frivolous and or harassing, and have effectively admitted the veracity of the plausibly pled RICO predicate acts (D.E. 89 Page 20 of 87) UNREFUTED/UNANALYZED/ADMITTED

**14.** K11-7 is legally/factually distinct to all prior cases, including K1, is based on new evidence, new injuries and is a new claim, not subject to res judicata or Rule 41 of the FRCP (D.E. 105 Page 26 of 56) UNREFUTED/UNANALYZED/ADMITTED

**15.** The Defendants "All Writs Act Injunction" argument is false and fails to satisfy the necessary legal standard (D.E. 105 Page 30 of 56) UNREFUTED/UNANALYZED/ADMITTED

**16.** Kaul's claims satisfy federal pleading standards and Defendant ICE has not proved otherwise (D.E. 106 Page 12 of 35) UNREFUTED/UNANALYZED/ADMITTED

**17.** The facts find that venue is proper in the Southern District of New York (D.E. 106 Page 22 of 35) UNREFUTED/UNANALYZED/ADMITTED

**18.** Defendant TD's Rooker-Feldman and abstention doctrine defenses have been rejected by all courts within the United States District Court (D.E. 110 Page 10 of 63) UNREFUTED/UNANALYZED/ADMITTED

**19.** K1 remained active on the district court docket, until it was dismissed pursuant to Rule 41(a)(2) on November 16, 2021 (D.E. 110 Page 16 of 63) UNREFUTED/UNANALYZED/ADMITTED

**20.** Res judicata as to K1 provides TD no defense (D.E. 110 Page 17 of 63) UNREFUTED/UNANALYZED/ADMITTED

**21.** Res judicata as to Defendant TD's suit in the Morris County Court provides Defendant TD no defense (D.E. 110 Page 18 of 63) UNREFUTED/UNANALYZED/ADMITTED

**22.** The Defendants have failed to disprove that the SDNY is the proper venue and failed to prove, or otherwise show that K11-7 should be dismissed with prejudice (D.E. 136 Page 12 of 55) UNREFUTED/UNANALYZED/ADMITTED

**23.** The Defendants have submitted no evidence/facts that disprove facts submitted by Kaul that venue is proper in the SDNY, and that K11-7 comports with the venue analysis standards identified in cases erroneously cited by Defendants in support of their argument to dismiss K11-7 with prejudice (D.E. 136 Page 14 of 55) UNREFUTED/UNANALYZED/ADMITTED

**24.** The Defendants' failure to factually satisfy the standards for vexatiousness/malice/abuse/frivolousness/harassment, as identified in the cited cases, is fatal to its frivolous injunctive plea (D.E. 136 Page 19 of 55) UNREFUTED/UNANALYZED/ADMITTED

**25.** Defendants defense fails for lack of support in fact or law (D.E. 138 Page 5 of 32) UNREFUTED/UNANALYZED/ADMITTED

**26.** The facts undermine a "second dismissal rule" defense (D.E. 138 Page 8 of 32) UNREFUTED/UNANALYZED/ADMITTED

**27.** Res judicata is inapplicable because K11-7 is based on new evidence/facts/injuries, is a new cause of action, the voluntary dismissal motion of K1 was entered by USDJ Vazquez without opposition, K5 terminated without opposition, and in prior cases, the Defendants committed a 'Fraud on the Court' (D.E. 138 Page 9 of 32) UNREFUTED/UNANALYZED/ADMITTED

**28.** Defendant AHS has failed to satisfy its burden of proof to disprove Kaul's proof that the SDNY is the proper venue, and that the DNJ is not the proper venue (D.E. 138 Page 17 of 32) UNREFUTED/UNANALYZED/ADMITTED

**29.** Defendant Heary's application of his cited legal standards to K11-7 jurisdiction/venue facts actually proves that he is both personally/generally subject to the jurisdiction of the SDNY, and that the SDNY is the proper venue (D.E. 154 Page 16 of 93) UNREFUTED/UNANALYZED/ADMITTED

**30.** The claims satisfy the Rule 8 standard set forth in Defendant Heary's cited cases (D.E. 154 Page 22 of 93) UNREFUTED/UNANALYZED/ADMITTED

**31.** The procedural facts of The Kaul Cases neither support any preclusion defenses nor an application of New Jersey preclusion law (D.E. 154 Page 25 of 93)
UNREFUTED/UNANALYZED/ADMITTED

**32.** Defendant Heary's plea for an anti-suit injunction is frivolous and without factual/legal foundation, as he has admitted claiming conclusive/undisputed fact in the ADMISSIONS BY DEFENDANT ROBERT HEARY OF UNDISPUTED FACTS, has failed in his previous injunctive efforts and fails to satisfy the necessary burden of proof/legal standard (D.E. 154 Page 30 of 93) UNREFUTED/UNANALYZED/ADMITTED

**33.** Defendant Heary's argument, pleading to injunct his prosecution by Kaul, is identical to the arguments of Defendants FSMB/Hengerer/ICE/TD/Geico/Stolz/Christie/Murphy/Grewal who in their motions failed to satisfy their burden of proof and who in their reply briefs failed to disprove Kaul's evidence that there exists no factual/legal basis for an injunction (D.E. 154 Page 32 of 93) UNREFUTED/UNANALYZED/ADMITTED

**34.** The claims satisfy the Rule 8 standard set forth in Defendant Heary's cited cases (D.E. 155 Page 23 of 93) UNREFUTED/UNANALYZED/ADMITTED

**35.** Defendant AHS's injunctive plea fails because it is factually unsupported and is based on law that Kaul has previously differentiated; a differentiation that Defendant AHS has failed to refute (DS.E. 158-1 Page 9 of 12) UNREFUTED/UNANALYZED/ADMITTED

**36.** Defendant Allstate's failed injunctive and quasi-injunctive pleas (D.E. 160 Page 6 of 13) UNREFUTED/UNANALYZED/ADMITTED

**37.** Defendant Allstate's fact-free injunctive application either fails to satisfy the standards set forth in its own citations or cites to irrelevant cases (D.E. 160 Page 6 of 13) UNREFUTED/UNANALYZED/ADMITTED

**38.** Defendant AHS's injunctive plea fails because it is factually unsupported and is based on law that Kaul has previously differentiated; a differentiation that Defendant AHS has failed to refute (D.E. 162 Page 9 of 11) UNREFUTED/UNANALYZED/ADMITTED

**39.** However, even if such a fraud had not been committed, the K11-1 opinion/order is irrelevant to K11-7, as the latter is factually/legally distinct from the former and is based on the facts of the "New York Scheme", the 'Kaul Kidnapping Scheme' and the securities fraud scheme ..." (D.E. 164 Page 2 of 16). UNREFUTED/UNANALYZED/ADMITTED.

The admittance of these thirty-seven (37) arguments by the Defendants and the Court, renders null/void the judge's basis for his knowingly fraudulently dismissal with prejudice and injunction, that basis being the false proposition that K11-7 was identical**/" substantially similar"** to the prior cases.

**B. Factual Background – "The amended complaint follows the pattern of Plaintiff Kaul's earlier filings … order/judgments adverse to Plaintiff Basch and other physicians, while entering order/judgments advantageous to Defendant Geico."** (D.E. 168 Page 4 to 7 of 20). The Court's cursory delineation of the charges, although set under the heading of **"Factual Background"**, purposefully avoids an honest recitation of the unrefuted/admitted fact that Kaul/Basch have pled for each element of each charge. The Court's failure to cite to any of the massive corpus of charge conclusive evidence within the three thousand, five hundred and thirty-three (3533) page case file, evidences his corrupted state-of-mind, and further underscores his commission of a 'Fraud on the Court'. More specifically, however, this section is a transparent attempt to frame Kaul/Basch's claims as non-compliant with federal pleading standards, as part of an effort to manufacture a claim insufficiency basis for dismissal. However, as with the knowingly false **"frivolous"** element of the Court's opinion, this too is rendered null/void by the Defendants failure to rebut, and the Court's failure to analyze/reject the pleading standard arguments asserted by Kaul/Basch. The arguments are at:

**1.** District judges within the United States District Court have rejected The Kaul Cases Defendants 12(b)(6)/Rule 8 defenses (D.E. 81 Page 7 of 17) - UNREFUTED/UNANALYZED/ADMITTED.

**2.** Kaul's plausibly pled RICO claims against Defendant Allstate satisfy federal pleading standards set forth in Rules 8/9 of the F.R.C.P. and Twombly/Iqbal and plead all requisite elements (D.E. 81 Page 11 of 87) - UNREFUTED/UNANALYZED/ADMITTED.

**3.** Defendant Allstate has no defense against Kaul's RICO claims (D.E. 81 Page 12 of 87) - UNREFUTED/UNANALYZED/ADMITTED.

**4.** The Section 1983 Claim is legally sufficient and pleads the requisite elements (D.E. 81 Page 15 of 17) - UNREFUTED/UNANALYZED/ADMITTED.

**5.** The Complaint provides Defendant Allstate fair notice of its alleged offenses and liabilities (D.E. 81 Page 16 of 17) - UNREFUTED/UNANALYZED/ADMITTED.

**6.** The claim conclusive evidence within The Kaul Cases has been neither refuted nor found to be meritless by any judge within the United States District Court (D.E. 89 Page 10 of 87) - UNREFUTED/UNANALYZED/ADMITTED.

**7.** There is no evidence within The Kaul Cases, that the claims are vexatious, harassing and or frivolous (D.E. 89 Page 12 of 87) - UNREFUTED/UNANALYZED/ADMITTED.

**8.** The Defendants arguments regarding RICO/Section 1983 claim sufficiency are false (D.E. 89 Page 15 of 87) - UNREFUTED/UNANALYZED/ADMITTED.

**9.** The claims satisfy federal pleading standards, including Rule 8 (D.E. 89 Page 16 of 87) - UNREFUTED/UNANALYZED/ADMITTED.

**10.** The legal standards set forth in the cases cited by the Defendants are either inapplicable or satisfied by the claims (D.E. 89 Page 17 of 87) - UNREFUTED/UNANALYZED/ADMITTED.

5

**11.** Kaul has plausibly pled the existence of an association-in-fact RICO enterprise (D.E. 89 Page 18 of 87) - UNREFUTED/UNANALYZED/ADMITTED.

**12.** The RICO predicate acts are pled to the standards required at pleading (D.E. 89 Page 19 of 87) - UNREFUTED/UNANALYZED/ADMITTED.

**13.** Kaul has provided the Defendants fair notice of their liability pursuant to the Section 1983 claim (D.E. 89 Page 20 of 87) - UNREFUTED/UNANALYZED/ADMITTED.

**14.** The Defendants have submitted no evidence that Kaul's K11-7 claims are vexatious, frivolous and or harassing, and have effectively admitted the veracity of the plausibly pled RICO predicate acts (D.E. 89 Page 20 0f 87) - UNREFUTED/UNANALYZED/ADMITTED.

**15.** The Defendants motion for a permanent injunction is made in extremely "bad faith" as they, in collusion/conspiracy with The Kaul Cases Defendants, are simultaneously employing tactics of delay/fraud to obstruct Kaul's applications for state licensure and are knowingly perpetuating an "ongoing pattern of racketeering" and violation of Kaul's constitutional/human rights (D.E. 89 Page 21 of 87) - UNREFUTED/UNANALYZED/ADMITTED.

**16.** Kaul's pleading of the RICO predicate acts of mail/wire fraud satisfies Rule 9 (b) and the standards set forth in the cited cases and does provide fair notice (D.E. 105 Page 10 of 56) - UNREFUTED/UNANALYZED/ADMITTED.

**17.** Defendant GEICO has failed to specifically identify what facts, if any, are allegedly absent from Kaul's RICO claims (D.E. 105 Page 11 of 56) - UNREFUTED/UNANALYZED/ADMITTED.

**18.** Kaul's claims satisfy the RICO predicate act pleading standard set forth in the law cited by Defendants (D.E. 105 Page 12 of 56) - UNREFUTED/UNANALYZED/ADMITTED.

**19.** SCOTUS case law regarding mail/wire fraud pleading standards equates to the statutory standards (D.E. 105 Page 13 of 56) - UNREFUTED/UNANALYZED/ADMITTED.

**20.** The specificity of the mail/wire fraud claims pled against Defendant Geico in K11-7 provide an equivalent degree of fair notice as did those in K5 (D.E. 105 Page 13 of 56) - UNREFUTED/UNANALYZED/ADMITTED.

**21.** The pleading standard of all ROCO predicate acts, other than mail/wire fraud, is that directed by Twombly/Iqbal and Rule 8 (D.E. 105 Page 14 of 56) - UNREFUTED/UNANALYZED/ADMITTED.

**22.** Kaul has plausibly pled the existence of an association-in-fact RICO enterprise (D.E. 105 Page 14 of 56) - UNREFUTED/UNANALYZED/ADMITTED.

**23.** Defendants association-in-fact pleading argument, is unsupported by all cited cases, none of which invalidate controlling Supreme Court law, legislative intent and or statute text (D.E. 105 Page 15 of 56) - UNREFUTED/UNANALYZED/ADMITTED.

**24.** Kaul's claims satisfy the pleading standard established in Turkette (1981), validated in Boyle (2009) and relief upon in Penguin (2014) (D.E. 105 Page 16 of 56) - UNREFUTED/UNANALYZED/ADMITTED.

**25.** The claims plausibly plead the "operation and management" element (D.E. 105 Page 16 of 56) - UNREFUTED/UNANALYZED/ADMITTED.

**26.** RICO does not statutorily require the pleading of a nexus between the "pattern of racketeering" and the injury, independent of that caused by the RICO predicate acts (D.E. 105 Page 17 of 56).

**27.** Kaul's claims satisfy the "by reason of" the "pattern of racketeering" standard set forth in case law, as it relates to the "pattern-injury" nexus (D.E. 105 Page 19 of 56) - UNREFUTED/UNANALYZED/ADMITTED.

**28.** Defendants **"pattern of racketeering"** is **"ongoing",** and thus the statute of limitations is constantly accruing (D.E. 105 Page 20 of 56) - UNREFUTED/UNANALYZED/ADMITTED. **"The Oetken Scheme"** an element of the **"New York Scheme"** is **"ongoing"** within the State of New York, and likely commenced in late 2021.

**29.** Kaul's pleading of the Section 1983 claim satisfies federal pleading standards and provides fair notice to Defendant (D.E. 105 Page 23 of 56) - UNREFUTED/UNANALYZED/ADMITTED.

**30.** Within K11-7, Kaul plausibly pleads and there exists evidence that Defendant ICE conspired with Defendants Christie/Allstate/TD/Geico to conceal the securities fraud crime (D.E. 106 Page 9 of 35) - UNREFUTED/UNANALYZED/ADMITTED.

**31.** Kaul's claims satisfy federal pleading standards and Defendant ICE has not proved otherwise (D.E. 106 Page 12 Of 35) - UNREFUTED/UNANALYZED/ADMITTED.

**32.** Kaul's claims satisfy the pleading standards set forth in cases cited by Defendant ICE (D.E. 106 Page 13 of 35) - UNREFUTED/UNANALYZED/ADMITTED.

**33.** Defendant ICE has submitted no proof or showing that any of the K11-76 claims do not contain a **"short and plain statement of the claim"** or are otherwise insufficient (D.E. 106 Page 17 of 35) - UNREFUTED/UNANALYZED/ADMITTED.

**34.** Kaul's pleading of the RICO predicate acts of mail/wire fraud satisfies the Rule 9 standard (D.E. 106 Page 20 of 35) - UNREFUTED/UNANALYZED/ADMITTED.

**35.** The Section 1983 claim provides fair notice to Defendant ICE of its 'state-actor' status and its violations of Kaul's constitutional rights (D.E. 106 Page 23 of 35).

**36.** The Section 1983 claim complies with the controlling legal standards of pleading (D.E. 106 page 24 of 35) - UNREFUTED/UNANALYZED/ADMITTED.

**37.** The K11-7 claims contain plausibly pled fact that satisfies the applicable legal standard regarding the non-conclusory nature of a claim (D.E. 106 Page 26 of 35).

**38.** The plausibility of Kaul's claims pertains to the uncontested fact that it received regulatory favors from Defendant Christie, in return for decimating Kaul's financial position. (D.E. 110 Page 9 of 63) - UNREFUTED/UNANALYZED/ADMITTED.

**39.** The K11-7 claims satisfy the statutory "by reason of" standard, as held in Holmes/Anza (D.E. 110 page 21 of 63) - UNREFUTED/UNANALYZED/ADMITTED.

**40.** The K11-7 claims plead plausible fact in support of the "**participation**" and "**by reason of**" elements of RICO (D.E. 110 Page 22 of 63) - UNREFUTED/UNANALYZED/ADMITTED.

**41.** Defendant TD's anti-suit injunction is without foundation, as it admitted to the undisputed fact on July 14, 2020 (D.E. 110 Page 24 of 63) - UNREFUTED/UNANALYZED/ADMITTED.

**42.** The Defendants' failure to factually satisfy the standards for vexatiousness/malice/abuse/frivolousness/harassment, as identified in the cited cases, is fatal to its frivolous injunctive plea (D.E. 136 Page 19 of 55) - UNREFUTED/UNANALYZED/ADMITTED.

**43.** Defendant AHS has submitted no proof, nor made any showing, to either disprove the K11-7 claims or show them to be implausible/conclusory and or non-compliant with all federal pleading standards (D.E. 138 Page 14 of 32) - UNREFUTED/UNANALYZED/ADMITTED.

**44.** Defendant Heary has submitted no evidence/facts/argument to prove or otherwise show that those submitted by Kaul do not satisfy federal pleading standards and actually assert a highly plausible case (D.E. 154 Page 20 of 93) - UNREFUTED/UNANALYZED/ADMITTED.

**45.** The claims satisfy the Rule 8 standard set forth in Defendant Heary's cited cases (D.E. 154 Page 22 of 93) - UNREFUTED/UNANALYZED/ADMITTED.

**46.** Defendant Heary has not proven/shown/disputed, nor could he, that the K11-7 claims in addition to the ADMISSIONS BY DEFENDANT HEARY OF UNDISPUTED FACTS provide "fair notice" of the facts/law on which the charges are brought, of the injuries caused and the relief sought and satisfy Rule 9 (D.E. 154 page 23 of 93) - UNREFUTED/UNANALYZED/ADMITTED.

**47.** Defendant Heary's plea for an anti-suit injunction is frivolous and without factual/legal foundation, as he has admitted to claiming conclusive/undisputed fact in the ADMISSIONS BY DEFENDANT ROBERT HEARY OF UNDISPUTED FACTS, has failed in his previous injunctive efforts and fails to satisfy the necessary burden of proof/legal standards (D.E. 154 Page 30 of 93) - UNREFUTED/UNANALYZED/ADMITTED.

**48.** Defendant Heary's argument, pleading to injunct his prosecution by Kaul, is identical to the arguments of Defendants FSMB/Hengerer/ICE/TD/Geico/Stolz/Christie/Murphy/Grewal who in their motion failed to satisfy their burden of proof and who in their reply briefs failed to disprove Kaul's evidence that there exists no factual/legal basis for an injunction (D.E. 154 page 32 of 93) - UNREFUTED/UNANALYZED/ADMITTED.

**49.** Defendant AHS admissions of UNDISPUTED FACT material to K11-7 claim proof, have permanently deprived it of any factual or legal basis on which to seek injunctive relief (D.E. 162 Page 8 of 11) - UNREFUTED/UNANALYZED/ADMITTED.

**50.** Defendant AHS's injunctive plea fails because it is factually unsupported and is based on law that Kaul has previously differentiated; a differentiation that Defendant AHS has failed to refute (D.E. 162 Page 9 of 11) - UNREFUTED/UNANALYZED/ADMITTED.

The admittance of these fifty (50) arguments by the Defendants and the Court, renders null/void any component of the judge's opinion that pertains/relates to claim sufficiency and or pleading standard compliance.

**II Legal Standard**

**"Federal Rule of Civil Procedure ... "Nonetheless a pro se complaint must state a plausible claim for relief." (D.E. 168 Page 8 to 9 of 20).** It is obvious that the judge was either always a Defendant in disguise or became one at some point in the case, as in recognizing that plaintiff's Complaint/unrebutted arguments either satisfied every legal pleading standard submitted by the Defendants or that the Complaint/unrebutted arguments identified the correct standard, he has either inserted not previously submitted standards and or ignored their unrebutted arguments that establish the Complaint complies with all pleading standards. The citations in question and the relevant points of the record are:

**A.** F.R.C.P. 8(a)(2)/(d)(1) + Strunk v US House of Representatives, 68 F. App'x 233, 253 (2d Cir. 2003) – The relevant arguments are:
**1.** District judges within the United States District Court have rejected The Kaul Cases Defendants 12(b)(6)/Rule 8 defenses (D.E. 81 Page 7 of 17) - UNREFUTED/UNANALYZED/ADMITTED.
**2.** Kaul's plausibly pled RICO claims against Defendant Allstate satisfy the federal pleading standards set forth in Rules 8/9 of the FRCP and Twombly/Iqbal and plead all requisite elements (D.E. 81 Page 11 of 17) - UNREFUTED/UNANALYZED/ADMITTED.
**3.** The claims satisfy federal pleading standards, including Rule 8 (D.E. 89 Page 16 of 87) - UNREFUTED/UNANALYZED/ADMITTED.
4. The legal standards set forth in the cases cited by the Defendants are either inapplicable or satisfied by the claims (D.E. 89 Page 17 of 87) - UNREFUTED/UNANALYZED/ADMITTED.
5. The Defendant's amendment argument is false (D.E. 89 Page 18 of 87) - UNREFUTED/UNANALYZED/ADMITTED.
6. The RICO predicate acts are pled to the standards required at pleading (D.E. 89 Page 19 of 87) - UNREFUTED/UNANALYZED/ADMITTED.
7. The Defendants have submitted no evidence that Kaul's K11-7 claims are vexatious, frivolous and or harassing, and have effectively admitted the veracity of the plausibly pled RICO predicate acts (D.E. 89 Page 20 of 87) - UNREFUTED/UNANALYZED/ADMITTED.
8. The pleading standard of all RICO predicate acts, other than mail/wire fraud, is that directed by Twombly/Iqbal and Rule 8 (D.E. 105 page 14 of 56) - UNREFUTED/UNANALYZED/ADMITTED.